**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr>
<td>ESTATE OF ROBERT P. HARTWICK, HALEY RUSSELL, HANNAH HARTWICK, LINDA K. HARTWICK, ROBERT A. HARTWICK, SHARON SCHINETHA STALLWORTH, ANDREW JOHN LENZ, ARAGORN THOR WOLD, CATHERINE S. WOLD, CORY ROBERT HOWARD, DALE M. HINKLEY, MARK HOWARD BEYERS, DENISE BEYERS, EARL ANTHONY MCCRACKEN, JASON THOMAS WOODLIFF, JIMMY OWEKA OCHAN, JOHN WILLIAM FUHRMAN, JOSHUA CRUTCHER, LARRY CRUTCHER, JOSHUA MITCHELL ROUNTREE, LEIGH ROUNTREE, KADE L. HINKHOUSE, RICHARD HINKHOUSE, SUSAN HINKHOUSE, BRANDON HINKHOUSE, CHAD HINKHOUSE, LISA HILL BAZAN, LATHAN HILL, LAURENCE HILL, CATHLEEN HOLY, EDWARD PULIDO, KAREN PULIDO, K.P., A MINOR CHILD, MANUEL PULIDO, ANGELITA PULIDO RIVERA, MANUEL “MANNIE” PULIDO, YADIRA HOLMES, MATTHEW WALKER GOWIN, AMANDA LYNN GOWIN, SHAUN D. GARRY, S.D., A MINOR CHILD, SUSAN GARRY, ROBERT GARRY, PATRICK GARRY, MEGHAN GARRY, BRIDGET GARRY, GILBERT MATTHEW BOYNTON, SOFIA T. BOYNTON, BRIAN MICHAEL YORK, JESSE D. CORTRIGHT, JOSEPH CORTRIGHT, DIANA HOTALING, HANNA CORTRIGHT, MICHAELA CORTRIGHT, LEONDRAE DEMORRIS RICE, ESTATE OF NICHOLAS WILLIAM BAART BLOEM, ALCIDES ALEXANDER BLOEM, DEBRA LEIGH BLOEM, ALCIDES NICHOLAS BLOEM, JR., VICTORIA LETHA</td>
<td>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§</td>
<td>PLAINTIFFS’ SECOND AMENDED COMPLAINT<br><br>Case No.: 1:18-cv-01612-CKK<br><br>Hon. Colleen Kollar-Kotelly</td>
</tr>
</table>

| | | |
|---|---|---|
| **BLOEM, FLORENCE ELIZABETH BLOEM, CATHERINE GRACE BLOEM, SARA ANTONIA BLOEM, RACHEL GABRIELA BLOEM, S.R.B., A MINOR CHILD, CHRISTINA JEWEL CHARLSON, JULIANA JOY SMITH, RANDALL JOSEPH BENNETT, II, STACEY DARRELL RICE, BRENT JASON WALKER, LELAND WALKER, SUSAN WALKER, BENJAMIN WALKER, KYLE WALKER, GARY WHITE, VANESSA WHITE, ROYETTA WHITE, A.W., A MINOR CHILD, CHRISTOPHER F. SWARTZ, GILBERT PAUL PAIZ, JR., ANTHONY ALLEN MATHENY, DOUGLAS HAMILTON KINARD, JR., EDGAR MALDONADO, EVELISA MALDONADO, J.M., A MINOR CHILD, ANA MALDONADO, JOSE L. MALDONADO, ANTHONY MALDONADO, YANITZA MALDONADO, ROBERT LOUIS DUNHAM, MICHELLE DUNHAM, ESTATE OF KAREEM RASHAD SULTAN KHAN, FEROZE KHAN, ELVENA ELSHEBA MOHAMMED ALI KHAN, ENESHA BAKSH, TENESHA CHARLES, ESTATE OF MATTHEW DAVID HUNTER, WENDY KAY HUNTER, MEREDITH HUNTER-STUBBS, ESTATE OF ROBERT ADRIAN WORTHINGTON, RHONDA S. WORTHINGTON, KAYLIN WORTHINGTON, DAVID ROBERT BAXTER, JR., NICOLE MICHELLE BAXTER, DAVID R. BAXTER, SR., MARK ALLEN WHETZEL, JENNIFER DAWN WHETZEL, STEPHEN K. VALYOU, N.V., A MINOR CHILD, TERRY RAY CARTER, LINDA CARTER, SENE PE'A POLU, ROSILAND KEMUKISA POLU, OLUWAFEMI IJITI, JOHN PAUL KAISER, JR., TINA ELIZABETH KAISER, KACEE ELIZABETH KEATING, DANIEL SCOTT WEBB,** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| **PATRICK JOHN BRADY, DEBRA BRADY, EDWARD J. BRADY, III, SARAH MALONE, BRETT A. MILLER, FAITH A. MILLER, BRIAN MICHAEL HAYDEN, DANIEL FRANCIS PEARSON, HOLLY PEARSON, ERIK ERNST SANDSTROM, J. M.S., A MINOR CHILD, JERRY MATTHEW TEAL, KENNETH LEE SMITH, SHANE T. ULANDAY, CHER ULANDAY, TIMOTHY PETER BENNETT, AMANDA JANE BENNETT, BRITTANY AMBER BENNETT, SAVANNAH LINDSEY BENNETT, T.P.B., A MINOR CHILD, WALTER LEE HAM JR., ESTATE OF KRISTOPHER ALLAN HIGDON, RONDA ELAINE HIGDON, BRITTON HIGDON, CHARLES EUGENE RUSSELL, JEREMY MICHAEL GIRDLER, JOHN PATRICK HARRIS, JOHN J. GREENE, NOAH P. MUTRIE, B.M., A MINOR CHILD, J.M., A MINOR CHILD, ASHLEY MUTRIE, ALEXANDRA MUTRIE, EMANUEL V. ALVAREZ, GUILLERMO CASTILLO, STEVEN ANDREW MAY, JAMIE L. FRAZIER, JOSEPH MONFORTE JR., MARYLOU MONFORTE, VICTORIA MONFORTE, KRISTEN MARTINEZ, AMANDA MONFORTE, ESTATE OF BRANDON ABBOTT MEYER, TERRY LYNN MEYER, EUGENIA MARIE MEYER, DESIREE MEYER-RODER, RICHARD PHILEMON JR., RENAWTA LAWSON, CASIE S. PHILEMON, DENNIS PHILEMON, TATE WAYNE MALLORY, CHEYENNE SHARON MALLORY, SHANIA SHAE MALLORY, TRISTIN WAYNE MALLORY, T.W.M., A MINOR CHILD, JERRY DANIEL WALKER, JOHN F. KUNKEL JR., JORDAN KALEB SMITH, MATTHEW P. HALEY, ADAM THOMAS GAULDIN, MICHAEL GAULDIN, DANIEL MICHAEL JACOBS, KYLE MATTHEW LEMIEUX,** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| **ELIZABETH LYNN COFFIN, NATHAN RAINES, RICHARD GEORGE MOORE, JR., RICHARD WILSON SCARLETT, DEBORAH SCARLETT, A.W.S., A MINOR CHILD, JEFFREY DAVID EVANS, TAMI RENEI KEMPER-PENA, SEAN PATRICK LYNCH, DAVID KEVIN GASKIN, DAMIL GASKIN, D.G., A MINOR CHILD, JACOB D. HOUSEHOLDER, JANET BAXTER, NICHOLAS MICHAEL LATONA, DEVIN JAY MEURER, DONALD J. MEURER, DUSTIN J. MEURER, MARNIE MEURER, JAMES MICHAEL HURST, KEVIN RANDALL SMITH, JACKAY SMITH, DYLAN SMITH, L.S., A MINOR CHILD, KAYLA MICHELLE GULLEY, ROBERT PAUL POTTS, III, JOHN TYLER LEE, M.A.L., A MINOR CHILD, J.T.L., III, A MINOR CHILD, RICKY A. BAXTER, ELBA BAXTER, CHRISTOPHER ROBERT GALKA, MARIA GALKA, MARK GALKA, CARRIE KIETZMAN, K.Z.G., A MINOR CHILD, BRANDON LAMAR DALE, DEBBIE SIMMONS, FREDDIE LEE KING, JR., SEDA KING, KIRK THOMAS MCPHERON, WILLIAM MATTHEW PFEIFER, DANIEL RYAN KULICKA, JARED MICHAEL ROGERS, FRANCIS D. GARREN, DAVID L. GARREN, MARY KATHRYN JOHNSTON, GREGORY JOSEPH REGAN, JR., BRADLEY CHRISTIAN TANDE, JR., YVENSON GALA, ESTATE OF WILLIAM D. O'BRIEN, DAWN R. WILLIAMSON, JOHN A. O'BRIEN, ESTATE OF SCOTT A. MILLER, ROBERT D. MILLER, SUSAN E. MILLER, MARK D. MILLER, PAUL E. MILLER, JONATHAN SCOTT MALLARD, CONNIE MALLARD, CHRISTOPHER NEIL SHELL, LISA ANN SHELL, DAVID LEE SHELL, CURTIS L. SHELL, RICHARD L. BURGE, JAMES H. SPERRY, ESTATE** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| OF TRAVIS SCOTT BACHMAN, AMBER JOLENE WILSON, T.S.B., A MINOR CHILD, K.P.B., A MINOR CHILD, ELISHA JOSEPH ABBOTT, BENJAMIN TRAINER, EDWARD JAMES TRAINER, GEORGE HARRISON JR., JODY LEWIS HARRISON, GEORGE HARRISON, SR., DEBBI HARRISON, TABBITHA NORRIS, MARY HARRISON, TROY HARRISON, SR., JUSTIN ASHLEY GAGE, AARON SMITH, DONNA SMITH COUCH, CHRISTOPHER MICHAEL RAY, CORY RAY, SHAWN MICHAEL CUMMINGS, LISA M. CUMMINGS, GEORGIA ROSE CUMMINGS, NATASHA O'NEILL, JAMES M. CUMMINGS, RUSSELL BALDWIN, LARRY ALBERT CARR, JR., CHRISTOPHER CARR, HUNTER CARR, ALEXIS CARR, ROXY IRENE CARR, LARRY ALBERT CARR SR., TERESA COLLEEN PARRISH, DESMOND LEVAR ANTHONY, DANIEL JOHANNES BRINK, MARIO A. MENA, LEROY ESCO JR., TARYN ESCO, A.P., A MINOR CHILD, JADE LEE-ESCO, K.P., A MINOR CHILD, L.E., A MINOR CHILD, MADISON ROTH, MATTHEW N. WOOTEN, JR., MATTHEW N. WOOTEN, III, JESSE GEER, DONALD MARTIN, BONNIE OSMER, CORY OSMER, DAVID MATTHEW BUTCHER, GLORIA MARIE BUTCHER, B.W.B., A MINOR CHILD, ELIZABETH DUFF SPEAKS, LESLIE GLENN SPEAKS, JOSHUA JONATHAN COOLEY, CHRISTINE COOLEY, JOHNNY CASTILLO, LAURA CASTILLO, ROY ANTHONY BISCARR, ANGELA CLAUSET, KHRISTIE ALEXA BISCARR, GABRIEL ALEXANDER BISCARR, ADAM NATHAN ENGELHART, CHRISTOPHER DAVID CONDREY, MARTIN LYNN WAGNER, JR., ANNA | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| **WAGNER, AMANDA STRICKLAND, MATTHEW BADILLO, MICHAEL LOCKE, WILLIAM A. LOCKE, W. DAVID LOCKE, PHILLIP L. BELL, THOMAS J. BELL, MAXINE C. BELL, JEFFREY K. BELL, JOSEPH T. BELL, MATTHEW HAVILAND, WILLIAM ROBERT BIGGS, JOIE L. WILLIAMS, SHENNA GREEN, DORIS COGER, ROBERT FRANKLIN HARR, LUZ HARR, ARTHUR L. RIZER III, A.R., A MINOR CHILD, STEPHANIE RIZER, ARTHUR L. RIZER JR., NICOLE RIZER, ARTHUR GABRIEL RIZER, SAMUEL ADAM KAUFMAN, JOSHUA JOHN WOLCOTT, JEFFREY CHRISTOPHER HARPER, JR., ASHOT MALKHASSIAN, CHAKEN ZANAZANIAN, JESSE J. LONGORIA, RAY LONGORIA, DOLORES LONGORIA, MICHAEL JAMES BELL, CHARLES FOSTER HARMON, DEREK PAUL HADFIELD, ASHLEY NICOLE HADFIELD, ROBERT WALTER HADFIELD, II, TIMOTHY GRANT CHANDLER, CHARLES F. WADE, JR., R.W., A MINOR CHILD, H.W., A MINOR CHILD, C.W., A MINOR CHILD, ROBYN WADE, ROBERT JAMES PEARSON, JAMES M. BUONO, NUALA KALUOKAU TAYLOR, CHRISTOPHER DAVID TAYLOR, TANIN NICHOLAS TAYLOR, BETHENI KEANAAINA, X.W.T., A MINOR CHILD, ANTHONY FARINA, ROWDY ZANE BURNEY, CARLOS ANTONIO MARTINEZ, HAROLD T. ATKINSON JR., AARON SCOTT ARTHUR BURKS, MICHAEL F. JACKSON, MICHELE A. BRUNO, BOBBY CHRISTOPHER, III, BOBBY G. CHRISTOPHER, JR., DEBI J. NOELKE, ANGIE J. CHRISTOPHER, BRIAN CHAD BECKWITH, MARCO A. VILLEGAS, CHASE VILLEGAS, H.S.V., A MINOR CHILD, H.A.V., A MINOR** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| CHILD, DAVID A. CONWAY, II, BRYAN PLUM, LEE PAUL HAYWOOD, JOHN DAVID, JR., SHAWNDRA DAVID, JUSTUS GETTY, KORBIN L. DAVID, L.J.D., A MINOR CHILD, STEVEN MICHAEL SHAUER, PAULA HORNING, B.S., A MINOR CHILD, JOSEPH SCHMIDT, ROBERT SCHMIDT, EDWARD SCHMIDT JR., JASEN WATTS, JOHN DUANE TIVIS, JESSE DUANE TIVIS-WATTS, JARED LUIS TIVIS-WATTS, MARTIN SICAIROS, JOANNA SICAIROS, MARTIN SICAIROS, JR., ESTRELLA SICAIROS, WILLIAM COLBY FRASIER, ROBERT ALLEN HAAF, JAMES JOSEPH HAAF, MONICA ELIZABETH HAAF, MARY AGNUS HAAF, J.A.R.H., A MINOR CHILD, ADAM C. BIRDSELL, MICHAEL L. NEUMANN, R.N., A MINOR CHILD, JASMINE NAGEL, JORIE MILLER, CALEB NEUMANN, TAMMY BOWMAN, VICKI AVERSANO, CRAIG BOWES, PATRICK ANDREW DIENER, JEFFREY J. SECKINGER, MICHELLE SECKINGER, JACOB A. BARR, KRISTINA BARR, E.B., A MINOR CHILD, MICHAEL JOSEPH JAMES, NESSIM EDWARD FOURNIER, KYLE W. DAVENPORT, JOSEF ERNEST BAUMANN, MICHAEL LEE OWEN BOLLEY, DONNIE LEE BOLLEY, JUDY C. BOLLEY, KIMBERLY DAWN DEUEL, TRACY ALLEN BOLLEY, BILLY DON BOLLEY, DAKODA MARIE BOLLEY, MICHAEL LEE OWEN BOLLEY, II, DEMI LYNN BOLLEY, K.T.B., A MINOR CHILD, TYRON KIM, TABITHA TVONNE HUDSON, ANTHONY ANTONIO HUDSON, BRYAN SNYDER, JAIME SNYDER, JAMES NELSON SPARKS III, CARLA SPARKS, EVE MARIE SPARKS, JAMES NELSON SPARKS IV, VALERIE CAROLINE EARMAN, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| **GRAHAM J.T. LINDSEY, ESTATE OF JOSHUA T. BYERS, MARY A. BYERS, LLOYD C. BYERS, MILAM BYERS, JARED R. BYERS, RICARDO ALFREDO BRIZUELA, JR., ALEXANDER ANTHONY BRIZUELA, DAVID W. BRONSON, GEORGE OVID SIMMONS, TIMOTHY BREDBERG, ANDREW HIGGINS, MATTHEW A. JORDAN, KATELYNN JORDAN, O.J., A MINOR CHILD, MIGUEL GONZALEZ, ELISA GONZALEZ, STANLEY GOODIN, III, J.G., A MINOR CHILD, JARROD SCOTT HALLMAN, GEORGE PEREZ, KRISTOPHER SIEMON, HECTOR M. LOPEZ, JR., E.L., A MINOR CHILD, CATHERINE LOPEZ, HECTOR M. LOPEZ, SR., PATRICIA SANTANA, ISAAC LOPEZ, VIVIAN LOPEZ, ROBERT VALLE, MARK ANTHONY HAMBLIN, JR., M.H., A MINOR CHILD, STEPHEN KENT FERGUSON, DARYN SWALLOW, JAMIE LEE WHITAKER, MICHAEL THOMAS BEHRENS, HUNTER W. BEHRENS, TAYLOR M. BEHRENS, JEFFERSON A. BEHRENS, KENDYL BEHRENS, CAITLYNN SCHMIDT, ADAM S. BARTON, T.B., A MINOR CHILD, TAMMY SELVEY-BROCK, STEPHEN BARTON, MARTIN A. MCCLUNG, II, JANEL MCCLUNG, M.M., A MINOR CHILD, JAMES MCCLUNG, PEGGY MCCLUNG, LARRY GRIFFIS, ANTHONY WILLIAM GREEN, MICHAEL T. GREEN, JOAN M. GREEN, MATTHEW T. GREEN, HARRISON MANYOMA, ROBERT LANCE CAVER, ASRAA CAVER, TRICIA ANN CAVER, N.R.C., A MINOR CHILD, PATRICK WICKENS, TRAVIS EUGENE SCHNEIDER, JOHN FLAMER, THELMA FLAMER, DERRICK FLAMER, KENNARD WILLIAMS, CHERLYN WILLIAMS, OLIVIA** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| FLAMER, REGINALD BOYD, PETER KEVIN LANDSTEINER, FLORENCE LANDSTEINER, JACOB D. LANDSTEINER, JACKSON C. LANDSTEINER, RICKY PATA, R.P., A MINOR CHILD, R.P., A MINOR CHILD, BRANDON MICHAEL PARROTT, DON STORMS, TERRI STORMS, JUSTIN L. CAMPLIN, T.C., A MINOR CHILD, C.C., A MINOR CHILD, M.C., A MINOR CHILD, RICHARD R. HEDGECOCK, II, SHAUN SCOTT CHANDLER, JULEONNA CLARKE CHANDLER, JUSTIN N. CARY, SUZANE CARY, B.C., A MINOR CHILD, N.M., A MINOR CHILD, SANDRA CARY, ALEX CARY, KIMBERLY CARY, AUDREY LANGE, DEVIN SAMUEL HARVEY, GIOVANNI A. AVALOS, MARIA AVALOS, J.A., A MINOR CHILD, LONNIE MICHAEL FREDERICK GORMAN, CECELIA BERNAL, ESTATE OF KENNETH J. IWASINSKI, TRACY J. TAYLOR, AMANDA L. TAYLOR, MICHAEL SCOTT ERB, RONALD SAMS, SR., PHILIP LEE CHILDREY, STEPHANIE CHILDREY, TIMOTHY MICHAEL HATCH, JEREMY E. SMITH, ERIC EUGENE RODRIQUEZ, JOHN COLEMAN, THOMAS M. BROOKS, LYNDA BROOKS, JESSE EVANS, MICHAEL GAMBLE, SHIRLEY GAMBLE, CHRISTOPHER BRIAN SAUNDERS, CECELIA ANNE SAUNDERS, BRIAN THOMAS SKRABA, ABRAHAM MARTINEZ-AYALA, JASON REGESTER, THOMAS A. HENSHALL, JR., YESENIA HENSHALL PEREZ, THOMAS A. HENSHALL, SR., DANIELLE BOWEN, BRIAN DAVID GOULD, DOMINIC FRANKLIN MOODY, DHUNTHA SHAYRE WYATT, BRYAN ESCOBEDO, NICHOLAS B. ANDREWS, KENDRICK LEE DIXON, ROBERT DIXON, BRIAN PATRICK JOYCE, JR., | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| **ESTATE OF DARREN DEAN HOWE, NAKIA LAREE HOWE, BRANDON A. HOWE, ALEXANDER G. KLAUS, G.H., A MINOR CHILD, S.H., A MINOR CHILD, ESTATE OF RICHARD A. HARDY, DORIS HARDY, RICHARD DEAN HARDY, JESSICA TACKETT, DAVID R. WENZEL, DANIEL J. ERBE, EARLENE E. ERBE, BRIAN J. ERBE, ELIZABETH E. ERBE, STEPHANIE A. ERBE, CHRISTOPHER M. HEIDLING, STANLEY HEIDLING, TERRA RHOADS, JEREMY LEE BALLARD, CRAIG S. HALL, D.H., A MINOR CHILD, JOEY J. BRAMME, JASON WILLIAM ROLLISON, ESTATE OF SCOTT A. MCINTOSH, ALEXANDER G. MCINTOSH, GWEN C. MCINTOSH, ERIC G. MCINTOSH, LUTHER BROWN, ARTHUR LEE BROWN, LINDA FAYE BROWN, AKEISHA ANN MCFADDEN, MATTHEW LAYDELL BROWN, AUNDREA BROWN, GEORDAN EDWARD GANKA, THOMAS ALAN GANKA, CHARLES THOMAS GANKA, THOMAS JARED GANKA, SERGE HAGOPIAN, ANAHEID MIKAELIAN, CHRISTINE HAGOPIAN, SEVAG HAGOPIAN, TIMOTHY GRAJKO, ALAINA LOCURCIO, WALTER E. GRAJKO, KATHLEEN J. GRAJKO, MICHAEL J. GRAJKO, CHRISTOPHER J. DUNN, STEVE DUNN, SANDY DUNN, KEELAN MILES SOUTHERLAND, RONALD DEAN STARK, II, KATIE STARK, DOUGLAS ARTHUR STARK, E.G.S., A MINOR CHILD, A.D.S., A MINOR CHILD, ESTATE OF MATTHEW J. VOSBEIN, LYNDA L. VOSBEIN, JOHN VOSBEIN, CONNOR VOSBEIN, BRANDON JACKSON, ANNA WILLIAMS, TIM LINGLE, HAGLE WILLIAMS, CHRIS WILLIAMS, JASON LINGLE, LUCAS LINGLE, TIMOTHY J.B. LINGLE,** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| **JEREMY LINGLE, GERARD LOUIS MENNITTO, HENRY J. BREWER, III, ERIC ZACHARY HURST, DWAYNE HURST, KELLY METCALF, JORDAN HURST, DEVIN HURST, SIERRA HURST, JOHN L. LAWTON JR., ARLENE F. LAWTON, PATRICIA LAWTON, JASON R. SMITH, ARTHUR MOYE, DEBRA MOYE, EDDIE MAE MOYE, SHAYLA FINKLEA-PETTWAY, JADE MOYE BERRONG, LEO PATRICK MCKEON, SEAN T. SCRUGGS, JOHN C. SCRUGGS, CHEYENNE R. SCRUGGS, CHEROKEE R. SCRUGGS, GAIL FRYER, SANDRA BRICE, MESHALL WINNEGAN, DEVIN WINNEGAN, JAZMEN SAMPSON, JAMES JACKSON, WILLIAM F. GUNTER, VICTORIA L. GUNTER, CLIFFORD E. GUNTER, SARA MOON, PATRICIA S. MALPASS, PEGGY ANN LEWIS, JAMES EDWARD WRIGHT, ROOSEVELT ROSS JR., ALFONSO G. MATOS MESA, POLIBIA MATOS, ALFONSO ARGENIS MATOS, FABIAN MATOS, NICHOLAS TUBBS, TROY MEREDITH, VANESSA MEREDITH, JUSTIN ROY ROJAS, AMANDA ROJAS, FLOYD C. PETERS JR., DISA PETERS CLASEN, CHRISTINA PETERS, KATLIN PETERS, FLOYD A. PETERS, A.P., A MINOR CHILD, G.P., A MINOR CHILD, SANTANA M. PETERS, LINDA PETERS, FLOYD C. PETERS, SR., JOY WHITE, LISA PETERS SMETHURST, JOHN PAUL ALVAREZ, JOSEPH CHRISTOPHER FERRARO, TIM T. JULIANO, ESTATE OF ARMANDO HERNANDEZ, MARTHA HERNANDEZ, DELIA LOERA, RAQUEL SANDOVAL, CHRISTOPHER HASS, MATTHEW MCIVOR, RIGOBERTO LOPEZ GARCIA, MANUEL ROMAN, MARCO ANTHONY ROMAN, MARIA** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| CHRISTINA MURPHY, ESTRELLA ROMAN PADILLA, MANUEL ROMAN SR., ARACELLYS JASMIN ROMAN, JAMILEX YALI ROMAN, THALIA YARIE ROMAN, JAMES RYAN MCPHERSON, CLINTON DEWARD DURHAM, CLINTON DURHAM, SR., DORIS MARTIN, TROY SMITH, CLINTON DURHAM, JR., SHEILA DURHAM, D.N.D., A MINOR CHILD, RODRICK BERNARD ANDERSON, RAENA ANDERSON, JOHN PARCELL, KYLA PARCELL, KENNETH C. ANDERSON, THOMAS TAVTIGIAN, CLAUDIA TAVTIGIAN, COURTNEY MARSHALL, ESTATE OF JORDAN W. BOWLING JR., SHELLEY LYNN ABBOTT, D.B., A MINOR CHILD, J.B., A MINOR CHILD, RONDA MELTON, JORDAN W. BOWLING, SR., CHARLES LEE STORLIE, MARIAN LEIGH TISE, CHADWICK WILLIAM STORLIE, RICHARD NELS STORLIE, JORDAN ANTONIAZZO MADONNA JONJU, RAY LEONARD LOPEZ, BRYANT J. SCHILTZ, MARTIN GONZALEZ, TOMAS R. GONZALEZ, BETTY GONZALEZ, IAN REESER, RYAN P. CLEMENTS, C.C., A MINOR CHILD, ROBIN CLEMENTS, PATRICK L. CLEMENTS, DIANE L. CLEMENTS, LUCAS CLEMENTS, PETER NEGRALLE, NICHOLAS NEGRALLE, STEVEN M. PADDISON, TRAVIS PADDISON, EMILY PADDISON, JAMES PADDISON, EILEEN PADDISON, RUSSELL PADDISON, KAREN BURR, JENNIFER LEWIS, ESTATE OF JOSE VELEZ, MONICA VELEZ, NICHOLAS ANTHONY WEST, CHRISTINE WEST, GREGORY P. BLINCOE, Z.B., A MINOR CHILD, CARRIE BLINCOE, CONNIE ARGIER, RONALD PAUL MCLANE, CANDIE NICOLE REED-MCLANE, J.P.M., A MINOR CHILD, JASON EDWARD | §§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§ | |

| | | |
|---|---|---|
| **MIKOLAJCIK, JOHN JOSEPH MIKOLAJCIK, GERARDO CONTRERAS, SOCORRO MA CONTRERAS, JOSE LUIS CONTRERAS, SR., ELIZABETH CONTRERAS, NELLY VIVEROS, JOSE LUIS CONTRERAS, JR., NICHOLAS HAMILTON KYLE, MICHAEL RAYMOND KYLE, VICTOR DOMINGUEZ, ANTONIO APONTE, IVONNE DOMINGUEZ, V.D., A MINOR CHILD, JUSTIN HULLETT, RONNIE HULLETT, JOEY HULLETT, GEORGINA GORDON, ROBBIE HULLETT, KELSEY ADAMS, VUTHA EANG, ROBERT JOSEPH BARTHEL, NATHAN ALLEN ROLENS, ERWIN DAVID SADDI, SHEILA SADDI, S.M.S 1, A MINOR CHILD, S.M.S. 2, A MINOR CHILD, S.F.S., A MINOR CHILD**<br><br>**(Addresses filed under Seal)**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE ISLAMIC REPUBLIC OF IRAN**<br>**The Ministry of Foreign Affairs**<br>**Imam Khomeini Street**<br>**Imam Khomeini Square**<br>**Tehran, Iran**<br>**1136914811**<br><br>**THE ISLAMIC REVOLUTIONARY GUARD CORPS ("IRGC")**<br>**Mahallati Avenue**<br>**The End of Piriouzi Street**<br>**District 14**<br>**Tehran, Iran**<br><br>**IRANIAN MINISTRY OF INTELLIGENCE & SECURITY (a/k/a Vezarat-e Ettela'at Va Amniat-e Keshvar a/k/a VEVAK a/k/a VAJA)**<br>**Second Negarestan Street** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

| | | |
|---|---|---|
| **Pasdaran Avenue**<br>**Tehran, Iran**<br><br>**BANK MARKAZI JOMHOURI ISLAMI IRAN**<br>**(a/k/a the Central Bank of the Islamic Republic of Iran)**<br>**Mirdamad Boulevard**<br>**No. 198**<br>**Tehran, Iran**<br>**P.O. Box: 15875/7177**<br><br>**BANK MELLI IRAN**<br>**Ferdowsi Avenue**<br>**10 Building**<br>**Tehran, Iran**<br>**1135931596**<br>**Mail Box 11365.144**<br><br>**NATIONAL IRANIAN OIL COMPANY**<br>**Roodsar Street No. 18**<br>**Tehran, Iran**<br><br>**Defendants.** | | |

**TABLE OF CONTENTS**


I. NATURE OF THE CASE ..... 1

II. JURISDICTION AND VENUE ..... 4

1. THIS COURT HAS JURISDICTION OVER ALL CLAIMS AND ALL PARTIES. ..... 4

A. THIS COURT MAY EXERCISE JURISDICTION OVER THE SUBJECT MATTER OF ALL CLAIMS ASSERTED HEREIN. ..... 4

I. FOREIGN SOVEREIGN IMMUNITIES ACT ..... 5

B. THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER ALL PARTIES TO THIS ACTION. ..... 5

2. VENUE IS PROPER IN THIS COURT. ..... 6

III. LEGISLATIVE BACKGROUND ..... 6

IV. THE DEFENDANTS ..... 8

1. THE ISLAMIC REPUBLIC OF IRAN ..... 8

2. ISLAMIC REVOLUTIONARY GUARD CORPS ..... 12

3. THE IRANIAN MINISTRY OF INTELLIGENCE & SECURITY (MOIS) ..... 14

4. BANK MARKAZI JOMHOURI ISLAMI IRAN ..... 18

5. BANK MELLI IRAN ..... 19

6. NATIONAL IRANIAN OIL COMPANY ..... 23

V. FACTUAL ALLEGATIONS ..... 26

1. IRAN'S LONG HISTORY OF MATERIALLY SUPPORTING AND ENCOURAGING ACTS OF INTERNATIONAL TERRORISM ..... 27

2. IRAN'S SPONSORSHIP AND MATERIAL SUPPORT OF TERRORISM IN IRAQ ..... 31

3. ISLAMIC REVOLUTIONARY GUARD CORPS—QODS FORCE (IRGC-QF) ..... 35

4. HEZBOLLAH ..... 37

5. IRAN'S MINISTRY OF DEFENSE AND ARMED FORCES LOGISTICS (MODAFL) .......... 44

6. ANSAR AL ISLAM .......... 46

7. AL QAIDA NETWORK .......... 52

A. ABU MUSAB ZARQAWI AND THE RISE OF AL QA'IDA IN IRAQ ("AQI") .......... 59

8. THE SPECIAL GROUPS .......... 64

A. THE BADR CORPS/BADR ORGANIZATION .......... 69

B. KATA'IB HIZBALLAH .......... 70

C. JAYSCH AL MAHDI & THE PROMISED DAY BRIGADES .......... 76

D. ASA'IB AHL AL HAQ .......... 78

9. IRANIAN SIGNATURE WEAPONS USED IN THE TERRORIST ATTACKS .......... 79

A. EXPLOSIVELY FORMED PENETRATORS .......... 79

B. IMPROVISED ROCKET ASSISTED MUNITIONS .......... 87

10. IRAN EVADES SANCTIONS & COMMITS ACTS OF TERRORISM THROUGH ITS AGENTS/PROXIES .......... 90

A. ISLAMIC REPUBLIC OF IRAN SHIPPING LINES .......... 91

B. MAHAN AIR .......... 94

C. NATIONAL IRANIAN OIL COMPANY (NIOC) .......... 97

D. KHATAM AL-ANBIYA CONSTRUCTION COMPANY & THE HEADQUARTERS FOR THE RESTORATION OF HOLY SHRINES .......... 99

VI. THE PLAINTIFFS & THE TERRORIST ATTACKS .......... 106

1. THE JUNE 6, 2011 ATTACK - BAGHDAD .......... 109

A. PLAINTIFFS THE ROBERT P. HARTWICK FAMILY .......... 109

2. THE FEBRUARY 9, 2011 ATTACK - TALILL .......... 110

A. PLAINTIFF SHARON SCHINETHA STALLWORTH .......... 110

3. THE OCTOBER 11, 2010 ATTACK – MOSUL .................................... 111

A. PLAINTIFF RICHARD R. HEDGECOCK, II............................ 111

4. THE FEBRUARY 10, 2010 ATTACK – DIYALA PROVINCE ........... 112

A. PLAINTIFF SAMUEL ADAM KAUFMAN.............................. 112

5. THE DECEMBER 24, 2009 ATTACK – FOB GARRY OWEN, AL AMARAH .......................................................................... 113

A. PLAINTIFFS THE RICHARD WILSON SCARLETT FAMILY ........................................................................ 113

6. THE DECEMBER 16, 2009 ATTACK - BASRA .................................. 114

A. PLAINTIFF JEFFREY DAVID EVANS.................................... 114

7. THE SEPTEMBER 2009 ATTACK - GHAZALIYA ............................ 115

A. PLAINTIFFS THE THOMAS A. HENSHALL, JR. FAMILY ... 115

8. THE AUGUST 13, 2009 ATTACK – KIRKUK..................................... 117

A. PLAINTIFF JERRY MATTHEW TEAL.................................... 117

9. THE AUGUST 2, 2009 ATTACK - MIQDADIYAH............................ 117

A. PLAINTIFF KENNETH LEE SMITH ....................................... 117

10. THE JULY 31, 2009 ATTACK – KIRKUK .......................................... 118

A. PLAINTIFF JERRY MATTHEW TEAL.................................... 118

11. THE JULY 12, 2009 ATTACK – SHIRQAT ......................................... 119

A. PLAINTIFF DAVID A. CONWAY, II ...................................... 119

12. THE JUNE 7, 2009 ATTACKS - HABBANIYAH ................................ 120

A. PLAINTIFF BRYAN PLUM ...................................................... 120

13. THE APRIL 20, 2009 ATTACK – BAQUBAH .................................... 121

A. PLAINTIFFS THE BRENT JASON WALKER FAMILY.......... 121

14. THE APRIL 15, 2009 ATTACK – BALAD .......................................... 122

A. PLAINTIFFS THE MESHALL WINNEGAN FAMILY ............ 122

15. THE MARCH 14, 2009 ATTACK - MOSUL ..... 124

A. PLAINTIFFS THE MATTHEW A. JORDAN FAMILY ..... 124

16. THE MARCH 1, 2009 ATTACK - MADA'IN ..... 125

A. PLAINTIFFS THE MIGUEL GONZALEZ FAMILY ..... 125

17. THE FEBRUARY 18, 2009 ATTACK – AL AMARAH ..... 126

A. PLAINTIFF RICHARD R. HEDGECOCK, II ..... 126

18. THE FEBRUARY 11, 2009 ATTACK – ROUTE COORS, ADHAMIYAH DISTRICT OF BAGHDAD ..... 127

A. PLAINTIFF GRAHAM J.T. LINDSEY ..... 127

19. THE FEBRUARY 11, 2009 ATTACK – ROUTE COORS, ADHAMIYAH DISTRICT OF BAGHDAD ..... 128

A. PLAINTIFFS THE CHRISTOPHER J. DUNN FAMILY ..... 128

20. THE DECEMBER 23, 2008 ATTACK – ROUTE JACK SPARROW EAST, JOINT BASE BALAD, DIYALA PROVINCE ..... 129

A. PLAINTIFF KEELAN MILES SOUTHERLAND ..... 129

21. THE NOVEMBER 22, 2008 ATTACK – VILLAGE OF BEJAT, BAQUBAH, DIYALA PROVINCE ..... 130

A. PLAINTIFFS THE GARY WHITE FAMILY ..... 130

22. THE NOVEMBER 21, 2008 ATTACK - FALLUJAH ..... 132

A. PLAINTIFF KYLE W. DAVENPORT ..... 132

23. THE OCTOBER 30, 2008 ATTACK – NEAR HOSSEINIA ..... 133

A. PLAINTIFF EMANUEL V. ALVAREZ ..... 133

24. THE OCTOBER 15, 2008 ATTACK – ROUTE STEELERS ..... 133

A. PLAINTIFFS THE MARK ALLEN WHETZEL FAMILY ..... 133

25. THE OCTOBER 2008 ATTACK - GHAZALIYA ..... 135

A. PLAINTIFFS THE THOMAS A. HENSHALL, JR. FAMILY ..... 135

26. THE SEPTEMBER 6, 2008 - BAQUBAH ..... 136

A. PLAINTIFF JAMES RYAN MCPHERSON ............................... 136

27. THE SEPTEMBER 4, 2008 ATTACK – DIYALA PROVINCE ........... 137

A. PLAINTIFFS THE CLINTON DEWARD DURHAM FAMILY 137

28. THE AUGUST 31, 2008 ATTACK - AGUR QUF ................................ 139

A. PLAINTIFF RICHARD GEORGE MOORE, JR. ........................ 139

29. THE AUGUST 15, 2008 ATTACK - SAMARRA ................................. 140

A. PLAINTIFF KENNETH C. ANDERSON .................................. 140

30. THE AUGUST 14, 2008 ATTACK – IVO CANAL ROUTE AND ROCKSIAN ROAD, NEAR CAMP ASHRAF, FOB GRIZZLY, NW OF BAQUBAH IN AL KHALIS ................................................................. 141

A. PLAINTIFFS THE THOMAS TAVTIGIAN FAMILY .............. 141

31. THE AUGUST 14, 2008 ATTACK – DIYALA PROVINCE ................ 143

A. PLAINTIFFS THE CLINTON DEWARD DURHAM FAMILY 143

32. THE JULY 23, 2008 ATTACK – IED ALLEY, ROUTE IRISH, BAGHDAD ............................................................................... 144

A. PLAINTIFFS THE RODRICK BERNARD ANDERSON FAMILY ............................................................................... 144

33. THE JULY 10, 2008 ATTACK – AL QAIM, AL ANBAR PROVINCE 146

A. PLAINTIFFS THE JUSTIN HULLETT FAMILY ...................... 146

34. THE JULY 8, 2008 ATTACK – OUTSIDE ABANDONED SHEIK GARI RAILWAY STATION IN KHANDAHARI NEIBHBORHOOD, JSS LUZON, NEAR AL NASR WAL SALAM, IVO ABU GHRAIB .......... 147

A. PLAINTIFF VUTHA EANG ..................................................... 147

35. THE JULY 8, 2008 ATTACK – OUTSIDE ABANDONED SHEIK GARI RAILWAY STATION IN KHANDAHARI NEIBHBORHOOD, JSS LUZON, NEAR AL NASR WAL SALAM, IVO ABU GHRAIB .......... 148

A. PLAINTIFF ROBERT JOSEPH BARTHEL .............................. 148

36. THE JULY 8, 2008 ATTACK – OUTSIDE ABANDONED SHEIK GARI RAILWAY STATION IN KHANDAHARI NEIBHBORHOOD, JSS LUZON, NEAR AL NASR WAL SALAM, IVO ABU GHRAIB .......... 149

A. PLAINTIFF NATHAN ALLEN ROLENS .................................. 149

37. THE JULY 8, 2008 ATTACK – OUTSIDE ABANDONED SHEIK GARI RAILWAY STATION IN KHANDAHARI NEIBHBORHOOD, JSS LUZON, NEAR AL NASR WAL SALAM, IVO ABU GHRAIB .......... 150

A. PLAINTIFFS THE ERWIN DAVID SADDI FAMILY .............. 150

38. THE JULY 7, 2008 ATTACK - FALLUJAH ......................................... 152

A. PLAINTIFF BRYANT J. SCHILTZ ........................................... 152

39. THE JUNE 20, 2008 ATTACK – MUKHISA ........................................ 153

A. PLAINTIFF BRIAN DAVID GOULD ....................................... 153

40. THE JUNE 19, 2008 ATTACK – SADR CITY ...................................... 154

A. PLAINTIFF DANIEL RYAN KULICKA .................................. 154

41. THE JUNE 17, 2008 ATTACK – BALAD (JOINT BASE BALAD) ..... 155

A. PLAINTIFFS THE JUSTIN N. CARY FAMILY ........................ 155

42. THE JUNE 15, 2008 ATTACK – FOB MAHMUDIYA ......................... 156

A. PLAINTIFFS THE MARK ALLEN WHETZEL FAMILY ........ 156

43. JUNE 12, 2008 ATTACK – CAMP BUCCA - UM QASR ..................... 158

A. PLAINTIFF SEAN PATRICK LYNCH ..................................... 158

44. THE JUNE 11, 2008 ATTACK - ROUTE SENATORS – SOUTH BAGHDAD......................................................................................... 158

A. PLAINTIFFS THE RONALD PAUL MCLANE FAMILY ........ 158

45. THE JUNE 2008 ATTACK - FALLUJAH ............................................. 160

A. PLAINTIFFS THE JACOB D. HOUSEHOLDER FAMILY ...... 160

46. THE MAY 15, 2008 ATTACK – NEAR HADITHA DAM.................... 161

A. PLAINTIFF TRAVIS EUGENE SCHNEIDER........................... 161

47. THE MAY 10, 2008 ATTACK - BUHRIZ NEAR BAQUBAH ............. 162

A. PLAINTIFFS THE NOAH P. MUTRIE FAMILY ...................... 162

48. THE MAY 7, 2008 ATTACK – SADR CITY .......................................... 163

A. PLAINTIFF HENRY J. BREWER, III.......................................... 163

49. THE MAY 3, 2008 ATTACK – MSR TAMPA, CHECKPOINT 38A, BAGHDAD.......................................... 164

A. PLAINTIFFS THE ERIC ZACHARY HURST FAMILY.......... 164

50. THE MAY 21, 2008 ATTACK - MOSUL.......................................... 166

A. PLAINTIFFS THE PHILIP LEE CHILDREY FAMILY .......... 166

51. THE OCTOBER 22, 2007 ATTACK – AMIL DISTRICT, BAGHDAD 167

A. PLAINTIFFS THE ROBERT ALLEN HAAF FAMILY .......... 167

52. THE APRIL 29, 2008 ATTACK – MSR TAMPA, IVO SADR CITY, BAGHDAD.......................................... 169

A. PLAINTIFF JEFFREY CHRISTOPHER HARPER JR............... 169

53. THE APRIL 28, 2008 ATTACK - FALLUJAH .......................................... 170

A. PLAINTIFFS THE JACOB D. HOUSEHOLDER FAMILY ...... 170

54. THE APRIL 27, 2008 ATTACK – SADR CITY, BAGHDAD............... 171

A. PLAINTIFF ANTHONY FARINA.......................................... 171

55. THE APRIL 19, 2008 ATTACK – TAJI.......................................... 172

A. PLAINTIFFS THE JESSE D. CORTRIGHT FAMILY............... 172

56. THE APRIL 13, 2008 ATTACK – SADR CITY .......................................... 173

A. PLAINTIFF MICHAEL JAMES BELL.......................................... 173

57. THE APRIL 7, 2008 ATTACK – GREEN ZONE, AT PX ACROSS FROM US EMBASSY, BAGHDAD .......................................... 174

A. PLAINTIFF CHARLES FOSTER HARMON............................ 174

58. THE APRIL 3, 2008 ATTACK –ROUTE CAT, SADR CITY, BAGHDAD .......................................... 175

A. PLAINTIFF GREGORY JOSEPH REGAN, JR. ......................... 175

59. THE APRIL 3, 2008 ATTACK – WEST RASHID NEIGHBORHOOD, ROUTE RAIDERS, OFF ROUTE JACKSON, BAGHDAD ..................176

A. PLAINTIFF DESMOND LEVAR ANTHONY ...........................176

60. THE APRIL 2, 2008 ATTACK – BAQUBAH .......................................177

A. PLAINTIFFS THE SENE PE'A POLU FAMILY .......................177

61. THE APRIL 1, 2008 ATTACK – FALLUJAH.......................................178

A. PLAINTIFFS THE DEVIN JAY MEURER FAMILY ................178

62. THE APRIL 1, 2008 ATTACK – TIKRIT ..............................................180

A. PLAINTIFFS THE CHRISTOPHER NEIL SHELL FAMILY ...180

63. THE MARCH 28, 2008 ATTACK – SOUTH BAGHDAD.....................181

A. PLAINTIFFS THE CHARLES F. WADE, JR. FAMILY............181

64. THE MARCH 28, 2008 ATTACK – SADR CITY .................................183

A. PLAINTIFFS THE LEROY ESCO JR. FAMILY .......................183

65. THE MARCH 27, 2008 ATTACK – SADR CITY .................................184

A. PLAINTIFF HENRY J. BREWER, III........................................184

66. THE MARCH 15, 2008 ATTACK - BAGHDAD...................................185

A. PLAINTIFFS THE WILIAM D. O'BRIEN FAMILY .................185

67. THE MARCH 10, 2008 ATTACK – MANSOUR DISTRICT, BAGHDAD ........................................................................................................186

A. PLAINTIFFS THE SCOTT A. MCINTOSH FAMILY ...............186

68. THE MARCH 8, 2008 ATTACK - SAKHRAH VILLAGE, KIRKUK ..188

A. PLAINTIFF WILLIAM MATTHEW PFEIFER..........................188

69. THE MARCH 7, 2008 ATTACK - BAGHDAD.....................................189

A. PLAINTIFFS THE DEREK PAUL HADFIELD FAMILY ........189

70. THE MARCH 5, 2008 ATTACK –COB ADDER, TALLIL...................191

A. PLAINTIFF JOHN PATRICK HARRIS.....................................191

71. FEBRUARY 25, 2008 – TIKRIT .......... 192

A. PLAINTIFFS THE RICKY PATA FAMILY .......... 192

72. THE MARCH 19, 2008 ATTACK – BAGHDAD .......... 193

A. PLAINTIFFS THE DAVID ROBERT BAXTER JR. FAMILY . 193

73. THE FEBRUARY 17, 2008 ATTACK – SENEIA TOWN .......... 194

A. PLAINTIFF JASON R. SMITH .......... 194

74. THE FEBRUARY 5, 2008 ATTACK – BALAD .......... 195

A. PLAINTIFF KRISTOPHER SIEMON .......... 195

75. JANUARY 28, 2008 – SOMER, NEIGHBORHOOD OF SOUTHEASTERN MOSUL .......... 196

A. PLAINTIFFS THE BRANDON ABBOTT MEYER FAMILY .. 196

76. THE JANUARY 28, 2008 ATTACK - NASIRIYAH .......... 197

A. PLAINTIFF DAVID R. WENZEL .......... 197

77. THE JANUARY 21, 2008 ATTACK - SAMARRA .......... 198

A. PLAINTIFFS THE CHARLES LEE STORLIE FAMILY .......... 198

78. THE FEBRUARY 24, 2008 ATTACK – UMM QASR .......... 199

A. PLAINTIFF OLUWAFEMI IJITI .......... 199

79. THE DECEMBER 16, 2007 ATTACK– BALAD .......... 200

A. PLAINTIFFS THE SEAN T. SCRUGGS FAMILY .......... 200

80. THE DECEMBER 13, 2007 ATTACK - BAGHDAD .......... 202

A. PLAINTIFFS THE DONALD MARTIN FAMILY .......... 202

81. DECEMBER 9, 2007 ATTACK – ROUTE TAMPA, FOB KALSU .......... 203

A. PLAINTIFF KENDRICK LEE DIXON .......... 203

82. THE DECEMBER 5, 2007 ATTACK – THE BARITZ NEIGHBORHOOD OF BAQUBAH .......... 204

A. PLAINTIFFS THE SHAUN D. GARRY FAMILY .......... 204

83. THE DECEMBER 5, 2007 ATTACK – DIYALA PROVINCE .............206

A. PLAINTIFF JORDAN KALEB SMITH .....................................206

84. THE NOVEMBER 10, 2007 ATTACK – QARYAT AL-ASHIG...........207

A. PLAINTIFFS THE JORDAN W. BOWLING, JR., FAMILY.....207

85. THE OCTOBER 31, 2007 ATTACK – IVO FALLUJAH.......................209

A. PLAINTIFF CHRISTOPHER DAVID CONDREY ....................209

86. THE OCTOBER 31, 2007 ATTACK - NASIRIYAH.............................210

A. PLAINTIFF ABRAHAM MARTINEZ-AYALA ........................210

87. THE OCTOBER 18, 2007 ATTACK – NORTH OF MOSUL ................211

A. PLAINTIFF JOSHUA JOHN WOLCOTT .................................211

88. THE OCTOBER 14, 2007 ATTACK – BAGHDAD ...............................212

A. PLAINTIFFS THE KENNETH J. IWASINSKI FAMILY ..........212

89. THE SEPTEMBER 30, 2007 ATTACK - MOSUL ................................213

A. PLAINTIFF ADAM NATHAN ENGELHART ..........................213

90. THE SEPTEMBER 26, 2007 ATTACK - ROUTE RAIDERS, WEST RASHEED DISTRICT, SOUTHWEST BAGHDAD..............................214

A. PLAINTIFFS THE SHAUN SCOTT CHANDLER FAMILY ....214

91. THE SEPTEMBER 24, 2007 ATTACK – DIYALA ...............................215

A. PLAINTIFFS THE ROY ANTHONY BISCARR FAMILY .......215

92. THE SEPTEMBER 3, 2007 ATTACK - FALLUJAH.............................216

A. PLAINTIFFS THE RONALD DEAN STARK, II FAMILY.......216

93. THE AUGUST 31, 2007 ATTACK - FALLUJAH.................................218

A. PLAINTIFFS THE GREGORY P. BLINCOE FAMILY ............218

94. THE AUGUST 28, 2007 ATTACK – BUHRIZ NEAR BAQUBAH......219

A. PLAINTIFFS THE NOAH P. MUTRIE FAMILY ......................219

95. THE AUGUST 28, 2007 ATTACK – NEAR FALLUJAH .....................221

A. PLAINTIFFS THE ADAM S. BARTON FAMILY ....................221

96. THE AUGUST 25, 2007 ATTACK - MOSUL .......................................222

A. PLAINTIFF ADAM NATHAN ENGELHART ..........................222

97. AUGUST 22, 2007 – HOR AL BOSH ...................................................223

A. PLAINTIFFS THE BRYAN SNYDER FAMILY .......................223

98. THE AUGUST 18, 2007 ATTACK – ARAB JABOUR NEIGHBORHOOD, BAGHDAD ..........................................................225

A. PLAINTIFFS THE TIMOTHY PETER BENNETT FAMILY ...225

99. THE AUGUST 15, 2007 ATTACK – CAMP TAJI................................227

A. PLAINTIFFS THE NUALA KALUOKAU TAYLOR FAMILY227

100. THE AUGUST 14, 2007 ATTACK – ROUTE SIOUX FALLS.............228

A. PLAINTIFFS THE JACOB A. BARR FAMILY.........................228

101. THE AUGUST 7, 2007 ATTACK - TARMIYH ....................................230

A. PLAINTIFFS THE SHANE T. ULANDAY FAMILY................230

102. THE AUGUST 6, 2007 ATTACK – BAQUBAH...................................231

A. PLAINTIFFS THE KAREEM RASHAD SULTAN KHAN FAMILY .........................................................................231

103. THE AUGUST 4, 2007 ATTACK – BAGHDAD ..................................232

A. PLAINTIFF ANTHONY ALLEN MATHENY...........................232

104. THE AUGUST 1, 2007 ATTACK – MOSUL ........................................233

A. PLAINTIFFS THE TRAVIS SCOTT BACHMAN FAMILY.....233

105. THE JULY 28, 2007 ATTACK –FORWARD OPERATING BASE, RAMADI .....................................................................................234

A. PLAINTIFF RANDALL JOSEPH BENNETT, II .......................234

106. THE JULY 17, 2007 ATTACK - BAGHDAD .......................................235

A. PLAINTIFFS THE ADAM THOMAS GAULDIN FAMILY.....235

107. THE JULY 17, 2007 ATTACK – KHAN BANI SAAD ........................ 236

A. PLAINTIFFS THE GEORGE HARRISON, JR. FAMILY ......... 236

108. THE JULY 16, 2007 ATTACK - BAGHDAD ...................................... 238

A. PLAINTIFFS THE NOAH P. MUTRIE FAMILY ...................... 238

109. THE JULY 15, 2007 ATTACK - BAGHDAD, BETWEEN FOB LOYALTY AND FOB RUSTAMIYAH................................................. 240

A. PLAINTIFFS THE MARK ANTHONY HAMBLIN, JR. FAMILY .......................................................................................... 240

110. JULY 14, 2007 ATTACK – ARAB JIBOR, BAGHDAD ...................... 241

A. PLAINTIFF EARL ANTHONY MCCRACKEN ........................ 241

111. THE JULY 11, 2007 ATTACK – BESMAYA ....................................... 242

A. PLAINTIFFS THE KEVIN RANDALL SMITH FAMILY ........ 242

112. THE JULY 5, 2007 ATTACK – ROUTE LINCOLN, AL ANBAR, KARMAH ......................................................................................... 244

A. PLAINTIFFS THE NICHOLAS TUBBS FAMILY .................... 244

113. THE JULY 5, 2007 ATTACK – BESMAYA ........................................ 245

A. PLAINTIFF JESSE EVANS ....................................................... 245

114. THE JULY 4, 2007 ATTACK - FALLUJAH ......................................... 246

A. PLAINTIFF TIMOTHY GRANT CHANDLER.......................... 246

115. THE JUNE 26, 2007 ATTACK - BAGHDAD ....................................... 247

A. PLAINTIFFS THE JOHNNY CASTILLO FAMILY .................. 247

116. THE JUNE 24, 2007 ATTACK – SAQLAWIYAH, AL ANBAR .......... 248

A. PLAINTIFF KIRK THOMAS MCPHERON............................... 248

117. THE JUNE 23, 2007 ATTACK - BAGHDAD ....................................... 249

A. PLAINTIFF MATTHEW MCIVOR ........................................... 249

118. THE JUNE 23, 2007 ATTACK – TARMIYAH ..................................... 250

A. PLAINTIFF JEREMY E. SMITH ........................................................250
119. THE MARCH 16, 2007 ATTACK – BASRA PALACE ..........................251
A. PLAINTIFFS THE TERRY RAY CARTER FAMILY ..............251
120. THE JUNE 21, 2007 ATTACK - BAGHDAD .......................................252
A. PLAINTIFF JASON REGESTER ..................................................252
121. THE JUNE 20, 2007 ATTACK – BAGHDAD......................................253
A. PLAINTIFF TIM T. JULIANO ......................................................253
122. THE JUNE 20, 2007 ATTACK – BAGHDAD......................................254
A. PLAINTIFFS THE STEVEN M. PADDISON FAMILY ............254
123. THE JUNE 15, 2007 ATTACK—DORA MARKET, BAGHDAD ........256
A. PLAINTIFFS THE DAVID MATTHEW BUTCHER FAMILY 256
124. THE JUNE 11, 2007 ATTACK - BAGHDAD .......................................258
A. PLAINTIFFS THE NOAH P. MUTRIE FAMILY ......................258
125. THE JUNE 9, 2007 ATTACK - BAQUBAH..........................................259
A. PLAINTIFFS THE SCOTT A. MILLER FAMILY.....................259
126. THE JUNE 6, 2007 ATTACK – BAYJI .................................................261
A. PLAINTIFFS THE GEORDAN EDWARD GANKA FAMILY.261
127. THE JUNE 3, 2007 ATTACK – BAQUBAH..........................................262
A. PLAINTIFFS THE MICHAEL F. JACKSON FAMILY.............262
128. THE JUNE 2007 ATTACK – AR-RUTBAH .........................................263
A. PLAINTIFF CARLOS ANTONIO MARTINEZ.........................263
129. THE MAY 30, 2007 ATTACK – RISALA.............................................264
A. PLAINTIFF MATTHEW BADILLO...........................................264
130. THE MAY 27, 2007 ATTACK - MOSUL..............................................265
A. PLAINTIFF CHRISTOPHER F. SWARTZ.................................265

131. THE MAY 25, 2007 ATTACK – AL ANBAR ........ 266

A. PLAINTIFF CORY ROBERT HOWARD ........ 266

132. THE MAY 22, 2007 ATTACK –TAJI ........ 267

A. PLAINTIFFS THE KRISTOPHER ALLAN HIGDON FAMILY ........ 267

133. THE MAY 22, 2007 ATTACK - TAJI ........ 268

A. PLAINTIFFS THE ROBERT ADRIAN WORTHINGTON FAMILY ........ 268

134. THE MID-MAY 2007 ATTACK - BAGHDAD ........ 269

A. PLAINTIFFS THE GIOVANNI A. AVALOS FAMILY ........ 269

135. THE MAY 13, 2007 ATTACK – WESTERN BAGHDAD ........ 270

A. PLAINTIFF JERRY MATTHEW TEAL ........ 270

136. THE MAY 12, 2007 ATTACK – NEAR UM QASR FROM CAMP BUCCA ........ 271

A. PLAINTIFFS THE DAVID KEVIN GASKIN FAMILY ........ 271

137. THE MAY 3, 2007 ATTACK – BAQUBAH ........ 272

A. PLAINTIFFS THE JUSTIN L. CAMPLIN FAMILY ........ 272

138. THE MAY 1, 2007 ATTACK - BAGHDAD ........ 273

A. PLAINTIFF WILLIAM COLBY FRASIER ........ 273

139. THE APRIL 27, 2007 ATTACK – SALAH AL DIN PROVINCE ........ 274

A. PLAINTIFFS THE CRAIG S. HALL FAMILY ........ 274

140. THE APRIL 27, 2007 ATTACK – FALLUJAH ........ 275

A. PLAINTIFF GUILLERMO CASTILLO ........ 275

141. THE APRIL 20, 2007 ATTACK – SAQLAWIA ........ 276

A. PLAINTIFF STEVEN ANDREW MAY ........ 276

142. THE APRIL 2, 2007 ATTACK - FALLUJAH ........ 277

A. PLAINTIFF IAN REESER........................................................277

143. THE APRIL 2007 ATTACK – BAQUBAH ..........................................278

A. PLAINTIFFS THE MICHAEL F. JACKSON FAMILY ............278

144. THE MARCH 31, 2007 ATTACK – ROUTE RAIDERS AND ROUTE ASH, BAGHDAD.....................................................................279

A. PLAINTIFF GILBERT PAUL PAIZ, JR. ...................................279

145. THE MARCH 30, 2007 ATTACK – MOSUL .......................................280

A. PLAINTIFF RICHARD L. BURGE...........................................280

146. THE MARCH 29, 2007 ATTACK – BAGHDAD .................................281

A. PLAINTIFFS THE MANUEL ROMAN FAMILY .....................281

147. THE MARCH 29, 2007 ATTACK – DIYALA PROVINCE..................283

A. PLAINTIFFS THE STEPHEN K. VALYOU FAMILY .............283

148. THE MARCH 26, 2007 ATTACK- ROUTE IRISH, OUTSIDE OF BAGHDAD.................................................................................284

A. PLAINTIFFS THE MICHAEL LEE OWEN BOLLEY FAMILY ..................................................................................284

149. THE MARCH 23, 2007 ATTACK – OUTSIDE FOB DIAMONDBACK, ASR TAMPA, MOSUL...........................................................286

A. PLAINTIFFS THE MICHAEL THOMAS BEHRENS FAMILY ..................................................................................286

150. THE MARCH 22, 2007 ATTACK – MOSUL ........................................288

A. PLAINTIFFS THE STEVEN MICHAEL SHAUER FAMILY...288

151. THE MARCH 14, 2007 ATTACK - BAQUBAH...................................289

A. PLAINTIFF MICHAEL SCOTT ERB .......................................289

152. THE MARCH 5, 2007 ATTACK – BAQUBAH ....................................290

A. PLAINTIFFS THE MICHAEL F. JACKSON FAMILY ............290

153. THE MARCH 4, 2007 ATTACK - RAMADI .......................................291

A. PLAINTIFFS THE JOSHUA CRUTCHER FAMILY ................ 291

154. THE MARCH 2007 ATTACK - FALLUJAH ................ 292

A. PLAINTIFF TIMOTHY GRANT CHANDLER ................ 292

155. THE FEBRUARY 19, 2007 ATTACK - TARMIYAH ................ 293

A. PLAINTIFF CRAIG BOWES ................ 293

156. THE FEBRUARY 19, 2007 ATTACK – TARMAYIH ................ 294

A. PLAINTIFF JEREMY E. SMITH ................ 294

157. THE FEBRUARY 15, 2007 ATTACK - FALLUJAH ................ 295

A. PLAINTIFFS THE RYAN P. CLEMENTS FAMILY ................ 295

158. THE FEBRUARY 8, 2007 ATTACK – AL ANBAR PROVINCE ................ 297

A. PLAINTIFF JOHN J. GREENE ................ 297

159. THE FEBRUARY 1, 2007 ATTACK – RAMADI ................ 297

A. PLAINTIFFS THE DANIEL FRANCIS PEARSON FAMILY .. 297

160. THE JANUARY 26, 2007 ATTACK - MIQDADIYAH ................ 299

A. PLAINTIFF DOMINIC FRANKLIN MOODY ................ 299

161. THE JANUARY 22, 2007 ATTACK – RTE STARBUCKS, AL ANBAR, WEST OF RASHEED ................ 300

A. PLAINTIFFS THE CHRISTOPHER MICHAEL RAY FAMILY ................ 300

162. THE JANUARY 14, 2007 ATTACK - BAGHDAD ................ 301

A. PLAINTIFF RIGOBERTO LOPEZ GARCIA ................ 301

163. THE JANUARY 10, 2007 ATTACK – RASHDIYA, BAGHDAD ... 302

A. PLAINTIFF JAMES M. BUONO ................ 302

164. THE JANUARY 9, 2007 ATTACK - BAGHDAD ................ 302

A. PLAINTIFFS THE ROBERT FRANKLIN HARR FAMILY ..... 302

165. THE JUNE 3, 2007 ATTACK – ROUTE LOUISIANA, HOSSEINIYA 304

A. PLAINTIFF JARED MICHAEL ROGERS ................................ 304

166. THE DECEMBER 30, 2006 ATTACK – BAGHDAD ............................ 305

A. PLAINTIFFS THE CHRISTOPHER M. HEIDLING FAMILY 305

167. THE DECEMBER 22, 2006 ATTACK - MOSUL ................................ 306

A. PLAINTIFF ADAM NATHAN ENGELHART .......................... 306

168. THE DECEMBER 19, 2006 ATTACK - RAMADI ................................ 307

A. PLAINTIFF WILLIAM ROBERT BIGGS ................................ 307

169. THE DECEMBER 19, 2006 ATTACK – MOSUL ................................ 308

A. PLAINTIFFS THE HECTOR M. LOPEZ, JR. FAMILY ............ 308

170. THE DECEMBER 16, 2006 ATTACK – MOSUL ................................ 310

A. PLAINTIFF CHRISTOPHER F. SWARTZ ................................ 310

171. THE DECEMBER 2006 ATTACK - BAGHDAD ................................ 310

A. PLAINTIFFS THE GIOVANNI A. AVALOS FAMILY ............ 310

172. THE NOVEMBER 21, 2006 ATTACK – MSR MOBILE, AL ANBAR PROVINCE, IVO ABU GHRAIB ........................................................ 312

A. PLAINTIFFS THE JONATHAN SCOTT MALLARD FAMILY ........................................................................................ 312

173. THE NOVEMBER 21, 2006 ATTACK - BAGHDAD ............................ 313

A. PLAINTIFFS THE GIOVANNI A. AVALOS FAMILY ............ 313

174. THE NOVEMBER 15, 2006 ATTACK – DOWNTOWN BAGHDAD .. 314

A. PLAINTIFFS THE LONNIE MICHAEL FREDERICK GORMAN FAMILY ........................................................................ 314

175. THE OCTOBER 17, 2006 ATTACK – ANAH ...................................... 316

A. PLAINTIFFS THE TATE WAYNE MALLORY FAMILY ....... 316

176. THE OCTOBER 16, 2006 ATTACK - BAGHDAD ................................ 317

A. PLAINTIFF GERARD LOUIS MENNITTO ............................ 317

177. THE OCTOBER 16, 2006 ATTACK – BAGHDAD ............................... 318

A. PLAINTIFFS THE JOHN PAUL KAISER, JR FAMILY ........... 318

178. THE OCTOBER 13, 2006 ATTACK – TOWN OF HABBANIYAH, AL ANBAR PROVINCE ................................................................ 320

A. PLAINTIFFS THE JOHN TYLER LEE FAMILY ...................... 320

179. THE OCTOBER 11, 2006 ATTACK – RAWAH ................................... 321

A. PLAINTIFF JASON WILLIAM ROLLISON ............................. 321

180. THE OCTOBER 8, 2006 ATTACK – BALAD ..................................... 322

A. PLAINTIFFS THE RICHARD PHILEMON, JR. FAMILY ....... 322

181. THE OCTOBER 3, 2006 ATTACK – AL TAQADDUM ....................... 324

A. PLAINTIFF DALE M. HINKLEY ............................................. 324

182. THE OCTOBER 1, 2006 ATTACK – FALLUJAH ................................ 324

A. PLAINTIFFS THE JASON EDWARD MIKOLAJCIK FAMILY ............................................................................................. 324

183. THE SEPTEMBER 30, 2006 ATTACK – MSR TAMPA, SOUTH OF MOSUL ............................................................................................ 326

A. PLAINTIFFS THE JOHN DAVID, JR. FAMILY ....................... 326

184. THE SEPTEMBER 30, 2006 ATTACK – RAMADI ............................ 327

A. PLAINTIFF NICHOLAS B. ANDREWS .................................... 327

185. THE SEPTEMBER 20, 2006 ATTACK - BAQUBA .............................. 328

A. PLAINTIFF DOMINIC FRANKLIN MOODY ........................... 328

186. THE SEPTEMBER 15, 2006 ATTACK –FORWARD OPERATING BASE DIAMONDBACK, MOSUL ....................................................... 329

A. PLAINTIFF TAMI RENEI KEMPER-PENA ............................. 329

187. THE SEPTEMBER 15, 2006 ATTACK - MOSUL ................................ 330

A. PLAINTIFFS THE GILBERT MATTHEW BOYNTON FAMILY ............................................................................................. 330

188. THE SEPTEMBER 14, 2006 ATTACK – ROUTE APRIL, FALLUJAH .......... 331

A. PLAINTIFFS THE CHRISTOPHER BRIAN SAUNDERS FAMILY .......... 331

189. THE SEPTEMBER 7, 2006 ATTACK – AL ANBAR PROVINCE .......... 333

A. PLAINTIFFS THE BENJAMIN TRAINER FAMILY .......... 333

190. THE AUGUST 29, 2006 ATTACK – SADR AL YUSIFIYAH .......... 334

A. PLAINTIFFS THE MATTHEW J. VOSBEIN FAMILY .......... 334

191. THE AUGUST 15, 2006 ATTACK – HADITHA .......... 336

A. PLAINTIFFS THE TIMOTHY GRAJKO FAMILY .......... 336

192. THE MID-AUGUST, 2006 ATTACK - BAQUBAH .......... 338

A. PLAINTIFF MATTHEW P. HALEY .......... 338

193. THE AUGUST 6, 2006 ATTACK - BAGHDAD .......... 339

A. PLAINTIFF MATTHEW P. HALEY .......... 339

194. THE JULY 27, 2006 ATTACK – RAMADI .......... 340

A. PLAINTIFFS THE ALFONSO G. MATOS MESA FAMILY .......... 340

195. THE JULY 26, 2006 ATTACK – ROUTE MINNEAPOLIS, MOSUL .......... 341

A. PLAINTIFFS THE SHAWN MICHAEL CUMMINGS FAMILY .......... 341

196. THE JULY 20, 2006 ATTACK - KHALIDIYAH .......... 342

A. PLAINTIFF PATRICK ANDREW DIENER .......... 342

197. THE JULY 20, 2006 ATTACK – RAMADI .......... 343

A. PLAINTIFFS THE NICHOLAS ANTHONY WEST FAMILY .......... 343

198. THE JULY 15, 2006 ATTACK – TRAFFIC CIRCLE, AR RAMADI, AL ANBAR PROVINCE .......... 344

A. PLAINTIFFS THE LATHAN HILL FAMILY .......... 344

199. THE JULY 15, 2006 ATTACK - RAMADI .......... 346

A. PLAINTIFF WALTER LEE HAM JR. ....................................... 346

200. THE JULY 13, 2006 ATTACK – MUQDADIYAH ............................... 347

A. PLAINTIFFS THE VICTOR DOMINGUEZ FAMILY ............. 347

201. THE JULY 10, 2006 ATTACK – BAGHDAD ....................................... 348

A. PLAINTIFFS THE JEFFREY J. SECKINGER FAMILY ........... 348

202. THE JULY 10, 2006 ATTACK – BALAD ............................................. 349

A. PLAINTIFF DHUNTHA SHAYRE WYATT ............................. 349

203. THE JUNE 22, 2006 ATTACK – AL QAIM, AL ANBAR .................... 350

A. PLAINTIFF BRYAN ESCOBEDO ............................................ 350

204. THE JUNE 7, 2006 ATTACK - ROUTE CANUCKS, NORTHWEST OF BAGHDAD ............................................................................. 351

A. PLAINTIFF JERRY DANIEL WALKER .................................. 351

205. THE JUNE 4, 2006 ATTACK – BAIJI ................................................... 352

A. PLAINTIFFS THE HECTOR M. LOPEZ, JR. FAMILY ............ 352

206. THE JUNE 3, 2006 ATTACK – KIRKUK ............................................. 353

A. PLAINTIFFS THE MICHAEL LOCKE FAMILY ...................... 353

207. THE MAY 25, 2006 ATTACK – RAMADI ........................................... 355

A. PLAINTIFFS THE JOSEPH MONFORTE, JR. FAMILY .......... 355

208. THE MAY 24, 2006 ATTACK – DOWNTOWN RAMADI, AL-ANBAR PROVINCE ............................................................................. 356

A. PLAINTIFF JOHN PAUL ALVAREZ ....................................... 356

209. THE MAY 11, 2006 ATTACK – ROAD ASR HERSHEY ..................... 357

A. PLAINTIFF DEVIN SAMUEL HARVEY ................................. 357

210. THE MAY 6, 2006 ATTACK – ABA GRAIB ........................................ 358

A. PLAINTIFF ROWDY ZANE BURNEY .................................... 358

211. THE APRIL 16, 2006 ATTACK – AL KARMAH ................................. 359

A. PLAINTIFF JOEY J. BRAMME ....................................................359

212. THE APRIL 13, 2006 ATTACK – AL KARMAH ....................................360

A. PLAINTIFF JOEY J. BRAMME ....................................................360

213. THE MARCH 30, 2006 ATTACK – BAGHDAD ....................................361

A. PLAINTIFFS THE FLOYD C. PETERS, JR. FAMILY ..............361

214. THE MARCH 28, 2006 ATTACK - HABBANIYAH ..............................363

A. PLAINTIFFS THE PHILLIP L. BELL FAMILY .........................363

215. THE MARCH 4, 2006 ATTACK – HAQLANIYA IRAQ, AL ANBAR ..........................................................................................................365

A. PLAINTIFFS THE NICHOLAS HAMILTON KYLE FAMILY 365

216. THE MARCH 4, 2006 ATTACK- HAQLANIYA, AL ANBAR PROVINCE ..........................................................................................366

A. PLAINTIFFS THE GERARDO CONTRERAS FAMILY ..........366

217. THE MARCH 4, 2006 ATTACK – AL KHAFFEJIYAH ........................368

A. PLAINTIFF MATTHEW HAVILAND ........................................368

218. THE FEBRUARY 28, 2006 ATTACK - BAGHDAD ..............................369

A. PLAINTIFF JEREMY MICHAEL GIRDLER .............................369

219. THE FEBRUARY 25, 2006 ATTACK – CITY OF RAMADI ................370

A. PLAINTIFF DANIEL MICHAEL JACOBS ................................370

220. THE FEBRUARY 23, 2006 ATTACK – BAGHDAD .............................371

A. PLAINTIFF RONALD SAMS, SR. ..............................................371

221. THE FEBRUARY 18, 2006 ATTACK – FORWARD OPERATING BASE WARRIOR, KIRKUK .......................................................................372

A. PLAINTIFF CHRISTOPHER DAVID CONDREY ......................372

222. THE FEBRUARY 10, 2006 ATTACK – AD-DAWR ...............................373

A. PLAINTIFFS THE RICKY A. BAXTER FAMILY .....................373

223. THE FEBRUARY 6, 2006 ATTACK – TRAFFIC CIRCLE IN DOWNTOWN RAMADI .......... 375

A. PLAINTIFF NATHAN RAINES .......... 375

224. THE FEBRUARY 6, 2006 ATTACK – HIT .......... 376

A. PLAINTIFF JIMMY OWEKA OCHAN .......... 376

225. THE FEBRUARY 6, 2006 ATTACK – AL ASAD .......... 377

A. PLAINTIFF NICHOLAS MICHAEL LATONA .......... 377

226. THE FEBRUARY 4, 2006 ATTACK – ROUTE MICHIGAN & CINEMA, RAMADI .......... 378

A. PLAINTIFF NATHAN RAINES .......... 378

227. THE JANUARY 23, 2006 ATTACK – ROUTE TEMPLE, SOUTHWEST OF BAGHDAD, BABIL PROVINCE .......... 379

A. PLAINTIFFS THE MATTHEW DAVID HUNTER FAMILY .......... 379

228. THE JANUARY 17, 2006 ATTACK – RAMADI .......... 381

A. PLAINTIFFS THE JAMES NELSON SPARKS III FAMILY .......... 381

229. THE DECEMBER 22, 2005 ATTACK – BUBLE-SHAM .......... 382

A. PLAINTIFF DANIEL JOHANNES BRINK .......... 382

230. THE DECEMBER 21, 2005 ATTACK - BAGHDAD .......... 384

A. PLAINTIFF JEREMY MICHAEL GIRDLER .......... 384

231. THE DECEMBER 16, 2005 ATTACK – ROUTE AMY, BALAD .......... 384

A. PLAINTIFF JAMIE LEE WHITAKER .......... 384

232. THE DECEMBER 5, 2005 ATTACK – ISKANDARIYA .......... 386

A. PLAINTIFF CHRISTOPHER HASS .......... 386

233. THE NOVEMBER 9, 2005 ATTACK – FALLUJAH .......... 387

A. PLAINTIFF MARIO A. MENA .......... 387

234. THE NOVEMBER 5, 2005 ATTACK – BAGHDAD .......... 388

A. PLAINTIFF LEO PATRICK MCKEON ....................................388

235. THE OCTOBER 29, 2005 ATTACK – TAL AFAR ...............................388

A. PLAINTIFFS THE BRANDON LAMAR DALE FAMILY .......388

236. THE OCTOBER 26, 2005 ATTACK – AL ANBAR..............................390

A. PLAINTIFFS THE MARTIN SICAIROS FAMILY ...................390

237. THE OCTOBER 18, 2005 ATTACK – AR RUTBAH............................391

A. PLAINTIFF BRIAN PATRICK JOYCE, JR. .............................391

238. THE OCTOBER 17, 2005 ATTACK – SAMARRA ...............................392

A. PLAINTIFFS THE DARREN DEAN HOWE FAMILY.............392

239. THE OCTOBER 15, 2005 ATTACK – AR RAMADI ............................394

A. PLAINTIFFS THE RICHARD A. HARDY FAMILY ................394

240. THE OCTOBER 15, 2005 ATTACK - AR RAMADI.............................395

A. PLAINTIFF NESSIM EDWARD FOURNIER[2] ..........................395

241. THE OCTOBER 8, 2005 ATTACK – RAMADI....................................396

A. PLAINTIFFS THE KADE L. HINKHOUSE FAMILY ..............396

242. THE SEPTEMBER 29, 2005 ATTACK –JABOUR, SOUTHWEST OF BAGHDAD..........................................................................................398

A. PLAINTIFFS THE JASEN WATTS FAMILY ...........................398

243. THE SEPTEMBER 22, 2005 ATTACK – AL ZAIDAN.........................399

A. PLAINTIFF LEE PAUL HAYWOOD........................................399

244. THE SEPTEMBER 19, 2005 ATTACK – AL KARMA .........................400

A. PLAINTIFFS THE BOBBY CHRISTOPHER, III FAMILY ......400

B. PLAINTIFFS THE MARTIN A. MCCLUNG II FAMILY .........402

245. THE SEPTEMBER 15, 2005 ATTACK – HADITHA ............................403

A. PLAINTIFF LARRY GRIFFIS ..................................................403

246. THE SEPTEMBER 15, 2005 ATTACK – ASR URANIUM IVO HADITHA DAM, NW OF UDASIYAH ............ 404

A. PLAINTIFFS THE ANTHONY WILLIAM GREEN FAMILY . 404

247. THE SEPTEMBER 12, 2005 ATTACK – SAMARRA ............ 405

A. PLAINTIFFS THE BRANDON MICHAEL PARROTT FAMILY ............ 405

248. THE SEPTEMBER 11, 2005 ATTACK – RAWAH ............ 407

A. PLAINTIFF JEREMY LEE BALLARD ............ 407

249. THE SEPTEMBER 9, 2005 ATTACK – HIT ............ 408

A. PLAINTIFFS THE ARAGORN THOR WOLD FAMILY ............ 408

250. THE SEPTEMBER 9, 2005 ATTACK – SAMARRA ............ 409

A. PLAINTIFF DAVID W. BRONSON ............ 409

251. THE AUGUST 26, 2005 ATTACK - HIT ............ 410

A. PLAINTIFFS THE MARK HOWARD BEYERS FAMILY ............ 410

252. THE AUGUST 23, 2005 ATTACK – OP HOTEL, AR RAMADI ............ 411

A. PLAINTIFF NESSIM EDWARD FOURNIER ............ 411

253. THE AUGUST 23, 2005 ATTACK – OP HOTEL, ROUTE MICHIGAN, BETWEEN RAMADI AND FALLUJAH ............ 413

A. PLAINTIFF GEORGE OVID SIMMONS, JR. ............ 413

254. THE AUGUST 23, 2005 ATTACK – RAMADI ............ 414

A. PLAINTIFF ANDREW HIGGINS ............ 414

255. THE AUGUST 22, 2005 ATTACK – AL KARMAH, AL ANBAR PROVINCE ............ 415

A. PLAINTIFFS THE ARTHUR L. RIZER, III FAMILY ............ 415

256. THE AUGUST 19, 2005 ATTACK– FALLUJAH ............ 416

A. PLAINTIFF ADAM C. BIRDSELL ............ 416

257. THE AUGUST 11, 2005 ATTACK – NORTH OF HAWIJA, BETWEEN KIRKUK & MOSUL .......... 417

A. PLAINTIFFS THE BRETT A. MILLER FAMILY .......... 417

258. THE AUGUST 3, 2005 ATTACK – BETWEEN HADITHA AND BARWANAH .......... 418

A. PLAINTIFFS THE NICHOLAS WILLIAM BAART BLOEM FAMILY .......... 418

259. THE JULY 31, 2005 ATTACK – HIT .......... 421

A. PLAINTIFF ANDREW JOHN LENZ .......... 421

260. THE JULY 29, 2005 ATTACK – FALLUJAH .......... 422

A. PLAINTIFFS THE BOBBY CHRISTOPHER, III FAMILY .......... 422

261. THE JULY 5, 2005 ATTACK - HIT .......... 423

A. PLAINTIFFS THE JOSHUA JONATHAN COOLEY FAMILY 423

262. THE JUNE 29, 2005 ATTACK – HABBANIYA .......... 424

A. PLAINTIFF CHARLES EUGENE RUSSELL .......... 424

263. JULY 10, 2005 ATTACKS- MOSUL .......... 425

A. PLAINTIFF JARROD SCOTT HALLMAN .......... 425

264. THE JUNE 15, 2005 ATTACK – FOB FALCON, BAGHDAD .......... 426

A. PLAINTIFF ERIC EUGENE RODRIQUEZ .......... 426

265. THE MAY 21, 2005 ATTACK – 3KM SOUTH OF HADITHAH DAM .......... 427

A. PLAINTIFF JASON THOMAS WOODLIFF .......... 427

266. THE MAY 13, 2005 ATTACK – BALAD .......... 428

A. PLAINTIFF CHRISTOPHER F. SWARTZ .......... 428

267. THE APRIL 22, 2005 ATTACK - HABBANIYAH .......... 429

A. PLAINTIFF JAMES MICHAEL HURST .......... 429

268. THE APRIL 15, 2005 ATTACK - KURADA NEIGHBORHOOD, BAGHDAD......430

A. PLAINTIFF JOSEF ERNEST BAUMANN......430

269. THE APRIL 13, 2005 ATTACK – FOB HIT......431

A. PLAINTIFF TIMOTHY MICHAEL HATCH......431

270. APRIL 2, 2005 ATTACK – VICINITY OF ABU GHRAIB PRISON......432

A. PLAINTIFF LEONDRAE DEMORRIS RICE......432

271. THE APRIL 2005 ATTACK - MOSUL......433

A. PLAINTIFFS THE KYLE MATTHEW LEMIEUX FAMILY......433

272. THE MARCH 27, 2005 ATTACK – CAMP AL-TAQAADUM......435

A. PLAINTIFFS THE EDGAR MALDONADO FAMILY......435

273. THE MARCH 25, 2005 ATTACK – MAIN SUPPLY ROUTE URANIUM, CLOSE TO AL-ASAD AIR BASE......437

A. PLAINTIFF BRIAN CHAD BECKWITH......437

274. THE SEPTEMBER 12, 2005 ATTACK – SAMARRA......438

A. PLAINTIFFS THE DANIEL FRANCIS PEARSON FAMILY......438

275. THE MARCH 17, 2005 ATTACK – RAMADI......439

A. PLAINTIFFS THE DANIEL J. ERBE FAMILY......439

276. THE MARCH 15, 2005 ATTACK - BAGHDAD......440

A. PLAINTIFF DOUGLAS HAMILTON KINARD JR.......440

277. THE MARCH 13, 2005 ATTACK – MSR MOBILE, AR-RUTBAH......441

A. PLAINTIFF BRIAN THOMAS SKRABA......441

278. THE MARCH 9, 2005 ATTACK – FOB FALCON, BAGHDAD......442

A. PLAINTIFF ERIC EUGENE RODRIQUEZ......442

279. THE MARCH 2005 ATTACK - MOSUL......443

A. PLAINTIFFS THE KYLE MATTHEW LEMIEUX FAMILY......443

280. THE FEBRUARY 19, 2005 ATTACK – SAMARRA .......... 445

A. PLAINTIFFS THE PATRICK JOHN BRADY FAMILY .......... 445

281. THE JANUARY 23, 2005 ATTACK - PATROL BASE UVANNI, SAMARRA .......... 446

A. PLAINTIFFS THE AARON SMITH FAMILY .......... 446

282. THE JANUARY 7, 2005 ATTACK – ISKANDARIYA .......... 447

A. PLAINTIFF JOHN F. KUNKEL, JR. .......... 447

283. THE JANUARY 3, 2005 ATTACK – BAGHDAD .......... 448

A. PLAINTIFFS THE SERGE HAGOPIAN FAMILY .......... 448

284. THE DECEMBER 29, 2004 ATTACK – MOSUL .......... 449

A. PLAINTIFF JARROD SCOTT HALLMAN .......... 449

285. THE DECEMBER 12, 2004 ATTACK - FALLUJAH .......... 450

A. PLAINTIFFS THE MARTIN GONZALEZ FAMILY .......... 450

286. THE DECEMBER 13, 2004 ATTACK - FALLUJAH .......... 452

A. PLAINTIFFS THE MARTIN GONZALEZ FAMILY .......... 452

287. THE NOVEMBER 28, 2004 ATTACK – HABBANIYAH .......... 453

A. PLAINTIFFS THE FRANCIS D. GARREN FAMILY .......... 453

288. THE NOVEMBER 26, 2004 ATTACK - EASTERN SIDE OF FALLUJAH .......... 454

A. PLAINTIFFS THE ROBERT LOUIS DUNHAM FAMILY .......... 454

289. THE NOVEMBER 23, 2004 ATTACK – ABU GHRAIB .......... 456

A. PLAINTIFFS THE JOHN PARCELL FAMILY .......... 456

290. THE NOVEMBER 23, 2004 ATTACK - AVGHANI .......... 457

A. PLAINTIFF RUSSELL BALDWIN .......... 457

291. THE NOVEMBER 13, 2004 ATTACK - FALLUJAH .......... 458

A. PLAINTIFFS THE JOSE VELEZ FAMILY .......... 458

292. THE NOVEMBER 13, 2004 ATTACK - FALLUJAH............................459

A. PLAINTIFFS THE STANLEY GOODIN, III FAMILY .............459

293. THE NOVEMBER 11, 2004 ATTACK – HAWIJUH............................460

A. PLAINTIFFS THE LUTHER BROWN FAMILY.......................460

294. THE NOVEMBER 10, 2004 ATTACK - FALLUJAH............................461

A. PLAINTIFFS THE MARTIN GONZALEZ FAMILY ................461

295. THE NOVEMBER 10, 2004 ATTACK - NORTH CENTRAL FALLUJAH ..........................................................................................463

A. PLAINTIFFS THE ROBERT LOUIS DUNHAM FAMILY.......463

296. THE AUGUST 22, 2004 ATTACK – AL KARMA ................................464

A. PLAINTIFF JAMES H. SPERRY ...............................................464

297. THE NOVEMBER 9, 2004 ATTACK – FALLUJAH.........................465

A. PLAINTIFF JAMES H. SPERRY ...............................................465

298. THE NOVEMBER 2004 ATTACK - HABBANIYAH..........................466

A. PLAINTIFF JAMES MICHAEL HURST...................................466

299. THE NOVEMBER 2004 ATTACK - FALLUJAH.................................467

A. PLAINTIFF BRIAN MICHAEL HAYDEN ................................467

300. THE NOVEMBER 1, 2004 ATTACK – CAMP VICTORY, SOUTHWEST OF BAGHDAD ..............................................................468

A. PLAINTIFF BRADLEY CHRISTIAN TANDE, JR....................468

301. THE NOVEMBER 11, 2004 ATTACK - FALLUJAH...........................469

A. PLAINTIFF RAY LEONARD LOPEZ.......................................469

302. THE OCTOBER 11, 2004 ATTACK- FALLUJAH ................................470

A. PLAINTIFF RAY LEONARD LOPEZ.......................................470

303. THE JULY 15, 2005 ATTACK – BAGHDAD.......................................471

A. PLAINTIFF JOHN WILLIAM FUHRMAN................................471

304. THE OCTOBER 11, 2004 ATTACK – FOB RAMADI, AL ANBAR....472

A. PLAINTIFF JOSEPH CHRISTOPHER FERRARO ....................472

305. THE SEPTEMBER 30, 2004 ATTACK – BAGHDAD ..........................473

A. PLAINTIFFS THE TYRON KIM FAMILY................................473

306. THE SEPTEMBER 30, 2004 ATTACK – MOSUL ................................474

A. PLAINTIFFS THE CHRISTOPHER ROBERT GALKA FAMILY ....................................................................................474

307. THE SEPTEMBER 19, 2004 ATTACK – BAGHDAD ..........................476

A. PLAINTIFF ROBERT DIXON ..................................................476

308. THE SEPTEMBER 13, 2004 ATTACK – CAMP SATHER, BAGHDAD AIRPORT ......................................................................................477

A. PLAINTIFF ROBERT PAUL POTTS, III ..................................477

309. THE SEPTEMBER 13, 2004 ATTACK – NORTHERN MOSUL..........478

A. PLAINTIFF JAMIE L. FRAZIER...............................................478

310. THE SEPTEMBER 12, 2004 ATTACK – CAMP CROPPER ................479

A. PLAINTIFFS THE MARCO A. VILLEGAS FAMILY ..............479

311. THE SEPTEMBER 5, 2004 ATTACK – TAL AFAR.............................481

A. PLAINTIFFS THE ERIK ERNST SANDSTROM FAMILY......481

312. THE AUGUST 17, 2004 ATTACK – BAQUBAH.................................482

A. PLAINTIFFS THE EDWARD PULIDO FAMILY .....................482

313. THE AUGUST 1, 2004 ATTACK – BALAD........................................484

A. PLAINTIFFS THE ARMANDO HERNANDEZ FAMILY ........484

314. THE AUGUST 2004 ATTACK - NAJAF..............................................485

A. PLAINTIFFS THE STANLEY GOODIN, III FAMILY .............485

315. THE JULY 24, 2004 ATTACK – MAIN SUPPLY ROUTE MICHIGAN IN RAMADI ..........................................................................................486

A. PLAINTIFFS THE JESSE J. LONGORIA FAMILY .................. 486

316. THE JULY 21, 2004 ATTACK - SAMARRA .................................. 488

A. PLAINTIFFS THE LARRY ALBERT CARR, JR. FAMILY ..... 488

317. THE JULY 8, 2004 ATTACK – SAMARRA .................................. 490

A. PLAINTIFF DARYN SWALLOW .............................................. 490

318. THE JULY 7, 2004 ATTACK – TIKRIT ....................................... 491

A. PLAINTIFF HAROLD T. ATKINSON, JR. ................................ 491

319. THE JULY 2, 2004 ATTACK – ROUTE CARDINAL, WEST BAGHDAD ......................................................................................... 492

A. PLAINTIFF HARRISON MANYOMA ...................................... 492

320. THE JUNE 26, 2004 ATTACK – BAGHDAD MUSEUM AREA, NEAR SADR CITY, BAGHDAD .......................................................... 493

A. PLAINTIFFS THE ROBERT LANCE CAVER FAMILY .......... 493

321. THE LATE JUNE, 2004 ATTACK – HIT, AL ANBAR PROVINCE .... 495

A. PLAINTIFF MARIO A. MENA .................................................. 495

322. THE JUNE 17, 2004 ATTACK – AL ANBAR PROVINCE .................. 496

A. PLAINTIFF MARIO A. MENA .................................................. 496

323. THE JUNE 11, 2004 ATTACK – FALLUJAH ................................... 497

A. PLAINTIFF TIMOTHY BREDBERG ......................................... 497

324. THE JUNE 7, 2004 ATTACK – MOSUL ......................................... 498

A. PLAINTIFFS THE MATTHEW WALKER GOWIN FAMILY . 498

325. THE JUNE 6, 2004 ATTACK – BAGHDAD ..................................... 499

A. PLAINTIFFS THE JOHN L. LAWTON JR. FAMILY ............... 499

326. THE JUNE 4, 2004 ATTACK – NORTH BAGHDAD ........................ 500

A. PLAINTIFF JESSE GEER .......................................................... 500

327. THE MAY 25, 2004 ATTACK – ISKANDARIYA ................................ 501

A. PLAINTIFFS THE THOMAS M. BROOKS FAMILY .............501

328. THE MAY 14, 2004 ATTACK – MUHMADIYA .................................502

A. PLAINTIFF PATRICK WICKENS ...........................................502

329. THE MAY 6, 2004 ATTACK – 14TH OF JULY BRIDGE, BAGHDAD ..........................................................................................................503

A. PLAINTIFF STACEY DARRELL RICE ...................................503

330. THE MAY 2, 2004 ATTACK – ROUTE FORCE AND IP ROAD, BAGHDAD..........................................................................................504

A. PLAINTIFFS THE MARTIN LYNN WAGNER JR. FAMILY .504

331. THE APRIL 25, 2004 ATTACK – TAJI.................................................505

A. PLAINTIFFS THE JOIE L. WILLIAMS FAMILY.....................505

332. THE APRIL 23, 2004 ATTACK – FOB COBRA/BAQUBA .................507

A. PLAINTIFF JUSTIN ASHLEY GAGE ......................................507

333. THE APRIL 19, 2004 ATTACK – BAGHDAD.....................................507

A. PLAINTIFF JOHN COLEMAN.................................................507

334. THE APRIL 9, 2004 ATTACK - BAGHDAD........................................508

A. PLAINTIFFS THE JUSTIN ROY ROJAS FAMILY ..................508

335. THE APRIL 8, 2004 ATTACK – FALLUJAH.......................................509

A. PLAINTIFFS THE ASHOT MALKHASSIAN FAMILY...........509

336. THE APRIL 8, 2004 ATTACK – MAHMUDIYA, AL ANBAR PROVINCE..........................................................................................511

A. PLAINTIFF BRIAN MICHAEL YORK....................................511

337. THE APRIL 7, 2004 ATTACK - FALLUJAH .......................................512

A. PLAINTIFF JAMES EDWARD WRIGHT ................................512

338. THE APRIL 7, 2004 ATTACK – RAMADI...........................................513

A. PLAINTIFF ELISHA JOSEPH ABBOTT ..................................513

339. THE APRIL 7, 2004 ATTACK - LATIFIYA ........................................ 514

A. PLAINTIFF STEPHEN KENT FERGUSON ............................... 514

340. THE APRIL 4, 2004 ATTACK – SADR CITY, BAGHDAD ................. 515

A. PLAINTIFFS THE JOSHUA MITCHELL ROUNTREE FAMILY ........................................................................................ 515

341. THE APRIL 4, 2004 ATTACK – SADR CITY ...................................... 517

A. PLAINTIFFS THE MATTHEW N. WOOTEN JR. FAMILY .... 517

342. THE MARCH 19, 2004 ATTACK – AL ANBAR PROVINCE............. 518

A. PLAINTIFF MARIO A. MENA.................................................. 518

343. THE MARCH 13, 2004 ATTACK - KARBALA ................................ 519

A. PLAINTIFF ROBERT JAMES PEARSON ................................ 519

344. THE JANUARY 2004 ATTACK – AL ANBAR PROVINCE................ 519

A. PLAINTIFFS THE MICHAEL L. NEUMANN FAMILY .......... 519

345. THE DECEMBER 10, 2003 ATTACK - MOSUL ................................ 521

A. PLAINTIFF AARON SCOTT ARTHUR BURKS...................... 521

346. THE NOVEMBER 25, 2003 ATTACK – ZONE 15, BAGHDAD ......... 523

A. PLAINTIFFS THE MICHAEL GAMBLE FAMILY .................. 523

347. THE NOVEMBER 20, 2003 ATTACK - KIRKUK ............................... 524

A. PLAINTIFFS THE MICHAEL JOSEPH JAMES FAMILY ....... 524

348. THE NOVEMBER 12, 2003 ATTACK – NASIRIYA ........................... 525

A. PLAINTIFFS THE FLOYD C. PETERS, JR. FAMILY.............. 525

349. THE NOVEMBER 12, 2003, ATTACK - AL-NASIRIYAH, IRAQ, ITALIAN MILITARY CAMP ............................................................ 527

A. PLAINTIFFS THE FREDDIE LEE KING, JR. FAMILY........... 527

350. THE OCTOBER 27, 2003 ATTACK – BAGHDAD.............................. 529

A. PLAINTIFF ROOSEVELT ROSS, JR. ........................................ 529

351. THE OCTOBER 21, 2003 ATTACK – ABU GHRAIB .......................... 530

A. PLAINTIFFS THE JOHN FLAMER FAMILY .......................... 530

352. THE OCTOBER 3, 2003 ATTACK – BALAD, SALAH AD DIN ......... 531

A. PLAINTIFFS THE PETER KEVIN LANDSTEINER FAMILY 531

353. THE SEPTEMBER 18, 2003 ATTACK – BAGHDAD .......................... 533

A. PLAINTIFFS THE WILLIAM F. GUNTER FAMILY ............... 533

354. THE SEPTEMBER 14, 2003 ATTACK – FALLUJAH .......................... 534

A. PLAINTIFF GEORGE PEREZ .................................................. 534

355. THE JULY 26, 2003 ATTACK - BASRAH .......................................... 536

A. PLAINTIFF YVENSON GALA .................................................. 536

356. THE JULY 23, 2003 ATTACK – RAMADI.......................................... 537

A. PLAINTIFFS THE JOSHUA T. BYERS FAMILY..................... 537

357. THE JULY 5, 2003 ATTACK - MSR TAMPA BETWEEN BIAP AND ABU GHRAIB ........................................................................................ 538

A. PLAINTIFFS THE RICARDO ALFREDO BRIZUELA, JR., FAMILY ........................................................................................ 538

358. THE MAY 28, 2003 ATTACK - BAGHDAD ........................................ 539

A. PLAINTIFFS THE MICHAEL GAMBLE FAMILY .................. 539

359. THE MAY 8, 2003 ATTACK – BAGHDAD ......................................... 541

A. PLAINTIFFS THE ARTHUR MOYE FAMILY ......................... 541

VII. ALL OF THE TERRORIST ATTACKS WERE ACTS OF INTERNATIONAL TERRORISM.................................................................................................. 543

VIII. THE ACTS OF IRAN CAUSED PLAINTIFFS' INJURIES AND DEATHS .... 545

IX. CLAIMS FOR RELIEF ................................................................................ 546

X. PRAYER FOR RELIEF ................................................................................ 550

## INDEX OF ACRONYMS

**AAH** – Asa'ib Ahl Al Haq or the "League of the Righteous"

**AAI** – Ansar al Islam

**AEDPA** – Antiterrorism and Effective Death Penalty Act of 1996

**AIO** – Aerospace Industries Organization

**AQ** - Al Qaida (a/k/a/ Al-Qaeda or Al-Qa'ida)

**AQI** – Al Qaida In Iraq (a/k/a Al-Qaeda In Iraq or Al-Qa'ida In Iraq ) in Iraq

**ASV** – Armored Security Vehicle

**ATA** – Anti-terrorism Act, 18 U.S.C. § 2333, *et seq.*

**BAS –** Battalion Aid Station

**BBC** – British Broadcasting Company

**BFV** – Bradley Fighting Vehicle

**CBI –** Central Bank of Iran

**CISADA** – Comprehensive Iran Sanctions, Accountability, and Divestment Act of 2010

**COP –** Combat Outpost

**DFAC** – Dining Facility

**DIO** – Defense Industries Organization

**EFP** – Explosively formed penetrators

**FinCEN** – Financial Crimes Enforcement Network

**FOB** – Forward Operating Base

**FSIA** – Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.*

**FTO** – Foreign Terrorist Organization

**HAMAS** – Ḥarakat al-Muqāwamah al-ʾIslāmiyyah Islamic Resistance Movement

**HMMWV** – High Mobility Multipurpose Wheeled Vehicle

**HRHS** – The Headquarters for the Restoration of Holy Shrines

**IAIO** – Iran Aviation Industries Organization

**IAV** – Interim Armored Vehicle

**ICEI** – Imensazen Consultant Engineers Institute

**IED** – Improvised explosive device

**IFV** – Infantry Fighting Vehicle

**IRAM** – Improvised Rocket Assisted Munitions

**IRGC** – Islamic Revolutionary Guard Corps

**IRGC-QF** – Islamic Revolutionary Guard Corps-Qods Force

**IRISL** – Islamic Republic of Iran Shipping Lines

**ISIL** – Islamic State of Iraq and the Levant aka "ISIS" or "Daesh"

**ITRSHRA** – Iran Threat Reduction and Syria Human Rights Act of 2012

**JAM** – Jaysch al Mahdi or the "Mahdi Army"

**JASTA** – Justice Against Sponsors of Terrorism Act, Pub. L. 114-222, Sept. 28, 2016, 130 Stat. 852

**KAA** - Khatam al-Anbiya Construction Company

**KH** – Kata'ib Hizballah

**KRG** – Kurdistan Regional Government

**LMTV** – Light Medium Tactical Vehicle

**LSA –** Logistical Support Area

**MNF-I** – Multi National Forces in Iraq

**MOD** – Ministry of Defense

**MODAFL** – Iran's Ministry of Defense and Armed Forces Logistics

**MOIS** – The Iranian Ministry of Intelligence and Security a/k/a "Vezarat-e Ettela'at Va Amniat-e Keshvar" a/k/a "VEVAK" a/k/a "VAJA"

**MRAP** – Mine-Resistant Ambush Protected

**MSR** – Main Supply Route

**MTC** – Medium Transport Company

**NIOC** – National Iranian Oil Company

**OFAC** – Office of Foreign Assets Control

**OP** – Observation Point

**PDB** – Promised Day Brigades

**PTSD** – Post Traumatic Stress Disorder

**QRF** – Quick Response Force

**RJF** – Reformation and Jihad Front

**RPG** – Rocket Propelled Grenade

**SDGT** – Specially Designated Global Terrorist

**SDN** – Specially Designated National

**SDT** – Specially Designated Terrorist

**TBI** – Traumatic Brain Injury

**TTP –** Tactics, Techniques, and Procedures

**UBL** – Usama bin Laden

**WMD** – Weapons of Mass Destruction

## I. NATURE OF THE CASE

1. There can be no question the Islamic Republic of Iran ("Iran") is, and at all relevant times has been, actively engaged in materially supporting and promoting terrorist attacks against U.S. nationals[1] in Iraq, that its efforts began even before the U.S. invasion in 2003, that such support includes the provision of money, weapons, training, and advisors, and that it has solidified an organizational/operational relationship between Lebanese Hizbollah (or "Hezbollah"), Al Qaida, Ansar al Sunna/Ansar al Islam ("Ansar al Islam"), and various "Special Groups."

2. To effectuate its campaign of terror against the citizens of Iraq and the coalition forces serving there, Iran worked hand in glove with its agents and instrumentalities, including its state-owned or state-controlled financial institutions, and government agencies.

3. In order to fund this terror campaign in Iraq, Iran directed its state owned and/or operated banks, including Defendants Bank Markazi Jomhouri Islami Iran ("Bank Markazi," "Central Bank of Iran" or "CBI"), Bank Melli Iran, and the state- owned and operated National Iranian Oil Company ("NIOC") to conspire with an assortment of Western financial institutions willing to substantially assist Iran to evade U.S. and international economic sanctions, conduct illicit trade-finance transactions, and illegally disguise financial payments to and from U.S. dollar-denominated accounts.

4. Defendant Iran's aforementioned agents included the U.S.-designated Foreign Terrorist Organization ("FTO") (as that term is defined in 8 U.S.C. § 1189 of the Antiterrorism

---

[1] As used herein, the terms "United States' nationals," "nationals of the United States," and "U.S. nationals" shall have the same meaning as set forth in the Immigration and Nationality Act, codified at 8 U.S.C. § 1101(a)(22), which defines the term "national of the United States" as ". . . (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States."

and Effective Death Penalty Act of 1996 ("AEDPA")) Hezbollah;[2] Defendant the Islamic Revolutionary Guard Corps ("IRGC"), whose subdivision known as the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF") is a U.S.-designated Specially Designated Global Terrorist ("SDGT"); Iran's Ministry of Intelligence and Security ("MOIS") (an SDGT and Specially Designated National, "SDN"), and other terrorist agents that included a litany of Iraqi Shi'a terror groups referred to herein collectively as "Special Groups."[3]

5. Iran also conspired with and materially supported Sunni FTOs Ansar al Islam ("AAI") and Al Qaida ("AQ") to terrorize the people of Iraq and Coalition Forces, seeking to disrupt the peacekeeping process and prevent the establishment of free and democratic Iraq.[4]

6. The acts of international terrorism[5] at issue in this Action (the "Terrorist Attacks") were perpetrated by agents of Iran- the Special Groups, AAI, AQ, and other terrorists ("Terrorist Groups"), all of whom were materially (and substantially) supported, directly and/or indirectly, by

---

[2] The pronunciation and spelling of "Hezbollah" (also known as "Hizbollah" and "Hizbu'llah), is based on region and dialect, but all translate to the "Party of Allah." As used herein, Hezbollah and Hizbollah refer to a Shiite Muslim political party and militant group the United States and European Union consider a foreign terrorist organization.

[3] Discussed in more detail below, Special Groups are terrorist organizations established and funded by Iran.

[4] The U.S. Dept. of State designated Al Qa'ida, Ansar al Islam, and Al-Qa'ida in Iraq ("AQI") as Foreign Terrorist Organizations on October 8, 1999, March 22, 2004, and December 17, 2004, respectively.

[5] As used herein, the term "international terrorism" shall have the same meaning as set forth at 18 U.S.C. § 2331(1), which defines international terrorism as "activities that (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State; (B) appear to be intended (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the person they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum."

Defendants.

7. The Terrorist Attacks resulted in the deaths, maiming, and/or otherwise injury to Plaintiffs and/or Plaintiffs' family members.

8. This is a civil action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611 (hereinafter "FSIA") for wrongful death, personal injury and related torts, by the estates and families of United States' nationals and/or members of the U.S. armed forces (as defined in 10 U.S.C. § 101) who were killed or injured by Defendants and/or their agents in Iraq from 2003 to 2011 (the "Relevant Period").

9. None of the Terrorist Attacks were acts occurring in the course of (A) declared war; (B) armed conflict, whether or not war has been declared, between two or more nations; or (C) armed conflict between military forces of any origin.

10. Iran serves as a command, financial and/or logistical conduit for various terrorist groups, including the Terrorist Groups and FTOs named herein, and their terrorist activities, specifically including the Terrorist Attacks which killed or injured Plaintiffs or Plaintiffs' family members. Defendants knew they were supporting terrorists and FTOs.

11. As detailed below, the Defendants herein directed millions of U.S. dollars in arms, equipment and material to Hezbollah, MOIS, the IRGC, and the IRGC-QF, which, in turn, trained, armed, supplied and funded Iran's terrorist agents in Iraq in carrying out their attacks against Plaintiffs and their family members.

12. At all relevant times, Defendants intentionally, knowingly and/or recklessly provided material support, directly or indirectly, to the Special Groups, Ansar al Islam, Al Qaida and other terrorists, that, at all relevant times, engaged in acts of international terrorism against the United States and nationals of the United States, including Plaintiffs.

13. At all relevant times, Defendants intentionally, knowingly and/or recklessly contributed substantial and material support and/or resources, directly and/or indirectly, to persons and/or organizations that posed a significant risk of committing acts of terrorism that threatened the security of nationals of the United States.

14. Plaintiffs' claims arise from separate acts of international terrorism that occurred throughout Iraq between 2003 and 2011.

## II. JURISDICTION AND VENUE

15. Jurisdiction and venue are proper in this Court.

### 1. THIS COURT HAS JURISDICTION OVER ALL CLAIMS AND ALL PARTIES.

16. This Court has jurisdiction over the subject matter of this Action and Defendants pursuant to 28 U.S.C. § 1330(a)–(b), 1331, 1332(a)(2), and the FSIA, 28 U.S.C. § 1605(a)(2).

17. This Court may exercise personal jurisdiction over all parties to this Action.

#### A. THIS COURT MAY EXERCISE JURISDICTION OVER THE SUBJECT MATTER OF ALL CLAIMS ASSERTED HEREIN.

18. This Court may exercise its original jurisdiction over claims against the Islamic Republic of Iran pursuant to 28 U.S.C. § 1330(a). This is a nonjury civil action for relief *in personam* in the form of money damages against a foreign state as defined in 28 U.S.C. § 1603(a)[6] for personal injury or death that was caused by an act, extrajudicial killing, or the provision of

---

[6] 28 U.S.C. § 1603(a) defines "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." The statute defines an "agency or instrumentality of a foreign state as any entity - (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of the foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by the foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e), nor created under the laws of any third country." 28 U.S.C. § 1603(a)–(b).

material support or resources for such an act.

### *i. Foreign Sovereign Immunities Act*

19. 28 U.S.C. § 1605A exempts the Islamic Republic of Iran from foreign sovereign immunity because it is a designated State Sponsor of Terrorism. Further, 28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a State Sponsor of Terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for wrongful death, personal injury, and related torts.

20. The United States officially designated Iran a State Sponsor of Terrorism on January 19, 1984, pursuant to § 6(j) of the Export Administration Act, § 40 of the Arms Export Control Act, and § 620A of the Foreign Assistance Act, and has renewed said designation annually.

21. Iran was designated as a State Sponsor of Terror at all times during the Relevant Period.

22. At all relevant times, Plaintiffs were nationals of the United States, members of the U.S armed forces, U.S government contractors, or the legal representative thereof, as defined under 28 U.S.C. § 1605A(c).

23. None of the attacks alleged herein occurred within the territory of the Islamic Republic of Iran. This fact renders inapplicable the FSIA's requirement that Plaintiffs afford Defendants an opportunity to arbitrate.

## B. THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER ALL PARTIES TO THIS ACTION.

24. Plaintiffs consent to this Court's exercise of personal jurisdiction over them.

25. This Court has jurisdiction over this matter and over the Defendants pursuant to 28 U.S.C. §§ 1330(a)–(b), 1331, 1332(a)(2), and 1605A(a)(1), which create subject-matter and

personal jurisdiction for civil actions for wrongful death and personal injury against State Sponsors of Terrorism and their officials, employees and agents.

26. This Court may exercise personal jurisdiction over the Islamic Republic of Iran pursuant to 28 U.S.C. § 1330(b) and the applicable exception to immunity in 28 U.S.C. § 1605A(a)(1). Together, these provide for personal jurisdiction over Iran and agents and instrumentalities for claims arising under 28 U.S.C. § 1330(a) upon valid service of process under 28 U.S.C. § 1608.

27. Further, that exercise of personal jurisdiction is reasonable; foreign sovereigns and their extensively controlled instrumentalities are not "persons" under the Fifth Amendment's Due Process Clause. That exercise of personal jurisdiction is consistent with the forum's manifest interest in providing effective means of redress for its residents.

### 2. VENUE IS PROPER IN THIS COURT.

28. Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

29. Venue is proper in this district as to the Islamic Republic of Iran pursuant to 28 U.S.C. § 1391(f)(4), which provides that civil actions against a foreign state may be brought in the United States District Court for the District of Columbia.

## III. LEGISLATIVE BACKGROUND

30. This case is brought by and/or on behalf of U.S. nationals and/or family members of such U.S. nationals who were injured and/or killed in certain acts of international terrorism caused by Defendants.

31. Defendants materially and substantially supported the IRGC, IRGC-QF, MOIS, Hezbollah, Special Groups, Ansar al Islam, Al Qaida, and other terrorists for the purpose of killing, maiming, and/or otherwise injuring U.S. nationals, including Plaintiffs.

32. In 1996, as part of the AEDPA, Congress amended the FSIA to allow U.S. victims

of terrorism to sue designated State Sponsors of Terrorism, such as Iran, for their terrorist acts.[7] Pursuant to the National Defense Authorization Act for Fiscal Year 2008, Public L. No. 110-181, members of the United States armed forces, employees of the U.S. government and individuals performing a contract awarded by the United States Government, acting within the scope of the employee's employment may also bring private claims against State Sponsors of Terrorism.[8]

33. Congress's purpose in lifting the sovereign immunity under the AEDPA was to "affect the conduct of terrorist states outside the U.S. [by promoting] safety of U.S. citizens who travel overseas."[9]

34. As a result of the AEDPA, foreign states, such as Iran, cannot assert sovereign immunity where a victim claims money damages for personal injuries or death caused by, among other things, the provision of material support or resources.

35. Pursuant to 28 U.S.C. § 1605A(a)(1), "[a] foreign state shall not be immune from the jurisdiction of courts of the United States … in any case … in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."

36. If a foreign State satisfies one of these, or the several other exceptions to immunity, it "shall be liable in the same manner and to the same extent as a private individual under like

---

[7] 28 U.S.C. § 1605A(a)(1).

[8] 28 U.S.C. §1605A(c)

[9] 44B AM. JUR. 2D *International Law* § 140 (2013).

circumstances."[10]

37. The FSIA provides an exception to sovereign immunity of foreign states where, *inter alia*, a foreign state is a designated state sponsor of terrorism (such as Iran) that has engaged in acts of international terrorism, and was so designated at the time of the alleged wrongful conduct and is still so designated when the claim is filed.

38. Specifically, the FSIA permits U.S. courts to maintain jurisdiction over a foreign State where that State engages in an act of terrorism or provides "material support or resources" to a terrorist organization.[11]

39. The FSIA provides that Plaintiffs may bring an action against non-immune foreign states, such as Iran, in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.[12]

40. During the Relevant Period, including when the Terrorist Attacks occurred and when this Action was filed, Iran was designated a State Sponsor of Terror by the United States.

## IV. THE DEFENDANTS

### 1. THE ISLAMIC REPUBLIC OF IRAN

41. Plaintiffs assert causes of action against Iran. Iran directed, planned and authorized acts of torture, extrajudicial killing, hostage taking, and provided material support or resources to Hezbollah, Special Groups, Ansar al Islam, Al Qaida, and other terrorists that perpetrated the Terrorist Attacks specifically for the purpose of carrying out those Attacks. Iran's actions proximately and directly caused the murders and injuries to Plaintiffs and Plaintiffs' family

---

[10] 28 U.S.C. § 1606.

[11] *See* 18 U.S.C. § 2339A(b).

[12] 28 U.S.C. § 1391(f).

members in those Terrorist Attacks.

42. Plaintiffs' deaths and injuries were a natural and probable consequence of Iran's actions as set forth herein. Moreover, such deaths and injuries should have been, and in fact, were foreseeable.

43. At all times relevant to this Complaint, Iran is and was a foreign state within the meaning of 28 U.S.C. § 1603 and designated a State Sponsor of Terrorism pursuant to § 6(j) of the Export Administration Act of 1979, 50 U.S.C. app. § 2405.

44. Iran provided material support and resources for the commission of acts of extrajudicial killing, torture and/or hostage taking within the meaning of 28 U.S.C. § 1605A, including the Terrorist Attacks in which Plaintiffs were killed, injured, or maimed, and performed actions that caused the Terrorist Attacks and the harm to Plaintiffs herein.

45. The Government of Iran is politically and ideologically hostile to the United States and its allies, and has consistently provided material support for acts of international terrorism, including extrajudicial killings, torture, and hostage takings, particularly through MOIS, IRGC, IRGC-QF and its Lebanese-based FTO, Hezbollah, which historically have served as Iran's proxies and agents, enabling Iran to project extremist violence and terror throughout the Middle East and around the globe.

46. Both before and during the U.S. liberation and occupation of Iraq and its subsequent peacekeeping mission, Iran supported a massive international terror campaign against Iraqi citizens and U.S. nationals, including Plaintiffs.

47. As detailed herein, Iran provided funds, arms, equipment, and material support to Hezbollah, IRGC, IRGC-QF, and MOIS which, in turn, trained, armed, supplied and funded Iran's terrorist agents in Iraq in carrying out their attacks against Plaintiffs and their family members.

48. Iran's efforts to kill and maim U.S. nationals in Iraq, and to thwart U.S. policy objectives in Iraq, were readily apparent and widely reported.

49. In fact, Iran's role in funding militant groups that target and kill Coalition[13] and Iraqi forces and innocent American, British, Iraqi and other civilians was a matter of public record.

50. For example, on October 5, 2005, at a press briefing at the Foreign Office in London, William Patey, the British ambassador to Baghdad, blamed the Islamic Revolutionary Guard for helping supply the technology and weapons which has been used in bomb attacks against British troops in the south which claimed the lives of eight British soldiers and two British civilians.

51. On October 10, 2005, the British Broadcasting Company ("BBC") reported that:

> An armour-piercing version of the bomb—blamed for the deaths of eight British soldiers this year—marks the latest advance in the insurgents' arsenal. *The UK has accused Iran of supplying the new weapon to militants in southern Iraq, via the Lebanese Hezbollah militia group,* although Tehran has denied this.

(Emphasis added).

52. The BBC followed up with multiple reports in 2006 describing the details from military briefings about Iran's material support to Shi'a militia groups that were targeting and killing British and U.S. forces in Iraq, including Plaintiffs.

53. For example, on June 23, 2006, the BBC reported:

> BBC world affairs correspondent, Paul Reynolds, says both the American and British military in Iraq have claimed for some time that Iran, or factions within the Iranian government, have been supporting Shias politically and militarily…

---

[13] "Coalition Forces" refers to the "[…]multinational force under unified command to take all necessary measures to contribute to the maintenance of security and stability in Iraq, including for the purpose of ensuring necessary conditions for the implementation of the timetable and programme as well as to contribute to the security of the United Nations Assistance Mission for Iraq, the Governing Council of Iraq and other institutions of the Iraqi interim administration, and key humanitarian and economic infrastructure[.]" *See* S.C. Res. 1511, ¶ 13, U.N. SCOR, U.N. Doc. S/RES/1511, at 3 (Oct. 16, 2003).

> …"Since January we have seen an upsurge in their support, particularly to the Shia extremist groups," Gen Casey said.
>
> "They are using surrogates to conduct terrorist operations both against us and against the Iraqi people."
>
> "We are quite confident that the Iranians, through the special operations forces, are providing weapons, IED [improvised explosive device] technology and training to Shia extremist groups in Iraq," he said.

54. In another example, on September 26, 2008, CNN reported that U.S. officials claimed Iran had provided Shi'a militias in Iraq with "millions of dollars" in funding and that:

> The official said that high-grade military explosives and specialized timers are among the "boutique military equipment" moving from Iran into Iraq. Some of the equipment is of the same type that Hezbollah, an Iranian-backed Shiite militia, used against Israeli forces in Lebanon during the summer, the official said. The origin of the weapons was easy to discern because of *Iranian markings* on it, he said. Because Iran maintains tight control over armaments, he said, shipment of the weapons into Iraq had to involve "*elements associated with the Iranian government*."
>
> (Emphasis added).

55. Iran, through its agents and instrumentalities, including Defendants herein, provided Explosively Formed Penetrators ("EFPs") (discussed in more detail at Section V(I)1, below), along with other munitions and training in tactics, that were used to injure and kill Plaintiffs. Such bombs are sometimes inaccurately called "improvised explosive devices" ("IEDs"); in reality, the EFPs were not "improvised" but professionally manufactured and specifically designed by Iran and its agents to target and penetrate Plaintiffs and Coalition Forces' armor, and sow terror within the borders and amongst the citizens of Iraq.

56. Because Iran (a State Sponsor of Terror) routinely provided material support to FTOs and Special Groups, AAI, AQ and other terrorists, including those Terrorist Groups and FTOs responsible for the Terrorist Attacks that resulted in the death, maiming, or injury to

Plaintiffs and/or Plaintiffs' family members, to advance the terrorist activities of those FTOs and Special Groups and other terrorists, Iran is directly and/or vicariously liable for the personal injuries caused by those FTOs and Terrorist Groups.

57. Iran's pursuit and development of weapons of mass destruction—including IEDs, EFPs, mines and similar explosive munitions — were the subject of numerous news reports, U.S. government reports, and Congressional testimony, as well as U.N. Security Council resolutions and European Union regulations.

### 2. ISLAMIC REVOLUTIONARY GUARD CORPS

58. The IRGC was founded in the wake of the 1979 revolution as a branch of the Iranian Armed Forces tasked with protecting the country's Islamic system. Since its origin as an ideologically driven militia, the IRGC has taken an ever more assertive role in virtually every aspect of Iranian society. The IRGC is a special entity unto itself, part military force, part paramilitary force, and part business conglomerate. Its expanded social, political, military, and economic role has led many analysts to argue that its political power has surpassed even that of the Shi'a clerical system.

59. The IRGC is nominally comprised of five branches (Ground Forces, Air Force, Navy, Basij militia, and Qods Force special operations IRGC-QF) in addition to a counterintelligence directorate and representatives of the Supreme Leader.

60. Several of the IRGC's leaders have been sanctioned under U.N. Security Council Resolution 1747.

61. The IRGC is now a vast conglomerate. It controls Iran's missile batteries, its nuclear program, and a business empire.

62. The IRGC is the spine of the current political structure and a major player in the

Iranian economy.[14] It has expanded well beyond its mandate into a socio-military-political-economic force that deeply penetrates Iran's power structure.[15] The IRGC is a central participant in Iran's concerted efforts to sow terror in Iraq.

63. Even before the U.S. invasion of Iraq in 2003, the IRGC had long cultivated ties to Shi'a opposition groups opposed to Saddam Hussein's brutal regime, including the Badr Corps (discussed in more detail below) that was headquartered in Iran in the 1980s and the 1990s.

64. The IRGC's subversion of Iraq has not been limited to terrorism.

65. The IRGC has also infiltrated Iraqi society, providing "political and ideological support" via charitable associations such as the Khomeini Social Help Committee – in Karbala, Najaf, Kut, and Sadr City – and the Imam Mohammad Bagher Institute in Najaf.

66. The IRGC also purchased or developed seven television stations in Iraq, and at least three radio stations.

67. According to the U.S. State Department's 2005 Country Reports on Terrorism: "[t]he IRGC was increasingly involved in supplying lethal assistance to Iraqi militant groups, which destabilizes Iraq ... Senior Iraqi officials have publicly expressed concern over Iranian interference in Iraq, and there were reports that Iran provided funding, safe passage, and arms to insurgent elements." (Emphasis added)

68. The IRGC-QF's "Department 2000" manages Iran's relationship with Hezbollah, which includes the flow of some of Iran's most sophisticated weapon systems, including military grade EFPs, anti-tank guided missiles, and various rockets, such as the Fajr-5.

---

[14] Central Bank of the Islamic Republic of Iran, *General Information*, http://www.cbi.ir/page/GeneralInformation.aspx (last visited Sept. 12, 2017).

[15] Bruno Greg and Jayshree Bajoria, Iran's Revolutionary Guards, Council on Foreign Relations, Oct. 12, 2011.

69. The IRGC is an "agency or instrumentality" of the government of Iran as defined by 28 U.S.C. § 1603(b), and is owned and controlled by the government of Iran.

70. Defendant Iran authorized, ratified and approved the acts of Defendant IRGC.

71. Accordingly, Defendant Iran is vicariously liable for the acts of Defendant IRGC.

### 3. THE IRANIAN MINISTRY OF INTELLIGENCE & SECURITY (MOIS)

72. The Iranian Ministry of Intelligence and Security (a/k/a "Vezarat-e Ettela'at Va Amniat-e Keshvar" a/k/a "VEVAK" a/k/a "VAJA," hereinafter "MOIS") is located at Second Negarestan Street, Pasdarsan Avenue, Tehran, Iran.

73. MOIS headquarters is a facility located in Tehran on the block bounded by Sanati Street on the West, 30th Street on the South, and Iraqi Street on the East.

74. MOIS is the most powerful and well-supported ministry among all Iranian ministries in terms of logistics, finances, and political support. It is a non-military governmental organization that operates both inside and outside of Iran.

72. MOIS functions as the Iranian Intelligence Service and, in this capacity, it is the secret police and primary intelligence agency of the Islamic Republic of Iran. It is the part of the Iranian government's security apparatus responsible for the assassination of Iranian political dissidents inside and outside the country.

73. MOIS uses all means at its disposal to protect the Islamic Revolution of Iran, utilizing such methods as infiltrating internal opposition groups, monitoring domestic threats and expatriate dissent, arresting alleged spies and dissidents, exposing conspiracies deemed threatening, and maintaining liaison with other foreign intelligence agencies as well as with organizations that protect the Islamic Republic's interests around the world.

74. MOIS operates under the direct supervision of Iran's Supreme Leader, Ayatollah

Khamenei, who claims to be the leader of the Muslim world. As noted above, MOIS agents are known as "Unknown Soldiers of Imam Zaman," who is the Twelfth Imam in the succession of Islamic leaders of Shi'a Muslims. However, the organization is not bound by Shi'a beliefs. To advance its goals, MOIS recruits individuals regardless of their beliefs.

75. According to Iran's constitution, all organizations must share information with the Ministry of Intelligence and Security. The ministry oversees all covert operations. The IRGC and IRGC-QF Qods Force share all the information they collect with MOIS.

76. MOIS and the IRGC-QF coordinate through foreign embassies, "charities," and cultural centers in targeted countries.

77. Hezbollah is organizationally linked to MOIS, and is used by MOIS as a proxy in Iran's intelligence operations.

78. In the Middle East, Iran, through MOIS and the IRGC-QF, uses Hezbollah to threaten the United States in Iraq and Afghanistan by backing insurgent groups, including Terrorist Groups who committed the Terrorist Attacks involving Plaintiffs.

79. Specifically, MOIS acted as a conduit for Iran's provision of funds, training and direction to Terrorist Groups for their terrorist activities beyond the borders of Iran including the actions relating to the Terrorist Attacks and Plaintiffs injuries.

80. MOIS and it agents have routinely been, and are presently designated by the U.S. Treasury as an SDN and SDGT, pursuant to Iranian Financial Sanctions Regulations ("IFSR"), including:

a. Executive Order 13399 of April 25, 2006, *Blocking Property of Additional Persons in Connection With the National Emergency With Respect to Syria*, sanctioning entities and individuals that:

> [H]ave been, involved in the planning, sponsoring, organizing, or perpetrating of: (A) the terrorist act in Beirut, Lebanon, that resulted

> in the assassination of former Lebanese Prime Minister Rafiq Hariri and the deaths of 22 others; or (B) any other bombing, assassination, or assassination attempt in Lebanon since October 1, 2004, that is related to Hariri's assassination or that implicates the Government of Syria or its officers or agents; (ii) to have obstructed or otherwise impeded the work of the Commission established pursuant to UNSCR 1595; (iii) to have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, any such terrorist act, bombing, or assassination attempt, or any person designated pursuant to this order; or (iv) to be owned or controlled by, or acting or purporting to act for or on behalf of, directly or indirectly, any person designated pursuant to this order.

b. Executive Order 13460 of February 13, 2008, *Blocking Property of Additional Persons in Connection With the National Emergency With Respect to Syria*, sanctioning entities and individuals:

> [R]esponsible for or otherwise significantly contributing to actions taken or decisions made by the Government of Syria *that have the purpose or effect of undermining efforts to stabilize Iraq* or of allowing the use of Syrian territory or facilities to undermine efforts to stabilize Iraq.
>
> (Emphasis added).

c. Executive Order 13553 of September 28, 2010, designating MOIS and its agents as an "IRAN-HR" entity, responsible for "serious human rights abuses by the government of Iran. In doing so the United States sought to sanction entities and individuals that:

> "[Were] acting on behalf of the Government of Iran (including members of paramilitary organizations) who is responsible for or complicit in, or responsible for ordering, controlling, or otherwise directing, the commission of serious human rights abuses against persons in Iran or Iranian citizens or residents, or the family members of the foregoing, on or after June 12, 2009, regardless of whether such abuses occurred in Iran… materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, [such] activities described… or any person whose property and interests in property are blocked pursuant to this order; or.. owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this order.

d. Executive Order 13606 of April 22, 2012, designating MOIS and its agents as an "HRIT-IR" entity, responsible for "grave human rights abuses by the governments of

Iran and Syria via information technology." In doing so, the United States sanctioned entities and individuals that:

> [P]rovided, directly or indirectly, goods, services, or technology to Iran or Syria likely to be used to facilitate computer or network disruption, monitoring, or tracking that could assist in or enable serious human rights abuses by or on behalf of the Government of Iran or Syria… [or] provided, directly or indirectly, goods, services, or technology to Iran or Syria likely to be used to facilitate computer or network disruption, monitoring, or tracking that could assist in or enable serious human rights abuses by or on behalf of the Government of Iran…[or] materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of [these] activities… [or] owned or controlled by, or to have acted or purported to act for or on behalf of, directly or indirectly, any person whose property and interests in property are blocked pursuant to this order."

81. MOIS has been involved in kidnappings, assassinations, and terrorism since its inception in 1985.

82. Many of the U.S. State Department reports on global terrorism over the last twenty-five years refer to MOIS as Iran's key facilitator and director of terrorist attacks.

83. In 1995 and again in 1996, Usama Bin Laden approached MOIS and asked to join forces against the United States. Bin Laden's phone records, obtained by U.S. investigators working on the U.S. embassy bombings in Kenya and Tanzania, show that 10 percent of phone calls made by Bin Laden and his lieutenants were to Iran.

84. Seif al-Adl, one of AQ's top-ranking leaders at the time, was the liaison between Iranians and AQ; he coordinated meetings with the IRGC's leaders and MOIS officials.

85. At all times relevant to this action, MOIS acted as an agent of Iran and performed certain acts within the scope of its agency within the meaning of 28 U.S.C. § 1603(b).

86. U.S. federal courts have consistently held that the IRGC and the MOIS are parts of

the Iranian state itself.[16]

87. Defendant Iran authorized, ratified, and approved the acts of Defendant MOIS.

88. Accordingly, Defendant Iran is vicariously liable for the acts of Defendant MOIS.

### 4. BANK MARKAZI JOMHOURI ISLAMI IRAN

89. Bank Markazi Jomhouri Islami Iran is the Central Bank of Iran. The Central Bank of Iran ("CBI") was established in 1960, and, according to its website, CBI is responsible for the design and implementation of Iran's monetary and credit policies.[17]

90. CBI is headquartered in Tehran, Iran at Mirdamad Boulevard, No. 198, P.O. Box: 15875/7177.

91. CBI has provided millions of dollars to terrorist organizations via other Iranian-owned and controlled banks. For example, in a press release issued by the U.S. Treasury Department in 2007 regarding the designation of the Iranian-owned Bank Saderat as an SDGT, the U.S. Government noted that:

> Bank Saderat, which has approximately 3200 branch offices, has been used by the Government of Iran to channel funds to terrorist organizations, including Hezbollah and EU-designated terrorist groups Hamas, PFLP-GC, and Palestinian Islamic Jihad. For example, from 2001 to 2006, Bank Saderat *transferred $50 million from the* ***Central Bank of Iran*** *through its subsidiary in London to its branch in Beirut for the benefit of Hezbollah fronts in Lebanon that support acts of violence*. (Emphasis added.)

92. According to the United States' Financial Crimes Enforcement Network ("FinCEN"):

---

[16] *See e.g., Rimkus v. Islamic Republic of Iran*, 575 F.Supp.2d 181, 198–200 (D.D.C. 2008) (Lamberth, C.J.); *Blais v. Islamic Republic of Iran*, 459 F.Supp.2d 40, 60–61 (D.D.C. 2006) (Lamberth, J.) (both MOIS and IRGC must be treated as the state of Iran itself for purposes of liability); and *Salazar v. Islamic Republic of Iran*, 370 F.Supp.2d 11, 105, 115–16 (D.D.C. 2005) (Bates, J.) (same).

[17] *Supra* note 14.

> The Central Bank of Iran, which regulates Iranian banks, has assisted designated Iranian banks by transferring billions of dollars to these banks in 2011. In mid-2011, the CBI transferred several billion dollars to designated banks, including Saderat, Mellat, EDBI and Melli, through a variety of payment schemes. In making these transfers, the CBI attempted to evade sanctions by minimizing the direct involvement of large international banks with both CBI and designated Iranian banks.

93. CBI is an alter-ego and "agent and instrumentality" of the Iranian government and its Supreme Leader as defined by 28 U.S.C. § 1603, and it has routinely used Iranian banks like the other Defendant Iranian banks as conduits for terror financing and weapons proliferation on behalf of the Iranian regime.

94. Defendant Iran authorized, ratified and approved the acts of Defendant CBI.

95. Accordingly, Defendant Iran is vicariously liable for the acts of Defendant CBI.

### 5. BANK MELLI IRAN

96. Bank Melli Iran was established in 1927 by order of the Iranian Parliament. It is one of the largest banks in Iran.

97. Following the Iranian Revolution in 1979, all banks in Iran were nationalized, and, as discussed below, even now most are effectively controlled by the Iranian regime.

98. Bank Melli Iran is headquartered at Ferdowsi Avenue, Building 10, Tehran, Iran.

99. Bank Melli Iran maintains a branch office in Germany, located at Holzbrücke 2, 20459 Hamburg, Germany.

100. Bank Melli Iran is an "agency or instrumentality" of the government of Iran as defined by 28 U.S.C. § 1603(b).

101. As discussed in detail below, Bank Melli Iran is owned and controlled by Iran to such an extent that it rightfully can be considered an organ of the state as defined by 28 U.S.C. § 1603(b)(2).

102. Melli Bank Plc in London was established in January 2002 as a wholly-owned

subsidiary of Bank Melli Iran.

103. Melli Bank Plc was headquartered at 98a Kensington High Street, London, W8 4SG, United Kingdom and, in 2016, moved its head office to Dubai.

104. The Chairman of Bank Melli Iran serves as the Chairman of the Board of Directors of Melli Bank Plc.

105. Bank Melli Iran appoints all members of the Board of Directors of Melli Bank Plc.

106. Melli Bank Plc is dominated and controlled by Iran to such an extent that it rightfully can be considered an organ of the state as defined by 28 U.S.C. § 1603, and its property is subject to and available to satisfy any final judgment in this matter pursuant to 28 U.S.C. § 1610.

107. According to the U.S. government, from 2004-2011, Bank Melli Iran and Melli Bank Plc in London transferred approximately $100 million USD to the IRGC-QF, which trained, armed, and funded terrorist groups that targeted and killed and maimed American and Iraqi forces and civilians.

108. Specifically, according to the U.S. government:

> Islamic Revolutionary Guards Corps (IRGC) and IRGC-Qods Force, who channel funds to militant groups that target and kill Coalition and Iraqi forces and innocent Iraqi civilians, have used Bank Melli and other Iranian banks to move funds internationally. Bank Melli used deceptive banking practices to obscure its involvement from the international banking system by requesting that its name be removed from financial transactions when handling financial transactions on behalf of the IRGC.

109. In October 2007 and throughout the remainder of the relevant period, Bank Melli Iran and Melli Bank Plc were each designated as a SDN pursuant to Executive Order ("E.O.") 13382, and included on the Office of Foreign Assets Control's SDN list.[18] The U.S. Treasury Department press release announcing the designation stated:

---

[18] "The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national

> Bank Melli also provides banking services to the [Iranian Revolutionary Guard Corps] and the Qods Force. Entities owned or controlled by the IRGC or the Qods Force use Bank Melli for a variety of financial services. From 2002 to 2006, Bank Melli was used to send at least $100 million to the Qods Force. When handling financial transactions on behalf of the IRGC, Bank Melli has employed deceptive banking practices to obscure its involvement from the international banking system. For example, Bank Melli has requested that its name be removed from financial transactions.

110. A State Department diplomatic cable from March 2008 noted that:

> Bank Melli and the Central Bank of Iran also provide crucial banking services to the Qods Force, the IRGC's terrorist supporting arm that was headed by UNSCR 1747 designee Commander Ghassem Soleimani. Soleimani's Qods Force leads Iranian support for the Taliban, Hezbollah [sic], Hamas [sic] and the Palestinian Islamic Jihad. Entities owned or controlled by the IRGC or the Qods Force use Bank Melli for a variety of financial services. From 2002 to 2006, Bank Melli was used to send at least $100 million to the Qods Force. Bank Melli use of Deceptive Banking Practices... When handling financial transactions on behalf of the IRGC, Bank Melli has employed deceptive banking practices to obscure its involvement from the international banking system. For example, Bank Melli has requested that its name be removed from payment instructions for US dollar denominated transactions.

111. According to the U.S. government, Bank Melli Iran provided banking services to the IRGC-QF which trained, armed, and funded terrorist groups that targeted, killed and maimed American and Iraqi forces and civilians.

112. Specifically, according to the U.S. government in a November 10, 2009 diplomatic cable:

> [The] Islamic Revolutionary Guards Corps (IRGC) and IRGC-Qods Force, who channel funds to militant groups that target and kill Coalition and Iraqi forces and innocent Iraqi civilians, have used Bank Melli and other Iranian banks to move funds internationally. Bank Melli used deceptive banking

---

security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States." *See* U.S. Department of the Treasury, *Terrorism and Financial Intelligence*, https://www.treasury.gov/about/organizational-structure/offices/Pages/Office-of-Foreign-Assets-Control.aspx (last visited Sept. 26, 2018).

> practices to obscure its involvement from the international banking system by requesting that its name be removed from financial transactions when handling financial transactions on behalf of the IRGC.

113. During the Relevant Time Period, Bank Melli Iran financed transactions that purposefully evaded U.S. sanctions on behalf of Mahan Air (an SDGT) and Iran's Ministry of Defense and Armed Forces Logistics.

114. For example, Bank Melli issued a Letter of Credit to Mahan Airlines (an Iranian airline) in August 2004 to help Mahan Airlines illegally acquire aircraft engines subject to the U.S. embargo.

115. Bank Melli's financial support and assistance to Mahan Airlines is particularly significant because on October 12, 2011, the United States designated Mahan Air as an SDGT for "providing financial, material and technological support to the Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF). Based in Tehran, Mahan Airlines provides transportation, funds transfers and personnel travel services to the IRGC-QF."

116. The U.S. Treasury Department explained Mahan Airline's direct involvement with terrorist operations, personnel movements and logistics on the IRGC-QF's behalf:

> Mahan Air [has] facilitated the covert travel of suspected IRGC-QF officers into and out of Iraq by bypassing normal security procedures and not including information on flight manifests to eliminate records of the IRGC-QF travel.
>
> Mahan Air crews have facilitated IRGC-QF arms shipments. Funds were also transferred via Mahan Air for the procurement of controlled goods by the IRGC-QF.
>
> In addition to the reasons for which Mahan Air is being designated today, Mahan Air also provides transportation services to Hezbollah, a Lebanon-based designated Foreign Terrorist Organization. Mahan Air has transported personnel, weapons and goods on behalf of Hezbollah and omitted from Mahan Air cargo manifests secret weapons shipments bound for Hezbollah.

117. Mahan Airlines was also later identified as the conduit to Iran of thousands of radio

frequency modules that were ultimately recovered by Coalition Forces in Iraq from IEDs and EFPs that were used to target Iraqi civilians, U.S. soldiers, and Coalition Forces, including some Plaintiffs herein.

118. In mid-2007, Bank Melli Iran's branch in Hamburg, Germany ("Bank Melli-Hamburg") transferred funds on behalf of Iran's Defense Industries Organization ("DIO").

119. As is further discussed below, DIO is an Iranian government-owned defense manufacturer whose name, logo, and/or product tracking information was stamped on munitions found in weapons caches that were seized from terrorist organizations in Iraq, including large quantities of weapons produced by DIO in 2006 and 2007 (e.g. 107 millimeter artillery rockets, as well as rounds and fuses for 60 millimeter and 81 millimeter mortars).

120. Defendant Iran authorized, ratified, and approved the acts of Defendant Bank Melli Iran.

121. Accordingly, Defendant Iran is vicariously liable for the acts of Defendant Bank Melli Iran.

### 6. NATIONAL IRANIAN OIL COMPANY

122. The National Iranian Oil Company ("NIOC"), owned and overseen by the Government of Iran through its Ministry of Petroleum, is responsible for the exploration, production, refining, and export of oil and petroleum products in Iran.

123. NIOC is headquartered at Roodsar Street No. 18, Tehran, Iran.

124. NIOC is an "agency or instrumentality" of the Government of Iran as defined by 28 U.S.C. § 1603(b).

125. In 2008, the Treasury Department identified NIOC (and other Iranian agencies) as "centrally involved in the sale of Iranian oil, as entities that are owned or controlled by the [Government of Iran]."

126. Pursuant to E.O. 13382, the U.S. Government designated NIOC as an SDN.

127. The U.S. Government has identified NIOC as an agent or affiliate of the IRGC.

128. In September 2012, the U.S. Treasury Department handed its report to Congress regarding its determination that NIOC is an agent or affiliate of the IRGC. The report provided that:

> Recently, the IRGC has been coordinating a campaign to sell Iranian oil in an effort to evade international sanctions, specifically those imposed by the European Union that prohibit the import, shipping, and purchase of Iranian oil, which went into full effect on July 1, 2012. NIOC, which is owned by the Government of Iran through the Ministry of Petroleum, is responsible for the exploration, production, refining, and export of oil and petroleum products in Iran.
>
> Under the current Iranian regime, the IRGC's influence has grown within National Iranian Oil Co. For example, on August 3, 2011, Iran's parliament approved the appointment of Rostam Qasemi, a Brigadier General in the IRGC, as Minister of Petroleum. Prior to his appointment, Qasemi was the commander of Khatam Al-Anbia, a construction and development wing of the IRGC that generates income and funds operations for the IRGC. Even in his new role as Minister of Petroleum, Qasemi has publicly stated his allegiance to the IRGC.

129. As the IRGC has become increasingly influential in Iran's energy sector, Khatam Al-Anbiya has obtained billions of dollars' worth of contracts with Iranian energy companies, including NIOC, often without participating in a competitive bidding process.

130. Under the Iran Threat Reduction and Syria Human Rights Act of 2012 ("ITRSHRA"), the U.S. government determined that that NIOC is an agent or affiliate of the IRGC under section 104(c)(2)(E)(i) of the Comprehensive Iran Sanctions, Accountability, and Divestment Act of 2010 ("CISADA") and section 302 of ITRSHRA. As part of that 2012 certification, NIOC was formally determined to be part of the Government of Iran.

131. In addition, the ITRSHRA provided that:

> It is the sense of Congress that the National Iranian Oil Company and the National Iranian Tanker Company are not only owned and controlled by the Government of Iran but that those companies provide significant support to Iran's Revolutionary Guard Corps and its affiliates.[19]

132. After the events giving rise to the claims herein, the U.S. government withdrew this determination as of 2016.

133. NIOC used its oil and natural gas business to launder money for the IRGC, often using Defendant Central Bank of Iran for this purpose.

134. In 2009, West Point's Combating Terrorism Center published a report on the role of NIOC, particularly in the Maysan province in Iraq (Southeast border between Iran and Iraq), and its role in studying U.S. troops movements:

> The establishment of a new U.S. and Iraqi [Forward Operating Base] on the Iranian border has resulted in three waves of attacks in an area that was formerly devoid of incidents .... The incident occurred in the same district as the February 2007 EFP attack on a British aircraft at a Buzurgan dirt airstrip, itself a reaction by Special Groups to UK long-range patrolling of the Iranian border. This part of the border is increasingly the scene of U.S. and Iranian countermoves to support their proxies and patrol the frontier; Iranian intelligence gathering takes place using National Iranian Oil Company helicopters and border guards, while U.S.-Iraqi helicopter-borne joint patrols provide moral and material support to isolated Iraqi border posts and local communities.

135. Thus, NIOC served a critical function in funding and supporting the IRGC's activities.

136. NIOC also obtained letters of credit from western banks to provide financing and credit to the IRGC.[20]

---

[19] U.S. Department of the Treasury, *Sanctions*, *See*, https://www.treasury.gov/resource-center/sanctions/Documents/hr_1905_pl_112_158.pdf (last visited Sept. 12, 2017).

[20] The Superseding Indictment filed in *U.S. v. Zarrab* (filed in the S.D.N.Y (1:15-cr-00867)) demonstrates that, as late as 2013, NIOC continued to illegally launder U.S. dollars through U.S. financial institutions.

137. Defendant Iran authorized, ratified, and approved the acts of Defendant NIOC.

138. Accordingly, Defendant Iran is vicariously liable for the acts of Defendant NIOC.

## V. FACTUAL ALLEGATIONS

139. International terrorism is a serious and deadly problem that threatens the vital interests of the United States.[21] It affects the interstate and foreign commerce of the United States by harming international trade and market stability, and limiting international travel by United States' citizens, as well as foreign visitors to the United States.[22]

140. The United States has a clear interest in combating terrorism, both within its borders and abroad, and in protecting its nationals at home and abroad.

141. Iran committed and continues to commit violent attacks against U.S. nationals. Iran commits these attacks via proxy terrorist organizations.

142. According to the CIA, Iranian leaders view terrorism as an important instrument of foreign policy they use both to advance national goals and to export the regime's Islamic revolutionary ideals.[23]

143. Further, Iran supports and directs terrorist operations by Hezbollah and desires to keep the United States and U.S. nationals as primary terrorist targets.[24]

144. In June 2007, U.S. Department of State spokesman, Sean McCormack, delivered a press briefing on Iran and its ties to international terrorism. When asked what changes he was

---

[21] Justice Against Sponsors of Terrorism Act, § 2(a)(1), Pub. L. 114-222 (2016).

[22] *Id*. at § 2(a)(2).

[23] Central Intelligence Agency, Directorate of Intelligence, *Iran: The Uses of Terror*, (Oct. 22, 1987 (approved for release June 1999)), https://www.cia.gov/library/readingroom/docs/DOC_0000259360.pdf.

[24] *Id*.

looking for concerning Iran and its ties to terrorism, he responded, "Well, for starters, stop supplying *money, technology, and training* for people who are trying to kill [U.S. nationals]..."[25] (Emphasis added).

### 1. IRAN'S LONG HISTORY OF MATERIALLY SUPPORTING AND ENCOURAGING ACTS OF INTERNATIONAL TERRORISM

145. For decades Iran has made the funding of terrorist organizations (including the Special Groups and other terrorists that perpetrated the Terrorist Attacks) and the commodification of international acts of terrorism its business.

146. Iran has a history of financing, supporting and training terrorists and their affiliates in the perpetration of terrorist attacks against the United States, its citizens and its allies. For example, Hon. Judge John D. Bates found in a lawsuit brought by U.S. victims of the bombing of the U.S. embassies in Nairobi and Dar es Salaam that, "[s]upport from Iran and Hezbollah was critical to al Qaeda's execution of the 1998 embassy bombings…Prior to its meetings with Iranian officials and agents, al Qaeda did not possess the technical expertise required to carry out the embassy bombings."[26]

147. Similarly, Iran has been lavish with its support to all groups (including Sunni groups with ties to al Qaida) engaged in acts of international terrorism against Iraqi citizens, Coalition Forces and U.S. nationals, including Plaintiffs.

148. Since the Iranian Revolution in 1979, Iran has been a principal source of extremism and terrorism throughout the Middle East and the rest of the world, responsible for bombings,

---

[25] U.S. Department of State, *Sean Womack Daily Press Briefing* (June 27, 2007), http://site-894736.bcvp0rtal.com/detail/videos/archive/video/1807599216/daily-briefing---june-27-2007.

[26] *Wamai v. Republic of Sudan et. al.*, No. 1:08-cv-01349-JDB-JMF (D. D.C. Nov. 30, 2011), Memorandum Opinion at 13–14, ECF No. 55.

kidnappings, hostage-taking torture, extrajudicial killings, and assassinations across the globe.

149. On January 19, 1984, the United States designated Iran a State Sponsor of Terrorism. That designation has remained in force throughout the Relevant Period to this Action.

150. Iran prefers not to be directly implicated in acts of international terrorism against U.S. nationals, but instead acts through co-conspirators and/or agents and offers bounties for killing U.S. nationals, shooting down U.S. helicopters, and destroying American tanks.

151. Reports suggest that in Fall 2003 "a senior Iranian cleric in Tehran set up a special 100-member army, known as al Saqar, which means eagle in Arabic, to . . . carry out [acts of international terrorism]."[27]

152. Countries determined by the Secretary of State to have repeatedly provided support for acts of international terrorism receive such a designation pursuant to three laws: (1) section 6(j) of the Export Administration Act; (2) section 40 of the Arms Export Control Act; and (3) section 620A of the Foreign Assistance Act.

153. Taken together, the main categories of sanctions resulting from designation under these authorities include: (1) restrictions on U.S. foreign assistance; (2) a ban on defense exports and sales; (3) certain controls over exports of dual use items; and (4) miscellaneous financial and other restrictions.

154. Designation under the above-referenced authorities also implicates other sanction laws that penalize persons and countries engaging in certain trade with state sponsors. Currently there are three recidivist countries designated under these authorities: Iran, Sudan, and Syria.[28]

---

[27] Edward T. Pound, *Special Report: The Iran Connection*, U.S. News and World Report, Nov. 14, 2004.

[28] U.S. Department of State, *State Sponsors of Terrorism*, https://www.state.gov/j/ct/list/c14151.htm (last visited Mar. 24, 2017).

155. In Iraq, the policies of Iran have been largely successful, "giving Iran an unprecedented degree of influence there at the expense of the United States…" An Iran-friendly Iraq "serves as an opportunity for Iran to evade the increasingly harsh international sanctions regime and to continue financing [FTOs]."[29]

156. Iranian diplomatic, political, and economic networks within Iraq are highly developed and closely linked both to Hezbollah and to the IRGC-QF.

157. Unclassified Iraqi government Harmony records, collated by the Combating Terrorism Center at West Point, as well as information provided to the Coalition Forces through interrogation of detainees of the Shite militias, illustrate how Iran sponsored terrorist groups, directly and through Hezbollah (Iran's proxy for more than 30 years), operated in Iraq, including supporting and directing the terrorist groups responsible for the Terrorist Attacks which killed or injured Plaintiffs or their family members.

158. Planning and preparation by Iran and its agents, including Hezbollah, for their active involvement in supporting terrorist groups and encouraging sectarian violence in Iraq has been underway since at least 2002.

159. At least as early as the 2003 U.S. overthrow of Saddam Hussein's regime in Iraq, Iran has assiduously worked to expand its influence in Iraq and throughout the region in a variety of ways, including by fomenting violence and terrorism when such activities have served its diplomatic, political, and economic ambitions.

160. When Coalition Forces liberated Iraq in 2003, Iran's IRGC formed the counter-Coalition Ramazan Corps and ordered it to attack U.S. and Iraqi forces. Saddam Hussein's 24-year

[29] Frederick W. Kagan et. al., *Iranian Influence in the Levant, Egypt, Iraq, and Afghanistan*, at 6 (May 2012), http://www.aei.org/wp-content/uploads/2012/05/-iranian-influence-in-the-levant-egypt-iraq-and-afghanistan_171235465754.pdf.

rule ended on April 9, 2003. The U.S. Department of State reported that, shortly thereafter, individuals with ties to the IRGC may have attempted to infiltrate southern Iraq and elements of the Iranian regime helped members of AAI transit and find safe haven in Iran.

161. In a Friday prayers sermon in Tehran in May 2003, Secretary General of Iran's powerful Guardian Council Ayatollah Ahmad Jannati publicly encouraged Iraqis to stage and participate in suicide operations against U.S. nationals, including Plaintiffs and Coalition Forces.[30] He went on to encourage the so-called "holy fighters" to "maintain good relations with the coalition forces" but at the same time create "a secret group that would conduct attacks against American troops."[31]

162. In 2005, the Department of State reported that Iran was a safe haven in that known terrorists, extremists, and sympathizers are able to transit its territory and cross the long and porous border into Iraq. Iran also equips terrorists with technology and provides training in extremist ideology and militant techniques.[32]

163. In 2008, William Burns, U.S. Undersecretary of State for Political Affairs, testified before Congress that it is "Iran's… support for terrorist groups…its efforts to sow violence and undermine stability in Iraq and Afghanistan, including lethal support for groups that are directly responsible for hundreds of U.S. casualties."[33]

---

[30] U.S. *Department* of State, Office of the Coordinator for Counterterrorism, *Patterns of Global Terrorism* (Apr. 29, 2004) http://www.state.gov/j/ct/rls/crt/2003/31644.htm.

[31] Edward T. Pound, *Special Report: The Iran Connection*, U.S. News and World Report (Nov. 22, 2004), http://www.iranfocus.com/en/index.php?option=com_content&view=article&id=741:the-iran-connection&catid=33&Itemid=115.

[32] U.S. Department of State, Office of the Coordinator for Counterterrorism, *Country Reports on Terrorism 200,* at 21 (2006), https://www.state.gov/documents/organization/65462.pdf.

[33] *U.S. Policy Towards Iran: Hearing Before S. Comm. on Foreign Relations and H. Comm. on* Foreign *Affairs*, 110th Cong. (July 9, 2008) (testimony of William J. Burns, Undersecretary

164. As recently as 2015, the State Department stated that "Iran's state sponsorship of terrorism worldwide remained undiminished through the … IRGC-QF, its Ministry of Intelligence and Security, and Tehran's ally Hezbollah, which remained a significant threat to the stability of Lebanon and the broader region."[34]

### 2. IRAN'S SPONSORSHIP AND MATERIAL SUPPORT OF TERRORISM IN IRAQ

165. Iran is the world's foremost exporter of global terrorism, and uses various FTOs, Special Groups, and other agents or proxies to distribute and deliver this deadly product around the globe.

166. Iran utilizes Special Groups and other terrorists that coordinated with Hezbollah and the IRGC as front groups to perpetrate terrorist acts, including those that killed or injured Plaintiffs or members of Plaintiffs' families.

167. Iran's command and control over IRGC, FTOs and Special Groups that routinely perpetrate terrorist attacks, including the Terrorist Attacks at issue in this Action, is best illustrated by diagramming the command and control Iran exercises over those entities:

for Political Affairs, U.S. Department of State), https://2001-2009.state.gov/p/us/rm/2008/106817.htm.

[34] U.S. Department of State, Office of the Coordinator for Counterterrorism, *Country* Reports *on Terrorism 2015*, at 166 (June 2016), https://www.state.gov/documents/organization/258249.pdf.




168. Iran's support of terrorist groups in Iraq was described in the U.S. State Department's 2005 Country Reports on Terrorism, which observed:

> Iran has provided political and ideological support for several terrorist and militant groups active in Iraq. Attractive to terrorists in part because of the limited presence of the United States and other Western governments there, Iran is also a safe haven in that known terrorists, extremists, and sympathizers are able to transit its territory and cross the long and porous border into Iraq. Iran also equips terrorists with technology and provides training in extremist ideology and militant

techniques.

169. Iran furthers its terrorism-based foreign policy through a number of key Iranian Proxies including Iran's Ministry of Defense and Armed Forces Logistics ("MODAFL"), the IRGC, the IRGC-QF, Hezbollah/Hizbollah, NIOC, KAA, Mahan Air, and Special Groups.

170. In 2008, Pentagon Press Secretary Geoff Morrell reported on the "smuggling system in which the Iranians are providing their allies within Iraq, these special groups, with the munitions that are then used to take on us, whether it be EFPs or rockets or conventional arms. These are being used by these special groups and being provided by the Iranians."

171. On January 9, 2008, the U.S. Treasury Department designated four individuals and one entity under E.O. 13438 for threatening the peace and stability of Iraq and the government of Iraq. Three of the individuals, Ahmed Foruzandeh (a Brigadier General in the IRGC-QF), Abu Mustafa Al-Sheibani, and Isma'il Hafiz Al Lami (a/k/a "Abu Dura") were all based in Iran and/or received funding from Iran.

172. Regarding the designation of Abu Mustafa Al-Sheibani, the Treasury Department press release stated:

> Iran-based Abu Mustafa Al-Sheibani leads a network of Shia extremists that commit and provide logistical and material support for acts of violence that threaten the peace and stability of Iraq and the Government of Iraq. Al-Sheibani's Iran-sponsored network was created to affect the Iraqi political process in Iran's favor. The network's first objective is to fight U.S. forces, attacking convoys and killing soldiers. Its second objective is to eliminate Iraqi politicians opposed to Iran's influence. *Elements of the IRGC were also sending funds and weapons to Al-Sheibani's network.*
>
> Al-Sheibani's network – consisting of several hundred members – conducted IED attacks against Americans in the Baghdad region. As of March 2007, Al-Sheibani, known to transport Katyusha rockets to be used for attacks against Coalition Forces, launched rockets against Americans and made videos of the attacks to get money from Iran. *As of April 2007, a member of Al-Sheibani's network supervised the*

> *transport of money and explosives from Iran for eventual arrival in Baghdad.* In early May 2007, Al-Sheibani's network assisted members of a Shia militia group by transporting them to Iran for training and providing them with weapons for their activities in Iraq.
>
> Additionally, Al-Sheibani commands several pro-Iranian insurgent groups in southern Iraq that work to destabilize Iraq and sabotage Coalition efforts. These groups use a variety of weapons, to include mortars, Katyusha rockets, and anti-tank landmines. *Ordered by IRGC headquarters to create disorder, the task of these groups is to attack bases of Coalition Forces in southern Iraq, particularly British forces*.
>
> (Emphasis added).

173. To that end, Iran (with Hezbollah's aid) has armed, trained, and funded a variety of FTOs and Special Groups, and infiltrated and co-opted Iraqi security forces in an effort to kill or maim U.S. nationals, including Plaintiffs, and to coerce the United States into withdrawing those forces and to terrorize Iraq's civilian population in order to increase Iran's own influence.

174. According to a 2010 report by the Combatting Terrorism Center at West Point, Iran paid Iraqi "insurgent" groups "between $4,000 and $13,000 per rocket or roadside bomb, depending on the circumstances."

175. Iran did not just act on its own. As part of its strategy of sophisticated and clandestine use of terrorism, Iran preferred not to act directly against the Coalition Forces in Iraq. Rather, Iran relied on various other entities, including Defendants named herein to act on Iran's behalf and at Iran's discretion and guidance. Moreover, without the funding provided to these organizations by Iran, they would not be able to carry out the volume, consistency, frequency, scale, and lethality of the acts of international terrorism they currently, and in the past, routinely perpetrated, including the Terrorist Attacks that killed, maimed, or otherwise injured Plaintiffs or Plaintiffs' family members.

### 3. ISLAMIC REVOLUTIONARY GUARD CORPS—QODS FORCE (IRGC-QF)

176. The highest echelons of the Iranian government and the highest echelons of Hezbollah have worked together to organize a violent, resistance movement in Iraq. The IRGC-QF, with direct assistance from Iran, has established and funded this movement.

177. Ayatollah Khomeini established the IRGC-QF in 1979 to protect Iran's Islamic Revolution and export it beyond Iran's borders. The commander of the IRGC-QF reports directly to Iran's Supreme Leader, Ayatollah Ali Khomeini.

178. The Qods Force is the IRGC unit tasked with extraterritorial operations. It trains and equips Islamic revolutionary groups around the Middle East. The IRGC-QF typically provides this paramilitary instruction in Iran and Sudan. At times, the IRGC-QF plays a more direct role in the military operations of the forces it trains, including pre-attack planning and other operation-specific military advice.

179. The Qods Force operates worldwide covertly, as part of a strategy which intends to conceal Iran's participation in terrorist activities.

180. Iran, through the Qods Force, gains access to countries and conceals its involvement in international terrorism therein by cloaking its operations with the appearance of legitimacy, mainly through civilian, charity, or religious oriented institutions or entities.[35]

181. Since 2003, Iran has been materially supporting acts of international terrorism by advising, organizing, training, funding, and equipping FTOs and Special Groups, and other terrorists to kill, maim, or otherwise injure U.S. nationals, among others. To do this, Iran enlisted

---

[35]As an example, the Qods Force used the Iranian Red Crescent to operate in the Balkans during the 1990s to provide assistance to the Bosnian Muslims against the Serb, and to Hizbollah during the 2006 Lebanon War. *See, e.g., U.S. Embassy Cables: Iran Abuses Iranian Red Crescent to Send Agents and Weapons Overseas,* THE GUARDIAN (Oct. 23, 2008), https://www.theguardian.com/world/us-embassy-cables-documents/174875.

(and continues to enlist) the IRGC-QF to provide such support to these FTOs and Special Groups.

182. This material support has made these FTOs, Special Groups and other terrorists more effective and lethal than they ever could have been without such assistance.

183. In October 2007, the United States designated the IRGC-QF a SDGT pursuant to E.O. 13324, explaining that:

> The Qods Force has had a long history of supporting Hizballah's military, paramilitary, and terrorist activities, providing it with guidance, funding, weapons, intelligence, and logistical support. The Qods Force operates training camps for Hizballah in Lebanon's Bekaa Valley and has reportedly trained more than 3,000 Hizballah fighters at IRGC training facilities in Iran. The Qods Force provides roughly $100 to $200 million in funding a year to Hizballah and has assisted Hizballah in rearming in violation of UN Security Council Resolution 1701.
>
> *In addition, the Qods Force provides lethal support in the form of weapons, training, funding, and guidance to select groups of Iraqi Shi'a militants who target and kill Coalition and Iraqi forces and innocent Iraqi civilians.*

(Emphasis added).

184. In 2004, the Qods Force began flooding Iraq with EFPs – lethal roadside bombs that fire a molten copper slug capable of piercing armor. These EFPs wreaked havoc on American troops, accounting for nearly twenty percent of U.S. service personnel deaths. EFPs require skilled assembly and rely on sophisticated sensors. According to General Stanley McChrystal, then head of Joint Special Operations Command, "[t]here was zero question where [the EFPs] were coming from. We knew where all the factories were in Iran. The EFPs killed hundreds of Americans."[36]

185. On October 25, 2007, when the U.S. Department of Treasury designated IRGC-QF as SDGT under E.O. 13224, the Department cited the IRGC-QF's material support to the Taliban,

---

[36] Dexter Filkins, *The Shadow Commander*, THE NEW YORKER (Sept. 30, 2013), http://www.newyorker.com/magazine/2013/09/30/the-shadow-commander.

Lebanese Hezbollah, Hamas, Palestinian Islamic Jihad, and the Popular Front for the Liberation of Palestine-General Command as evidence of Iran seeking to inflict casualties on U.S. and NATO forces.[37]

186. IRGC-QF controls and commands Hezbollah, the Lebanese terrorist organization (described below). Pursuant to instructions from IRGC-QF, Hezbollah formed Unit 3800. Unit 3800 was tasked by the IRGC-QF with recruiting, radicalizing and training Iraqi militants and organizing several Iraqi terrorist/insurgency militias, called Special Groups.

187. According to Brigadier Gen. Kevin J. Bergner, a U.S. military spokesman who previously served as the Deputy Commanding General for MNF-I in Mosul, Iraq, "the Qods Force has provided armor-piercing weapons to extremist groups in Iraq, funneling them up to $3 million a month and training Iraqi militiamen at three camps near Tehran." General Bergner added, "[t]he Iranian Qods Force is using Lebanese Hezbollah essentially as a proxy, as a surrogate in Iraq ... Our intelligence reveals that senior leadership in Iran is aware of this activity."

188. The Qods Force has a track record of disguising operatives, and some who may appear to be retired officers, in civilian functions to facilitate operations.

189. The Qods Force provides financial aid to terrorist groups in Iraq by using the civilian or religious cover, specifically, entities known as The Headquarters for the Restoration of Holy Shrines (Setad-e Bazsazi-ye Atabat-e Ali-yat, hereinafter "HRHS"), and Khatam al-Ambiya AA (discussed in detail below).

### 4. HEZBOLLAH

190. Iran has had a long, deep, strategic partnership with the Lebanese-based Foreign

---

[37] U.S. Department of The Treasury, *Fact Sheet: Designation of Iranian Entities and Individuals for Proliferation Activities and Support for Terrorism* (Oct. 25, 2007) https://www.treasury.gov/press-center/press-releases/Pages/hp644.aspx.

Terrorist Organization Hezbollah, which historically has served as Iran's proxy and agent, enabling Iran to project extremist violence and terror throughout the Middle East and around the globe.

191. Hezbollah is probably the most prominent and "successful" group developed with the assistance of the IRGC-QF.

192. From its inception, Hezbollah has enjoyed significant financial and material aid from Iran. The IRGC-QF, in particular, played a critical role in Hezbollah's foundation and its funding and training.

193. On June 25, 2016, the Secretary General of Hezbollah, Sheikh Hassan Nasrallah, claimed that "We are open about the fact that Hezbollah's budget, its income, its expenses, everything it eats and drinks, its weapons and rockets, come from the Islamic Republic of Iran." Nasrallah stated that, "[a]s long as Iran has money, we have money… Just as we receive the rockets that we use to threaten Israel, we are receiving our money. No law will prevent us from receiving it…"[38]

194. Through its proxy, agent, and strategic partner Hezbollah, Iran orchestrated a series of kidnappings of Westerners in Lebanon, including several Americans in the 1980s; killed more than two hundred U.S. Marines at their barracks in Beirut, Lebanon, in 1983; hijacked TWA flight 847 in 1985; and launched two major attacks in the 1990s on Jewish targets in Buenos Aires, Argentina, namely the 1992 bombing of the Israeli Embassy (killing twenty-nine people), and the 1994 bombing of a Jewish community center (killing eighty five people). Hezbollah assisted al Qaeda affiliated terrorists in the Khobar bombings in Saudi Arabia on June 25, 1996 (which killed

---

[38] Majid Rafizadeh, *In first, Hezbollah confirms all financial support comes from Iran*, Al Arabiya English (June 25, 2016), https://english.alarabiya.net/en/2016/06/25/In-first-Hezbollah-s-Nasrallah-confirms-all-financial-support-comes-from-Iran.html.

19 U.S. service members) and in the bombing of the U.S. embassies in Nairobi and Dar es Salaam on August 7, 1998 (which killed 224 and injured approximately 5000 people).

195. Hezbollah is a Shi'a Islamist militant group based in Lebanon, funded by Iran, and formed in 1982. Its leaders are followers of Ayatollah Khomeini and Ayatollah Khamenei, and its forces are trained and organized by a contingent of 1,500 Revolutionary Guards. Hezbollah's military strength has grown so significantly that its paramilitary wing, the Jihad Council, is considered more powerful than the Lebanese Army. Hezbollah relied almost exclusively on Iranian largesse, which funds at least $100 to $200 million a year or more.[39] The U.S. Department of State estimates that Hezbollah has tens of thousands of supporters and members worldwide. While Hezbollah is based in the southern suburbs of Beirut, the Bekaa Valley, and southern Lebanon, its activities make evident the group is capable of operating around the globe, particularly in Iraq.

196. Despite Shi'a ideologies, Iran and Hezbollah have supported and worked with Sunni and other terrorist organizations to effectuate their broader goal of exporting terror around the globe and destabilizing western involvement and influence in the Middle East. According to the New York Times:

> In an interview, Sheikh Naim Qassem, Hezbollah's deputy secretary general, proudly acknowledged his organization's efforts to pass its rich militant experience to other Iranian aligned forces. "Every group anywhere in the world that works as we work, with our ideas, is a win for the party," he said. "It is natural: All who are in accordance with us in any place in the world, that is a win for us because they are part of our axis and a win for everyone in our axis."[40]

---

[39] U.S. Department of Defense, *CDA—Military Power of Iran, Unclassified Report on Military Power of Iran* (Apr. 2010), http://www.fas.org/man/eprint/dod_iran_2010.pdf.

[40] Ben Hubbard, *Hezbollah: Iran's Middle East Agent, Emissary and Hammer,* N.Y. TIMES (Aug. 27, 2017).

197. Hezbollah received "massive material and technical support from the Iranian government"[41] in the planning and perpetrating the terrorist attack which killed 241 Marines in Beirut in 1983.

198. The Iranian regime provides "extensive financial support for terrorists generally and in support for al Qaeda and Hezbollah in particular"[42]

199. Iran "created Hizballah…[and] has been the sponsor of Hizballah since its inception, providing funding, training, leadership and advice via Hizballah's leadership councils…Hizballah has received from Iran $100 million to $500 million in direct financial support annually…Hizballah served as a terrorist proxy for Iran, created specifically for the purpose of serving as a front for Iranian terrorism, in effect, a cover name for terrorist operations run by Iran's IRGC around the world."[43]

200. As a result of its mission, conduct, and terrorist activities, on January 25, 1995, Hezbollah was designated a SDT by the United States. It has maintained that designation since that time.

201. Hezbollah was designated an FTO by the United States on October 8, 1997, and it has retained that designation since that time.

202. On October 31, 2001, pursuant to E.O. 13224, Hezbollah was designated SDGT by the United States. It has maintained that designation since that time.

203. According to a December 20, 2004 *Washington Post* article, "Western diplomats and political analysts in Beirut estimated that Hezbollah received *$200 million a year from Iran*."

---

[41] *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d. 46, 58 (D. D.C. 2003).

[42] *Havlish v. Bin Laden (In re Terrorist Attacks on September 11, 2001),* 2011 U.S. Dist. LEXIS 155899, at 97-98 (S.D.N.Y. Dec. 22, 2011).

[43] *Id.*

(Emphasis added).

204. Sometime after the 2003 U.S. invasion of Iraq, Hezbollah created "Unit 3800," an entity dedicated to supporting Iraqi Shi'a terrorist groups targeting Iraqi citizens, and Multi National Forces in Iraq ("MNF-I").

205. At Iran's request, Hezbollah leader Hassan Nasrallah established Unit 3800.

206. Unit 3800 has trained and advised various Shi'a militias in Iraq, later termed the Special Groups.

207. By early 2005, the presence of Hezbollah operatives in Iraq became an open secret when Iraqi Interior Minister Falah al-Naquib announced the arrest of eighteen Lebanese Hezbollah members on terrorism charges.

208. According to U.S. intelligence estimates—and following the 2007 arrest and interrogation of Hezbollah's senior operative in Iraq—in 2007 the IRGC-QF provided Hezbollah and one of its local trainers, Ali Musa Daqduq (who is discussed in greater detail below), up to $3,000,000.00 in U.S. currency *every month*.

209. Hezbollah's terrorist attacks include the suicide truck bombings of the U.S. Embassy and U.S. Marine barracks in Beirut in 1983; the U.S. Embassy annex in Beirut in 1984; and the 1985 hijacking of TWA flight 847, during which U.S. Navy diver Robert Stethem was murdered. Elements of the group were responsible for the kidnapping, detention, and murder of Americans and other Westerners in Lebanon in the 1980s. Hezbollah was implicated, along with Iran, in the 1992 attacks on the Israeli Embassy in Argentina and in the 1994 bombing of the Argentine-Israeli Mutual Association in Buenos Aires. In 2000, Hezbollah operatives captured three Israeli soldiers in the Shebaa Farms area and, separately, kidnapped an Israeli non-combatant in Dubai. Although the non-combatant survived, on November 1, 2001, Israeli Army

Rabbi Israel Weiss pronounced the soldiers dead. The surviving non-combatant and the bodies of the Israeli soldiers were returned to Israel in a prisoner exchange with Hezbollah in 2004.[44]

210. Hezbollah carried out two attacks against UN Interim Force Peacekeepers in Lebanon; an attack in late July 2011 that wounded six French citizens, and a second attack, days later, which injured three French soldiers. Also in 2011, four Hezbollah members were indicted by the UN-based Special Tribunal for Lebanon, an international tribunal investigating the 2005 assassination of Lebanese Prime Minister Rafik Hariri. A fifth Hezbollah member, Hassan Habib Merhi, was indicted in October 2013.

211. In January 2012, Thai police detained Hezbollah operative Hussein Atris on immigration charges as he was attempting to depart Thailand. Atris, a SDGT, was convicted of possessing bomb-making materials by a Thai court in September 2013 and sentenced to two years and eight months in prison. He was released in September 2014 and is believed to reside in Lebanon. In July 2012, a suspected Hezbollah operative was detained by Cypriot authorities for allegedly helping plan an attack against Israeli tourists on the island. On March 21, 2013, a Cyprus court found the operative guilty of charges based on his surveillance activities of Israeli tourists.

212. Hezbollah was also responsible for the July 2012 attack on a passenger bus carrying 42 Israeli tourists at the Sarafovo Airport in Bulgaria, near the city of Burgas. The explosion killed five Israelis and one Bulgarian, and injured 32 others.

213. In May 2013, Hezbollah publicly admitted to playing a significant role in the ongoing conflict in Syria, rallying support for Syrian President Bashar al-Assad. Hezbollah's support for the Assad regime continues in 2017.

---

[44] U.S. Department of State, Office of the Coordinator for Counterterrorism, *Country Reports on Terrorism 2015*, at 369 (June 2016), https://www.state.gov/documents/organization/258249.pdf.

214. In 2015, the group also continued its operations against Israel. In January, Hezbollah fired rockets on an Israeli convoy, killing two Israeli soldiers. In a speech in Tehran in August, Hezbollah Deputy Secretary General Shaykh Na'im Qasim declared Israel, the United States, and Takfiri groups as enemies of Islam and urged Muslims to fight against these enemies. In December, Hezbollah leader Nasrallah threatened attacks in revenge for the death of senior Hezbollah militant Samir Kuntar. Nasrallah claimed orders had already been given and fighters on the ground were preparing attacks.

215. In May 2015, Cypriot authorities arrested dual Lebanese-Canadian national Hussein Bassam Abdallah after finding 8.2 tons of liquid ammonium nitrate in the basement of a residence in Larnaca. Abdallah admitted to Cypriot authorities he was a member of Hezbollah. He was charged on five offenses, including participation in a terrorist organization and providing support to a terrorist organization, by the Republic of Cyprus and sentenced to six years in prison on June 29, 2015.

216. Iran continues to provide Hezbollah with funding, training, weapons, and explosives, as well as political, diplomatic, monetary, and organizational aid. Such support and material is crucial to Hezbollah's continued terrorist operations. Moreover, the support is substantial.

217. United States District Courts have found, in numerous lawsuits related to international acts of terrorism sponsored or directed by Iran, that Hezbollah is, in fact, an arm of the IRGC and a key component to Iran's *modus operandi* of sponsoring and/or directing international terrorism aimed primarily against the United States and its allies.[45]

---

[45] *See, e.g.*, *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 135–36 (D. D.C. 2011); *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 55 F. Supp. 3d 189, 197 (D. D.C. 2014).

218. Hezbollah training camps in southern Lebanon and Iran, and Hezbollah's expertise in the use of EFPs, kidnapping, communications and small-unit operations, were critical to the IRGC's operations in Iraq during the Relevant Period.

### 5. IRAN'S MINISTRY OF DEFENSE AND ARMED FORCES LOGISTICS (MODAFL)

219. In October 2007, the United States designated Iran's Ministry of Defense and Armed Forces Logistics ("MODAFL") as a FTO stating it controls the Defense Industries Organization, an Iranian entity identified in the Annex to UN Security Council Resolution 1737 and designated by the United States under E.O. 13382 on March 30, 2007.

220. MODAFL is the principal procurement arm of Iran's military and terror apparatus.

221. MODAFL operates the [Iran] Aviation Industries Organization ("IAIO"), the Aerospace Industries Organization ("AIO"), and the Defense Industries Organization ("DIO"). MODAFL was designated by the United States on October 25, 2007.

222. The AIO was designated on June 28, 2005 for weapons proliferation.

223. The MAPNA group is also a key component of MODAFL and the IRGC's procurement chain.

224. Abbas Aliaabadi, Chairman of MAPNA International FZE and President of the MAPNA Group, is a former member of the Iranian Ministry of Construction Jihad and of the Iranian Air Force. Aliaabadi was also a key member of the Ministry of Culture & Islamic Guidance instrumental in the creation of Hezbollah and has close links to the IRGC.

225. Pursuant to the Arms Export Control Act and the Export Administration Act, MODAFL was sanctioned in November 2000 for its involvement in missile technology proliferation activities.

226. The U.S. government explained the basis for the designation as follows:

> The Ministry of Defense and Armed Forces Logistics (MODAFL) controls the Defense Industries Organization, an Iranian entity identified in the Annex to UN Security Council Resolution 1737 and designated by the United States under E.O. 13382 on March 30, 2007. MODAFL also was sanctioned, pursuant to the Arms Export Control Act and the Export Administration Act, in November 2000 for its involvement in missile technology proliferation activities.
>
> MODAFL has ultimate authority over Iran's Aerospace Industries Organization (AIO), which was designated under E.O. 13382 on June 28, 2005. The AIO is the Iranian organization responsible for ballistic missile research, development and production activities and organizations, including the Shahid Hemmat Industries Group and the Shahid Bakeri Industries Group, which were both listed under UN Security Council Resolution 1737 and designated under E.O. 13382. The head of MODAFL has publicly indicated Iran's willingness to continue to work on ballistic missiles. Defense Minister Brigadier General Mostafa Mohammad Najjar said that one of MODAFL's major projects is the manufacturing of Shahab-3 missiles and that it will not be halted. MODAFL representatives have acted as facilitators for Iranian assistance to an E.O. 13382-designated entity and, over the past two years, have brokered a number of transactions involving materials and technologies with ballistic missile applications.

227. Formally, the IRGC is a subordinate directorate of MODAFL.

228. The IRGC uses MODAFL to both procure and develop weapons and equipment for its use.

229. The DIO, the AIO, and Defense Technology and Science Research Centre are all subordinate to MODAFL, giving it operational control over Iran's ballistic missile development program.[46]

230. MODAFL entities' illicit procurement activities have resulted in a series of ongoing U.S. sanctions.[47]

231. Moreover, Iran continues to provide material support, including resources and

---

[46] Steven R. Ward, *Immortal: A Military History of Iran and Its Armed Forces* 320 (2009).

[47] The United States has sanctioned MODAFL pursuant to the Arms Export Control Act, the Export Administration Act (in November 2000), and Executive Order 13382 (in October 2007).

guidance, to multiple terrorist organizations and Special Groups, including all of the terrorist groups that perpetrated the acts of international terrorism complained herein, that undermine the stability of the Middle East and Central Asia.[48]

232. The Special Groups and FTOs that Iran provides material resources and support to include multiple Shi'a, and some Sunni, terror groups in Iraq, including but not limited to, Kata'ib Hizballah ("KH"); Asa'ib Ahl Al Haq ("AAH"); Jaysch al Mahdi ("JAM"); Badr Organization ("Badr") (all discussed below); and Ansar al Islam and Al Qaida in Iraq.

233. Tellingly, Hamas, Lebanese Hezbollah, and the Palestinian Islamic Jihad maintain representative offices in Tehran, in part to help coordinate Iranian financing and training.[49]

### 6. ANSAR AL ISLAM

234. From its beginning, Iran did not confine its support of anti-U.S. national fighters to Shi'a groups. Iran also supported Ansar al Islam (a/k/a Ansar al Sunna, "AAI"), a radical terrorist group with close ties to Al Qaida.

235. In the 1990s, Al Qaida developed a close relationship with Iran and the IRGC. Usama bin Laden and Ayman al Zawahiri held clandestine meetings with Imad Mughniyah and Ahmad Vahidi (then commander of IRGC Qods Force) which "lead to an informal agreement to cooperate in providing support for actions carried out primarily against Israel and the United States…Thereafter, senior al Qaeda operatives and trainers traveled to Iran to receive training in explosives. Usama bin Laden also sent senior aides to Iran for training with the IRGC and to

---

[48] U. S. Department of State, *2016 International Narcotics Control Strategy Report*, https://www.state.gov/j/inl/rls/nrcrpt/2016/vol2/253407.htm (last visited Sept. 12, 2017).
[49] *Id.*

Lebanon for training with Hizballah.[50]

236. AAI is a Kurdish Sunni Muslim insurgent group and separatist movement in Iraq with well-established ties to Al Qaida and Iran. Although the group's initial membership was primarily Kurdish, it grew to comprise a large number of Sunni Arabs, including Iraqis, Saudis, and Yeminis.

237. Mullah Krekar, aka Faraj Ahmad Najmuddin, reportedly founded Ansar al Islam in December 2001 (at that time, with funding and logistical support from Al Qaida and Usama bin Laden). However, the group has significant, life-sustaining ties to Iran.

238. AAI seeks to transform Iraq into an Islamic state. AAI operates primarily in northern Iraq, but maintains a presence in western and central Iraq. AAI expanded its operations into Syria in 2011.

239. AAI has a number of aliases, including Ansar al-Sunna; Ansar al-Sunna Army; Devotees of Islam; Followers of Islam in Kurdistan; Helpers of Islam; Jaish Ansar al-Sunna; Jund al-Islam; Kurdish Taliban; Kurdistan Supporters of Islam; Partisans of Islam; Soldiers of God; Soldiers of Islam; Supporters of Islam in Kurdistan.

240. AAI was established in 2001 in Iraqi Kurdistan with the merger of two violent Kurdish extremist factions that traced their roots to the Islamic Movement of Kurdistan. AAI seeks to expel western interests from Iraq and establish an independent Iraqi state based on its interpretation of Sharia law. AAI has been mostly active in the northern party of Iraq, western Iraq-Anbar province, and in the areas surrounding and including Mosul and Kirkuk since 2003.

241. In 2001, AAI seized control of several villages near the town of Halabja and

[50] *Havlish v. Bin Laden (In re Terrorist Attacks on September 11, 2001),* 2011 U.S. Dist. LEXIS 155899, at 110-111 (S.D.N.Y. Dec. 22, 2011).

established an administration ruled by Shari'a Law. As part of Operation Iraqi Freedom, Coalition and Kurdish forces routed AAI from northern Iraq.

242. Coalition airstrikes destroyed AAI's base in northern Iraq (Iraqi Kurdistan) in late March 2003, and the majority of AAI members fled across the border and regrouped in Iran with the assistance of the IRGC and the Iranian regime. Counterterrorist operations suggest many of those fighters reentered Iraq and took active part in anti-Coalition activities. From Iran, the group continued to operate under leader Abu Abdullah Shafi's leadership and was temporarily renamed Ansar al-Sunna (although it officially re-adopted the name Ansar al-Islam in 2007).

243. During the summer of 2004, the jihadists began migrating back into Iraq. A large number of the returning jihadists chose to settle in Mosul. In October 2004, coalition forces in Mosul captured a senior Ansar leader, Aso Hawleri. A week later, Lt. Gen. Norton Schwartz, who at the time was Director, the Joint Staff, Pentagon (and from 2008-2012 was Chief of Staff of the Air Force), warned that Ansar al Islam had reemerged as the coalition's "principal organized terrorist adversary in Iraq."

244. From 2003-2007, AAI continued to target Coalition Forces and U.S. Nationals, including Plaintiffs. Its deadliest attack during this period occurred on February 1, 2004, when it launched multiple simultaneous suicide car bombings at PUK offices in Erbil, killing over 100 civilians and injuring over 130 more. By February 2007, AAI had claimed responsibility for over 1,600 attacks in Iraq, including against American nationals. AAI openly cooperated with AQ; however, it adamantly refused to formally join the Islamic State of Iraq, which was an umbrella organization established by AQ. Instead, in May 2007, AAI joined with the Mujahideen Army, the Islamic Army in Iraq, and Ansar al-Sunna Shariah (a splinter group that had broken from AAI in early 2007 because its members wished to take a harder line against AQ) to form an anti-Coalition

umbrella organization called the Reformation and Jihad Front ("RJF"). The RJF was a pan-Islamist organization that challenged AQ for leadership of the Iraqi Sunni Islamist movement.

245. AAI claimed responsibility for the beheading of 12 Nepalese hostages and the kidnapping and beheading of an Iraqi who was employed as a mechanic for the American forces at the Mosul airport. AAI targeted Iraqi Kurds for alleged collaboration with the U.S. In September 2003, members of the Jaysch Ansar al-Sunna beheaded three Iraqi Kurdish militiamen in retaliation for the cooperation by Kurdish political parties with the U.S. in Iraq.

246. U.S. and British intelligence reports in 2004 "concluded that [AAI] was working closely with Iran, and also al Qaeda, in its terrorist attacks against coalition forces." One British defense report noted "Intelligence indicates that elements of Iran's [IRGC-QF] 'are providing safe haven and basic training to Iran-based [AAI] cadres.'" (brackets in original).[51]

247. On December 21, 2004, AAI subgroup Jamaat Ansar al-Sunna launched a suicide bomb attack on Forward Operating Base Marez in Mosul, Iraq. AAI insurgent Abu Museli, disguised as an Iraqi Security Services officer, entered the base mess tent and detonated the explosive vest he was wearing. The blast killed fourteen U.S. soldiers, four U.S. citizen Halliburton employees, and four Iraqi soldiers allied with the U.S. military. An additional fifty-one U.S. soldiers and twenty-one others sustained non-fatal injuries. AAI, through Jamaat Ansar al-Sunna, claimed credit for the attack. This Terrorist Attack resulted in the death, maiming or injury of certain Plaintiffs, who are referred to below.

248. Another British intelligence source "said that Iranian government agencies were also secretly helping [AAI] members cross into Iraq from Iran, as part of a plan to mount sniper

---

[51] Pound, *supra* note 27.

attacks against coalition forces."[52] American sources confirmed this information, adding that "an Iranian was aiding [AAI] 'on how to build and set up' IED's.[53]

249. In February 2004, Kurdish intelligence officials uncovered a cache of Syrian, Yemeni, and Saudi passports—all bearing Iranian entry stamps—in an Ansar al Islam safe-house on the Iranian side of the border. The fact the passports found had Iranian stamps on them indicated the terrorists did not secretly infiltrate into Iran, but that they entered with the cognizance and full knowledge of the Iranian authorities. According to Iraqi intelligence officers, captured Ansar al-Sunna militants have admitted to receiving assistance from Iranian officials.

250. Iran played a significant role in supporting AAI. Iran openly allowed the group to operate along its borders despite the group's alleged affiliation with the AQ network. AAI was tasked with conducting checks on cars leaving their stronghold to going into Iran, indicating coordination with the Islamic Republic.

251. According to a document from Iraqi intelligence dated June 13, 2002 and seized by U.S. forces in Iraq, it was reported from a trust-worthy source that Mullah Kraykar (Krekar), the head of the AAI organization arrived in Iran for negotiations with several Iranian officials. The information indicated that the purpose of the visit was to confirm a unified strategy and to guarantee continuous Iranian support to that group.

252. According to other sources Mullah Krekar spent many years in Iran and was arrested in Amsterdam after a flight from Tehran.

253. AAI operations decreased substantially by 2006, but the group continued to maintain an extensive support and financial infrastructure in Europe that it used to recruit and send

---

[52] *Id.*

[53] *Id.*

jihadis to Iraq.

254. Over the course of 2007-2008, AAI moved increasingly away from the RJF and strengthened its ties to AQ. It coordinated with AQ on several attacks against U.S. and PUK troops and began to adopt AQ's hardline attitude against Sunni Iraqis who worked for the U.S. or Iraqi governments.

255. On May 4, 2010, AAI's leader Abu Abdullah al-Shafi was captured by U.S. forces in Baghdad and remains in prison. On December 15, 2011, AAI announced a new leader: Abu Hashim Muhammad bin Abdul Rahman al Ibrahim. In March 2012, a Norwegian court convicted Iraqi citizen and AAI founder Mullah Krekar (aka Najmuddin Faraj Ahmad) of issuing threats and inciting terrorism, and sentenced him to six years in prison. Living in Norway on a long-term resident permit, Krekar appealed, and in December 2012, an appeals court affirmed his convictions for issuing threats and intimidating witnesses, but reversed his conviction for inciting terrorism. The appeals court reduced his prison sentence to two years and 10 months. He was released from prison in late January 2015, but was arrested again shortly after for praising the January 2015 Charlie Hebdo attacks in Paris in a TV interview.

256. AAI has conducted attacks against a wide range of targets including Iraqi government and security forces, as well as U.S. and Coalition Forces and U.S. nationals, including Plaintiffs. AAI has conducted numerous kidnappings, executions, and assassinations of Iraqi citizens and politicians. The group has either claimed responsibility or is believed to be responsible for attacks in 2011 that resulted in 24 deaths and wounded 147. In 2012, the group claimed responsibility for the bombing of the Sons of Martyrs School in Damascus, which was occupied by Syrian security forces and pro-government militias; seven people were wounded in the attack. In 2014, AAI claimed responsibility for attacks near Kirkuk, Tikrit, and Mosul, Iraq; primarily

directed against Iraqi police and security forces and, in one instance, an oil field.

257. The U.S. Department of Treasury designated AAI a Specially Designated Terrorist Group under E.O 13224 on February 20, 2003.

258. The U.S. Department of State designated AAI a FTO on March 22, 2004.

259. Australia, New Zealand, Canada, and the European Union have designated AAI as terrorist organization. The U.S. Treasury Department designated Mullah Krekar an individual providing assistance to terrorism and thus subject to having all international assets frozen in December 2006.

### 7. AL QAIDA NETWORK

260. Al Qaida (a/k/a al-Qaeda, a/k/a al-Qa'ida, "AQ") is a designated international terrorist organization, widely recognized as such by all civilized nations and the United Nations, and is neither a legitimate "military force" nor a recognized sovereign state.

261. The United States has designated AQ, including its branches, subsidiaries and "franchisees" (Including al-Qa'ida in Iraq ("AQI")) as a foreign terrorist organization and a specially designated global terrorist.

262. Commencing in the early 1990s and continuing until at least 2011, the Islamic Republic of Iran provided significant, indispensable, funding, weapons, safe haven, training, intelligence, centers for command and control, undocumented transport between Afghanistan, Iraq and Pakistan across its borders and other significant material support.

263. Iran was an indispensable accomplice and provided significant financial and material support in AQ's terrorist attacks against American, European and Iraqi civilians and soldiers from at least 1991 until 2011.

264. On June 30 1989, General Omar Hassan al-Bashir led a coup d'état toppling the exiting regime in Sudan. The radical Salafi cleric, Hassan Abd Allah al Turabi served as the

"intellectual architect" or "the power behind the throne", sometimes officially as leader of the National Islamic Front and sometimes as speaker of the parliamentary assembly.

265. In 1990-1991, Turabi founded the Popular Arab and Islamic Congress, which included representatives from the Palestine Liberation Organization, Hamas, Egyptian Islamic Jihad, Al Qaeda, Algerian Islamic Jihad, Hezbollah, Abu Nidal Group, and the Islamic Revolutionary Guard Corps.

266. In 1991, the Kingdom of Saudi Arabia expelled AQ leader Usama bin Laden ("UBL") and UBL moved his base of operations to Sudan.

267. The Sudanese army protected Bin Laden's home in Khartoum and his terrorist training bases within the country as well as providing AQ with access to the international and United States financial networks. In addition, Sudan provided AQ with 200 Sudanese passports, allowing AQ operatives to travel under fictitious identities.

268. Turabi brought together UBL and leaders of the IRGC Qods Force and leaders of Hezbollah. Commencing in April 1991, Turabi hosted meetings bringing together leaders from AQ, Hezbollah, and Iranian and Sudanese officials. According to AQ shura council member Abu Hajer al-Iraqi, the purpose of these meetings was to focus on common enemies, the West and the United States.

269. In 1991, Hezbollah opened a base of operations in Khartoum, Sudan.

270. On December 13, 1991, Iranian President Ali Akbar Hashemi Rafsanjani arrived in Khartoum, Sudan for a six-day visit, by a delegation of 157 members, including Mohsen Rezai then Commander of the IRGC, Iranian Intelligence Minister Ali Fallahian and Iranian Defense Minister Ali Akbar Torkan. Various agreements were signed between Iran and Sudan, pursuant to

which, inter alia, Iran delivered $300 million of Chinese weapons and 2000 IRGC operatives were sent to train Sudan's Popular Defense Forces.

271. According to the 9-11 Commission Report, in late 1991 or 1992, discussions in Sudan between AQ and Iranian operatives led to an agreement to cooperate in providing support - specifically, training - for actions carried out primarily against Israel and the United States. Not long afterward, senior AQ operatives and trainers traveled to Iran to receive training in explosives.

272. The 9-11 Commission reported that "“[t]he relationship between al Qaeda and Iran demonstrated that Sunni-Shia divisions did not necessarily pose an insurmountable barrier to cooperation in terrorist operations."[54]

273. Iran was a valuable connection for UBL and AQ, and AQ was highly beneficial to Iran, given AQ's extreme and violent position against America and its animosity against the Kingdom of Saudi Arabia. Iran and Hezbollah played significant roles in the buildup of AQ's terrorist capabilities.

274. As a result of the creation of this terrorist alliance, AQ leader Ayman al Zawahiri repeatedly visited Tehran during the 1990s and met with Minister Ali Fallahian, other officers of Iran Ministry of Intelligence and Security ("MOIS"), and Qods Force Commander Ahmad Vahidi.

275. Throughout the 1990s, the Al Qaeda-Iran-Hezbollah terrorist training arrangement continued. Hezbollah leader Imad Mughniyah coordinated these training activities, including training of AQ personnel, with Iranian government officials in Iran and with IRGC officers working undercover at the Iranian embassy in Beirut, Lebanon.

276. AQ operative Ali Mohammed provided security for one prominent meeting between Hezbollah's chief external operations officer, Imad Mughniyah, and Bin Laden in Sudan.

---

[54] The 9/11 Comm. Rpt. (2004) at p. 61.

Mohammed testified at this plea hearing that "Hezbollah provided explosives training for AQ and a1 Jihad. Iran supplied Egyptian Jihad with weapons. Iran also used Hezbollah to supply explosives that were disguised to look like rocks."

277. Iran trained Saif al-Adel, head of AQ security, and other AQ members, including shura council members, at Hezbollah training camps in the mid-1990s. AQ leader Mustafa Hamid was one of AQ's primary points of contact with IRGC. He negotiated the agreement between AQ and Iran, which secured safe transit between Iran and Afghanistan and to Iraq for AQ members.

278. This facility was used by AQ in planning and perpetrating the terrorist attacks conducted against U.S. civilians, diplomats and servicemen and women, such as: the suicide bombing of U.S. Air force personnel and their families in Khobar, Saudi Arabia; the U.S. embassies in Nairobi and Dar es Salaam; and the World Trade Center on September 11, 2001.

279. On June 25, 1996, Iranian-backed Hezbollah terrorists, with the support of AQ, bombed the Khobar Towers housing complex in Dhahran, Saudi Arabia, killing 19 U.S. servicemen and wounding approximately 500 others. FBI investigators concluded: the operation was undertaken on direct orders from senior Iranian government leaders; the bombers had been trained and funded by the IRGC in Lebanon's Bekaa Valley; and senior members of the Iranian government, including Ministry of Defense, Ministry of Intelligence and Security and the Supreme Leader's office, had selected Khobar as the target and commissioned Hezbollah to carry out the operation.

280. AQ was involved in the planning and preparations for the Khobar Towers bombing. UBL tried to facilitate a shipment of explosives to Saudi Arabia, and, on the day of the operation, bin Laden was, according to NSA intercepts, congratulated on the telephone.[55]

[55] The 9/11 Comm. Rpt. (2004) at p. 60.

281. The 9/11 Commission examined classified CIA documents establishing that IRGC-Qods Force commander Ahmad Vahidi planned the Khobar Towers attack with Ahmad al Mugassil, a Saudi-born AQ operative.

282. Two months later, in August 1996, UBL would cite the Khobar Towers bombing in his first *fatwa*, a "Declaration of War Against the Americans Occupying the Land of the Two Holy Places": "The crusader army became dust *when we detonated* al Khobar…" (Emphasis added).

283. Iran aided, abetted and conspired with Hezbollah, UBL, and AQ to launch the large-scale bombing attacks against the United States embassies in Nairobi and Dar es Salaam on August 7, 1998. Prior to their meetings with Iranian officials and agents, Bin Laden and AQ did not possess the technical expertise required to carry out the embassy bombings. Iran, through Hezbollah, provided explosives training to Bin Laden and AQ and rendered direct assistance to AQ operatives.[56]

284. As stated in the 9/11 Report, "Iran made a concerted effort to strengthen relations with al Qaeda after the October 2000 attack on the *USS Cole*…" For example, Iranian officials facilitated the travel of AQ members – including at least 8 of the 9/11 hijackers – through Iran on their way to and from Afghanistan, where the hijackers trained at AQ's terrorist training camps.[57]

285. U.S., Saudi, and Egyptian political pressure on the Sudanese eventually forced them to expel Usama bin Laden in May 1996. Radical Afghan Sunni warlord Gulbuddin Hekmatyar, a strong Iranian ally, invited bin Laden to join him in Afghanistan. UBL then relocated to Afghanistan with the assistance of the Iranian intelligence services.[58]

---

[56] *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 139 (D.D.C. Nov. 28, 2011).

[57] The 9/11 Comm. Rpt. (2004) at pp. 240-241.

[58] *Id*. at 65.

286. Iran provided material support to AQ after the 9/11 attacks in several ways, most significantly by providing safe haven to AQ leaders and operatives, keeping them safe from retaliation by U.S. forces that had invaded Afghanistan. According to the U.S. Treasury Department press release, January 16, 2009, in late 2001, while in Tehran, AQ senior operative Mustafa Hamid negotiated with the Iranians to relocate al Qaeda families to Iran after the 9/11 attacks.

287. In the fall of 2001, Iran facilitated the exit from Afghanistan, into Iran, of numerous AQ leaders, operatives, and their families. The Iran-Afghanistan safe passageway, established earlier to get AQ recruits into and out of the training camps in Afghanistan, was utilized to evacuate hundreds of AQ fighters and their families from Afghanistan into Iran for safe haven there. The IRGC knew of, and facilitated, the border crossings of these AQ fighters and their families entering Iran.

288. Among the high-level AQ officials who arrived in Iran from Afghanistan at this time were Sa'ad bin Laden and the man who would soon lead "al Qaeda in Iraq," Abu Musab al Zarqawi.

289. In late 2001, Sa'ad bin Laden facilitated the travel of UBL's family members from Afghanistan to Iran. Thereafter, Sa'ad bin Laden made key decisions for AQ and was part of a small group of AQ members involved in managing AQ from Iran.

290. By 2002, AQ had established in Iran its 'management council,' a body that Usama bin Laden reportedly tasked with providing strategic support to the organization's leaders in Pakistan. Key members of the council included Saif al-Adel, Sulayman Abu Ghayth, Abu al-Khayr al-Masri, Abu Muhammad al-Masri, and Mahfouz Ould al-Walid (a.k.a Abu Hafs al-Mauritani). All five senior operators remained influential over the next several years and retained close ties to

bin Laden. Adel organized groups of fighters to overthrow Hamid Karzai's regime in Afghanistan and provided support for the May 12, 2003 terrorist attacks in Riyadh.

291. The Iranian regime offered AQ this safe haven in order to advance its own interests. Having AQ operatives in the country gave Iran a bargaining chip and important leverage with the U.S. and Saudi Arabia. In addition, it enabled Iran to protect itself from a possible attack against targets in Iran. The deal enabled Iran to cause chaos in Iraq and thus preventing it from becoming a Muslim democratic regime, which would endanger the security of the Iranian regime by the example and influence it would pose to the tens of thousands of Iranian pilgrims who visit the Shiite shrines in Iraq each year.

292. The agreement was reached between IRGC Qods Force commander Qassem Soleimani and AQ senior commander Abu Hafs al-Mauritani at Iran's Zahedan (near the Pakistani and Afghanistan border) during December 2001.

293. In testimony before the U.S. Senate in February 2003, CIA Director George Tenet said, "we see disturbing signs that Al Qaeda has established a presence in both Iran and Iraq."[59]

294. Senior AQ members continued to conduct terrorist operations from inside Iran. For example, the U.S. intercepted communications from Saif al Adel, then in Mashad, Iran, to AQ assassination teams in Saudi Arabia just before their May 12, 2003 assault on three housing compounds in Riyadh. AQ leaders in Iran planned and ordered the Riyadh bombing.

295. CIA Director General Michael Hayden noted that Usama Bin Laden understood that Iran was providing safe harbor to AQ.

---

[59] David Johnston, *Threats and Responses: Washington; Top U.S. Officials Press Case Linking Iraq to Al Qaeda,* N.Y. TIMES (Feb. 12, 2003), http://www.nytimes.com/2003/02/12/world/threats-responses-washington-top-us-officials-press-case-linking-iraq-al-qaeda.html.

296. For example – he quoted communications between senior AQ commanders and bin Laden, found on bin Laden's computer: "everybody is threatened – as long as he moves – by a missile…There is an idea preferred by some of the brothers to avoid attrition [loss of staff, leaders, and the organization's old elites] the idea is that some brothers will travel to '*safe*' areas with their families, just for protection." The author offers some ideas for safe havens: Sind, Baluchistan, Iran. Two months later bin Laden agrees they should be taking refuge in safer areas."[60]

297. After the September 19, 2008 attack on the American embassy in Sana'a, Yemen, which killed 19 people, Ayman al Zawahiri sent a letter to IRGC (which was intercepted) which stated: "Al-Qaeda's leadership pays tribute to Iran's generosity, stating that *without its 'monetary and infrastructure assistance' it would have not been possible for the group to carry out the terror attacks*.[61] (Emphasis added).

298. Testifying before the Senate Foreign Relations Committee on March 16, 2010, then commander of U.S. Central Command General David Petraeus stated that: AQ "[c]ontinues to use Iran as a key facilitation hub, where facilitators connect AQ's senior leadership to regional affiliates..."[62]

### A. ABU MUSAB ZARQAWI AND THE RISE OF AL QA'IDA IN IRAQ ("AQI")

299. In 1999, Abu Musab Zarqawi founded and was the operational leader of Al Tawhid al Jihad (a/k/a Jund al-Islam), an organization with close personal and organizational links to the

[60] Michael W. Hayden, AMERICAN INTELLIGENCE IN THE AGE OF TERROR – PLAYING TO THE EDGE 339-340 (2016).

[61] Con Coughlin, *Iran receives al Qaeda praise for role in terrorist attacks*, THE TELEGRAPH (Nov. 23, 2008, http://www.telegraph.co.uk/news/worldnews/middleeast/iran/3506544/Iran-receives-al-Qaeda-praise-for-role-in-terrorist-attacks.html).

[62] U.S. Military Academy, *Combating Terrorism at West Point* (Apr. 2017), https://ctc.usma.edu/v2/wp-content/uploads/2017/04/CTC-Sentinel_Vol10Iss4.pdf.

AQ network. UBL provided Zarqawi $200,000 to set up a training camp in Afghanistan near the border with Iran. In 2000, a Jordanian court sentenced him in absentia to fifteen years of hard labor for his role in the AQ millennial terror plot targeting Western interests in Jordan.

300. On September 23, 2001, Tawhid (together with Iranian-sponsored AAI) took hostage, tortured and murdered (the majority of whom were beheaded) 42 Peshmerga security officers in the Iraqi Kurd border town (on the border with Iran).

301. In early 2002, Zarqawi escaped from U.S. forces in Afghanistan to Iran with other AQ leaders and operatives. While staying in Iran, Zarqawi operated under the control of the IRGC and the Qods Force. Intelligence officials claimed that the time Zarqawi spent in Iran was crucial for rebuilding his network before relocating to Iraq to establish AQI.

302. Several months later, Zarqawi returned to the AAI camp in northern Iraq, run by his Jund al-Islam/Tawhid lieutenants.

303. On September 24, 2003, the U.S. Treasury designated Zarqawi and several of his associates as *Specially Designated Global Terrorists*, stating that Zarqawi not only has "ties" to Hezbollah, but that plans were in place for his deputies to meet with both Hezbollah and Asbat al Ansar (a Lebanese Sunni terrorist group tied to AQ). [63]

304. In 2004, Zarqawi changed the name of his group from Al Tawhid to AQI.

305. US Department of Treasury designed Tawhid al Jihad as an FTO and SDGT on October 15, 2004.[64] The OFAC SDN designation was updated on December 1, 2004 to the other known names of AQI.[65]

---

[63] *Supra* note 37.

[64] U.S. Department of the Treasury, *Recent OFAC Actions* (Oct. 15, 2004), https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/20041015.aspx.

[65] U.S. Department of the Treasury, *Recent OFAC Actions* (Dec. 1, 2004),

306. MOIS and IRGC-QF are under the general command of Section 101, also called the Leader's Intelligence and Security office. They cooperate and share intelligence in "exporting the revolution" (which is a euphemism for fomenting violence and destabilizing other regimes, primarily via acts of international terrorism).[66]

307. Department 15 of MOIS handles liaison responsibilities with foreign terror groups while the IRGC relies on its Qods Force for many of the same functions.[67]

308. On June 10, 2003, American intelligence officials asserted that MOIS and the IRGC Qods Force are deeply involved in supporting AQ.[68]

309. In December 2006, two Qods force agents were arrested in Baghdad, possessing "weapons lists, documents pertaining to shipments of weapons into Iraq, organizational charts, telephone records and maps, among other sensitive intelligence information… [and] information about importing modern specially shaped explosive charges into Iraq. Officials were particularly concerned by the fact that the Iranians had information about importing modern, specially shaped explosive charges into Iraq, weapons that have been used in roadside bombs to target U.S. military

---

https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/pages/20041201.aspx.

[66] Stratfor, Iranian Intelligence and Regime Preservation (June 22, 2010), https://worldview.stratfor.com/article/special-series-iranian-intelligence-and-regime-preservation.

[67] William Tucker, *A Reported Shift in Iran's IRGC*, IN HOMELAND SECURITY (Sept. 29, 2015),http://inhomelandsecurity.com/a-reported-shift-in-irans-irgc/; Stratfor Report, *Iranian Intelligence and Regime Preservation* (June 22, 2010), https://worldview.stratfor.com/article/special-series-iranian-intelligence-and-regime-preservation.

[68] *U.S. says Iran harbors al Qaeda 'associate'*, WASHINGTON TIMES (June 10, 2003, http://www.washingtontimes.com/news/2003/jun/10/20030610-125659-6237r/).

armored vehicles."[69] An American intelligence official said these documents "show how the Qods Force … is working with individuals affiliated with Al Qaeda in Iraq and Ansar Al Sunna."[70] One of the IRGC Qods Force detainees was, according to General Stanley McChrystal, Mohsen Chizari, commander of Qods Force's Operations and Training staff.[71]

310. Iranian involvement in Iraq with the Sunni terrorists was known in military and intelligence circles since the Fallujah uprising in March of 2004.

311. Iranian mines and weapons were funneled to Zarqawi's terrorists in Fallujah and elsewhere throughout Sunni dominated Anbar province.

312. On February 16, 2012, the U.S. Department of Treasury designated MOIS, indicating that it has facilitated AQ operatives in Iran and provided them with documents, identification cards, and passports. The Treasury also stated that MOIS provided money and weapons to AQI (a terrorist group designated under E.O. 13224), and negotiated prisoner releases of AQ operatives.[72]

313. Under Secretary for Terrorism and Financial Intelligence, David S. Cohen, stated on July 28, 2011 "that Iran is the leading state sponsor of terrorism in the world today. By exposing Iran's secret deal with al-Qa'ida, allowing it to funnel funds and operatives through its territory, we are illuminating yet another aspect of Iran's unmatched support for terrorism. Today's action

---

[69] *Iraq Expels 2 Iranians Detained by U.S.*, WASHINGTON POST (Dec. 30 2006, http://www.washingtonpost.com/wp-dyn/content/article/2006/12/29/AR2006122901510.html).

[70] *Iran's Secret Plan For Mayhem* , NEW YORK SUN, (Jan. 3 2007, http://www.nysun.com/foreign/irans-secret-plan-for-mayhem/46032/).

[71] Michael Weiss and Hassan Hassan, ISIS: INSIDE THE ARMY OF TERROR 53 (2015).

[72] U.S. Department of the Treasury, *Treasury Designates Iranian Ministry of Intelligence and Security for Human Rights Abuses and Support for Terrorism* (Feb. 16 2012), https://www.treasury.gov/press-center/press-releases/Pages/tg1424.aspx.

[designating the following AQ terrorists and others] also seeks to disrupt this key network and deny al-Qa'ida's senior leadership much-needed support…Iran is a critical transit point for funding to support al-Qa'ida's activities in Afghanistan and Pakistan."[73] Among terrorists designated were the following:

a. Ezedin Abdel Aziz Khalil, a prominent AQ facilitator, who has been operating under a secret agreement between AQ and the Iranian government. The Iranian regime has permitted Khalil to operate within its borders since 2005 and maintain a relationship with him. Khalil moved money and recruits from across the Middle East into Iran, then on to Pakistan for the benefit of AQ senior leaders. He was responsible for moving significant amounts of money via Iran for onward passage to AQ leadership in Iraq and Afghanistan.

b. Muhsin al-Fadhli, who was considered then an AQ leader in the Gulf countries. Al-Fadhli is so trusted within AQ that he was one of the few terrorists with foreknowledge of the 9/11 attacks. When he was first designated in 2005, al-Fadhli was considered an al Qaeda leader in the Gulf who provided support to Iraq-based fighters for attacks against the U.S.-led Coalition. Al-Fadhli was also a major facilitator for deceased AQI leader Abu Musab al Zarqawi. Al-Fadhli began working with AQ's Iran-based facilitation network in 2009 and was later arrested by the Iranians. He was subsequently released by the Iranians in 2011 and went on to assume the leadership of the facilitation network from AQ leader Yasin al-Suri later that year.

c. AQ leader Yasin al Suri, along with five other terrorist operatives who use Iranian soil to move funds and recruits from Iran's neighboring Gulf countries to South Asia and elsewhere. Al Suri's network assists senior AQ operatives in Iraq and Pakistan.

314. On February 6, 2014, the U.S. Treasury Department designated senior AQ member Jafar al-Uzbeki, part of an AQ network which operates in Iran "with the knowledge of Iranian authorities."[74] The U.S. Treasury added that this network "uses Iran as a transit point for moving

[73] U.S. Department of the Treasury, *Treasury Targets Key Al-Qa'ida Funding and Support Network Using Iran as a Critical Transit Point* (Jul. 28, 2011), https://www.treasury.gov/press-center/press-releases/Pages/tg1261.aspx.

[74] U.S. Department of the Treasury, *Treasury Targets Networks Linked to Iran* (Feb. 6 2014), https://www.treasury.gov/press-center/press-releases/Pages/jl2287.aspx.

funding and foreign fighters through Turkey to support al Qaeda-affiliated elements inside Syria."[75]

### 8. THE SPECIAL GROUPS

315. Iran opposes U.S. peacekeeping efforts and initiated acts of international terrorism against U.S. nationals, Coalition Forces, and Iraqi citizens with the goals of destabilizing Iraq and increasing Iranian influence in that country.

316. Iran, through its proxies and/or agents acting within the scope of their employment, agency, and direction from Iran, provided substantial material support and/or resources that facilitated acts of torture, extrajudicial killing and hostage taking that caused personal injury or death to more than one thousand Americans in Iraq.

317. Iran's support for the Special Groups is now well established. The IRGC-QF attempted to develop the Special Groups into a network similar to Hezbollah – a highly-lethal network that relied upon the Iranian regime to survive. The purpose of the IRGC-QF in developing these Special Groups was to create highly lethal networks that relied upon the Iranian regime to survive, and thus, were controlled, either directly or indirectly, by Iran.

318. Iran leveraged (and continues to do so) its control and dominion over the IRGC, the IRGC-QF, and Hezbollah, and through those entities, provided the Special Groups with training (in Iran), weapons, safe harbor, U.S. currency, and intelligence, including those Special Groups responsible for the Terrorist Attacks which killed, maimed, or otherwise injured Plaintiffs.[76] The training provided to the Special Groups while they were in Iran included tactics and technology to conduct kidnappings, small unit tactical operations, and employ sophisticated

---

[75] *Id.*

[76] U.S. Department of Defense, *CDA—Military Power of Iran, Unclassified Report on Military Power of Iran*, at 3 (Apr. 2010), http://www.fas.org/man/eprint/dod_iran_2010.pdf.

IEDs.[77]

319. These Special Groups returned to Iraq after receiving their Iran-supported training, maintaining their group's organization. Thus, each Special Group consisted of Iraqi civilians who trained together in Iran on how to use IEDs, EFPs, mortars, rockets, as well as intelligence, sniper, and kidnapping operations.

320. The Special Groups operate throughout Iraq and, at all relevant times, remained under the control of Iran, through its proxies and/or agents, MOIS, IRGC, IRGC-QF, and Hezbollah.

321. During the Relevant Period, the IRGC-QF supplied the Special Groups with an estimated funding stream of *at least* $750,000 to $3 million (U.S. Dollars) a month.

322. Utilizing the training, weapons and funding provided by Defendants, either directly or indirectly, the Special Groups planned and executed a string of bombings, kidnappings, sectarian murders, and more against Iraqi civilians, Coalition Forces and U.S. nationals, including Plaintiffs.

323. Although U.S. policy (supported by U.N. Security Council resolutions) was to establish peace and stability in Iraq in the hopes of establishing a democratic government, Iran viewed the U.S. and international peacekeeping efforts in Iraq as a potential threat to its regime.

324. Rather than cooperate with the U. S. and Coalition Forces authorized by the U.N. to bring peace, democracy and stability to Iran, or alternatively to openly and directly engage in armed conflict with the U.S. or other Coalition Forces, Iran chose to undermine U.S. and U.N. peacekeeping efforts by unleashing massive waves of terrorism and sectarian violence in Iraq, in

[77] U.S. Department of Defense, *Iranian Government Behind Shipping Weapons to Iraq*, http://archive.defense.gov/news/newsarticle.aspx?id=1289 (last visited Sept. 13, 2017).

part, by targeting U.S. Nationals, including Plaintiffs, through the Special Groups that Iran controlled.

325. President Bush declared on May 1, 2003, that "major combat operations in Iraq have ended."

326. On May 23, 2003, the Coalition Provisional Authority established as the interim government for Iraq disbanded the Iraqi military forces.

327. The U.N. Security Council authorized the post-conflict occupation of Iraq by Coalition Forces in October 2003 to maintain "security and stability."[78]

328. After 2003, the IRGC inserted hundreds of its Iranian-trained operatives into Iraq's state security organs (notably the Ministry of Interior intelligence structure) in part through its influence within the Badr Organization (discussed further below).

329. In addition to its coordination with the Badr Organization, Iran, through its agent the IRGC-QF, formed the Ramezan Corps intended to operate specifically in Iraq. The Ramezan Corps cultivated, armed, trained and supported several Shi'a terror groups in Iraq that the U.S. military later termed "Special Groups."

330. Although a June 7, 2004 U.N. Security Council Resolution expressly assigned Coalition Forces in Iraq the task of helping Iraq "*by preventing and deterring terrorism*," Iran set out to target Coalition Forces and U.S. nationals, including Plaintiffs, and force them out of Iraq. (emphasis added).[79]

331. After Coalition Forces invaded, Iranian intelligence services penetrated Iraq rapidly and thoroughly. The goal of their collection efforts was finding out what weapons U.S. troops were

---

[78] S.C. Res. 1511, ¶ 13, U.N. Doc. S/RES/1511 (Oct. 16, 2003).
[79] S.C. Res. 1546, U.N. Doc. S/RES/1546.

carrying and what kind of body armor they were wearing. Iranian agents also sought information on the location of U.S. Army and intelligence bases; on the routes traveled by U.S. convoys; on the operations of the Special Forces' elite Delta Force; and on the plans of the U.S. military and intelligence inside Iraq. The Iranians preferred not to be directly implicated in attacks on U.S. forces, but instead offered bounties to Iraqis for killing Americans, shooting down U.S. helicopters, and destroying American tanks.[80]

332. The number and sophistication of Special Groups increased in 2005, as the Iranian regime deployed Hezbollah to train Iraqi civilians in Iran.

333. In 2007, the Special Groups further escalated the number of mortar and rocket attacks against U.S. national targets, including Plaintiffs, in the Baghdad International Zone. The accuracy of this indirect fire improved because of the training and weapons these Special Groups received from Iran.

334. In sum, from October 16, 2003 onward, even though U.S. military personnel in Iraq were present at the request of the sovereign government of Iraq and participants in an internationally sanctioned peace keeping mission pursuant to the U.N. Security Council Resolution acting under Chapter VII of the U.N Charter, Iran embarked on a policy of terrorism, extrajudicial killings and murder, kidnapping and torture to thwart those efforts.

335. During the Relevant Period, the conduct of MOIS IRGC, IRGC-QF, Hezbollah, AAI, AQ, the Special Groups, and other Iranian supported terrorists in the extrajudicial killing, injuring, and kidnapping and hostage taking of U.S. nationals, Coalition Forces, and civilians were conducted by operatives who did not carry fixed distinctive signs recognizable at a distance, carry arms openly, conduct their operations in accordance with the laws and customs of war, or enjoy

[80] Pound, *supra* note 27.

any form of combatant immunity for their acts. In fact, Hezbollah, the IRGC, IRGC-QF, AAI, AQ, the Special Groups and other Iranian supported terrorists acted in flagrant violation of, *inter alia*, the Geneva Convention Articles 48, 51(2)[81] and 52(2) of Additional Protocol I; Article 4(2)(d) of Additional Protocol II[82] and Article 147 of the Geneva Convention on the Protection of Civilian Persons in Time of War (Fourth Geneva Convention 1949), as well as United Nations Security Council Resolution 1373.[83]

336. Because of the perceived unreliability and value of the post-Hussein regime Iraqi currency, Special Groups and other terrorists in Iraq used U.S. currency almost exclusively.

337. Iran facilitated and enabled the terrorist attacks launched against U.S. Nationals, including the Plaintiffs and others, on a massive scale which would not have been possible without Iran's provision of hundreds of thousands of munitions, advanced technologies, training, funding, intelligence, safe harbor and other material support detailed herein.

338. Without the massive funding and material support from Iran, Special Groups and other Iranian proxies would not have been able to conduct the thousands of acts of international terrorism on the scale and with the lethality they achieved, including the Terrorist Attacks which

---

[81] Article 51(2) of Additional Protocol I prohibits acts or threats of violence where the primary purpose is to spread terror among the civilian population.

[82] The prohibition of acts or threats of violence aimed at terrorizing the civilian population is further supported by the wider prohibition of acts of terrorism in Article 4(2)(d) of Additional Protocol II. The UN Secretary-General noted that violations of Article 4 of Additional Protocol II have long been considered violations of customary international law. UN Secretary-General, *Report on the establishment of a Special Court for Sierra Leone*; ICTR Statute, Article 4(d) (cited in Vol. II, Ch. 1, § 545).

[83] United Nations Security Council, *Prevention and Suppression of Financing Terrorist Acts*, (Sept. 28, 2001), http://www.un.org/en/sc/ctc/specialmeetings/2012/docs/United%20Nations%20Security%20Council%20Resolution%201373%20(2001).pdf (passing unanimously to reaffirm various UN resolutions).

resulted in the deaths, maiming, or otherwise injuring of Plaintiffs and Plaintiffs' family members.

## A. THE BADR CORPS/BADR ORGANIZATION

339. The Badr Corps was established in 1982 in Iran as the military wing of the Supreme Council for Islamic Revolution in Iraq.

340. From its headquarters in Iran, the Badr Corps operated extensive networks throughout Iraq in the 1990s. The group smuggled men and weapons into Iraq to conduct attacks against the Iraqi regime of Saddam Hussein.

341. Like Hezbollah, the Badr Corps established clandestine offices in businesses and social organizations in Iraq.

342. The Badr Corps also used Iraqi front companies to recruit operatives, collect intelligence, and circulate propaganda materials in Shi'a populated areas.

343. Before 2003, the Badr Corps served as Iran and Hezbollah's most important surrogate inside Iraq, acting as a *de facto* arm of the IRGC-QF.

344. The Badr Corps received training and weapons from Iraq through the IRGC and Hezbollah.

345. After Saddam Hussein's overthrow in 2003, the Badr Corps renamed itself the Badr Organization, and many of its operatives joined the newly formed Iraqi security forces.

346. Published reports indicate that thousands of members of the Badr Organization remained on the IRGC-QF payroll after 2004.

347. Several senior Badr Corps operatives later emerged as key conduits for funneling weapons to Iranian Proxies in Iraq from 2004 through at least 2011, including Abu Mustafa al-Sheibani, a key smuggler of deadly Iranian IEDs, and Jamal Ja'far Muhammad, a/k/a Abu Mahdi al-Muhandis (a/k/a "The Engineer"), who later led Kata'ib Hizballah (discussed below).

348. "Department 1000" of the IRGC-QF, known as the Ramezan Corps, is in charge of

Iraqi operations and remains the largest Qods Force command outside of Iran. It coordinated, armed, and influenced the Badr Organization.

349. Although the Badr Organization evolved into a major political organization with seats in the new Iraqi parliament, it also played a significant role in facilitating Special Groups' operations in Iraq. A number of Special Groups commanders such as Al-Muhandis are, or were, Badr Corps agents and operatives.

350. It was through the Badr Corps that the IRGC inserted hundreds of its Iranian-trained operatives into Iraq's state security organs (e.g. the Iraqi Ministry of Interior Intelligence structure) during the Relevant Period.

**B. KATA'IB HIZBALLAH**

351. Kata'ib Hizballah ("KH") has functioned as Iran's go-to terror group in Iraq and received support from Lebanese Hezbollah, including training in weapons use; IED construction and operation; and sniper, rocket, and mortar attacks. KH is a radical Shi'a Islamist group, an Iraqi terrorist organization, and an anti-Western establishment responsible for numerous terrorist acts against Iraqi, U.S., and other targets in Iraq since at least 2007. KH has ideological ties to Lebanese Hezbollah and may have received support from that group.

352. KH has a number of aliases, including Hezbollah Brigades; Hezbollah Brigades in Iraq; Hezbollah Brigades-Iraq; KH; Kata 'ib Hezbollah; Kheta'ib Hezbollah; Khattab Hezballah; Hezbollah Brigades-Iraq of the Islamic Resistance in Iraq; Islamic Resistance in Iraq; Kata'ib Hizbollah Fi al-Iraq; Katibat Abu Fathel al-A'abas; Katibat Zayd Ebin Ali; Katibut Karbalah.

353. KH was formed in 2006 and came to prominence in 2007 for attacks against Coalition Forces and U.S. nationals, including Plaintiffs, and its online propagandizing of those attacks. The IRGC-QF established it as a vehicle to deploy its most experienced operators and its most sensitive equipment. Historically, KH operated mainly in Shi'a areas of Baghdad, such as

Sadr City and throughout the south.

354. The IRGC-QF positioned one of its own, Abu Mahdi al-Muhandis (aka Jamal al-Ibrahimi), as the leader of KH. Under al-Muhandis, KH developed as a compact movement of less than 400 personnel that was firmly under IRGC Qods Force control and maintains relatively good operational security.

355. In June 2011, five U.S. soldiers were killed in a rocket attack in Baghdad when KH assailants fired between three and five rockets at U.S. military base Camp Victory.

356. In 2015, Iran continued to be deeply involved in the conflict in Syria, working closely with the Assad regime to counter the Syrian opposition, and also in Iraq where Iran continued to provide support to militia groups, including the FTO KH. Iranian-backed groups, including KH, continued to operate in Iraq during 2015, which exacerbated sectarian tensions in Iraq and contributed to human rights abuses against primarily Sunni civilians. KH and other Iraqi Shi'a militias associated with the IRGC have been brought into the Iraqi government's Popular Mobilization Forces. The inclusion of KH, a designated FTO, in the Popular Mobilization Forces enlisted by the Iraqi Government in the effort against the Islamic State of Iraq and the Levant ("ISIL," aka "ISIS" or "Daesh"), threatens to undermine counterterrorism objectives.

357. On June 24, 2009, the United States designated KH an FTO.

358. The State Department's notice of KH's FTO designation stated that:

> The organization has been responsible for numerous violent terrorist attacks since 2007, including improvised explosive device bombings, rocket propelled grenade attacks, and sniper operations. Kata'ib Hizbollah [sic] also targeted the International Zone in Baghdad in a November 29, 2008 rocket attack that killed two UN workers. In addition, KH has threatened the lives of Iraqi politicians and civilians that support the legitimate political process in Iraq.[84]

---

[84] U.S. Department of State, Office of the Coordinator for Counterterrorism, *Designation of Kata'ib Hizbollah*, (June 26, 2009), https://www.state.gov/j/ct/rls/other/des/143209.htm.

359. KH was simultaneously designated an SDGT under E.O. 13224, because it was "responsible for numerous terrorist acts against Iraqi, U.S., and other targets in Iraq since 2007."[85]

360. The U.S. Treasury Department also designated KH pursuant to E.O. 13438.

361. The U.S. Treasury Department's 2009 press release announcing KH's designation explained that KH had "committed, directed, supported, or posed a significant risk of committing acts of violence against Coalition and Iraqi Security Forces . . . "[86]

362. The press release also quoted then-Under Secretary for Terrorism and Financial Intelligence, Stuart Levey, as stating "[t]hese designations play a critical role in our efforts to protect Coalition troops, Iraqi security forces, and civilians from those who use violence against innocents to intimidate and to undermine a free and prosperous Iraq."[87]

363. The U.S Treasury press release also stated: "[f]urther, the IRGC-Qods Force provides lethal support to KH and other Iraqi Shia militia groups who target and kill Coalition and Iraqi Security Forces."[88]

364. The 2009 press release further reported that between March 2007 and June 2008, KH led a number of attacks against U.S. forces in Iraq, advising:

> As of 2008, Kata'ib Hizballah was funded by the IRGC-Qods Force and received weapons training and support from Lebanon-based Hizballah. In one instance, Hizballah provided training--to include building and planting IEDs and training in coordinating small and medium arms attacks, sniper attacks, mortar attacks, and rocket attacks--to Kata'ib Hizballah members in Iran.[89]

---

[85] Exec. Order 13,224.

[86] *Supra* note 83.

[87] *Id.*

[88] *Id.*

[89] *Id.*

365. Furthermore, the 2009 U.S. Treasury Department press release noted:

> Recordings made by Kata'ib Hizballah for release to the public as propaganda videos further demonstrate that Kata'ib Hizballah conducted attacks against Coalition Forces. In mid-August 2008, Coalition Forces seized four hard drives from a storage facility associated with a Kata'ib Hizballah media facilitator. The four hard drives included approximately 1,200 videos showing Kata'ib Hizballah's sophisticated planning and attack tactics, techniques, and procedures, and Kata'ib Hizballah's use of the most lethal weapons--including RPG-29s, IRAMs, and EFPs--against Coalition Forces in Iraq.[90]

366. One of the hard drives contained 35 attack videos edited with the KH logo in the top right corner. Additionally, between February and September 2008, Al-Manar in Beirut, Lebanon broadcast several videos showing KH conducting multiple attacks against U.S. nationals and Coalition Forces in Iraq.

367. Immediately preceding the government of Iraq's approval of the United States-Iraq security agreement in late November 2008, KH posted a statement that the group would continue fighting Coalition Forces and threatened to conduct attacks against the government of Iraq if it signed the security agreement with the United States.

368. In 2008, the U.S. Department of Defense described the linkages it found between KH, Iran, and multiple terrorist attacks against U.S. nationals in Iraq—including KH's use of EFPs:

> [A]lso known as Hezbollah Brigades, is a terrorist group believed to receive funding, training, logistics and material support from Iran to attack Iraqi and coalition forces using what the military calls 'explosively formed penetrators' – roadside bombs designed to pierce armor-hulled vehicles – and other weapons such as rocket-assisted mortars.

369. As noted above—and as stated by the U.S. Treasury Department in its July 2009

---

[90] *Id.*

press release—throughout 2008, Al-Manar, Lebanon Hezbollah's official television outlet in Lebanon (and itself a designated SDGT since May 2006), played numerous videos of KH launching rocket and IED attacks against U.S. troops in Iraq. In this manner, Hezbollah helped publicize KH's activities and increase its profile among leading Shi'a terrorist groups.

370. Although KH's leadership remains in flux, one individual reportedly associated with the group is Abu Mahdi al-Muhandis. According to an inquiry published by Kuwaiti daily al-Rai on June 4, 2016, during the 1980's, Abu Mahdi al-Muhandis received an Iranian citizenship from the Iranian regime as part of his prominent role in the Badr Corps.[91]

371. KH's leader, Abu Mahdi al-Muhandis, is wanted in Kuwait for his alleged role in the 1983 bombings of the American and French embassies in Kuwait City, as well as for his alleged involvement in the assassination attempt on the Kuwaiti Emir in 1985. In an interview with Hezbollah-affiliated media on January 3 2017, Abu Mahdi al-Muhandi admitted that he cooperated with Hezbollah top commanders Imad Moughniyeh and Mustafa Badreddine from the early 80's. According to him, this cooperation included training opposition Iraqi Shiite groups to fight Saddam Hussein regime and the U.S. troops in Iraq from 2003 onward.[92]

372. The U.S. Treasury Department designated al-Muhandis an SDGT in July 2009 and announced the designation in the same press release announcing KH's designation. That press release stated:

> As of early 2007, al-Muhandis formed a Shia militia group employing instructors from Hizballah to prepare this group and certain Jaysh al-Mahdi (JAM) Special Groups for attacks against Coalition Forces. The groups received training in guerilla warfare, handling bombs and

---

[91] *See* http://www.alraimedia.com/ar/article/special-reports/2016/06/04/684698/nr/nc (last visited Sept. 13, 2017) (Arabic translation available).

[92] Middle East Media Research Institute TV Monitor Project, *Clip #5829*, https://www.memri.org/tv/abu-mahdi-al-muhandis-deputy-commander-popular-mobilization-units-optimism-over-liberation-mosul (last visited Sept. 12, 2017).

> explosives, and employing weapons--to include missiles, mortars, and sniper rifles. In another instance as of September 2007, al-Muhandis led networks that moved ammunition and weapons--to include explosively formed penetrators (EFPs)--from Iran to Iraq, distributing them to certain JAM militias to target Coalition Forces. As of mid-February 2007, al-Muhandis also ran a weapons smuggling network that moved sniper rifles through the Iran-Iraq border to Shia militias that targeted Coalition Forces. Al-Muhandis also provided logistical support for attacks against Iraqi Security Forces and Coalition Forces conducted by JAM Special Groups and certain Shia militias. In one instance, in April 2008, al-Muhandis facilitated the entry of trucks--containing mortars, Katyusha rockets, EFPs, and other explosive devices--from Iran to Iraq that were then delivered to JAM Special Groups in Sadr City, Baghdad. Additionally, al-Muhandis organized numerous weapons shipments to supply JAM Special Groups who were fighting Iraqi Security Forces in the Basrah and Maysan provinces during late March-early April 2008.
>
> In addition to facilitating weapons shipments to JAM Special Groups and certain Shia militias, al-Muhandis facilitated the movement and training of Iraq-based Shia militia members to prepare them to attack Coalition Forces. In one instance in November 2007, al-Muhandis sent JAM Special Groups members to Iran to undergo a training course in using sniper rifles. Upon completion of the training course, the JAM Special Groups members had planned to return to Iraq and carry out special operations against Coalition Forces. Additionally, in early March 2007, al-Muhandis sent certain Shia militia members to Iran for training in guerilla warfare, light arms, marksmanship, improvised explosive devices (IED) and anti-aircraft missiles to increase the combat ability of the militias to fight Coalition Forces.
>
> In addition to the reasons for which he is being designated today, al-Muhandis participated in the bombing of Western embassies in Kuwait and the attempted assassination of the Emir of Kuwait in the early 1980s. Al-Muhandis was subsequently convicted in absentia by the Kuwaiti government for his role in the bombing and attempted assassination.[93]

373. In a July 2010 press briefing, U.S. General Ray Odierno identified KH as the group behind increased threats to U.S. bases in Iraq. General Odierno confirmed that KH operatives had

---

[93] U.S. Department of the Treasury, *Treasury Designates Individual, Entity Posing Threat to Stability in Iraq* (July 2, 2009), https://www.treasury.gov/press-center/press-releases/Pages/tg195.aspx.

gone to Iran for special training and then returned to Iraq. General Odierno stated, "[T]hey are clearly connected to Iranian IRGC."[94]

374. In June 2011, it was estimated that KH membership exceeded 1,000 people in Iraq.

375. Senior Iraqi Intelligence officials have stated that KH receives unlimited funding from Iran, allowing KH operatives to be paid $300-$500 per month.

### C. JAYSCH AL MAHDI & THE PROMISED DAY BRIGADES

376. Jaysh al Mahdi ("JAM" or the "Mahdi Army") was established by radical Shi'a cleric Muqtada al-Sadr in June 2003. On April 18, 2004, it led the first major armed confrontation by Shi'a militia against U.S.-led forces in Iraq.

377. JAM was co-founded by Imad Mughniyah, once the terrorism chief of Hezbollah and "an agent of Iran and a direct role in Iran's sponsorship of terrorist activities."[95] Prior to September 11, 2001, Mughniyah was ranked number one on the FBI's Most Wanted list for leading the attacks which killed 183 Marines in the bombing of the Holiday Inn in Beirut, the hijacking of a TWA plane and murder of a U.S. Navy diver, and the bombing of the U.S. Embassy in Beirut (replaced as number one most wanted by Usama bin Laden).

378. JAM expanded its territorial control of mixed or predominantly Shi'a neighborhoods and displaced or killed the local Sunni population.

---

[94] Jim Loney, *Iran-backed force threatens U.S. Iraq bases - general*, REUTERS, July 13, 2010, https://in.reuters.com/article/idINIndia-50093520100713.

[95] "Imad Fayez Mughniyah (a/k/a Hajj Radwan) was, for decades prior to his death in February 2008, the terrorist operations chief of Hizballah. Mughniyah played a critical role in a series of imaginative high-profile terrorist attacks across the globe, and his abilities as a terrorist coordinator, director, and operative was an order of magnitude beyond anything comparable on the scene between 1980-2008. Mughniyah was, since the early 1980s, an agent of the Islamic Republic of Iran, where he lived for many years. Imad Mughniyah had a direct reporting relationship to Iranian intelligence and a direct role in Iran's sponsorship of terrorist activities." *Havlish v. Bin Laden (In re Terrorist Attacks on September 11, 2001),* 2011 U.S. Dist. LEXIS 155899, at 106-107 (S.D.N.Y. Dec. 22, 2011).

379. JAM was able to gain initial control in many of the neighborhoods in and around Baghdad (such as Sadr City) by offering the Shi'a population protection and social services.

380. In a Department of Defense news briefing on August 24, 2007, General Rick Lynch confirmed that on August 7, 2006, the 3rd Brigade Combat Team "conducted a raid on a militant house . . . about 20 miles east of Baghdad . . . They arrested one of our division's most valued targets, . . . [who] acted as a link between Iran and the [JAM]. He was the main Shia conduit in that region for getting Iranian EFPs and rockets into Baghdad, . . ."[96]

381. Al-Sadr dissolved part of his militia after 2007, but maintained a small group of Iranian-supported militants called the Promised Day Brigades ("PDB") to carry out terrorist attacks against Coalition Forces and U.S. nationals, including certain Plaintiffs.

382. The PDB has received funding, training, and weapons from the IRGC and is one of the Special Groups.

383. It is estimated that the PDB had approximately 5,000 active members in June 2011.

384. The PDB actively targeted U.S. nationals, including Plaintiffs and U.S. forces, in an attempt to disrupt security operations and further destabilize Iraq.

385. For example, in June 2011, the PBD claimed responsibility for 52 attacks on U.S. Forces.

386. On June 28, 2011, the PDB issued a statement claiming responsibility for ten (10) mortar and Katyusha rocket attacks against U.S. Military convoys in which U.S. officials confirmed that three U.S. troops were killed.

387. PDB's headquarters is located in Sadr City, Baghdad, and the groups' main areas

[96] Kimberly Kagan, THE SURGE: A MILITARY HISTORY (ENCOUNTER BROADSIDES) 50 (2010).

of operation include southern Iraq, and Baghdad.

### D. ASA'IB AHL AL HAQ

388. Asa'ib Ahl Al Haq ("AAH" or the "League of the Righteous") terrorist organization is a Shi'a Special Group supported by Hezbollah and the IRGC-QF that conducted assassinations and operations in Iraq against Coalition Forces and various individuals and U.S. nationals.

389. AAH was originally established by Senior Sadrist and MDF-I detainee Qais al-Khazali. His brother, Laith Khazali, also helped lead the organization.

390. AAH split from al-Sadr's JAM in 2006. Since that time, AAH has conducted: thousands of IED attacks against U.S. and Iraqi forces; targeted kidnappings of Westerners and Iraqis; rocket and mortar attacks on the U.S. Embassy; murders of American and British soldiers; and assassinations of Iraqi officials.

391. AAH fought alongside Hezbollah in the 2006 Lebanon-Israeli War.

392. During the Relevant Period, AAH received significant funding from Iran, and had links to Iran's IRGC-QF and Hezbollah.

393. Senior Lebanese Hezbollah operative Ali Musa Daqduq provided training to AAH terrorists.

394. Daqduq reported to Youssef Hashim, the head of Lebanese Hezbollah Special Operations, and the latter reported to Abdul Reza Shahlai, the director of the IRGC-QF External Operations.

395. In October 2006, AAH used mortars to attack Coalition Forces at Forward Operating Base Falcon.

396. In May of 2007, AAH operatives attacked the Iraqi Finance Ministry, kidnapping British contractor, Peter Moore, and his four bodyguards. AAH released Moore in December 2009 in exchange for the Iraqi government's release of its leader Qais al-Khazali, but not before

murdering Moore's four bodyguards.

397. In October 2009, AAH used mortars to attack the U.S. Consulate in Al Hillah, Babil, Iraq.

398. In October 2011, AAH claimed responsibility for a roadside bomb that killed the last American to die before the U.S. withdrawal in Iraq in November 2011.

399. Hezbollah and the IRGC-QF provided JAM, PDB, KH, AAH, and other Shi'a groups with a variety of weapons and training used to target U.S. nationals, including Plaintiffs, and Coalition Forces engaged in their post-2003 peacekeeping mission.

400. These weapons included signature Iranian munitions such as EFPs and Improvised Rocket Assisted Munitions ("IRAMs"), as well as 107 mm rockets (often used as part of IRAMs), 120 mm and 60 mm mortars, RPG launchers and other small arms.

401. The training and weapons provided by Iran and its agents resulted in an increased lethality and effectiveness of the Terrorist Attacks, and included sophisticated tell-tale tactics that had not previously been seen in Iraq prior to infusion of Iranian agents, Hezbollah and the IRGC-QF in 2003.

### 9. IRANIAN SIGNATURE WEAPONS USED IN THE TERRORIST ATTACKS

402. A variety of Iranian weapons flowed into Iraq through direct purchases, smuggling, and dual-purpose component exportation to Iraq by Iran.

### A. EXPLOSIVELY FORMED PENETRATORS

403. One of Iran's primary forms of material support and/or resources that facilitated extrajudicial killings of U.S. citizens in Iraq was the financing, manufacturing and deployment of EFPs and IEDs.

404. IED is a term commonly used by the U.S. military as shorthand for a roadside

bomb. The Terrorist Groups consistently sought to attempt to improve IED effectiveness and sophistication.[97]

405. EFPs, IEDs, and other WMDs were typically smuggled from Iran to Iraq, and the IRGC-QF played a vital role in that process.

406. Additionally, in Iraq, the IRGC and Hezbollah supplied and trained various Special Groups, Al Qaida, and Ansar al Islam to deploy EFPs and IEDs. Iran, through Hezbollah, the IRGC-QF, and MOIS provided EFP and IED component to Iraqi insurgents and paid them up to $200 U.S. to use these weapons against U.S. soldiers in Iraq.

407. The number of EFPs used against Coalition Forces and U.S. nationals rose at a rate of 150% between January 2006 and December 2006, and increased every month between November 2006 and January 2007.

408. EFPs are a particularly effective form of manufactured IED and are sometimes known as a "shaped charge," usually made with a manufactured concave copper disk and a high explosive packed behind the liner.

[97] Pound, *supra* note 27.




409. The EFPs deployed by the IRGC and Hezbollah in Iraq were not truly "improvised" explosive devices but professionally manufactured and specifically designed to target U.S. nationals, including Plaintiffs, and Coalition Forces' armor. These EFPs cannot be made without specific machinery, access to which Iran controls, and without which Special Groups and other terrorist organizations could not obtain or use these munitions.

410. EFPs constitute "weapons of mass destruction" as that term is defined in 18 U.S.C. § 2332a(2)(A).

411. In Iraq, EFPs were often triggered by various technologies, including passive infra-red sensors (tripped by the engine heat of passing vehicles) and radio frequency modules (triggering the weapon when high-powered radio waves were generated by Coalition Forces' jamming devices), ultimately setting off an explosion within the steel casing of the EFP, forcing the copper disk forward, and turning it into a high-velocity molten slug, traveling at over a mile per second, that could pierce the military-grade armor of most U.S. vehicles deployed in Iraq even up to 300 feet away.

412. Metallurgic analysis by U.S. technicians helped confirm the high-purity copper EFP liners were not generally produced in Iraq.

413. Differences in the liners indicated the kind of press that was required to fabricate them—a heavy (hydraulic) press not commonly seen in Iraq.

414. To produce these weapons, copper sheets are often loaded onto a punch press to yield copper discs. These discs are annealed in a furnace to soften the copper. The discs are then loaded into a large hydraulic press and formed into the disk-like final shape.

415. The hydraulic press machinery was transported to Iran by Iran's national maritime carrier, Islamic Republic of Iran Shipping Line ("IRISL").

416. This munitions manufacturing process is critical to the design and concomitant lethality of the weapon and is controlled by Iran.

417. EFPs are far more sophisticated than homemade explosive devices such as traditional improvised explosive devices, and they are designed specifically to target vehicles such as armored patrols and supply convoys, though Hezbollah and the Special Groups have deployed them against U.S. and Iraqi civilians as well.

418. One of the ways in which the IRGC provided "militants with the capability to assemble improvised explosive devices (IEDs) with explosively formed penetrators (EFPs) that were specially designed to defeat armored vehicles" included providing them with manufacturing supplies such as copper and steel, as well as machinery—including hydraulic presses used to form copper into the shape of disks used in EFPs.

419. Iran propagated its specialized weapons knowledge up and down its network of terror proxies in Iraq, as the U.S. State Department documented in its 2006 *Country Reports on Terrorism* regarding Iran's specific efforts to provide terrorists with lethal EFPs to ambush and

murder U.S. nationals, including Plaintiffs, and other Coalition Forces:

> Iran provided guidance and training to select Iraqi Shia political groups, and weapons and training to Shia militant groups to enable anti-Coalition attacks. Iranian government forces have been responsible for at least some of the increasing lethality of anti-Coalition attacks by providing Shia militants with the capability to build IEDs with explosively formed projectiles similar to those developed by Iran and Lebanese Hezbollah. The Iranian Revolutionary Guard was linked to armor-piercing explosives that resulted in the deaths of Coalition Forces. The Revolutionary Guard, along with Lebanese Hezbollah, implemented training programs for Iraqi militants in the construction and use of sophisticated IED technology. *These individuals then passed on this training to additional militants in Iraq.* (emphasis added).[98]

420. As reported by the New York Time on March 26, 2007, U.S. Army officials believe that terrorists first began using EFPs in Iraq in August 2003.

421. In December 2003, Coalition Forces recovered radio equipment that was most likely intended for use with EFPs in Iraq.

422. In December 2004, Coalition Forces recovered passive infrared sensors modified for use with EFPs.

423. Although Iran's use of EFPs was publicly disclosed by U.S. and British officials in 2005 when the two counties issued diplomatic protests, the official identification of specific attacks as EFP attacks was not first publicly disclosed until 2010.

424. In 2006, the U.S. State Department's Country Reports on Terrorism further documented Iran's specific efforts to provide terrorists with lethal EFPs to ambush and murder U.S. nationals, including Plaintiffs, and other Coalition Forces:

> Iranian government forces have been responsible for at least some of the increasing lethality of anti-Coalition attacks by providing Shia militants with the capability to build IEDs with explosively formed

---

[98] U.S. Department of State, Office of the Coordinator for Counterterrorism, *Country Reports on Terrorism 2006*, at 369 (April 2007), https://www.state.gov/j/ct/rls/crt/2006/.

> projectiles similar to those developed by Iran and Lebanese Hezbollah [sic]. The Iranian Revolutionary Guard was linked to armor-piercing explosives that resulted in the deaths of Coalition Forces. The Revolutionary Guard, along with Lebanese Hezbollah [sic], implemented training programs for Iraqi militants in the construction and use of sophisticated lED technology. *These individuals then passed on this training to additional militants in Iraq.* (emphasis added).[99]

425. Also in 2006, Brigadier Gen. Michael Barbero, Deputy Chief of Staff for Strategic Operations of the Multi-National Force-Iraq stated, "Iran is definitely a destabilizing force in Iraq. I think it's irrefutable that Iran is responsible for training, funding and equipping some of these Shi'a extremist groups and also providing advanced IED technology to them, and there's clear evidence of that."[100]

426. Brigadier Gen. Kevin Bergner commented on Iran funding of Hezbollah operatives in Iraq:

> Actions against these Iraqi groups have allowed coalition intelligence officials to piece together the Iranian connection to terrorism in Iraq [...] Iran's Qods Force, a special branch of Iran's Revolutionary Guards, is training, funding and arming the Iraqi groups. [...] It shows how Iranian operatives are using Lebanese surrogates to create Hezbollah-like capabilities. And it paints a picture of the level of effort in funding and arming extremist groups in Iraq.... The groups operate throughout Iraq. They planned and executed a string of bombings, kidnappings, sectarian murders and more against Iraqi citizens, Iraqi forces and coalition personnel. They receive arms – including explosively formed penetrators, the most deadly form of improvised explosive device – and funding from Iran. They also have received planning help and orders from Iran.

427. In May 2007, the Commander of the Multinational Division-Center, U.S. Army Major General Richard Lynch, confirmed that "[m]ost of our casualties have come from

---

[99] *Id.*

[100] John Hendron and Alex Chadwick, *Pentagon: Iran Training Shiite Militias in Iraq*, NPR, August 24, 2006, https://www.npr.org/templates/story/story.php?storyId=5703572.

improvised explosive devices. That's still the primary threat to our soldiers—IEDs. And we have an aggressive campaign to counter those IEDs, but they still are taking a toll on our soldiers: 13 killed, 39 soldiers wounded. *What we're finding is that the technology and the financing and the training of the explosively formed penetrators are coming from Iran.* The EFPs are killing our soldiers, and we can trace that back to Iran." (Emphasis added.)

428. That same year, the Deputy Chief of Staff for Intelligence with the MNF-I, U.S. Army Major General Richard Zahner, declared that:

> Labels on weapons stocks seized inside and outside Iraq point to Iranian government complicity in arming Shiite militias in Iraq […] Iran is funneling millions of dollars for military goods into Iraq […] You'll find a red label on the C-4 [explosive] printed in English and will tell you the lot number and name of the manufacturer.

Major General Zahner further added:

> [T]he control of military-grade explosives in Iran is controlled through the state apparatus and is not committed through rogue elements right there. It is a deliberate decision on the part of elements associated with the Iranian government to affect this type of activities.

429. According to the U.S. State Department's 2007 Country Reports on Terrorism:

> Despite its pledge to support the stabilization of Iraq, Iranian authorities continued to provide lethal support, including weapons, training, funding, and guidance, to some Iraqi militant groups that target Coalition and Iraqi security forces and Iraqi civilians. In this way, Iranian government forces have been responsible for attacks on Coalition forces. The Islamic Revolutionary Guard Corps (IRGC) -Qods Force, continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, mortars that have killed thousands of Coalition and Iraqi Forces, and explosively formed projectiles (EFPs) that have a higher lethality rate than other types of improvised explosive devices (IEDs), and are specially designed to defeat armored vehicles used by Coalition Forces. The Qods Force, in concert with Lebanese Hezbollah, provided training outside Iraq for Iraqi militants in the construction and use of sophisticated IED technology and other advanced weaponry. These individuals then passed on this training to additional militants inside Iraq, a "train-the-trainer" program. In addition, the Qods Force and Hezbollah have also provided training inside Iraq. In fact, Coalition Forces captured a Lebanese Hezbollah

operative in Iraq in 2007.

430. Other U.S. Government reports, such as the Department of Defense's December 2007 "Measuring Stability and Security in Iraq" quarterly report to Congress, similarly concluded that:

> Iranian Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF) efforts to train, equip, and fund Shi'a extremists also continue despite reported assurances to Prime Minister Maliki that Iran will cease lethal aid.

431. These observations continued in 2008. According to the U.S. State Department's 2008 Country Reports on Terrorism:

> The Qods Force, an elite branch of the Islamic Revolutionary Guard Corps (IRGC), is the regime's primary mechanism for cultivating and supporting terrorists abroad. The Qods Force provided aid in the form of weapons, training, and funding to HAMAS and other Palestinian terrorist groups, Lebanese Hezbollah, Iraq-based militants, and Taliban fighters in Afghanistan ...
>
> Despite its pledge to support the stabilization of Iraq, Iranian authorities continued to provide lethal support, including weapons, training, funding, and guidance, to Iraqi militant groups that targeted Coalition and Iraqi forces and killed innocent Iraqi civilians. Iran's Qods Force continued to provide Iraqi militants with Iranian- produced advanced rockets, sniper rifles, automatic weapons, and mortars that have killed Iraqi and Coalition Forces as well as civilians. Tehran was responsible for some of the lethality of anti-Coalition attacks by providing militants with the capability to assemble improvised explosive devices (IEDs) with explosively formed projectiles (EFPs) that were specially designed to defeat armored vehicles. The Qods Force, in concert with Lebanese Hezbollah, provided training both inside and outside of Iraq for Iraqi militants in the construction and use of sophisticated IED technology and other advanced weaponry.

432. Similarly, in 2011, the U.S. Ambassador to Iraq, James F. Jeffrey, was quoted as saying "[F]resh forensic testing on weapons used in the latest deadly attacks in the country bolsters assertions by U.S. officials that Iran is supporting Iraqi insurgents with new weapons and training. […] We're not talking about a smoking pistol. There is no doubt this is Iranian."

433. Further, the State Department's 2011 *Country Reports on Terrorism* reported:

> Despite its pledge to support the stabilization of Iraq, Iran continued to provide lethal support, including weapons, training, funding, and guidance, to Iraqi Shia militant groups targeting U.S. and Iraqi forces, as well as civilians. Iran was responsible for the increase of lethal attacks on U.S. forces and provided militants with the capability to assemble explosives designed to defeat armored vehicles. The IRGC-QF [Islamic Revolutionary Guard Corps-Qods Force], in concert with Lebanese Hezbollah, provided training outside of Iraq as well as advisors inside Iraq for Shia militants in the construction and use of sophisticated improvised explosive device technology and other advanced weaponry.

434. Iran also introduced other weapons into Iraq for the purpose of supporting terrorist attacks on U.S. nationals and coalition personnel, including Plaintiffs. These included 81 mm mortars (the remainder of the region uses 82 mm mortars), repainted 107 mm rockets imported into Iran from China and marked for sale in the open markets, 60 mm canisters filled with Iranian-manufactured mortar rounds; 240 mm rockets, IRAMs, RPG-7s, RPG-29s, and RKG-3 armor penetrating anti-tank grenades deployed by the Terrorist Groups in various acts of international terrorism, including the Terrorist Attacks wherein Plaintiffs and/or Plaintiffs' family members were killed, maimed, or otherwise injured.

435. The presence of these weapons shows a high level of sophistication of the Iranian arms flow into Iraq as the purchases are made by the Iranian regime.

### B. IMPROVISED ROCKET ASSISTED MUNITIONS

436. In addition to EFPs, Iran also provided material support to the Terrorist Groups by providing them with IRAMs.

437. Along with EFPs, Improvised Rocket Assisted Munitions were a signature weapon of terrorists in Iraq that were supplied by the IRGC.

438. An IRAM is a rocket-fired improvised explosive device made from a large metal canister—such as a propane gas tank—filled with explosives, scrap metal, ball bearings, and propelled by rockets, most commonly 107 mm rockets launched from fixed or mobile sites by

remote control. They are designed to cause catastrophic damage and inflict mass casualties.




439. According to The Joint Improvised Explosive Device Defeat Organization of the U.S. Department of Defense, IRAMs were first introduced by Iran in November 2007 against U.S. personnel in Iraq.

# Vehicle Overview




Team concluded that Special Group criminals utilized 14 IRAMs, fired from a cargo truck, with 14 improvised rocket tubes setup in the bed with remote initiation to attack FOB Loyalty on April 28.

[101]

440. Although Iran's use of IRAMs was publicly disclosed by U.S. officials after their introduction in 2007, systematic identification of specific attacks as IRAM attacks was not publicly disclosed until 2010.

441. IRAM attacks occurred primarily in Baghdad and in the Shi'a dominated areas in southern Iraq, where Iranian-backed militias primarily operate.

442. All of the foregoing material support provided to Terrorist Groups, including those Special Groups that perpetrated the Terrorist Attacks that resulted in the death, maiming, or

[101] Bill Roggio, "Mahdi Army Uses 'Flying IEDs' In Baghdad," The Long War Journal, June 28, 2008, available at: https://www.longwarjournal.org/archives/2008/06/mahdi_army_uses_flyi.php (last accessed July 4, 2018).

otherwise injuring of Plaintiffs and Plaintiffs' family members, was provided by Iran for attacks on Coalition Forces and U.S. nationals, including Plaintiffs, or was financed and facilitated in substantial part by Iran.

**10. IRAN EVADES SANCTIONS & COMMITS ACTS OF TERRORISM THROUGH ITS AGENTS/PROXIES**

443. Because Iran is under numerous sanctions issued by other countries, it continues to evade those sanctions by operating clandestinely through agents of Iran, including the Islamic Republic of Iran Shipping Lines, Mahan Air, and the National Iranian Oil Company.

444. Iran obtains and provides weapons and other material support to Terrorist Groups and other terrorist organizations through agents and proxies that are nothing more than extensions of the Iranian regime.

445. Congress and successive Administrations have enacted several laws and executive orders that imposed sanctions on countries and firms that sell WMD technology and military equipment to Iran. Despite these efforts, Iran continued to evade sanctions.

446. In order to thwart U.S. sanctions efforts, Iran cultivated close relationships with foreign arms suppliers, including Russia, China, and North Korea.

447. In addition, Iran sought to clandestinely acquire dual-use technologies from European manufacturers, and certain export-controlled defense products, aircraft parts, dual-use technologies and materials from the United States.

448. Iran used proxies and agents as tools to circumvent sanctions, including IRISL, NIOC, KAA, and Mahan Air.

449. IRISL, NIOC, KAA, Mahan Air, and other Iranian government and IRGC fronts serve as financial, physical, and logistical conduits for Iran and its terroristic goals. At all relevant times, these agents and proxies of Iran acted in concert with Defendants.

## A. ISLAMIC REPUBLIC OF IRAN SHIPPING LINES

450. As Iran's national maritime carrier, IRISL[102] is an agent and instrumentality of Iran.

451. IRISL has a long history of facilitating arms shipments on behalf of the IRGC and the Iranian military, including copper discs that are a key component in EFPs (discussed below) used to kill and maim many of the Plaintiffs herein.

452. For example, a November 2007 State Department cable noted:

> Washington remains concerned about on-going conventional arms transfers from China to Iran, particularly given Iran's clear policy of providing arms and other support to Iraqi insurgents and terrorist groups like the Taliban and Hezbollah….
>
> We have specific information that Chinese weapons and components for weapons transferred to Iran are being used against U.S. and Coalition Forces in Iraq, which is a grave U.S. concern.

453. The diplomatic cable went on to note that an IRISL-flagged vessel was loaded at a Chinese port with multiple containers of cargo bound for delivery at the port of Bandar Abbas, Iran.

454. The cargo included DIO[103] manufactured ammunition cartridges (7.62 x 39 rounds for AK-47 assault rifles).

455. DIO is an Iranian government-owned weapons manufacturer controlled by MODAFL.

---

[102] IRISL is Iran's national maritime carrier: a global operator of merchant vessels with a worldwide network of subsidiaries, branch offices and agent relationships. It provides a variety of maritime transport services, including bulk, break-bulk, cargo and containerized shipping.

[103] DIO was designated an SDN by the U.S. on March 30, 2007. IRGC Brigadier-General Seyyed Mahdi Farahi was the Managing Director of DIO and has been sanctioned by the European Union since 2008. He was later sanctioned by the U.S. on January 17, 2016. *See*, http://eur-lex.europa.eu/legal-content/EN/TXT/?uri=celex%3A32010D0644 (last visited Sept. 13, 2017).

456. An April 2008 State Department cable warned of an IRISL shipment of chemical weapons precursors from China aboard the IRISL-leased, Iranian flagged merchant vessel ("M/V") *Iran Teyfouri*.

457. In September 2008, the U.S. Treasury Department designated IRISL a SDN, stating: "Not only does IRISL facilitate the transport of cargo for U.N. designated proliferators, it also falsifies documents and uses deceptive schemes to shroud its involvement in illicit commerce."

458. The Treasury Department further noted that:

> [i]n order to ensure the successful delivery of military-related goods, IRISL has deliberately misled maritime authorities through the use of deception techniques. These techniques were adopted to conceal the true nature of shipments ultimately destined for MODAFL [Iran's Ministry of Defense and Armed Forces Logistics].

459. In January 2009, a former Russian merchant ship chartered by IRISL—named the M/V *Monchegorsk* and flying a Cypriot flag—was spotted leaving the Iranian port of Bandar Abbas and heading for the Suez Canal.

460. Egyptian authorities were alerted by the U.S. Navy and the M/V *Monchegorsk* was forced into an Egyptian port to be searched. Iran's DIO was later determined to be the shipper of the military-related cargo.

461. Munitions, believed to be headed for Gaza, were found hidden in the cargo, including components for mortars and thousands of cases of powder, propellant, and shell casings for 125mm and 130mm guns.

462. In October 2009, U.S. troops boarded a German-owned freighter, the M/V *Hansa India*, in the Gulf of Suez and found eight containers full of ammunition that were headed to Syria from Iran.

463. The vessel carried seven containers of small arms ammunition (including 12 million bullet casings), as well as one container containing copper discs of the type used in EFPs to kill and maim Coalition Forces and U.S. nationals, including Plaintiffs.

464. The acronym "IRISL" was painted in large block letters on the exterior side walls of each shipping container, and the barrels of munition parts discovered inside the containers were marked with the inscription "SAEZMANE SANAYE DEFA," a common transliteration from Farsi to English of the name for Iran's Defense Industries Organization.

465. The M/V *Hansa India* was registered to the Hamburg-based shipping company Leonhardt & Blumberg, but had been under charter to IRISL for several years.

466. In November 2009, the Government of Israel intercepted an IRISL-flagged ship, the M/V *Francop*, headed for Beirut, Lebanon and then Latakia, Syria. The vessel was loaded with munitions crates that were either stamped "IRISL" or included documentation marked with the IRGC-QF logo.

467. The munitions found onboard included over two thousand 107mm "Katyusha" rockets, more than six hundred 122mm "Grad 20" rockets, and also various rocket fuses, mortar shells, rifle cartridges, fragment grenades and 7.62mm bullets.

468. The M/V *Francop*, owned by the Cypriot shipping company UFS, was carrying shipping containers clearly marked IRISL.

469. Because the DIO, as discussed *infra*, was one of MODAFL's three main weapons systems manufacturers, it was required to use IRISL for most of its illicit shipments of military-related raw-materials, parts and finished products for, and from, foreign suppliers, Iranian arms dealers and terrorist organizations.

470. Iran's DIO was listed as an entity of concern for military procurement activities in

an early warning document distributed by the German government to industry in July 2005.

471. The DIO was also designated by the United Nations in 2006 for its involvement in Iran's WMD program.

472. During 2006 and 2007, weapons caches seized by Coalition Forces from the Special Groups in Iraq contained large quantities of weapons produced by Iran; including many 107 millimeter artillery rockets with closely clustered DIO lot numbers and production dates between 2005 and 2007, as well as rounds and fuses for 60 millimeter and 81 millimeter mortars with DIO lot markings and 2006 production dates.

473. There can be no question that IRISL facilitated shipments of military cargo to FTOs and Special Groups, including those responsible for carrying out the Terrorist Attacks that killed, maimed, and/or injured Plaintiffs or Plaintiffs' family members.

474. IRISL *did*, in fact, facilitate shipments of military cargo to Hezbollah, one of the organizations controlled and/or otherwise substantially and materially supported by Iran and responsible for acts of international terrorism that killed and injured American citizens in Iraq, including the Plaintiffs. However, IRISL was not Iran's only means of passing weapons on to the Terrorist Groups, weapons used to commit acts of international terrorism, including the Terrorist Attacks carried out against Plaintiffs and/or Plaintiffs' family members.

### B. MAHAN AIR

475. Mahan Airlines was founded in 1991 and began passenger air travel services in June 1992 as the first Iranian "private" airline. Since 1997, Mahan Airlines has also provided air cargo operations.

476. Mahan Airlines operates under the name "Mahan Air" and uses the Tehran Imam Khomeini International Airport and Mehrabad International Airport as its main business hubs.

477. As of November 2016, Mahan Air owned at least 60 passenger and cargo aircraft,

and, in additional to domestic flights, flew to 52 destinations in Europe, Asia and the Middle East.

478. Mahan Air publically acknowledges that it is wholly-owned by Mol-Al-Movahedin Charity.

479. The Mol-A-Movahedin Charity is managed and controlled by the IRGC.

480. Mahan Air is an "agency or instrumentality" of the government of Iran as defined by 28 U.S.C. § 1603(b).

481. October 12, 2011, the United States designated Mahan Air as an SDGT for "providing financial, material and technological support to the Islamic Revolutionary Guard Corps-Qods Force."

482. According to the U.S. government, Mahan Air (1) "facilitated the covert travel of suspected IRGC-QF officers into and out of Iraq;" (2) "facilitated IRGC-QF arms shipments"; and (3) "transported personnel, weapons and goods on behalf of Hezbollah [sic]." (Brackets in original).

483. The Treasury Department explained Mahan Air's direct involvement with terrorist operations, personnel movements and logistics on behalf of the IRGC-QF:

> Mahan Air also facilitated the covert travel of suspected IRGC-QF officers into and out of Iraq by bypassing normal security procedures and not including information on flight manifests to eliminate records of the IRGC-QF travel.
>
> Mahan Air crews have facilitated IRGC-QF arms shipments. Funds were also transferred via Mahan Air for the procurement of controlled goods by the IRGCQF.
>
> In addition to the reasons for which Mahan Air is being designated today, Mahan Air also provides transportation services to Hezbollah [sic], a Lebanon-based designated Foreign Terrorist Organization. Mahan Air has transported personnel, weapons and goods on behalf of Hezbollah [sic] and omitted from Mahan Air cargo manifests secret weapons shipments bound for Hezbollah [sic].

484. Under-Secretary of Commerce Eric L. Hirschhorn described this supply chain as "egregious conduct by… foreign companies and individuals who have endangered the lives of U.S. and coalition forces in Iraq."

485. During a press conference, Under-Secretary for Terrorism and Financial Intelligence David S. Cohen said that "Mahan Air's close coordination with the Qods Force – secretly ferrying operatives, weapons and funds on its flights – reveals yet another facet of the IRGC's extensive infiltration of Iran's commercial sector to facilitate its support for terrorism."

486. The U.S. Department of Treasury further highlighted that Mahan Air provided travel services to Qods Force personnel to fly to and from Iran and for military training.

487. The airline facilitated arms shipments and "covert travels" to Iraq of suspected Qods Force members who were responsible for targeting Coalition Forces.

488. Mahan Air was also later identified as the conduit to Iran of thousands of radio frequency modules recovered by Coalition Forces in Iraq from IEDs that were used to target U.S. nationals, including Plaintiffs, and Coalition Forces.[104]

489. Coalition Forces recovered these modules from IED devices in Iraq that were used to target U.S. nationals, including Plaintiffs, and Coalition Forces.

490. The modules had encryption capabilities and a particularly long range that allowed Special Groups operatives to operate them across significant distances.

491. In 2008, Mahan Air transported the IED components from Singapore and Thailand to Tehran, Iran.

492. In short, at the direction of Iran, Mahan Air transported weapons, personnel, and

[104] *See* Superseding Indictment in *United States v. Larijani*, *available at:* https://www.justice.gov/opa/file/837996/download (last visited Sept. 13, 2017).

technology into Iraq on behalf of the IRGC-QF and Hezbollah, and did, in fact, transport modules used to control and activate IEDs and EFPs deployed against Coalition Forces in Iraq.

493. Mahan Air, in its supporting, albeit crucial, role of exporting terrorism, and the materials and instruments thereof for Iran, is an agent and instrumentality of Iran.

494. Due to the role played by Mahan Air, Iran was able to effectuate global jihad and commit acts of terrorism much more effectively and conveniently during the Relevant Period, including the time in which the Terrorist Attacks at issue were committed.

495. Since 2012, Mahan Air has multiple daily flights from Tehran, Mashhad, Isfahan, Shiraz and Abadan to Damascus. These flights use Iraqi air space and carry weapons, equipment and Revolutionary Guard personnel to be used on the ground in Syria in support of Iranian-backed operations.

496. Since fighting began in Syria, the Iraqi Special Groups linked to the Qods Force have been sent by bus through Basra to Abadan and from there are transferred to Damascus with Mahan aircraft. According to reports obtained from the IRGC, these groups include the Special Groups: Badr Corps., KH, AAH, as well as the FTO Hezbollah. As they were in Iraq, these terrorist groups, now operating in Syria, are commanded by the IRGC and have been directly linked to the massacres of Aleppo and killings of Syrian civilians.

**C. NATIONAL IRANIAN OIL COMPANY (NIOC)**

497. Defendant NIOC is not a state agency, operation, or program of the Iranian Government. Rather, it is a front-company for the IRGC, and therefore an agent and instrumentality of Iran.

498. At all relevant times, the NIOC was controlled by Iran through the IRGC.

499. NIOC is an "agency or instrumentality" of the government of Iran as defined by 28 U.S.C. § 1603(b).

500. In 2008, the Treasury Department identified NIOC (and other Iranian agencies) as "centrally involved in the sale of Iranian oil, as entities that are owned or controlled by the [government of Iran]."

501. Pursuant to E.O. 13382, the United States designated NIOC as an SDN.

502. The United States has identified NIOC as an agent or affiliate of the IRGC.

503. Under the ITRSHRA, the U.S. government determined that that NIOC is an agent or affiliate of the IRGC under section 104(c)(2)(E)(i) of the CISADA and section 302 of the ITRSHRA. As part of that 2012 certification, NIOC was formally determined to be part of the Government of Iran.

504. During the Relevant Period, the NIOC not only was under IRGC control, but it also served a critical function in supporting the IRGC's activities.

505. The Iranian Helicopter Aviation Company, Ahwaz Pipe Mill Co., and Kala Naft[105] are all subsidiaries of the NIOC.

506. As early as February 1998, Kala Naft was identified by the UK government "as having procured goods and/or technology for weapons of mass destruction programs."

507. Kala Naft was also publicly identified as a NIOC subsidiary in a 2003 Commerce Department action that further stated that Kala Naft was a recipient of illegally exported U.S. origin oil field equipment from the U.S.

[105] Kala Naft was designated as a Specially Designated Nations (DN) by the United States Treasury on June 16, 2010. U.S. Department of the Treasury, *Recent OFAC Actions* (June 16, 2010), https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/20100616.aspx.

### D. KHATAM AL-ANBIYA CONSTRUCTION COMPANY & THE HEADQUARTERS FOR THE RESTORATION OF HOLY SHRINES

508. Iran also logistically and financially supports terrorist groups through proxies of Iran, including, but not limited to Khatam al-Anbiya Construction Company (a/k/a Khatam al-Anbiya Construction Headquarters, Qaragah-e Sazandegi-ye Khatam al-Anbiya, or "Seal of the Prophets," hereinafter referred to as "KAA"), and The Headquarters for the Restoration of the Holy Shrines ("HRHS"), both Qods Force front entities, as well as their agents and subsidiaries.

509. KAA serves to help the IRGC disguise its funding and operations, including IRGC-Qods Force terror activities.

510. KAA is a large Iranian corporation, controlled by the IRGC, and serves to help the IRGC funnel money, material, and personnel to its operations.

511. KAA was originally founded by the IRGC as an engineering wing to assist in the building of fortifications during the Iran-Iraq War (1980-1989) and to rebuild after the conflict. Since then it has diversified into mechanical engineering, energy, mining, and defense.

512. KAA is an "agency or instrumentality" of the government of Iran as defined by 28 U.S.C. § 1603(b), and, as a designated IRGC entity, is owned and controlled by the government of Iran.

513. IRGC Commander-in-Chief, Major General Mohammad Ali Jafari, serves as KAA's council chairman.

514. KAA functions as the IRGC's engineering and logistical arm, conducting a range of civil engineering activities, such as road and dam construction, the manufacturing of pipelines to transport water, oil, gas (within and outside Iran's borders), mining operations, agriculture, and telecommunications.

515. On October 25, 2007, KAA was designated by the U.S. Treasury Department under

E.O. 13382 for extensively assisting IRGC to gain financial support for IRGC activities.

516. The U.S. Treasury designated nine IRGC-affiliated entities, including KAA, and five IRGC-affiliated individuals as derivative designations of the IRGC.

517. On June 23, 2008, the European Union also designated IRGC-affiliated companies, including KAA, for their support to Iranian ballistic missile and nuclear programs.

518. On June 9, 2010, the U.N. Security Council designated KAA in the 1929 Resolution for its involvement with Iranian military and nuclear activities.[106]

519. On February 10, 2010, The U.S. Department of the Treasury took further action to implement then-existing U.S. sanctions against the IRGC by designating an individual and four companies affiliated with the IRGC pursuant to Executive Order (E.O.) 13382, which freezes the assets of designated proliferators of weapons of mass destruction (WMD) and their supporters. This action focused in particular on KAA, considered an arm of the IRGC designated pursuant to E.O. 13382 in 2007. At the time, Treasury stated:

> Today's designations include IRGC General Rostam Qasemi, who is also the commander of Khatam al-Anbiya Construction Headquarters, the engineering arm of the IRGC that serves to help the IRGC generate income and fund its operations. Khatam al-Anbiya is owned or controlled by the IRGC and is involved in the construction of streets, highways, tunnels, water conveyance projects, agricultural restoration projects, and pipelines. Treasury also today designated four companies that are owned or controlled by, or that act on behalf of, Khatam al-Anbiya.
>
> As the IRGC consolidates control over broad swaths of the Iranian economy, displacing ordinary Iranian businessmen in favor of a select group of insiders, it is hiding behind companies like Khatam al-Anbiya and its affiliates to maintain vital ties to the outside world," said Under Secretary for Terrorism and Financial Intelligence Stuart Levey. "Today's action exposing Khatam al-Anbiya subsidiaries will help firms worldwide avoid business that ultimately benefits the IRGC and its dangerous activities.

[106] United Nations, *Security Council Imposes Additional Sanctions on Iran, Voting 12 in Favour to 2 Against, with 1 Abstention*, (June 9 2010), https://www.un.org/press/en/2010/sc9948.doc.htm.

520. In 2011, the British and Japanese governments both listed KAA as an entity of concern due to its involvement in the proliferation of WMDs, missiles, and biological, chemical, and nuclear weapons.

521. KAA also owns and controls Ghorb Karbala (a/k/a Gharargah Karbala, Gharargah Sazandegi Karbala-Moasseseh Taha, or Ghorb-e Karbala), an entity also listed in an annex to U.N. Security Council Resolution 1929 of June 9, 2010, as an entity of Iran's IRGC, with a role "in Iran's proliferation-sensitive nuclear activities and the development of nuclear weapon delivery systems."

522. Companies that are owned or controlled by KAA, or that act on its behalf, and directly support its efforts include: Fater Engineering Institute, Imensazen Consultant Engineers Institute (ICEI), Makin Institute, and Rahab Institute.

523. By 2010, KAA had become a massive holding firm with control of more than 812 registered companies inside and outside of Iran and the recipient of over 1,700 Iranian-government contracts, many awarded on a no-bid basis.

524. KAA has undertaken infrastructure development projects in Iraq, Syria, and Lebanon, extending its services as a tool of the IRGC and Iran.

525. KAA was operating on the ground in Iraq during the entire Relevant Time period.

526. No later than October 2006, western media outlets were reporting that KAA was involved in hidden and unlawful economic activities beyond the borders of Iran.

527. On May 7, 2008, Mohammad Reza Pourzeyai, then KAA deputy head, announced that KAA had built a railway line connecting Iraq's Basra and Iran's Khorramshar.

528. KAA also performed due diligence and planned a project for building a water pipeline from the Iraqi border to the middle of Syria, a distance of approximately 256 kilometers, and also designed a project for building an oil pipeline from Iran's Abadan refinery to Basra, Iraq.

529. KAA also undertook efforts to renovate the Mosul Dam in Iraq. KAA's work on Dam projects around the globe is a known conduit through which the IRGC moves its operatives into foreign countries.

530. On December 13, 2011, then commander of KAA, Abu al-Qassem Mozaffari, confirmed that KAA operates in Iraq, Syria and Lebanon.

531. From 2002 through 2007, Defendant Banks sent and received payments totaling nearly USD $100 million for KAA, and supplied financial services and other material support to many KAA subsidiaries.

532. KAA, under the guise of various construction development projects in Iraq, in concert with other agents of Iran, provided the means by which Iran and other Defendants were able to supply raw materials, currency, weapons, and munitions used by the Special Groups and other terrorist organizations to effectuate Iran's campaign of terror in Iraq.

533. A critical IRGC agent, subsidiary and Iranian-proxy is the HRHS.

534. HRHS was established in 2003, purportedly to renovate the Shiite shrines in Iran and in Iraq. In order to do so, HRHS enlisted the assistance of KAA.

535. According to its charter, as listed on its website, HRHS was authorized by the Islamic regime to, among other things, renovate Shiite shrines in Iraq and to coordinate between the Iranian regime and Iraqi government organizations and NGOs.

536. HRHS does not hide its links to the Qods Force; a provincial official in the HRHS told Iranian media that the organization is affiliated with the Qods Force.

537. The commander of the Qods Force, Qassem Soleimani, and the Supreme Leader's representative to the Qods Force both sit on HRHS's Board of Trustees. The four other board members include HRHS head Hassan Pelarak, and three senior clerics who are members of the Supreme Leader's office. Thus, the Supreme Leader and his top general responsible for external operations control HRHS.

538. Hassan Pelarak is a former mining executive and former IRGC commander, and, according to Iranian media, has served in the Qods Force.

539. All HRHS heads have served as Qods Force officers. Pelarak's predecessors, Hassan Danaeifar, who is now Iran's ambassador to Iraq, and Mansour Haghighatpour, who is now a former parliamentarian, have been Qods Force officers. In 2008, Soleimani touted Danaeifar's Qods Force credentials in a famous message passed along to General David Patraeus, commander of U.S. forces in Iraq.

540. It is no coincidence that Qassem Soleimani sits on HRHS's Board of Trustees and that the organization's Directors have been Qods Force officers; the unit uses the infrastructure of the HRHS to funnel weapons, manpower, money, equipment, and supplies into Iraq.

541. HRHS publishes on its website that it renovates Shiite shrines in Najaf, Karbala, Kadhimiya, Samarra, and other places.

542. HRHS claims to have spent millions of dollars on more than 200 projects in Iraq and further plans to develop projects valued at approximately $1.6 billion.

543. HRHS also claims that its finances are charitable donations from citizens, as well as government, private, and quasi-government entities.

544. HRHS embraces and supports the Special Groups. The direct link between HRHS and the Special Groups is concretely reflected on its official website of the HRHS Samarra office.[107]

545. HRHS considers the Special Groups to be "Defenders of the Shiite Holy Shrines in Iraq," as stated on websites controlled by the IRGC-QF.[108]

546. HRHS is nothing more than a front for the IRGC-QF, whose mission is to support the Iranian-backed terror groups in Iraq, disrupt the stability of free and democratic Iraq, and expand Iranian influence in the country.

547. HRHS and KAA worked closely together in Iraq.

548. HRHS worked in cooperation with the IRGC-QF-affiliated KAA to perform construction work on the Zahra Shrine in Najaf, Iraq. This project involved the HRHS subsidiary, Kowsar Engineering.

549. Under the guise of serving the faithful, KAA and HRHS act as a pipeline for the Qods Force, whose mission is to support the Iranian-backed Iraqi network and expand Iranian influence in the country.

550. KAA and HRHS, much like its IRGC affiliates, works closely with the well-known FTO, Hezbollah. This relationship was highlighted following the assassination of IRGC-QF senior commander Hassan Shateri (a/k/a Hesam Khoshnevis) in February 2013.

---

[107] *See* http://setadsamarra.ir/ (last visited Sept. 13, 2017) (translation available).

[108] *Introduction with the Brigades of the Defenders of the Shiite Holy Shrines Operating in Iraq*, OWEIS, Iran (January 12, 2015), http://oweis.ir/ (Farsi web address and translation available). *Marking the Fourth Anniversary of the [Assassination of] Martyr Hassan Shateri*, Tasnim News, Tehran (February 16, 2007), https://www.tasnimnews.com/fa/news/ (Farsi web address and translation available).

551. Shateri was deployed to Lebanon by KAA to lead its Lebanese branch, while at the same time serving as senior IRGC-QF commander.

552. Shateri's role in the Lebanese branch of KAA extended far beyond construction projects into extensive terror activities. On August 3, 2010, the U.S. Department of Treasury designated Hassan Shateri "for providing technical support to Hizballah's reconstruction efforts in Lebanon and to the expansion of the terrorist group's private communications network. Khoshnevis [Shateri] also operates as President Ahmadinejad's personal representative in Lebanon."

553. Shateri arrived in Lebanon after the Lebanon War of 2006 in order to: (1) rehabilitate Hezbollah's operational infrastructure damaged during the conflict; (2) to replace Hezbollah's lost arsenal; and (3) to rebuild its missile sites close to the demarcation line with Israel. Shateri served as a Special Representative of the IRGC, sitting on Hezbollah's Central Command where he helped shape Hezbollah's policies with advice from Secretary-General Hassan Nasrallah.

554. Prior to working in Lebanon, Shateri operated in Afghanistan, where his mission was to renovate regions that were damaged during fighting with Coalition Forces in Afghanistan.[109]

555. Between his services in Afghanistan and Lebanon, Shateri was operating in Iraq.[110]

---

[109] *Where and How Volunteers for Fighting ISIS are Trained*, Masregh News, Tehran (June 23, 2014), https://www.mashreghnews.ir/news/ (Farsi web address and translation available).

[110] Dexter Filkins, *The Shadow Commander*, THE NEW YORKER (Sept. 30, 2013), http://www.newyorker.com/magazine/2013/09/30/the-shadow-commander.

556. Though his detailed activities in Iraq were concealed, the Supreme Leader's Representative to the Qods Force, Ali Shirazi, mentioned Shateri's time there, saying he was dispatched to Iraq as part of his extensive service for the Islamic Revolution.[111]

557. In or around February 2013, after Shateri's assassination, Hezbollah published details that showed that KAA functioned as a cover for Qods Force insurgent activities.

558. As of July 2007, both Defendant Bank Melli and Bank Mellat were headed by UNSCR 1737 designee and former IRGC Commander Rahim Safavi.

559. Defendant Bank Melli and Bank Mellat also provided material support to KAA and its subsidiaries by handling their letters of credit. These letters of credit are primarily used to finance KAA's purchase of equipment and services from overseas suppliers.

560. KAA subsidiaries serviced by Defendant Bank Melli and Bank Mellat include the designated entities Ghorb Nooh, Sepasad, Sahel Consultant Engineers and Gharargah Sazandegi Ghaem.

561. KAA and HRHS' activities in Iraq, from 2003 until the present, provided the perfect vehicle through which Iran smuggled and disguised raw materials, currency, weapons, and munitions used by the Terrorist Groups to effectuate Iran's campaign of terror in Iraq.

## VI. THE PLAINTIFFS & THE TERRORIST ATTACKS

562. At issue in this case are terrorist attacks perpetrated by AQ, AAI, the Special Groups, other terrorist organizations, including the FTOs, SDGTs, SDTs, SDNs and other terrorists with known links to Iran which killed or injured Plaintiffs (the "Terrorist Attacks").

563. During the Relevant Period, the injuries and deaths caused by Defendants to

---

[111] Will Fulton, *The Assassination of Iran Quds Force General Hassan Shateri in Syria* (Feb. 28, 2013), https://www.criticalthreats.org/analysis/the-assassination-of-iranian-quds-force-general-hassan-shateri-in-syria#_edn77efea9b2d5a1d9d20e5cb794c934c9632

Plaintiffs were the result of acts of international terrorism committed, planned, or authorized by organizations designated as foreign terrorist organizations pursuant to Section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189), as of the date on which such acts of international terrorism were committed, planned, and/or authorized. Iran funded, aided and abetted such foreign terrorist organizations by, at least, knowingly providing funding and other substantial and material support to the Terrorist Groups who committed such acts of international terrorism.

564. Further, none of the Terrorist Attacks occurred in the course of (1) a declared war; (2) an armed conflict, whether or not war had been declared between two or more nations; or (3) an armed conflict between military forces of any origin.

565. All Plaintiffs physically injured or killed in Iraq were, at the time of their injury or extrajudicial killing, participating in a peacekeeping mission intended to contribute to the security of the United Nations Assistance Mission for Iraq, the Governing Council of Iraq and other institutions of the Iraqi interim administration, and key humanitarian and economic infrastructure.

566. Without Iran's conduct, support, control and authority described herein, the Terrorist Groups, including the FTOs, SDGTs, SDTs, and/or SDNs responsible for the Terrorist Attacks would not have had the funding or material support necessary to carry out these Terrorist Attacks.

567. Plaintiffs are individuals who were injured or killed in the Terrorist Attacks that occurred in Iraq, and who, as a result, experienced physical and mental pain and suffering and emotional distress. Some Plaintiffs are decedents, whose anticipated personal representatives and Estates,[112] bring claims for the named-individuals who were killed in those attacks, as well as all

[112] In some instances, families are in the process of establishing estates and the identified family members, as the Anticipated Personal Representatives, bring these actions, individually, and on behalf of the anticipated estates of their deceased family members and all heirs thereof.

heirs thereof. Other Plaintiffs are family members of the victims of the Terrorist Attacks and have experienced injuries including anxiety, severe mental anguish, extreme emotional distress, and loss of companionship as a result of their relatives' injuries or death.

568. Iran goes to great lengths to hide the fact that it funds terrorism, including funding the Special Groups and terrorists that perpetrated the terrorist attacks that resulted in the death or injury of Plaintiffs.

569. Additionally, even utilizing the utmost diligence, it can take months, or even years, before the terrorist group who perpetrated an act of international terrorism, or the type of weapon/explosive used by a terrorist group in a terrorist attack, can be identified.

570. Here, Plaintiffs did not know and did not have reason to know of their potential claims against Defendants until recently, and have worked diligently to adequately investigate and pursue their claims.

571. As it concerns Plaintiffs' claims, and as outlined above, Iran has fraudulently concealed its involvement with any of the Terrorist Groups and terrorists responsible for perpetrating the Terrorist Attacks. Iran has further denied the fact it provided material support and resources to the Terrorist Groups responsible for perpetrating the Terrorist Attacks. As such, the doctrine of equitable tolling applies to this Action and all Plaintiffs.

572. On June 13, 2016, a Class Action Complaint was filed in the District of Columbia captioned *Alan Burks, et al. v. Islamic Republic of Iran*, *et al.,* Case. No. 1:16-cv-01102, "bring[ing] this class action pursuant to 28 U.S.C. § 1605A of the Foreign Sovereign Immunities Act ("FSIA") for wrongful death, personal injury, and related torts on behalf of a class consisting of all United States nationals, members of the United States armed forces, or employees of the

United States Government acting within the scope of their employment, injured or killed by an EFP, and no other form of improvised explosive device, after June 1, 2005, their estates, and immediate family members[.]" Should Defendants appear in this case and raise affirmative defenses, the doctrine of *American Pipe* tolling should apply to the claims of possible class members.

573. Pursuant to the Servicemembers Civil Relief Act (SCRA). "[t]he period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns." 50 U.S.C.A. § 3936.

574. The following Plaintiffs are United States' nationals, members of the U.S. armed forces, or government contractors injured or killed in the acts of international terrorism complained of herein, and estates and/or family members of such U.S. nationals, members of the U.S. armed forces, or contractors:

## 1. THE JUNE 6, 2011 ATTACK - BAGHDAD

### A. PLAINTIFFS THE ROBERT P. HARTWICK FAMILY

575. Plaintiff Robert P. Hartwick was a citizen of the United States and domiciled in the State of Ohio at the time of his death.

576. On June 6, 2011, Robert P. Hartwick, age 20, was serving in the U.S. military in Iraq.

577. Mr. Hartwick was in the shower area on the Joint Security Station Loyalty in Baghdad when the station came under an Improvised Rocket Assisted Missile (IRAM) attack. He ran to the bunker, which was hit by another rocket killing him.

578. The weapon used to attack and injure Mr. Hartwick was an Iranian manufactured/supplied Improvised Rocket Assisted Missile (IRAM) provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

579. As a result of the attack, Robert P. Hartwick was killed.

580. Plaintiff Linda K. Hartwick is a citizen of the United States and domiciled in the State of Ohio. She is the mother of Robert P. Hartwick, Deceased, and brings an action individually, and on behalf of the Estate of Robert P. Hartwick, and all heirs thereof, as its legal representative.

581. Plaintiff Robert A. Hartwick is a citizen of the United States and domiciled in the State of Ohio. He is the father of Robert P. Hartwick Deceased.

582. Plaintiff Haley Russell is a citizen of the United States and domiciled in the State of Ohio. She is the sister of Robert P. Hartwick Deceased.

583. Plaintiff Hannah Hartwick is a citizen of the United States and domiciled in the State of Ohio. She is the sister of Robert P. Hartwick Deceased.

584. As a result of the June 6, 2011 Terrorist Attack, and the injuries suffered by and the death of Robert P. Hartwick, Plaintiffs Linda K. Hartwick, Robert A. Hartwick, Haley Russell, and Hannah Hartwick have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Robert P. Hartwick's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Robert P. Hartwick.

### 2. THE FEBRUARY 9, 2011 ATTACK - TALILL

#### A. PLAINTIFF SHARON SCHINETHA STALLWORTH

585. Plaintiff Sharon Schinetha Stallworth is a citizen of the United States and domiciled in the State of Georgia.

586. On February 9, 2011, Sharon Schinetha Stallworth, age 42, was serving in the U.S. military in Iraq.

587. Ms. Stallworth was on Tallil Air Force Base unloading supplies from a truck when a rocket/mortar hit a concrete pillar about 50 feet from Ms. Stallworth causing Ms. Stallworth to be thrown from the back of the truck landing on her back and hitting her head. As a result of the February 9, 2011 Terrorist Attack, Ms. Stallworth suffered a TBI and lower back injury.

588. The weapon used to attack and injure Ms. Stallworth was an Iranian manufactured/supplied rocket/mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

589. As a result of the attack, Sharon Schinetha Stallworth suffered a TBI, lower back injury, tinnitus, PTSD, anxiety, and depression.

590. Sharon Schinetha Stallworth received medical treatment for her injuries, including medication and more than 6 years of treatment for PTSD related health problems.

591. As a result of the February 9, 2011 Terrorist Attack, and the injuries she suffered, Sharon Schinetha Stallworth has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 3. THE OCTOBER 11, 2010 ATTACK – MOSUL

#### A. PLAINTIFF RICHARD R. HEDGECOCK, II

592. Plaintiff Richard R. Hedgecock, II, is a citizen of the United States and domiciled in the State of North Carolina.

593. On October 11, 2010, Richard R. Hedgecock, II, age 31, was serving in the U.S. military in Iraq.

594. Mr. Hedgecock was on patrol with his unit in Mosul when his vehicle was struck

by an IED.

595. The weapon used to attack and injure Mr. Hedgecock was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

596. As a result of the attack, Richard R. Hedgecock, II, suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), concussion, laceration to the forehead, chronic migraines, Post-Traumatic Stress Disorder ("PTSD"), insomnia, anxiety and depression.

597. Richard R. Hedgecock, II, received extensive medical treatment, including past and ongoing care for these injuries, at the military base hospital at Fort Hood and Fort Bragg, Fayetteville Veterans Medical Center and other private hospitals and medical providers.

598. As a result of the October 11, 2010 Terrorist Attack, and the injuries he suffered, Richard R. Hedgecock, II has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 4. THE FEBRUARY 10, 2010 ATTACK – DIYALA PROVINCE

#### A. PLAINTIFF SAMUEL ADAM KAUFMAN

599. Plaintiff Samuel Adam Kaufman is a citizen of the United States and domiciled in the State of Arizona.

600. On February 10, 2010, Samuel Adam Kaufman, age 26, was serving in the U.S. military in Iraq.

601. Mr. Kaufman was on FOB Warhorse in Diyala Province with his unit when incoming rockets landed approximately 15 feet from him.

602. The weapon used to attack and injure Mr. Kaufman was an Iranian manufactured/supplied rocket provided by Iran and/or its agents to Iranian-funded and Iranian-

trained terror operatives in Iraq.

603. As a result of the attack, Samuel Adam Kaufman suffered a laceration to his knee, concussion, headaches, PTSD and anxiety.

604. Samuel Adam Kaufman received extensive medical treatment following the attack at the medic tent. Samuel continues his treatment with the VA.

605. As a result of the February 10, 2010 Terrorist Attack, and the injuries he suffered, Samuel Adam Kaufman has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 5. THE DECEMBER 24, 2009 ATTACK – FOB GARRY OWEN, AL AMARAH

#### A. PLAINTIFFS THE RICHARD WILSON SCARLETT FAMILY

606. Plaintiff Richard Wilson Scarlett is a citizen of the United States and domiciled in the State of Arizona.

607. On December 24, 2009, Richard Wilson Scarlett, age 40, was serving in the U.S. military in Iraq.

608. Mr. Scarlett was performing his duties at FOB Garry Owen in al Amarah, Iraq when IRAM rockets and mortars were launched into his base.

609. The weapon used to attack and injure Mr. Scarlett was an Iranian manufactured/supplied IRAM Rocket and mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

610. As a result of the attack, Mr. Scarlett has suffered broken ribs and vertebrae, a concussion and TBI. While being treated for his injuries, Mr. Scarlett suffered a heart attack. In addition to his physical injuries, Mr. Scarlett has been diagnosed with PTSD.

611. Mr. Scarlett received extensive medical treatment including surgical and psychological treatment from various medical providers.

612. As a result of the December 24, 2009 Terrorist Attack, and the injuries he suffered, Mr. Scarlett has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

613. Plaintiff Deborah Scarlett is a citizen of the United States and domiciled in the State of Arizona. She is the wife of Richard Wilson Scarlett.

614. Plaintiff A.W.S., a minor, represented by his legal guardian Deborah Scarlett, is a citizen of the United States and domiciled in the State of Arizona. He is the son of Deborah Scarlett and Richard Wilson Scarlett.

615. As a result of the December 24, 2009 Terrorist Attack, and the injuries suffered by Richard Wilson Scarlett, Plaintiffs Deborah Scarlett and A.W.S., a minor, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 6. THE DECEMBER 16, 2009 ATTACK - BASRA

#### A. PLAINTIFF JEFFREY DAVID EVANS

616. Plaintiff Jeffrey David Evans is a citizen of the United States and domiciled in the State of New Mexico.

617. On December 16, 2009, Jeffrey David Evans, age 23, was serving in the U.S. military in Iraq.

618. Mr. Evans was conducting route clearance with two other soldiers when an EFP went through the vehicle he was traveling in and disabling the engine. Another EFP then went

through the EFP armor of the door. A third EFP then hit the rear of the vehicle.

619. The weapon used to attack and injure Mr. Evans was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

620. As a result of the attack, Jeffrey David Evans suffered a TBI, PTSD, lower back pain, and sleep apnea.

621. Jeffrey David Evans received extensive medical treatment including being treated for two weeks following the December 16, 2009 Terrorist Attack. Thereafter, he was transferred to the Warrior Transition Unit in El Paso, Texas where he underwent extensive speech, physical, and occupational therapy for another three years.

622. As a result of the December 16, 2009 Terrorist Attack, and the injuries he suffered, Jeffrey David Evans has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 7. THE SEPTEMBER 2009 ATTACK - GHAZALIYA

#### A. PLAINTIFFS THE THOMAS A. HENSHALL, JR. FAMILY

623. Plaintiff Thomas A. Henshall, Jr. is a citizen of the United States and domiciled in the State of California.

624. In September 2009, Thomas A. Henshall, Jr., age 25, was serving in the U.S. military in Iraq.

625. Mr. Henshall was stationed at Joint Security Station 2 in Ghazaliya when an RPG struck outside the wall of his base complex while he was preparing an armored-up vehicle.

626. The weapon used to attack and injure Mr. Henshall was an Iranian manufactured/supplied rocket-propelled grenade ("RPG") provided by Iran and/or its agents to

Iranian-funded and Iranian-trained terror operatives in Iraq.

627. As a result of the attack, Thomas A. Henshall, Jr., suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), cervical strain, Post-Traumatic Stress Disorder ("PTSD"), anxiety and depression.

628. Thomas A. Henshall, Jr., received extensive medical treatment, including past and ongoing care for these injuries, at BIOP in Baghdad, Aurora Behavioral Health in San Diego, Walter Reed Army Medical Center, Balboa Navy Medical Center and other VA Medical Centers and private hospitals.

629. As a result of the September 2009 Terrorist Attack, and the injuries he suffered, Thomas A. Henshall Jr., has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

630. Plaintiff Yesenia Henshall Perez is a citizen of the United States and domiciled in the State of California. She is the wife of Thomas A. Henshall, Jr.

631. Plaintiff Danielle Bowen is a citizen of the United States and domiciled in the State of South Carolina. She is the mother of Thomas A. Henshall, Jr.

632. Plaintiff Thomas A. Henshall, Sr. is a citizen of the United States and domiciled in Haverhill, England. He is the father of Thomas A. Henshall, Jr.

633. As a result of the September 2009 Terrorist Attack, and the injuries suffered by Thomas A. Henshall, Jr., Plaintiffs Yesenia Henshall Perez, Danielle Bowen and Thomas A. Henshall, Sr., have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

**8. THE AUGUST 13, 2009 ATTACK – KIRKUK**

**A. PLAINTIFF JERRY MATTHEW TEAL**

634. Plaintiff Jerry Matthew Teal is a citizen of the United States and domiciled in the State of South Carolina.

635. On August 13, 2009, Jerry Matthew Teal, age 27, was serving in the U.S. military in Iraq.

636. Mr. Teal was on patrol with his unit in Kirkuk when his vehicle was struck with an IED.

637. The weapon used to attack and injure Mr. Teal was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

638. As a result of the attack, Jerry Matthew Teal suffered a worsened TBI, left knee injury, anxiety and worsened PTSD.

639. Jerry Matthew Teal received extensive medical treatment immediately following the attack at the base and continues treatment with the VA.

640. As a result of the August 13, 2009 Terrorist Attack, and the injuries he suffered, Jerry Matthew Teal has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**9. THE AUGUST 2, 2009 ATTACK - MIQDADIYAH**

**A. PLAINTIFF KENNETH LEE SMITH**

641. Plaintiff Kenneth Lee Smith is a citizen of the United States and domiciled in the State of Arkansas.

642. On August 2, 2009, Kenneth Lee Smith, age 23, was serving in the U.S. military in

Iraq.

643. Mr. Smith was traveling in a convoy of about 40 military vehicles about 35 miles outside of Miqdadiyah when the Caiman Plus MRAP he was traveling in was struck by an IED or an EFP.

644. The weapon used to attack and injure Mr. Smith was an Iranian manufactured/supplied IED or EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

645. As a result of the attack, Kenneth Lee Smith suffered PTSD, depression, anxiety, tinnitus, loss of hearing, memory loss, headaches, and migraines.

646. Kenneth Lee Smith received extensive medical treatment for his injuries, including psychological treatment and hearing treatment.

647. As a result of the August 2, 2009 Terrorist Attack, and the injuries he suffered, Kenneth Lee Smith has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 10. THE JULY 31, 2009 ATTACK – KIRKUK

#### A. PLAINTIFF JERRY MATTHEW TEAL

648. Plaintiff Jerry Matthew Teal is a citizen of the United States and domiciled in the State of South Carolina.

649. On July 31, 2009, Jerry Matthew Teal, age 27, was serving in the U.S. military in Iraq.

650. Mr. Teal was on patrol with his unit in Kirkuk when his vehicle was struck with an IED.

651. The weapon used to attack and injure Mr. Teal was an Iranian

manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

652. As a result of the attack, Jerry Matthew Teal suffered a worsened TBI, blurry vision and worsening of PTSD.

653. Jerry Matthew Teal received extensive medical treatment immediately following the attack at the base and continues treatment with the VA.

654. As a result of the July 31, 2009 Terrorist Attack, and the injuries he suffered, Jerry Matthew Teal has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 11. THE JULY 12, 2009 ATTACK – SHIRQAT

#### A. PLAINTIFF DAVID A. CONWAY, II

655. Plaintiff David A. Conway, II is a citizen of the United States and domiciled in the State of Kansas.

656. On July 12, 2009 David A. Conway, II, age 22, was serving in the U.S. military in Iraq.

657. Mr. Conway was on patrol with his unit in Shirqat, Iraq in when he was struck by an IED.

658. The weapon used to attack and injure Mr. Conway was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

659. As a result of the attack, David A. Conway, II suffered concussive blast injuries, shrapnel wounds to his legs and feet, shoulder and back injuries, TBI, and PTSD/

660. David A. Conway, II received extensive medical treatment at Landstuhl Regional

Medical Center, Tripler Army Medical Center, and Colmery-O'Neil VA Medical Center.

661. As a result of the July 12, 2009 Terrorist Attack, and the injuries he suffered, David A. Conway, II has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**12. THE JUNE 7, 2009 ATTACKS - HABBANIYAH**

**A. PLAINTIFF BRYAN PLUM**

662. Plaintiff Bryan Plum is a citizen of the United States and domiciled in the State of Nevada.

663. On June 7, 2009, Bryan Plum, age 25, was serving in the U.S. military in Iraq.

664. On June 7, 2009, Mr. Plum was travelling in a convoy outside of Habbaniyah when the vehicle he was travelling in struck an IED and became disabled.

665. The weapon used to attack and injure Mr. Plum was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

666. As a result of the attacks, Bryan Plum suffered TBI, PTSD, anxiety, depression, sleep disorder.

667. Bryan Plum received extensive medical treatment for his injuries, including current and ongoing psychological treatment.

668. As a result of the June 7, 2009 Terrorist Attack, and the injuries he suffered, Bryan Plum has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 13. THE APRIL 20, 2009 ATTACK – BAQUBAH

### A. PLAINTIFFS THE BRENT JASON WALKER FAMILY

669. Plaintiff Brent Jason Walker is a citizen of the United States and domiciled in the State of Florida.

670. On April 20, 2009, Brent Jason Walker, age 23, was serving in the U.S. military in Iraq.

671. Brent Jason Walker was on foot patrol escorting a team to meetings with the local government. A terrorist wearing a police uniform walked up to the escort group and detonated a suicide bomb. The suicide bomber chanted before the explosion, which killed 2 instantly and a third died from his wounds a month later.

672. The weapon used to attack and injure Brent Jason Walker on April 20, 2009 was an Iranian manufactured/supplied explosively formed bomb, which was detonated by a suicide bomber, provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

673. As a result of the April 20, 2009 Terrorist Attacks, which included explosives wrapped in ball bearings and nails, Brent Jason Walker sustained significant injuries including: severe burns on his face, back of the left leg and left arm; deep skin wounds from the shrapnel in his face; perforated ear drum; TBI; and PTSD.

674. Brent Jason Walker's medical treatment includes being sent by medivac to FOB War Horse then flown to the hospital at Joint Base Balad where he underwent surgery. He was then flown to the Army Hospital in Germany for extended treatment and recovery. He subsequently underwent additional surgery at Bassett Army Community Hospital and continues to receive treatment at the VA Community Based Outpatient Clinic in New London, Connecticut.

675. As a result of the April 20, 2009 Terrorist Attacks, and the injuries he suffered,

Brent Jason Walker has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

676. Plaintiff Leland Walker is a citizen of the United States and is domiciled in the state of Connecticut. He is the father of Brent Jason Walker.

677. Plaintiff Susan Walker is a citizen of the United States and is domiciled in the state of Connecticut. She is the mother of Brent Jason Walker.

678. Plaintiff Benjamin Walker is a citizen of the United States and is domiciled in the state of Connecticut. He is the brother of Brent Jason Walker.

679. Plaintiff Kyle Walker is a citizen of the United States and is domiciled in the state of Connecticut. He is the brother of Brent Jason Walker.

680. As a result of the April 20, 2009 Terrorist Attacks, and the injuries suffered by Brent Jason Walker, Plaintiffs Leland Walker, Susan Walker, Benjamin Walker and Kyle Walker have past and future noneconomic damages, including severe physical and mental pain and suffering, loss of consortium, and past and future economic damages, including loss of services.

### 14. THE APRIL 15, 2009 ATTACK – BALAD

#### A. PLAINTIFFS THE MESHALL WINNEGAN FAMILY

681. Plaintiff Meshall Winnegan is a citizen of the United States and domiciled in the State of Mississippi.

682. On April 15, 2009, Meshall Winnegan, age 43, was serving in the U.S. military in Iraq.

683. Ms. Winnegan was in a convoy of four vehicles returning to Balad Air Base, and while traveling on Main Supply Route Tampa in Balad, Iraq an IED detonated on their vehicle.

684. The weapon used to attack and injure Ms. Winnegan was an Iranian

manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

685. As a result of the attack, Meshall Winnegan, sustained significant injuries including PTSD, TBI, anxiety, depression, and tinnitus. She continues to receive ongoing medical care and treatment.

686. Meshall Winnegan later underwent medical and psychological treatment at Landstuhl Regional Medical Center, Landstuhl, Germany; Schofield Acute Care Clinic, Schofield Barracks, HI; Martin Army Community Hospital, Fort Benning, GA; Fort Benning VA Clinic, Fort Benning, GA; and Tuskegee Veterans Administration Medical Center, Tuskegee, AL. Since the attack, she has continued to receive mental health treatment for PTSD, TBI, anxiety, depression, and other symptoms related to PTSD.

687. As a result of the April 15, 2009 Terrorist Attack, and the injuries she suffered, Meshall Winnegan has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

688. Plaintiff Devin Winnegan is a citizen of the United States and domiciled in the State of Alabama. He is the ex-husband of Meshall Winnegan.

689. Plaintiff Jazmen Sampson is a citizen of the United States and domiciled in the State of North Carolina. She is the daughter of Meshall Winnegan.

690. Plaintiff James Jackson is a citizen of the United States and domiciled in the State of Mississippi. He is the son of Meshall Winnegan

691. As a result of the April 15, 2009 Terrorist Attack, and the injuries suffered by Meshall Winnegan, Plaintiff's Devin Winnegan, Jazmen Sampson, and James Jackson have past

and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 15. THE MARCH 14, 2009 ATTACK - MOSUL

### A. PLAINTIFFS THE MATTHEW A. JORDAN FAMILY

692. Plaintiff Matthew A. Jordan is a citizen of the United States and domiciled in the State of New Hampshire.

693. On March 14, 2009, Matthew A. Jordan, age 21, was serving in the U.S. military in Iraq.

694. Mr. Jordan was on foot patrol with his unit in Mosul when an IED detonated where he walking.

695. The weapon used to attack and injure Mr. Jordan was an Iranian manufactured/supplied Improvised Explosive Device provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

696. As a result of the attack, Matthew A. Jordan suffered injuries that include, but are not limited to, amputation of his right leg, TBI, nerve issues, and PTSD.

697. Matthew A. Jordan received extensive medical treatment at Mosul and Balad Hospitals, and various military and VA medical center and private medical providers.

698. As a result of the March 14, 2009 Terrorist Attack, and the injuries he suffered, Matthew A. Jordan has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

699. Plaintiff Katelynn Jordan is a citizen of the United States and domiciled in the State of New Hampshire. She is the wife of Matthew A. Jordan.

700. Plaintiff O.J., a minor, represented by her legal guardians Matthew A. Jordan and Katelynn Jordan, is a citizen of the United States and domiciled in the State of New Hampshire. She is the daughter of Matthew A. Jordan and Katelynn Jordan.

701. As a result of the March 14, 2009 Terrorist Attack, and the injuries suffered by Matthew A. Jordan, Plaintiffs Katelynn Jordan and O.J. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 16. THE MARCH 1, 2009 ATTACK - MADA'IN

### A. PLAINTIFFS THE MIGUEL GONZALEZ FAMILY

702. Plaintiff Miguel Gonzalez is a citizen of the United States and domiciled in the State of California.

703. On March 1, 2009, Miguel Gonzalez, age 33, was serving in the U.S. military in Iraq.

704. Mr. Gonzalez was on patrol with his unit on the outskirts of Mada'in when his vehicle was struck by a mortar.

705. The weapon used to attack and injure Mr. Gonzalez was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

706. As a result of the attack, Miguel Gonzalez suffered a TBI, macular degeneration of his right eye, fracture of his L-1 to L-3 spine,

707. Miguel Gonzalez received extensive medical treatment for his injuries, including multiple hospital/physician visits, pain medication, and IV fluids.

708. As a result of the March 1, 2009 Terrorist Attack, and the injuries he suffered, Miguel Gonzalez has past and future noneconomic damages, including severe physical and mental

pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

709. Plaintiff Elisa Gonzalez is a citizen of the United States and domiciled in the State of California. She is the wife of Miguel Gonzalez.

710. As a result of the March 1, 2009 Terrorist Attack, and the injuries suffered by Miguel Gonzalez, Plaintiff's spouse, Elisa Gonzalez has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 17. THE FEBRUARY 18, 2009 ATTACK – AL AMARAH

### A. PLAINTIFF RICHARD R. HEDGECOCK, II

711. Plaintiff Richard R. Hedgecock, II, is a citizen of the United States and domiciled in the State of North Carolina.

712. On February 18, 2009, Richard R. Hedgecock, age 29, was serving in the U.S. military in Iraq.

713. Mr. Hedgecock was in a convoy on patrol with his unit on the MSR Texas southeast of the city of Al Amarah, when his vehicle was struck by an EFP.

714. The weapon used to attack and injure Mr. Hedgecock was an Iranian manufactured/supplied Explosively Formed Penetrator ("EFP") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

715. As a result of the attack, Richard R. Hedgecock, II, suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), concussion, laceration to the leg, laceration to the right hand, a broken nose, Post-Traumatic Stress Disorder ("PTSD"), insomnia, anxiety and depression.

716. Richard R. Hedgecock, II, received extensive medical treatment, including past and

ongoing care for these injuries, at the military base hospital at Fort Hood and Fort Bragg, Fayetteville Veterans Medical Center and other private hospitals and medical providers.

717. As a result of the February 18, 2009 Terrorist Attack, and the injuries he suffered, Richard R. Hedgecock, II has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 18. THE FEBRUARY 11, 2009 ATTACK – ROUTE COORS, ADHAMIYAH DISTRICT OF BAGHDAD

### A. PLAINTIFF GRAHAM J.T. LINDSEY

718. Plaintiff Graham J.T. Lindsey is a citizen of the United States and domiciled in the State of Washington.

719. On February 11, 2009, Graham J.T. Lindsey, age 27, was serving in the U.S. military in Iraq.

720. Mr. Lindsey was in a convoy of three MRAP vehicles en route close to COP Ford, Beida, Adhamiyah District of Baghdad and were approaching the market vicinity when his vehicle was struck by an EFP.

721. The weapon used to attack and injure Mr. Lindsey was an Iranian manufactured/supplied Explosively Formed Penetrator provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

722. As a result of the attack, Graham J.T. Lindsey suffered significant injuries from the blast forces of the explosion including, but not limited to, traumatic brain injury, migraine headaches, and cervical radiculopathy with multilevel spondylosis of the cervical spine (includes neck, shoulder, arm and fingers.)

723. Graham J.T. Lindsey received extensive medical treatment at COP Ford and has

continued at various Army and VA Medical Centers as well as other healthcare providers in Washington.

724. As a result of the February 11, 2009 Terrorist Attack, and the injuries he suffered, Graham J.T. Lindsey has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 19. THE FEBRUARY 11, 2009 ATTACK – ROUTE COORS, ADHAMIYAH DISTRICT OF BAGHDAD

### A. PLAINTIFFS THE CHRISTOPHER J. DUNN FAMILY

725. Plaintiff Christopher J. Dunn is a citizen of the United States and domiciled in the State of Texas.

726. On February 11, 2009, Christopher J. Dunn, age 27, was serving in the U.S. military in Iraq.

727. Mr. Dunn was in a convoy of three MRAP vehicles en route close to COP Ford, Beida, Adhamiyah district of Baghdad and were approaching the market vicinity when his vehicle was struck by an EFP.

728. The weapon used to attack and injure Mr. Dunn was an Iranian manufactured/supplied Explosively Formed Penetrator provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

729. As a result of the attack, Christopher J. Dunn suffered significant injuries from the blast forces of the explosion including, but not limited to, traumatic brain injury, tinnitus, and chronic pain.

730. Christopher J. Dunn received extensive medical treatment at FOB Loyalty, Carl R. Darnell Army Medical, Moncrief Army Health Clinic, various VA Medical Centers as well as

other healthcare providers in Texas.

731. As a result of the February 11, 2009 Terrorist Attack, and the injuries he suffered, Christopher J. Dunn has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

732. Plaintiff Steve Dunn is a citizen of the United States and domiciled in the State of Texas. He is the father of Christopher J. Dunn.

733. Plaintiff Sandy Dunn is a citizen of the United States and domiciled in the State of Texas. She is the mother of Christopher J. Dunn.

734. As a result of the February 11, 2009 Terrorist Attack, and the injuries suffered by Christopher J. Dunn, Plaintiff Steve Dunn and Sandy Dunn have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 20. THE DECEMBER 23, 2008 ATTACK – ROUTE JACK SPARROW EAST, JOINT BASE BALAD, DIYALA PROVINCE

### A. PLAINTIFF KEELAN MILES SOUTHERLAND

735. Plaintiff Keelan Miles Southerland is a citizen of the United States and domiciled in the State of Texas.

736. On December 23, 2008, Keelan Miles Southerland, age 29, was serving in the U.S. military in Iraq.

737. Mr. Southerland was with his unit on patrol on Route Jack Sparrow East, at the Joint Base Balad in the Diyala Province of Iraq when a rocket launched from the East detonated into his MRAP Pro Plus vehicle.

738. The weapon used to attack and injure Mr. Southerland was an Iranian

manufactured/supplied rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

739. As a result of the attack, Keelan Miles Southerland broke several vertebrae, and suffered a traumatic brain injury. He has also been diagnosed with PTSD, anxiety and depression.

740. Keelan Miles Southerland received extensive medical treatment. Upon returning to the United States, Mr. Southerland has endured several surgeries. Much of his treatment was at Fort Sam Houston, but he also received care while in San Antonio, Texas at Lackland Air Force Base. Mr. Southerland transferred his medical care to the Spokane Veterans Center in Spokane, Washington. He now receives his care from the Mountain Home Veterans Administration Center in Mountain Home, Arkansas

741. As a result of the December 23, 2008 Terrorist Attack, and the injuries he suffered, Keelan Miles Southerland has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 21. THE NOVEMBER 22, 2008 ATTACK – VILLAGE OF BEJAT, BAQUBAH, DIYALA PROVINCE

### A. PLAINTIFFS THE GARY WHITE FAMILY

742. Plaintiff Gary White is a citizen of the United States and domiciled in the State of Oklahoma.

743. On November 22, 2008, Gary White, age 32, was serving in the U.S. military in Iraq.

744. Mr. White was on patrol with his unit in the Village of Bejat near Baqubah in the Diyala Province, Iraq, when an IED was remotely detonated into his Humvee.

745. The weapon used to attack and injure Mr. White was an Iranian

manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

746. As a result of the attack, Gary White suffered injuries to his back, both feet, nerve damage, skeletal and tissue damage, and a traumatic brain injury. He has also been diagnosed with PTSD and depression.

747. Gary White received extensive medical treatment. He was treated at the scene and then medevac'd to TSA Anaconda for immediate treatment. Mr. White was then transferred to Landstuhl, Germany before being moved to Ford Meade in Maryland and ultimately to Brook Army Medical Center in San Antonio. He now receives most of his medical care from the Oklahoma Veterans Administration Medical Center in Oklahoma City, Oklahoma.

748. As a result of the November 22, 2008 Terrorist Attack, and the injuries he suffered, Gary White has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

749. Plaintiff Vanessa White is a citizen of the United States and domiciled in the State of Kansas. She is the wife of Gary White.

750. Plaintiff Royetta White is a citizen of the United States and domiciled in the State of Kansas. She is the mother of Gary White.

751. Plaintiff A.W., a minor, represented by his legal guardians Gary White and Vanessa White, is a citizen of the United States and domiciled in the State of Oklahoma. He is the son of Gary White and Vanessa White.

752. As a result of the November 22, 2008 Terrorist Attack, and the injuries suffered by Gary White, Plaintiffs Vanessa White, Royetta White and A.W., a minor, have past and future

noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 22. THE NOVEMBER 21, 2008 ATTACK - FALLUJAH

### A. PLAINTIFF KYLE W. DAVENPORT

753. Plaintiff Kyle W. Davenport is a citizen of the United States and domiciled in the State of California.

754. On November 21, 2008, Kyle W. Davenport, age 21, was serving in the U.S. military in Iraq.

755. Mr. Davenport was on patrol with his unit in Fallujah when his vehicle triggered an IED that subsequently exploded.

756. The weapon used to attack and injure Mr. Davenport was an Iranian manufactured/supplied Improvised Explosive Device provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

757. As a result of the attack, Kyle W. Davenport suffered injuries that include, but are not limited to, TBI, hearing loss, and PTSD.

758. Kyle W. Davenport received extensive medical treatment at Landstuhl Army Hospital, SSM Health St. Louis University Hospital, WSU Hospital, and other VA facilities and private medical care providers.

759. As a result of the November 21, 2008 Terrorist Attack, and the injuries he suffered, Kyle W. Davenport has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 23. THE OCTOBER 30, 2008 ATTACK – NEAR HOSSEINIA

### A. PLAINTIFF EMANUEL V. ALVAREZ

760. Plaintiff Emanuel V. Alvarez is a citizen of the United States and domiciled in the State of Arkansas.

761. On October 30, 2008, Emanuel V. Alvarez, age 27, was serving in the U.S. military in Iraq.

762. Mr. Alvarez was escorting State Department personnel from Camp Taji to the central circuit court of Iraq when his vehicle was struck by an EFP.

763. The weapon used to attack and injure Mr. Alvarez was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

764. As a result of the attack, Emanuel V. Alvarez sustained significant injuries to his back and the back of his head. He also suffered shrapnel injuries to his face, a TBI, optic nerve damage, and PTSD.

765. Emanuel V. Alvarez received extensive medical treatment; he has undergone injections for his back injuries, surgery on his sciatic nerve, and psychological treatment.

766. As a result of the October 30, 2008 Terrorist Attack, and the injuries he suffered, Emanuel V. Alvarez has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 24. THE OCTOBER 15, 2008 ATTACK – ROUTE STEELERS

### A. PLAINTIFFS THE MARK ALLEN WHETZEL FAMILY

767. Plaintiff Mark Allen Whetzel is a citizen of the United States and is domiciled in the State of West Virginia.

768. On or about October 15 2008, Mark Allen Whetzel, age 31, was serving was serving in the U.S. military in Iraq.

769. Mr. Whetzel was performing his duties as a Gunner in a Humvee that was the lead vehicle in a mounted patrol along Route Steelers when the Humvee hit an IED, injuring Whetzel.

770. The weapon used to attack and injure Mr. Whetzel was an Iranian-manufactured IED provided by Iran and/or one of its Agents or Proxies to Iranian-funded and Iranian-trained terror operatives in Iraq.

771. As a result of the subject Terrorist Attack, Mr. Whetzel sustained significant injuries due to the concussive blast of the explosion, including a dislocated shoulder, pain in both ankles, traumatic brain injury, headaches and memory loss, as well as Post Traumatic Stress Disorder ("PTSD"), nightmares, anxiety and depression.

772. Mr. Whetzel was treated at the military hospital on FOB Mahmudiya, Womack Medical Hospital, and Madigan Army Hospital for his injuries.

773. As a result of the subject Terrorist Attack and the injuries he suffered, Mark Allen Whetzel has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

774. Plaintiff Jennifer Dawn Whetzel is a citizen of the United States and is domiciled in the State of West Virginia. She is the wife of Mark Allen Whetzel.

775. As a result of the subject Terrorist Attack, and the injuries suffered by Mark Allen Whetzel, Plaintiff Jennifer Dawn Whetzel, has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 25. THE OCTOBER 2008 ATTACK - GHAZALIYA

### A. PLAINTIFFS THE THOMAS A. HENSHALL, JR. FAMILY

776. Plaintiff Thomas A. Henshall, Jr., is a citizen of the United States and domiciled in the State of California.

777. In October 2008, Thomas A. Henshall, Jr., age 24, was serving in the U.S. military in Iraq.

778. Mr. Henshall was stationed at Joint Security Station 2 in Ghazaliya when an RPG struck 50 meters from his base complex where he was working.

779. The weapon used to attack and injure Mr. Henshall was an Iranian manufactured/supplied rocket-propelled grenade ("RPG") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

780. As a result of the attack, Thomas A. Henshall, Jr., suffered injuries that include, but are not limited to, lung damage and Post-Traumatic Stress Disorder ("PTSD").

781. Thomas A. Henshall, Jr., received extensive medical treatment, including past and ongoing care for these injuries, at BIOP in Baghdad, Aurora Behavioral Health in San Diego, Walter Reed Army Medical Center, Balboa Navy Medical Center and other VA Medical Centers and private hospitals.

782. As a result of the October 2008 Terrorist Attack, and the injuries he suffered, Thomas A. Henshall Jr., has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

783. Plaintiff Yesenia Henshall Perez is a citizen of the United States and domiciled in the State of California. She is the wife of Thomas A. Henshall, Jr.

784. Plaintiff Danielle Bowen is a citizen of the United States and domiciled in the State

of South Carolina. She is the mother of Thomas A. Henshall, Jr.

785. Plaintiff Thomas A. Henshall, Sr. is a citizen of the United States and domiciled in Haverhill, England. He is the father of Thomas A. Henshall, Jr.

786. As a result of the October 2008 Terrorist Attack, and the injuries suffered by Thomas A. Henshall, Jr., Plaintiffs Yesenia Henshall Perez, Danielle Bowen and Thomas A. Henshall, Sr., have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 26. THE SEPTEMBER 6, 2008 - BAQUBAH

#### A. PLAINTIFF JAMES RYAN MCPHERSON

787. Plaintiff James Ryan McPherson is a citizen of the United States and domiciled in the State of Georgia.

788. On September 6, 2008, James Ryan McPherson, age 36, was serving in the U.S. military in Iraq.

789. Mr. McPherson was on patrol with his unit in Baqubah when his vehicle was struck by an IED.

790. The weapon used to attack and injure Mr. McPherson was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

791. As a result of the attack, James Ryan McPherson suffered a torn ACL, TCL and NCL, fractures to his foot and ankle, dislocated knee, tinnitus and acute stress disorder.

792. James Ryan McPherson received extensive medical treatment. He was medevac'd to Germany to be stabilized and sent to Fort Benning for surgery. He had a total knee replacement in 2009 at Keller Army Hospital and continues treatment with the VA.

793. As a result of the September 6, 2008 Terrorist Attack, and the injuries he suffered, James Ryan McPherson has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 27. THE SEPTEMBER 4, 2008 ATTACK – DIYALA PROVINCE

### A. PLAINTIFFS THE CLINTON DEWARD DURHAM FAMILY[113]

794. Plaintiff Clinton Deward Durham is a citizen of the United States and domiciled in the State of Texas.

795. On September 4, 2008, Clinton Deward Durham, age 30, was serving in the U.S. military in Iraq.

796. Mr. Durham was with his unit on patrol in the Diyala Province when his MRAP hit an IED.

797. The weapon used to attack and injure Mr. Durham was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

798. As a result of the attack, Clinton Deward Durham suffered injuries to his elbow, knees and back, a traumatic brain injury, and loss of vision. He has also been diagnosed with PTSD.

799. Clinton Deward Durham received extensive medical treatment. He was medevac'd to the base for his injuries. Mr. Durham has endured multiple surgeries and has been seen by the following medical providers: Balad Hospital, Houston Veterans

[113] Clinton Deward Durham was also injured in the August 14, 2008 attack in the Diyala Province.

Administration Medical Center, Landstuhl Germany, Darnall Hospital at Fort Hood, Veterans Administration Medical Center at Fort Dix, and the Mentis Neurological Rehabilitation Center in El Paso, Texas.

800. As a result of the September 4, 2008 Terrorist Attack, and the injuries he suffered, Clinton Deward Durham has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

801. Plaintiff D.N.D, a minor, represented by his legal guardian Clinton Deward Durham, is a citizen of the United States and domiciled in the State of Texas. He is the son of Clinton Deward Durham.

802. Plaintiff Clinton Durham, Sr., is a citizen of the United States and domiciled in the State of Texas. He is the father of Clinton Deward Durham.

803. Plaintiff Doris Martin is a citizen of the United States and domiciled in the State of Texas. She is the mother of Clinton Deward Durham.

804. Plaintiff Troy Smith is a citizen of the United States and domiciled in the State of Texas. He is the brother of Clinton Deward Durham.

805. Plaintiff Clinton Durham, Jr., is a citizen of the United States and domiciled in the State of Texas. He is the brother of Clinton Deward Durham.

806. Plaintiff Sheila Durham is a citizen of the United States and domiciled in the State of Texas. She is the sister of Clinton Deward Durham.

807. As a result of the September 4, 2008 Terrorist Attack, and the injuries suffered by Clinton Deward Durham, Plaintiffs D.N.D, a minor, Clinton Durham, Sr. (father), Doris

Martin, Troy Smith, Clinton Durham, Jr. (brother), and Sheila Durham have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 28. THE AUGUST 31, 2008 ATTACK - AGUR QUF

### A. PLAINTIFF RICHARD GEORGE MOORE, JR.

808. Plaintiff Richard George Moore, Jr. is a citizen of the United States and domiciled in the State of Florida.

809. On August 31, 2008, Richard George Moore, Jr., age 22, was serving in the U.S. military in Iraq.

810. Mr. Moore was out on Route North Stars East. They were in a three vehicle convoy. Mr. Moore was gunner in the last vehicle of the convoy (a Stryker). At the time the vehicle hit the IED, Mr. Moore's head was outside of the Stryker. He was knocked unconscious for several minutes. When he finally regained consciousness, he began firing on the enemy. His unit was able to leave the kill zone and had the vehicle towed back to Contingency Operating Base Agur Quf.

811. The weapon used to attack and injure Mr. Moore was an Iranian manufactured/supplied IED with landmines provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

812. As a result of the August 31, 2008 Terrorist Attack, Mr. Moore sustained permanent and significant injuries due to the explosion. Mr. Moore suffers from severe headaches and migraines. He has been diagnosed with tinnitus and has to wear a hearing aid in his left ear due to a ruptured ear drum from the blast. Mr. Moore also has to wear special prescription glasses that are tinted with prisms to allow his eyes to intake and process

information to the brain. As a result of the Terrorist Attack, Mr. Moore also suffers from PTSD and aggravated PTSD.

813. Mr. Moore received initial medical treatment at the aid station. Once he returned to the states he received further treatment at the VA Medical Center Schoffield Barracks. He continues to receive treatment at the Daytona Beach VA Medical Center, the Orlando Beach VA Clinic, and the Lake Nona VA Center.

814. As a result of the August 31, 2008 Terrorist Attack, and the injuries he suffered, Mr. Moore has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 29. THE AUGUST 15, 2008 ATTACK - SAMARRA

#### A. PLAINTIFF KENNETH C. ANDERSON

815. Plaintiff Kenneth C. Anderson is a citizen of the United States and domiciled in the State of Utah.

816. On August 15, 2008, Kenneth C. Anderson, age 32, was serving in the U.S. military in Iraq.

817. Mr. Anderson was returning with his unit to FOB Brassfield Mora when his vehicle was struck by an IED.

818. The weapon used to attack and injure Mr. Anderson was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

819. As a result of the attack, Kenneth C. Anderson suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), Tinnitus, facial burns, shoulder burns, shrapnel burns to left leg and right foot, right thigh and right ankle injury, Post-Traumatic

Stress Disorder ("PTSD"), cognitive disorder, anxiety, and depression.

820. Kenneth C. Anderson received extensive medical treatment, including past and ongoing care for these injuries, at his military base, Landstuhl Medical Center, Brooke Army Medical Center, Blanchfield Army Hospital, and other Veterans Medical Centers, military hospitals and private hospitals.

821. As a result of the August 15, 2008 Terrorist Attack, and the injuries he suffered, Kenneth C. Anderson has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 30. THE AUGUST 14, 2008 ATTACK – IVO CANAL ROUTE AND ROCKSIAN ROAD, NEAR CAMP ASHRAF, FOB GRIZZLY, NW OF BAQUBAH IN AL KHALIS

### A. PLAINTIFFS THE THOMAS TAVTIGIAN FAMILY

822. Plaintiff Thomas Tavtigian is a citizen of the United States and domiciled in the State of Kansas.

823. On August 14, 2008, Thomas Tavtigian, age 44, was serving in the U.S. military in Iraq.

824. Mr. Tavtigian was on patrol with his unit on the IVO Canal Route and Rocksian Road, near Camp Ashraf, FOB Grizzly, NW of Baqubah in al Khalis, Iraq, when an IED struck his Humvee.

825. The weapon used to attack and injure Mr. Tavtigian was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

826. As a result of the attack, Thomas Tavtigian suffered injuries to both legs, his back and neck, and hearing loss. He has nerve damage in his back, neck and left leg. He has

also been diagnosed with PTSD.

827. Thomas Tavtigian received extensive medical treatment. He was treated at the base for his leg injuries. Upon returning to the United states, he has endured multiple surgeries at and continuous medical care from Fort Sill in Fort Sill, Oklahoma, the Wichita Kansas Spine Hospital, The Topeka Kansas Orthopedic Specialists, the KU Medical Center in Kansas City, Kansas, and the Neuro Stimulator Clinic in Cedar Point Independence, Missouri.

828. As a result of the August 14, 2008 Terrorist Attack, and the injuries he suffered, Thomas Tavtigian has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

829. Plaintiff Claudia Tavtigian is a citizen of the United States and domiciled in the State of Kansas. She is the wife of Thomas Tavtigian.

830. Plaintiff Courtney Marshall is a citizen of the United States and domiciled in the State of Kansas. She is the daughter of Thomas Tavtigian.

831. As a result of the August 14, 2008 Terrorist Attack, and the injuries suffered by Thomas Tavtigian, Plaintiffs Claudia Tavtigian and Courtney Marshall have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 31. THE AUGUST 14, 2008 ATTACK – DIYALA PROVINCE

### A. PLAINTIFFS THE CLINTON DEWARD DURHAM FAMILY[114]

832. Plaintiff Clinton Deward Durham is a citizen of the United States and domiciled in the State of Texas.

833. On August 14, 2008, Clinton Deward Durham, age 30, was serving in the U.S. military in Iraq.

834. Mr. Durham was with his unit on patrol in the Diyala Province when his MRAP hit an IED.

835. The weapon used to attack and injure Mr. Durham was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

836. As a result of the attack, Clinton Deward Durham suffered injuries to his elbow, knees and back. He has also been diagnosed with PTSD.

837. Clinton Deward Durham received extensive medical treatment. He was treated at the base for his injuries. Mr. Durham has been seen by the following medical providers: Balad Hospital, Houston Veterans Administration Medical Center, Landstuhl Germany, Darnall Hospital at Fort Hood, Veterans Administration Medical Center at Fort Dix, and the Mentis Neurological Rehabilitation Center in El Paso, Texas.

838. As a result of the August 14, 2008 Terrorist Attack, and the injuries he suffered, Clinton Deward Durham has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic

---

[114] Clinton Deward Durham was also injured in the September 4, 2008 attack in the Diyala Province.

damages, including medical expenses, lost income, and loss of earning capacity.

839. Plaintiff D.J. a minor, represented by his legal guardian Clinton Deward Durham, is a citizen of the United States and domiciled in the State of Texas. He is the son of Clinton Deward Durham.

840. Plaintiff Clinton Durham, Sr., is a citizen of the United States and domiciled in the State of Texas. He is the father of Clinton Deward Durham.

841. Plaintiff Doris Martin is a citizen of the United States and domiciled in the State of Texas. She is the mother of Clinton Deward Durham.

842. Plaintiff Troy Smith is a citizen of the United States and domiciled in the State of Texas. He is the brother of Clinton Deward Durham.

843. Plaintiff Clinton Durham, Jr., is a citizen of the United States and domiciled in the State of Texas. He is the brother of Clinton Deward Durham.

844. Plaintiff Sheila Durham is a citizen of the United States and domiciled in the State of Texas. She is the sister of Clinton Deward Durham.

845. As a result of the August 14, 2008 Terrorist Attack, and the injuries suffered by Clinton Deward Durham, Plaintiffs D.J., a minor, Clinton Durham, Sr. (father), Doris Martin, Troy Smith, Clinton Durham, Jr. (brother), and Sheila Durham have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 32. THE JULY 23, 2008 ATTACK – IED ALLEY, ROUTE IRISH, BAGHDAD

### A. PLAINTIFFS THE RODRICK BERNARD ANDERSON FAMILY

846. Plaintiff Rodrick Bernard Anderson is a citizen of the United States and

domiciled in the State of Texas.

847. On July 23, 2008, Rodrick Bernard Anderson, age 44, was serving as a private contractor for Kellogg Brown & Root. At the time, Rodrick Bernard Anderson held the title of Contracts Manager.

848. Mr. Anderson was with his unit on patrol on "IED Alley" or Route Irish in Baghdad, Iraq when an IED exploded directly in front of his MRAP vehicle.

849. The weapon used to attack and injure Mr. Anderson was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

850. As a result of the attack, Rodrick Bernard Anderson suffered shrapnel injuries to both of his legs. He has also been diagnosed with PTSD, anxiety and depression.

851. Rodrick Bernard Anderson received extensive medical treatment. He was treated at the scene and then transported to the Green Zone hospital in Baghdad for emergency surgery. Upon returning to the United States, Mr. Anderson has sought treatment from the Veterans Administration Hospital in Memphis, Tennessee and the Fort Worth Veterans Administration Clinic in Texas.

852. As a result of the July 23, 2008 Terrorist Attack, and the injuries he suffered, Rodrick Bernard Anderson has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

853. Plaintiff Raena Anderson, is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Rodrick Bernard Anderson.

854. As a result of the July 23, 2008 Terrorist Attack, and the injuries suffered by

Rodrick Bernard Anderson, Plaintiff Raena Anderson, has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 33. THE JULY 10, 2008 ATTACK – AL QAIM, AL ANBAR PROVINCE

### A. PLAINTIFFS THE JUSTIN HULLETT FAMILY

855. Plaintiff Justin Hullett is a citizen of the United States and domiciled in the State of South Carolina.

856. On July 10, 2008, Justin Hullett, age 20, was serving in the U.S. military in Iraq.

857. Mr. Hullett was with his unit on patrol in al Qaim in the al Anbar Province when he stepped on an AP Mine on a berm in the desert.

858. The weapon used to attack and injure Mr. Hullett was an Iranian manufactured/supplied AP Mine provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

859. As a result of the attack, Justin Hullett suffered fractures to his left hip, femur and wrist, and his right foot, shrapnel injuries and ball bearings through his Achilles tendon, tinnitus, and a traumatic brain injury. He has also been diagnosed with PTSD.

860. Justin Hullett received extensive medical treatment. He was treated at the scene and then Air medevac'd to al Asad combat support hospital for immediate treatment. Mr. Hullett received extensive medical treatment for his injuries, including multiple exams and visits at various medical facilities and physicians' offices.

861. As a result of the July 10, 2008 Terrorist Attack, and the injuries he suffered,

Justin Hullett has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

862. Plaintiff Ronnie Hullett is a citizen of the United States and domiciled in the State of Georgia. He is the father of Justin Hullett.

863. Plaintiff Georgina Gordon is a citizen of the United States and domiciled in the State of Tennessee. She is the mother of Justin Hullett.

864. Plaintiff Joey Hullett is a citizen of the United States and domiciled in the State of Georgia. He is the brother of Justin Hullett.

865. Plaintiff Robbie Hullett is a citizen of the United States and domiciled in the State of Georgia. He is the brother of Justin Hullett.

866. Plaintiff Kelsey Adams is a citizen of the United States and domiciled in the State of Georgia. She is the sister of Justin Hullett.

867. As a result of the July 10, 2008 Terrorist Attack, and the injuries suffered by Justin Hullett, Plaintiffs Ronnie Hullett, Georgina Gordon, Joey Hullett, Robbie Hullett, and Kelsey Adams have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 34. THE JULY 8, 2008 ATTACK – OUTSIDE ABANDONED SHEIK GARI RAILWAY STATION IN KHANDAHARI NEIBHBORHOOD, JSS LUZON, NEAR AL NASR WAL SALAM, IVO ABU GHRAIB

### A. PLAINTIFF VUTHA EANG

868. Plaintiff Vutha Eang is a citizen of the United States and domiciled in the State of California.

869. On July 8, 2008, Vutha Eang, age 20, was serving in the U.S. military in Iraq.

870. Mr. Eang was with his unit outside a railway station in the Khandahari Neighborhood at JSS Luzon, near al Nasr Wal Salam. An IED exploded into his Stryker.

871. The weapon used to attack and injure Mr. Eang was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

872. As a result of the attack, Vutha Eang suffered shrapnel injuries, several fractured bones and a traumatic brain injury. He has also been diagnosed with PTSD.

873. Vutha Eang received extensive medical treatment. He was treated at the scene and then medevac'd to the combat support hospital for immediate treatment. Mr. Eang received extensive medical treatment for his injuries, including multiple exams and visits at various medical facilities and physicians' offices.

874. As a result of the July 8, 2008 Terrorist Attack, and the injuries he suffered, Vutha Eang has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 35. THE JULY 8, 2008 ATTACK – OUTSIDE ABANDONED SHEIK GARI RAILWAY STATION IN KHANDAHARI NEIBHBORHOOD, JSS LUZON, NEAR AL NASR WAL SALAM, IVO ABU GHRAIB

#### A. PLAINTIFF ROBERT JOSEPH BARTHEL

875. Plaintiff Robert Joseph Barthel is a citizen of the United States and domiciled in the State of Michigan.

876. On July 8, 2008, Robert Joseph Barthel, age 25, was serving in the U.S. military in Iraq.

877. Mr. Barthel was with his unit outside a railway station in the Khandahari Neighborhood at JSS Luzon, near al Nasr Wal Salam. An IED exploded into his Stryker.

878. The weapon used to attack and injure Mr. Barthel was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

879. As a result of the attack, Robert Joseph Barthel suffered a fractured right hip and amputation of his right leg, tinnitus, and a traumatic brain injury. He has also been diagnosed with PTSD, anxiety and depression.

880. Robert Joseph Barthel received extensive medical treatment. He was treated at the scene and then medevac'd to the combat support hospital for immediate treatment. Mr. Barthel received extensive medical treatment for his injuries, including multiple exams and visits at various medical facilities and physicians' offices.

881. As a result of the July 8, 2008 Terrorist Attack, and the injuries he suffered, Robert Joseph Barthel has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 36. THE JULY 8, 2008 ATTACK – OUTSIDE ABANDONED SHEIK GARI RAILWAY STATION IN KHANDAHARI NEIBHBORHOOD, JSS LUZON, NEAR AL NASR WAL SALAM, IVO ABU GHRAIB

### A. PLAINTIFF NATHAN ALLEN ROLENS

882. Plaintiff Nathan Allen Rolens is a citizen of the United States and domiciled in the State of Texas.

883. On July 8, 2008, Nathan Allen Rolens, age 27, was serving in the U.S. military in Iraq.

884. Mr. Rolens was with his unit outside a railway station in the Khandahari Neighborhood at JSS Luzon, near al Nasr Wal Salam. An IED exploded into his Stryker.

885. The weapon used to attack and injure Mr. Rolens was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

886. As a result of the attack, Nathan Allen Rolens suffered shrapnel injuries to the right arm, leg, side and triceps, nerve damage to the right arm, tinnitus, and a traumatic brain injury. He has also been diagnosed with PTSD, anxiety and depression.

887. Nathan Allen Rolens received extensive medical treatment. He was treated at the scene and then medevac'd to the combat support hospital for immediate treatment. Mr. Rolens was then transferred to Landstuhl, Germany before being moved to Brook Army Medical Center in San Antonio. He has also received treatment from the US Army Health Clinic in the Schofield Barracks, and the Michael E. DeBakey Veterans Affairs Medical Center in Houston, Texas.

888. As a result of the July 8, 2008 Terrorist Attack, and the injuries he suffered, Nathan Allen Rolens has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 37. THE JULY 8, 2008 ATTACK – OUTSIDE ABANDONED SHEIK GARI RAILWAY STATION IN KHANDAHARI NEIBHBORHOOD, JSS LUZON, NEAR AL NASR WAL SALAM, IVO ABU GHRAIB

### A. PLAINTIFFS THE ERWIN DAVID SADDI FAMILY

889. Plaintiff Erwin David Saddi is a citizen of the United States and domiciled in the State of California.

890. On July 8, 2008, Erwin David Saddi, age 31, was serving in the U.S. military in Iraq.

891. Mr. Saddi was with his unit outside a railway station in the Khandahari Neighborhood at JSS Luzon, near al Nasr Wal Salam. An IED exploded into his Stryker.

892. The weapon used to attack and injure Mr. Saddi was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

893. As a result of the attack, Erwin David Saddi suffered several fractured bones and a traumatic brain injury. He has also been diagnosed with PTSD.

894. Erwin David Saddi received extensive medical treatment. He was treated at the scene and then medevac'd to the combat support hospital for immediate treatment. Mr. Saddi received extensive medical treatment for his injuries, including multiple exams and visits at various medical facilities and physicians' offices.

895. As a result of the July 8, 2008 Terrorist Attack, and the injuries he suffered, Erwin David Saddi has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

896. Plaintiff Sheila Saddi is a citizen of the United States and domiciled in the State of California. She is the wife of Erwin David Saddi.

897. Plaintiff S.MS.1., a minor, represented by his legal guardians Erwin David Saddi and Sheila Saddi, is a citizen of the United States and domiciled in the State of California. He is the son of Erwin David Saddi and Sheila Saddi.

898. Plaintiff S.M.S.2, a minor, represented by her legal guardians Erwin David

Saddi and Sheila Saddi, is a citizen of the United States and domiciled in the State of California. She is the daughter of Erwin David Saddi and Sheila Saddi.

899. Plaintiff S.F.S., a minor, represented by her legal guardians Erwin David Saddi and Sheila Saddi, is a citizen of the United States and domiciled in the State of California. She is the daughter of Erwin David Saddi and Sheila Saddi.

900. As a result of the July 8, 2008 Terrorist Attack, and the injuries suffered by Erwin David Saddi, Plaintiffs Sheila Saddi, S.M.S.1, S.M.S.2, and S.F.S., minors, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 38. THE JULY 7, 2008 ATTACK - FALLUJAH

### A. PLAINTIFF BRYANT J. SCHILTZ

901. Plaintiff Bryant J. Schiltz is a citizen of the United States and domiciled in the State of Iowa.

902. On July 7, 2008, Bryant J. Schiltz, age 19, was serving in the U.S. military in Iraq.

903. Mr. Schiltz was on patrol with his unit in Fallujah when his vehicle was struck by an Improvised Explosive Device (IED).

904. The weapon used to attack and injure Mr. Schiltz was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

905. As a result of the attack, Bryant J. Schiltz suffered injuries that include, but are not limited to, TBI, recurring headaches, dizziness, shoulder pain, poor memory, and tinnitus.

906. Bryant J. Schiltz received extensive medical treatment at the Naval Hospital at

Camp Lejeune and other VA Medical Centers and private medical providers.

907. As a result of the July 7, 2008 Terrorist Attack, and the injuries he suffered, Bryant J. Schiltz has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 39. THE JUNE 20, 2008 ATTACK – MUKHISA

#### A. PLAINTIFF BRIAN DAVID GOULD

908. Plaintiff Brian David Gould is a citizen of the United States and domiciled in the State of Colorado.

909. On June 20, 2008, Brian David Gould, age 27, was serving in the U.S. military in Iraq.

910. Mr. Gould was on patrol duty with his unit in Mukhisa, Iraq clearing a path through palm groves to facilitate a safer route. When two persons in his unit moved a fence post, an IED exploded, hitting Mr. Gould with shrapnel and knocking him unconscious.

911. The weapon used to attack and injure Mr. Gould was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

912. As a result of the attack, Mr. Gould suffered serious injuries, including injuries to his face and eye, traumatic brain injury, hearing loss, and PTSD.

913. Mr. Gould received extensive medical treatment for his injuries, including treatment in the field, at Balad, Madigan Army Medical Center, Landstuhl Regional Medical Center, and Walter Reed National Military Medical Center. He has continued to receive treatment related to his injuries.

914. As a result of the June 20, 2008 Terrorist Attack, and the injuries he suffered,

Mr. Gould has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 40. THE JUNE 19, 2008 ATTACK – SADR CITY

### A. PLAINTIFF DANIEL RYAN KULICKA

915. Plaintiff Daniel Ryan Kulicka is a citizen of the United States and domiciled in the State of Alabama.

916. On June 19, 2008, Daniel Ryan Kulicka, age 25, was serving in the U.S. military in Iraq.

917. Mr. Kulicka and his fellow servicemen had completed performing an all-night over-watch on Route Pluto in Sadr City, Iraq and were heading back to their base when an EFP struck the Stryker they were riding in.

918. The weapon used to attack and injure Mr. Kulicka was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

919. As a result of the attack, Daniel Ryan Kulicka suffered a traumatic brain injury, traumatic cataracts, tinnitus, degenerative disks, enlarged disks in his lower back, micro-tears on his brain, PTSD, and sleep apnea.

920. Daniel Ryan Kulicka received extensive medical treatment; he has had treatment for his injuries from a neurologist, a psychiatrist, and a therapist and taken medication.

921. As a result of the June 19, 2008 Terrorist Attack, and the injuries he suffered, Daniel Ryan Kulicka has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic

damages, including medical expenses, lost income, and loss of earning capacity.

## 41. THE JUNE 17, 2008 ATTACK – BALAD (JOINT BASE BALAD)

### A. PLAINTIFFS THE JUSTIN N. CARY FAMILY

922. Plaintiff Justin N. Cary is a citizen of the United States and domiciled in the State of Tennessee.

923. On June 17, 2008, Justin N. Cary, age 29, was serving in the U.S. military in Iraq.

924. Mr. Cary was walking to his barracks on Joint Base Balad when the base came under a mortar attack. One mortar exploded 10-15 feet from Mr. Cary knocking him to the ground.

925. The weapon used to attack and injure Mr. Cary was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

926. As a result of the attack, Justin N. Cary suffered a TBI, PTSD, migraines, tinnitus, vestibular dizziness, depression, memory loss, headaches, blurred vision, and nightmares.

927. Justin N. Cary was and continues to be treated at the Johnson City Vet Center, Johnson City, TN.

928. As a result of the June 17, 2008 Terrorist Attack, and the injuries he suffered, Justin N. Cary has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

929. Plaintiff Suzane Cary is a citizen of the United States and domiciled in the State of Tennessee. She is the wife of Justin N. Cary.

930. Plaintiff B.C., a minor child, is a citizen of the United States and domiciled in the State of Tennessee. She is the stepdaughter of Justin N. Cary.

931. Plaintiff N.M., a minor child, is a citizen of the United States and domiciled in the State of Tennessee. He is the stepson of Justin N. Cary.

932. Plaintiff Sandra Cary is a citizen of the United States and domiciled in the State of Texas. She is the mother of Justin N. Cary.

933. Plaintiff Alex Cary is a citizen of the United States and domiciled in the State of Texas. He is the brother of Justin N. Cary.

934. Plaintiff Kimberly Cary is a citizen of the United States and domiciled in the State of Texas. She is the sister of Justin N. Cary.

935. Plaintiff Audrey Lange is a citizen of the United States and domiciled in the State of Texas. She is the sister of Justin N. Cary.

936. As a result of the June 17, 2008 Terrorist Attack, and the injuries suffered by Justin N. Cary, Plaintiffs Suzane Cary, B.C., a minor child, N.M., a minor child, Sandra Cary, Alex Cary, Kimberly Cary, and Audrey Lange have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 42. THE JUNE 15, 2008 ATTACK – FOB MAHMUDIYA

### A. PLAINTIFFS THE MARK ALLEN WHETZEL FAMILY

937. Plaintiff Mark Allen Whetzel is a citizen of the United States and is domiciled in the State of West Virginia.

938. On or about June 15, 2008, Mark Allen Whetzel, age 30, was serving in the U.S. military in Iraq.

939. Mr. Whetzel was performing his duties as a military police officer guarding the

civilian gate of FOB Mahmudiya when an incoming 105 mortar shell exploded inside FOB Mahmudiya, injuring Mr. Whetzel.

940. The weapon used to attack and injure Mr. Whetzel was Iranian-manufactured mortar provided by Iran and/or one of its Agents or Proxies to Iranian-funded and Iranian-trained terror operatives in Iraq.

941. As a result of the subject Terrorist Attack, Mr. Whetzel sustained significant injuries due to the concussive blast of the mortar, including loss of hearing and constant ringing in both ears as a result of this attack, as well as Post Traumatic Stress Disorder ("PTSD"), nightmares, anxiety and depression.

942. Mr. Whetzel received extensive treatment at the military hospital on FOB Mahmudiya for his injuries. Once Mr. Whetzel returned to the United States, he was treated at Womack Medical Hospital and Madigan Army Hospital for his injuries.

943. As a result of the subject Terrorist Attack and the injuries he suffered, Mark Allen Whetzel has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

944. Plaintiff Jennifer Dawn Whetzel is a citizen of the United States and is domiciled in the State of West Virginia. She is the wife of Mark Allen Whetzel.

945. As a result of the subject Terrorist Attack, and the injuries suffered by Mark Allen Whetzel, Plaintiff Jennifer Dawn Whetzel, has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 43. JUNE 12, 2008 ATTACK – CAMP BUCCA - UM QASR

### A. PLAINTIFF SEAN PATRICK LYNCH

946. Plaintiff Sean Patrick Lynch is a citizen of the United States and domiciled in the State of Arkansas.

947. On or about June 12, 2008, Sean Patrick Lynch, age 37, was serving in the U.S. military in Iraq.

948. On June 12, 2008 Mr. Lynch was in the mess hall at Camp Bucca when sirens began to go off and mortar fire began inside and outside the perimeter, lasting approximately 30 minutes.

949. The weapons used to attack and injure Mr. Lynch were Iranian manufactured/supplied mortar rockets provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

950. As a result of the attack, Sean Patrick Lynch suffers from back injury and pain and PTSD.

951. Sean Patrick Lynch received medical treatment for his injuries including chiropractic care, surgery, and psychological treatment for his PTSD.

952. As a result of the June 12, 2008 Terrorist Attack, and the injuries he suffered, Sean Patrick Lynch has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 44. THE JUNE 11, 2008 ATTACK - ROUTE SENATORS – SOUTH BAGHDAD

### A. PLAINTIFFS THE RONALD PAUL MCLANE FAMILY

953. Plaintiff Ronald Paul McLane is a citizen of the United States and domiciled in

the State of Oregon.

954. On June 11, 2008, Ronald Paul McLane, age 26, was serving in the U.S. military in Iraq.

955. Mr. McLane was on patrol in a Humvee with his unit south of Baghdad on Route Senators. As his unit drove under a walking bridge, an EFP detonated and Mr. McLane was hit with the blast.

956. The weapon used to attack and injure Mr. McLane was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

957. As a result of the attack, Mr. McLane suffered shrapnel to his face and arm, burns to his left arm, herniated disc, PTSD, Insomnia, Depression, Anxiety, Hypervigilance, and anger issues.

958. Mr. McLane received extensive medical treatment at the aid tent at FOB Falcon. Mr. McLane is currently still treating at the Salem Oregon Community Based Outpatient Clinic.

959. As a result of the June 11, 2008 Terrorist Attack, and the injuries he suffered, Ronald Paul McLane has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

960. Plaintiff Candie Nicole Reed-McLane is a citizen of the United States and domiciled in the State of Oregon. She is the wife of Ronald Paul McLane.

961. Plaintiff J.P.M., a minor child, represented by his legal guardians Ronald Paul McLane and Candie Nicole Reed-McLane, is a citizen of the United States and domiciled in

the State of Oregon, He is the son of Ronald Paul McLane and Candie Nicole Reed-McLane.

962. As a result of the June 11, 2008 Terrorist Attack, and the injuries suffered by Ronald Paul McLane, Plaintiffs Candie Nicole Reed-McLane and J.P.M., a minor child, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 45. THE JUNE 2008 ATTACK - FALLUJAH

### A. PLAINTIFFS THE JACOB D. HOUSEHOLDER FAMILY

963. Plaintiff Jacob D. Householder is a citizen of the United States and domiciled in the State of Arkansas.

964. In early June 2008, Jacob D. Householder, age 24, was serving in the U.S. military in Iraq.

965. Mr. Householder was on patrol at his post Operating Position Burgess in central Fallujah when he was injured by a VBIED attack.

966. The weapon used to attack and injure Mr. Householder was an Iranian manufactured/supplied Vehicle-Borne Improvised Explosive Device ("VBIED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

967. As a result of the attack, Jacob D. Householder suffered injuries that include, but are not limited to, a permanent back injury, a right shoulder injury, left knee injury, Post-Traumatic Stress Disorder ("PTSD"), sleep disorders, noise sensitivity, anxiety, and depression.

968. Jacob D. Householder received extensive medical treatment, including past and ongoing care for these injuries, at Camp Lejeune, several Veterans Medical Centers and with private medical providers.

969. As a result of the early June 2008 Terrorist Attack, and the injuries he suffered, Jacob D. Householder has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

970. Plaintiff Janet Baxter is a citizen of the United States and domiciled in the State of Arkansas. She is the mother of Jacob D. Householder.

971. As a result of the June 2008 Terrorist Attack, and the injuries suffered by Jacob D. Householder, Plaintiff Janet Baxter has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 46. THE MAY 15, 2008 ATTACK – NEAR HADITHA DAM

### A. PLAINTIFF TRAVIS EUGENE SCHNEIDER

972. Plaintiff Travis Eugene Schneider is a citizen of the United States and domiciled in the State of California.

973. On or about the afternoon of May 15, 2008, Travis Eugene Schneider, age 36, was serving in the U.S. military in Iraq.

974. Mr. Schneider was on patrol near the dam on or about that date and time, when his unit began taking on small arms and RPG fire. His unit took cover and engaged the attackers until an air strike arrived to end the attack.

975. The weapons used to attack and injure Mr. Schneider were Iranian manufactured/supplied RPGs and small arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

976. As a result of the attack, Mr. Schneider was hit and injured by shrapnel in his arm and shoulder, and PTSD.

977. Mr. Schneider initially received medical treatment at the aid tent. He has received additional treatment at Naval Medical Center Portsmouth, Navel Medical Center San Diego and is continuing to receive treatment at the VA Murrieta Clinic.

978. As a result of the May 15, 2008 Terrorist Attack, and the injuries he suffered, Mr. Travis Eugene Schneider has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 47. THE MAY 10, 2008 ATTACK - BUHRIZ NEAR BAQUBAH

### A. PLAINTIFFS THE NOAH P. MUTRIE FAMILY

979. Plaintiff Noah P. Mutrie is a citizen of the United States and domiciled in the State of New York.

980. On May 10, 2008, Noah P. Mutrie, age 26, was serving in the U.S. military in Iraq.

981. Mr. Mutrie was on foot patrol with his unit in Buhriz near Baqubah when he stepped on an IED wire, detonating the explosive.

982. The weapon used to attack and injure Mr. Mutrie was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

983. As a result of the attack, Noah P. Mutrie suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), a concussion, shrapnel wounds to his face and head, ruptured eardrums, hearing loss, Post-Traumatic Stress Disorder ("PTSD"), social disorder, anger issues, anxiety, and depression.

984. Noah P. Mutrie received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers

and private medical providers.

985. As a result of the May 10, 2008 Terrorist Attack, and the injuries he suffered, Noah P. Mutrie has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

986. Plaintiff Ashley Mutrie is a citizen of the United States and domiciled in the State of New York. She is the wife of Noah P. Mutrie.

987. Plaintiff B.M., a minor child, represented by his legal guardians Noah P. Mutrie and Ashley Mutrie, is a citizen of the United States and domiciled in the State of New York. He is the son of Noah P. Mutrie.

988. Plaintiff J.M., a minor child, represented by his legal guardians Noah P. Mutrie and Ashley Mutrie, is a citizen of the United States and domiciled in the State of New York. He is the son of Noah P. Mutrie.

989. Plaintiff Alexandra Mutrie is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Noah P. Mutrie.

990. As a result of the May 10, 2008 Terrorist Attack, and the injuries suffered by Noah P. Mutrie, Plaintiff's Ashley Mutrie, B.M. a minor, J.M. a minor, and Alexandra Mutrie have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 48. THE MAY 7, 2008 ATTACK – SADR CITY

### A. PLAINTIFF HENRY J. BREWER, III

991. Plaintiff Henry J. Brewer, III is a citizen of the United States and domiciled in the State of Georgia.

992. On May 7, 2008, Henry J. Brewer, III, age 24, was serving in the U.S. military in Iraq.

993. Mr. Brewer was on patrol with his unit on the outskirts of Sadr City when his unit was struck by an EFP.

994. The weapon used to attack and injure Mr. Brewer was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

995. As a result of the attack, Henry J. Brewer, III suffered injuries including, but not limited to, Post-Traumatic Stress Disorder ("PTSD").

996. Henry J. Brewer, III received extensive medical treatment at various Veterans Medical Centers and private practices.

997. As a result of the May 7, 2008 Terrorist Attack, and the injuries he suffered, Henry J. Brewer, III has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 49. THE MAY 3, 2008 ATTACK – MSR TAMPA, CHECKPOINT 38A, BAGHDAD

#### A. PLAINTIFFS THE ERIC ZACHARY HURST FAMILY

998. Plaintiff Eric Zachary Hurst is a citizen of the United States and domiciled in the State of Tennessee.

999. On May 3, 2008, Eric Zachary Hurst, age 19, was serving in the U.S. military in Iraq.

1000. Mr. Hurst was on patrol with his unit on MSR Tampa when his Humvee was attacked by an IED.

1001. The weapon used to attack and injure Mr. Hurst was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1002. As a result of the attack, Eric Zachary Hurst suffered shrapnel injuries to his buttocks, injuries to his right hand, hearing loss in his left ear, and a traumatic brain injury. He has also been diagnosed with PTSD.

1003. Eric Zachary Hurst received extensive medical treatment. He was treated at the Victory Base Complex for his immediate injuries and shrapnel removal. He has received medical care from the following facilities: Camp Arifjan Medical Center in Kuwait, Fort Hood Monroe Medical Center, Chillicothe Ohio Veterans Administration Medical Center and the South Bend Veterans Administration Healthcare Center.

1004. As a result of the May 3, 2008 Terrorist Attack, and the injuries he suffered, Eric Zachary Hurst has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1005. Plaintiff Dwayne Hurst is a citizen of the United States and domiciled in the State of Ohio. He is the father of Eric Zachary Hurst.

1006. Plaintiff Kelly Metcalf is a citizen of the United States and domiciled in the State of Ohio. She is the mother of Eric Zachary Hurst.

1007. Plaintiff Jordan Hurst is a citizen of the United States and domiciled in the State of Ohio. He is the brother of Eric Zachary Hurst.

1008. Plaintiff Devin Hurst is a citizen of the United States and domiciled in the State of Ohio. He is the brother of Eric Zachary Hurst.

1009. Plaintiff Sierra Hurst is a citizen of the United States and domiciled in the State of Ohio. He is the brother of Eric Zachary Hurst.

1010. As a result of the May 3, 2008 Terrorist Attack, and the injuries suffered by Eric Zachary Hurst, Plaintiffs Dwayne Hurst, Kelly Metcalf, Jordan Hurst, Devin Hurst and Sierra Hurst have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 50. THE MAY 21, 2008 ATTACK - MOSUL

### A. PLAINTIFFS THE PHILIP LEE CHILDREY FAMILY

1011. Plaintiff Philip Lee Childrey is a citizen of the United States and domiciled in the State of Missouri.

1012. On or about May 21, 2008, Philip Lee Childrey, age 35, was serving in the U.S. military in Iraq.

1013. Mr. Childrey was at the airfield in Mosul when the airfield was ambushed by mortars.

1014. The weapon used to attack and injure Mr. Childrey were Iranian manufactured/supplied mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1015. As a result of the attack, Mr. Childrey suffered severe PTSD and anxiety.

1016. Mr. Childrey received extensive medical treatment from the VA for his PTSD and anxiety.

1017. As a result of the May 21, 2008 Terrorist Attack, and the injuries he suffered, Philip Lee Childrey has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic

damages, including medical expenses, lost income, and loss of earning capacity.

1018. Plaintiff Stephanie Childrey is a citizen of the United States and domiciled in the State of Missouri. She is the wife of Philip Lee Childrey.

1019. As a result of the May 21, 2008 Terrorist Attack, and the injuries suffered by Philip Lee Childrey, Plaintiff Stephanie Childrey has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 51. THE OCTOBER 22, 2007 ATTACK – AMIL DISTRICT, BAGHDAD

### A. PLAINTIFFS THE ROBERT ALLEN HAAF FAMILY

1020. Plaintiff Robert Allen Haaf is a citizen of the United States and domiciled in the State of Kansas.

1021. On October 22, 2007, Robert Allen Haaf, age 45, was serving in the U.S. military in Iraq.

1022. In the late evening of October 22, 2007, Mr. Haaf and his men were out on patrol in the Amil District on IED detail when they spotted an IED on the road. While inspecting the IED, it exploded, traveling through the right side of the fender and then up and out of the vehicle. The IED was determined to be an EFP. Mr. Haaf was knocked unconscious. When he woke, his men were checking him for wounds and he was unable to hear them.

1023. The weapon used to attack and injure Mr. Haaf was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1024. As a result of the attack, Robert Allen Haaf suffered hearing loss, a traumatic brain injury, loss of taste and smell due to the brain injury, PTSD, depression and anxiety.

1025. Robert Allen Haaf received extensive medical treatment. Mr. Haaf requires hearing aids due to his hearing loss from the explosions. Due to his traumatic brain injury, Mr. Haaf must walk with a cane, suffers memory loss, can no longer drive himself, and depends on his wife as a caretaker.

1026. As a result of the October 22, 2007 Terrorist Attack, and the injuries he suffered, Robert Allen Haaf has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1027. Plaintiff Monica Elizabeth Haaf is a citizen of the United States and domiciled in the State of Kansas. She is the wife of Robert Allen Haaf.

1028. Plaintiff J.A.R.H., a minor represented by his legal guardians Monica Elizabeth Haaf and Robert Allen Haaf, is a citizen of the United States and domiciled in the State of Kansas. He is the son of Monica Elizabeth Haaf and Robert Allen Haaf.

1029. Plaintiff Mary Agnus Haaf is a citizen of the United States and domiciled in the State of Missouri. She is the mother of Robert Allen Haaf.

1030. Plaintiff James Joseph Haaf is a citizen of the United States and domiciled in the State of Missouri. He is the brother of Robert Allen Haaf.

1031. As a result of the October 22, 2007 Terrorist Attack, and the injuries suffered by Robert Allen Haaf, Plaintiff's Monica Elizabeth Haaf, J.A.R.H., a minor, Mary Agnus Haaf and James Joseph Haaf have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 52. THE APRIL 29, 2008 ATTACK – MSR TAMPA, IVO SADR CITY, BAGHDAD

### A. PLAINTIFF JEFFREY CHRISTOPHER HARPER JR.

1032. Plaintiff Jeffrey Christopher Harper Jr. is a citizen of the United States and domiciled in the State of Tennessee.

1033. On April 29, 2008, Jeffrey Christopher Harper Jr., age 33, was serving in the U.S. military in Iraq.

1034. Mr. Harper was on patrol with his unit on MSR Tampa, about 5 "clicks" away from Sadr City when they were attacked by an IED, an EFP, RPGs and small arms fire.

1035. The weapon used to attack and injure Mr. Harper was an Iranian manufactured/supplied EFP, IED, RPG and small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1036. As a result of the attack, Jeffrey Christopher Harper Jr., suffered a traumatic brain injury and tinnitus. He has also been diagnosed with PTSD.

1037. Jeffrey Christopher Harper Jr. received extensive medical treatment. He has received medical care from the following facilities: Fort Bliss, Fort Richardson, VA Anchorage Healthcare System, VA Atlanta Medical Center, Asheville VA Medical Center, and the VA Medical Center in Knoxville, Tennessee.

1038. As a result of the April 29, 2008 Terrorist Attack, and the injuries he suffered, Jeffrey Christopher Harper Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 53. THE APRIL 28, 2008 ATTACK - FALLUJAH

### A. PLAINTIFFS THE JACOB D. HOUSEHOLDER FAMILY

1039. Plaintiff Jacob D. Householder is a citizen of the United States and domiciled in the State of Arkansas.

1040. On April 28, 2008, Jacob D. Householder, age 24, was serving in the U.S. military in Iraq.

1041. Mr. Householder was on patrol with his unit on Route Fran in Fallujah when his squad was attacked with small arms fire.

1042. The weapon used to attack and injure Mr. Householder was an Iranian manufactured/supplied small arms weapon provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1043. As a result of the attack, Jacob D. Householder suffered injuries that include, but are not limited to, Post-Traumatic Stress Disorder ("PTSD"), sleep disorders, noise sensitivity, anxiety, and depression.

1044. Jacob D. Householder received extensive medical treatment, including past and ongoing care for these injuries, at Camp Lejeune, several Veterans Medical Centers and with private medical providers.

1045. As a result of the April 28, 2008 Terrorist Attack, and the injuries he suffered, Jacob D. Householder has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1046. Plaintiff Janet Baxter is a citizen of the United States and domiciled in the State of Arkansas. She is the mother of Jacob D. Householder.

1047. As a result of the April 28, 2008 Terrorist Attack, and the injuries suffered by

Jacob D. Householder, Plaintiff Janet Baxter has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 54. THE APRIL 27, 2008 ATTACK – SADR CITY, BAGHDAD

### A. PLAINTIFF ANTHONY FARINA

1048. Plaintiff Anthony Farina is a citizen of the United States and domiciled in the State of Indiana.

1049. On April 27, 2008, Anthony Farina, age 28, was serving in the U.S. military in Iraq.

1050. Mr. Farina, who was performing his duties as Staff Sergeant in the Infantry division, was standing behind a crane that was replacing barriers at the intersection of Route Bravo and Route Gold in Sadr City, when the crane was struck by a rocket-propelled grenade (RPG). Mr. Farina was knocked unconscious and struck by shrapnel next to the jugular vein in his neck.

1051. The weapon used to attack and injure Mr. Farina was an Iranian manufactured/supplied rocket-propelled grenade provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1052. As a result of the attack, Anthony Farina suffered from concussive blast injuries, shrapnel injuries to his neck, and PTSD.

1053. Anthony Farina received extensive medical treatment including debridement and surgical intervention for his neck wound, and continuing treatment for his PTSD.

1054. As a result of the April 27, 2008 Terrorist Attack, and the injuries he suffered, Anthony Farina has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic

damages, including medical expenses, lost income, and loss of earning capacity.

## 55. THE APRIL 19, 2008 ATTACK – TAJI

### A. PLAINTIFFS THE JESSE D. CORTRIGHT FAMILY

1055. Plaintiff Jesse D. Cortright is a citizen of the United States and domiciled in the State of New York.

1056. On April 19, 2008, Jesse D. Cortright, age 37, was serving in the U.S. military in Iraq.

1057. Mr. Cortright was manning a vehicle checkpoint in Taji, Iraq when he was attacked with mortars, knocking him unconscious.

1058. The weapons used to attack and injure Mr. Cortright were Iranian manufactured/supplied mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1059. As a result of the attack, Mr. Cortright suffers from TBI, PTSD, memory loss, anxiety, and insomnia.

1060. Jesse D. Cortright received extensive medical treatment at the VA Medical Center, Bath, New York; Tripler Army Medical Hospital, Honolulu, Hawaii; Schofield Mental Health Facility, Honolulu, Hawaii; Tompkins / Cortland County VA Center, Freeville, New York; St. Joe's Veterans Rehabilitation Program, Saranac, New York; and Cayuga Medical Center, Ithaca, New York.

1061. As a result of the April 19, 2008 Terrorist Attack, and the injuries he suffered, Jesse D. Cortright has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1062. Plaintiff Michaela Cortright is a citizen of the United States and is domiciled in

the state of New York. She is the former wife of Jesse D. Cortright.

1063. Plaintiff Diana Hotaling is a citizen of the United States and is domiciled in the state of New York. She is the mother of Jesse D. Cortright.

1064. Plaintiff Joseph Cortright is a citizen of the United States and is domiciled in the state of New York. He is the father of Jesse D. Cortright.

1065. Plaintiff Hanna Cortright is a citizen of the United States and is domiciled in the state of New York. She is the daughter of Jesse D. Cortright.

1066. As a result of the April 19, 2008 Terrorist Attack, and the injuries suffered by Jesse D. Cortright, Plaintiffs, Michaela Cortright, Diana Hotaling, Joseph Cortright, and Hanna Cortright have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 56. THE APRIL 13, 2008 ATTACK – SADR CITY

### A. PLAINTIFF MICHAEL JAMES BELL

1067. Plaintiff Michael James Bell is a citizen of the United States and domiciled in the State of Nevada.

1068. On April 13, 2008, Michael James Bell, age 24, was serving in the U.S. military in Iraq.

1069. Mr. Bell was at the joint security site in Sadr City with his unit at the guard station when they suddenly were ambushed by six Katyusha Rockets.

1070. The weapon used to attack and injure Mr. Bell was an Iranian manufactured/supplied Katyusha Rockets provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1071. As a result of the attack, Michael James Bell suffered a TBI, headaches and

PTSD.

1072. Michael James Bell received extensive medical treatment through the VA where he continues to treat for his injuries.

1073. As a result of the April 13, 2008 Terrorist Attack, and the injuries he suffered, Michael James Bell has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 57. THE APRIL 7, 2008 ATTACK – GREEN ZONE, AT PX ACROSS FROM US EMBASSY, BAGHDAD

### A. PLAINTIFF CHARLES FOSTER HARMON

1074. Plaintiff Charles Foster Harmon is a citizen of the United States and domiciled in the State of Texas.

1075. On April 7, 2008, Charles Foster Harmon, age 44, was serving in the U.S. military in Iraq.

1076. Mr. Harmon was hit with a mortar while in the Green Zone at the PX, across from the old US Embassy.

1077. The weapon used to attack and injure Mr. Harmon was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1078. As a result of the attack, all of the ligaments in Charles Foster Harmon's left leg were severed, resulting in complex regional pain syndrome. He has also been diagnosed with PTSD.

1079. Charles Foster Harmon received extensive medical treatment. He has endured multiple surgeries at Memorial Hermann Hospital in the Woodlands, Texas and Houston Bone

and Joint Clinic in Houston, Texas. He still seeks treatment for complex regional pain syndrome.

1080. As a result of the April 7, 2008 Terrorist Attack, and the injuries he suffered, Charles Foster Harmon has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 58. THE APRIL 3, 2008 ATTACK –ROUTE CAT, SADR CITY, BAGHDAD

### A. PLAINTIFF GREGORY JOSEPH REGAN, JR.

1081. Plaintiff Gregory Joseph Regan, Jr. is a citizen of the United States and domiciled in the State of Illinois.

1082. On April 3, 2008, Gregory Joseph Regan, Jr., age 20, was serving in the U.S. military in Iraq.

1083. Mr. Regan was with his platoon on Route Cat in Sadr City, Baghdad, Iraq when an EFP hit the right side of their vehicle. Upon regaining consciousness, Mr. Regan noticed the unit was taking on small arms fire and RPGs.

1084. The weapons used to attack and injure Mr. Regan were Iranian manufactured/supplied EFP, small arms fire and RPGs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1085. As a result of the attack, Gregory Joseph Regan, Jr. suffered a traumatic brain injury, herniated discs in his back and two spinal fractures. He has received a diagnosis of PTSD.

1086. Gregory Joseph Regan, Jr. received extensive medical treatment. He underwent surgery upon his return to the United States at Fort Walton Beach Medical Center

in Florida where he continues to receive treatment.

1087. As a result of the April 3, 2008 Terrorist Attack, and the injuries he suffered, Gregory Joseph Regan, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 59. THE APRIL 3, 2008 ATTACK – WEST RASHID NEIGHBORHOOD, ROUTE RAIDERS, OFF ROUTE JACKSON, BAGHDAD

### A. PLAINTIFF DESMOND LEVAR ANTHONY

1088. Plaintiff Desmond Levar Anthony is a citizen of the United States and domiciled in the State of Washington.

1089. On April 3, 2008, Desmond Levar Anthony, age 30, was serving in the U.S. military in Iraq.

1090. Mr. Anthony was on patrol with his unit in the West Rashid Neighborhood in Baghdad, Iraq, on Route Raiders, off of Route Jackson when an EFP hit his Bradley Fighting Vehicle.

1091. The weapon used to attack and injure Mr. Anthony was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1092. As a result of the attack, Desmond Levar Anthony suffered a concussion, hearing loss and smoke damage. He also received a traumatic brain injury, tinnitus, and a diagnosis of PTSD and depression.

1093. Desmond Levar Anthony received extensive medical treatment. He was treated at the scene of the attack and transported to the combat support hospital in Baghdad. Upon his return to the United States, he has received medical care at Fort Riley Medical Hospital,

Madigan Hospital, American Lake Veterans Hospital and the Veterans Hospital in Seattle, all in Washington state.

1094. As a result of the April 3, 2008 Terrorist Attack, and the injuries he suffered, Desmond Levar Anthony has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 60. THE APRIL 2, 2008 ATTACK – BAQUBAH

### A. PLAINTIFFS THE SENE PE'A POLU FAMILY

1095. Plaintiff Sene Pe'a Polu is a citizen of the United States and domiciled in the State of Washington.

1096. On April 2, 2008, Sene Pe'a Polu, age 43, was serving in the U.S. military at FOB Warhorse in Baqubah, Iraq.

1097. Mr. Polu was on a mission clearing the route for convoys searching for Improvised Explosive Devices ("IED") on foot with his unit near Baqubah, Iraq, when his platoon's local national translator stepped on a large IED. The blast hole measured 5 feet in diameter and 2 feet deep, and was consistent with a projectile between 130 mm and 155 mm. The interpreter was standing next to him and was killed instantly. Mr. Polu was knocked unconscious. He suffered severe wounds to the right side of his head and face, and a damaged right eardrum. His right side forearm had severe injuries from the blast, including nerve and skin/bone damage requiring reconstructive surgery and skin grafts. He lost parts of his right pinky and right index fingers. His left wrist was broken and a plate had to be placed in it. He had an open wound from the right side of his stomach to his groin. His right hip, right thigh, and left thigh have scar tissue due to shrapnel. His left ankle was broken and a piece of bone broke off.

1098. The weapon used to attack and injure Mr. Polu was an Iranian manufactured or supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1099. As a result of the attack, Sene Pe'a Polu suffered a Traumatic Brain Injury ("TBI"), and continues to suffer from Post-Traumatic Stress Disorder ("PTSD"), sleep apnea, and short term memory loss.

1100. Sene Pe'a Polu received extensive medical treatment for his injuries at Walter Reed National Military Medical Center, Fort Lewis American Lake VA Medical Center, and Seattle VA Medical Center. He has had numerous surgeries and reconstructive surgeries as a result of his injuries. He continues to be treated and have surgeries from his injuries.

1101. As a result of the April 2, 2008 Terrorist Attack, and the injuries he suffered, Sene Pe'a Polu has past and future noneconomic damages, including constant and severe physical and mental pain and suffering and loss of enjoyment of life, permanent disfigurement, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1102. Plaintiff Rosalind Kemukisa Polu is a citizen of the United States and domiciled in the State of Washington. She is the wife of Sene Pe'a Polu.

1103. As a result of the April 2, 2008 Terrorist Attack, and the injuries suffered by Sene Pe'a Polu, Plaintiff Rosiland Kemukisa Polu has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 61. THE APRIL 1, 2008 ATTACK – FALLUJAH

### A. PLAINTIFFS THE DEVIN JAY MEURER FAMILY

1104. Plaintiff Devin Jay Meurer is a citizen of the United States and domiciled in the

State of Texas.

1105. On April 1, 2008, Devin Jay Meurer, age 20, was serving in the U.S. military in Iraq.

1106. Mr. Meurer and his fellow servicemen were in a convoy in Fallujah, Iraq heading to Sadr City, Iraq when the Humvee he was riding in was struck by an improvised explosive device.

1107. The weapon used to attack and injure Mr. Meurer was an Iranian manufactured/supplied improvised explosive device provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1108. As a result of the attack, Devin Jay Meurer suffered severe burns to his left hand and arm, back injuries, PTSD, and a traumatic brain injury.

1109. Devin Jay Meurer received extensive medical treatment at TQ Surgical in Al-Anbar Province, Baghdad Emergency, Wounded Warrior, LeJeune Naval Hospital Camp, South General San Antonio, Camp Hope, and the San Antonio VA Clinic.

1110. As a result of the April 1, 2008 Terrorist Attack, and the injuries he suffered, Devin Jay Meurer has past and future noneconomic damages, including severe physical and mental pain and suffering, loss of enjoyment of life, and disfigurement, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1111. Plaintiff Donald J. Meurer is a citizen of the United States and domiciled in the State of Mississippi. He is the father of Devin Jay Meurer.

1112. Plaintiff Dustin J. Meurer is a citizen of the United States and domiciled in the State of Mississippi. He is the brother of Devin Jay Meurer.

1113. Plaintiff Marnie Meurer is a citizen of the United States and domiciled in the

State of Mississippi. She is the stepmother of Devin Jay Meurer.

1114. As a result of the April 1, 2008 Terrorist Attack, and the injuries suffered by Devin Jay Meurer, Plaintiff Donald J. Meurer, Dustin J. Meurer and Marnie Meurer have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 62. THE APRIL 1, 2008 ATTACK – TIKRIT

### A. PLAINTIFFS THE CHRISTOPHER NEIL SHELL FAMILY

1115. Plaintiff Christopher Neil Shell is a citizen of the United States and domiciled in the State of Colorado.

1116. On April 1, 2008, Christopher Neil Shell, age 23, was serving in the U.S. military in Iraq.

1117. Mr. Shell was performing route clearance in Tikrit, Iraq when his vehicle was struck by an improvised explosive device.

1118. The weapon used to attack and injure Mr. Shell was an Iranian manufactured/supplied improvised explosive device provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1119. As a result of the attack, Christopher Neil Shell suffered a traumatic brain injury and post-traumatic stress disorder.

1120. Christopher Neil Shell received extensive medical treatment at Bassett Army Community Hospital and the Salem Veterans Affairs Medical Center where he is still being treated.

1121. As a result of the April 1, 2008 Terrorist Attack, and the injuries he suffered, Christopher Neil Shell has past and future noneconomic damages, including severe physical

and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1122. Plaintiff Lisa Ann Shell is a citizen of the United States and domiciled in the State of Colorado. She is the mother of Christopher Neil Shell.

1123. Plaintiff David Lee Shell is a citizen of the United States and domiciled in the State of Virginia. He is the brother of Christopher Neil Shell.

1124. Plaintiff Curtis L. Shell is a citizen of the United States and domiciled in the State of Virginia. He is the brother of Christopher Neil Shell.

1125. As a result of the April 1, 2008 Terrorist Attack, and the injuries suffered by Christopher Neil Shell, Plaintiffs Lisa Ann Shell, David Lee Shell, and Curtis L. Shell have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 63. THE MARCH 28, 2008 ATTACK – SOUTH BAGHDAD

### A. PLAINTIFFS THE CHARLES F. WADE, JR. FAMILY

1126. Plaintiff Charles F. Wade, Jr. is a citizen of the United States and domiciled in the State of South Carolina.

1127. On March 28, 2008, Charles F. Wade, Jr., age 30, was serving in the U.S. military in Iraq.

1128. Mr. Wade was on patrol with his unit exiting Route Florida in South Baghdad when his vehicle was struck by an EFP.

1129. The weapon used to attack and injure Mr. Wade was an Iranian manufactured/supplied Explosively Formed Penetrator provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1130. As a result of the attack, Charles F. Wade, Jr. suffered injuries that including, but are not limited to, hearing loss, TBI, severe headaches and PTSD.

1131. Charles F. Wade, Jr. received extensive medical treatment at Irwin Army Hospital, Bassett Army Hospital, Moncrief Army Hospital, 120th Replacement Center, and various other Veterans Medical Centers and private medical providers.

1132. As a result of the March 28, 2008 Terrorist Attack, and the injuries he suffered, Charles F. Wade, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1133. Plaintiff Robyn Wade is a citizen of the United States and domiciled in the State of South Carolina. She is the wife of Charles F. Wade, Jr.

1134. Plaintiff R.W., a minor, represented by his legal guardians Charles F. Wade, Jr. and Robyn Wade, is a citizen of the United States and domiciled in the State of South Carolina. He is the son of Charles F. Wade, Jr. and Robyn Wade.

1135. Plaintiff H.W., a minor, represented by her legal guardians Charles F. Wade, Jr. and Robyn Wade, is a citizen of the United States and domiciled in the State of South Carolina. She is the daughter of Charles F. Wade, Jr. and Robyn Wade.

1136. Plaintiff C.W., a minor, represented by his legal guardians Charles F. Wade, Jr. and Robyn Wade, is a citizen of the United States and domiciled in the State of South Carolina. He is the son of Charles F. Wade, Jr. and Robyn Wade.

1137. As a result of the March 28, 2008 Terrorist Attack, and the injuries suffered by Charles F. Wade, Jr., Plaintiffs Robyn Wade, R.W., H.W., and C.W. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and

suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 64. THE MARCH 28, 2008 ATTACK – SADR CITY

### A. PLAINTIFFS THE LEROY ESCO JR. FAMILY

1138. Plaintiff Leroy Esco Jr. is a citizen of the United States and domiciled in the State of Arizona.

1139. On March 28, 2008, Leroy Esco Jr., age 28, was serving in the U.S. military in Iraq.

1140. Mr. Esco was on convoy with his unit in Sadr City when his vehicle was hit by an EFP.

1141. The weapon used to attack and injure Mr. Esco was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1142. As a result of the attack, Leroy Esco, Jr. suffered injuries to his foot and thigh, shrapnel injuries, a TBI, hearing loss, PTSD and anxiety.

1143. Leroy Esco, Jr. received extensive medical treatment immediately following the attack and medevac'd to Germany for surgery then transferred to Fort Stewart for further treatment. He continues treatment with the VA.

1144. As a result of the March 28, 2008 Terrorist Attack, and the injuries he suffered, Leroy Esco, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1145. Plaintiff Taryn Esco is a citizen of the United States and domiciled in the State of Arizona. She is the wife of Leroy Esco, Jr.

1146. Plaintiff Jade Lee-Esco is a citizen of the United States and domiciled in the State of Arizona. She is the daughter of Leroy Esco, Jr.

1147. Plaintiff Madison Roth is a citizen of the United States and domiciled in the State of Arizona. She is the daughter of Leroy Esco, Jr.

1148. Plaintiff A.P. a minor, represented by her legal guardians Leroy Esco, Jr. and Taryn Esco, is a citizen of the United States and domiciled in the State of Arizona. She is the daughter of Leroy Esco, Jr. and Taryn Esco.

1149. Plaintiff K.P. a minor, represented by her legal guardians Leroy Esco and Taryn Esco, is a citizen of the United States and domiciled in the State of Arizona. She is the daughter of Leroy Esco, Jr. and Taryn Esco.

1150. Plaintiff L.E. a minor, represented by her legal guardians Leroy Esco and Taryn Esco, is a citizen of the United States and domiciled in the State of Arizona. He is the son of Leroy Esco, Jr. and Taryn Esco.

1151. As a result of the March 28, 2008 Terrorist Attack, and the injuries suffered by Leroy Esco, Jr., Plaintiffs Taryn Esco, Jade Lee-Esco, Madison Roth, A.P. a minor, K.P. a minor, and L.E. a minor have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 65. THE MARCH 27, 2008 ATTACK – SADR CITY

### A. PLAINTIFF HENRY J. BREWER, III

1152. Plaintiff Henry J. Brewer, III is a citizen of the United States and domiciled in the State of Georgia.

1153. On March 27, 2008, Henry J. Brewer, III, age 24, was serving in the U.S. military in Iraq.

1154. Mr. Brewer was on patrol with his unit in Sadr City in Baghdad when unit was struck by small arms fire.

1155. The weapon used to attack and injure Mr. Brewer was an Iranian manufactured/supplied small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1156. As a result of the attack, Henry J. Brewer, III suffered injuries including, but not limited to, a torn ACL and Post-Traumatic Stress Disorder ("PTSD").

1157. Henry J. Brewer, III received extensive medical treatment various Veterans Medical Centers and private practices.

1158. As a result of the March 27, 2008 Terrorist Attack, and the injuries he suffered, Henry J. Brewer, III has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 66. THE MARCH 15, 2008 ATTACK - BAGHDAD

### A. PLAINTIFFS THE WILIAM D. O'BRIEN FAMILY

1159. Plaintiff William D. O'Brien was a citizen of the United States and domiciled in the State of Texas at the time of his death.

1160. On March 15, 2008, William D. O'Brien, age 19, was serving in the U.S. military in Iraq.

1161. Mr. O'Brien was on foot patrol in Baghdad when he was struck by small arms fire.

1162. The weapon used to attack and injure Mr. O'Brien was an Iranian manufactured/supplied small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1163. As a result of the attack, William D. O'Brien suffered injuries including, but not limited to, death.

1164. Mr. O'Brien received extensive medical treatment prior to his death.

1165. As a result of the March 15, 2008 Terrorist Attack, and the injuries and death suffered by William D. O'Brien, Plaintiffs Dawn R. Williamson and John A. O'Brien have experienced, and continue to experience, severe mental anguish, extreme emotional pain and suffering, and loss of William D. O'Brien's society, companionship, comfort, advice and counsel.

1166. Plaintiff Dawn R. Williamson is a citizen of the United States and domiciled in the State of Texas. She is the mother of William D. O'Brien.

1167. Plaintiff John A. O'Brien is a citizen of the United States and domiciled in the State of Texas. He is the brother of William D. O'Brien.

1168. Plaintiff Dawn R. Williamson brings an action individually, and on behalf of the anticipated Estate of William D. O'Brien, and all heirs thereof, as its legal representative.

1169. As a result of the March 15, 2008 Terrorist Attack, and the injuries suffered by and the death of William D. O'Brien, Plaintiffs Dawn R. Williamson and John A. O'Brien have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of William D. O'Brien's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of William D. O'Brien.

## 67. THE MARCH 10, 2008 ATTACK – MANSOUR DISTRICT, BAGHDAD

### A. PLAINTIFFS THE SCOTT A. MCINTOSH FAMILY

1170. Plaintiff Scott A. McIntosh was a citizen of the United States and domiciled in

the State of Texas at the time of his death.

1171. On March 10, 2008, Scott A. McIntosh, age 26, was serving in the U.S. military in Iraq.

1172. Mr. McIntosh was killed when a suicide bomber drove a truck into his patrol in the Mansour District of Baghdad, Iraq.

1173. The weapon used to attack and kill Mr. McIntosh was an Iranian manufactured/supplied SVIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1174. As a result of the attack, Scott A. McIntosh died at the scene of the attack.

1175. As a result of the March 10, 2008 Terrorist Attack, and the injuries he suffered, Scott A. McIntosh has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including lost income, and loss of earning capacity.

1176. Plaintiff Alexander G. McIntosh is a citizen of the United States and domiciled in the State of Texas. He is the father of Scott A. McIntosh.

1177. Plaintiff Gwen C. McIntosh is a citizen of the United States and domiciled in the State of Texas. She is the mother of Scott A. McIntosh.

1178. Plaintiff Eric G. McIntosh is a citizen of the United States and domiciled in the State of Texas. He is the brother of Scott A. McIntosh.

1179. Plaintiff Alexander G. McIntosh brings an action individually, and on behalf of the Estate of Scott A. McIntosh, and all heirs thereof, as its legal representative.

1180. As a result of the March 10, 2008 Terrorist Attack, and the injuries suffered by and death of Scott A. McIntosh, Plaintiffs Alexander G. McIntosh, Gwen C. McIntosh and

Eric G. McIntosh have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Scott A. McIntosh society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Scott A. McIntosh.

## 68. THE MARCH 8, 2008 ATTACK - SAKHRAH VILLAGE, KIRKUK

### A. PLAINTIFF WILLIAM MATTHEW PFEIFER

1181. Plaintiff William Matthew Pfeifer is a citizen of the United States and domiciled in the State of Arizona.

1182. On March 8, 2008, William Matthew Pfeifer, age 27, was serving in the U.S. military in Iraq.

1183. On March 8, 2008, Mr. Pfeifer was performing his duties as driver in a Humvee in a military convoy of ten similar vehicles. As Mr. Pfeifer crossed a culvert, the vehicle immediately behind him triggered a buried Improvised Explosive Device (IED) which detonated, destroying the second vehicle completely. Mr. Pfeifer's head was thrown forward against the window as a result of the blast.

1184. The weapon used to attack and injure William Matthew Pfeifer was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1185. As a result of the March 8, 2008 Terrorist Attack, Mr. Pfeifer sustained significant injuries due to the IED explosion. Mr. Pfeifer suffered a concussion, traumatic brain injury, and shrapnel damage to his arm. In addition, Mr. Pfeifer has psychological injuries that include Post Traumatic Stress Disorder ("PTSD"), anxiety, and severe depression.

1186. Mr. Pfeifer has received medical treatment for his injuries. He was initially treated upon return to his station at Forward Operating Base Warrior, his care was continued at Schofield Barracks in Hawaii where he was treated for aggravated PTSD. He continues therapy at present time through the Prescott Veterans Center. He will require further treatment and care.

1187. As a result of the March 8, 2008 Terrorist Attack and the injuries he suffered, William Matthew Pfeifer has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 69. THE MARCH 7, 2008 ATTACK - BAGHDAD

### A. PLAINTIFFS THE DEREK PAUL HADFIELD FAMILY

1188. Plaintiff Derek Paul Hadfield is a citizen of the United States and domiciled in the State of Ohio.

1189. On March 7, 2008, Mr. Derek Hadfield, age 20, was serving in the U.S. military in Iraq.

1190. Mr. Derek Hadfield's unit was coming from FOB Falcon when he had noticed a police bunker in the middle of a traffic circle but there were no police or other residents around. When they came around the circle, he noticed a truck in the middle of the road. He notified the vehicle commander and waited for instructions. He readied his 50 caliber weapon and received authorization to engage. As he prepared to engage, two IEDs detonated, which were believed to be EFPs. Mr. Hadfield was knocked unconscious. When he came to, he had ringing in his ears. He had been hit with shrapnel above his left shoulder, knee, arm and neck.

1191. The weapons used to attack and injure Mr. Hadfield were Iranian-manufactured EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives

in Iraq.

1192. As a result of the March 7, 2008 Terrorist Attack, Mr. Hadfield sustained significant injuries. Mr. Hadfield has shrapnel injuries to his left shoulder with retained shrapnel and tendonitis, shrapnel injuries to his leg above the knee and the left aspect of his back and neck. Mr. Hadfield was also diagnosed with a TBI after the attack and bilateral tinnitus. He suffers migraine headaches. Along with the physical injuries he sustained, Mr. Hadfield suffered from PTSD, anxiety and depression.

1193. Mr. Hadfield has received extensive medical treatment for his injuries sustained in the Terrorist Attack. Following the attack, Mr. Hadfield was treated at Landstuhl Regional Medical center for injuries he sustained. Once arriving back to the United States he would receive treatment at the VA Healthcare Center, Ft. Knox Kentucky. Mr. Hadfield continues to receive treatment today at the Wood County Community Based Outpatient Clinic. Mr. Hadfield received surgeries in 2008, 2011, and 2012 to remove the shrapnel from his neck and arm.

1194. As a result of the March 7, 2008 Terrorist Attack, and the injuries he suffered, Mr. Hadfield has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1195. Plaintiff Ashley Nicole Hadfield is a citizen of the United States and is domiciled in the State of West Virginia. She is the ex-wife of Derek Hadfield, and was married to him at the time of the March 7, 2008 Terrorist Attack.

1196. Plaintiff Robert Walter Hadfield II is a citizen of the United States and is domiciled in the State of Ohio. He is the father of Derek Hadfield.

1197. As a result of the March 7, 2008 Terrorist Attack and the injuries suffered by Derek Hadfield, plaintiffs Ashley Nicole Hadfield and Robert Walter Hadfield II have incurred past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and economic damages, both past and future, including loss of services.

## 70. THE MARCH 5, 2008 ATTACK –COB ADDER, TALLIL

### A. PLAINTIFF JOHN PATRICK HARRIS

1198. Plaintiff John Patrick Harris is a citizen of the United States and domiciled in the State of Texas.

1199. On March 5, 2008, John Patrick Harris, age 40, was serving in the U.S. military in Iraq.

1200. Mr. Harris emerged from his containerized housing unit (CHU) on Base Adder in Tallil, Iraq when an incoming rocket landed 30-50 feet away.

1201. The weapon used to attack and injure Mr. Harris was an Iranian manufactured/supplied rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1202. As a result of the attack, John Patrick Harris suffered a traumatic brain injury, hearing loss, and memory loss. He has received a diagnosis of PTSD and anxiety.

1203. John Patrick Harris received extensive medical treatment. He was treated at the scene of the attack and then further assessed at the ER post. He began receiving treatment upon his return to the United States from the Overton Brooks Veterans Administration Medical Center in Shreveport, Louisiana. He also receives treatment from the Veterans Affairs Clinic in Texarkana and El Paso Veterans Administration Health Care System in El Paso, both in Texas.

1204. As a result of the March 5, 2008 Terrorist Attack, and the injuries he suffered, John Patrick Harris has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 71. FEBRUARY 25, 2008 – TIKRIT

#### A. PLAINTIFFS THE RICKY PATA FAMILY

1205. Plaintiff Ricky Pata is a citizen of the United States and is domiciled in the State of Kansas.

1206. On February 25, 2008, Ricky Pata, age 26, was serving in the U.S. military in Iraq.

1207. Mr. Pata was on a mission as the driver of a Humvee in a convoy of 6-8 military vehicles. As the convoy was on Route Hershey, a sand storm developed. As soon as the storm cleared, an IED went off near Mr. Pata's Humvee.

1208. The weapon used to attack and injure Mr. Pata was an Iranian manufactured IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1209. As a result of the attack, Ricky Pata suffered significant injuries. The blast from the explosion caused him to suffer from tinnitus and glaucoma.

1210. Ricky Pata received medical treatment at the Robert J. Dole VA Medical Center in Kansas for tinnitus and glaucoma. In addition to his physical injuries, Pata also suffers from PTSD, depression and insomnia. He continues to receive treatment for his physical and psychological injuries.

1211. As a result of the March 2008 Terrorist Attack, and the injuries he suffered, Ricky Pata has past and future noneconomic damages, including severe physical and mental

pain and suffering, loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1212. Plaintiff R. P., a minor, represented by his legal guardian Ricky Pata, is a citizen of the United States and domiciled in the State of Kansas. He is the son of Ricky Pata.

1213. Plaintiff R. P., a minor, represented by his legal guardian Ricky Pata, is a citizen of the United States and domiciled in the State of Kansas. He is the son of Ricky Pata.

1214. As a result of the March 2008 Terrorist Attack, and the injuries suffered by Ricky Pata, Plaintiff's sons, R. P. and R. P. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 72. THE MARCH 19, 2008 ATTACK – BAGHDAD

### A. PLAINTIFFS THE DAVID ROBERT BAXTER JR. FAMILY

1215. Plaintiff David Robert Baxter, Jr. is a citizen of the United States and domiciled in the State of Oregon.

1216. On March 19, 2008, David Robert Baxter, Jr., age 22, was serving in the U.S. military in Iraq.

1217. Mr. Baxter was with his unit providing security to contractors when they were attacked by a complex ambush of rockets and machine gun fire and a light armor piercing weapon hit his Humvee.

1218. The weapons used to attack and injure Mr. Baxter were Iranian manufactured/supplied rockets, light armor piercing weapons and machine guns provided by Iran and/or its agents to Iranian-funded and Iranian trained terror operatives in Iraq.

1219. As a result of the March 19, 2008 Terrorist Attack, David Robert Baxter, Jr. sustained significant injuries including a back injury, tinnitus, a TBI and PTSD.

1220. David Robert Baxter, Jr. received initial medical treatment for his injuries at LZ Hurria in Kadamiyaah, Iraq. He received subsequent treatment at the combat stress unit in FOB Taji, Iraq, William Beaumont Hospital in El Paso Texas, and the Palo Alto VA Clinic.

1221. As a result of the March 19, 2008 Terrorist Attack, and the injuries he suffered, David Robert Baxter, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, his past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1222. Plaintiff Nicole Michelle Baxter is a citizen of the United States and is domiciled in the state of Oregon. She is the spouse of David Robert Baxter, Jr.

1223. Plaintiff David R. Baxter, Sr. is a citizen of the United States and is domiciled in the State of California. He is the father of David Robert Baxter, Jr.

1224. As a result of the March 19, 2008 Terrorist Attack, and the injuries suffered by David Robert Baxter, Jr., Plaintiffs Nicole Michelle Baxter and David R. Baxter, Sr. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 73. THE FEBRUARY 17, 2008 ATTACK – SENEIA TOWN

### A. PLAINTIFF JASON R. SMITH

1225. Plaintiff Jason R. Smith is a citizen of the United States and domiciled in the State of Virginia.

1226. On February 17, 2008, Jason R. Smith, age 28, was serving in the U.S. military in Iraq.

1227. Mr. Smith and his unit were on dismounted patrol in Seneia town going door-to-door performing a census when he was shot in the left leg by a sniper rifle.

1228. The weapon used to attack and injure Mr. Smith was an Iranian manufactured/supplied sniper rifle provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1229. As a result of the February 17, 2008 Terrorist Attack, Jason R. Smith suffered significant injuries including serious injuries to his left leg, loss of blood, loss of consciousness, damage to his left knee and left ankle, headaches, ringing in his ears, tinnitus, PTSD, depression, anxiety, anger issues, nightmares and night terrors.

1230. Jason R. Smith received extensive medical treatment, including surgery on his left knee and ankle, at FOB McHenry, Iraq; Landstuhl Regional Medical Center, Landstuhl, Germany; Andrews Air Force Base Hospital, Joint Base Andrews, Maryland; Blanchfield Army Community Hospital, Fort Campbell, Kentucky; VA Hospital, Nashville, Tennessee; Hunter Holmes McGuire VA Hospital in Richmond, Virginia; as well as Charlotte Primary Care, Charlotte Court House, Virginia where he underwent surgeries on his left knee and ankle.

1231. As a result of the February 17, 2008 Terrorist Attack, and the injuries he suffered, Jason R. Smith has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 74. THE FEBRUARY 5, 2008 ATTACK – BALAD

### A. PLAINTIFF KRISTOPHER SIEMON

1232. Plaintiff Kristopher Siemon is a citizen of the United States and domiciled in the State of Washington.

1233. On February 5, 2008, Kristopher Siemon, age 21, was serving in the U.S. military in Iraq.

1234. Mr. Siemon was traveling on Route Dover in the Balad area when his vehicle hit an IED and was engaged by small arms fire.

1235. The weapons used to attack and injure Mr. Siemon were an Iranian manufactured/supplied IED and Small Arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1236. As a result of the attack, Kristopher Siemon suffered shrapnel wounds, spinal impact injury, TBI and PTSD.

1237. Kristopher Siemon received extensive medical treatment at VA Puget Sound Health Care Clinic, Seattle, Washington.

1238. As a result of the February 5, 2008 Terrorist Attack, and the injuries he suffered, Kristopher Siemon has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 75. JANUARY 28, 2008 – SOMER, NEIGHBORHOOD OF SOUTHEASTERN MOSUL

#### A. PLAINTIFFS THE BRANDON ABBOTT MEYER FAMILY

1239. Plaintiff Brandon Abbott Meyer was a citizen of the United States and domiciled in the State of California at the time of his death.

1240. On January 28, 2008, Mr. Meyer, age 20, was serving in the U.S. military in Iraq.

1241. Mr. Meyer was on a mission traveling in a 5 vehicle convoy searching for the second most wanted terrorist. Mr. Meyer's vehicle was struck by a remotely detonated IED, killing everyone in Meyer's unit, including Meyer.

1242. The weapon used to attack and kill Mr. Meyer was an Iranian

manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1243. Plaintiff Eugenia Marie Meyer is a citizen of the United States and domiciled in the State of California. She is the mother of Brandon Abbott Meyer and brings an action individually and on behalf of the anticipated Estate of Brandon Abbott Meyer, and all heirs thereof, as its legal representative.

1244. Plaintiff Terry Lynn Meyer, is a citizen of the United States and domiciled in the state of California. He is the father of Brandon Abbott Meyer.

1245. Plaintiff Desiree Meyer–Roder, is a citizen of the United States and domiciled in the State of Texas. She is the sister of Brandon Abbott Meyer.

1246. As a result of the January 28, 2008 attack, and the injuries suffered by and the death of Brandon Abbott Meyer, Plaintiffs Eugenia Marie Meyer, Terry Lynn Meyer, and Desiree Meyer-Roder have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Brandon Abbott Meyer's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earning, income, and net accumulation to the estate of Brandon Abbott Meyer.

## 76. THE JANUARY 28, 2008 ATTACK - NASIRIYAH

### A. PLAINTIFF DAVID R. WENZEL

1247. Plaintiff David R. Wenzel is a citizen of the United States and domiciled in the State of California.

1248. On January 28, 2008, David R. Wenzel, age 28, was serving in the U.S. military in Iraq.

1249. Mr. Wenzel was on patrol with his unit on Route Tampa, on the outskirts of Nasiriyah, Iraq, when his vehicle was struck by an EFP.

1250. The weapon used to attack and injure Mr. Wenzel was an Iranian manufactured/supplied Explosively Formed Penetrator ("EFP") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1251. As a result of the attack, David R. Wenzel suffered injuries that include, but are not limited to, a concussion, a Traumatic Brain Injury ("TBI"), a deviated septum, chronic sinusitis as a result of broken facial bones, headaches, hearing loss, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

1252. David Wenzel received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

1253. As a result of the January 28, 2008 Terrorist Attack, and the injuries he suffered, David R. Wenzel has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 77. THE JANUARY 21, 2008 ATTACK - SAMARRA

#### A. PLAINTIFFS THE CHARLES LEE STORLIE FAMILY

1254. Plaintiff Charles Lee Storlie is a citizen of the United States and domiciled in the State of Minnesota.

1255. On January 21, 2008, Charles Lee Storlie, age 40, was serving as a civilian contractor to the U.S. military in Iraq, employed by Military Professional Resources International.

1256. Mr. Storlie was on patrol with his unit outside of Samarra at a marketplace when his unit was attacked by a suicide bomber.

1257. The weapon used to attack and injure Mr. Storlie was an Iranian

manufactured/supplied suicide bomber vest provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1258. As a result of the attack, Charles Lee Storlie suffered a TBI, a back injury, PTSD and tinnitus.

1259. Charles Lee Storlie received, and will continue to receive, extensive medical treatment for his TBI, back injury, PTSD and anxiety.

1260. As a result of the January 21, 2008 Terrorist Attack, and the injuries he suffered, Charles Lee Storlie has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1261. Plaintiff Marian Leigh Tise is a citizen of the United States and domiciled in the State of Minnesota. She is the mother of Charles Lee Storlie.

1262. Plaintiffs Chadwick William Storlie, Richard Nels Storlie and Jordan Antoniazzo Madonna Jonju are all citizens of the United States and domiciled in the State of Minnesota and are all Charles Lee Storlie's siblings.

1263. As a result of the January 21, 2008 Terrorist Attack, and the injuries suffered by Charles Lee Storlie, Plaintiffs Marian Leigh Tise, Chadwick William Storlie, Richard Nels Storlie and Jordan Antoniazzo Madonna Jonju all have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 78. THE FEBRUARY 24, 2008 ATTACK – UMM QASR

### A. PLAINTIFF OLUWAFEMI IJITI

1264. Plaintiff Oluwafemi Ijiti is a permanent resident of the United States, and at the time of the attack was member of the United States Armed Forces. As a part of his

commitment to becoming a member of the United States Armed Forces, Oluwafemi Ijiti was required to take an oath to defend and uphold the Constitution of the United States, and swears permanent allegiance to the United States. He is domiciled in the State of Maryland.

1265. On February 24, 2008, Oluwafemi Ijiti, age 29, was serving in Iraq.

1266. Mr. Ijiti was in his sleeping quarters on Camp Bucca when the camp was attacked by rockets. A rocket hit the sleeping quarters next to his quarters knocking him off his feet.

1267. The weapon used to attack and injure Mr. Ijiti was an Iranian manufactured/supplied rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1268. As a result of the attack, Mr. Ijiti suffered shrapnel wounds to his lower back and right arm, PTSD, tinnitus, anxiety attacks, depression and lower back pain.

1269. Mr. Ijiti received extensive medical treatment by the Camp Bucca medic and then later by the Washington DC VA Medical Center, Washington, DC.

1270. As a result of the February 24, 2008 Terrorist Attack, and the injuries he suffered, Oluwafemi Ijiti has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 79. THE DECEMBER 16, 2007 ATTACK– BALAD

### A. PLAINTIFFS THE SEAN T. SCRUGGS FAMILY

1271. Plaintiff Sean T. Scruggs is a citizen of the United States and domiciled in the State of Nevada.

1272. On December 16, 2007, Sean T. Scruggs, age 36, was serving in the U.S. military in Iraq.

1273. Mr. Scruggs was on Balad Airbase when he came under 120 mm mortar attack which impacted approximately 60 to 70 feet from his position.

1274. The weapons used to attack and injure Mr. Scruggs were Iranian-manufactured/supplied mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1275. As a result of the attack, Mr. Scruggs, sustained significant injuries to his lower back, PTSD, TBI, and developed ringing in his ears as a result of concussive blast forces.

1276. Sean T. Scruggs has undergone medical care and treatment for his injuries sustained in this attack at USAF Hospital in Bitburg, Germany; Military Medical Center, Nellis Air Force Base, Nevada; physical therapy treatment by Dr. Marguerite Lenhardt, 52nd Medical Group, Spangdahlem, Germany; Montevista Hospital, Las Vegas, Nevada; Nellis Mental Health Clinic, Nellis Air Force Base, Nevada; and Las Vegas VA Medical Center, North Las Vegas, Nevada. He continues to receive ongoing medical care and treatment.

1277. As a result of the December 16, 2007 Terrorist Attack, and the injuries he suffered, Sean T. Scruggs has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1278. Plaintiff, John C. Scruggs, is a citizen of the United States and is domicile in the state of California. He is the father of Sean T. Scruggs.

1279. Plaintiff, Cheyenne R. Scruggs, is a citizen of the United States and is domicile in the state of Oregon. She is the daughter of Sean T. Scruggs.

1280. Plaintiff, Cherokee R. Scruggs, is a citizen of the United States and is domicile in the state of California. She is the daughter of Sean T. Scruggs.

1281. Plaintiff, Gail Fryer, is a citizen of the United States and is domiciled in the state of California. She is the sister of Sean T. Scruggs.

1282. Plaintiff, Sandra Brice, is a citizen of the United States and is domiciled in the state of California. She is the sister of Sean T. Scruggs.

1283. As a result of the December 16, 2007 Terrorist Attack, and the injuries suffered by Sean T. Scruggs, Plaintiffs, John C. Scruggs, Cheyenne R. Scruggs, Cherokee R. Scruggs, Gail Fryer, and Sandra Brice have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 80. THE DECEMBER 13, 2007 ATTACK - BAGHDAD

### A. PLAINTIFFS THE DONALD MARTIN FAMILY

1284. Plaintiff Donald Martin is a citizen of the United States and domiciled in the State of Alabama.

1285. On December 13, 2007, Donald Martin, age 26, was serving in the U.S. military in Iraq.

1286. Mr. Martin was in a convoy with his unit between COB Cyclone and FOB Falcon in Baghdad when his vehicle was struck by an EFP.

1287. The weapon used to attack and injure Mr. Martin was an Iranian manufactured/supplied Explosively Formed Penetrator ("EFP") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1288. As a result of the attack, Donald Martin suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), concussion, memory loss, a broken shoulder scapula bone, a right elbow fracture, nerve damage in the right arm and hand, degenerative joint disease of the back, limited range of motion of the right arm, Post-Traumatic Stress

Disorder ("PTSD"), anxiety, and depression.

1289. Donald Martin received medical treatment, including past and ongoing care for these injuries, at Baghdad Cache Hospital, Landstuhl Regional Medical Center, Walter Reed Medical Center and several Veterans Medical Centers, military hospitals and private hospitals.

1290. As a result of the December 13, 2007 Terrorist Attack, and the injuries he suffered, Donald Martin has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1291. Plaintiff Bonnie Osmer is a citizen of the United States and domiciled in the State of Alabama. She is the mother of Donald Martin.

1292. Plaintiff Cory Osmer is a citizen of the United States and domiciled in the State of Alabama. He is the brother of Donald Martin.

1293. As a result of the December 13, 2007 Terrorist Attack, and the injuries suffered by Donald Martin, Plaintiffs Bonnie Osmer and Cory Osmer have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 81. DECEMBER 9, 2007 ATTACK – ROUTE TAMPA, FOB KALSU

### A. PLAINTIFF KENDRICK LEE DIXON

1294. Plaintiff Kendrick Lee Dixon is a citizen of the United States and domiciled in the State of Georgia.

1295. On December 9, 2007, Kendrick Lee Dixon, age 27, was serving in the U.S. military in Iraq.

1296. On the evening of December 9, 2007, Mr. Dixon was driving a Humvee on route clearance patrol on Route Tampa, when an IED detonated striking his vehicle on the driver's side. Mr. Dixon was knocked unconscious in the blast. When he woke, he found the soldier who was in the gunner position bleeding in his arms. Mr. Dixon was evacuated back to FOB Kalsu.

1297. The weapons used to attack and injure Mr. Dixon were Iranian manufactured or supplied IED, provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1298. As a result of the attack, Kendrick Lee Dixon suffered a TBI and suffers from headaches. He also sustained psychological trauma, which contributed to the development of Post-Traumatic Stress Disorder ("PTSD"), depression, anxiety, and night terror attacks.

1299. Kendrick Lee Dixon received extensive medical treatment. He was diagnosed with and treated for a TBI at FOB Kalsu. Since returning home, Mr. Dixon has received treatment for his TBI and PTSD at Ralph H. Johnson VA Medical Center and Hinesville VA Outpatient Clinic.

1300. As a result of the December 9, 2007 Terrorist Attack, and the injuries he suffered, Kendrick Lee Dixon has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 82. THE DECEMBER 5, 2007 ATTACK – THE BARITZ NEIGHBORHOOD OF BAQUBAH

### A. PLAINTIFFS THE SHAUN D. GARRY FAMILY

1301. Plaintiff Shaun D. Garry is a citizen of the United States and domiciled in the State of Illinois.

1302. On December 5, 2007, Shaun D. Garry, age 29, was serving in the U.S. military in Iraq.

1303. Mr. Garry was on patrol with his unit in the Baritz Neighborhood of Baqubah when his vehicle was struck by an IED.

1304. The weapon used to attack and injure Mr. Garry was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1305. As a result of the attack, Shaun D. Garry suffered injuries that include, but are not limited to, left knee, left shoulder, left ankle, and left arm injuries, spinal stenosis, TBI, tinnitus, and PTSD.

1306. Shaun D. Garry received extensive medical treatment at North Chicago VA Medical Center, Great Lakes Healthcare System Edward Hines VA Medical Center, and other various VA Medical Centers and private medical providers.

1307. As a result of the December 5, 2007 Terrorist Attack, and the injuries he suffered, Shaun D. Garry has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1308. Plaintiff Robert Garry is a citizen of the United States and domiciled in the State of Illinois. He is the father of Shaun D. Garry.

1309. Plaintiff Susan Garry is a citizen of the United States and domiciled in the State of Illinois. She is the mother of Shaun D. Garry.

1310. Plaintiff Patrick Garry is a citizen of the United States and domiciled in the State of Illinois. He is the brother of Shaun D. Garry.

1311. Plaintiff Bridget Garry is a citizen of the United States and domiciled in the State of Illinois. She is the sister of Shaun D. Garry.

1312. Plaintiff Meghan Garry is a citizen of the United States and domiciled in the State of Illinois. She is the sister of Shaun D. Garry.

1313. Plaintiff S.D., a minor, represented by his legal guardians Shaun D. Garry, is a citizen of the United States and domiciled in the State of Illinois. He is the son of Shaun D. Garry.

1314. As a result of the December 5, 2007 Terrorist Attack, and the injuries suffered by Shaun D. Garry, Plaintiffs Robert Garry, Susan Garry, Patrick Garry, Bridget Garry, Meghan Garry, and S.D., a minor, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 83. THE DECEMBER 5, 2007 ATTACK – DIYALA PROVINCE

### A. PLAINTIFF JORDAN KALEB SMITH

1315. Plaintiff Jordan Kaleb Smith is a citizen of the United States and domiciled in the State of Alabama.

1316. On December 5, 2007, Jordan Kaleb Smith, age 19, was serving in the U.S. military in Iraq.

1317. Mr. Smith was traveling in a convoy of five military vehicles in Diyala Province, Iraq when the vehicle he was riding in was struck by an improvised explosive device.

1318. The weapon used to attack and injure Mr. Smith was an Iranian-manufactured/supplied improvised explosive device provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1319. As a result of the attack, Jordan Kaleb Smith sustained significant injuries, including traumatic brain injury, a grade 3 concussion, tinnitus, lower back injury, post-traumatic stress disorder, anxiety, depression, and sleep deprivation.

1320. Jordan Kaleb Smith received extensive medical treatment at the Medical Center at Camp Warhorse, Madigan Hospital at Ft. Louis, the Warrior Transition Unit at Ft. Stewart, and the Yuma, Arizona VA Clinic.

1321. As a result of the December 5, 2007 Terrorist Attack, and the injuries he suffered, Jordan Kaleb Smith has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 84. THE NOVEMBER 10, 2007 ATTACK – QARYAT AL-ASHIG

### A. PLAINTIFFS THE JORDAN W. BOWLING, JR., FAMILY

1322. Plaintiff Jordan W. Bowling, Jr., Deceased was a citizen of the United States and was domiciled in the State of Maryland at the time of his death.

1323. On November 10, 2007, Jordan W. Bowling, Jr., Deceased, age 20, was serving in the U.S. military in Iraq.

1324. Mr. Bowling was the gunner on top of a Humvee in a convoy mission in Qaryat Al Ashig when his Humvee was hit by a VBIED causing Mr. Bowling to be thrown from the Humvee.

1325. The weapon used to attack and injure Mr. Bowling was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1326. As a result of the attack, Jordan W. Bowling, Jr., sustained loss of consciousness, shrapnel wounds to his face and forehead, injuries to his right ear, loss of fluid

from his ears, difficulty remembering and staying focused, TBI, PTSD, depression, dizziness, and headaches.

1327. Mr. Bowling received extensive medical treatment for his medical and psychological injuries from this attack including treatment at MedStar Franklin Square Medical Center located in Baltimore, Maryland as well as the Baltimore VA Medical Center, Baltimore, Maryland. He died on March 3, 2011, from complications associated with his injuries sustained in this Attack.

1328. Plaintiff, Ronda Melton, is a citizen of the United States and domiciled in the state of Maryland. She is the mother of Jordan W. Bowling, Jr., Deceased, and brings an action individually, and on behalf of the Estate of Jordan W. Bowling, Jr., Deceased, and all heirs thereof, as his legal representative.

1329. Plaintiff Shelley Lynn Abbott is a citizen of the United States and is domiciled in the state of Maryland. She is the sister of Jordan W. Bowling, Jr., Deceased.

1330. Plaintiff Jordan W. Bowling, Sr., is a citizen of the United States and is domiciled in the state of Maryland. He is the father of Jordan W. Bowling, Jr., Deceased.

1331. Plaintiff, D.B., a minor child, is a citizen of the United States and is domiciled in the state of Maryland. She is the minor daughter of Jordan W. Bowling, Jr., Deceased.

1332. Plaintiff, J.B, a minor child, is a citizen of the United States and is domiciled in the state of Maryland. He is the minor son of Jordan W. Bowling, Jr., Deceased.

1333. As a result of the November 10, 2007 Terrorist Attack, and the injuries suffered by and the death of Jordan W. Bowling, Jr., Plaintiffs, Ronda Melton, Shelley Lynn Abbott, Jordan W. Bowling, Sr., D.B., a minor child, and J.B., a minor child, have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Jordan W.

Bowling, Jr.'s society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Jordan W. Bowling, Jr.

## 85. THE OCTOBER 31, 2007 ATTACK – IVO FALLUJAH

### A. PLAINTIFF CHRISTOPHER DAVID CONDREY[115]

1334. Plaintiff Christopher David Condrey is a citizen of the United States and domiciled in the State of Texas.

1335. On October 31, 2007, Christopher David Condrey, age 34, was serving in the U.S. military in Iraq.

1336. Mr. Condrey was with his unit in a convoy outside of Fallujah when his HET was hit by an IED.

1337. The weapon used to attack and injure Mr. Condrey was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1338. As a result of the attack, Christopher David Condrey suffered injuries to his left shoulder, arm, elbow and hand. He has also been diagnosed with PTSD, depression, and anxiety.

1339. Christopher David Condrey received extensive medical treatment. He was seen at the base for his injuries. Mr. Condrey was then medevac'd to the hospital in Baghdad, and then on to Landstuhl, Germany for immediate treatment. Mr. Condrey has been seen by the following medical providers: William Beaumont Army Medical Center and the El Paso VA Healthcare System, both in El Paso, Texas; VA Outpatient Clinic in San Antonio, Texas and the VA North Texas Health Care System in Dallas, Texas.

---

[115] Christopher David Condrey was also injured in the February 18, 2006 attack in Kirkuk.

1340. As a result of the October 31, 2007 Terrorist Attack, and the injuries he suffered, Christopher David Condrey has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 86. THE OCTOBER 31, 2007 ATTACK - NASIRIYAH

#### A. PLAINTIFF ABRAHAM MARTINEZ-AYALA

1341. Plaintiff Abraham Martinez-Ayala is a citizen of the United States and domiciled in the State of California.

1342. On October 31, 2007, Abraham Martinez-Ayala, age 20, was serving in the U.S. military in Iraq.

1343. Mr. Martinez-Ayala was in a convoy with his unit in Nasiriyah when his vehicle was struck by an IED.

1344. The weapon used to attack and injure Mr. Martinez-Ayala was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1345. As a result of the attack, Abraham Martinez-Ayala suffered a laceration to his lip, sprained neck, a TBI, migraines and PTSD.

1346. Abraham Martinez-Ayala received extensive medical treatment following the attack. He was medevac'd to Camp Anaconda for treatment and continues his treatment through the VA.

1347. As a result of the October 31, 2007 Terrorist Attack, and the injuries he suffered, Abraham Martinez-Ayala has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and

future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 87. THE OCTOBER 18, 2007 ATTACK – NORTH OF MOSUL

### A. PLAINTIFF JOSHUA JOHN WOLCOTT

1348. Plaintiff Joshua John Wolcott is a citizen of the United States and domiciled in the State of North Carolina.

1349. On October 18, 2007, Joshua John Wolcott, age 23, was serving in the U.S. military in Iraq.

1350. Mr. Wolcott was with his unit North of Mosul when his Humvee hit a pressure-plated IED.

1351. The weapon used to attack and injure Mr. Wolcott was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1352. As a result of the attack, Joshua John Wolcott suffered shrapnel injuries to his face, a concussion which resulted in a traumatic brain injury, and hearing loss in his right ear. He has received a diagnosis of PTSD.

1353. Joshua John Wolcott received extensive medical treatment. He was treated at the scene of the attack and transported back to his base for further treatment. He began receiving treatment upon his return to the United States from the Augusta Veterans Administration Hospital in Georgia.

1354. As a result of the October 18, 2007 Terrorist Attack, and the injuries he suffered, Joshua John Wolcott has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 88. THE OCTOBER 14, 2007 ATTACK – BAGHDAD

### A. PLAINTIFFS THE KENNETH J. IWASINSKI FAMILY

1355. Plaintiff Kenneth J. Iwasinski was a citizen of the United States and domiciled in the State of Massachusetts at the time of his death.

1356. On October 14, 2007, Kenneth J. Iwasinski, age 22, was serving in the U.S. military in Iraq.

1357. Mr. Iwasinski was driving the lead Humvee in Baghdad while his unit conducted a routine combat reconnaissance patrol when an IED struck his vehicle.

1358. The weapon used to attack and kill Mr. Iwasinski was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1359. As a result of the attack, Kenneth J. Iwasinski was gravely injured.

1360. Kenneth J. Iwasinski received emergency treatment at the scene of the attack and was then medically evacuated to the Combat Support Hospital in Baghdad, Iraq, where he died as a result of his injuries.

1361. Plaintiff Tracy J. Taylor, brings an action individually, and on behalf of the Estate of Kenneth J. Iwasinski, and all heirs thereof, as its anticipated legal representative. She is the mother of Kenneth J. Iwasinski, is a citizen of the United States, and is domiciled in the State of Massachusetts.

1362. Plaintiff Amanda L. Taylor is a citizen of the United States and domiciled in the state of Massachusetts. She is the sibling of Kenneth J. Iwasinski.

1363. As a result of the October 14, 2007 Terrorist Attack, and the injuries suffered by, and the death of Kenneth J. Iwasinski, Plaintiffs Tracy J. Taylor and Amanda L. Taylor have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral

expenses, loss of Kenneth J. Iwasinski's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the Estate of Kenneth J. Iwasinski.

## 89. THE SEPTEMBER 30, 2007 ATTACK - MOSUL

### A. PLAINTIFF ADAM NATHAN ENGELHART

1364. Plaintiff Adam Nathan Engelhart is a citizen of the United States and domiciled in the State of Florida.

1365. On or about September 30, 2007, Mr. Adam Engelhart, age 24, was serving in the U.S. military in Iraq.

1366. At approximately 11:00 am, Mr. Adam Engelhart was in a convoy on a market road in Mosul stopped for a possible IED. A gentleman approximately 100 meters in front of them walked into the middle of the street and shot a rocket directly toward them. The rocket hit under the driver's seat and blew up.

1367. The weapon used to attack and injure Mr. Adam Engelhart was an Iranian manufactured/supplied RPG provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1368. As a result of the attack, Mr. Adam Engelhart received a TBI, and PTSD.

1369. As a result of the September 30, 2007 Terrorist Attack, and the injuries he suffered, Mr. Adam Engelhart has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 90. THE SEPTEMBER 26, 2007 ATTACK - ROUTE RAIDERS, WEST RASHEED DISTRICT, SOUTHWEST BAGHDAD

### A. PLAINTIFFS THE SHAUN SCOTT CHANDLER FAMILY

1370. Plaintiff Shaun Scott Chandler is a citizen of the United States and domiciled in the State of Virginia.

1371. On September 26, 2007, Mr. Shaun Chandler, age 30, was serving in the U.S. military in Iraq.

1372. Mr. Shaun Chandler was on patrol in a Humvee with his unit traveling on Route Raiders in the City of Baghdad, when an EFP detonated, hitting Mr. Chandler's vehicle.

1373. The weapon used to attack and injure Mr. Shaun Chandler was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1374. As a result of the attack, Mr. Shaun Chandler suffered shrapnel injuries all over his body, including severe shrapnel injury to his left arm and right leg, significant blood loss, TBI, and anxiety.

1375. Mr. Shaun Chandler received extensive medical treatment at Baghdad Military Hospital, Baquba Base Hospital, Landstuhl Regional Medical Center and Walter Reed National Military Medical. Mr. Chandler continues to receive treatment at the VA Hospital in Virginia.

1376. As a result of the September 26, 2007 Terrorist Attack, and the injuries he suffered, Mr. Shaun Chandler has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1377. Plaintiff Juleonna Clarke Chandler is a citizen of the United States and

domiciled in the State of Virginia. She is the wife of Plaintiff, Shaun Scott Chandler.

1378. As a result of the September 26, 2007 Terrorist Attack, and the injuries suffered by Mr. Shaun Scott Chandler, Plaintiff Juleonna Clarke Chandler has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 91. THE SEPTEMBER 24, 2007 ATTACK – DIYALA

#### A. PLAINTIFFS THE ROY ANTHONY BISCARR FAMILY

1379. Plaintiff Roy Anthony Biscarr is a citizen of the United States and domiciled in the State of Texas.

1380. On September 24, 2007, Roy Anthony Biscarr, age 36, was serving in the U.S. military in Iraq.

1381. Mr. Biscarr was traveling in a convoy from FOB Normandy to LSA Anaconda when his vehicle hit an IED.

1382. The weapon used to attack and injure Mr. Biscarr was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1383. As a result of the September 24, 2007 Terrorist Attack, Mr. Biscarr suffered a traumatic brain injury ("TBI"), lost consciousness for approximately twenty minutes, and sustained shrapnel injuries to his back. Additionally, Mr. Biscarr has received treatment for his PTSD, insomnia, depression, and anxiety.

1384. Roy Anthony Biscarr received extensive medical treatment at LSA Anaconda, Balad, Iraq; Landstuhl Medical Center, Landstuhl, Germany; Walter Reed National Military Medical Center, Bethesda, Maryland; Carl R. Darnall Medical Center, Fort Hood, Texas; and

Michael E. DeBakey VA Medical Center, Houston, Texas.

1385. As a result of the September 24, 2007 Terrorist Attack, and the injuries he suffered, Roy Anthony Biscarr has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1386. Plaintiff Angela Clauset is a citizen of the United States and domiciled in the State of Texas. She is the mother of Roy Anthony Biscarr.

1387. Plaintiff Khristie Alexa Biscarr is a citizen of the United States and domiciled in the State of Alaska. She is the daughter of Roy Anthony Biscarr.

1388. Plaintiff Gabriel Alexander Biscarr is a citizen of the United States and domiciled in the State of Alaska. He is the son of Roy Anthony Biscarr.

1389. As a result of the September 24, 2007 Terrorist Attack, and the injuries suffered by Roy Anthony Biscarr, Plaintiff's Khristie Alexa Biscarr, Gabriel Alexander Biscarr, and Angela Clauset, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 92. THE SEPTEMBER 3, 2007 ATTACK - FALLUJAH

### A. PLAINTIFFS THE RONALD DEAN STARK, II FAMILY

1390. Plaintiff Ronald Dean Stark, II is a citizen of the United States and domiciled in the State of Florida.

1391. On September 3, 2007, Ronald Dean Stark, II, age 37, was serving in the U.S. military in Iraq.

1392. Mr. Stark was on patrol and traveling in a 1064 Mortar Vehicle on the outskirts of Fallujah when an IED detonated near his vehicle. As a result, Mr. Stark struck his head and

was knocked unconscious. He was med-evacuated to a hospital where he then went into cardiac arrest

1393. The weapon used to attack and injure Mr. Stark was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1394. As a result of the attack, Ronald Dean Stark, II suffered severe head and bodily injuries, including a TBI, migraines, poly-neuropathy, tinnitus, sleep apnea, and bodily injuries requiring a neurostimulator implant.

1395. Ronald Dean Stark, II received extensive medical treatment for his injuries, including surgery for implantation of a neuro stimulator, as well as extensive physical, occupational, and speech therapy.

1396. As a result of the September 3, 2007 Terrorist Attack, and the injuries he suffered, Ronald Dean Stark, II has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1397. Plaintiff Katie Stark is a citizen of the United States and domiciled in the State of Florida. She is the wife of Ronald Dean Stark, II.

1398. Plaintiff Douglas Arthur Stark is a citizen of the United States and domiciled in the state of Florida. He is the son of Ronald Dean Stark, II.

1399. Plaintiffs E.G.S. and A.D.S., are the minor children of Ronald Dean Stark, II and are citizens of the United States and domiciled in the State of Florida.

1400. As a result of the September 3, 2007 Terrorist Attack, and the injuries suffered by Ronald Dean Stark, II, Plaintiff's spouse, Katie Stark, Douglas Arthur Stark and his two

minor children, E.G.S. and A.D.S., have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

**93. THE AUGUST 31, 2007 ATTACK - FALLUJAH**

**A. PLAINTIFFS THE GREGORY P. BLINCOE FAMILY**

1401. Plaintiff Gregory P. Blincoe is a citizen of the United States and domiciled in the State of California.

1402. On August 31, 2007, Gregory P. Blincoe, age 22, was serving in the U.S. military in Iraq.

1403. Mr. Blincoe was on the outskirts of Fallujah when he encountered a suicide bomber.

1404. The weapon used to attack and injure Mr. Blincoe was an Iranian manufactured/supplied explosive provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1405. As a result of the attack, Gregory P. Blincoe suffered injuries including, but not limited to, Tinnitus, Hearing Loss, Migraines, Post-Traumatic Stress Disorder ("PTSD"), and Traumatic Brain Injury ("TBI").

1406. Gregory P. Blincoe received extensive medical treatment, including past and ongoing care for these injuries, at his military base, Veterans Medical Centers and private practices.

1407. As a result of the August 31, 2007 Terrorist Attack, and the injuries he suffered, Gregory P. Blincoe has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1408. Plaintiff Carrie Blincoe is a citizen of the United States and domiciled in the State of California. She is the wife of Gregory Blincoe.

1409. Plaintiff Connie Argier is a citizen of the United States and domiciled in the State of Kentucky. She is the mother of Gregory Blincoe.

1410. Plaintiff Z.B., a minor, represented by his legal guardians Gregory P. Blincoe and Carrie Blincoe, is a citizen of the United States and domiciled in the State of California. He is the son of Gregory P. Blincoe and Carrie Blincoe.

1411. As a result of the August 31, 2007 Terrorist Attack, and the injuries suffered by Gregory P. Blincoe, Plaintiffs Carrie Blincoe, Connie Argier and Z.B. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 94. THE AUGUST 28, 2007 ATTACK – BUHRIZ NEAR BAQUBAH

### A. PLAINTIFFS THE NOAH P. MUTRIE FAMILY

1412. Plaintiff Noah P. Mutrie is a citizen of the United States and domiciled in the State of New York.

1413. On August 28, 2007, Noah P. Mutrie, age 25, was serving in the U.S. military in Iraq.

1414. Mr. Mutrie was in a convoy on patrol with his unit in Buhriz near Baqubah when his vehicle was struck by an IED.

1415. The weapon used to attack and injure Mr. Mutrie was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1416. As a result of the attack, Noah P. Mutrie suffered injuries that include, but are

not limited to, a concussion, shrapnel wounds to his head, Post-Traumatic Stress Disorder ("PTSD"), social disorder, anger issues, anxiety, and depression.

1417. Noah P. Mutrie received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private medical providers.

1418. As a result of the August 28, 2007 Terrorist Attack, and the injuries he suffered, Noah P. Mutrie has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1419. Plaintiff Ashley Mutrie is a citizen of the United States and domiciled in the State of New York. She is the wife of Noah P. Mutrie.

1420. Plaintiff B.M., a minor, represented by his legal guardians Noah P. Mutrie and Ashley Mutrie, is a citizen of the United States and domiciled in the State of New York. He is the son of Noah P. Mutrie.

1421. Plaintiff J.M., a minor, represented by his legal guardians Noah P. Mutrie and Ashley Mutrie, is a citizen of the United States and domiciled in the State of New York. He is the son of Noah P. Mutrie.

1422. Plaintiff Alexandra Mutrie is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Noah P. Mutrie.

1423. As a result of the August 28, 2007 Terrorist Attack, and the injuries suffered by Noah P. Mutrie, Plaintiff's Ashley Mutrie, B.M., J.M., and Alexandra Mutrie have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages,

including loss of services.

## 95. THE AUGUST 28, 2007 ATTACK – NEAR FALLUJAH

### A. PLAINTIFFS THE ADAM S. BARTON FAMILY

1424. Plaintiff Adam S. Barton is a citizen of the United States and domiciled in the State of Kentucky.

1425. On August 28, 2007, Adam S. Barton, age 22, was serving in the U.S. military in Iraq.

1426. Mr. Barton was on patrol with his unit in a village outside of Fallujah when his vehicle was struck by an IED.

1427. The weapon used to attack and injure Mr. Barton was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1428. As a result of the attack, Adam S. Barton suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI") a neck injury, back injury, minor burns, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

1429. Adam S. Barton received extensive medical treatment, including past and ongoing care for these injuries, at military base hospitals, Veterans Medical Centers and private medical providers.

1430. As a result of the August 28, 2007 Terrorist Attack, and the injuries he suffered, Adam S. Barton has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1431. Plaintiff Tammy Selvey-Brock is a citizen of the United States and domiciled in the State of Kentucky. She is the mother of Adam S. Barton.

1432. Plaintiff Stephen Barton is a citizen of the United States and domiciled in the State of Michigan. He is the father of Adam S. Barton.

1433. Plaintiff T.B., a minor, represented by his legal guardian Adam S. Barton, is a citizen of the United States and domiciled in the State of Kentucky. He is the son of Adam S. Barton.

1434. As a result of the August 28, 2007 Terrorist Attack, and the injuries suffered by Adam S. Barton, Plaintiff's Tammy Selvey-Brock, Stephen Barton and T.B., have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 96. THE AUGUST 25, 2007 ATTACK - MOSUL

### A. PLAINTIFF ADAM NATHAN ENGELHART

1435. Plaintiff Adam Nathan Engelhart is a citizen of the United States and domiciled in the State of Florida.

1436. On August 25, 2007, Mr. Adam Engelhart, age 24, was serving in the U.S. military in Iraq.

1437. Mr. Adam Engelhart left FOB Marez to conduct route clearance in the vicinity of Mosul. He was in a Bradley Fighting Vehicle as the third vehicle in the convoy of six. The lead vehicle was next to a bungalow truck when it exploded. The force of the explosion smashed Mr. Engelhart's face into the gunner's sight.

1438. The weapon used to attack and injure Mr. Adam Engelhart was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1439. As a result of the attack, Mr. Adam Engelhart received a large golf ball sized

knot on his face near his lower left eye, and suffered from a minor concussion.

1440. Mr. Adam Engelhart has continued to receive treatment at the Bay Pines VA Healthcare System and the Naples Community Outpatient Based Clinic.

1441. As a result of the August 25, 2007 Terrorist Attack, and the injuries he suffered, Mr. Adam Engelhart has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 97. AUGUST 22, 2007 – HOR AL BOSH

#### A. PLAINTIFFS THE BRYAN SNYDER FAMILY

1442. Plaintiff Bryan Snyder is a citizen of the United States and is domiciled in the State of Indiana.

1443. On the evening of August 22, 2007, Bryan Snyder, age 22, was serving in the U.S. military in Iraq.

1444. Mr. Snyder was settling in at Patrol Base Cavalier around when a VBIED struck the main gate of the Patrol Base. While providing emergency treatment at the scene, Snyder noticed a second VBIED headed for the Patrol Base. The second VBIED entered the Patrol Base then detonated. As a result of the second VBIED, Snyder was struck by flying debris to the back of his head and received shrapnel wounds.

1445. The weapon used to attack and injure Snyder was Iranian manufactured munition provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1446. As a result of the Terrorist Attack, Snyder sustained significant injuries: Traumatic Brain Injury (TBI), Meniere's Disease, Cervicalgia, more than 50% hearing loss, and several shrapnel wounds. In addition to his physical injuries, Snyder also suffers from

PTSD, depression, and anxiety.

1447. Snyder received emergency medical treatment at the scene of the attack. From the scene, Snyder was transported to Camp Taji for further medical treatment. A couple days later, Snyder was transported to Camp LSA Anaconda for further evaluation and imaging. Approximately 3 days later, Snyder was transported to LARNC in Germany for further evaluation. Snyder underwent treatment at LARNC for approximately 29 days. From Germany, Snyder was transported to Brooke Army Medical Center in San Antonio, Texas where he was admitted for further evaluation of his TBI. After 5 days of evaluation, Snyder then sought treatment at Fort Hood Texas Army Hospital. While at Fort Hood, Snyder underwent psychological testing, treatment for hearing loss, speech therapy, MRI and CT scans of his brain, and other diagnostic tests. After approximately 6 months of treatment, Snyder was transferred to Vestibular Rehab at the Naval Military Center in Balboa. Vestibular Rehab diagnosed Snyder with Meniere's Disease, an inner ear disorder that causes episodes of vertigo. He is still receiving treatment for his injuries.

1448. As a result of the August 22, 2007 Terrorist Attack, and the injuries he suffered, Snyder has past and future noneconomic damages, including severe physical and mental pain and suffering, loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1449. Plaintiff Jaime Snyder is a citizen of the United States and is domiciled in the state of Indiana. She is the wife of Bryan Snyder.

1450. As a result of the August 22, 2007 Terrorist Attack, and the injuries suffered by Bryan Snyder, Plaintiff's wife, Jaime Snyder has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss

of consortium, and past and future economic damages, including loss of services.

## 98. THE AUGUST 18, 2007 ATTACK – ARAB JABOUR NEIGHBORHOOD, BAGHDAD

### A. PLAINTIFFS THE TIMOTHY PETER BENNETT FAMILY

1451. Plaintiff Timothy Peter Bennett is a citizen of the United States and domiciled in the State of Utah.

1452. On August 18, 2007, Timothy Peter Bennett, age 31, was serving in the U.S. military in Iraq.

1453. Mr. Bennett was seated in the right passenger seat of a Humvee when an enemy sniper appeared in the distance, causing the Humvee driver to back up the vehicle. While backing up, the driver ran over a large, deeply buried IED, which was loaded with napalm and white phosphorous. Immediately following the explosion, Mr. Bennett and his gunner, who was also a passenger in the Humvee, were engulfed in fire. As he, his gunner, and the Humvee burned, Mr. Bennett sustained further serious injury while helping his gunner and himself escape from the Humvee.

1454. The weapon used to attack and injure Mr. Bennett was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1455. As a result of the August 18, 2007 Terrorist Attack, Mr. Bennett was catastrophically and permanently injured. His injuries include, but are not limited to, loss of use of both hands, including amputation of his left arm below the elbow, severe Traumatic Brain Injury (TBI), third degree burns over much of his body including his eyes, esophagus, lungs, and sinuses, partial loss of ears, and extreme pain and suffering.

1456. Mr. Bennett received extensive medical treatment for his injuries suffered in

the terrorist attack. Directly following the attack, Mr. Bennett was medically evacuated to Germany, and then on to Landstuhl Regional Medical Center in Landstuhl, Germany, where he received treatment. He was flown back to the United States for further treatment at Brooks Army Medical Center in Texas. Since Mr. Bennett's return to the United States, he has undergone over 100 surgeries related to the injuries he sustained in the August 18, 2007 terrorist attack. He has lost his left arm, and has limited use of his right arm; Mr. Bennett also suffers the on-going effects of the TBI he sustained in the attack, has only 10% lung capacity, and has decreased vision in both eyes. In addition, Mr. Bennett suffers from PTSD, anxiety, nightly sleep disturbances and nightmares, and depression. He will require future treatment and care.

1457. As a result of the August 18, 2007 Terrorist Attack, and the injuries he suffered, Mr. Bennett has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1458. Plaintiff Amanda Jane Bennett is a citizen of the United States and is domiciled in the State of Utah. She is the wife of Timothy Peter Bennett.

1459. Plaintiff Brittany Amber Bennett is a citizen of the United States and is domiciled in the State of Utah. She is the daughter of Timothy Peter Bennett.

1460. Plaintiff Savannah Lindsey Bennett is a citizen of the United States and is domiciled in the State of Utah. She is the daughter of Timothy Peter Bennett.

1461. Plaintiff T.P.B., a minor, represented by his legal guardians Amanda Jane Bennett and Timothy Peter Bennett, is a citizen of the United States and domiciled in the State of Utah. He is the son of Amanda Bennett and Timothy Peter Bennett.

1462. As a result of the August 18, 2007 Terrorist Attack, and the injuries suffered by Timothy Peter Bennett, Plaintiffs Amanda Jane Bennett, Brittany Amber Bennett, Savannah Lindsey Bennett, and T.P.B., a minor, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 99. THE AUGUST 15, 2007 ATTACK – CAMP TAJI

### A. PLAINTIFFS THE NUALA KALUOKAU TAYLOR FAMILY

1463. Plaintiff Nuala Kaluokau Taylor is a citizen of the United States and domiciled in the

State of Texas.

1464. On August 15, 2007, Nuala Kaluokau Taylor, age 33, was serving in the U.S. military in Iraq.

1465. Mrs. Taylor was in Camp Taji when a rocket/mortar exploded, throwing Mrs. Taylor into a pillar. When she recovered from the blast, she checked on others who were hit by the explosion and observed severe injuries to others, including her best friend who died as a result of the attack.

1466. The weapon used to attack and injure Mrs. Taylor was an Iranian manufactured/supplied rocket/mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1467. As a result of the attack, Nuala Kaluokau Taylor suffered a head injury, back injury and pain, and suffers from PTSD comorbid Bipolar I, and anxiety.

1468. Nuala Kaluokau Taylor has received medical treatment for her injuries, including surgery and other treatment for her back injury and pain, and continuing treatment for her PTSD.

1469. As a result of the August 15, 2007 Terrorist Attack, and the injuries she suffered, Nuala Kaluokau Taylor has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1470. Plaintiff Christopher David Taylor is a citizen of the United States and domiciled in the State of Texas. He is the husband of Plaintiff, Nuala Kaluokau Taylor and were married at the time of the attack.

1471. Plaintiff Tanin Nicholas Taylor, is a citizen of the United States and domiciled in the State of Alabama. He is the son of Plaintiff, Nuala Kaluokau Taylor.

1472. Plaintiff Betheni Keanaaina is a citizen of the United States and domiciled in the State of Georgia. She is the daughter of Plaintiff, Nuala Kaluokau Taylor.

1473. Plaintiff X.W.T., a minor, represented by his guardians Nuala Kaluokau Taylor and Christopher David Taylor, is a citizen of the United States and domiciled in the State of Texas. He is the son of Plaintiff Nuala Kaluokau Taylor and Christopher David Taylor.

1474. As a result of the August 15, 2007 Terrorist Attack, and the injuries suffered by Nuala Kaluokau Taylor, Plaintiffs Christopher David Taylor, Tanin Nicholas Taylor, Betheni Keanaaina, and X.W.T., a minor have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 100. THE AUGUST 14, 2007 ATTACK – ROUTE SIOUX FALLS

### A. PLAINTIFFS THE JACOB A. BARR FAMILY

1475. Plaintiff Jacob A. Barr is a citizen of the United States and domiciled in the State of Colorado.

1476. On August 14, 2007, Jacob A. Barr, age 24, was serving in the U.S. military in

Iraq.

1477. Mr. Barr was returning to Camp Bucca when his vehicle was struck by an EFP.

1478. The weapon used to attack and injure Mr. Barr was an Iranian manufactured/supplied Explosively Formed Penetrator provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1479. As a result of the attack, Jacob A. Barr suffered injuries including, but not limited to, TBI and PTSD.

1480. Jacob A. Barr received extensive medical treatment at PFC Floyd K. Lindstrom Outpatient clinic as well as various private medical providers.

1481. As a result of the August 14, 2007 Terrorist Attack, and the injuries he suffered, Jacob A. Barr has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1482. Plaintiff Kristina Barr is a citizen of the United States and domiciled in the State of Colorado. She is the wife of Jacob A. Barr.

1483. Plaintiff E.B., a minor, represented by her legal guardians Jacob A. Barr and Kristina Barr, is a citizen of the United States and domiciled in the State of Colorado. She is the daughter of Jacob A. Barr and Kristina Barr.

1484. As a result of the August 14, 2007 Terrorist Attack, and the injuries suffered by Jacob A. Barr, Plaintiffs Kristina Barr and E.B., a minor, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 101. THE AUGUST 7, 2007 ATTACK - TARMIYH

### A. PLAINTIFFS THE SHANE T. ULANDAY FAMILY

1485. Plaintiff Shane T. Ulanday is a citizen of the United States and domiciled in the State of Texas.

1486. On August 7, 2007, Shane T. Ulanday, age 40, was serving in the U.S. military in Iraq.

1487. Mr. Ulanday traveling on Route Coyote with his unit in Tarmiyah when his vehicle was struck by an IED.

1488. The weapon used to attack and injure Mr. Ulanday was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1489. As a result of the attack, Shane T. Ulanday suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), post-concussion syndrome, a back injury, intestinal hernia caused by blast injuries, Post-Traumatic Stress Disorder ("PTSD"), cognitive disorder, anxiety, and depression.

1490. Shane T. Ulanday received extensive medical treatment, including past and ongoing care for these injuries, at his military base, several Veterans Medical Centers, military hospitals and private hospitals.

1491. As a result of the August 7, 2007 Terrorist Attack, and the injuries he suffered, Shane T. Ulanday has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1492. Plaintiff Cher Ulanday is a citizen of the United States and domiciled in the State of Texas. She is the wife of Shane T. Ulanday.

1493. As a result of the August 7, 2007 Terrorist Attack, and the injuries suffered by Shane T. Ulanday, Plaintiff Cher Ulanday has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 102. THE AUGUST 6, 2007 ATTACK – BAQUBAH

#### A. PLAINTIFFS THE KAREEM RASHAD SULTAN KHAN FAMILY

1494. Plaintiff Kareem Rashad Sultan Khan was a citizen of the United States and domiciled in the State of New Jersey at the time of his death.

1495. On August 6, 2007, Kareem Rashad Sultan Khan, age 20, was serving in the U.S. military in Iraq.

1496. Mr. Khan and three other soldiers were checking abandoned houses for explosives in Baqubah, Iraq when an IED detonated near them.

1497. The weapon used to attack and kill Mr. Khan was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1498. Kareem Rashad Sultan Khan died from his injuries.

1499. Plaintiff Feroze Khan brings an action individually, and on behalf of the Estate of Kareem Rashad Sultan Khan, and all heirs thereof, as its anticipated legal representative. He is the father of Kareem Rashad Sultan Khan and is domiciled in the State of New Jersey.

1500. Plaintiff Elvena Elsheba Mohammed Ali Khan is a citizen of the United States and domiciled in the State of Maryland. She is the mother of Kareem Rashad Sultan Khan.

1501. Plaintiff Enesha Baksh is a citizen of the United States and domiciled in the State of New Jersey. She is the step-mother of Kareem Rashad Sultan Khan.

1502. Plaintiff Tenesha Charles is a citizen of the United States and domiciled in the State of New Jersey. She is the step-sister of Kareem Rashad Sultan Khan.

1503. As a result of the August 6, 2007 Terrorist Attack, and the injuries suffered by and the death of Kareem Rashad Sultan Khan, Plaintiffs Feroze Khan, Elvena Elsheba Mohammed Ali Khan, Enesha Baksh, and Tenesha Charles have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Kareem Rashad Sultan Khan's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Kareem Rashad Sultan Khan.

## 103. THE AUGUST 4, 2007 ATTACK – BAGHDAD

### A. PLAINTIFF ANTHONY ALLEN MATHENY

1504. Plaintiff Anthony Allen Matheny is a citizen of the United States and domiciled in the State of Ohio.

1505. On August 4, 2007, Anthony Allen Matheny, age 22, was serving in the U.S. military in Iraq.

1506. Mr. Matheny was in a convoy with his unit performing a route clearance when they were ambushed from both sides and his Humvee drove onto an IED that was buried underground.

1507. The weapon used to attack and injure Mr. Matheny was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian trained terror operatives in Iraq.

1508. As a result of the August 4, 2007 Terrorist Attack, Anthony Allen Matheny sustained significant injuries including a broken back, broken shoulder, broken ribs, collapsed lungs, a TBI, and PTSD.

1509. Anthony Allen Matheny received extensive medical treatment including six surgeries at Walter Reed Hospital and Landstuhl Regional Hospital in Germany. He continues to receive treatment at the Dayton Veterans Affairs Medical Center.

1510. As a result of the August 4, 2007 Terrorist Attack, and the injuries he suffered, Anthony Allen Matheny has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, his past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 104. THE AUGUST 1, 2007 ATTACK – MOSUL

### A. PLAINTIFFS THE TRAVIS SCOTT BACHMAN FAMILY

1511. Travis Scott Bachman was a citizen of the United States and domiciled in the State of Kansas at the time of his death.

1512. On August 1, 2007, Travis Scott Bachman, age 30, was serving in the U.S. military in Iraq.

1513. Mr. Bachman was driving a scout vehicle south on MSR Tampa in Mosul, Iraq, when one or more IEDs exploded, hitting Mr. Bachman's vehicle.

1514. Mr. Bachman died from the injuries he sustained in the explosion.

1515. The weapons used to attack and kill Travis Scott Bachman on August 1, 2007 were Iranian-manufactured or supplied IEDs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1516. Plaintiff Amber Jolene Wilson is a citizen of the United States and domiciled in the state of Oklahoma. She was married to Travis Scott Bachman at the time of his death.

1517. Plaintiff Amber Jolene Wilson, brings an action individually, and on behalf of the Estate of Travis Scott Bachman, and all heirs thereof, as its anticipated legal representative.

1518. Plaintiff T.S.B., a minor child, represented by his legal guardian Amber Jolene Wilson, is a citizen of the United States and domiciled in the State of Oklahoma. He is the son of, Amber Jolene Wilson and Travis Scott Bachman.

1519. Plaintiff K.P.B., a minor child, represented by her legal guardian Amber Jolene Wilson, is a citizen of the United States and domiciled in the State of Oklahoma. She is the daughter of, Amber Jolene Wilson and Travis Scott Bachman.

1520. As a result of the August 1, 2007 Terrorist Attack, and the injuries suffered by, and the death of Travis Scott Bachman, Plaintiffs Amber Jolene Wilson, T.S.B. a minor child, and K.P.B. a minor child, have suffered severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Travis Scott Bachman's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the Estate of Travis Scott Bachman.

## 105. THE JULY 28, 2007 ATTACK –FORWARD OPERATING BASE, RAMADI

### A. PLAINTIFF RANDALL JOSEPH BENNETT, II

1521. Plaintiff Randall Joseph Bennett, II is a citizen of the United States and domiciled in the State of Indiana.

1522. On July 28, 1007, Randall Joseph Bennett, II, age 22, was serving in the U.S. military in Iraq.

1523. Mr. Bennett was in his Humvee when a blue truck filled with explosives detonated 5 yards away at the gate of the Forward Operating Base in Ramadi.

1524. The weapon used to attack and injure Mr. Bennett was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1525. As a result of the attack, Randall Joseph Bennett, II suffered shrapnel injuries to his face and eye, several herniated discs in his back and neck, injuries to his right knee and ankle, and a concussion which resulted in a traumatic brain injury. He has received a diagnosis of PTSD, anxiety and depression.

1526. Randall Joseph Bennett, II received extensive medical treatment. He was treated at the scene of the attack. Upon his return to the United States, he has received surgery and follow-up medical care at Winn Army Hospital and Hawks Troop Medical Clinic in Fort Stewart, Georgia. He has also been treated at the Cincinnati Veterans Administration Hospital in Ohio, the Savannah Veterans Administration Outpatient Clinic and the Tricare Family Medicine Clinic in Georgia.

1527. As a result of the July 28, 2007 Terrorist Attack, and the injuries he suffered, Randall Joseph Bennett, II has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 106. THE JULY 17, 2007 ATTACK - BAGHDAD

### A. PLAINTIFFS THE ADAM THOMAS GAULDIN FAMILY

1528. Plaintiff Adam Thomas Gauldin is a citizen of the United States and domiciled in the State of Virginia.

1529. On July 17, 2007, Adam Thomas Gauldin, age 24, was serving in the U.S. military in Iraq.

1530. Mr. Gauldin was in central Baghdad helping to build combat outposts. He was unloading Class 4 materials off of a 22-ton truck when a vehicle-borne IED exploded nearby throwing him off of the top of the vehicle, knocking him unconscious, causing severe injuries, and killing most of the people around him.

1531. The weapon used to attack and injure Mr. Gauldin was an Iranian manufactured/supplied vehicle-borne IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1532. As a result of the attack, Adam Gauldin suffered concussive blast injuries, traumatic brain injury, a right hip fracture, a crushing right femur injury, and crushed discs in his vertebrae. He also suffers from PTSD and depression as a result of the Terrorist Attack.

1533. Adam Gauldin received extensive medical treatment including medications, physical therapy, chiropractic treatments, and surgical intervention, at Camp Striker, Fort Carson, the VA Eastern Colorado Health Care System, and Family Care Center.

1534. As a result of the July 17, 2007 Terrorist Attack, and the injuries he suffered, Adam Gauldin has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1535. Plaintiff Michael Gauldin is a citizen of the United States and domiciled in the State of Virginia. He is the father of Adam Thomas Gauldin.

1536. As a result of the July 17, 2007 Terrorist Attack, and the injuries suffered by Adam Thomas Gauldin, Plaintiff Michael Gauldin has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 107. THE JULY 17, 2007 ATTACK – KHAN BANI SAAD

### A. PLAINTIFFS THE GEORGE HARRISON, JR. FAMILY

1537. Plaintiff George Harrison, Jr. is a citizen of the United States and domiciled in the State of Indiana.

1538. On July 17, 2007, George Harrison, Jr., age 29, was serving in the U.S. military

in Iraq.

1539. Mr. Harrison was the truck commander in the lead Humvee in a convoy of 12 vehicles in Khan Bani Saad en route to recover a disabled vehicle when his Humvee's front right tire rolled over a pressure wire IED which exploded.

1540. The weapon used to attack and injure Mr. Harrison was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1541. As a result of the attack, George Harrison, Jr. suffered a concussion, cuts and abrasions on his arms, legs and body, torn right shoulder rotator cuff, PTSD, and damage to both ear drums.

1542. George Harrison, Jr. received extensive medical treatment at the hospital in the Green zone, Baghdad and later at the Louisville VA Medical Center, Louisville, KY.

1543. As a result of the July 17, 2007 Terrorist Attack, and the injuries he suffered, George Harrison, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1544. Plaintiff, Jody Lewis Harrison, is a citizen of the United States and domiciled in the State of Indiana. She was the wife of George Harrison, Jr.

1545. Plaintiff, George Harrison Sr., is a citizen of the United States and domiciled in the State of Indiana. He is the father of George Harrison, Jr.

1546. Plaintiff, Debbi Harrison, is a citizen of the United States and domiciled in the State of Indiana. She is the mother of George Harrison, Jr.

1547. Plaintiff, Tabbitha Norris, is a citizen of the United States and domiciled in the

State of Iowa. She is the sister of George Harrison, Jr.

1548. Plaintiff, Mary Harrison, is a citizen of the United States and domiciled in the State of Indiana. She is the sister of George Harrison, Jr.

1549. Plaintiff, Troy Harrison Sr., is a citizen of the United States and domiciled in the State of Kentucky. He is the brother of George Harrison, Jr.

1550. As a result of the July 17, 2017 Terrorist Attack, and the injuries suffered by George Harrison, Jr., Plaintiffs Jody Lewis Harrison, George Harrison, Sr., Debbi Harrison, Tabbitha Norris, Mary Harrison, and Troy Harrison, Sr. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 108. THE JULY 16, 2007 ATTACK - BAGHDAD

### A. PLAINTIFFS THE NOAH P. MUTRIE FAMILY

1551. Plaintiff Noah P. Mutrie is a citizen of the United States and domiciled in the State of New York.

1552. On July 16, 2007, Noah P. Mutrie, age 25, was serving in the U.S. military in Iraq.

1553. Mr. Mutrie was in a convoy on patrol with his unit on Route Dover in Baghdad when his vehicle was struck by an IED.

1554. The weapon used to attack and injure Mr. Mutrie was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1555. As a result of the attack, Noah P. Mutrie suffered injuries that include, but are not limited to, a concussion, Post-Traumatic Stress Disorder ("PTSD"), social disorder, anger

issues, anxiety, and depression.

1556. Noah P. Mutrie received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private medical providers.

1557. As a result of the July 16, 2007 Terrorist Attack, and the injuries he suffered, Noah P. Mutrie has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1558. Plaintiff Ashley Mutrie is a citizen of the United States and domiciled in the State of New York. She is the wife of Noah P. Mutrie.

1559. Plaintiff B.M., a minor, represented by his legal guardians Noah P. Mutrie and Ashley Mutrie, is a citizen of the United States and domiciled in the State of New York. He is the son of Noah P. Mutrie.

1560. Plaintiff J.M., a minor, represented by his legal guardians Noah P. Mutrie and Ashley Mutrie, is a citizen of the United States and domiciled in the State of New York. He is the son of Noah P. Mutrie.

1561. Plaintiff Alexandra Mutrie is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Noah P. Mutrie.

1562. As a result of the July 16, 2007 Terrorist Attack, and the injuries suffered by Noah P. Mutrie, Plaintiff's Ashley Mutrie, B.M., J.M., and Alexandra Mutrie have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 109. THE JULY 15, 2007 ATTACK - BAGHDAD, BETWEEN FOB LOYALTY AND FOB RUSTAMIYAH

### A. PLAINTIFFS THE MARK ANTHONY HAMBLIN, JR. FAMILY

1563. Plaintiff Mark Anthony Hamblin, Jr. is a citizen of the United States and domiciled in the State of Arizona.

1564. On July 15, 2007, Mr. Hamblin, age 22, was serving in the U.S. military in Iraq.

1565. Mr. Hamblin had left FOB Loyalty en route to the combat outpost. They ran over an IED and it detonated. Mr. Hamblin hit his head and was knocked unconscious.

1566. The weapon used to attack and injure Mr. Hamblin was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1567. As a result of the attack, Mr. Hamblin suffered a concussion, TBI, and PTSD.

1568. Mr. Hamblin received extensive medical treatment received medical treatment immediately at ROB Rustamiyah and FOB Loyalty. He still continues to treat at the Phoenix VA Hospital.

1569. As a result of the July 15, 2007 Terrorist Attack, and the injuries he suffered, Mark Anthony Hamblin, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1570. Plaintiff M.H., is a minor, represented by her legal guardian Mark Anthony Hamblin, Jr. is a citizen of the United States and domiciled in the State of Arizona. She is the daughter of, Plaintiff, Mark Anthony Hamblin, Jr.

1571. As a result of the July 15, 2007 Terrorist Attack, and the injuries suffered by

Mark Anthony Hamblin, Jr. Plaintiff, M.H., has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 110. JULY 14, 2007 ATTACK – ARAB JIBOR, BAGHDAD

### A. PLAINTIFF EARL ANTHONY MCCRACKEN

1572. Plaintiff Earl Anthony McCracken is a citizen of the United States and domiciled in the State of New Jersey.

1573. On July 14, 2007, Earl Anthony McCracken, age 23, was serving in the U.S. military in Iraq.

1574. On the afternoon of July 14, 2007, Mr. McCracken's unit was leaving FOB Murray on foot when an IED was triggered, blowing Mr. McCracken approximately 30 feet in the air. He landed on his head and back and was rendered unconscious. When Mr. McCracken regained consciousness, he observed blood coming from his arms and legs.

1575. The weapon used to attack and injure Mr. McCracken was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1576. As a result of the attack, Earl Anthony McCracken suffered massive physical injuries, including extreme shrapnel injuries and scarring, third degree burns from his waist down and on his arms, severe nerve damage in both legs and arms, back injury, infection, extreme and chronic knee pain in both legs, hearing loss, PTSD, TBI, depression, and severe anxiety.

1577. Earl Anthony McCracken received extensive medical treatment. Immediately after the attack he was evacuated to Baghdad and underwent two surgeries. From there he was flown to Landstuhl Regional Medical Center before being flown to the US, Fort Bragg in

North Carolina where he underwent at least 10 additional surgeries. Mr. McCracken spent approximately six months in the hospital. Mr. McCracken was told that there was a chance he would not walk again and wasn't allowed to look at his legs during this time to avoid going into shock. Mr. McCracken now walks with a cane and utilizes a wheelchair for longer distances.

1578. As a result of the July 14, 2007 Terrorist Attack, and the injuries he suffered, Earl Anthony McCracken has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 111. THE JULY 11, 2007 ATTACK – BESMAYA

### A. PLAINTIFFS THE KEVIN RANDALL SMITH FAMILY

1579. Plaintiff Kevin Randall Smith is a citizen of the United States and domiciled in the State of Missouri.

1580. On July 11, 2007, Kevin Randall Smith, age 31, was serving in the U.S. military in Iraq.

1581. Mr. Smith was lying in his bunk at Forward Operating Base Hammer in Besmaya, Iraq when he heard outgoing rockets exploding nearby. One rocket exploded near him, causing him to be knocked out of his bunk. Approximately 50 rockets were aimed at Mr. Smith and other service members, and roughly a dozen exploded near him. Many service members were injured during the attack, including at least one who was killed as a result of the injuries he sustained.

1582. The weapon used to attack and injure Mr. Smith was an Iranian-manufactured/supplied rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1583. As a result of the attack, Kevin Randall Smith sustained significant injuries, including traumatic brain disease, which causes him to have painful seizures, and post-traumatic stress disorder.

1584. Kevin Randall Smith received extensive medical treatment at the VA Heartland Medical Facility's Neurology Section.

1585. As a result of the July 11, 2007 Terrorist Attack, and the injuries he suffered, Kevin Randall Smith has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1586. Plaintiff Jackay Smith is a citizen of the United States and is domiciled in the State of Missouri. She is the spouse of Kevin Randall Smith.

1587. Plaintiff Dylan Smith is a citizen of the United States and is domiciled in the state of Missouri. He is the son of Kevin Randall Smith.

1588. Plaintiff L.S., a minor, represented by his legal guardians Kevin Randall Smith and Jackay Smith, is a citizen of the United States and domiciled in the state of Missouri. He is the son of Kevin Randall Smith and Jackay Smith.

1589. Plaintiff Kayla Michelle Gulley is a citizen of the United States and is domiciled in the state of Missouri. She is the step-daughter of Kevin Randall Smith.

1590. As a result of the July 11, 2007 Terrorist Attack, and the injuries suffered by Kevin Randall Smith, Plaintiffs Jackay Smith, Dylan Smith, L.S., and Kayla Michelle Gulley have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 112. THE JULY 5, 2007 ATTACK – ROUTE LINCOLN, AL ANBAR, KARMAH

### A. PLAINTIFFS THE NICHOLAS TUBBS FAMILY

1591. Plaintiff Nicholas Tubbs is a citizen of the United States and domiciled in the State of Texas.

1592. On July 5, 2007, Nicholas Tubbs, age 20, was serving in the U.S. military in Iraq.

1593. Mr. Tubbs was on patrol with his unit leaving Main Supply Route Lincoln in Karmah when several mortars were detonated in close proximity.

1594. The weapon used to attack and injure Mr. Tubbs was Iranian manufactured/supplied mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1595. As a result of the attack, Nicholas Tubbs suffered shrapnel wounds and injuries to his back, left arm and hand, hearing loss, and a traumatic brain injury. He has also been diagnosed with PTSD, anxiety and depression.

1596. Nicholas Tubbs received extensive medical treatment. Mr. Tubbs was treated at FOB Golden for his immediate injuries. He has since been seen at the Michael E. DeBakey Veterans Affairs Medical Center in Houston, the Richmond VA Outpatient Clinic in Richmond, Texas, and the Conroe, Texas Veterans Administration Center.

1597. As a result of the July 5, 2007 Terrorist Attack, and the injuries he suffered, Nicholas Tubbs has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1598. Plaintiff Troy Meredith is a citizen of the United States and domiciled in the

State of Texas. He is the uncle of Nicholas Tubbs.

1599. Plaintiff Vanessa Meredith is a citizen of the United States and domiciled in the State of Texas. She is the aunt of Nicholas Tubbs.

1600. As a result of the July 5, 2007 Terrorist Attack, and the injuries suffered by Nicholas Tubbs, Plaintiffs Troy Meredith and Vanessa Meredith have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 113. THE JULY 5, 2007 ATTACK – BESMAYA

### A. PLAINTIFF JESSE EVANS

1601. Plaintiff Jesse Evans is a citizen of the United States and domiciled in the State of Alabama.

1602. On July 5, 2007, Jesse Evans, age 27, was serving in the U.S. military in Iraq.

1603. Mr. Evans was in his trailer on FOB Hammer when they came under rocket attack. One of the rockets hit the trailer that Mr. Evans was occupying causing Mr. Evans to be knocked off of his rack, falling face first onto the floor of his living quarters.

1604. The weapon used to attack and injure Mr. Evans was an Iranian-supplied rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1605. As a result of the July 5, 2007 Terrorist Attack, Jesse Evans suffered injuries including bruising to his ribs, PTSD, and depression.

1606. Jesse Evans received extensive medical treatment at the Tennessee Valley Healthcare System, Nashville, Tennessee; VA Gadsden Clinic, Rainbow City, Alabama; Northfield Outpatient Clinic, Murfreesboro, Tennessee; and VA Clarksville Clinic,

Clarksville, Tennessee. Since the attack, he has continued to receive treatment for his injuries sustained in this attack.

1607. As a result of the July 5, 2007 Terrorist Attack, and the injuries he suffered, Jesse Evans has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 114. THE JULY 4, 2007 ATTACK - FALLUJAH

### A. PLAINTIFF TIMOTHY GRANT CHANDLER

1608. Plaintiff Timothy Grant Chandler is a citizen of the United States and domiciled in the State of Florida.

1609. On July 4, 2007, Timothy Grant Chandler, age 28, was serving in the U.S. military in Iraq.

1610. Mr. Chandler was preparing for a convoy with his unit in Fallujah when incoming mortars hit directly next to him.

1611. The weapon used to attack and injure Mr. Chandler were Iranian manufactured/supplied mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1612. As a result of the attack, Timothy Grant Chandler suffered a TBI, migraines, stuttering, PTSD and anxiety.

1613. Timothy Grant Chandler received extensive medical treatment at the hospital in Fallujah. Once back to the states he received physical therapy and speech therapy until his release from the military, he now continues treatment with the VA.

1614. As a result of the July 4, 2007 Terrorist Attack, and the injuries he suffered, Timothy Grant Chandler has past and future noneconomic damages, including severe physical

and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**115. THE JUNE 26, 2007 ATTACK - BAGHDAD**

**A. PLAINTIFFS THE JOHNNY CASTILLO FAMILY**

1615. Plaintiff Johnny Castillo is a citizen of the United States and is domiciled in the State of New York.

1616. On June 26, 2007, Johnny Castillo, age 31, was serving in the U.S. military in Iraq.

1617. Mr. Castillo was in a convoy traveling through the Kamaliyah District of Baghdad, performing his duties as Truck Commander when an IED was detonated next to his vehicle. The blast of the explosion threw Mr. Castillo into the driver's seat on top of the driver, smashed his Gunner's face into the gun, severing his arm, and killing him. They were in a kill zone and were being fired upon from nearby rooftops. Mr. Castillo exited the vehicle and returned fire until the enemies stopped shooting, and was then medevac'd to the Green Zone.

1618. The weapon used to attack and injure Mr. Castillo was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1619. As a result of the attack, Johnny Castillo suffered from a concussion, traumatic brain injury (TBI), broken glass in his neck and hands, permanent nerve damage to his right arm, PTSD, and memory loss.

1620. Johnny Castillo received extensive medical testing and treatment including wound care, MRI's, CT Scans, electromyography (EMG) nerve testing, speech therapy, medications, counseling, and physical therapy.

1621. As a result of the June 26, 2007 Terrorist Attack, and the injuries he suffered, Johnny Castillo has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1622. Plaintiff Laura Castillo is a citizen of the United States and domiciled in the State of New York. She is the wife of Johnny Castillo.

1623. As a result of the June 26, 2007 Terrorist Attack, and the injuries suffered by Johnny Castillo, Plaintiff Laura Castillo has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 116. THE JUNE 24, 2007 ATTACK – SAQLAWIYAH, AL ANBAR

### A. PLAINTIFF KIRK THOMAS MCPHERON

1624. Plaintiff Kirk Thomas McPheron is a citizen of the United States and domiciled in the State of Nevada.

1625. On June 24, 2007, Kirk Thomas McPheron, age 23, was serving in the U.S. military in Iraq.

1626. On June 24, 2007, Mr. McPheron's squad was on security patrol, and when Mr. McPheron went to investigate a suspicious vehicle, he was shot by a sniper.

1627. The weapon used to attack and injure Mr. McPheron was an Iranian manufactured/supplied small arms weapon provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1628. As a result of the attack, Kirk Thomas McPheron was hit in his right arm, scrotum, and thighs and has suffered from muscle loss and sensation in his right arm, muscle and tendon damage in his leg and buttocks, scaring, groin pain, damage to testicles,

hypogonadism, and loss in fertility. Mr. McPheron also suffers from PTSD, Major Depressive Disorder, insomnia, and anxiety.

1629. Kirk Thomas McPheron received extensive medical treatment including in the field and at numerous facilities overseas and in the United States. Mr. McPheron has had multiple surgeries, rehabilitation, therapy, and ongoing treatment for his physical and psychological injuries. Mr. McPheron continues to receive treatment through the VA Southern Nevada Healthcare System.

1630. As a result of the June 24, 2007 Terrorist Attack, and the injuries he suffered, Kirk Thomas McPheron has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 117. THE JUNE 23, 2007 ATTACK - BAGHDAD

### A. PLAINTIFF MATTHEW MCIVOR

1631. Plaintiff Matthew McIvor is a citizen of the United States and domiciled in the State of Iowa.

1632. On June 23, 2007, Matthew McIvor, age 31, was serving in the U.S. military in Iraq.

1633. Mr. McIvor was travelling with his platoon back to his base from picking up some injured soldiers in Baghdad when the vehicle in front of the vehicle he was travelling in was struck by an EFP. Mr. McIvor immediately began assisting and providing emergency field medical care to the soldiers in the front vehicle who were injured in the EFP explosion when he began taking on small arms fire.

1634. The weapon used to attack and injure Mr. McIvor was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-

trained terror operatives in Iraq.

1635. As a result of the attack, Matthew McIvor suffered PTSD.

1636. Matthew McIvor received extensive medical treatment for his injuries, including approximately six months of psychological treatment.

1637. As a result of the June 23, 2007 Terrorist Attack, and the injuries he suffered, Matthew McIvor has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 118. THE JUNE 23, 2007 ATTACK – TARMIYAH

### A. PLAINTIFF JEREMY E. SMITH

1638. Plaintiff Jeremy E. Smith is a citizen of the United States and domiciled in the State of New York.

1639. On June 23, 2007, Jeremy E. Smith, age 26, was serving in the U.S. military in Iraq.

1640. Mr. Smith was in a convoy on patrol with his unit in Hor Al-Bash when his vehicle was struck by an IED.

1641. The weapon used to attack and injure Mr. Smith was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1642. As a result of the attack, Jeremy E. Smith suffered injuries that include, but are not limited to, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

1643. Jeremy E. Smith received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private medical providers.

1644. As a result of the June 23, 2007 Terrorist Attack, and the injuries he suffered, Jeremy E. Smith has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 119. THE MARCH 16, 2007 ATTACK – BASRA PALACE

### A. PLAINTIFFS THE TERRY RAY CARTER FAMILY

1645. Plaintiff Terry Ray Carter is a citizen of the United States and domiciled in the State of Mississippi.

1646. On March 16, 2007, Terry Ray Carter, age 45, was serving in the U.S. military in Iraq.

1647. Mr. Carter was on patrol outside the Basra Palace when incoming mortars struck directly behind him, throwing him into a concrete bunker.

1648. The weapon used to attack and injure Mr. Carter was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1649. As a result of the attack, Terry Ray Carter suffered injuries to his head, neck, spine and hip as well as shrapnel wounds. He has received a diagnosis of PTSD.

1650. Terry Ray Carter received extensive medical treatment. He was assessed at the scene of the attack. Upon his return to the United States, he has received surgery and follow-up medical care at the North Mississippi Medical Center, but also receives treatment at the Veterans Administration Hospital in Memphis, and the Tupelo Veterans Administration Clinic.

1651. As a result of the March 16, 2007 Terrorist Attack, and the injuries he suffered, Terry Ray Carter has past and future noneconomic damages, including severe physical and

mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1652. Plaintiff Linda Carter is a citizen of the United States and domiciled in the State of Mississippi. She is the wife of Terry Ray Carter.

1653. As a result of the March 16, 2007 Terrorist Attack, and the injuries suffered by Terry Ray Carter, Plaintiff Linda Carter has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 120. THE JUNE 21, 2007 ATTACK - BAGHDAD

### A. PLAINTIFF JASON REGESTER

1654. Plaintiff Jason Regester is a citizen of the United States and domiciled in the State of Nevada.

1655. On June 21, 2007, Jason Regester, age 31, was serving in the U.S. military in Iraq.

1656. Mr. Regester was in a trailer located in the Green Zone of Baghdad when the area was attacked with 120 mm rockets.

1657. The weapon used to attack and injure Mr. Regester was an Iranian manufactured/supplied 120mm rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq. In particular, one 120 mm rocket landed within 100 feet of Mr. Regester resulting in him being physically injured.

1658. As a result of the attack, Jason Regester suffered a TBI, tinnitus, PTSD, insomnia, and permanent hearing damage.

1659. Jason Regester received extensive medical treatment for his injuries, including multiple visits to various medical providers/facilities.

1660. As a result of the June 21, 2007 Terrorist Attack, and the injuries he suffered, Jason Regester has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 121. THE JUNE 20, 2007 ATTACK – BAGHDAD

#### A. PLAINTIFF TIM T. JULIANO

1661. Plaintiff Tim T. Juliano is a citizen of the United States and domiciled in the State of New York.

1662. On June 20, 2007, Tim T. Juliano, age 43, was serving in the U.S. military in Iraq.

1663. Mr. Juliano was working in the motor pool area near the flight line at Camp Sather at Baghdad International Airport when an incoming rocket landed and exploded nearby causing Mr. Juliano to be thrown about fifteen feet in the air and landing on the ground.

1664. The weapon used to attack and injure Mr. Juliano was an Iranian manufacture/supplied Rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1665. As a result of the June 20, 2007 Terrorist Attack, Tim T. Juliano suffered significant injuries including, but not limited to, shrapnel injuries to his face, neck, left leg, and cervical spine, torn retina in left eye, fractured eye sockets, fractured facial bones, broken teeth, and compound fracture of right elbow, TBI and PTSD.

1666. Tim T. Juliano received extensive medical treatment including undergoing treatment at the MASH unit on base, Balad Hospital, VA Hospital in Landstuhl, Germany, Walter Reed Medical Center, Richmond VA Medical Center, Buffalo VA Medical Center, and other VA facilities and private medical care providers.

1667. As a result of the June 20, 2007 Terrorist Attack, and the injuries he suffered, Tim T. Juliano has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 122. THE JUNE 20, 2007 ATTACK – BAGHDAD

#### A. PLAINTIFFS THE STEVEN M. PADDISON FAMILY

1668. Plaintiff Steven M. Paddison is a citizen of the United States and domiciled in the State of New York.

1669. On June 20, 2007, Steven M. Paddison, age 47, was serving in the U.S. military in Iraq.

1670. Mr. Paddison was working in the motor pool area near the flight line at Camp Sather at Baghdad International Airport when an incoming rocket landed and exploded nearby causing Mr. Paddison to be thrown about fifteen feet in the air and landing on the ground.

1671. The weapon used to attack and injure Mr. Paddison was an Iranian manufactured/supplied Rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1672. As a result of the attack, Steven M. Paddison suffered significant injuries including shrapnel injuries to his face, back, right elbow, right arm, liver, chest, abdomen, and his left leg. He also injured his left shoulder, fractured three right ribs, had blood coming from his ears, lost consciousness, internal injuries to his diaphragm, liver, and intestines, TBI, tinnitus, hearing loss, PTSD, anxiety, depression, night sweats, nightmares, and hypervigilance.

1673. Steven M. Paddison received extensive medical treatment at the field hospital at BIAP in Baghdad where he was placed in a drug induced coma; the Balad Hospital, Iraq;

Landstuhl Regional Medical Center, Landstuhl, Germany; Walter Reed Army Hospital in Washington, DC where he was treated for approximately three months undergoing numerous surgeries including extensive surgery to rebuild his diaphragm, etc. He has continued to receive treatment at the VA Medical Center in Buffalo, New York, VA Olean Clinic in Olean, New York, as well as Charles Cole Clinic in Shinglehouse, Pennsylvania.

1674. As a result of the June 20, 2007 Terrorist Attack, and the injuries he suffered, Steven M. Paddison has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1675. Plaintiff, Travis Paddison, is a citizen of the United States and is domiciled in the state of Pennsylvania. He is the son of Steven M. Paddison.

1676. Plaintiff, Emily Paddison, is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the daughter of Steven M. Paddison.

1677. Plaintiff, James Paddison, is a citizen of the United States and is domiciled in the state of Pennsylvania. He is the father of Steven M. Paddison.

1678. Plaintiff, Eileen Paddison, is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the mother of Steven M. Paddison.

1679. Plaintiff, Russell Paddison, is a citizen of the United States and is domiciled in the state of New York. He is the brother of Steven M. Paddison.

1680. Plaintiff, Karen Burr, is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the sister of Steven M. Paddison.

1681. Plaintiff, Jennifer Lewis, is a citizen of the United States and is domiciled in the state of New York. She is the sister of Steven M. Paddison.

1682. As a result of the June 20, 2007 Terrorist Attack, and the injuries suffered by Steven M. Paddison, Plaintiffs, Travis Paddison, Emily Paddison, James Paddison, Eileen Paddison, Russell Paddison, Karen Burr, and Jennifer Lewis have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 123. THE JUNE 15, 2007 ATTACK—DORA MARKET, BAGHDAD

#### A. PLAINTIFFS THE DAVID MATTHEW BUTCHER FAMILY

1683. Plaintiff David Matthew Butcher is a citizen of the United States and is domiciled in the State of Michigan.

1684. On June 15, 2007, David Matthew Butcher, age 26, was serving in the U.S. military in Iraq.

1685. Mr. Butcher's company had received a call on the radio to check out a possible IED. While he and his crew slowly started advancing down the suspect street sweeping for IED's, his vehicle ran through some water in the road and an IED was detonated. Mr. Butcher suffered a concussion and was disoriented for a while, and then when he went to help his driver out of the vehicle, only the top half of the driver's body came out of the vehicle.

1686. The weapon used to attack and injure Mr. Butcher was an Iranian manufactured/supplied IED provided by Iran and/or one of its Agents or Proxies to Iranian-funded and Iranian-trained terror operatives in Iraq.

1687. As a result of the June 15, 2007 Terrorist Attack, Mr. Butcher suffered a severe concussion, brain bleed, Traumatic Brain Injury (TBI), post-traumatic stress disorder (PTSD), severe depression, anxiety,

1688. Mr. Butcher received extensive medical treatment for his injuries suffered in the

terrorist attack. Directly following the attack, Mr. Butcher was treated for approximately seven days in the Green Zone, Baghdad hospital. He later received rehabilitation treatment for concussion and PTSD at Irwin Army Community Hospital. He subsequently was treated at the Traverse City Outpatient VA Clinic, with further treatment at Munson Medical Center for PTSD and counseling. He has received in-patient treatment, counseling, and medication for PTSD at Battle Creek VA Medical Center.

1689. As a result of the June 15, 2007 attack, David Matthew Butcher has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1690. Plaintiff Gloria Marie Butcher is a citizen of the United States and is domiciled in the State of Michigan. She is the wife of David Matthew Butcher.

1691. Plaintiff B.W.B., a minor, represented by his legal guardians Gloria Marie Butcher and David Matthew Butcher, is a citizen of the United States and domiciled in the State of Michigan. He is the son of Gloria Marie Butcher and David Matthew Butcher.

1692. Plaintiff Elizabeth Duff Speaks is a citizen of the United States and is domiciled in the State of Oklahoma. She is the mother of David Matthew Butcher.

1693. Plaintiff Leslie Glenn Speaks is a citizen of the United States and is domiciled in the State of Oklahoma. He is the step-father of David Matthew Butcher.

1694. As a result of the June 15, 2007 Terrorist Attack, and the injuries suffered by David Matthew Butcher, Plaintiffs Gloria Marie Butcher, B.W.B., a minor, Elizabeth Duff Speaks, and Leslie Glenn Speaks have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of

consortium, and past and future economic damages, including loss of services.

### 124. THE JUNE 11, 2007 ATTACK - BAGHDAD

### A. PLAINTIFFS THE NOAH P. MUTRIE FAMILY

1695. Plaintiff Noah P. Mutrie is a citizen of the United States and domiciled in the State of New York.

1696. On June 11, 2007, Noah P. Mutrie, age 25, was serving in the U.S. military in Iraq.

1697. Mr. Mutrie was in a convoy on patrol with his unit on Route Tampa in Baghdad when his vehicle was struck by an IED.

1698. The weapon used to attack and injure Mr. Mutrie was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1699. As a result of the attack, Noah P. Mutrie suffered injuries that include, but are not limited to, a concussion, Post-Traumatic Stress Disorder ("PTSD"), social disorder, anger issues, anxiety, and depression.

1700. Noah P. Mutrie received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private medical providers.

1701. As a result of the June 11, 2007 Terrorist Attack, and the injuries he suffered, Noah P. Mutrie has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1702. Plaintiff Ashley Mutrie is a citizen of the United States and domiciled in the State of New York. She is the wife of Noah P. Mutrie.

1703. Plaintiff B.M., a minor, represented by his legal guardians Noah P. Mutrie and Ashley Mutrie, is a citizen of the United States and domiciled in the State of New York. He is the son of Noah P. Mutrie.

1704. Plaintiff J.M., a minor, represented by his legal guardians Noah P. Mutrie and Ashley Mutrie, is a citizen of the United States and domiciled in the State of New York. He is the son of Noah P. Mutrie.

1705. Plaintiff Alexandra Mutrie is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Noah P. Mutrie.

1706. As a result of the June 11, 2007 Terrorist Attack, and the injuries suffered by Noah P. Mutrie, Plaintiff's Ashley Mutrie, B.M., J.M., and Alexandra Mutrie have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 125. THE JUNE 9, 2007 ATTACK - BAQUBAH

### A. PLAINTIFFS THE SCOTT A. MILLER FAMILY

1707. Plaintiff Scott A. Miller was a citizen of the United States and domiciled in the State of Wyoming.

1708. On June 9, 2007, Scott A. Miller, age 20, was serving in the U.S. military in Iraq.

1709. Mr. Miller was on foot patrol in Baqubah when he was attacked by small arms fire and killed by a sniper.

1710. The weapon used to attack and injure Mr. Miller was an Iranian manufactured/supplied small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1711. As a result of the attack, Scott A. Miller suffered injuries including, but not limited to, death.

1712. Mr. Miller received extensive medical treatment prior to his death.

1713. As a result of the June 9, 2007 Terrorist Attack, and the injuries and death suffered by Scott A. Miller, Plaintiffs Susan E. Miller, Robert D. Miller, Mark D. Miller and Paul E. Miller have experienced, and continue to experience, severe mental anguish, extreme emotional pain and suffering, and loss of Scott A. Miller's society, companionship, comfort, advice and counsel.

1714. Plaintiff Susan E. Miller is a citizen of the United States and domiciled in the State of Wyoming. She is the mother of Scott A. Miller.

1715. Plaintiff Robert D. Miller is a citizen of the United States and domiciled in the State of Wyoming. He is the father of Scott A. Miller.

1716. Plaintiff Mark D. Miller is a citizen of the United States and domiciled in the State of Wyoming. He is the brother of Scott A. Miller.

1717. Plaintiff Paul E. Miller is a citizen of the United States and domiciled in the State of Wyoming. He is the brother of Scott A. Miller.

1718. Plaintiff Susan E. Miller brings an action individually, and on behalf of the anticipated Estate of Scott A. Miller, and all heirs thereof, as its legal representative.

1719. As a result of the June 9, 2007 Terrorist Attack, and the injuries suffered by Scott A. Miller, Plaintiffs Susan E. Miller, Robert D. Miller, Mark D. Miller and Paul E. Miller have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 126. THE JUNE 6, 2007 ATTACK – BAYJI

### A. PLAINTIFFS THE GEORDAN EDWARD GANKA FAMILY

1720. Plaintiff Geordan Edward Ganka is a citizen of the United States and domiciled in the State of Georgia.

1721. On June 6, 2007, Geordan Edward Ganka, age 23, was serving in the U.S. military in Iraq.

1722. Mr. Ganka was transporting materials in an armored security vehicle and was part of a convoy when an explosively formed penetrator struck the vehicle he was riding in while he was near Bayji, Iraq and traveling south on Main Supply Route Tampa.

1723. The weapon used to attack and injure Mr. Ganka was an Iranian manufactured/supplied explosively formed penetrator provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1724. As a result of the attack, Geordan Edward Ganka suffered a concussion, post-traumatic stress disorder, tinnitus, anxiety, and insomnia.

1725. Geordan Edward Ganka received extensive medical treatment at the Atlanta VA Medical Center.

1726. As a result of the June 6, 2007 Terrorist Attack, and the injuries he suffered, Geordan Edward Ganka has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1727. Plaintiff Thomas Alan Ganka is a citizen of the United States and domiciled in the State of Georgia. He is the father of Geordan Edward Ganka.

1728. Plaintiff Charles Thomas Ganka is a citizen of the United States and domiciled in the State of California. He is the brother of Geordan Edward Ganka.

1729. Plaintiff Thomas Jared Ganka is a citizen of the United States and domiciled in the State of Georgia. He is the brother of Geordan Edward Ganka.

1730. As a result of the June 6, 2007 Terrorist Attack, and the injuries suffered by Geordan Edward Ganka, Plaintiff Thomas Alan Ganka, Charles Thomas Ganka, and Thomas Jared Ganka have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

**127. THE JUNE 3, 2007 ATTACK – BAQUBAH**

**A. PLAINTIFFS THE MICHAEL F. JACKSON FAMILY**

1731. Plaintiff Michael F. Jackson is a citizen of the United States and domiciled in the State of South Carolina.

1732. On June 3, 2007, Michael F. Jackson, age 28, was serving in the U.S. military in Iraq.

1733. Mr. Jackson was in his quarters at Forward Operating Base ("FOB") Warhorse when there was a VBIED attack and chlorine chemical attack on his FOB.

1734. The weapons used to attack and injure Mr. Jackson were Iranian manufactured/supplied Vehicle-Borne Improvised Explosive Device and ("VBIED") and chemical gas weapons provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1735. As a result of the attack, Michael F. Jackson suffered injuries that include, but are not limited to, chemically induced asthma and Post-Traumatic Stress Disorder ("PTSD").

1736. Michael F. Jackson received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

1737. As a result of the June 3, 2007 Terrorist Attack, and the injuries he suffered, Michael F. Jackson has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1738. Plaintiff Michele A. Bruno is a citizen of the United States and domiciled in the State of South Carolina. She is the mother of Michael F. Jackson.

1739. As a result of the June 3, 2007 Terrorist Attack, and the injuries suffered by Michael F. Jackson, Plaintiff' Michele A. Bruno has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 128. THE JUNE 2007 ATTACK – AR-RUTBAH

### A. PLAINTIFF CARLOS ANTONIO MARTINEZ

1740. Plaintiff Carlos Antonio Martinez is a citizen of the United States and domiciled in the State of New York.

1741. In June 2007, Mr. Martinez, age 20, was serving in the U.S. military in Iraq.

1742. Mr. Martinez was the first Humvee out of four that were on patrol on the outer parts of Ar-Rutbah. They began taking on gun fire bouncing off of the Humvee. They got into a cover position until the firing stopped. They proceeded to return fire and search the area for the shooter.

1743. The weapons and/or training used to attack and injure Mr. Martinez were provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1744. As a result of the attack, Mr. Carlos Martinez suffered from tinnitus, PTSD, and severe sleeping disorder.

1745. Mr. Carlos Martinez received medical treatment and continues to receive treatment at the James J. Paterson VA Medical Center.

1746. As a result of the June 2007 Terrorist Attack, and the injuries he suffered, Mr. Carlos Martinez has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 129. THE MAY 30, 2007 ATTACK – RISALA

#### A. PLAINTIFF MATTHEW BADILLO

1747. Plaintiff Matthew Badillo is a citizen of the United States and domiciled in the State of West Virginia.

1748. On May 30, 2007, Matthew Badillo, age 24, was serving in the U.S. military in Iraq.

1749. Mr. Badillo was on patrol with his unit in Risala when his vehicle was struck by an IED.

1750. The weapon used to attack and injure Mr. Badillo was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1751. As a result of the attack, Matthew Badillo suffered injuries including, but not limited to, burns to the face and hands, smoke inhalation, respiratory issues, Post-Traumatic Stress Disorder ("PTSD").

1752. Matthew Badillo received extensive medical treatment, including past and ongoing care for these injuries, at the scene of the attack, various Veterans Medical Centers and private practices.

1753. As a result of the May 30, 2007 Terrorist Attack, and the injuries he suffered,

Matthew Badillo has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 130. THE MAY 27, 2007 ATTACK - MOSUL

### A. PLAINTIFF CHRISTOPHER F. SWARTZ

1754. Plaintiff Christopher F. Swartz is a citizen of the United States and domiciled in the State of Kansas.

1755. On May 27, 2007, Christopher F. Swartz, age 23, was serving in the U.S. military in Iraq.

1756. Mr. Swartz was traveling in a convoy with his unit from his base, on the way to Mosul, when his vehicle was struck by an EFP.

1757. The weapon used to attack and injure Mr. Swartz was an Iranian manufactured/supplied Explosively Formed Penetrator ("EFP") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1758. As a result of the attack, Christopher F. Swartz suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), concussion, headaches, contusions from shrapnel fragments, memory loss, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

1759. Christopher F. Swartz received medical treatment, including past and ongoing care for these injuries, at his military base and a hospital in Tikrit, Iraq. He also treated at several Veterans Medical Centers, military hospitals and private hospitals.

1760. As a result of the May 27, 2007 Terrorist Attack, and the injuries he suffered, Christopher F. Swartz has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic

damages, including medical expenses, lost income, and loss of earning capacity.

## 131. THE MAY 25, 2007 ATTACK – AL ANBAR

### A. PLAINTIFF CORY ROBERT HOWARD

1761. Plaintiff Cory Robert Howard is a citizen of the United States and domiciled in the State of Pennsylvania.

1762. On May 25, 2007, Cory Robert Howard, age 25, was serving in the U.S. military in Iraq.

1763. Mr. Howard was on patrol with his unit when his vehicle was struck by an IED.

1764. The weapon used to attack and injure Mr. Howard was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1765. As a result of the attack, Cory Robert Howard suffered a broken leg and foot, had pieces of engine embedded in his leg, burns, broken nose, loss of his forearm muscle, a TBI, tinnitus and PTSD.

1766. Cory Robert Howard received extensive medical treatment as he was immediately medevac'd to Balad for surgery and stabilization before sending him to Germany. Once there he underwent more surgeries before being transferred to Brooks Army Medical Center in Texas where he was placed in a medically induced coma for 3 weeks and was an inpatient of over 30 days.

1767. As a result of the May 25, 2007 Terrorist Attack, and the injuries he suffered, Cory Robert Howard has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 132. THE MAY 22, 2007 ATTACK –TAJI

### A. PLAINTIFFS THE KRISTOPHER ALLAN HIGDON FAMILY

1768. Kristopher Allan Higdon was a citizen of the United States and domiciled in the State of Washington at the time of his death.

1769. On May 22, 2007, Kristopher Allan Higdon, age 25, was serving in the U.S. military in Iraq.

1770. Mr. Higdon was on patrol with his unit in Taji, Iraq when an IED exploded under his Stryker.

1771. The weapon used to attack and kill Mr. Higdon was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1772. As a result of the attack, Kristopher Allan Higdon died at the scene.

1773. Plaintiff Ronda Elaine Higdon is a citizen of the United States and domiciled in the State of Texas. She is the mother of Kristopher Allan Higdon.

1774. Plaintiff Britton Higdon is a citizen of the United States and domiciled in the State of Texas. He is the brother of Kristopher Allan Higdon.

1775. As a result of the May 22, 2007 Terrorist Attack, and the injuries suffered by and death of Kristopher Allan Higdon, Plaintiffs Ronda Elaine Higdon and Britton Higdon have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Kristopher Allan Higdon's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Kristopher Allan Higdon.

## 133. THE MAY 22, 2007 ATTACK - TAJI

### A. PLAINTIFFS THE ROBERT ADRIAN WORTHINGTON FAMILY

1776. Plaintiff Robert Adrian Worthington was a citizen of the United States and domiciled in the State of Georgia at the time of his death.

1777. On May 22, 2007, Mr. Worthington, age 19, was serving in the U.S. military in Iraq.

1778. Mr. Worthington was in a Stryker convoy providing backup to another Stryker on patrol when multiple IEDs exploded, injuring and killing Mr. Worthington.

1779. The weapons used to attack and kill Mr. Worthington were Iranian manufactured/supplied IEDs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1780. As a result of the May 22, 2007 Terrorist Attack, Mr. Worthington sustained severe injuries and died from those injuries.

1781. Plaintiff Rhonda S. Worthington is a citizen of the United States and domiciled in the State of Georgia. She is the mother of Robert Adrian Worthington.

1782. Plaintiff Kaylin Worthington is a citizen of the United States and domiciled in the State of Georgia. She is the sister to Robert Adrian Worthington.

1783. Plaintiff Rhonda S. Worthington brings an action individually, and on behalf of the Estate of Robert Adrian Worthington, and all heirs thereof, as its legal representative.

1784. As a result of the May 22, 2007 Terrorist Attack, and the injuries suffered by the death of Robert Adrian Worthington, Plaintiffs Rhonda S. Worthington and Kaylin Worthington have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Robert Adrian Worthington's society, services,

companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Robert Adrian Worthington.

## 134. THE MID-MAY 2007 ATTACK - BAGHDAD

### A. PLAINTIFFS THE GIOVANNI A. AVALOS FAMILY

1785. Plaintiff Giovani A. Avalos is a citizen of the United States and domiciled in the State of California.

1786. In Mid-May 2007, Giovanni A. Avalos, age 23, was serving in the U.S. military in Iraq.

1787. Mr. Avalos was on patrol with his unit in Baghdad when he was injured by an IED.

1788. The weapon used to attack and injure Mr. Avalos was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1789. As a result of the attack, Giovanni A. Avalos suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), a back injury, eardrum damage, hearing loss, Post-Traumatic Stress Disorder ("PTSD"), anger, anxiety, and depression.

1790. Giovanni A. Avalos received extensive medical treatment, including past and ongoing care for these injuries, at his military base, Veterans Medical Centers and private hospitals.

1791. As a result of the May 2007 Terrorist Attack, and the injuries he suffered, Giovanni A. Avalos has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1792. Plaintiff Maria Avalos is a citizen of the United States and domiciled in the

State of California. She is the wife of Giovanni A. Avalos.

1793. Plaintiff J.A., a minor, represented by his legal guardians Giovanni A. Avalos and Maria Avalos, is a citizen of the United States and domiciled in the State of California. He is the son of Giovanni A. Avalos and Maria Avalos.

1794. As a result of the May 2007 Terrorist Attack, and the injuries suffered by Giovanni A. Avalos, Plaintiffs Maria Avalos and J.A. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 135. THE MAY 13, 2007 ATTACK – WESTERN BAGHDAD

### A. PLAINTIFF JERRY MATTHEW TEAL

1795. Plaintiff Jerry Matthew Teal is a citizen of the United States and domiciled in the State of South Carolina.

1796. On May 13, 2007, Jerry Matthew Teal, age 25, was serving in the U.S. military in Iraq.

1797. Mr. Teal was on patrol with his unit in Western Baghdad when his vehicle was struck with an IED.

1798. The weapon used to attack and injure Mr. Teal was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1799. As a result of the attack, Jerry Matthew Teal suffered a TBI, tinnitus and PTSD.

1800. Jerry Matthew Teal received extensive medical treatment immediately following the attack at the base and continues treatment with the VA.

1801. As a result of the May 13, 2007 Terrorist Attack, and the injuries he suffered,

Jerry Matthew Teal has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 136. THE MAY 12, 2007 ATTACK – NEAR UM QASR FROM CAMP BUCCA

#### A. PLAINTIFFS THE DAVID KEVIN GASKIN FAMILY

1802. Plaintiff David Kevin Gaskin is a citizen of the United States and domiciled in the State of New York.

1803. On May 12, 2007, David Kevin Gaskin, age 32, was serving in the U.S. military in Iraq.

1804. Mr. Gaskin's unit was hit with an IED while traveling to Camp Bucca near um Qasr.

1805. The weapon used to attack and injure Mr. Gaskin was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1806. As a result of the attack, David Kevin Gaskin has been diagnosed with PTSD.

1807. David Kevin Gaskin received extensive medical treatment. He has been seen at the following facilities: Manhattan Veterans Administration Facility, and the Wounded Warrior Transition Unit in Fort Belvoir, Virginia.

1808. As a result of the May 12, 2007 Terrorist Attack, and the injuries he suffered, David Kevin Gaskin has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1809. Plaintiff Damil Gaskin is a citizen of the United States and domiciled in the

State of New York. He is the son of David Kevin Gaskin.

1810. Plaintiff D.G., a minor, represented by his legal guardian David Kevin Gaskin, is a citizen of the United States and domiciled in the State of New York. He is the son of David Kevin Gaskin.

1811. As a result of the May 12, 2007 Terrorist Attack, and the injuries suffered by David Kevin Gaskin, Plaintiffs Damil Gaskin and D.G., a minor, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 137. THE MAY 3, 2007 ATTACK – BAQUBAH

### A. PLAINTIFFS THE JUSTIN L. CAMPLIN FAMILY

1812. Plaintiff Justin L. Camplin is a citizen of the United States and domiciled in the State of Kansas.

1813. On May 3, 2007, Justin L. Camplin, age 20, was serving in the U.S. military in Iraq.

1814. Mr. Camplin was driving a Stryker vehicle as part of 5-vehicle convoy on Route Victory when it was struck by an IED.

1815. The weapon used to attack and injure Mr. Camplin was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1816. As a result of the attack, Justin L. Camplin suffered injuries to his neck, spine, nerve damage to his left side, TBI, tinnitus, PTSD, depression, and anxiety.

1817. Justin L. Camplin received extensive medical treatment at Balad Air Base Hospital, Landstuhl Regional Medical Center, Brooke Army Medical Center, Madigan Army

Medical Center, and Las Vegas VA Medical Center.

1818. As a result of the May 3, 2007 Terrorist Attack, and the injuries he suffered, Justin L. Camplin has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1819. Plaintiff, T.C., a minor child, is a citizen of the United States, and is domiciled in the state of Kansas. He is the son of Justin L. Camplin.

1820. Plaintiff, C.C., a minor child, is a citizen of the United States and is domiciled in the state of Kansas. She is the daughter of Justin L. Camplin.

1821. Plaintiff, M.C., a minor child, is a citizen of the United States and is domiciled in the state of Kansas. She is the daughter of Justin L. Camplin.

1822. As a result of the May 3, 2007 Terrorist Attack, and the injuries suffered by Justin L. Camplin, Plaintiffs, T.C., a minor child, C.C., a minor child, and M.C., a minor child, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 138. THE MAY 1, 2007 ATTACK - BAGHDAD

### A. PLAINTIFF WILLIAM COLBY FRASIER

1823. Plaintiff William Colby Frasier is a citizen of the United States and domiciled in the State of Kentucky.

1824. On May 1, 2007, William Colby Frasier, age 21, was serving in the U.S. military in Iraq.

1825. Mr. Frasier's COB was attacked. After giving chase to the attackers, his vehicle was struck by an EFP.

1826. The weapon used to attack and injure Mr. Frasier was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1827. As a result of the attack, William Colby Frasier suffered shrapnel wounds to his right arm and hearing loss.

1828. William Colby Frasier received extensive medical treatment to remove the shrapnel, contend with his hearing loss and treat his significant PTSD and depression.

1829. As a result of the May 1, 2007 Terrorist Attack, and the injuries he suffered, William Colby Frasier has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 139. THE APRIL 27, 2007 ATTACK – SALAH AL DIN PROVINCE

### A. PLAINTIFFS THE CRAIG S. HALL FAMILY

1830. Plaintiff Craig S. Hall is a citizen of the United States and domiciled in the State of Massachusetts.

1831. On April 27, 2007, Craig S. Hall, age 26, was serving in the U.S. military in Iraq.

1832. Mr. Hall was traveling outside the City of Samarra when his vehicle was struck by an IED.

1833. The weapon used to attack and injure Mr. Hall was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1834. As a result of the attack, Craig S. Hall suffered injuries that include, but are not limited to, a fractured left leg, fractured fibula, fractured heel in left foot, Traumatic Brain

Injury ("TBI") and Post-Traumatic Stress Disorder ("PTSD").

1835. Craig S. Hall received extensive medical treatment at the scene of the attack, Camp Speicher, Brooke Army Medical Center, other Veterans Medical Centers and various private practices.

1836. As a result of the April 27, 2007 Terrorist Attack, and the injuries he suffered, Craig S. Hall has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1837. Plaintiff D.H., a minor, represented by his legal guardian Craig S. Hall, is a citizen of the United States and domiciled in the State of Massachusetts. He is the son of Craig S. Hall.

1838. As a result of the April 27, 2007 Terrorist Attack, and the injuries suffered by Craig S. Hall, Plaintiff D.H. has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 140. THE APRIL 27, 2007 ATTACK – FALLUJAH

### A. PLAINTIFF GUILLERMO CASTILLO

1839. Plaintiff Guillermo Castillo is a citizen of the United States and domiciled in the State of Florida.

1840. On April 27, 2007, Guillermo Castillo, age 28, was serving in the U.S. military in Iraq.

1841. Mr. Castillo and his unit were in Fallujah, Iraq on their way back to their base from clearing a landing field to be used by medical-evacuation helicopters when an IED exploded near the vehicle Mr. Castillo was traveling in.

1842. The weapon used to attack and injure Mr. Castillo was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1843. As a result, the attack, Guillermo Castillo suffered loss of left leg at the knee, injury to right leg, permanent partial vision loss, broken jaw, fractured skull, PTSD, anxiety, and depression.

1844. Guillermo Castillo received extensive medical treatment; he endured multiple lifesaving surgeries involving the loss of his left leg and injury to his right leg and has had extensive physical therapy for his prosthetics.

1845. As a result of the April 27, 2007 Terrorist Attack, and the injuries he suffered, Guillermo Castillo has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 141. THE APRIL 20, 2007 ATTACK – SAQLAWIA

### A. PLAINTIFF STEVEN ANDREW MAY

1846. Plaintiff Steven Andrew May is a citizen of the United States and domiciled in the State of Texas.

1847. On April 20, 2007, Steven Andrew May, age 20, was serving in the U.S. military in Iraq.

1848. Mr. May was conducting security operations at a roadside check point atop a highway overpass near MSR Mobil when he was attacked by a suicide VBIED.

1849. The weapon used to attack and injure Mr. May was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1850. As a result of the attack, Steven Andrew May suffered severe spinal injuries, concussive blast injuries, multiple broken bones, hearing loss, and PTSD.

1851. Steven Andrew May received extensive medical treatment at Al Taqaddum CSH, Balad Air Force Base, Landstuhl Regional Medical Center, Walter Reed National Medical Center, Michael DeBakey VA Hospital, and other medical facilities.

1852. As a result of the April 20, 2007 Terrorist Attack, and the injuries he suffered, Steven Andrew May has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 142. THE APRIL 2, 2007 ATTACK - FALLUJAH

### A. PLAINTIFF IAN REESER

1853. Plaintiff Ian Reeser is a citizen of the United States and domiciled in the State of Indiana.

1854. On April 2, 2007, Ian Reeser, age 26, was serving in the U.S. military in Iraq.

1855. Mr. Reeser was on a mission to remove chemical weapons from a home. He was exiting his Humvee when the Humvee in front of him set off an IED resulting in severe bodily injury to Mr. Reeser.

1856. The weapon used to attack and injure Mr. Reeser was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1857. As a result of the attack, Ian Reeser suffered bodily injury including shrapnel being lodged in his left leg, a concussion, PTSD, and a TBI.

1858. Ian Reeser received extensive medical treatment for his injuries, including multiple medical and psychological treatments provided by various medical providers at

various medical facilities.

1859. As a result of the April 2, 2007 Terrorist Attack, and the injuries he suffered, Ian Reeser has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 143. THE APRIL 2007 ATTACK – BAQUBAH

#### A. PLAINTIFFS THE MICHAEL F. JACKSON FAMILY

1860. Plaintiff Michael F. Jackson is a citizen of the United States and domiciled in the State of South Carolina.

1861. In April 2007, Michael F. Jackson, age 28, was serving in the U.S. military in Iraq.

1862. Mr. Jackson was at FOB Gabe in Baqubah, when a mortar in the ground detonated and struck Mr. Jackson.

1863. The weapon used to attack and injure Mr. Jackson was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1864. As a result of the attack, Michael F. Jackson suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), shrapnel to the right leg, and Post-Traumatic Stress Disorder ("PTSD").

1865. Michael F. Jackson received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

1866. As a result of the April 2007 Terrorist Attack, and the injuries he suffered, Michael F. Jackson has past and future noneconomic damages, including severe physical and

mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1867. Plaintiff Michele A. Bruno is a citizen of the United States and domiciled in the State of South Carolina. She is the mother of Michael F. Jackson.

1868. As a result of the April 2007 Terrorist Attack, and the injuries suffered by Michael F. Jackson, Plaintiff' Michele A. Bruno has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 144. THE MARCH 31, 2007 ATTACK – ROUTE RAIDERS AND ROUTE ASH, BAGHDAD

#### A. PLAINTIFF GILBERT PAUL PAIZ, JR.

1869. Plaintiff Gilbert Paul Paiz, Jr. is a citizen of the United States and domiciled in the State of Virginia.

1870. On March 31, 2007, Gilbert Paul Paiz, Jr., age 26, was serving in the U.S. military in Iraq.

1871. Mr. Paiz was on patrol with his unit on Route Raiders and Route Ash in Baghdad, Iraq when rocket propelled grenades struck his Humvee.

1872. The weapon used to attack and injure Mr. Paiz was an Iranian manufactured/supplied rocket propelled grenade provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1873. As a result of the attack, Gilbert Paul Paiz, Jr. suffered from shrapnel injuries from his buttocks to his calves on both left and right legs. He has received a diagnosis of PTSD and depression.

1874. Gilbert Paul Paiz, Jr. received extensive medical treatment. He was treated at

Camp Norris for his injuries, and transported to the Green Zone hospital in Baghdad for surgery to remove the shrapnel. Upon his return to the United States, he has received medical care at Fort Hood in Killeen, Texas, but now receives treatment at the McGuire-Holmes Mental Health Clinic in Richmond, Virginia.

1875. As a result of the March 31, 2007 Terrorist Attack, and the injuries he suffered, Gilbert Paul Paiz, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 145. THE MARCH 30, 2007 ATTACK – MOSUL

### A. PLAINTIFF RICHARD L. BURGE

1876. Plaintiff Richard L. Burge is a citizen of the United States and domiciled in the State of Florida.

1877. On March 30, 2007, Richard L. Burge, age 20, was serving in the U.S. military in Iraq.

1878. Mr. Burge was traveling in a convoy with his unit on Route Tampa just outside of Mosul, when his vehicle was struck by an IED.

1879. The weapon used to attack and injure Mr. Burge was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1880. As a result of the attack, Richard L. Burge suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), optic nerve damage to both eyes, a back injury requiring several surgeries, migraine headaches, hearing loss, Post-Traumatic Stress Disorder ("PTSD"), sleep disorder, sleep apnea, anxiety, and depression.

1881. Richard L. Burge received extensive medical treatment, including past and

ongoing care for these injuries, at Q West military base, Schofield Barracks Army Hospital, Fort Bliss Army Hospital, El Paso Veterans Medical Centers, and other veterans and military hospitals.

1882. As a result of the March 30, 2007 Terrorist Attack, and the injuries he suffered, Richard L. Burge has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 146. THE MARCH 29, 2007 ATTACK – BAGHDAD

### A. PLAINTIFFS THE MANUEL ROMAN FAMILY

1883. Plaintiff Manuel Roman is a citizen of the United States and domiciled in the Commonwealth of Puerto Rico.

1884. On March 29, 2007, Manuel Roman, age 31, was serving in the U.S. military, in Iraq.

1885. Mr. Roman was on patrol doing route clearance with his unit just outside Camp Liberty in Baghdad when his vehicle was struck by an Explosively Formed Penetrator (EFP).

1886. The weapon used to attack and injure Mr. Roman was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1887. As a result of the attack, Manuel Roman suffered severe shrapnel injuries to his buttocks, legs, and back, including a large hole to the lower right side of his back. He also suffered severe bleeding, with the wounds so large and deep that they could not be stitched up. He struck his head and lost consciousness. He has also suffered Traumatic Brain Injury (TBI), and Post Traumatic Stress Disorder (PTSD).

1888. Manuel Roman received extensive medical treatment, initially in the Green

Zone where his wounds were stabilized before being medically evacuated to Landstuhl Regional Medical Center in Germany, where his wounds were cleaned and further stabilized. From Landstuhl, Germany, Mr. Roman was flown back to the United States where he underwent surgery at Walter Reed Army Medical Center. Mr. Roman's medical care has been ongoing since the attack occurred, at present he continues his treatment at the Veteran's Affairs Caribbean Healthcare System.

1889. As a result of the March 29, 2007 Terrorist Attack, and the injuries he suffered, Manuel Roman has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1890. Plaintiff Marco Anthony Roman is a citizen of the United States and domiciled in the State of Massachusetts. He is the brother of Plaintiff, Manuel Roman.

1891. Plaintiff Maria Christina Murphy is a citizen of the United States and domiciled in the State of Kansas. She is the sister of Plaintiff, Manuel Roman.

1892. Plaintiff Estrella Roman Padilla is a citizen of the United States and domiciled in the commonwealth of Puerto Rico. She is the mother of Plaintiff, Manuel Roman.

1893. Plaintiff Manuel Roman, Sr. is a citizen of the United States and domiciled in the commonwealth of Puerto Rico. He is the father of Plaintiff, Manuel Roman.

1894. Plaintiff Thalia Yarie Roman is a citizen of the United States and domiciled in the State of Connecticut. She is the daughter of Plaintiff, Manuel Roman.

1895. Plaintiff Aracellys Jasmin Roman is a citizen of the United States and domiciled in the State of Connecticut. She is the daughter of Plaintiff, Manuel Roman.

1896. Plaintiff Jamilex Yali Roman is a citizen of the United States and domiciled in

the State of New York. She is the daughter of Plaintiff, Manuel Roman.

1897. As a result of the March 29, 2007 Terrorist Attack, and the injuries suffered by Manuel Roman, Plaintiffs Marco Anthony Roman, Maria Christina Murphy, Estrella Roman Padilla, Manuel Roman, Sr., Thalia Yarie Roman, Aracellys Jasmin Roman, and Jamilex Yali Roman have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 147. THE MARCH 29, 2007 ATTACK – DIYALA PROVINCE

### A. PLAINTIFFS THE STEPHEN K. VALYOU FAMILY

1898. Plaintiff Stephen K. Valyou is a citizen of the United States and is domiciled in the State of New York.

1899. On March 29, 2007, Stephen K. Valyou, age 31, was serving in the U.S. military in Iraq.

1900. Mr. Valyou's unit was disarming IEDs in Diyala Province, near the Iranian border, north of Miqdudiyah when a sniper shot him in the torso side plate.

1901. The weapon used to attack and injure Mr. Valyou was an Iranian manufactured/supplied sniper rifle provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1902. As a result of the attack, Stephen K. Valyou is paralyzed from the waist down and has PTSD.

1903. Stephen K. Valyou has had multiple surgeries on his back and spinal cord. He has also had spinal cord treatments and extensive physical therapy for his back and treatment for his PTSD.

1904. As a result of the March 29, 2007 Terrorist Attack, and the injuries he suffered,

Stephen K. Valyou has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1905. Plaintiff N.V., a minor, represented by his legal guardian, Stephen K. Valyou, is a citizen of the United States and is domiciled in the state of New York. He is the son of Stephen K. Valyou.

1906. As a result of the March 29, 2007 Terrorist Attack, and the injuries suffered by Stephen K. Valyou, Plaintiff N.V. has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 148. THE MARCH 26, 2007 ATTACK- ROUTE IRISH, OUTSIDE OF BAGHDAD

#### A. PLAINTIFFS THE MICHAEL LEE OWEN BOLLEY FAMILY

1907. Plaintiff Michael Lee Owen Bolley is a citizen of the United States and domiciled in the State of Nevada.

1908. On March 26, 2007, Michael Lee Owen Bolley, age 38, was serving in the U.S. military in Iraq.

1909. Mr. Bolley was on patrol with his unit traveling north on Route Irish, outside of Baghdad when a VBIED drove into an adjacent Iraqi unit. He then took on small arms fire.

1910. The weapon used to attack and injure Mr. Bolley was an Iranian manufactured/supplied VBIED and small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1911. As a result of the attack, Michael Lee Owen Bolley suffered a fracture in his back, injuries to his neck a traumatic brain injury and PTSD.

1912. Michael Lee Owen Bolley received extensive medical treatment from the following facilities: George Wahlen Veterans Administration Hospital in Salt Lake City, Nevada, and the Elko VA Clinic in Elko, Nevada.

1913. As a result of the March 26, 2007 Terrorist Attack, and the injuries he suffered, Michael Lee Owen Bolley has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1914. Plaintiff Dakoda Marie Bolley is a citizen of the United States and is domiciled in the state of Idaho. She is the daughter of Michael Lee Owen Bolley.

1915. Plaintiff Michael Lee Owen Bolley, II. is a citizen of the United States and domiciled in the state of Idaho. He is the son of Michael Lee Owen Bolley.

1916. Plaintiff Demi Lynn Bolley is a citizen of the United States and domiciled in the state of Nevada. She is the daughter of Michael Lee Owen Bolley.

1917. Plaintiff Michael Lee Owen Bolley, as next friend of K.T.B., a minor, is a citizen of the United States and domiciled in the state of Nevada. He is the son of Michael Lee Owen Bolley.

1918. Plaintiff Donnie Lee Bolley is a citizen of the United States and is domiciled in the state of Idaho. He is the father of Michael Lee Owen Bolley.

1919. Plaintiff Judy C. Bolley is a citizen of the United States and is domiciled in the state of Idaho. She is the mother of Michael Lee Owen Bolley.

1920. Plaintiff Kimberly Dawn Deuel is a citizen of the United States and is domiciled in the state of Idaho. She is the sister of Michael Lee Owen Bolley.

1921. Plaintiff Tracy Allen Bolley is a citizen of the United States and is domiciled

in the state of Idaho. He is the brother of Michael Lee Owen Bolley.

1922. Plaintiff Billy Don Bolley is a citizen of the United States and is domiciled in the state of Idaho. He is the brother of Michael Lee Owen Bolley.

1923. As a result of the March 26, 2007 Terrorist Attack, and the injuries suffered by Michael Lee Owen Bolley, Plaintiffs Dakoda Marie Bolley, Michael Lee Owen Bolley II, Demi Lynn Bolley, K.T.B., a minor, Donnie Lee Bolley, Judy C. Bolley, Kimberly Dawn Deuel, Tracy Allen Bolley, and Billy Don Bolley have past and future noneconomic damages, including severe physical and mental pain and suffering, loss of consortium, and past and future economic damages, including loss of services.

## 149. THE MARCH 23, 2007 ATTACK – OUTSIDE FOB DIAMONDBACK, ASR TAMPA, MOSUL

### A. PLAINTIFFS THE MICHAEL THOMAS BEHRENS FAMILY

1924. Plaintiff Michael Thomas Behrens is a citizen of the United States and domiciled in the State of Georgia.

1925. On March 23, 2007, Michael Thomas Behrens, age 35, was serving in the U.S. military in Iraq.

1926. Mr. Behrens was with his unit traveling down ASR Tampa outside the gates of FOB Diamondback in Mosul, Iraq when an IED exploded beneath his Humvee.

1927. The weapon used to attack and injure Mr. Behrens was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1928. As a result of the attack, Michael Thomas Behrens suffered a traumatic brain injury and PTSD.

1929. Michael Thomas Behrens was treated when he returned to base at FOB Sykes.

Upon returning to the United States, he has sought treatment from the following facilities: Evan Army Community Hospital in Fort Carson, Colorado; WellStar Kennestone Regional Medical Center in Marietta, Georgia; and Ridgeview Institute in Smyrna, Georgia.

1930. As a result of the March 23, 2007 Terrorist Attack, and the injuries he suffered, Michael Thomas Behrens has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1931. Plaintiff Caitlynn Schmidt is a citizen of the United States and is domiciled in the state of North Carolina. She is the daughter of Michael Thomas Behrens.

1932. Plaintiff Hunter W. Behrens is a citizen of the United States and is domiciled in the state of North Carolina. He is the son of Michael Thomas Behrens.

1933. Plaintiff Taylor M. Behrens is a citizen of the United States and is domiciled in the state of Georgia. She is the daughter of Michael Thomas Behrens.

1934. Plaintiff Jefferson A. Behrens is a citizen of the United States and is domiciled in the state of Georgia. He is the son of Michael Thomas Behrens.

1935. Plaintiff Kendyl Behrens is a citizen of the United States and is domiciled in the state of Georgia. She is the daughter of Michael Thomas Behrens.

1936. As a result of the March 23, 2007 Terrorist Attack, and the injuries suffered by Michael Thomas Behrens, Plaintiffs Caitlynn Schmidt, Hunter W. Behrens, Taylor M. Behrens, Jefferson A. Behrens and Kendyl Behrens have past and future noneconomic damages, including severe physical and mental pain and suffering, loss of consortium, and past and future economic damages, including loss of services.

## 150. THE MARCH 22, 2007 ATTACK – MOSUL

### A. PLAINTIFFS THE STEVEN MICHAEL SHAUER FAMILY

1937. Plaintiff Steven Michael Shauer is a citizen of the United States and domiciled in the State of Texas.

1938. On March 22, 2007, Steven Michael Shauer, age 24, was serving in the U.S. military in Iraq.

1939. Mr. Shauer was in the first vehicle leading a convoy with his unit when his truck hit an IED engulfing it in flames, and the convoy was attacked in a small arms ambush.

1940. The weapon used to attack and injure Mr. Shauer was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian trained terror operatives in Iraq.

1941. As a result of the March 22, 2007 Terrorist Attack, Steven Michael Shauer sustained significant injuries including shrapnel severing the main nerve in his hand damaging a major artery, concussive blast injuries to his right elbow, a TBI and PTSD.

1942. Steven Michael Shauer received extensive medical treatment including immediate treatment at the Combat Support Hospital at FOB Diamondback and the field hospital at Camp Anaconda, followed by transfer to Landstuhl Regional Medical Center in Landstuhl, Germany, Walter Reed Army Medical Center, and Brooke Army Medical Center.

1943. As a result of the March 22, 2007 Terrorist Attack, and the injuries he suffered, Steven Michael Shauer has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, his past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1944. Plaintiff Paula Horning is a citizen of the United States and is domiciled in the state of California. She is the mother of Steven Michael Shauer.

1945. Plaintiff B.S., a minor, represented by her legal guardian Steven Michael Shauer, is a citizen of the United States and is domiciled in the State of Texas. She is the daughter of Steven Michael Shauer.

1946. Plaintiff Joseph Schmidt is a citizen of the United States and is domiciled in the state of California. He is the brother of Steven Michael Shauer.

1947. Plaintiff Robert Schmidt is a citizen of the United States and is domiciled in the state of California. He is the brother of Steven Michael Shauer.

1948. Plaintiff Edward Schmidt Jr. is a citizen of the United States and is domiciled in the state of California. He is the brother of Steven Michael Shauer.

1949. As a result of the March 22, 2007 Terrorist Attack, and the injuries suffered by Steven Michael Shauer, Plaintiffs Paula Horning, B.S., a minor, Joseph Schmidt, Robert Schmidt, and Edward Schmidt, Jr. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 151. THE MARCH 14, 2007 ATTACK - BAQUBAH

### A. PLAINTIFF MICHAEL SCOTT ERB

1950. Plaintiff Michael Scott Erb is a citizen of the United States and domiciled in the State of Indiana.

1951. On March 14, 2007, Michael Scott Erb, age 22, was serving in the U.S. military in Iraq.

1952. Mr. Erb was travelling in a convoy when the vehicle he was travelling in detonated an IED.

1953. The weapon used to attack and injure Mr. Erb was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-

trained terror operatives in Iraq.

1954. As a result of the attack, Michael Scott Erb suffered a wedge compression fracture at the T-4 vertebrae, right knee injury, PTSD, depression, and anxiety.

1955. Michael Scott Erb received extensive medical treatment for his injuries, including multiple exams and visits at various medical facilities and physicians'' offices.

1956. As a result of the March 14, 2007 Terrorist Attack, and the injuries he suffered, Michael Scott Erb has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 152. THE MARCH 5, 2007 ATTACK – BAQUBAH

### A. PLAINTIFFS THE MICHAEL F. JACKSON FAMILY

1957. Plaintiff Michael F. Jackson is a citizen of the United States and domiciled in the State of South Carolina.

1958. On March 5, 2007, Michael F. Jackson, age 28, was serving in the U.S. military in Iraq.

1959. Mr. Jackson was in a convoy with his unit, exiting FOB Warhorse in Baqubah, when his vehicle was struck by an IED.

1960. The weapon used to attack and injure Mr. Jackson was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1961. As a result of the attack, Michael F. Jackson suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

1962. Michael F. Jackson received extensive medical treatment, including past and

ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

1963. As a result of the March 5, 2007 Terrorist Attack, and the injuries he suffered, Michael F. Jackson has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1964. Plaintiff Michele A. Bruno is a citizen of the United States and domiciled in the State of South Carolina. She is the mother of Michael F. Jackson.

1965. As a result of the April 2007 Terrorist Attack, and the injuries suffered by Michael F. Jackson, Plaintiff' Michele A. Bruno has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 153. THE MARCH 4, 2007 ATTACK - RAMADI

### A. PLAINTIFFS THE JOSHUA CRUTCHER FAMILY

1966. Plaintiff Joshua Crutcher is a citizen of the United States and domiciled in the State of Indiana.

1967. On March 4, 2007, Joshua Crutcher, age 22, was serving in the U.S. military in Iraq.

1968. Mr. Crutcher was on convoy with his unit in Ramadi when his vehicle was struck by an IED.

1969. The weapon used to attack and injure Mr. Crutcher was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1970. As a result of the attack, Joshua Crutcher suffered a TBI, hearing loss, back and

neck injuries, memory loss, PTSD and anxiety.

1971. Joshua Crutcher received extensive medical treatment back at the base. He continues his treatment with the VA.

1972. As a result of the March 4, 2007 Terrorist Attack, and the injuries he suffered, Joshua Crutcher has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

1973. Plaintiff Larry Crutcher is a citizen of the United States and domiciled in the State of Indiana. He is the father of Joshua Crutcher.

1974. As a result of the March 4, 2007 Terrorist Attack, and the injuries suffered by Joshua Crutcher, Plaintiff Larry Crutcher has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 154. THE MARCH 2007 ATTACK - FALLUJAH

### A. PLAINTIFF TIMOTHY GRANT CHANDLER

1975. Plaintiff Timothy Grant Chandler is a citizen of the United States and domiciled in the State of Florida.

1976. On or about March 2007, Timothy Grant Chandler, age 28, was serving in the U.S. military in Iraq.

1977. Mr. Chandler was in a convoy with his unit in Fallujah when his vehicle was ambushed by a suicide bomber and then were hit by a IED.

1978. The weapon used to attack and injure Mr. Chandler was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1979. As a result of the attack, Timothy Grant Chandler suffered a dislocated right shoulder, spinal injury, PTSD and anxiety.

1980. Timothy Grant Chandler received extensive medical treatment at the hospital in Fallujah. Once back to the states he received physical therapy until his release from the military, he now continues treatment with the VA.

1981. As a result of the March 2007 Terrorist Attack, and the injuries he suffered, Timothy Grant Chandler has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 155. THE FEBRUARY 19, 2007 ATTACK - TARMIYAH

### A. PLAINTIFF CRAIG BOWES

1982. Plaintiff Craig Bowes is a citizen of the United States and domiciled in the State of Pennsylvania.

1983. On February 19, 2007, Craig Bowes, age 22, was serving in the U.S. military in Iraq.

1984. Mr. Bowes was in a police station located in Tarmiyah (just outside of Taji, Iraq, when the police station was struck by an RPG.

1985. The weapon used to attack and injure Mr. Bowes was an Iranian manufactured/supplied RPG provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1986. As a result of the attack, Craig Bowes suffered a TBI, left elbow injury, glass in his head, and PTSD.

1987. Craig Bowes received extensive medical treatment for his injuries, including two surgeries to remove the glass from his head and face, as well as multiple treatments

received from various medical providers and facilities.

1988. As a result of the February 19, 2007 Terrorist Attack, and the injuries he suffered, Craig Bowes has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 156. THE FEBRUARY 19, 2007 ATTACK – TARMAYIH

### A. PLAINTIFF JEREMY E. SMITH

1989. Plaintiff Jeremy E. Smith is a citizen of the United States and domiciled in the State of New York.

1990. On February 19, 2007, Jeremy E. Smith, age 26, was serving in the U.S. military in Iraq.

1991. Mr. Smith was in a building on Camp Taji, in Tarmayih, when RPG's were launched into the camp. Following this, a vehicle breached the camp gates and a VBIED detonated on the camp.

1992. The weapons used to attack and injure Mr. Smith were an Iranian manufactured/supplied Rocket-Propelled Grenade ("RPG") and a Vehicle-Borne Improvised Device ("VBIED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

1993. As a result of the attack, Jeremy E. Smith suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), shrapnel lacerations throughout his body, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

1994. Jeremy E. Smith received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private medical providers.

1995. As a result of the February 19, 2007 Terrorist Attack, and the injuries he suffered, Jeremy E. Smith has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 157. THE FEBRUARY 15, 2007 ATTACK - FALLUJAH

### A. PLAINTIFFS THE RYAN P. CLEMENTS FAMILY

1996. Plaintiff Ryan P. Clements is a citizen of the United States and domiciled in the State of Texas.

1997. On February 15, 2007, Ryan P. Clements, age 31, was serving in the U.S. military in Iraq.

1998. Mr. Clements was on patrol with his unit on Route Patty in Fallujah when his vehicle was struck by an IED.

1999. The weapon used to attack and injure Mr. Clements was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2000. As a result of the attack, Ryan P. Clements suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), concussion, Tinnitus, a back injury, headaches, shrapnel wound to his left leg, a right arm fracture, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

2001. Ryan P. Clements received extensive medical treatment, including past and ongoing care for these injuries, at his military base in Fallujah, several Veterans Medical Centers, military hospitals and private providers.

2002. As a result of the February 15, 2007 Terrorist Attack, and the injuries he suffered, Ryan P. Clements has past and future noneconomic damages, including severe

physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2003. Plaintiff Robin Clements is a citizen of the United States and domiciled in the State of Texas. She is the wife of Ryan P. Clements

2004. Plaintiff Patrick L. Clements is a citizen of the United States and domiciled in the State of Wisconsin. He is the father of Ryan P. Clements.

2005. Plaintiff Diane L. Clements is a citizen of the United States and domiciled in the State of Wisconsin. She is the mother of Ryan P. Clements.

2006. Plaintiff Lucas Clements is a citizen of the United States and domiciled in the State of Wisconsin. He is the brother of Ryan P. Clements.

2007. Plaintiff Peter Negralle is a citizen of the United States and domiciled in the State of Virginia. He is the son of Ryan P. Clements.

2008. Plaintiff Nicholas Negralle is a citizen of the United States and domiciled in the State of Arizona. He is the son of Ryan P. Clements.

2009. Plaintiff C.C. a minor, represented by his guardians Ryan P. Clements and Robin Clements, is a citizen of the United States and domiciled in the State of Texas. He is the son of Ryan P. Clements.

2010. As a result of the February 15, 2007 Terrorist Attack, and the injuries suffered by Ryan P. Clements Plaintiffs Robin Clements, Patrick L. Clements, Diane L. Clements, Lucas Clements, Peter Negralle, Nicholas Negralle and C.C. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 158. THE FEBRUARY 8, 2007 ATTACK – AL ANBAR PROVINCE

### A. PLAINTIFF JOHN J. GREENE

2011. Plaintiff John J. Greene is a citizen of the United States and domiciled in the State of Idaho.

2012. On February 8, 2007, John J. Greene, age 44, was serving in the U.S. military in Iraq.

2013. Mr. Greene was traveling in a convoy with his unit in the outskirts of Fallujah, in Al Anbar Province, when his vehicle was struck by an IED.

2014. The weapon used to attack and injure Mr. Greene was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2015. As a result of the attack, John J. Greene suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), a concussion, back injury, right shoulder injury, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

2016. John J. Greene received extensive medical treatment, including past and ongoing care for these injuries, at his military base, Veterans Medical Centers and private hospitals.

2017. As a result of the February 8, 2007 Terrorist Attack, and the injuries he suffered, John J. Greene has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 159. THE FEBRUARY 1, 2007 ATTACK – RAMADI

### A. PLAINTIFFS THE DANIEL FRANCIS PEARSON FAMILY

2018. Plaintiff Daniel Francis Pearson is a citizen of the United States and domiciled

in the State of Illinois.

2019. On February 1, 2007, Daniel Francis Pearson, age 22, was serving in the U.S. military in Iraq.

2020. Mr. Pearson was on a Quick Response Force mission in Ramadi, Iraq with three other soldiers when the tank he was riding in was struck by an improvised explosive device.

2021. The weapon used to attack and injure Mr. Pearson was an Iranian manufactured/supplied improvised explosive device provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2022. As a result of the attack, Daniel Francis Pearson suffered significant injuries, including a severe concussion, paralysis to his face, and a traumatic brain injury.

2023. Daniel Francis Pearson received extensive medical treatment at Troop Medical Clinic in Kuwait, James A. Lovell Federal Healthcare Center in Chicago, Illinois, Winn Army Community Hospital in Fort Stewart, Georgia, Jesse Brown VA Hospital in Chicago, Illinois, West Palm Beach VA Medical Center in West Palm Beach, Florida, and Connecticut VA Healthcare in Newington, Connecticut.

2024. As a result of the February 1, 2007 Terrorist Attack, and the injuries he suffered, Daniel Francis Pearson has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2025. Plaintiff Holly Pearson is a citizen of the United States and domiciled in the State of Florida. She is the mother of Daniel Francis Pearson.

2026. As a result of the February 1, 2007 Terrorist Attack, and the injuries suffered by Daniel Francis Pearson, Plaintiff Holly Pearson has past and future noneconomic damages,

including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 160. THE JANUARY 26, 2007 ATTACK - MIQDADIYAH

### A. PLAINTIFF DOMINIC FRANKLIN MOODY

2027. Plaintiff Dominic Franklin Moody is a citizen of the United States and domiciled in the State of California.

2028. On January 26, 2007, Mr. Dominic Moody, age 27, was serving in the U.S. military in Iraq.

2029. Mr. Dominic Moody was traveling in a convoy down Route Victory about 30 km northeast of Baqubah as the lead Humvee when an IED was remotely set off, hitting the second Humvee in his convoy. Mr. Moody turned his Humvee around and began returning fire, still maintaining security until backup arrived. They also began searching for one of the men from the second Humvee, and found the body underneath the second Humvee.

2030. The weapon used to attack and injure Mr. Dominic Moody was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2031. As a result of the attack, Mr. Dominic Moody sufferers from PTSD, anxiety, and sleep disorders.

2032. Mr. Dominic Moody received medical treatment once returning to the U.S. He was seen at the VA Loma Linda Healthcare System, and continues to treat at the Victorville VA clinic.

2033. As a result of the January 26, 2007 Terrorist Attack, and the injuries he suffered, Mr. Dominic Moody has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including

medical expenses, lost income, and loss of earning capacity.

## 161. THE JANUARY 22, 2007 ATTACK – RTE STARBUCKS, AL ANBAR, WEST OF RASHEED

### A. PLAINTIFFS THE CHRISTOPHER MICHAEL RAY FAMILY

2034. Plaintiff Christopher Michael Ray is a citizen of the United States and domiciled in the State of Louisiana.

2035. On January 22, 2007, Christopher Michael Ray, age 29, was serving in the U.S. military in Iraq.

2036. Mr. Ray was driving in a Humvee on a mission to recover another vehicle hit by an IED in the Al Anbar Province, West of Rasheed. After assisting the damaged vehicle, Mr. Ray's vehicle ran over an IED, which exploded underneath Mr. Ray's vehicle.

2037. The weapon used to attack and injure Mr. Ray was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2038. As a result of the attack, Christopher Michael Ray suffered immediate hearing loss and suffers from PTSD.

2039. Christopher Michael Ray received medical treatment at Camp Stryker and received treatment at the Gulf Coast VA Healthcare System, the Eugene Healthcare Center, and the Roseberg VA Healthcare System.

2040. As a result of the January 22, 2007 Terrorist Attack, and the injuries he suffered, Christopher Michael Ray has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2041. Plaintiff Cory Ray is a citizen of the United States and domiciled in the State

of Florida. He is the brother of Plaintiff, Christopher Michael Ray.

2042. As a result of the January 22, 2007 Terrorist Attack, and the injuries suffered by Christopher Michael Ray, Plaintiff Cory Ray has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 162. THE JANUARY 14, 2007 ATTACK - BAGHDAD

### A. PLAINTIFF RIGOBERTO LOPEZ GARCIA

2043. Plaintiff Rigoberto Lopez Garcia is a citizen of the United States and domiciled in the territory of Puerto Rico.

2044. On January 14, 2007, Rigoberto Lopez Garcia, age 22, was serving in the U.S. military in Iraq.

2045. Mr. Garcia was clearing routes with is unit when his vehicle was hit by an EFP.

2046. The weapon used to attack and injure Mr. Garcia was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2047. As a result of the attack, Rigoberto Lopez Garcia suffered significant physical and emotional injuries.

2048. Rigoberto Lopez Garcia received, and continues to receive, extensive medical treatment for multiple fingers being blown off his hand, broken ribs, lacerated liver, punctured lung, concussion, shrapnel injuries to both legs and PTSD.

2049. As a result of the January 14, 2007 Terrorist Attack, and the injuries he suffered, Rigoberto Lopez Garcia has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 163. THE JANUARY 10, 2007 ATTACK – RASHDIYA, BAGHDAD

### A. PLAINTIFF JAMES M. BUONO

2050. Plaintiff James M. Buono is a citizen of the United States and domiciled in the State of Florida.

2051. On January 10, 2007, James M. Buono, age 25, was serving in the U.S. military in Iraq.

2052. Mr. Buono was in a convoy with his unit in Rashdiya, Northern Baghdad, when his vehicle struck an underground pressure-plate IED.

2053. The weapon used to attack and injure Mr. Buono was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2054. As a result of the attack, James M. Buono suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), a back injury and Post-Traumatic Stress Disorder ("PTSD").

2055. James M. Buono received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

2056. As a result of the January 10, 2007 Terrorist Attack, and the injuries he suffered, James M. Buono has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 164. THE JANUARY 9, 2007 ATTACK - BAGHDAD

### A. PLAINTIFFS THE ROBERT FRANKLIN HARR FAMILY

2057. Plaintiff Robert Franklin Harr is a citizen of the United States and domiciled in

the State of Texas.

2058. On January 9, 2007, Robert Franklin Harr, age 38, was serving in the U.S. military in Iraq.

2059. Mr. Harr was on foot tracking insurgents with the Iraqi Army when he was shot in the face by a sniper.

2060. The weapon used to attack and injure Mr. Harr was an Iranian manufactured/supplied small arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2061. As a result of the attack, Robert Franklin Harr suffered a shattered cheekbone and severed the carotid artery, a broken jaw, lost 15 teeth, severed facial nerves, a TBI and PTSD.

2062. Robert Franklin Harr received extensive medical treatment immediately following the attack. The medic performed lifesaving treatment while waiting on the medevac, he went to the Green Zone for surgery and repair of the carotid artery. He was transferred to Germany for continued care and when stable enough back to the states. He currently treats with the VA.

2063. As a result of the January 9, 2007 Terrorist Attack, and the injuries he suffered, Robert Franklin Harr has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2064. Plaintiff Luz Harr is a citizen of the United States and domiciled in the State of Texas. She is the wife of Robert Franklin Harr.

2065. As a result of the January 9, 2007 Terrorist Attack, and the injuries suffered by

Robert Franklin Harr, Plaintiff Luz Harr has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 165. THE JUNE 3, 2007 ATTACK – ROUTE LOUISIANA, HOSSEINIYA

#### A. PLAINTIFF JARED MICHAEL ROGERS

2066. Plaintiff Jared Michael Rogers is a citizen of the United States and domiciled in the State of Texas.

2067. On June 3, 2007, Jared Michael Rogers, age 20, was serving in the U.S. military in Iraq.

2068. Mr. Rogers was on patrol with his unit on Route Louisiana in the town of Hosseiniya, Iraq when an IED exploded into his convoy.

2069. The weapon used to attack and injure Mr. Rogers were Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2070. As a result of the attack, Jared Michael Rogers suffered injuries to his head and back. Mr. Rogers received a traumatic brain injury and tinnitus, and has also been diagnosed with PTSD, and depression.

2071. Jared Michael Rogers received extensive medical treatment. Mr. Rogers was treated at Fort Lewis State Hospital in Washington. Warrior Transition Unit in Fort Campbell, Kentucky, and the Ann Arbor Veterans Administration Clinic.

2072. As a result of the June 3, 2007 Terrorist Attack, and the injuries he suffered, Jared Michael Rogers has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic

damages, including medical expenses, lost income, and loss of earning capacity.

### 166. THE DECEMBER 30, 2006 ATTACK – BAGHDAD

#### A. PLAINTIFFS THE CHRISTOPHER M. HEIDLING FAMILY

2073. Plaintiff Christopher M. Heidling is a citizen of the United States and domiciled in the State of Oklahoma.

2074. On December 30, 2006, Christopher M. Heidling, age 22, was serving in the U.S. military in Iraq.

2075. Mr. Heidling was on a routine checkpoint mission on Route Furniture outside Baghdad when an IED was detonated near the vehicle.

2076. The weapon used to attack and injure Mr. Heidling was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2077. As a result of the attack, Christopher M. Heidling suffered shrapnel in his right leg, calf, knee, and left side of face. He also suffered a back injury, a TBI, tinnitus, and PTSD.

2078. Christopher M. Heidling received extensive medical treatment; his shrapnel injuries required multiple surgeries. He has had medical care for his back pain and medication and counseling for PTSD.

2079. As a result of the December 30, 2006 Terrorist Attack, and the injuries he suffered, Christopher M. Heidling has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2080. Plaintiff Stanley Heidling is a citizen of the United States and is domiciled in the state of Texas. He is the father of Christopher M. Heidling.

2081. Plaintiff Terra Rhoads is a citizen of the United States and is domiciled in the state of Oklahoma. She is the sister of Christopher M. Heidling.

2082. As a result of the December 30, 2006 Terrorist Attack, and the injuries suffered by Christopher M. Heidling, Plaintiffs Stanley Heidling and Terra Rhoads have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 167. THE DECEMBER 22, 2006 ATTACK - MOSUL

### A. PLAINTIFF ADAM NATHAN ENGELHART

2083. Plaintiff Adam Nathan Engelhart is a citizen of the United States and domiciled in the State of Florida.

2084. On December 22, 2006, Mr. Adam Engelhart, age 23, was serving in the U.S. military in Iraq.

2085. Mr. Adam Engelhart was in his Bradley Fighting Vehicle on a highway near Mosul, Iraq when they came up on multiple IEDs. His vehicle pulled off the road and as soon as they saw the second IED it went off. The IED hit his Bradley Fighting Vehicle and he was knocked out by the explosion.

2086. The weapon used to attack and injure Mr. Adam Engelhart was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2087. As a result of the attack, Mr. Adam Engelhart was knocked unconscious due to the blast. He received a neck injury, TBI, PTSD, sleeping disorder, and constant migraines.

2088. Mr. Adam Engelhart received extensive medical treatment and was taken to the local hospital for his injuries. He has continued to receive treatment at the Bay Pines VA

Healthcare System and the Naples Community Outpatient Based Clinic.

2089. As a result of the December 22, 2006 Terrorist Attack, and the injuries he suffered, Mr. Adam Engelhart has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 168. THE DECEMBER 19, 2006 ATTACK - RAMADI

#### A. PLAINTIFF WILLIAM ROBERT BIGGS

2090. Plaintiff William Robert Biggs is a citizen of the United States and domiciled in the State of California.

2091. On December 19, 2006, William Robert Biggs, age 20, was serving in the U.S. military in Iraq.

2092. Mr. Biggs was on patrol with his unit fortifying a building, when they were ambushed by small arms fire and mortars. William left the building to grab sandbags when an IED detonated beneath him.

2093. The weapon used to attack and injure Mr. Biggs was an Iranian manufactured/supplied IED, small arms and mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2094. As a result of the attack, Williams Robert Biggs suffered shrapnel wounds, perforated ear drums, a TBI and PTSD.

2095. Williams Robert Biggs received extensive medical treatment immediately following the attack. He was medevac'd to Camp Blue Diamond for treatment. He continues to treat with the VA and outside providers.

2096. As a result of the December 19, 2006 Terrorist Attack, and the injuries he suffered, Williams Robert Biggs has past and future noneconomic damages, including severe

physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 169. THE DECEMBER 19, 2006 ATTACK – MOSUL

#### A. PLAINTIFFS THE HECTOR M. LOPEZ, JR. FAMILY

2097. Plaintiff Hector M. Lopez, Jr. is a citizen of the United States and domiciled in the State of Texas.

2098. On December 19, 2006, Hector M. Lopez, Jr., age 25, was serving in the U.S. military in Iraq.

2099. Mr. Lopez was on patrol in Mosul, standing on the turret of his vehicle, when he was shot in the head by sniper fire.

2100. The weapon used to attack and injure Mr. Lopez was an Iranian manufactured/supplied sniper weapon provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2101. As a result of the attack, Hector M. Lopez, Jr. suffered injuries that include, but are not limited to, a severe brain injury require surgery, a Traumatic Brain Injury ("TBI"), cognitive disorders, cervical strain, back pain, shoulder pain, Post-Traumatic Stress Disorder ("PTSD"), anxiety and depression.

2102. Hector M. Lopez, Jr. received extensive medical treatment, including past and ongoing care for these injuries, at a combat hospital after the attack, Landstuhl Regional Medical Center, Walter Reed Medical Center, Beaumont Military Hospital and other Veterans Medical Centers, private hospitals and other medical providers.

2103. As a result of the December 19, 2006 Terrorist Attack, and the injuries he suffered, Hector M. Lopez, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future

economic damages, including medical expenses, lost income, and loss of earning capacity.

2104. Plaintiff Catherine Lopez is a citizen of the United States and domiciled in the State of Texas. She is the wife of Hector M. Lopez, Jr.

2105. Plaintiff Hector M. Lopez, Sr. is a citizen of the United States and domiciled in the State of Texas. He is the father of Hector M. Lopez, Jr.

2106. Plaintiff Patricia Santana is a citizen of the United States and domiciled in the State of Texas. She is the mother of Hector M. Lopez, Jr.

2107. Plaintiff Isaac Lopez is a citizen of the United States and domiciled in the State of Massachusetts. He is the brother of Hector M. Lopez, Jr.

2108. Plaintiff Vivian Lopez is a citizen of the United States and domiciled in the State of Texas. She is the sister of Hector M. Lopez, Jr.

2109. Plaintiff Robert Valle is a citizen of the United States and domiciled in the State of Texas. He is the son of Hector M. Lopez, Jr.

2110. Plaintiff E.L., a minor, represented by her legal guardians Hector M. Lopez, Jr. and Catherine Lopez, is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Hector M. Lopez, Jr.

2111. As a result of the December 19, 2006 Terrorist Attack, and the injuries suffered by Hector M. Lopez, Jr., Plaintiff's Catherine Lopez, Hector M. Lopez, Sr., Patricia Santana, Isaac Lopez, Vivian Lopez, Robert Valle, and E.L. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 170. THE DECEMBER 16, 2006 ATTACK – MOSUL

### A. PLAINTIFF CHRISTOPHER F. SWARTZ

2112. Plaintiff Christopher F. Swartz is a citizen of the United States and domiciled in the State of Kansas.

2113. On December 16, 2006, Christopher F. Swartz, age 22, was serving in the U.S. military in Iraq.

2114. Mr. Swartz was traveling in a convoy with his unit in Mosul when they were ambushed with small arms fire.

2115. The weapon used to attack and injure Mr. Swartz was an Iranian manufactured/supplied small arms weapon provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2116. As a result of the attack, Christopher F. Swartz suffered injuries that include, but are not limited to, a bullet wound to the left side of his face, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

2117. Christopher F. Swartz received medical treatment, including past and ongoing care for these injuries, at his military base, several Veterans Medical Centers, military hospitals and private hospitals.

2118. As a result of the December 16, 2006 Terrorist Attack, and the injuries he suffered, Christopher F. Swartz has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 171. THE DECEMBER 2006 ATTACK - BAGHDAD

### A. PLAINTIFFS THE GIOVANNI A. AVALOS FAMILY

2119. Plaintiff Giovani A. Avalos is a citizen of the United States and domiciled in

the State of California.

2120. In late December 2006, Giovanni A. Avalos, age 23, was serving in the U.S. military in Iraq.

2121. Mr. Avalos was in a convoy with his unit in the outskirts of Baghdad when his vehicle was struck by an IED.

2122. The weapon used to attack and injure Mr. Avalos was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2123. As a result of the attack, Giovanni A. Avalos suffered injuries that include, but are not limited to, a burn to his left arm and Post-Traumatic Stress Disorder ("PTSD"), anger, anxiety, and depression.

2124. Giovanni A. Avalos received extensive medical treatment, including past and ongoing care for these injuries, at his military base, Veterans Medical Centers and private hospitals.

2125. As a result of the December 2006 Terrorist Attack, and the injuries he suffered, Giovanni A. Avalos has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2126. Plaintiff Maria Avalos is a citizen of the United States and domiciled in the State of California. She is the wife of Giovanni A. Avalos.

2127. Plaintiff J.A., a minor, represented by his legal guardians Giovanni A. Avalos and Maria Avalos, is a citizen of the United States and domiciled in the State of California. He is the son of Giovanni A. Avalos and Maria Avalos.

2128. As a result of the December 2006 Terrorist Attack, and the injuries suffered by Giovanni A. Avalos, Plaintiffs Maria Avalos and J.A. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 172. THE NOVEMBER 21, 2006 ATTACK – MSR MOBILE, AL ANBAR PROVINCE, IVO ABU GHRAIB

#### A. PLAINTIFFS THE JONATHAN SCOTT MALLARD FAMILY

2129. Plaintiff Jonathan Scott Mallard is a citizen of the United States and domiciled in the State of North Carolina.

2130. On November 21, 2006, Jonathan Scott Mallard, age 30, was serving in the U.S. military in Iraq.

2131. Mr. Mallard was with his unit traveling down MSR Tampa in the al Anbar Province, Iraq, in the vicinity of Abu Ghraib when an IED exploded into the side of his Humvee.

2132. The weapon used to attack and injure Mr. Mallard was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2133. As a result of the attack, Jonathan Scott Mallard suffered a broken bridge in his mouth, hearing loss, a traumatic brain injury and PTSD, depression and anxiety.

2134. Jonathan Scott Mallard was ground medevac'd to Camp Fallujah where he was treated for his immediate injuries. Upon returning to the United States, he has been seen at the following facilities: Post Deployment Health Services in 29 Palms, California; Veterans Administration Health System in San Diego, California; Veterans Administration Hospital in

Orlando, Florida; South Seminole Hospital in Seminole, Florida; and the Veterans Administration Hospital in Asheville, North Carolina.

2135. As a result of the November 21, 2006 Terrorist Attack, and the injuries he suffered, Jonathan Scott Mallard has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2136. Plaintiff Connie Mallard is a citizen of the United States and is domiciled in the state of North Carolina. She is the mother of Jonathan Scott Mallard.

2137. As a result of the November 21, 2006 Terrorist Attack, and the injuries suffered by Jonathan Scott Mallard, Plaintiff Connie Mallard has past and future noneconomic damages, including severe physical and mental pain and suffering, loss of consortium, and past and future economic damages, including loss of services.

## 173. THE NOVEMBER 21, 2006 ATTACK - BAGHDAD

### A. PLAINTIFFS THE GIOVANNI A. AVALOS FAMILY

2138. Plaintiff Giovani A. Avalos is a citizen of the United States and domiciled in the State of California.

2139. On November 21, 2006, Giovanni A. Avalos, age 22, was serving in the U.S. military in Iraq.

2140. Mr. Avalos was on patrol with his unit in Baghdad when his vehicle was struck by an EFP.

2141. The weapon used to attack and injure Mr. Avalos was an Iranian manufactured/supplied Explosively Formed Penetrator ("EFP") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2142. As a result of the attack, Giovanni A. Avalos suffered injuries that include, but

are not limited to, a Traumatic Brain Injury ("TBI"), shrapnel wound to his left leg, Post-Traumatic Stress Disorder ("PTSD"), anger, anxiety, and depression.

2143. Giovanni A. Avalos received extensive medical treatment, including past and ongoing care for these injuries, at his military base, Veterans Medical Centers and private hospitals.

2144. As a result of the November 21, 2006 Terrorist Attack, and the injuries he suffered, Giovanni A. Avalos has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2145. Plaintiff Maria Avalos is a citizen of the United States and domiciled in the State of California. She is the wife of Giovanni A. Avalos.

2146. Plaintiff J.A., a minor, represented by his legal guardians Giovanni A. Avalos and Maria Avalos, is a citizen of the United States and domiciled in the State of California. He is the son of Giovanni A. Avalos and Maria Avalos.

2147. As a result of the November 21, 2006 Terrorist Attack, and the injuries suffered by Giovanni A. Avalos, Plaintiff Maria Avalos and J.A. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 174. THE NOVEMBER 15, 2006 ATTACK – DOWNTOWN BAGHDAD

### A. PLAINTIFFS THE LONNIE MICHAEL FREDERICK GORMAN FAMILY

2148. Plaintiff Lonnie Michael Frederick Gorman is a citizen of the United States and domiciled in the State of Arizona.

2149. On November 15, 2006, Lonnie Michael Frederick Gorman, age 20, was serving in the U.S. military in Iraq.

2150. Mr. Gorman was performing his duties in the bucket of a forklift truck when a vehicle approached and detonated a VBIED next to him in downtown Baghdad, Iraq.

2151. The weapon used to attack and injure Mr. Gorman was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2152. As a result of the attack, Lonnie Michael Frederick Gorman suffered a broken right elbow, a head injury resulting in TBI, tissue trauma to the left knee, right hip tissue trauma and tinnitus. He has also been diagnosed with PTSD.

2153. Lonnie Michael Frederick Gorman received extensive medical treatment for his injuries, including surgical, psychological treatment and hearing treatment.

2154. As a result of the November 15, 2006 Terrorist Attack, and the injuries he suffered, Lonnie Michael Frederick Gorman has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2155. Plaintiff Cecelia Bernal is a citizen of the United States and domiciled in the State of Arizona. She is the mother of Lonnie Michael Frederick Gorman.

2156. As a result of the November 15, 2006 Terrorist Attack, and the injuries suffered by Lonnie Michael Frederick Gorman, Plaintiff's mother, Cecilia Bernal has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages,

including loss of services.

**175. THE OCTOBER 17, 2006 ATTACK – ANAH**

**A. PLAINTIFFS THE TATE WAYNE MALLORY FAMILY**

2157. Plaintiff Tate Wayne Mallory is a citizen of the United States and is domiciled in the State of South Dakota.

2158. On the evening of October 17, 2006, Tate Wayne Mallory, age 34, was working as a private contractor in Iraq.

2159. On October 17, 2006, Mr. Mallory was in the last vehicle of a three vehicle convoy when the convoy was ambushed. An RPG hit and penetrated the back of Mr. Mallory's Humvee and hit Mr. Mallory.

2160. The weapon used to attack and injure Mr. Mallory was an Iranian manufactured/supplied RPG provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2161. As a result of the October 17, 2006 Terrorist Attack, Mr. Mallory sustained significant injuries. Shrapnel from the explosion went through Mr. Mallory's back, through his stomach, and exited his groin/right leg. Mr. Mallory's femoral artery was severed, and he lost a significant amount of blood and was in severe pain. Mr. Mallory has permanent injury to his right hip and right leg, including significant nerve damage. Mr. Mallory also suffers from PTSD, pain, depression, and anxiety.

2162. As a result of the October 17, 2006 Terrorist Attack, Mr. Mallory was evacuated to Al Assad where he had surgery and received blood transfusions. Mr. Mallory was treated for two and a half weeks in Germany before being treated at McKennon Hospital in South Dakota. Mr. Mallory underwent several surgeries to treat his extensive injuries and he required months of rehabilitation. Mr. Mallory continues to receive treatment through Avera

Behavioral Health.

2163. As a result of the October 17, 2006 Terrorist Attack, and the injuries he suffered, Mr. Mallory has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2164. Plaintiff Cheyenne Sharon Mallory is a citizen of the United States and domiciled in the State of South Dakota. She is the daughter of Plaintiff Tate Wayne Mallory.

2165. Plaintiff Shania Shae Mallory is a citizen of the United States and domiciled in the State of South Dakota. She is the daughter of Plaintiff Tate Wayne Mallory.

2166. Plaintiff Tristin Wayne Mallory is a citizen of the United States and domiciled in the State of Colorado. He is the son of Plaintiff Tate Wayne Mallory.

2167. Plaintiff T.W.M., a minor, represented by his legal guardian Tate Wayne Mallory, is a citizen of the United States and domiciled in the State of South Dakota. He is the son of Plaintiff Tate Mallory.

2168. As a result of the October 17, 2006 Terrorist Attack, and the injuries suffered by Mr. Tate Mallory, Plaintiffs Cheyenne Mallory, Shania Mallory, Tristin Wayne Mallory, and T.W.M., a minor have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 176. THE OCTOBER 16, 2006 ATTACK - BAGHDAD

### A. PLAINTIFF GERARD LOUIS MENNITTO

2169. Plaintiff Gerard Louis Mennitto is a citizen of the United States and domiciled in the State of Washington.

2170. October 16, 2006, Gerard Louis Mennitto, age 22, was serving in the U.S.

military in Iraq.

2171. Mr. Mennitto was on a mission with his unit when they were ambushed with mortar fire.

2172. The weapon used to attack and injure Mr. Mennitto was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2173. As a result of the attack, Gerard Louis Mennitto suffered shrapnel wounds, a TBI and PTSD.

2174. Gerard Louis Mennitto received extensive medical treatment immediately following the attack at FOB Liberty. He continues treatment with VA.

2175. As a result of the October 16, 2006 Terrorist Attack, and the injuries he suffered, Gerard Louis Mennitto has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**177. THE OCTOBER 16, 2006 ATTACK – BAGHDAD**

**A. PLAINTIFFS THE JOHN PAUL KAISER, JR FAMILY**

2176. Plaintiff John Paul Kaiser, Jr. is a citizen of the United States and domiciled in the State of Washington.

2177. On October 16, 2006, John Paul Kaiser, Jr., age 28, was serving in the U.S. military in Iraq.

2178. Mr. Kaiser was on a mission with his unit on ASR Swords in Baghdad when he was ambushed with mortar fire.

2179. The weapons used to attack and injure Mr. Kaiser were Iranian manufactured/supplied mortars provided by Iran and/or its agents to Iranian-funded and

Iranian-trained terror operatives in Iraq.

2180. As a result of the attack, John Paul Kaiser, Jr. sustained significant injuries, including partial loss of his jaw bone and four teeth, his lower right eyelid torn off, fractured mandible, right eye removal, shattered right cheek bone, right temple shattered, skull fracture above right eyebrow, gunshot wound to right shoulder, lumbosacral strain with degenerative disc disease, traumatic brain injury, and post-traumatic stress disorder.

2181. John Paul Kaiser, Jr. received extensive medical treatment at FOB Liberty in Baghdad, Walter Reed Hospital, Madigan Hospital, Portland, Oregon VA Medical Facility, UCLA Medical Facility, as well as private practice counseling.

2182. As a result of the October 16, 2006 Terrorist Attack, and the injuries he suffered, John Paul Kaiser, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2183. Plaintiff Tina Elizabeth Kaiser is a citizen of the United States and domiciled in the State of Washington. She is the wife of John Paul Kaiser, Jr.

2184. Plaintiff Kacee Elizabeth Keating is a citizen of the United States and domiciled in the State of Washington. She is the step-daughter of John Paul Kaiser, Jr.

2185. Plaintiff Daniel Scott Webb is a citizen of the United States and domiciled in the State of Washington. He is the step-son of John Paul Kaiser, Jr.

2186. As a result of the October 16, 2006 Terrorist Attack, and the injuries suffered by John Paul Kaiser, Jr., Plaintiffs Tina Elizabeth Kaiser, Kacee Elizabeth Keating, and Daniel Scott Webb have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future

economic damages, including loss of services.

### 178. THE OCTOBER 13, 2006 ATTACK – TOWN OF HABBANIYAH, AL ANBAR PROVINCE

#### A. PLAINTIFFS THE JOHN TYLER LEE FAMILY

2187. Plaintiff John Tyler Lee is a citizen of the United States and domiciled in the State of Indiana.

2188. On October 13, 2006, John Tyler Lee, age 23, was serving in the U.S. military in Iraq.

2189. Mr. Lee was patrolling with his unit in the town of Habbaniyah when his Humvee ran directly over an IED.

2190. The weapon used to attack and injure Mr. Lee was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2191. As a result of the attack, John Tyler Lee suffered shrapnel wounds, severe bruising, nerve damage in his left leg and back, fractured discs, primary schlerosing cholangitis and meralgia paresthetica, missing bone in his shin, blown ear drums, tinnitus, a traumatic brain injury and PTSD, depression and anxiety.

2192. John Tyler Lee was treated at the scene of the attack. Upon returning to the United States, he has been seen at the following facilities: South Bend Veterans Administration in South Bend, Indiana; Elkhart Clinic in Elkhart, Indiana; and counselor Jennifer Reagan, also in Elkhart.

2193. As a result of the October 13, 2006 Terrorist Attack, and the injuries he suffered, John Tyler Lee has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic

damages, including medical expenses, lost income, and loss of earning capacity.

2194. Plaintiff John Tyler Lee, as next friend of M.A.L., a minor, is a citizen of the United States and is domiciled in the state of Indiana. She is the daughter of John Tyler Lee.

2195. Plaintiff John Tyler Lee, as next friend of J.T.L., III, a minor, is a citizen of the United States and is domiciled in the state of Indiana. She is the daughter of John Tyler Lee.

2196. As a result of the October 13, 2006 Terrorist Attack, and the injuries suffered by John Tyler Lee, Plaintiffs John Tyler Lee, as next friend of M.A.L, a minor and J.T.L., III, a minor have past and future noneconomic damages, including severe physical and mental pain and suffering, loss of consortium, and past and future economic damages, including loss of services.

## 179. THE OCTOBER 11, 2006 ATTACK – RAWAH

### A. PLAINTIFF JASON WILLIAM ROLLISON

2197. Plaintiff Jason William Rollison is a citizen of the United States and domiciled in the State of North Carolina.

2198. On October 11, 2006, Jason William Rollison, age 20, was serving in the U.S. military in Iraq.

2199. Mr. Rollison was on foot patrol in Rawah when he was attacked by an IED.

2200. The weapon used to attack and injure Mr. Rollison was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2201. As a result of the October 11, 2006 Terrorist Attack, Jason William Rollison suffered shrapnel wounds, ruptured eardrums, a TBI and PTSD.

2202. Jason William Rollison received extensive medical treatment at; Combat Medical Treatment, Camp Al Asad, Iraq; Naval Medical Center Camp Lejeune, Camp

Lejeune, NC; Fayetteville VA Medical Center, Fayetteville, NC: and Wilmington VA Health Care Center, Wilmington, NC.

2203. As a result of the October 11, 2006 Terrorist Attack, and the injuries he suffered, Jason William Rollison has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**180. THE OCTOBER 8, 2006 ATTACK – BALAD**

**A. PLAINTIFFS THE RICHARD PHILEMON, JR. FAMILY**

2204. Plaintiff Richard Philemon Jr. is a citizen of the United States and domiciled in the State of Texas.

2205. On October 8, 2006, Richard Philemon, Jr., age 47, was an American Citizen employed by Kellogg, Brown & Root (KBR) serving as a tanker truck driver transporting jet fuel for U.S. Military forces in Iraq.

2206. Mr. Philemon was traveling with a convoy of United States Marines and KRB tanker trucks near Balad's open market when his truck was hit by an IED.

2207. The weapon used to attack and injure Richard Philemon, Jr. on October 8, 2006 was an Iranian-supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2208. As a result of the October 8, 2006 Terrorist Attack, Richard Philemon, Jr., sustained significant injuries including third degree burns over 40% of his body concentrated on his back and legs, permanent scarring, nerve damage resulting from the burns, PTSD including vivid nightmares, violent moods, anxiety, depression, and extreme response to loud noises. He continues to deal with these issues to this day.

2209. Mr. Philemon was medevac'd to the Combat Support Hospital in Baghdad

where he was placed in a medically induced coma and underwent extensive treatment to save his life and treat his extensive burns. After approximately a week, he was medevac'd to Landstuhl Regional Medical Center in Landstuhl, Germany and underwent further treatment while still in a medically induced coma. He had sustained third degree burns on his back and legs over 40% of his body. He was then medevac'd to the North Carolina Jaycee Burn Center in Chapel Hill, North Carolina where he was in the ICU for approximately thirty days while undergoing skin graft surgeries. After discharge, he continued to undergo outpatient treatment.

2210. As a result of the October 8, 2006 Terrorist Attack, and the injuries he suffered, Richard Philemon, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2211. Plaintiff, Renawta Lawson, is a citizen of the United States and is domiciled in Aviano, Italy. She is the mother of Richard Philemon, Jr.

2212. Plaintiff, Casie S. Philemon, is a citizen of the United States and is domiciled in the state of Virginia. She is the daughter of Richard Philemon, Jr.

2213. Plaintiff, Dennis Philemon, is a citizen of the United States and is domiciled in the state of Texas. He is the brother of Richard Philemon, Jr.

2214. As a result of the October 8, 2006 Terrorist Attack, and the injuries suffered by Richard Philemon, Jr., Plaintiffs, Renawta Lawson, Casie S. Philemon, and Dennis Philemon, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 181. THE OCTOBER 3, 2006 ATTACK – AL TAQADDUM

### A. PLAINTIFF DALE M. HINKLEY

2215. Plaintiff Dale M. Hinkley is a citizen of the United States and domiciled in the State of North Carolina.

2216. On October 3, 2006, Dale M. Hinkley, age 22, was serving in the U.S. military in Iraq.

2217. Mr. Hinkley was with his unit in Al Taqaddum driving a 22 ½ ton Logistics Vehicle System (LVS) truck in a six-vehicle convoy when it was struck by an IED.

2218. The weapon used to attack and injure Mr. Hinkley was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2219. As a result of the attack, Dale M. Hinkley suffered from concussive blast injuries, misalignment of his jaw and vertebrae, and PTSD.

2220. Dale M. Hinkley received extensive medical care at Camp Pendleton, the La Crosse Veterans Center, and Tomah VA Medical Center.

2221. As a result of the October 3, 2006 Terrorist Attack, and the injuries he suffered, Dale M. Hinkley has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 182. THE OCTOBER 1, 2006 ATTACK – FALLUJAH

### A. PLAINTIFFS THE JASON EDWARD MIKOLAJCIK FAMILY

2222. Plaintiff Jason Edward Mikolajcik is a citizen of the United States and domiciled in the State of Connecticut.

2223. On October 1, 2006, Jason Edward Mikolajcik, age 20, was serving in the U.S.

military in Iraq.

2224. Mr. Mikolajcik was working at an entry control point in Fallujah, Iraq when a Suicide bomber driving a VBIED approached them and detonated.

2225. The weapon used to attack and injure Mr. Mikolajcik was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2226. As a result of the October 1, 2006 Terrorist Attack, Jason Edward Mikolajcik suffered substantial shrapnel wounds, extensive burns, spinal impact injury, a TBI and PTSD.

2227. Jason Edward Mikolajcik received extensive medical treatment at; Camp Fallujah, Fallujah, Iraq; LSA Anaconda, Balad, Iraq; Landstuhl Medical Center, Landstuhl, Germany: and Brooke Army Medical Center, San Antonio, Texas.

2228. As a result of the October 1, 2006 Terrorist Attack, and the injuries he suffered, Jason Edward Mikolajcik has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2229. Plaintiff John Joseph Mikolajcik is a citizen of the United States and domiciled in the State of Connecticut. He is the father of Jason Edward Mikolajcik.

2230. As a result of the October 1, 2006 Terrorist Attack, and the injuries suffered by Jason Edward Mikolajcik, Plaintiff John Joseph Mikolajcik has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 183. THE SEPTEMBER 30, 2006 ATTACK – MSR TAMPA, SOUTH OF MOSUL

### A. PLAINTIFFS THE JOHN DAVID, JR. FAMILY

2231. Plaintiff John David, Jr. is a citizen of the United States and domiciled in the State of Washington.

2232. On September 30, 2006, John David, Jr., age 33, was serving in the U.S. military in Iraq.

2233. Mr. David was patrolling with his unit south of Mosul, Iraq on MSR Tampa when his Humvee ran over an IED.

2234. The weapon used to attack and injure Mr. David was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2235. As a result of the attack, John David, Jr. suffered injuries to his lower back and shoulder and has been diagnosed with PTSD and anxiety.

2236. John David, Jr. was medevac'd to Camp Speicher. He was transported to Landstuhl, Germany for more critical care. He then was moved to Bamberg Germany Hospital. Upon returning to the United States, he has been seen at the Madigan Army Hospital in JBLM, Washington.

2237. As a result of the September 30, 2006 Terrorist Attack, and the injuries he suffered, John David, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2238. Plaintiff Shawndra David is a citizen of the United States and is domiciled in the state of Washington. She is the wife of John David, Jr.

2239. Plaintiff Justus Getty is a citizen of the United States and is domiciled in the state of Washington. He is the step-son of John David, Jr.

2240. Plaintiff Korbin L. David is a citizen of the United States and is domiciled in the state of Washington. He is the son of John David, Jr.

2241. Plaintiff John David, Jr, as next friend of L.J.D., a minor is a citizen of the United States and is domiciled in the state of Washington. L.J.D. is the daughter of John David, Jr.

2242. As a result of the September 30, 2006 Terrorist Attack, and the injuries suffered by John David, Jr., Plaintiffs Shawndra David, Justus Getty, Korbin L. David, and L.J.D., a minor have past and future noneconomic damages, including severe physical and mental pain and suffering, loss of consortium, and past and future economic damages, including loss of services.

**184. THE SEPTEMBER 30, 2006 ATTACK – RAMADI**

**A. PLAINTIFF NICHOLAS B. ANDREWS**

2243. Plaintiff Nicholas B. Andrews is a citizen of the United States and domiciled in the State of Delaware.

2244. On September 30, 2006, Nicholas B. Andrews, age 25, was serving in the U.S. military in Iraq.

2245. Mr. Andrews was the gunner of the Humvee, which was fifth in line of an eight-vehicle convoy traveling East on MSR Bronze when an IED was detonated on his vehicle.

2246. The weapon used to attack and injure Mr. Andrews was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2247. As a result of the attack, Nicholas B. Andrews suffered a concussion, perforated

ear drum, TBI, and PTSD.

2248. Nicholas B. Andrews received extensive medical treatment first at the scene of the attack by the convoy medic, then at the medical facility at Camp Ramadi upon returning to base. He later underwent medical and psychological treatment at; Landstuhl Regional Medical Center, VA North Texas Health Care System, and Wilmington VA Medical Center.

2249. As a result of the September 30, 2006 Terrorist Attack, and the injuries he suffered, Nicholas B. Andrews has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 185. THE SEPTEMBER 20, 2006 ATTACK - BAQUBA

### A. PLAINTIFF DOMINIC FRANKLIN MOODY

2250. Plaintiff Dominic Franklin Moody is a citizen of the United States and domiciled in the State of California.

2251. On September 20, 2006, Mr. Dominic Moody, age 27, was serving in the U.S. military in Iraq.

2252. Mr. Dominic Moody was providing security outside the mayor's house in Baqubah when he was attacked by mortars. He saw and heard mortars hitting as close as a few houses away. While under fire, he made the command decision to move his unit into trucks and move out of the area while under fire.

2253. The weapon used to attack Mr. Dominic Moody was Iranian manufactured/supplied mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2254. As a result of the attack, Mr. Dominic Moody sufferers from PTSD, anxiety, and sleep disorders.

2255. Mr. Dominic Moody received medical treatment once returning to the U.S. He was seen at the VA Loma Linda Healthcare System, and continues to treat at the Victorville VA clinic.

2256. As a result of the September 20, 2006 Terrorist Attack, and the injuries he suffered, Mr. Dominic Moody has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 186. THE SEPTEMBER 15, 2006 ATTACK –FORWARD OPERATING BASE DIAMONDBACK, MOSUL

#### A. PLAINTIFF TAMI RENEI KEMPER-PENA

2257. Plaintiff Tami Renei Kemper-Pena is a citizen of the United States and domiciled in the State of Florida.

2258. On September 15, 2006, Tami Renei Kemper-Pena, age 26, was serving in the U.S. military in Iraq.

2259. Mrs. Pena was on base at FOB Diamondback in Mosul, Iraq when incoming mortars and rockets impacted her unit.

2260. The weapons used to attack and injure Mrs. Pena were Iranian manufactured/supplied mortars and rockets provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2261. As a result of the attack, Tami Renei Kemper-Pena suffered from a traumatic brain injury, post-concussive syndrome, herniated disk and injuries to her back and neck, as well as being diagnosed with PTSD, anxiety and a panic disorder.

2262. Tami Renei Kemper-Pena received extensive medical treatment. She began treatment for her back while still at FOB Diamondback. Upon her return to the United States,

she has seen the following medical providers: Army Hospital in Kuwait, Landstuhl, Germany; Brook Army Medical Center in Fort Sam Houston; Dr. Beatty in Sarasota, Florida; Fort Gordon, Georgia; and the Bay Pines Veterans Administration Healthcare System in St. Petersburg, Florida.

2263. As a result of the September 15, 2006 Terrorist Attack, and the injuries she suffered, Tami Renei Kemper-Pena has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 187. THE SEPTEMBER 15, 2006 ATTACK - MOSUL

### A. PLAINTIFFS THE GILBERT MATTHEW BOYNTON FAMILY

2264. Plaintiff Gilbert Matthew Boynton is a citizen of the United States and the State of California.

2265. On September 15, 2006, Gilbert Matthew Boynton, age 24, was serving in the U.S. military in Iraq.

2266. Mr. Boynton was on convoy with his unit when the convoy was hit with a VBIED.

2267. The weapon used to attack and injure Mr. Boynton was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2268. As a result of the attack, Gilbert Matthew Boynton suffered tinnitus, migraines, tendonitis, PTSD and anxiety.

2269. Gilbert Matthew Boynton received extensive medical treatment immediately

following the attack and continues his treatment with the VA.

2270. As a result of the September 15, 2006 Terrorist Attack, and the injuries he suffered, Gilbert Matthew Boynton has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2271. Plaintiff Sofia T. Boynton is a citizen of the United States and domiciled in the State of California. She is the mother of Gilbert Matthew Boynton.

2272. As a result of the September 15, 2006 Terrorist Attack, and the injuries suffered by Gilbert Matthew Boynton, Plaintiff Sofia T. Boynton has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 188. THE SEPTEMBER 14, 2006 ATTACK – ROUTE APRIL, FALLUJAH

#### A. PLAINTIFFS THE CHRISTOPHER BRIAN SAUNDERS FAMILY

2273. Plaintiff Christopher Brian Saunders is a citizen of the United States and domiciled in the State of Massachusetts.

2274. On September 14, 2006, Mr. Saunders, age 24, was serving in the U.S. military in Iraq.

2275. Mr. Saunders was in a Humvee, travelling on Route River Road just off of Route April in Fallujah, when a double anti-tank mine exploded, ripping through the vehicle and caused the Humvee to catch fire.

2276. The weapon used to attack and injure Mr. Christopher Saunders was an Iranian

manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2277. As a result of the attack, Mr. Saunders was knocked unconscious, and he sustained serious injury, including traumatic brain injury, internal bleeding in his brain due to the concussion, blown out eardrum, shattered leg in over seven places, back injury, burns, and has suffered from PTSD, anxiety, depression, and sleep disorder.

2278. After receiving immediate emergency medical attention in Fallujah, Mr. Saunders received additional treatment at Balad Airforce base, and was then evacuated to Landstuhl Regional Medical Center. Mr. Saunders has received additional treatment at Walter Reed National Military Medical Center, Kennedy Brothers Physical Therapy, and the VA Boston Healthcare System.

2279. As a result of the September 14, 2006 Terrorist Attack, Christopher Brian Saunders has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2280. Plaintiff Cecelia Anne Saunders is a citizen of the United States and domiciled in the State of Massachusetts. She is the mother of Plaintiff, Christopher Brian Saunders.

2281. As a result of the September 14, 2006 Terrorist Attack, and the injuries suffered by Christopher Brian Saunders, Plaintiff Cecelia Anne Saunders has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 189. THE SEPTEMBER 7, 2006 ATTACK – AL ANBAR PROVINCE

### A. PLAINTIFFS THE BENJAMIN TRAINER FAMILY

2282. Plaintiff Benjamin Trainer is a citizen of the United States and domiciled in the State of Florida.

2283. On September 7, 2006, Benjamin Trainer, age 23, was serving in the U.S. military in Iraq.

2284. Mr. Trainer was performing his duties as a Military Police Officer providing security to a convoy of five military vehicles and 50 contract semi-trucks making a supply drop in Fallujah. He was positioned behind the driver in the second vehicle when the lead vehicle ran over the pressure plate of an IED blowing up the vehicle, killing the gunner and injuring the other occupants. Mr. Trainer's vehicle was impacted by the blast causing significant injuries to him and the other occupants of his vehicle.

2285. The weapon used to attack and injure Mr. Trainer was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2286. As a result of the attack, Benjamin Trainer suffered significant injuries including concussive blast injuries, traumatic injury to the left knee and lower back, a shrapnel injury to the chin, and PTSD.

2287. Benjamin Trainer received extensive medical treatment including acute wound care, and ongoing medications and acupuncture for chronic back and knee pain, constant migraines, and sleep apnea. Mr. Trainer also continues to receive treatment, including medications and therapy, for PTSD, severe anxiety attacks, paranoia, depression, hyper arousal, and sleep disorder caused by the Terrorist Attack.

2288. As a result of the September 7, 2006 Terrorist Attack, and the injuries he

suffered, Benjamin Trainer has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2289. Plaintiff Edward James Trainer, is a citizen of the United States and domiciled in the State of Kentucky. He is the father of Benjamin Trainer.

2290. As a result of the September 7, 2006 Terrorist Attack, and the injuries suffered by Benjamin Trainer, Plaintiff Edward James Trainer has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 190. THE AUGUST 29, 2006 ATTACK – SADR AL YUSIFIYAH

### A. PLAINTIFFS THE MATTHEW J. VOSBEIN FAMILY

2291. Plaintiff Matthew J. Vosbein was a citizen of the United States and domiciled in the State of Tennessee at the time of his death.

2292. On August 29, 2006, Matthew J. Vosbein, age 30, was serving in the U.S. military in Iraq.

2293. Mr. Vosbein was on foot patrol in Sadr Al Yusifiyah when he stepped on an IED.

2294. The weapon used to attack and injure Mr. Vosbein was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2295. As a result of the attack, Matthew J. Vosbein suffered injuries including, but not limited to, death.

2296. As a result of the August 29, 2006 Terrorist Attack, and the injuries and death

suffered by Matthew J. Vosbein, Plaintiffs Lynda L. Vosbein, John Vosbein, Connor Vosbein, Brandon Jackson, Anna Williams, Tim Lingle, Hagle Williams, Chris Williams, Jason Lingle, Lucas Lingle, Timothy J.B. Lingle and Jeremy Lingle have experienced and continue to experience, severe mental anguish, extreme emotional pain and suffering and loss of Matthew J. Vosbein's society, companionship, comfort, advice and counsel.

2297. Plaintiff Lynda L. Vosbein is a citizen of the United States and domiciled in the State of California. She is the widow of Matthew J. Vosbein.

2298. Plaintiff John Vosbein is a citizen of the United States and domiciled in the State of Wyoming. He is the son of Matthew J. Vosbein.

2299. Plaintiff Connor Vosbein is a citizen of the United States and domiciled in the Wyoming. He is the son of Matthew J. Vosbein.

2300. Plaintiff Brandon Jackson is a citizen of the United States and domiciled in the State of California. He is the step-son of Matthew J. Vosbein.

2301. Plaintiff Anna Williams is a citizen of the United States and domiciled in the Louisiana. She is the mother of Matthew J. Vosbein.

2302. Plaintiff Tim Lingle is a citizen of the United States and domiciled in the Illinois. He is the father of Matthew J. Vosbein.

2303. Plaintiff Hagle Williams is a citizen of the United States and domiciled in the Louisiana. He is the brother of Matthew J. Vosbein.

2304. Plaintiff Chris Williams is a citizen of the United States and domiciled in the Louisiana. He is the brother of Matthew J. Vosbein.

2305. Plaintiff Jason Lingle is a citizen of the United States and domiciled in the Illinois. He is the brother of Matthew J. Vosbein.

2306. Plaintiff Lucas Lingle is a citizen of the United States and domiciled in the Illinois. He is the brother of Matthew J. Vosbein.

2307. Plaintiff Timothy J.B. Lingle is a citizen of the United States and domiciled in the Illinois. He is the brother of Matthew J. Vosbein.

2308. Plaintiff Jeremy Lingle is a citizen of the United States and domiciled in the Illinois. He is the son of Matthew J. Vosbein.

2309. Plaintiff Lynda Vosbein brings an action individually, and on behalf of the anticipated Estate of Matthew J. Vosbein, and all heirs thereof, as its legal representative.

2310. As a result of the August 29, 2006 Terrorist Attack, and the injuries suffered by and death of Matthew J. Vosbein, Plaintiffs Lynda L. Vosbein, John Vosbein, Connor Vosbein, Brandon Jackson, Anna Williams, Tim Lingle, Hagle Williams, Chris Williams, Jason Lingle, Lucas Lingle, Timothy J.B. Lingle and Jeremy Lingle have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Matthew J. Vosbein's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Matthew J. Vosbein.

## 191. THE AUGUST 15, 2006 ATTACK – HADITHA

### A. PLAINTIFFS THE TIMOTHY GRAJKO FAMILY

2311. Plaintiff Timothy Grajko is a citizen of the United States and domiciled in the State of Connecticut.

2312. On August 15, 2006, Grajko, age 24, was serving in the U.S. military in Iraq.

2313. Mr. Grajko was traveling in a 4 vehicle convoy as a Quick Response Force in Haditha, Iraq to sweep and clear an area. As they were traveling, they were attacked by grenades, machine gun fire, and an RPG. As a result, Grajko became unconscious, suffered a concussion, and received shrapnel to the head, neck and shoulders. Grajko regained

consciousness and continued to receive fire from the terrorists for 30-40 seconds before the convoy was able to escape the attack.

2314. The weapon used to attack and injure Mr. Grajko was an Iranian manufactured munition provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2315. As a result of the attack, Mr. Grajko sustained significant injuries including a concussion, shrapnel wounds to the head, neck and shoulders, back pain, TBI, and PTSD.

2316. Mr. Grajko was treated at base camp in Haditha once his unit returned. At base, Grajko was evaluated, shrapnel pieces were removed and he was given medications for concussion and pain. Mr. Grajko continues to receive treatment for his physical and psychological injuries.

2317. As a result of the August 15, 2006 attack, and the injuries he suffered, Plaintiff has past and future noneconomic damages, including severe physical and mental pain and suffering, loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2318. Plaintiff, Alaina Locurcio is a citizen of the United States and is domiciled in the state of Ohio. She was the wife of Timothy Grajko.

2319. Plaintiff, Walter E. Grajko is a citizen of the United States and is domiciled in the State of New York. He is the father of Timothy Grajko.

2320. 2410. Plaintiff, Kathleen J. Grajko is a citizen of the United States and is domiciled in the State of New York. She is the mother of Timothy Grajko.

2321. 2411. Plaintiff, Michael J. Grajko is a citizen of the United States and is domiciled in the State of New York. He is the brother of Timothy Grajko.

2322. 2412. As a result of the August 15, 2006 Terrorist Attack and the injuries suffered by Timothy Grajko, Plaintiffs Alaina Locurcio, Walter E. Grajko, Kathleen J. Grajko, and Michael J. Grajko have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 192. THE MID-AUGUST, 2006 ATTACK - BAQUBAH

### A. PLAINTIFF MATTHEW P. HALEY

2323. Plaintiff Matthew P. Haley is a citizen of the United States and domiciled in the State of Colorado.

2324. In Mid-August, 2006, Matthew P. Haley, age 26, was serving in the U.S. military in Iraq.

2325. Mr. Haley was on patrol with his unit on the outskirts of Baqubah returning to FOB Warhorse when his vehicle was struck by an EFP.

2326. The weapon used to attack and injure Mr. Haley was an Iranian manufactured/supplied Explosively Formed Penetrator ("EFP") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2327. As a result of the attack, Matthew P. Haley suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI") with post-concussion syndrome, chronic migraines, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

2328. Matthew P. Haley received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

2329. As a result of the Mid-August 2006 Terrorist Attack, and the injuries he suffered, Matthew P. Haley has past and future noneconomic damages, including severe

physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 193. THE AUGUST 6, 2006 ATTACK - BAGHDAD

#### A. PLAINTIFF MATTHEW P. HALEY

2330. Plaintiff Matthew P. Haley is a citizen of the United States and domiciled in the State of Colorado.

2331. On or about August 6, 2006, Matthew P. Haley, age 26, was serving in the U.S. military in Iraq.

2332. Mr. Haley was on patrol with his unit on the outskirts of Baqubah, moving towards Baghdad, when his vehicle was struck by an IED.

2333. The weapon used to attack and injure Mr. Haley was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2334. As a result of the attack, Matthew P. Haley suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI") with post-concussion syndrome, chronic migraines, Tinnitus, neck pain, back pain, radiculopathy of the left lower extremity, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

2335. Matthew P. Haley received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

2336. As a result of the Terrorist Attack on or about August 6, 2006, and the injuries he suffered, Matthew P. Haley has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 194. THE JULY 27, 2006 ATTACK – RAMADI

### A. PLAINTIFFS THE ALFONSO G. MATOS MESA FAMILY

2337. Plaintiff Alfonso G. Matos Mesa is a citizen of the United States and domiciled in the State of New York.

2338. On July 27, 2006, Alfonso G. Matos Mesa, age 27, was serving in the U.S. military in Iraq.

2339. Mr. Matos Mesa was a passenger in an HMMWV on patrol with his unit in central Ramadi, traveling on South School Road when it was struck by an IED.

2340. The weapon used to attack and injure Mr. Matos Mesa was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2341. As a result of the attack, Alfonso G. Matos Mesa suffered massive lacerations to his left leg, burns, spinal injuries, TBI, PTSD, anxiety and depression.

2342. Alfonso G. Matos Mesa received extensive medical and psychological treatment at Camp Ramadi, Balad Air Base, Landstuhl Regional Medical Center, Walter Reed National Military Medical Center, and James J. Peters VA Medical Center.

2343. As a result of the July 27, 2006 Terrorist Attack, and the injuries he suffered, Alfonso G. Matos Mesa has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2344. Plaintiff Polibia Matos is a citizen of the United States and is domiciled in the state of New York. She is the Mother of Alfonso G. Matos Mesa.

2345. Plaintiff Alfonso Argenis Matos is a citizen of the United States and is domiciled in the state of Maryland. He is the brother of Alfonso G. Matos Mesa.

2346. Plaintiff Fabian Matos is a citizen of the United States and is domiciled in the state of New Jersey. He is the brother of Alfonso G. Matos Mesa.

2347. As a result of the July 27, 2006 Terrorist Attack, and the injuries suffered by Alfonso G. Matos Mesa, Plaintiffs, Polibia Matos, Alfonso Argenis Matos, and Fabian Matos have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 195. THE JULY 26, 2006 ATTACK – ROUTE MINNEAPOLIS, MOSUL

#### A. PLAINTIFFS THE SHAWN MICHAEL CUMMINGS FAMILY

2348. Plaintiff Shawn Michael Cummings is a citizen of the United States and domiciled in the State of New York.

2349. On July 26, 2006, Shawn Cummings, age 34, was serving in the U.S. military in Iraq.

2350. Mr. Cummings was the Truck Commander in a convoy traveling on Route Minneapolis near Mosul when an IED blast penetrated the armor of the passenger compartment where Mr. Cummings was seated causing a puncture wound and hyperextension of his right knee.

2351. The weapon used to attack and injure Mr. Cummings was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2352. As a result of the attack, Shawn Cummings suffered traumatic knee injury, shrapnel wounds, tinnitus, hearing loss, and PTSD.

2353. Shawn Cummings received extensive medical treatment including two

surgeries on his knee. His treatment providers include the 47th Combat Support Hospital, Guthrie Medical Clinic, and Syracuse VA Medical Center.

2354. As a result of the July 26, 2006 Terrorist Attack, and the injuries he suffered, Shawn Cummings has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2355. Plaintiff Lisa M. Cummings is a citizen of the United States and domiciled in the State of New York. She is the wife of Shawn Cummings.

2356. Plaintiff Natasha O'Neill is a citizen of the United States and domiciled in the State of New York. She is the daughter of Shawn Cummings.

2357. Plaintiff Georgia Rose Cummings is a citizen of the United States and domiciled in the State of New York. She is the daughter of Shawn Cummings.

2358. Plaintiff James M. Cummings is a citizen of the United States and domiciled in the State of Kentucky. He is the son of Shawn Cummings.

2359. As a result of the July 26, 2006 Terrorist Attack, and the injuries suffered by Shawn Cummings, Plaintiffs Lisa M. Cummings, Natasha O'Neill, Georgia Rose Cummings, and James M. Cummings have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 196. THE JULY 20, 2006 ATTACK - KHALIDIYAH

### A. PLAINTIFF PATRICK ANDREW DIENER

2360. Plaintiff Patrick Andrew Diener is a citizen of the United States and domiciled in the State of Tennessee.

2361. On July 20, 2006, Patrick Andrew Diener, age 25, was serving in the U.S.

military in Iraq.

2362. Mr. Diener was on recon patrol with his unit in Khalidiyah when they were attacked by sniper fire, small arms, rockets and mortars. Patrick was shot in the right elbow.

2363. The weapon used to attack and injure Mr. Diener was an Iranian manufactured/supplied small arms, rockets and mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2364. As a result of the attack, Patrick Andrew Diener suffered a broken right arm, nerve damage and depression.

2365. Patrick Andrew Diener received extensive medical treatment immediately following the attack by the medic and was medevac'd for trauma care. He was transported then to Germany for further surgery and then transported to Walter Reed for ongoing treatment. Patrick continues care with the VA.

2366. As a result of the July 20, 2006 Terrorist Attack, and the injuries he suffered, Patrick Andrew Diener has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 197. THE JULY 20, 2006 ATTACK – RAMADI

### A. PLAINTIFFS THE NICHOLAS ANTHONY WEST FAMILY

2367. Plaintiff Nicholas Anthony West is a citizen of the United States and domiciled in the State of Tennessee.

2368. On July 20, 2006, Nicholas Anthony West, age 20, was serving in the U.S. military in Iraq.

2369. Mr. West was on patrol in Ramadi when his vehicle was hit with an IED then they were engaged by RPGs and small arms fire.

2370. The weapons used to attack and injure Mr. West were an Iranian manufactured/supplied IED, RPG, and small arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2371. As a result of the July 20, 2006 Terrorist Attack, Nicholas Anthony West suffered ruptured ear drums, spinal impact injury, a TBI and PTSD.

2372. Nicholas Anthony West received extensive medical treatment at; Charlie Surgical, Camp Ramadi, Iraq; Naval Medical Center Camp Lejeune, Camp Lejeune, NC: and Tennessee Valley Healthcare System- Nashville Campus, Nashville, TN.

2373. As a result of the July 20, 2006 Terrorist Attack, and the injuries he suffered, Nicholas Anthony West has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2374. Plaintiff, Christine West is a citizen of the United States and domiciled in the State of Tennessee. She is the mother of Nicholas Anthony West.

2375. As a result of the July 20, 2006 Terrorist Attack, and the injuries suffered by Nicholas Anthony West, Plaintiff Christine West has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 198. THE JULY 15, 2006 ATTACK – TRAFFIC CIRCLE, AR RAMADI, AL ANBAR PROVINCE

### A. PLAINTIFFS THE LATHAN HILL FAMILY

2376. Plaintiff Lathan Hill is a citizen of the United States and domiciled in the State of California.

2377. On July 15, 2006, Lathan Hill, age 24, was serving in the U.S. military in Iraq.

2378. Mr. Hill was on patrol with his unit in a traffic circle in Ar Ramadi when the Buffalo he was in hit an IED.

2379. The weapon used to attack and injure Mr. Hill was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2380. As a result of the attack, Lathan Hill suffered injuries to his back, vertigo, a traumatic brain injury, PTSD, depression and anxiety.

2381. Lathan Hill received extensive medical treatment. Mr. Hill was examined on base for his injuries. Upon returning to the United States, Mr. Hill has sought medical treatment from the following facilities: Veterans Administration Hospital in Los Angeles, California, the Veterans Administration Hospital in Bakersfield, California, and Camp Hope in Houston, Texas.

2382. As a result of the July 15, 2006 Terrorist Attack, and the injuries he suffered, Lathan Hill has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2383. Plaintiff Laurence Hill is a citizen of the United States and domiciled in the State of California. He is the father of Lathan Hill.

2384. Plaintiff Cathleen Holy is a citizen of the United States and domiciled in the State of California. She is the mother of Lathan Hill.

2385. Plaintiff Lisa Hill Bazan is a citizen of the United States and domiciled in the State of California. She is the sister of Lathan Hill.

2386. As a result of the July 15, 2006 Terrorist Attack, and the injuries suffered by

Lathan Hill, Plaintiffs Laurence Hill, Cathleen Holy and Lisa Hill Bazan have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 199. THE JULY 15, 2006 ATTACK - RAMADI

#### A. PLAINTIFF WALTER LEE HAM JR.

2387. Plaintiff Walter Lee Ham Jr. is a citizen of the United States and domiciled in the State of Georgia.

2388. On July 15, 2006, Walter Lee Ham, age 19, was serving in the U.S. military in Iraq.

2389. Mr. Ham was on convoy with his unit in Ramadi when his vehicle was struck with a daisy chained IED.

2390. The weapon used to attack and injure Mr. Ham was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2391. As a result of the attack, Walter Lee Ham suffered a back injury, tinnitus, a TBI and PTSD.

2392. Walter Lee Ham received extensive medical treatment following the attack. He was medevac'd to Baghdad for treatment and then sent to Germany where he was kept for 3 weeks and then continued outpatient therapy for 6 months following. June 2007 he had back surgery in Germany.

2393. As a result of the July 15, 2006 Terrorist Attack, and the injuries he suffered, Walter Lee Ham has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic

damages, including medical expenses, lost income, and loss of earning capacity.

### 200. THE JULY 13, 2006 ATTACK – MUQDADIYAH

#### A. PLAINTIFFS THE VICTOR DOMINGUEZ FAMILY

2394. Plaintiff Victor Dominguez is a citizen of the United States and domiciled in the State of Florida.

2395. On July 13, 2006, Victor Dominguez, age 22, was serving in the U.S. military in Iraq.

2396. Mr. Dominguez was traveling on patrol in the Diyala Province, North of Muqdadiyah, on Route Purple when his Bradley was destroyed by an IED.

2397. The weapon used to attack and injure Mr. Dominguez was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2398. As a result of the July 13, 2006 Terrorist Attack, Victor Dominguez suffered third degree burns to 84% of his body.

2399. Victor Dominguez received extensive medical treatment at; LSA Anaconda, Balad, Iraq; Landstuhl Medical Center, Landstuhl, Germany; Brooke Army Medical Center, San Antonio, Texas; VA Caribbean Healthcare System, San Juan, Puerto Rico; Miami VA Healthcare System, Miami, FL; and Homestead VA Clinic, Homestead, FL.

2400. As a result of the July 13, 2006 Terrorist Attack, and the injuries he suffered, Victor Dominguez has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2401. Plaintiff Antonio Aponte is a citizen of the United States and domiciled in the State of Florida. He is the Father of Victor Dominguez.

2402. Plaintiff Ivonne Dominguez is a citizen of the United States and domiciled in Puerto Rico. She is the Mother of Victor Dominguez.

2403. Plaintiff V.D., a minor child, is a citizen of the United States and domiciled in the State of Florida. He is the son of Victor Dominguez.

2404. As a result of the July 13, 2006 Terrorist Attack, and the injuries suffered by Victor Dominguez, Plaintiff's Antonio Aponte, Ivonne Dominguez, and V.D, a minor child, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

**201. THE JULY 10, 2006 ATTACK – BAGHDAD**

**A. PLAINTIFFS THE JEFFREY J. SECKINGER FAMILY**

2405. Plaintiff Jeffrey J. Seckinger is a citizen of the United States and domiciled in the State of Florida.

2406. On July 10, 2006, Jeffrey J. Seckinger, age 22, was serving in the U.S. military in Iraq.

2407. Mr. Seckinger was traveling on Route Chevy in the Baghdad area when his vehicle hit an IED and was engaged by small arms fire.

2408. The weapons used to attack and injure Mr. Seckinger were Iranian manufactured/supplied IED and Small Arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2409. As a result of the attack, Jeffrey J. Seckinger suffered shrapnel wounds to his right side, spinal impact injury, TBI and PTSD.

2410. Jeffrey J. Seckinger received extensive medical treatment at: Combat Support Hospital, Baghdad, Iraq; Balad Air Base; Landstuhl Medical Center, Landstuhl, Germany;

Andrews Air Force Base, Maryland; Carl R. Darnall Medical Center, Fort Hood, TX; and Ocala VA Clinic, Ocala, FL.

2411. As a result of the July 10, 2006 Terrorist Attack, and the injuries he suffered, Jeffrey J. Seckinger has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2412. Plaintiff Michelle Seckinger is a citizen of the United States and domiciled in the State of Florida. She is the wife of Jeffrey J. Seckinger.

2413. As a result of the July 10, 2006 Terrorist Attack, and the injuries suffered by Jeffrey J. Seckinger, Plaintiff Michelle Seckinger has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 202. THE JULY 10, 2006 ATTACK – BALAD

### A. PLAINTIFF DHUNTHA SHAYRE WYATT

2414. Plaintiff Dhuntha Shayre Wyatt is a citizen of the United States and domiciled in the State of Texas.

2415. On July 10, 2006, Dhuntha Shayre Wyatt, age 19, was serving in the U.S. military in Iraq.

2416. Mr. Wyatt was on patrol in Balad, Iraq when an IED detonated near him and small arms fire surrounded him.

2417. The weapon used to attack and injure Mr. Wyatt was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2418. As a result of the attack, Dhuntha Shayre Wyatt suffered a shrapnel wound to

his neck, scarring from a burn wound, disfigurement, hearing loss, tinnitus, and PTSD.

2419. Dhuntha Shayre Wyatt received extensive medical treatment; he has taken medication to help treat his PTSD and undergoes monitoring for his hearing loss.

2420. As a result of the July 10, 2006 Terrorist Attack, and the injuries he suffered, Dhuntha Shayre Wyatt has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 203. THE JUNE 22, 2006 ATTACK – AL QAIM, AL ANBAR

### A. PLAINTIFF BRYAN ESCOBEDO

2421. Plaintiff Bryan Escobedo is a citizen of the United States and domiciled in the State of Texas.

2422. On June 22, 2006, Bryan Escobedo, age 21, was serving in the U.S. military in Iraq.

2423. Mr. Escebedo was injured when the vehicle in which he was travelling fell under attack and was hit by an IED in or near Al Qaim, Al Anbar, Iraq.

2424. The weapon used to attack and injure Mr. Escobedo was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2425. As a result of the attack, Bryan Escobedo suffered PTSD, tinnitus, anxiety, depression, fractured coccyx, severe pain/numbness/tingling radiating from back to legs, and intense left leg pain/weakness at times.

2426. Bryan Escobedo received extensive medical treatment for his injuries, including multiple hospital and physician visits at various medical facilities.

2427. As a result of the June 22, 2006 Terrorist Attack, and the injuries he suffered,

Bryan Escobedo has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 204. THE JUNE 7, 2006 ATTACK - ROUTE CANUCKS, NORTHWEST OF BAGHDAD

#### A. PLAINTIFF JERRY DANIEL WALKER

2428. Plaintiff Jerry Daniel Walker is a citizen of the United States and domiciled in the State of Montana.

2429. On June 7, 2006, Mr. Walker, age 23, was serving in the U.S. military in Iraq.

2430. On the evening of June 7, 2006, Mr. Walker was traveling east in a Humvee on Route Canucks, northwest of Baghdad. His vehicle was the first vehicle in a convoy of four when he struck an IED. Mr. Walker was the gunner of the vehicle and was knocked unconscious with severe lacerations to his right arm and face.

2431. The weapon used to attack and injure Mr. Walker was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2432. As a result of the June 7, 2006 Terrorist Attack, Mr. Walker sustained significant injuries due to the concussive blast of the explosion. He suffers from a traumatic brain injury, PTSD, migraines, bilateral tinnitus, and insomnia.

2433. Mr. Walker has received extensive medical treatment for his injuries, including treatment at Camp Liberty in Baghdad, hospitals in Germany, Indian Health Services, VA Medical Center - Fort Harrison, and the Billings VA Community-Based Outpatient Clinic. He will require further treatment and care.

2434. As a result of the June 7, 2006 Terrorist Attack, and the injuries he suffered,

Jerry Daniel Walker has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

**205. THE JUNE 4, 2006 ATTACK – BAIJI**

**A. PLAINTIFFS THE HECTOR M. LOPEZ, JR. FAMILY**

2435. Plaintiff Hector M. Lopez, Jr. is a citizen of the United States and domiciled in the State of Texas.

2436. On June 4, 2006, Hector M. Lopez, Jr., age 25, was serving in the U.S. military in Iraq.

2437. Mr. Lopez was in a convoy on patrol with his unit in Baiji, south of Tikrit, when his vehicle was struck by an RPG.

2438. The weapon used to attack and injure Mr. Lopez was an Iranian manufactured/supplied Rocket-Propelled Grenade ("RPG") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2439. As a result of the attack, Hector M. Lopez, Jr. suffered injuries that include, but are not limited to, shrapnel wounds to his left leg and left hand, Tinnitus, hearing loss, Post-Traumatic Stress Disorder ("PTSD"), anxiety and depression.

2440. Hector M. Lopez, Jr. received extensive medical treatment, including past and ongoing care for these injuries, at Camp Anaconda and various Veterans Medical Centers, private hospitals and other medical providers.

2441. As a result of the June 4, 2006 Terrorist Attack, and the injuries he suffered, Hector M. Lopez, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2442. Plaintiff Catherine Lopez is a citizen of the United States and domiciled in the State of Texas. She is the wife of Hector M. Lopez, Jr.

2443. Plaintiff Hector M. Lopez, Sr. is a citizen of the United States and domiciled in the State of Texas. He is the father of Hector M. Lopez, Jr.

2444. Plaintiff Patricia Santana is a citizen of the United States and domiciled in the State of Texas. She is the mother of Hector M. Lopez, Jr.

2445. Plaintiff Isaac Lopez is a citizen of the United States and domiciled in the State of Massachusetts. He is the brother of Hector M. Lopez, Jr.

2446. Plaintiff Vivian Lopez is a citizen of the United States and domiciled in the State of Texas. She is the sister of Hector M. Lopez, Jr.

2447. Plaintiff Robert Valle is a citizen of the United States and domiciled in the State of Texas. He is the son of Hector M. Lopez, Jr.

2448. Plaintiff E.L., a minor, represented by her legal guardians Hector M. Lopez, Jr. and Catherine Lopez, is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Hector M. Lopez, Jr.

2449. As a result of the June 4, 2006 Terrorist Attack, and the injuries suffered by Hector M. Lopez, Jr., Plaintiff's Catherine Lopez, Hector M. Lopez, Sr., Patricia Santana, Isaac Lopez, Vivian Lopez, Robert Valle, and E.L. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 206. THE JUNE 3, 2006 ATTACK – KIRKUK

### A. PLAINTIFFS THE MICHAEL LOCKE FAMILY

2450. Plaintiff Michael Locke is a citizen of the United States and domiciled in the

State of Florida.

2451. On June 3, 2006, Michael Locke, age 21, was serving in the U.S. military in Iraq.

2452. Mr. Locke was in his living quarters when a 30 mm rocket landed approximately ten yard from his living quarters.

2453. The weapon used to attack and injure Mr. Locke was an Iranian manufactured/supplied Rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2454. As a result of the attack, Michael Locke suffered significant injuries including gastrointestinal issues, PTSD, anxiety, dysphoria, anger issues, and difficulty sleeping.

2455. Michael Locke has received extensive psychological treatment including undergoing treatment at Viera VA Clinic, Melbourne, FL; Orlando VA Medical Center, Orlando, FL; Baytree Behavioral Health, Melbourne, FL; Adult & Child Counseling, Melbourne, FL; and by Kristin K. Wallace, Ph.D., Satellite Beach, FL.

2456. As a result of the June 3, 2006 Terrorist Attack, and the injuries he suffered, Michael Locke has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2457. Plaintiff, William A. Locke, is a citizen of the United States and is domiciled in the state of Florida. He is the father of Michael Locke.

2458. Plaintiff, W. David Locke, is a citizen of the United States and is domiciled in the state of Florida. He is the brother of Michael Locke.

2459. As a result of the June 3, 2006 Terrorist Attack, and the injuries suffered by

Michael Locke, Plaintiffs, William A. Locke, and W. David Locke, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 207. THE MAY 25, 2006 ATTACK – RAMADI

#### A. PLAINTIFFS THE JOSEPH MONFORTE, JR. FAMILY

2460. Plaintiff Joseph Monforte, Jr. is a citizen of the United States and domiciled in the State of Florida.

2461. On May 25, 2006, Joseph Monforte, Jr., age 31, was serving in the U.S. military in Iraq.

2462. Mr. Monforte was on patrol with his unit on Route Michigan in Ramadi, Iraq when his vehicle was struck by a pressure-plate triggered IED.

2463. The weapon used to attack and injure Mr. Monforte was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2464. As a result of the attack, Joseph Monforte, Jr. suffered significant injuries including a collapsed lung, shrapnel to his nose, elbow, ribs, groin area, thigh, cracked left pelvis and hip, TBI, migraines, sleep apnea, memory loss, scarring, PTSD, depression, anxiety, and flashbacks.

2465. Joseph Monforte, Jr. received extensive medical treatment at Camp Ramadi, Carl R. Darnall Army Medical Center, Brooke Army Medical Center, Brooksville VA Outpatient Clinic, and other medical facilities.

2466. As a result of the May 25, 2006 Terrorist Attack, and the injuries he suffered, Joseph Monforte, Jr. has past and future noneconomic damages, including severe physical and

mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2467. Plaintiff, Marylou Monforte, is a citizen of the United States, and is domiciled in the state of Florida. She is the mother of Joseph Monforte, Jr.

2468. Plaintiff, Kristen Martinez, is a citizen of the United States and is domiciled in the state of Florida. She is the sister of Joseph Monforte, Jr.

2469. Plaintiff, Victoria Monforte, is a citizen of the United States and is domiciled in the state of New York. She is the daughter of Joseph Monforte, Jr.

2470. Plaintiff, Amanda Monforte, is a citizen of the United States and is domiciled in the state of New York. She is the daughter of Joseph Monforte, Jr.

2471. As a result of the May 25, 2006 Terrorist Attack, and the injuries suffered by Joseph Monforte, Jr., Plaintiffs, Marylou Monforte, Kristen Martinez, Victoria Monforte, and Amanda Monforte, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 208. THE MAY 24, 2006 ATTACK – DOWNTOWN RAMADI, AL-ANBAR PROVINCE

#### A. PLAINTIFF JOHN PAUL ALVAREZ

2472. Plaintiff John Paul Alvarez is a citizen of the United States and is domiciled in the State of Georgia.

2473. On May 24, 2006, John Paul Alvarez, age 21, was serving in the U.S. military in Iraq.

2474. Mr. Alvarez was in a Humvee that was the lead vehicle in a mounted patrol in downtown Ramadi when an IED exploded and ripped through Mr. Alvarez's vehicle, ejecting

Mr. Alvarez from the vehicle and onto the ground. His unit took on RPG and small arms fire as well.

2475. The weapons used to attack and injure Mr. Alvarez were Iranian-manufactured/supplied IED, RPG, and small arms provided by Iran and/or one of its Agents or Proxies to Iranian-funded and Iranian-trained terror operatives in Iraq.

2476. As a result of the May 24, 2006 Terrorist Attack, Mr. Alvarez sustained significant injuries from the concussive blast of the explosion and shrapnel impacting his head, back, shoulders and fingers. Mr. Alvarez has suffered from back pain, ear injury, eye injury, burns, traumatic brain injury, headaches and memory loss as a result of this attack, and psychological injuries, including Post Traumatic Stress Disorder ("PTSD"), nightmares, anxiety, and depression.

2477. Mr. Alvarez was treated at Camp Ramadi in Iraq following the attack and subsequently treated at Fort McPherson VA Clinic, Atlanta VA Healthcare System and Austell Community Outpatient Clinic.

2478. As a result of the May 24, 2006 Terrorist Attack and the injuries he suffered, John Paul Alvarez has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 209. THE MAY 11, 2006 ATTACK – ROAD ASR HERSHEY

### A. PLAINTIFF DEVIN SAMUEL HARVEY

2479. Plaintiff Devin Samuel Harvey is a citizen of the United States and domiciled in the State of Indiana.

2480. On May 11, 2006, Devin Samuel Harvey, age 24, was serving in the U.S. military in Iraq.

2481. Mr. Harvey was leading a convoy escorting foreign nationals and dignitaries when his vehicle was struck by an IED.

2482. The weapon used to attack and injure Mr. Harvey was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2483. As a result of the attack, Devin Samuel Harvey suffered significant back injuries and a TBI.

2484. Devin Samuel Harvey received, and continues to receive, extensive medical treatment including treatment for lacerations, significant back impairment, PTSD, anxiety, depression and migraines.

2485. As a result of the May 11, 2006 Terrorist Attack, and the injuries he suffered, Devin Samuel Harvey has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 210. THE MAY 6, 2006 ATTACK – ABA GRAIB

### A. PLAINTIFF ROWDY ZANE BURNEY

2486. Plaintiff Rowdy Zane Burney is a citizen of the United States and domiciled in the State of Alabama.

2487. On May 6, 2006, Rowdy Zane Burney, age 20, was serving in the U.S. military in Iraq.

2488. Mr. Burney was on a mission with his unit in Aba Graib when his vehicle was struck by an IED.

2489. The weapon used to attack and injure Mr. Burney was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-

trained terror operatives in Iraq.

2490. As a result of the attack, Rowdy Zane Burney suffered shrapnel wounds, a back injury, ruptured eardrum, vision loss, tinnitus, PTSD and anxiety.

2491. Rowdy Zane Burney received extensive medical treatment following the attack and was medevac'd to the medical facility at the Aba Ghraib Prison where they cut out the shrapnel. He was then taken to the Camp Fallujah hospital where he spent a month in recovery. He continues treatment with the VA and outside providers.

2492. As a result of the May 6, 2006 Terrorist Attack, and the injuries he suffered, Rowdy Zane Burney has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 211. THE APRIL 16, 2006 ATTACK – AL KARMAH

### A. PLAINTIFF JOEY J. BRAMME

2493. Plaintiff Joey J. Bramme is a citizen of the United States and domiciled in the State of Montana.

2494. On April 16, 2006, Joey J. Bramme, age 20, was serving in the U.S. military in Iraq.

2495. Mr. Bramme was in a convoy with his unit in Al Karmah near a fuel station, when his vehicle was struck by an IED.

2496. The weapon used to attack and injure Mr. Bramme was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2497. As a result of the attack, Joey J. Bramme suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), Post-Traumatic Stress Disorder ("PTSD"),

memory loss, anxiety, and depression.

2498. Joey J. Bramme received extensive medical treatment, including past and ongoing care for these injuries, at Camp Fallujah, Kalispell Veterans Center, Fort Harrison Veterans Medical Center, and other VA Medical Centers and private hospitals.

2499. As a result of the April 16, 2006 Terrorist Attack, and the injuries he suffered, Joey J. Bramme has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 212. THE APRIL 13, 2006 ATTACK – AL KARMAH

#### A. PLAINTIFF JOEY J. BRAMME

2500. Plaintiff Joey J. Bramme is a citizen of the United States and domiciled in the State of Montana.

2501. On April 13, 2006, Joey J. Bramme, age 20, was serving in the U.S. military in Iraq.

2502. Mr. Bramme was in a convoy with his unit on Route Pittsburgh, just outside of Al Karmah, when his vehicle was struck by an IED. The IED blast was followed by a small arms fire attack.

2503. The weapon used to attack and injure Mr. Bramme was an Iranian manufactured/supplied Improvised Explosive Device ("IED") and small arms weapons provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2504. As a result of the attack, Joey J. Bramme suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), a pinched brain stem in his neck, a broken nose which required facial surgery, Post-Traumatic Stress Disorder ("PTSD"), memory loss,

anxiety, and depression.

2505. Joey J. Bramme received extensive medical treatment, including past and ongoing care for these injuries, at Camp Fallujah, Kalispell Veterans Center, Fort Harrison Veterans Medical Center, and other VA Medical Centers and private hospitals.

2506. As a result of the April 13, 2006 Terrorist Attack, and the injuries he suffered, Joey J. Bramme has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 213. THE MARCH 30, 2006 ATTACK – BAGHDAD

### A. PLAINTIFFS THE FLOYD C. PETERS, JR. FAMILY

2507. Plaintiff Floyd C. Peters, Jr. is a citizen of the United States and domiciled in the State of Alabama.

2508. On March 30, 2006, Floyd C. Peters, Jr., age 37, was serving in the U.S. military in Iraq.

2509. Mr. Peters was the commander of an Up Armored Humvee, the last vehicle in a convoy of five vehicles which had left Baghdad International Airport and was on MSR Irish when a remotely detonated IED exploded under his Humvee.

2510. The weapon used to attack and injure Mr. Peters was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2511. As a result of the March 30, 2006 Terrorist Attack, Floyd C. Peters, Jr. suffered injuries from the concussive blast forces including loss of consciousness, loss of hearing, blood from nose and ear, TBI, post-concussive headaches, injuries to his neck, left shoulder, and lower back, tinnitus, and PTSD.

2512. Floyd C. Peters, Jr. received medical and psychological treatment at Carl R. Darnall Army Medical Center, Ft. Hood, Texas; Michael E. DeBakey VA Medical Center, Houston, Texas; the Charles Wilson VA Outpatient Clinic, Lufkin, Texas; and Pineywoods Psychological Services, Nacogdoches, Texas. Since the attack, he has continued to receive treatment for his injuries sustained in this attack.

2513. As a result of the March 30, 2006 Terrorist Attack, and the injuries he suffered, Floyd C. Peters, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2514. Plaintiff Christina Peters is a citizen of the United States and is domiciled in the state of Texas. She is the wife of Floyd C. Peters, Jr.

2515. Plaintiff, Katlin Peters, is a citizen of the United States and is domiciled in the state of Texas. She is the daughter of Floyd C. Peters, Jr.

2516. Plaintiff, Floyd A. Peters, is a citizen of the United States and is domiciled in the state of Texas. He is the son of Floyd C. Peters, Jr.

2517. Plaintiff, A.P., a minor child, is a citizen of the United States and is domiciled in the state of Texas. He is the son of Floyd C. Peters, Jr.

2518. Plaintiff, Santana M. Peters, is a citizen of the United States and is domiciled in the state of Texas. She is the daughter of Floyd C. Peters, Jr.

2519. Plaintiff, G.P., a minor child, is a citizen of the United States and is domiciled in the state of Texas. She is daughter of Floyd C. Peters, Jr.

2520. Plaintiff, Linda Peters, is a citizen of the United States and is domiciled in the state of Texas. She is the mother of Floyd C. Peters, Jr.

2521. Plaintiff, Floyd C. Peters, Sr., is a citizen of the United States and is domiciled in the state of Texas. He is the father of Floyd C. Peters, Jr.

2522. Plaintiff, Disa Peters Clasen, is a citizen of the United States and is domiciled in the state of Texas. She is the sister of Floyd C. Peters, Jr.

2523. Plaintiff, Joy White, is a citizen of the United States and is domiciled in the state of Texas. She is the sister of Floyd C. Peters, Jr.

2524. Plaintiff, Lisa Peters Smethurst, is a citizen of the United States and is domiciled in the state of Texas. She is the sister of Floyd C. Peters, Jr.

2525. As a result of the March 30, 2006 Terrorist Attack, and the injuries suffered by Floyd C. Peters, Jr., Plaintiffs, Christina Peters, Katlin Peters, Floyd A. Peters, A.P., a minor child, Santana M. Peters, G.P., a minor child, Linda Peters, Floyd C. Peters, Sr., Disa Peters Clasen, Joy White, and Lisa Peters Smethurst have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 214. THE MARCH 28, 2006 ATTACK - HABBANIYAH

### A. PLAINTIFFS THE PHILLIP L. BELL FAMILY

2526. Plaintiff Phillip L. Bell is a citizen of the United States and domiciled in the State of Illinois.

2527. On March 28, 2006, Phillip L. Bell, age 29, was serving in the U.S. military in Iraq.

2528. Mr. Bell was on patrol in a convoy with his unit on Alternate Supply Route Michigan in Habbaniyah when his vehicle was struck by an IED.

2529. The weapon used to attack and injure Mr. Bell was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its

agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2530. As a result of the attack, Phillip L. Bell suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), lower back, spine and disc injuries, shrapnel wounds requiring surgery, a torn rotator cuff, Post-Traumatic Stress Disorder ("PTSD"), anxiety and depression.

2531. Phillip L. Bell received extensive medical treatment, including past and ongoing care for these injuries, at his military base hospital, Edward Hines Veterans Medical Center and private hospitals and medical providers.

2532. As a result of the March 28, 2006 Terrorist Attack, and the injuries he suffered, Phillip L. Bell has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2533. Plaintiff Thomas J. Bell is a citizen of the United States and domiciled in the State of Illinois. He is the father of Phillip L. Bell.

2534. Plaintiff Maxine C. Bell is a citizen of the United States and domiciled in the State of Illinois. She is the mother of Phillip L. Bell.

2535. Plaintiff Jeffrey K. Bell is a citizen of the United States and domiciled in the State of Illinois. He is the brother of Phillip L. Bell.

2536. Plaintiff Joseph T. Bell is a citizen of the United States and domiciled in the State of Illinois. He is the brother of Phillip L. Bell.

2537. As a result of the March 28, 2006 Terrorist Attack, and the injuries suffered by Phillip L. Bell, Plaintiffs Thomas J. Bell, Maxine C. Bell, Jeffrey K. Bell and Joseph T. Bell have past and future noneconomic damages, including severe mental anguish, extreme

emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 215. THE MARCH 4, 2006 ATTACK – HAQLANIYA IRAQ, AL ANBAR

### A. PLAINTIFFS THE NICHOLAS HAMILTON KYLE FAMILY

2538. Plaintiff Nicholas Hamilton Kyle is a citizen of the United States and domiciled in the State of California.

2539. On March 4, 2006, Nicholas Hamilton Kyle, age 20, was serving in the U.S. military in Iraq.

2540. Mr. Kyle was traveling in the first vehicle in a convoy near Al Anbar, Haqlaniya, Iraq when his vehicle hit an IED.

2541. The weapon used to attack and injure Mr. Kyle was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2542. The IED caused an intense fireball to engulf the vehicle. As the fire reached ammo and explosives in the vehicle, they began to explode as the occupants escaped the vehicle. As a result of the March 4, 2006 Terrorist Attack, Mr. Kyle suffered burns to his hands and face, scarring, permanent hearing damage, and has been treated for PTSD.

2543. Nicholas Hamilton Kyle received extensive medical treatment at Al Asad Airforce Base.

2544. As a result of the March 4, 2006 Terrorist Attack, and the injuries he suffered, Nicholas Hamilton Kyle has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2545. Plaintiff Michael Raymond Kyle is a citizen of the United States. He is the father of Nicholas Hamilton Kyle.

2546. As a result of the March 4, 2006 Terrorist Attack, and the injuries suffered by Nicholas Hamilton Kyle, Plaintiff Michael Raymond Kyle has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 216. THE MARCH 4, 2006 ATTACK- HAQLANIYA, AL ANBAR PROVINCE

### A. PLAINTIFFS THE GERARDO CONTRERAS FAMILY

2547. Plaintiff Gerardo Contreras is a citizen of the United States and domiciled in the State of California.

2548. On March 4, 2006, Gerardo Contreras, age 21, was serving in the U.S. military in Iraq.

2549. Mr. Contreras was travelling in a seven-ton Armadillo military vehicle which occupied first position in a convoy of four vehicles in Haqlaniua, Iraq, when they triggered a 155 mm round wired to a pressure plate trigger land mine IED, which exploded and destroyed the Armadillo.

2550. The weapon used to attack and injure Mr. Contreras was an Iranian manufactured/supplied IED (land mine with triggering apparatus) provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2551. As a result of the March 4, 2006 Terrorist Attack, Mr. Contreras vehicle was engulfed in a fireball, which caused third degree burns to his face, neck, and throat, as well as a ruptured lung due to smoke and chemical inhalation sustained in the fire. Additionally, Mr.

Contreras was briefly knocked unconscious in the explosion and his ankles and knees were injured as he made his escape from the burning Armadillo.

2552. Gerardo Contreras was medically evacuated to Al Asad, where he was stabilized and flown to Landstuhl, Germany for further treatment. After further stabilization in Germany, Mr. Contreras was flown to Brooks Army Medical Center, where he received more treatment for his injuries and was held in their Burn Unit.

2553. As a result of the March 4, 2006 Terrorist Attack, and the injuries he suffered, Gerardo Contreras has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2554. Plaintiff Socorro Ma Contreras is a legal resident of the United States and domiciled in the state of California. She is the mother of Gerardo Contreras.

2555. Plaintiff Jose Luis Contreras, Sr. is a citizen of the United States and domiciled in the state of California. He is the father of Gerardo Contreras.

2556. Plaintiff Elizabeth Contreras is a citizen of the United States and domiciled in the state of California. She is the sister of Gerardo Contreras.

2557. Plaintiff Nelly Viveros is a citizen of the United States and domiciled in the state of California. She is the sister of Gerardo Contreras.

2558. Plaintiff Jose Luis Contreras, Jr. is a citizen of the United States and domiciled in the state of California. He is the brother of Gerardo Contreras.

2559. As a result of the March 4, 2006, Terrorist Attack, and the injuries suffered by Gerardo Contreras, Plaintiff's Socorro Ma Contreras, Jose Luis Contreras, Sr., Elizabeth Contreras, Nelly Viveros, and Jose Luis Contreras, Jr., have past and future noneconomic

damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 217. THE MARCH 4, 2006 ATTACK – AL KHAFFEJIYAH

#### A. PLAINTIFF MATTHEW HAVILAND

2560. Plaintiff Matthew Haviland is a citizen of the United States and domiciled in the State of California.

2561. On March 4, 2006, Matthew Haviland, age 20, was serving in the U.S. military in Iraq.

2562. Mr. Haviland was the vehicle commander of a seven-ton truck travelling in or near Al Khaffejiyah, Iraq when it encountered a pressure plate IED consisting of artillery shells wired to an acetylene tank and detonated an IED. At the time of the attack, Mr. Haviland was positioned in the turret of the vehicle.

2563. The weapon used to attack and injure Mr. Haviland was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2564. As a result of the attack, Matthew Haviland suffered multiple injuries including shrapnel being lodged in his armpit, permanent back and spinal cord injury, TBI, severe concussion with loss of consciousness, and PTSD.

2565. Matthew Haviland received extensive medical treatment for his injuries, including multiple visits to hospitals and physicians' offices at various medical facilities and physicians' offices.

2566. As a result of the March 4, 2006 Terrorist Attack, and the injuries he suffered, Matthew Haviland has past and future noneconomic damages, including severe physical and

mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 218. THE FEBRUARY 28, 2006 ATTACK - BAGHDAD

### A. PLAINTIFF JEREMY MICHAEL GIRDLER

2567. Plaintiff Jeremy Michael Girdler is a citizen of the United States and domiciled in the State of Louisiana.

2568. On February 28, 2006, Jeremy Michael Girdler, age 21, was serving in the U.S. military in Iraq.

2569. Mr. Girdler was on convoy with his unit in Baghdad when his vehicle was hit with an EFP.

2570. The weapon used to attack and injure Mr. Girdler was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2571. As a result of the attack, Jeremy Michael Girdler suffered a TBI, nearly severed left arm, split his nose in half, neck and back injuries, PTSD and anxiety.

2572. Jeremy Michael Girdler received extensive medical treatment immediately following the attack, before he was flown to Balad where his arm was stabilized then transferred to Germany for surgeries to his arm, face and nose. He was then transferred to Walter Reed to continued care before returning to Fort Polk for physical therapy. He received ongoing treatment through the VA.

2573. As a result of the February 28, 2006 Terrorist Attack, and the injuries he suffered, Jeremy Michael Girdler has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 219. THE FEBRUARY 25, 2006 ATTACK – CITY OF RAMADI

### A. PLAINTIFF DANIEL MICHAEL JACOBS

2574. Plaintiff Daniel Michael Jacobs is a citizen of the United States and is domiciled in the State of California.

2575. On the afternoon of February 25, 2006, Daniel Michael Jacobs, age 20, was serving in the U.S. Military in Iraq

2576. Mr. Jacobs was in his Humvee with his unit headed back to base at Camp Ramadi. Mr. Jacobs' vehicle was directly hit by a remotely-detonated IED, then came under sniper fire by insurgents.

2577. The weapon used to attack and injure Daniel Michael Jacobs was an IED, and sniper rifle provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2578. As a result of the February 25, 2006 Terrorist Attack, Daniel Michael Jacobs sustained significant injuries. Mr. Jacobs has endured a below the knee amputation of his left leg, arthritis in his left knee, his left index, middle and ring fingers were partially amputated. His spine was fractured at the L-3, and he has arthritis from L-4 through S-1. He had neck ligament evulsion, head and face TMJ and shrapnel removed from his nose and sinus cavity. On his right side, Mr. Jacobs is missing toes four and five, and recently endured the amputation of toe three. He had a fracture of his right ankle, torn meniscus, and the ulna in his right arm was shattered. He had shrapnel removed from his right hand, and a rupture of his left eardrum. He has had two major jaw reconstruction surgeries. He has been diagnosed with a traumatic brain injury, as well as tinnitus, migraines, PTSD and anxiety.

2579. Mr. Jacobs received medical care at the scene of the attack. Once stabilized, he was transported by medevac to the Balad Surgical Unit where he received immediate surgery.

Mr. Jacobs was transported to Landstuhl Regional Medical Center in Germany for additional medical care. Once stable, Mr. Jacobs was returned to the United States where his treatment continued at the Walter Reed National Military Medical Center in Bethesda, Maryland. Around March of 2006, he received a surgery called a fasciotomy in an attempt to save his leg. He also began to receive mental health treatment at this time. In May of 2006, Mr. Jacobs transferred his care to the Naval Medical Center in San Diego, California where despite efforts, his left leg was amputated. He had several additional surgeries, including a mid-foot fusion, a calcaneal osteotomy, and a "slab" removed from his right thigh in an effort to rebuild his right foot. He then endured many months of physical and pain therapy. Mr. Jacobs continues to receive medical treatment for his injuries from this facility, and in September 2017, had surgery to amputate the third toe on his right foot.

2580. As a result of the February 25, 2006 Terrorist Attack, and the injuries he suffered, Daniel Michael Jacobs has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 220. THE FEBRUARY 23, 2006 ATTACK – BAGHDAD

### A. PLAINTIFF RONALD SAMS, SR.

2581. Plaintiff Ronald Sams, Sr. is a citizen of the United States and domiciled in the State of Texas.

2582. On February 23, 2006, Ronald Sams, Sr., age 34, was serving in the U.S. military in Iraq.

2583. Ronald Sams, Sr. was standing in his quarters at FOB Rustamiyah when three 107MM Rockets struck the base. One rocket struck the building containing his quarters. The resulting blast sent shrapnel through his room striking him in the back of the neck, cheek, and

bicep.

2584. The weapon used to attack and injure Ronald Sams, Sr. was an Iranian-supplied 107MM Rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2585. As a result of the attack, Ronald Sams, Sr., sustained significant injuries including lacerations to his neck, cheek and bicep, PTSD, TBI, anxiety, and depression. He continues to receive ongoing medical care and treatment.

2586. Mr. Sams was treated for his wounds at the battalion aid station and received follow-up medical and psychological treatment at Central Texas Veterans Healthcare Systems, Temple, TX. Since the attack, he has continued to receive mental health treatment for PTSD, TBI, chronic headaches, anxiety, depression, and other symptoms related to PTSD.

2587. As a result of the February 23, 2006 Terrorist Attack, and the injuries he suffered, Ronald Sams, Sr. has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 221. THE FEBRUARY 18, 2006 ATTACK – FORWARD OPERATING BASE WARRIOR, KIRKUK

### A. PLAINTIFF CHRISTOPHER DAVID CONDREY[116]

2588. Plaintiff Christopher David Condrey is a citizen of the United States and domiciled in the State of Texas.

2589. On February 18, 2006, Christopher David Condrey, age 32, was serving in the U.S. military in Iraq.

2590. Mr. Condrey was with his unit heading back to FOB Warrior in Kirkuk when

[116] Christopher David Condrey was also injured in the October 31, 2007 attack in Fallujah.

his vehicle was hit by an IED.

2591. The weapon used to attack and injure Mr. Condrey was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2592. As a result of the attack, Christopher David Condrey suffered a traumatic brain injury. He has also been diagnosed with PTSD, anxiety and depression.

2593. Christopher David Condrey received extensive medical treatment. He was seen at the base for his injuries. Mr. Condrey has been seen by the following medical providers: William Beaumont Army Medical Center and the El Paso VA Healthcare System, both in El Paso, Texas; VA Outpatient Clinic in San Antonio, Texas and the VA North Texas Health Care System in Dallas, Texas.

2594. As a result of the February 18, 2006 Terrorist Attack, and the injuries he suffered, Christopher David Condrey has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 222. THE FEBRUARY 10, 2006 ATTACK – AD-DAWR

### A. PLAINTIFFS THE RICKY A. BAXTER FAMILY

2595. Plaintiff Ricky A. Baxter is a citizen of the United States and domiciled in the State of Florida.

2596. On February 10, 2006, Ricky A. Baxter, age 31, was serving in the U.S. military in Iraq.

2597. Mr. Baxter was traveling south on Route Dover in Ad-Dawr when his vehicle hit an IED.

2598. The weapon used to attack and injure Mr. Baxter was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2599. As a result of the attack, Ricky A. Baxter suffered TBI and PTSD.

2600. Ricky A. Baxter received extensive medical treatment at: VA Eastern Colorado Health System, Colorado Springs, CO; Cedar Springs Hospital, Colorado Springs, CO; Guidance Center Clinic, Flagstaff, AZ; Phoenix VA Health Care System, Phoenix, AZ; North Arizona VA Health System, Prescott, AZ; VA Southern Nevada Healthcare System, North Las Vegas, NV; VA Eastern Colorado Health System, Denver, CO; Southern Arizona VA Health System, Tucson, AZ; and Pensacola Vet Center, Pensacola, FL.

2601. As a result of the February 10, 2006 Terrorist Attack, and the injuries he suffered, Ricky A. Baxter has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2602. Plaintiff Elba Baxter is a citizen of the United States and domiciled in the State of Florida. She is the wife of Ricky A. Baxter.

2603. As a result of the February 10, 2006 Terrorist Attack, and the injuries suffered by Ricky A. Baxter, Plaintiff Elba Baxter has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 223. THE FEBRUARY 6, 2006 ATTACK – TRAFFIC CIRCLE IN DOWNTOWN RAMADI[117]

### A. PLAINTIFF NATHAN RAINES

2604. Plaintiff Nathan Raines is a citizen of the United States and domiciled in the State of Minnesota.

2605. On the afternoon of February 6, 2006, age 22, was in the U.S. Military in Iraq.

2606. Nathan Raines was in the third Humvee in a four-vehicle convoy on a traffic circle in Downtown Ramadi. As Mr. Raines vehicle approached the checkpoint, an IED detonated beneath him, flipping the Humvee and causing immediate damage to the vehicle and its occupants.

2607. The weapon used to attack and injure Nathan Raines on February 6, 2006 was an IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2608. As a result of the February 6, 2006 Terrorist Attack, Nathan Raines sustained significant injuries. Mr. Raines had two days prior sustained a Class 3 Concussion, Traumatic Brain Injury (TBI), a perforated ear drum and superficial shrapnel wounds. From this attack, Mr. Raines received catastrophic damage to his jaw, and he lost five teeth. In addition, he had shrapnel wounds to his neck and throat. Mr. Raines has been diagnosed with PTSD due to the traumatic nature of the events he lived.

2609. Nathan Raines was treated at the scene due to the severity of his injuries. He was evacuated to Camp Ramadi where shrapnel was removed from his jaw. Due to additional injuries suffered in a subsequent attack two days later, Mr. Raines required a personal escort

[117] Nathan Raines was also injured two days earlier in the February 4, 2006 IED Attack in Ramadi.

to Landstuhl Medical Center in Germany for his brain injury. He remained there until March 2006 when he was transferred to the Busch Naval Hospital in Twenty-Nine Palms, California. Mr. Raines was quickly moved to the San Diego Naval Hospital where he had surgery to remove shrapnel and began receiving treatment for his brain injury. Beginning in April 2006, Mr. Raines moved his medical care to the Veterans Administration Healthcare System in Minneapolis, Minnesota where he was diagnosed with his TBI, post-concussive disorder, and PTSD. Mr. Raines still receives treatment from the VA Health System in Minneapolis or St. Cloud, Minnesota.

2610. As a result of the February 6, 2006 Terrorist Attack, and the injuries he suffered, Nathan Raines has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 224. THE FEBRUARY 6, 2006 ATTACK – HIT

### A. PLAINTIFF JIMMY OWEKA OCHAN

2611. Plaintiff Jimmy Oweka Ochan is a citizen of the United States and is domiciled in the State of Virginia.

2612. On February 6, 2006, Jimmy Oweka Ochan, age 31, was serving in the United States Armed Forces.

2613. On the afternoon of February 6, 2006, Jimmy Oweka Ochan was with his unit driving through Hit, Iraq on Vehicle Convoy Patrol. The Humvee in which he was riding hit an IED.

2614. The weapon used to attack and injure Jimmy Oweka Ochan was an IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2615. As a result of the February 6, 2006 Terrorist Attack, Jimmy Oweka Ochan sustained significant injuries. Mr. Ochan suffered a traumatic brain injury, and injuries to his back and both knees. Mr. Ochan, he has been diagnosed with post-traumatic stress disorder (PTSD) and depression.

2616. Jimmy Oweka Ochan was treated at the scene and medevac'd back to the base where he remained for the next three months. He began seeking treatment for the TBI, chronic back pain, knee injuries and mental injuries from the Veterans Administration Hospital in Washington, DC. He continues to receive treatment at this facility as well as the Fort Belvoir Community Hospital in Fort Belvoir, Virginia.

2617. As a result of the February 6, 2006 Terrorist Attack, and the injuries he suffered, Jimmy Oweka Ochan has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 225. THE FEBRUARY 6, 2006 ATTACK – AL ASAD

### A. PLAINTIFF NICHOLAS MICHAEL LATONA

2618. Plaintiff Nicholas Michael Latona is a citizen of the United States and domiciled in the State of California.

2619. On February 6, 2006, Nicholas Michael Latona, age 21, was serving in the U.S. military in Iraq.

2620. Mr. Latona was traveling in a convoy in Al Asad when his convoy hit an IED killing a marine in the vehicle behind him.

2621. The weapon used to attack and injure Mr. Latona was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2622. As a result of the February 6, 2006 Terrorist Attack, Nicholas Michael Latona suffered PTSD.

2623. Nicholas Michael Latona received extensive medical treatment at; Edward Hines, Jr. VA Hospital, Hines, IL; Jesse Brown VA Medical Center, Chicago, IL: and VA Greater Los Angeles Healthcare System, Los Angeles, CA.

2624. As a result of the February 6, 2006 Terrorist Attack, and the injuries he suffered, Nicholas Michael Latona has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 226. THE FEBRUARY 4, 2006 ATTACK – ROUTE MICHIGAN & CINEMA, RAMADI[118]

### A. PLAINTIFF NATHAN RAINES

2625. Plaintiff Nathan Raines is a citizen of the United States and domiciled in the State of Minnesota.

2626. On the afternoon of February 4, 2006, age 22, was serving in the United States Military in Iraq.

2627. Nathan Raines was on patrol with his unit in a small alleyway off the intersection of Route Michigan and Cinema in Ramadi, Iraq, when an IED was remotely detonated, knocking Mr. Raines unconscious for around 45 minutes.

2628. The weapon used to attack and injure Nathan Raines on February 4, 2006 was an IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

[118] Nathan Raines was also injured in the February 6, 2006 Terrorist Attack on a Traffic Circle in downtown Ramadi.

2629. As a result of the February 4, 2006 Terrorist Attack, Nathan Raines sustained significant injuries. Mr. Raines was knocked unconscious for around 45 minutes, ultimately sustaining a Class 3 Concussion, Traumatic Brain Injury (TBI), a perforated ear drum and superficial shrapnel wounds. Additionally, Mr. Raines has been diagnosed with PTSD and a post-concussive disorder.

2630. Nathan Raines was treated at the scene due to the severity of his injuries. He was evacuated to Camp Ramadi where shrapnel was removed from his jaw. Due to additional injuries suffered in a subsequent attack two days later, Mr. Raines required a personal escort to Landstuhl Medical Center in Germany for his brain injury. He remained there until March 2006 when he was transferred to the Busch Naval Hospital in Twenty-Nine Palms, California. Mr. Raines was quickly moved to the San Diego Naval Hospital where he had surgery to remove shrapnel and began receiving treatment for his brain injury. Beginning in April 2006, Mr. Raines moved his medical care to the Veterans Administration Healthcare System in Minneapolis, Minnesota where he was diagnosed with his TBI, post-concussive disorder, and PTSD. Mr. Raines still receives treatment from the VA Health System in Minneapolis or St. Cloud, Minnesota.

2631. As a result of the February 4, 2006 Terrorist Attack, and the injuries he suffered, Nathan Raines has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 227. THE JANUARY 23, 2006 ATTACK – ROUTE TEMPLE, SOUTHWEST OF BAGHDAD, BABIL PROVINCE

### A. PLAINTIFFS THE MATTHEW DAVID HUNTER FAMILY

2632. Plaintiff Matthew David Hunter was a citizen of the United States and

domiciled in the State of Florida at the time of his death.

2633. On January 23, 2006, Matthew David Hunter, age 31, was serving in the U.S. military in Iraq.

2634. Mr. Hunter was killed when he was on foot patrol on Route Temple, Southwest of Baghdad, when an IED detonated beneath him.

2635. The weapon used to attack and kill Mr. Hunter was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2636. As a result of the attack, Matthew David Hunter died shortly after the attack.

2637. As a result of the January 23, 2006 Terrorist Attack, and the injuries he suffered, Matthew David Hunter has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including lost income, and loss of earning capacity.

2638. Plaintiff Wendy Kay Hunter is a citizen of the United States and domiciled in the State of Florida. She is the wife of Matthew David Hunter.

2639. Plaintiff Meredith Hunter-Stubbs is a citizen of the United States and domiciled in the State of Florida. She is the daughter of Matthew David Hunter.

2640. Plaintiff Wendy Kay Hunter brings an action individually, and on behalf of the Estate of Matthew David Hunter, and all heirs thereof, as its legal representative.

2641. As a result of the January 23, 2006 Terrorist Attack, and the injuries and death suffered by Matthew David Hunter, Plaintiffs Wendy Kay Hunter, Individually and as Representative of the Estate of Matthew David Hunter, and Meredith Hunter-Stubbs have past and future noneconomic damages, including severe mental anguish, extreme emotional pain

and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 228. THE JANUARY 17, 2006 ATTACK – RAMADI

#### A. PLAINTIFFS THE JAMES NELSON SPARKS III FAMILY

2642. Plaintiff James Nelson Sparks III is a citizen of the United States and domiciled in the State of North Carolina.

2643. On January 17, 2006, James Nelson Sparks III, age 42, was serving in the U.S. military in Iraq.

2644. Mr. Sparks was serving as Truck Commander in a six-vehicle convoy near Ramadi when the convoy was hit by a daisy chain of 3-4 IEDs. The shrapnel and blast from the explosions caused injury to Mr. Sparks and damage to the armored vehicle.

2645. The weapon used to attack and injure Mr. Sparks was multiple Iranian manufactured/supplied IEDs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2646. As a result of the attack, James Nelson Sparks III suffered bilateral hearing loss, traumatic brain injury, tremor in his right arm, PTSD, memory loss, hallucinations, sleep impairment, mood swings, impaired impulse control, anxiety, and impaired abstract thinking.

2647. James Nelson Sparks III received extensive medical treatment, including medications and therapy for his injuries at the VA in North Carolina, and requires the use of a hearing aid.

2648. As a result of the January 17, 2006 Terrorist Attack, and the injuries he suffered, James Nelson Sparks III has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2649. Plaintiff Carla Sparks is a citizen of the United States and domiciled in the State of North Carolina. She is the wife of James Nelson Sparks III.

2650. Plaintiff Eve Marie Sparks is a citizen of the United States and domiciled in the State of North Carolina. She is the daughter of James Nelson Sparks III.

2651. Plaintiff James Nelson Sparks IV is a citizen of the United States and domiciled in the State of North Carolina. He is the son of James Nelson Sparks III.

2652. Plaintiff Valerie Caroline Earman is a citizen of the United States and domiciled in the State of North Carolina. She is the daughter of James Nelson Sparks III.

2653. As a result of the January 17, 2006 Terrorist Attack, and the injuries suffered by and the death of James Nelson Sparks III, Plaintiffs Carla Sparks, Eve Marie Sparks, James Nelson Sparks, IV, and Valerie Caroline Earman have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of James Sparks III society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of James Nelson Sparks III.

## 229. THE DECEMBER 22, 2005 ATTACK – BUBLE-SHAM

### A. PLAINTIFF DANIEL JOHANNES BRINK

2654. Plaintiff Daniel Johannes Brink is a citizen of South Africa and resident of the United States, domiciled in the State of Arkansas.

2655. On the morning of December 22, 2005, Daniel Johannes Brink, age 36, was serving as a private contractor for DynCorp performing a contract awarded by the United States Government, acting within the scope of the employee's employment. At the time, Mr. Brink held the title of Personal Security Detail.

2656. Mr. Brink was performing his duties as the security detail in the gun truck, which was the last vehicle in a four-vehicle convoy. As the convoy passed a police station in

Buble-Sham, Iraq, they were attacked by between seven to nine Daisy-Chained EFPs which exploded a mere eight feet from his vehicle.

2657. The weapon used to attack and injure Mr. Brink on December 22, 2005, were EFPs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2658. As a result of the December 22, 2005 Terrorist Attack, Mr. Brink sustained significant injuries. Mr. Brink lost four fingers on his left hand and only partial fingers remain on his right hand. A fragment of the EFP penetrated his body armor which cut open his torso, leaving him eviscerated and his small intestines protruding from his body. Shrapnel imbedded in the back of his head, in his jaw and damaged his sciatic nerve. Both of his arms were broken in multiple places. He lost his right leg above the knee, and both testicles, and suffered extreme shrapnel injuries to his left leg. Fortunately for Mr. Brink, he survived these catastrophic injuries. Unfortunately for Mr. Brink, he was awake for most of the injuries.

2659. Mr. Brink was treated at the scene of the attack. He was then medevac'd to a field hospital in the green zone and once stable, was transported to Landstuhl, Germany. Mr. Brink awoke at St. George's Hospital in London, England. In January of 2006, Mr. Brink was returned South Africa's Netcare Unitas Hospital in Centurion. In February of 2006, he began rehabilitative treatment at the Riverfield Lodge in Randburg, South Africa. Mr. Brink has endured over 100 surgeries for his extensive injuries and remains in a wheelchair.

2660. As a result of the December 22, 2005 Terrorist Attack, and the injuries he suffered, Daniel Johannes Brink has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 230. THE DECEMBER 21, 2005 ATTACK - BAGHDAD

### A. PLAINTIFF JEREMY MICHAEL GIRDLER

2661. Plaintiff Jeremy Michael Girdler is a citizen of the United States and domiciled in the State of Louisiana.

2662. On December 21, 2005, Jeremy Michael Girdler, age 21, was serving in the U.S. military in Iraq.

2663. Mr. Girdler was on a mission with his unit in Baghdad when nearby a VBIED was detonated in the marketplace. Jeremy and his team found the insurgents responsible and they opened fire killing seven insurgents.

2664. The weapon used to attack and injure Mr. Girdler was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2665. As a result of the attack, Jeremy Michael Girdler suffered PTSD and depression.

2666. Jeremy Michael Girdler received extensive medical treatment for his PTSD through the military and continues care with the VA.

2667. As a result of the December 21, 2005 Terrorist Attack, and the injuries he suffered, Jeremy Michael Girdler has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 231. THE DECEMBER 16, 2005 ATTACK – ROUTE AMY, BALAD

### A. PLAINTIFF JAMIE LEE WHITAKER

2668. Plaintiff Jamie Lee Whitaker is a citizen of the United States and domiciled in the State of Florida.

2669. On the evening of December 16, 2005, Jamie Lee Whitaker, age 33, was serving in the U. S. Military in Iraq.

2670. Jamie Lee Whitaker was commanding his Humvee while in route to Zulu 1-0 on Route Amy near Balad, Iraq. Mr. Whitaker saw the IED in the center of the road but the Humvee was unable to miss the detonation.

2671. The weapon used to attack and injure Jamie Lee Whitaker on December 16, 2005 was an IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2672. As a result of the December 16, 2005 Terrorist Attack, Jamie Lee Whitaker sustained significant injuries. Mr. Whitaker suffered shrapnel wounds to his left hand and arm, nerve damage in his left hand and arm, compressed disks in his back, damage to his knees, and a foreign piece of bone removed from his jaw that was a piece of the driver's bone from the IED explosion. He has been diagnosed with a TBI and PTSD.

2673. Mr. Whitaker was medevac'd from the scene of the attack to a combat support hospital in Balad, Iraq. He was transferred almost immediately to Landstuhl, Germany where he recovered for a week before being moved to Fort Belvoir, Virginia in late December 2005. He was moved to Dwight D. Eisenhower Army Medical Center in Augusta, Georgia at the end of December 2005. He began receiving occupational therapy at Winn Army Community Hospital in Fort Stewart, Georgia for most of 2006. From 2011 – 2013, Mr. Whitaker received care for his injuries at the Fort Benning Veterans Administration Hospital in Fort Benning, Georgia. Beginning in June 2013, through November, Mr. Whitaker was treated at the Veterans Administration Center in Tuskegee, Alabama. From November 2013 through the present, Mr. Whitaker receives treatment at the Malcolm Randall Veterans Administration

Medical Center in Gainesville, Florida, and at the Veterans Administration Center in Ocala, Florida.

2674. As a result of the December 16, 2005 Terrorist Attack, and the injuries he suffered, Jamie Lee Whitaker has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 232. THE DECEMBER 5, 2005 ATTACK – ISKANDARIYA

### A. PLAINTIFF CHRISTOPHER HASS

2675. Plaintiff Christopher Hass is a citizen of the United States and domiciled in the State of Mississippi.

2676. On December 5, 2005, Christopher Hass, age 37, was serving in the U.S. military in Iraq.

2677. Mr. Hass was a passenger in a HMMWV in a three vehicle convoy traveling in Iskandariya, Iraq when it was struck by an IED.

2678. The weapon used to attack and injure Mr. Hass was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2679. As a result of the attack, Christopher Hass suffered concussive blast injuries, TBI, lacerations, fractured vertebrae, and a dislocated shoulder

2680. Christopher Hass received extensive medical and psychological treatment at Landstuhl Regional Medical Center, Dwight D. Eisenhower Army Medical Center, St. Dominic's Hospital, Montgomery VA Medical Center, Southern Bone and Joins Specialists, and Gulf Coast Veterans Healthcare System.

2681. As a result of the December 5, 2005 Terrorist Attack, and the injuries he

suffered, Christopher Hass has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 233. THE NOVEMBER 9, 2005 ATTACK – FALLUJAH

#### A. PLAINTIFF MARIO A. MENA

2682. Plaintiff Mario A. Mena is a citizen of the United States and domiciled in the State of Illinois.

2683. On November 9, 2005, Mario A. Mena, age 20, was serving in the U.S. military in Iraq.

2684. Mr. Mena was on watch at his Operation Post in Fallujah on MSR Fran, when they were ambushed with RPG's, rockets and machine gun fire.

2685. The weapon used to attack and injure Mr. Mena was an Iranian manufactured/supplied rocket-propelled grenade, rockets and machine gun weapon provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2686. As a result of the attack, Mario A. Mena suffered injuries that include, but are not limited to, abrasions, headaches, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

2687. Mario A. Mena received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

2688. As a result of the November 9, 2005, Terrorist Attack, and the injuries he suffered, Mario A. Mena has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 234. THE NOVEMBER 5, 2005 ATTACK – BAGHDAD

### A. PLAINTIFF LEO PATRICK MCKEON

2689. Plaintiff Leo Patrick McKeon is a citizen of the United States and domiciled in the State of North Carolina.

2690. On November 5, 2005, Leo Patrick McKeon, age 54, was serving in the U.S. military in Iraq.

2691. Mr. McKeon was driving a HMMVW in a four-vehicle convoy leaving Camp Victory and travelling along Route Cardinals when it was struck by an IED.

2692. The weapon used to attack and injure Mr. McKeon was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2693. As a result of the attack, Mr. McKeon suffered concussive blast injuries, injuries to his back and shoulder, TBI and PTSD.

2694. Leo Patrick McKeon received extensive medical and psychological treatment at William Beaumont Army Medical Center, Bay Pines VA Healthcare, Spark M. Matsunaga VA Medical Center, Albany Stratton VA Medical Center, and Fayetteville VA Medical Center.

2695. As a result of the November 5, 2005 Terrorist Attack, and the injuries he suffered, Leo Patrick McKeon has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 235. THE OCTOBER 29, 2005 ATTACK – TAL AFAR

### A. PLAINTIFFS THE BRANDON LAMAR DALE FAMILY

2696. Plaintiff Brandon Lamar Dale is a citizen of the United States and domiciled in

the State of Texas.

2697. On the evening of October 29, 2005, Brandon Lamar Dale, age 21, was serving in the U.S. Military in Iraq.

2698. Brandon Lamar Dale was driving the lead vehicle in a six-vehicle convoy outside of base Tal Afar when he hit a trip line across the road that ignited an IED under the tire of the driver's side of his Humvee.

2699. The weapon used to attack and injure Brandon Lamar Dale on October 30, 2005 was an IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2700. As a result of the October 29, 2005 Terrorist Attack, Brandon Lamar Dale sustained significant injuries Mr. Dale lost his left leg above the knee. He received a broken tibia and fibia in his right leg, a fused big toe on his right foot, and nerve damage to the remaining tissue in his right foot and leg. He has been diagnosed with tinnitus, insomnia and migraine headaches. In addition to the catastrophic physical injuries to Mr. Dale, due to the traumatic nature of the events experienced and witnessed, Mr. Dale has been diagnosed with PTSD, anxiety and depression.

2701. Mr. Dale was knocked unconscious in the attack. He was given life-saving treatment at the scene, and was evacuated to a base hospital in Mosul where he remained unconscious for five days. He was then flown to Landstuhl Air Force Base in Germany where his stabilizing treatment continued for an additional two weeks. Mr. Dale was then transported to Brook Army Medical Center in San Antonio, Texas, where he continues to receive medical treatment currently, including any assistance with prosthetic devices. Mr. Dale's mental health is being treated at the Audie Murphy Veterans Administration Center in

San Antonio. In addition, any minor health complaints are treated at the Audie Murphy VA Center.

2702. As a result of the October 29, 2005 Terrorist Attack, and the injuries he suffered, Brandon Lamar Dale has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2703. Plaintiff Debbie Simmons is a citizen of the United States and is domiciled in the state of Louisiana. She is the mother of Brandon Lamar Dale.

2704. As a result of the October 29, 2005 Terrorist Attack, and the injuries suffered by Brandon Lamar Dale, Plaintiff Debbie Simmons has past and future noneconomic damages, including severe physical and mental pain and suffering, loss of consortium, and past and future economic damages, including loss of services.

## 236. THE OCTOBER 26, 2005 ATTACK – AL ANBAR

### A. PLAINTIFFS THE MARTIN SICAIROS FAMILY

2705. Plaintiff Martin Sicairos is a citizen of the United States and domiciled in the State of California.

2706. On October 26, 2005, Martin Sicairos, age 26, was serving in the U.S. military in Iraq.

2707. Mr. Sicairos was on convoy in Al Anbar by the Al Shraf Air Base with his unit when his vehicle was struck by an IED and then ambushed by rockets, small arms fire and grenades.

2708. The weapon used to attack and injure Mr. Sicairos was an Iranian manufactured/supplied IED, rockets, small arms and grenades provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2709. As a result of the attack, Martin Sicairos suffered a TBI, hearing and sight loss, PTSD and anxiety.

2710. Martin Sicairos received extensive medical treatment immediately following the attack at a local base. He continues his treatment with the VA and outside providers.

2711. As a result of the October 26, 2005 Terrorist Attack, and the injuries he suffered, Martin Sicairos has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2712. Plaintiff JoAnna Sicairos is a citizen of the United States and domiciled in the State of Texas. She is the ex-wife of Martin Sicairos.

2713. Plaintiff Estrella Sicairos is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Martin Sicairos.

2714. Plaintiff Martin Sicairos Jr. is a citizen of the United States and domiciled in the State of Texas. He is the son of Martin Sicairos.

2715. As a result of the October 26, 2005 Terrorist Attack, and the injuries suffered by Martin Sicairos, Plaintiffs JoAnna Sicairos, Estrella Sicairos and Martin Sicairos Jr. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 237. THE OCTOBER 18, 2005 ATTACK – AR RUTBAH

#### A. PLAINTIFF BRIAN PATRICK JOYCE, JR.

2716. Plaintiff Brian Patrick Joyce, Jr. is a citizen of the United States and domiciled in the State of Ohio.

2717. On October 18, 2005, Brian Patrick Joyce, Jr. age 24, was serving in the U.S.

military in Iraq.

2718. Mr. Joyce was on patrol with his unit outside of Ar Rutbah when his vehicle was struck by an IED.

2719. The weapon used to attack and injure Mr. Joyce was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2720. As a result of the attack, Brian Patrick Joyce, Jr. suffered severe lacerations and shrapnel intrusion into his left arm and hip.

2721. Brian Patrick Joyce, Jr. received extensive medical treatment for his injuries, including surgery to remove shrapnel from his body with the operation being expanded to exploratory surgery to ensure all of the shrapnel had indeed been removed from his body.

2722. As a result of the October 18, 2005 Terrorist Attack, and the injuries he suffered, Brian Patrick Joyce, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 238. THE OCTOBER 17, 2005 ATTACK – SAMARRA

### A. PLAINTIFFS THE DARREN DEAN HOWE FAMILY

2723. Plaintiff Darren Dean Howe was a citizen of the United States and domiciled in the State of Nebraska at the time of his death.

2724. On October 17, 2005, Darren Dean Howe, age 22, was serving in the U.S. military in Iraq.

2725. Mr. Howe was in a convoy in Samarra, Iraq when his Bradley vehicle was hit with an IED.

2726. The weapon used to attack and injure Mr. Howe was an Iranian

manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2727. As a result of the attack, Darren Dean Howe was killed.

2728. As a result of the October 17, 2005 Terrorist Attack, and the injuries he suffered, Darren Dean Howe has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2729. Plaintiff Nakia LaRee Howe is a citizen of the United States and domiciled in the State of Nebraska. She is the wife of Darren Dean Howe.

2730. Plaintiff Nakia LaRee Howe brings an action individually, and on behalf of the Estate of Darren Dean Howe, and all heirs thereof, as its legal representative.

2731. Plaintiff Brandon A. Howe is a citizen of the United States and domiciled in the State of Nebraska. He is the brother of Darren Dean Howe.

2732. Plaintiff Alexander G. Klaus is a citizen of the United States and domiciled in the State of Nebraska. He is the brother of Darren Dean Howe.

2733. Plaintiff G.H., a minor, represented by his legal guardian Nakia LaRee Howe, is a citizen of the United States and domiciled in the State of Nebraska. He is the son of Darren Dean Howe and Nakia LaRee Howe.

2734. Plaintiff S.H., a minor, represented by her legal guardian Nakia LaRee Howe, is a citizen of the United States and domiciled in the State of Nebraska. She is the daughter of Darren Dean Howe and Nakia LaRee Howe.

2735. As a result of the October 17, 2005 Terrorist Attack, and the injuries suffered by and the death of Darren Dean Howe, Plaintiffs Nakia LaRee Howe, Brandon A. Howe,

Alexander G. Klaus, G.H., a minor, and S.H., a minor, have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Darren Dean Howe's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Darren Dean Howe.

**239. THE OCTOBER 15, 2005 ATTACK – AR RAMADI**

**A. PLAINTIFFS THE RICHARD A. HARDY FAMILY**

2736. Plaintiff Richard A. Hardy was a citizen of the United States and domiciled in the State of Ohio at the time of his death.

2737. On October 15, 2005, Richard A. Hardy, age 24, was serving in the U.S. military in Iraq.

2738. Mr. Hardy was in a convoy in Ar Ramadi, Iraq when his Bradley vehicle was hit with an IED.

2739. The weapon used to attack and injure Mr. Hardy was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2740. As a result of the attack, Richard A. Hardy was killed.

2741. As a result of the October 15, 2005 Terrorist Attack, and the injuries he suffered, Richard A. Hardy has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2742. Plaintiff Doris Hardy is a citizen of the United States and domiciled in the State of Ohio. She is the mother of Richard A. Hardy.

2743. Plaintiff Doris Hardy brings an action individually, and on behalf of the Estate of Richard A. Hardy, and all heirs thereof, as its legal representative.

2744. Plaintiff Richard Dean Hardy is a citizen of the United States and domiciled in the State of Ohio. He is the father of Richard A. Hardy.

2745. Plaintiff Jessica Tackett is a citizen of the United States and domiciled in the State of Ohio. She is the sister of Richard A. Hardy.

2746. As a result of the October 15, 2005 Terrorist Attack, and the injuries suffered by and the death of Richard A. Hardy, Plaintiffs Dorris Hardy, Individually and as Personal Representative of the Estate of Richard A. Hardy, Richard Dean Hardy and Jessica Tackett have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Richard A. Hardy's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Richard A. Hardy.

## 240. THE OCTOBER 15, 2005 ATTACK - AR RAMADI

### A. PLAINTIFF NESSIM EDWARD FOURNIER[2]

2747. Plaintiff Nessim Edward Fournier is a citizen of the United States and is domiciled in the State of California.

2748. Around 4:00 p.m. on October 15, 2005, Nessim Edward Fournier, age 24, was serving as a peacekeeping serviceman and 11Bravo in the 3rd Infantry Division, 3rd Brigade Task Force, 269 A Company. At the time, Nessim Edward Fournier held the rank of Specialist, E-4.

2749. On October 15, 2005, Nessim Edward Fournier was assigned as security detail for the Iraqi elections on the rooftop of a house in Ramadi when several United States soldiers in a Bradley Assault Vehicle ran over a hand-detonated IED which exploded, killing all five soldiers in the vehicle. Mr. Fournier then came under small arms fire from an adjacent rooftop.

2750. The weapon used to attack and injure Nessim Edward Fournier was an Iranian-manufactured IED and small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2751. As a result of the October 15, 2005 Terrorist Attack, Nessim Edward Fournier sustained significant injuries. Due to the traumatic nature of the events experienced and witnessed by Mr. Fournier, he has been diagnosed with PTSD, depression and anxiety.

2752. Nessim Edward Fournier did not begin seeking treatment for his injuries until he returned to the United States in March 2006 when he received care at The Bradley Center in Columbus, Georgia. From April 2006 through January 2007, Mr. Fournier transferred his care to another Bradley facility in Fort Benning, Georgia. In January 2008 through July 2009, Mr. Fournier received treatment from the Tuskegee Veterans Hospital in Tuskegee, Alabama. From May through December 2007, and then again from June 2010 through the current time, Mr. Fournier has and continues to receive treatment from the Veterans Administration Hospital in San Diego, California.

2753. As a result of the October 15, 2005 Terrorist Attack, and the injuries he suffered, Nessim Edward Fournier has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 241. THE OCTOBER 8, 2005 ATTACK – RAMADI

### A. PLAINTIFFS THE KADE L. HINKHOUSE FAMILY

2754. Plaintiff Kade L. Hinkhouse, Deceased, was a citizen of the United States and was domiciled in the State of Colorado at the time of his death.

2755. On October 8, 2005, Kade L. Hinkhouse, age 19, was serving in the U.S. military in Iraq.

2756. Mr. Hinkhouse was a passenger in a HMMVW on patrol and party of a convoy traveling on Route Michigan, northbound inside the city of Ramadi. The vehicle was struck by multiple "stacked" IEDs

2757. The weapons used to attack and injure Mr. Hinkhouse were Iranian manufactured/supplied IEDs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2758. As a result of the attack, Kade L. Hinkhouse suffered severe injuries including a depressed skull fracture, collapsed lungs, a severe right leg injury requiring its amputation above the knee, TBI, PTSD, etc.

2759. Kade L. Hinkhouse received extensive medical treatment at Walter Reed Army Medical Center, and continues to receive treatment to this day.

2760. As a result of the October 8, 2005 Terrorist Attack, and the injuries he suffered, Kade L. Hinkhouse has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2761. Plaintiff, Richard Hinkhouse, is a citizen of the United States and is domiciled in the state of Colorado. He is the father of Kade L. Hinkhouse.

2762. Plaintiff, Susan Hinkhouse, is a citizen of the United States and is domiciled in the state of Colorado. She is the mother of Kade L. Hinkhouse.

2763. Plaintiff, Brandon Hinkhouse, is a citizen of the United States and is domiciled in the state of Colorado. He is the brother of Kade L. Hinkhouse.

2764. Plaintiff, Chad Hinkhouse, is a citizen of the United States and is domiciled in the state of Colorado. He is the brother of Kade L. Hinkhouse.

2765. As a result of the October 8, 2005 Terrorist Attack, and the injuries suffered by Kade L. Hinkhouse, Plaintiffs, Richard Hinkhouse, Susan Hinkhouse, Brandon Hinkhouse, and Chad Hinkhouse, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 242. THE SEPTEMBER 29, 2005 ATTACK –JABOUR, SOUTHWEST OF BAGHDAD

#### A. PLAINTIFFS THE JASEN WATTS FAMILY

2766. Plaintiff Jasen Watts is a citizen of the United States and domiciled in the State of California.

2767. On September 29, 2005, Jasen Watts, age 23, was serving in the U.S. military in Iraq.

2768. Mr. Watts was driving a Humvee in a convoy of four vehicles on a dirt road in a town on the outskirts of Baghdad heading to FOB Falcon in Baghdad when his vehicle was struck by an IED.

2769. The weapon used to attack and injure Mr. Watts was an Iranian-supplied Pressure Switch IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2770. As a result of attack, Jasen Watts, sustained significant injuries including fractures to his right femur, fractured left tibia, development of compartment syndrome in both legs, massive scarring, hip pain, back pain, knee pain, TBI, memory loss, PTSD, nightmares.

2771. Mr. Watts was taken by helicopter to the Combat Support Hospital in the Baghdad Green Zone for stabilization of his right femur and left tibia fractures. He was then

flown to Hospital Camp Anaconda in Balad, Iraq and was treated emergently for development of compartment syndrome in both of his calves. After a few days, he was medevac'd. to Landstuhl Regional Medical Center, Landstuhl, Germany for additional treatment and surgeries. He was then transported to the William Beaumont Army Medical Center, in Fort Bliss, Texas for over a month of surgeries and treatment. He continues to receive ongoing medical care and treatment.

2772. As a result of the September 29, 2005 Terrorist Attack, and the injuries he suffered, Jasen Watts has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2773. Plaintiff, John Duane Tivis, is a citizen of the United States, and is domiciled in the state of California. He is the father of Jasen Watts.

2774. Plaintiff, Jesse Duane Tivis-Watts, is a citizen of the United States and is domiciled in the state of California. He is the brother of Jasen Watts.

2775. Plaintiff, Jared Luis Tivis-Watts, is a citizen of the United States and is domiciled in the state of California. He is the brother of Jasen Watts.

2776. As a result of the September 29, 2005 Terrorist Attack, and the injuries suffered by Jasen Watts, Plaintiffs, John Duane Tivis, Jesse Duane Tivis-Watts, and Jared Luis Tivis-Watts, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 243. THE SEPTEMBER 22, 2005 ATTACK – AL ZAIDAN

### A. PLAINTIFF LEE PAUL HAYWOOD

2777. Plaintiff Lee Paul Haywood is a citizen of the United States and domiciled in

the State of Massachusetts.

2778. On September 22, 2005, Lee Paul Haywood, age 19, was serving in the U.S. military in Iraq.

2779. Mr. Haywood was on patrol in Al Zaidan with his unit when they encountered an IED.

2780. The weapon used to attack and injure Mr. Haywood was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2781. As a result of the attack, Lee Paul Haywood suffered a TBI, headaches, PTSD and anxiety.

2782. Lee Paul Haywood received extensive medical treatment when he returned back to Camp Fallujah and continued his treatment at the Naval Hospital until his release from the military where he continues treatment with the VA.

2783. As a result of the September 22, 2005 Terrorist Attack, and the injuries he suffered, Lee Paul Haywood has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 244. THE SEPTEMBER 19, 2005 ATTACK – AL KARMA

### A. PLAINTIFFS THE BOBBY CHRISTOPHER, III FAMILY

2784. Plaintiff Bobby Christopher, III is a citizen of the United States and domiciled in the State of Missouri.

2785. On September 19, 2005, Bobby Christopher, III, by then age 24, was serving in the U.S. military in Iraq.

2786. Mr. Christopher was a passenger in a HMMWV participating in an escort

convoy of eight vehicles traveling along MSR Chicago in Al Karma when his vehicle was struck by an EFP.

2787. The weapon used to attack and injure Mr. Christopher was an Iranian manufactured/supplied EFP provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2788. As a result of the attack, Bobby Christopher, III suffered concussive blast injuries and shrapnel wounds, and exacerbated the injuries he sustained in the prior July 29, 2005 Terrorist Attack

2789. Bobby Christopher, III received extensive medical treatment and psychological treatment at VA St. Louis Health Care, Motion Orthopedics, Creve Coeur, MO.

2790. As a result of the September 19, 2009 Terrorist Attack, and the injuries he suffered in this attack (and the prior attack), Bobby Christopher, III has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2791. Plaintiff Bobby G. Christopher, Jr. is a citizen of the United States and is domiciled in the state of Missouri. He is the father of Bobby Christopher, III.

2792. Plaintiff Debi J. Noelke is a citizen of the United States and is domiciled in the state of Missouri. She is the Mother of Bobby Christopher, III.

2793. Plaintiff Angie J. Christopher is a citizen of the United States and is domiciled in the state of Arizona. She is the sister of Bobby Christopher, III.

2794. As a result of the September 19, 2005 Terrorist Attack, and the injuries suffered by Bobby Christopher, III, Plaintiffs, Bobby G. Christopher, Jr., Debi J. Noelke, and Angie J.

Christopher have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### B. PLAINTIFFS THE MARTIN A. MCCLUNG II FAMILY

2795. Plaintiff Martin A. McClung II is a citizen of the United States and is domiciled in the State of Michigan.

2796. On September 19, 2005, Martin A. McClung II, age 24, was serving in the U.S. military in Iraq.

2797. Mr. McClung was driving a HMMWV in the vehicle convoy when the IED exploded.

2798. The weapon used to attack and injure Mr. McClung was an Iranian-manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2799. As a result of the September 19, 2005 Terrorist Attack, Mr. McClung sustained significant injuries including TBI, PTSD, hearing loss, depression, anxiety, and shrapnel was embedded in his left arm and wrist.

2800. Mr. McClung received extensive medical treatment at Camp Fallujah, John D, Dingell VA Medical Center, the Detroit Vet Center, and the Naval Medical Center Hospital at Camp Lejeune.

2801. As a result of the September 19, 2005 Terrorist Attack, and the injuries he suffered, Mr. McClung has past and future noneconomic damages, including severe physical and mental pain and suffering, loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2802. Plaintiff Janel McClung is a citizen of the United States and is domiciled in the

State of Michigan. She is the wife of Martin McClung.

2803. Plaintiff M.M., a minor, represented by his legal guardians Martin McClung and Janel McClung, is a citizen of the United States and domiciled in the State of Michigan. He is the son of Martin McClung II and Janel McClung.

2804. Plaintiff James McClung is a citizen of the United States and domiciled in the State of Michigan. He is the grandfather of Martin McClung II.

2805. Plaintiff Peggy McClung is a citizen of the United States and domiciled in the State of Michigan. She is the grandmother of Martin McClung II.

2806. As a result of the September 19, 2005 Terrorist Attack, and the injuries suffered by Martin McClung II, Plaintiffs Janel McClung, M.M. a minor, James McClung, and Peggy McClung have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 245. THE SEPTEMBER 15, 2005 ATTACK – HADITHA

### A. PLAINTIFF LARRY GRIFFIS

2807. Plaintiff Larry Griffis is a citizen of the United States and domiciled in the State of California.

2808. On September 15, 2005, Larry Griffis, age 30, was serving in the U.S. military in Iraq.

2809. Mr. Griffis was travelling in a convoy in or near Haditha, Iraq when the vehicle he was travelling was struck by an IED. The entire left front of his vehicle was destroyed and the passenger front wheel was also destroyed.

2810. The weapon used to attack and injure Mr. Griffis was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-

trained terror operatives in Iraq.

2811. As a result of the attack, Larry Griffis suffered a 4th degree concussion, TBI, bilateral temporal membrane rupture, and PTSD.

2812. Larry Griffis received extensive medical treatment for his injuries, including multiple treatments and office visits with multiple medical providers at various medical facilities.

2813. As a result of the September 15, 2005 Terrorist Attack, and the injuries he suffered, Larry Griffis has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 246. THE SEPTEMBER 15, 2005 ATTACK – ASR URANIUM IVO HADITHA DAM, NW OF UDASIYAH

#### A. PLAINTIFFS THE ANTHONY WILLIAM GREEN FAMILY

2814. Plaintiff Anthony William Green is a citizen of the United States and domiciled in the State of Missouri.

2815. On September 15, 2005, Anthony William Green, age 19, was serving in the U.S. military in Iraq.

2816. Mr. Green was in a convoy with his unit when his 7-ton truck was hit by an IED.

2817. The weapon used to attack and injure Mr. Green was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2818. As a result of the attack, Anthony William Green suffered shrapnel wounds to his face, a back injury, hearing loss, Tinnitus, and was knocked unconscious causing TBI. He

has also been diagnosed with PTSD.

2819. Mr. Green received extensive medical treatment for his injuries, including surgical, psychological treatment and hearing treatment. He was medevac'd from the scene of the attack.

2820. As a result of the September 15, 2005 Terrorist Attack, and the injuries he suffered, Anthony William Green has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2821. Plaintiff Michael T. Green is a citizen of the United States and domiciled in the State of Missouri. He is the father of Anthony William Green.

2822. Plaintiff Joan M. Green is a citizen of the United States and domiciled in the State of Missouri. She is the mother of Anthony William Green.

2823. Plaintiff Matthew T. Green is a citizen of the United States and domiciled in the State of Missouri. He is the brother of Anthony William Green.

2824. As a result of the September 15, 2005 Terrorist Attack, and the injuries suffered by Anthony William Green, Plaintiffs Michael T. Green, Joan M. Green and Matthew T. Green have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 247. THE SEPTEMBER 12, 2005 ATTACK – SAMARRA

### A. PLAINTIFFS THE BRANDON MICHAEL PARROTT FAMILY

2825. Plaintiff Brandon Michael Parrott is a citizen of the United States and is domiciled in the State of Maryland.

2826. On the afternoon of September 12, 2005, Brandon Michael Parrott, age 22, was serving in the U.S. Military in Iraq.

2827. On September 12, 2005, Brandon Michael Parrott 's unit was patrolling Main Supply Route Tampa in Samarra, Iraq when an IED detonated into Mr. Parrott's Humvee.

2828. The weapon used to attack and injure Brandon Michael Parrott was an IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2829. As a result of the September 12, 2005 Terrorist Attack, Brandon Michael Parrott sustained significant injuries. Mr. Parrott suffered immediate injuries in the explosion. He had shrapnel wounds to the left side of his face and both forearms. Additionally, due to the trauma he endured and atrocities witnessed, Mr. Parrott has also been diagnosed with PTSD, depression, and anxiety.

2830. Brandon Michael Parrott was treated at the scene of the attack for his immediate injuries. His care was followed-up at Camp Speicher Air Base Hospital in Tikrit, Iraq, where x-rays were taken of his injuries and it was decided that due to the location, the shrapnel would remain in place. Mr. Parrott began seeking treatment for his injuries upon his return to the states at Baltimore VA Medical Center in Baltimore, Maryland in 2007, and continues to receive treatment at this facility. In the 2013-2014 timeframe, Mr. Parrott also received weekly therapy at the Baltimore VET Center.

2831. As a result of the September 12, 2005 Terrorist Attack, and the injuries he suffered, Brandon Michael Parrott has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning

capacity.

2832. Plaintiff Don Storms is a citizen of the United States and is domiciled in the state of South Carolina. He is the father of Brandon Michael Parrott.

2833. Plaintiff Terri Storms is a citizen of the United States and is domiciled in the state of South Carolina. She is the mother of Brandon Michael Parrott.

2834. As a result of the September 12, 2005 Terrorist Attack, and the injuries suffered by Brandon Michael Parrott, Plaintiffs Don Storms and Terri Storms have past and future noneconomic damages, including severe physical and mental pain and suffering, loss of consortium, and past and future economic damages, including loss of services.

## 248. THE SEPTEMBER 11, 2005 ATTACK – RAWAH

### A. PLAINTIFF JEREMY LEE BALLARD

2835. Plaintiff Jeremy Lee Ballard is a citizen of the United States and domiciled in the State of Kentucky.

2836. On the day of September 11, 2005, Jeremy Lee Ballard, age 32, was serving in the U.S. Military in Iraq.

2837. Jeremy Lee Ballard was performing his duties in the lead of a three-vehicle convoy when a van approached and detonated directly in front of the Stryker Mr. Ballard was commanding.

2838. The weapon used to attack and injure Jeremy Lee Ballard on September 11, 2005 was a suicide vehicle-borne IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2839. As a result of the September 11, 2005 Terrorist Attack, Jeremy Lee Ballard sustained significant injuries. Mr. Ballard was immediately impacted by the suicide bomb. He was knocked unconscious from the blast causing a traumatic brain injury. He suffered

from multiple burn injuries, tinnitus and head trauma. In addition to his physical injuries, Mr. Ballard has been diagnosed with post-traumatic stress disorder.

2840. Mr. Ballard's burn injuries required immediate medical attention, so he was treated at the scene of the attack, and then at the medical tent at COP Rawah. When he returned to the United States, he began receiving treatment for his injuries at the Marion Veterans Affairs Medical Center in Marion, Illinois, the Veterans Affairs Community Based Outpatient Clinic in Paducah, Kentucky, the Veterans Administration Mayfield Clinic in Mayfield, Kentucky from 2010 – 2015.

2841. As a result of the September 11, 2005 Terrorist Attack, and the injuries he suffered, Jeremy Lee Ballard has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 249. THE SEPTEMBER 9, 2005 ATTACK – HIT

### A. PLAINTIFFS THE ARAGORN THOR WOLD FAMILY

2842. Plaintiff Aragorn Thor Wold is a citizen of the United States and domiciled in the State of Virginia.

2843. On September 9, 2005, Aragorn Thor Wold, age 23, was serving in the U.S. military in Iraq.

2844. Mr. Wold was inside his FOB when it came under a coordinated attack, including a Suicide Vehicle Borne Improvised Explosive Device (SVBIED).

2845. The weapon used to attack and injure Mr. Wold was an Iranian manufactured/supplied SVBIED as well as RPG and machine gun weapons provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2846. As a result of the attack, Aragorn Thor Wold suffered injuries including, but

not limited to, shrapnel wounds to left side of body, cracked ribs, left shoulder injury, PTSD, TBI, anxiety, depression, and hyper-alertness.

2847. Aragorn Thor Wold received extensive medical treatment at the base, James Lovell VA Health Care Center, Washington DC VA Medical Center, and Kenosha Medical Center.

2848. As a result of the September 9, 2005 Terrorist Attack, and the injuries he suffered, Aragorn Thor Wold has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2849. Plaintiff Catherine S. Wold is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Aragorn Thor Wold.

2850. As a result of the September 9, 2005 Terrorist Attack, and the injuries suffered by Aragorn Thor Wold, Plaintiff Catherine S. Wold have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 250. THE SEPTEMBER 9, 2005 ATTACK – SAMARRA

### A. PLAINTIFF DAVID W. BRONSON

2851. Plaintiff David W. Bronson is a citizen of the United States and is domiciled in the State of New Hampshire.

2852. On September 9, 2005, David W. Bronson, age 22, was serving in the U.S. military in Iraq.

2853. Mr. Bronson's unit was traveling on Route 1 in Samarra, Iraq when an IED exploded near his vehicle.

2854. The weapon used to attack and injure Mr. Bronson was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2855. As a result of the attack, David W. Bronson sustained shrapnel injuries to his entire left side, including his lung, head, face, arm, and leg. He was also shot in the right leg.

2856. David W. Bronson received extensive medical treatment; his left leg was amputated after multiple surgeries. He had plastic surgery to the left side of his face, has nerve damage and scarring on his left arm, and suffers from PTSD.

2857. As a result of the September 9, 2005 Terrorist Attack, and the injuries he suffered, David W. Bronson has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 251. THE AUGUST 26, 2005 ATTACK - HIT

### A. PLAINTIFFS THE MARK HOWARD BEYERS FAMILY

2858. Plaintiff Mark Howard Beyers is a citizen of the United States and domiciled in the State of New York.

2859. On August 26, 2005, Mark Howard Beyers, age 26, was serving in the U.S. military in Iraq.

2860. Mr. Beyers was on foot patrol with his unit in Hit when an IED detonated 10-12 feet away from where he stood.

2861. The weapon used to attack and injure Mr. Beyers was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2862. As a result of the attack, Mark Howard Beyers suffered the loss of his right leg

from the knee, right shoulder disarticulation and amputation above the collar bone, a punctured lung, hole in his scapula, lacerated spleen and liver and lost 2 feet of his colon.

2863. Mark Howard Beyers received extensive medical treatment at the scene before he was medevac'd to Al Assad for stabilization before transferring to Germany for surgery and finally to Walter Reed for the following 9 months for further surgery and treatment. He continues treatments with the VA.

2864. As a result of the August 26, 2005 Terrorist Attack, and the injuries he suffered, Mark Howard Beyers has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2865. Plaintiff Denise Beyers is a citizen of the United States and domiciled in the State of New York. She is the wife of Mark Howard Beyers.

2866. As a result of the August 26, 2005 Terrorist Attack, and the injuries suffered by Mark Howard Beyers, Plaintiff Denise Beyers has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 252. THE AUGUST 23, 2005 ATTACK – OP HOTEL, AR RAMADI

### A. PLAINTIFF NESSIM EDWARD FOURNIER[119]

2867. Plaintiff Nessim Edward Fournier is a citizen of the United States and is domiciled in the State of California.

2868. August 23, 2005, Nessim Edward Fournier, age 24, was serving in the U.S. Military in Iraq

[119] Mr. Fournier was also injured in the October 15, 2005 fatal IED attack at Ramadi.

2869. Nessim Edward Fournier was stationed at the Combat Outpost in Ramadi when a vehicle loaded with 800lbs of explosives detonated as part of a complex suicide ambush when the truck carrying the munition collided with a concrete barrier five feet from the building's entrance. Upon regaining consciousness after the blast, Mr. Fournier realized his unit was also taking on small arms fire from insurgents who were firing through the hole in the wall created by the SVBIED.

2870. The weapon used to attack and injure Nessim Edward Fournier was an Iranian-manufactured SVBIED and small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2871. As a result of the August 23, 2005 Terrorist Attack, Nessim Edward Fournier sustained significant injuries. Mr. Fournier was knocked unconscious in the blast from the suicide bomb. He suffered a concussion, and injuries to his arms and legs from flying debris. Additionally, due to the traumatic nature of the events experienced and witnessed by Mr. Fournier, he has been diagnosed with PTSD, depression and anxiety.

2872. Upon return United States he received care at The Bradley Center in Columbus, Georgia. From April 2006 through January 2007, Mr. Fournier transferred his care to another Bradley facility in Fort Benning, Georgia. In January 2008 through July 2009, Mr. Fournier received treatment from the Tuskegee Veterans Hospital in Tuskegee, Alabama. From May through December 2007, and then again from June 2010 through the current time, Mr. Fournier has and continues to receive treatment from the Veterans Administration Hospital in San Diego, California.

2873. As a result of the August 23, 2005 Terrorist Attack, and the injuries he suffered, Nessim Edward Fournier has past and future noneconomic damages, including severe

physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 253. THE AUGUST 23, 2005 ATTACK – OP HOTEL, ROUTE MICHIGAN, BETWEEN RAMADI AND FALLUJAH

### A. PLAINTIFF GEORGE OVID SIMMONS, JR.

2874. Plaintiff George Ovid Simmons, Jr. is a citizen of the United States and domiciled in the State of Colorado.

2875. On the night of August 23, 2005, George Ovid Simmons, Jr., age 22, was serving in the U.S. Military in Iraq.

2876. George Simmons was in the OP Hotel when his unit began taking on small arms fire, RPGs, sniper fire and mortar rounds. As they were returning fire and attempting to take cover, the building was hit by a dump truck loaded with 800lbs of explosives.

2877. The weapon used to attack and injure George Ovid Simmons, Jr. on August 23, 2005 was small arms fire, RPGs, sniper fire, mortar rounds and an SVBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2878. As a result of the August 23, 2005 Terrorist Attack, George Ovid Simmons, Jr. sustained significant injuries. Mr. Simmons has been diagnosed with PTSD.

2879. Mr. Simmons was evacuated from the scene of the attack and evaluated at the Fallujah Surgical Hospital for a concussion. When he returned to the United States, he began seeking treatment at Fort Jackson in Columbia, South Carolina until 2012. From 2012 through the present, he receives his care from the Dorn Veterans Administration Center in Columbia, South Carolina.

2880. As a result of the August 23, 2005 Terrorist Attack, and the injuries he suffered, George Ovid Simmons, Jr. has past and future noneconomic damages, including severe

physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 254. THE AUGUST 23, 2005 ATTACK – RAMADI

#### A. PLAINTIFF ANDREW HIGGINS

2881. Plaintiff Andrew Higgins is a citizen of the United States and is domiciled in the State of Texas.

2882. On August 23, 2005, Andrew Higgins, age 23, was serving in the U.S. military in Iraq.

2883. Mr. Higgins was securing a perimeter with jersey barriers when an attacking group began firing mortars at him.

2884. The weapon used to attack and injure Mr. Higgins was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2885. As a result of the attack, Andrew Higgins suffered injuries to his jaw, teeth and sciatic nerve and has been diagnosed with PTSD, anxiety, and depression.

2886. Andrew Higgins received extensive medical treatment; he had multiple surgeries on his jaw and tibia and takes medication for his pain. He has had treatment for his PTSD, depression and anxiety.

2887. As a result of the August 23, 2005 Terrorist Attack, and the injuries he suffered, Andrew Higgins has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 255. THE AUGUST 22, 2005 ATTACK – AL KARMAH, AL ANBAR PROVINCE

### A. PLAINTIFFS THE ARTHUR L. RIZER, III FAMILY

2888. Plaintiff Arthur L. Rizer, III is a citizen of the United States and domiciled in Washington, D.C.

2889. On August 22, 2005, Arthur L. Rizer III, age 28, was serving in the U.S. military in Iraq.

2890. Mr. Rizer was in a Humvee which was part of a large convoy conducting a mounted patrol, travelling north of Al Karmah in the Al Anbar Province, outside of Fallujah, Iraq when an IED exploded next to his vehicle.

2891. The weapon used to attack and injure Mr. Rizer was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2892. As a result of the attack, Arthur L. Rizer, III sustained a traumatic brain injury, concussion, loss of hearing in his left ear, tinnitus, PTSD, depression, anxiety, and panic attacks.

2893. Arthur L. Rizer, III has received ongoing treatment for traumatic brain injury, seizures, passing out, headaches, PTSD, depression, anxiety, panic attacks, and insomnia.

2894. As a result of the August 22, 2005 Terrorist Attack, and the injuries he suffered, Arthur L. Rizer, III has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2895. Plaintiff Stephanie Rizer is a citizen of the United States and is domiciled in the state of Washington. She is the sibling of Arthur L. Rizer, III.

2896. Plaintiff Nicole Rizer is a citizen of the United States and is domiciled in the state of Virginia. She is the sibling of Arthur L. Rizer, III.

2897. Plaintiff Arthur L. Rizer, Jr. is a citizen of the United States and is domiciled in the state of Virginia. He is the father of Arthur L. Rizer, III.

2898. Plaintiff A. R., a minor, represented by his legal guardian, Arthur L. Rizer III, is a citizen of the United States and is domiciled in Washington, D.C. He is the son of Arthur L. Rizer, III.

2899. Plaintiff Arthur Gabriel Rizer is a citizen of the United States and is domiciled in the state of Virginia. He is the son of Arthur L. Rizer, III.

2900. As a result of the August 22, 2005 Terrorist Attack, and the injuries suffered by Arthur L. Rizer, III, Plaintiffs Stephanie Rizer, Nicole Rizer, Arthur L. Rizer, Jr., A. R., and Arthur Gabriel Rizer have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 256. THE AUGUST 19, 2005 ATTACK– FALLUJAH

### A. PLAINTIFF ADAM C. BIRDSELL

2901. Plaintiff Adam C. Birdsell is a citizen of the United States and domiciled in the State of Washington.

2902. On August 19, 2005, Adam C. Birdsell, age 23, was serving in the U.S. military in Iraq.

2903. Mr. Birdsell was a passenger in an up-armored HMMWV on patrol along MSR Mobile and MSR Michigan outside of Fallujah, Iraq, when his vehicle was stuck by an IED.

2904. The weapon used to attack and injure Mr. Birdsell was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-

trained terror operatives in Iraq.

2905. As a result of the attack, Adam C. Birdsell suffered concussive blast injuries, including TBI, migraine headaches, hearing loss and PTSD.

2906. Adam C. Birdsell received extensive medical treatment Jonathan M. Wainwright Memorial VA Medical Center in Walla Walla, WA and the VA Portland Health Care Center in Portland, Oregon. He continues to receive ongoing medical care and treatment.

2907. As a result of the August 19, 2005 Terrorist Attack, and the injuries he suffered, Adam C. Birdsell has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 257. THE AUGUST 11, 2005 ATTACK – NORTH OF HAWIJA, BETWEEN KIRKUK & MOSUL

#### A. PLAINTIFFS THE BRETT A. MILLER FAMILY

2908. Plaintiff Brett A. Miller is a citizen of the United States and domiciled in the State of Oregon.

2909. On or about August 11, 2005, Brett A. Miller, age 30, was serving in the U.S. military in Iraq.

2910. Mr. Miller was in a convoy with his unit on Route Trans Am, North of Hawija A.O. North between Kirkuk and Mosul, when his vehicle was struck by an IED.

2911. The weapon used to attack and injure Mr. Miller was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2912. As a result of the attack, Brett A. Miller suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), brain bleed, right eye retinal detachment, a

ruptured right ear drum, several fractured teeth, shrapnel wounds throughout his body, hemi-paraplegia of the arm, leg and face on the left side, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

2913. Brett A. Miller received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Walter Reed Hospital, Travis Air Force Base, Madigan Army Hospital, and several Veterans Medical Centers and private hospitals.

2914. As a result of the Terrorist Attack on or about August 11, 2005, and the injuries he suffered, Brett A. Miller has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2915. Plaintiff Faith A. Miller is a citizen of the United States and domiciled in the State of Oregon. She is the daughter of Brett A. Miller.

2916. As a result of the August 11, 2005 Terrorist Attack, and the injuries suffered by Brett A. Miller, Plaintiff' Faith A. Miller has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 258. THE AUGUST 3, 2005 ATTACK – BETWEEN HADITHA AND BARWANAH

#### A. PLAINTIFFS THE NICHOLAS WILLIAM BAART BLOEM FAMILY

2917. Plaintiff Nicholas William Baart Bloem was a citizen of the United States and domiciled in the State of Montana at the time of his death.

2918. On the day of August 3, 2005, Nicholas William Baart Bloem age 20, was serving as a peacekeeping serviceman in the 3rd Battalion, 25th Marine Regiment, L

Company.

2919. Nicholas William Baart Bloem was performing his duties as the Reconnaissance Marine 0321 in an Amphibious Assault Vehicle while was patrolling the Euphrates River Valley outside of the town Haditha in the Al Anbar Province. His unit was travelling toward Barwanah, and had been sent from the Haditha Dam Base in response to a sniper attack at this same location two days prior. Mr. Bloem was in the second or third vehicle in his convoy when it ran over a buried IED causing instant loss of life of 14 marines, Mr. Bloem included.

2920. Nicholas William Baart Bloem was gravely injured.

2921. The weapon used to attack and kill Nicholas William Baart Bloem on August 3, 2005, was an IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2922. Plaintiff Alcides Nicholas Bloem, Jr. is a citizen of the United States and domiciled in the state of Montana. He is the father of Nicholas William Baart Bloem.

2923. Plaintiff Alcides Nicholas Bloem, Jr., brings an action individually, and on behalf of the Estate of Nicholas William Baart Bloem, and all heirs thereof, as its legal representative.

2924. Plaintiff Debra Leigh Bloem is a citizen of the United States and domiciled in the state of Montana. She is the mother of Nicholas William Baart Bloem.

2925. Plaintiff Juliana Joy Smith is a citizen of the United States and domiciled in the state of Montana. She is the sister of Nicholas William Baart Bloem.

2926. Plaintiff Alcides Alexander Bloem is a citizen of the United States and domiciled in the state of Montana. He is the twin brother of Nicholas William Baart Bloem.

2927. Plaintiff Christina Charlson is a citizen of the United States and domiciled in

the state of Montana. She is the sister of Nicholas William Baart Bloem.

2928. Plaintiff Victoria Letha Bloem is a citizen of the United States and domiciled in the state of Montana. She is the sister of Nicholas William Baart Bloem.

2929. Plaintiff Florence Elizabeth Bloem is a citizen of the United States and domiciled in the state of Montana. She is the sister of Nicholas William Baart Bloem.

2930. Plaintiff Catherine Grace Bloem is a citizen of the United States and domiciled in the state of Montana. She is the sister of Nicholas William Baart Bloem.

2931. Plaintiff Sara Antonia Bloem is a citizen of the United States and domiciled in the state of Montana. She is the sister of Nicholas William Baart Bloem.

2932. Plaintiff Rachel Gabriela Bloem, is a citizen of the United States and domiciled in the state of Montana. She is the sister of Nicholas William Baart Bloem.

2933. Plaintiff S.R.B., a minor, represented by her legal guardian Alcides Nicholas Bloem, Jr., is a citizen of the United States and domiciled in the state of Montana. She is the daughter of Alcides Nicholas Bloem, Jr. and the sister of Nicholas William Baart Bloem.

2934. As a result of the August 3, 2005 terrorist attack, and the injuries suffered by and the death of Nicholas William Baart Bloem, Plaintiffs Alcides Nicholas Bloem, Jr., Debra Leigh Bloem, Juliana Joy Smith, Alcides Alexander Bloem, Christina Jewel Charlson, Victoria Letha Bloem, Florence Elizabeth Bloem, Catherine Grace Bloem, Sara Antonia Bloem, Rachel Gabriela Bloem and S.R.B., a minor, have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Nicholas William Baart Bloem's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Nicholas William Baart Bloem.

## 259. THE JULY 31, 2005 ATTACK – HIT

### A. PLAINTIFF ANDREW JOHN LENZ

2935. Plaintiff Andrew John Lenz is a citizen of the United States and domiciled in the State of New York.

2936. On July 31, 2005, Andrew John Lenz, age 23, was serving in the U.S. military in Iraq.

2937. Mr. Lenz was on a foot patrol in Hit, Iraq with members of his unit when he was hit by an IED.

2938. The weapon used to attack and injure Mr. Lenz was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian trained terror operatives in Iraq.

2939. As a result of the July 31, 2005 Terrorist Attack, Andrew John Lenz sustained significant injuries including a shattered left cheek bone, shattered bone in the 3rd metatarsal of his left hand, nerve damage to his left leg, shrapnel injuries to his right thigh, his nose and his torso, loss of range of motion in his right hand, PTSD, depression, anxiety and sleep issues.

2940. Andrew John Lenz received extensive medical treatment including being helicoptered out to an Airforce Base outside of Hit that day where they removed shrapnel and bandaged him. He was transported to Baghdad the next day for further treatment, has subsequently been treated at Batavia V.A. Hospital, and continues to receive treatment at the Niagara Falls V.A. Clinic.

2941. As a result of the July 31, 2005 Terrorist Attack, and the injuries he suffered, Andrew John Lenz has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, his past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 260. THE JULY 29, 2005 ATTACK – FALLUJAH

### A. PLAINTIFFS THE BOBBY CHRISTOPHER, III FAMILY

2942. Plaintiff Bobby Christopher, III is a citizen of the United States and domiciled in the State of Missouri.

2943. On July 29, 2005, Bobby Christopher, III, age 23, was serving in the U.S. military in Iraq.

2944. Mr. Christopher was a gunner in the fifth vehicle of a convoy of eight vehicles on presence patrol in Fallujah when an IED detonated causing damage to the Humvee.

2945. The weapon used to attack and injure Mr. Christopher was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2946. As a result of the explosion Mr. Christopher sustained damage to his ear drums, injuries to his back, TBI, tinnitus, and PTSD.

2947. Mr. Christopher received extensive medical treatment for his injuries at Al-Taqaddum Air Base, Iraq and later underwent medical and psychological treatment at VA St. Louis Health Care, St. Louis, MO. Since the attack, he has continued to receive medical treatment for his TBI, tinnitus, back pain, and PTSD.

2948. As a result of the July 29, 2005 Terrorist Attack, and the injuries he suffered, Bobby Christopher, III, has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2949. Plaintiff Bobby G. Christopher, Jr. is a citizen of the United States and is domiciled in the state of Missouri. He is the father of Bobby Christopher, III.

2950. Plaintiff Debi J. Noelke is a citizen of the United States and is domiciled in the

state of Missouri. She is the Mother of Bobby Christopher, III.

2951. Plaintiff Angie J. Christopher is a citizen of the United States and is domiciled in the state of Arizona. She is the sister of Bobby Christopher, III.

2952. As a result of the September 19, 2005 Terrorist Attack, and the injuries suffered by Bobby Christopher, III, Plaintiffs, Bobby G. Christopher, Jr., Debi J. Noelke, and Angie J. Christopher have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 261. THE JULY 5, 2005 ATTACK - HIT

#### A. PLAINTIFFS THE JOSHUA JONATHAN COOLEY FAMILY

2953. Plaintiff Joshua Jonathan Cooley is a citizen of the United States and domiciled in the State of Florida.

2954. On July 5, 2005, Joshua Jonathan Cooley, age 28, was serving in the U.S. military in Iraq.

2955. Mr. Cooley was on patrol with his unit in Hit when his vehicle was struck by a VBIED.

2956. The weapon used to attack and injure Mr. Cooley was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2957. As a result of the attack, Joshua Jonathan Cooley suffered severe burns, fractured arm, a TBI, vision loss from shrapnel cut through the skull and into his temple causing him to also lose the frontal lobe of his brain.

2958. Joshua Jonathan Cooley received extensive medical treatment following the attack and was medevac'd to Balad and then to Germany where he was stabilized, cleaned

and placed into a medically induced coma to be transferred to Walter Reed where he endured multiple surgeries. He continues extensive treatment and ongoing surgeries still at Walter Reed and treats with the VA. He requires a daily caregiver and will for the remainder of his life.

2959. As a result of the July 5, 2005 Terrorist Attack, and the injuries he suffered, Joshua Jonathan Cooley has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

2960. Plaintiff Christine Cooley is a citizen of the United States and domiciled in the State of Florida. She is the mother of Joshua Jonathan Cooley.

2961. As a result of the July 5, 2005 Terrorist Attack, and the injuries suffered by Joshua Jonathan Cooley, Plaintiff Christine Cooley has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 262. THE JUNE 29, 2005 ATTACK – HABBANIYA

### A. PLAINTIFF CHARLES EUGENE RUSSELL

2962. Plaintiff Charles Eugene Russell is a citizen of the United States and domiciled in the State of Iowa.

2963. On June 29, 2005, Charles Eugene Russell, age 20, was serving in the U.S. military in Iraq.

2964. Mr. Russell was traveling in a convoy near Habbaniya when his convoy was hit by an IED and engaged by small arms fire.

2965. The weapon used to attack and injure Mr. Russell was an Iranian

manufactured/supplied IED and Small Arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2966. As a result of the June 29, 2005 Terrorist Attack, Charles Eugene Russell suffered TBI and PTSD.

2967. Charles Eugene Russell received extensive medical treatment at; Combat Stress Unit, Camp Junction City, Ramadi, Iraq; VA Hospital Iowa City, Iowa City, Iowa: and Ottumwa Regional Health Center, Ottumwa, Iowa.

2968. As a result of the June 29, 2005 Terrorist Attack, and the injuries he suffered, Charles Eugene Russell has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 263. JULY 10, 2005 ATTACKS- MOSUL

### A. PLAINTIFF JARROD SCOTT HALLMAN

2969. Plaintiff Jarrod Scott Hallman is a citizen of the United States and domiciled in the State of Texas.

2970. On July 11, 2005, Jarrod Scott Hallman, age 22, was serving in the U.S. military in Iraq.

2971. Mr. Hallman was with his unit when an IED detonated directly beneath the Stryker in which he was parked.

2972. The weapon used to attack and injure Mr. Hallman was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2973. As a result of the attacks, Jarrod Scott Hallman suffered concussions, significant back injuries, lacerations to his face and hands and profound PTSD and depression.

2974. Jarrod Scott Hallman was transported to FOB Diamondback for immediate treatment for his injuries. Mr. Hallman has received extensive medical treatment for these physical and mental injuries, including surgery to repair lacerations, back surgery and continued counseling and medication for significant PTSD and depression.

2975. As a result of the July 10, 2005 Terrorist Attack, and the injuries he suffered, Jarrod Scott Hallman has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 264. THE JUNE 15, 2005 ATTACK – FOB FALCON, BAGHDAD

### A. PLAINTIFF ERIC EUGENE RODRIQUEZ

2976. Plaintiff Eric Eugene Rodriquez is a citizen of the United States and domiciled in the State of Idaho.

2977. On June 15, 2005, Eric Eugene Rodriquez, age 22, was serving in the U.S. military in Iraq.

2978. Mr. Rodriquez was in the turret of his Humvee when an Improvised Explosive Device ("IED") detonated. The force blew open the doors of his vehicle. Mr. Rodriquez suffered shrapnel injuries through his right forearm and neck, which, in turn, caused artery, tendon, and nerve damage to his right arm. He also sustained 3rd degree burns to his neck. Due to loss of blood, Mr. Rodriquez went into shock. After being transported by Blackhawk to the nearby Combat Support Hospital ("CSH") in Baghdad, medical staff performed emergency surgery on Mr. Rodriquez' arm.

2979. The weapon used to attack and injure Mr. Rodriquez was an Iranian manufactured or supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2980. As a result of the attack, Eric Eugene Rodriquez suffered and continues to suffer from the severe and permanent physical injuries including: damage to the nerves, tendons, and arteries in his right arm; scarring; and burns to his neck. Additionally, he suffers from Post-Traumatic Stress Disorder ("PTSD") from this attack.

2981. Mr. Rodriquez received extensive medical treatment for his injuries at the CSH in Baghdad, Landstuhl Regional Medical Center, Walter Reed National Military Medical Center, William Beaumont Army Medical Center, Enloe Medical Center, Madigan Medical Center, and Redding Outpatient Clinic. He continues to be treated and have surgeries from his injuries.

2982. As a result of the June 15, 2005 Terrorist Attack, and the injuries he suffered, Eric Eugene Rodriquez has past and future noneconomic damages, including constant and severe physical and mental pain and suffering and loss of enjoyment of life, permanent disfigurement, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 265. THE MAY 21, 2005 ATTACK – 3KM SOUTH OF HADITHAH DAM

### A. PLAINTIFF JASON THOMAS WOODLIFF

2983. Plaintiff JASON THOMAS WOODLIFF is a citizen of the United States and domiciled in the State of OHIO.

2984. On the afternoon of May 21, 2005, Jason Thomas Woodliff, age 22, was serving in the U.S. Military in Iraq.

2985. Jason Thomas Woodliff was performing his duties in an Amphibious Assault Vehicle when his vehicle hit a roadside IED. His unit then took on small arms fire.

2986. The weapon used to attack and injure Jason Thomas Woodliff on May 21, 2005

was an IED and small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2987. As a result of the May 21, 2005 Terrorist Attack, Jason Thomas Woodliff sustained significant injuries. Mr. Woodliff was knocked unconscious in the IED blast. He received an injury to his nose, as well as hearing loss. In addition to the physical injuries, Mr. Woodliff has been diagnosed with PTSD, depression and an anxiety disorder.

2988. Jason Thomas Woodliff was medevac'd to the base for immediate medical treatment. Upon his return to the United States, he received treatment for his psychological injuries in 2006 at the Naval Reserve Unit in Brook Park, Ohio. His medical care is now being provided by the Veterans Administration Hospital in Columbus, Ohio.

2989. As a result of the May 21, 2005 Terrorist Attack, and the injuries he suffered, Jason Thomas Woodliff has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 266. THE MAY 13, 2005 ATTACK – BALAD

### A. PLAINTIFF CHRISTOPHER F. SWARTZ

2990. Plaintiff Christopher F. Swartz is a citizen of the United States and domiciled in the State of Kansas.

2991. On May 13, 2005, Christopher F. Swartz, age 22, was serving in the U.S. military in Iraq.

2992. Mr. Swartz was on patrol with his unit from Baghdad on approach to Balad, when they were attacked with small arms fire and a Molotov cocktail grenade.

2993. The weapons used to attack and injure Mr. Swartz were an Iranian manufactured/supplied small arms weapon and a Molotov cocktail grenade provided by Iran

and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

2994. As a result of the attack, Christopher F. Swartz suffered injuries that include, but are not limited to, a cracked right eye orbit, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

2995. Christopher F. Swartz received medical treatment, including past and ongoing care for these injuries, at his military base, several Veterans Medical Centers, military hospitals and private hospitals.

2996. As a result of the May 13, 2005 Terrorist Attack, and the injuries he suffered, Christopher F. Swartz has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 267. THE APRIL 22, 2005 ATTACK - HABBANIYAH

#### A. PLAINTIFF JAMES MICHAEL HURST

2997. Plaintiff James Michael Hurst is a citizen of the United States and domiciled in the State of South Carolina.

2998. On April 22, 2005, Mr. James Hurst, age 28, was serving in the U.S. military in Iraq.

2999. Mr. Hurst's unit was in an armored vehicle when they were ambushed by terrorist forces with small arms fire and rocket propelled grenades. Mr. Hurst and another solider opened file at all personnel they could see. Mr. Hurst was struck with shrapnel and shot in the left hand. Another vehicle came in to assist when they noticed a man in the woods with a gun as well all a group of men in a car. The continued to engage the enemy.

3000. The weapon used to attack and injure Mr. James Hurst was an Iranian manufactured/supplied rocket propelled grenade, sniper rifles, and small arms provided by

Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3001. As a result of the April 22, 2005 Terrorist Attack, Mr. Hurst sustained significant injuries. Mr. Hurst was shot in the left hand. Mr. Hurst has muscle deterioration and no feeling from his elbow to his pinky finger.

3002. Mr. James Hurst received extensive medical treatment initially at Landstuhl Regional Medical Center. He continues to receive treatment at the Wm. Jennings Bryan Dorm VA Medical Center.

3003. As a result of the April 22, 2005 Terrorist Attack, and the injuries he suffered, Mr. James Hurst has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 268. THE APRIL 15, 2005 ATTACK - KURADA NEIGHBORHOOD, BAGHDAD

#### A. PLAINTIFF JOSEF ERNEST BAUMANN

3004. Plaintiff Josef Ernest Baumann is a citizen of the United States and domiciled in the State of Florida.

3005. On April 15, 2005, Josef Ernest Baumann, age 20, was serving in the U.S. military in Iraq.

3006. Mr. Baumann was on foot patrol with his unit assigned to counter-sniper operations. As his unit made a security check stop, Mr. Baumann was shot by a sniper. The bullet entered his side where his vest did not offer protection, and ricocheted off the inside of his vest, causing tracer rounds to ignite.

3007. The weapons and training used in the attack to injure Mr. Baumann were provided by Iran and/or one of its agents to Iranian-funded and Iranian-trained terror

operatives in Iraq.

3008. As a result of the April 15, 2005 attack Mr. Baumann was seriously injured. The bullet entered his side and exited an inch from his naval. Mr. Baumann had to have part of his abdominal and lateral muscle removed. He also had an interior compression fracture of the L1 vertebrae. Mr. Baumann also suffers from PTSD, anxiety, and night terrors as a result of the attack.

3009. Mr. Baumann received extensive medical treatment for his injuries. He received emergency abdominal surgery while in Iraq and was medically evacuated to an Army hospital in Landstuhl, Germany where he was further stabilized before being flown back to Fort Bliss Texas for additional surgery. In the years following the attack Mr. Baumann has had multiple operations, including removal of injured abdominal and lateral muscles, and in relation to the damaged lumbar vertebrae he sustained from the shot.

3010. As a result of the April 15, 2005 Terrorist Attack, and the injuries he suffered, Josef Ernest Baumann has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 269. THE APRIL 13, 2005 ATTACK – FOB HIT

### A. PLAINTIFF TIMOTHY MICHAEL HATCH

3011. Plaintiff Timothy Michael Hatch is a citizen of the United States and domiciled in the State of Ohio.

3012. On April 13, 2005, Timothy Michael Hatch, age 23, was serving in the U.S. military in Iraq.

3013. Mr. Hatch was at his station in FOB Hit outside a small building near the entry checkpoint when the building was struck by a rocket.

3014. The weapon used to attack and injure Mr. Hatch was an Iranian manufactured/supplied rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3015. As a result of the attack, Timothy Michael Hatch suffered head injuries.

3016. Timothy Michael Hatch received extensive medical treatment for tinnitus and significant PTSD.

3017. As a result of the April 13, 2005 Terrorist Attack, and the injuries he suffered, Timothy Michael Hatch has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 270. APRIL 2, 2005 ATTACK – VICINITY OF ABU GHRAIB PRISON

### A. PLAINTIFF LEONDRAE DEMORRIS RICE

3018. Plaintiff Leondrae Demorris Rice is a citizen of the United States and domiciled in the State of Mississippi.

3019. On April 2, 2005, Leondrae Demorris Rice, age 25, was serving in the Army National in Iraq.

3020. Mr. Rice was the gunner in a Humvee which was the lead vehicle in a convoy headed toward Camp Victory. The convoy came under attack, with several shots fired at it. A suicide bomber driving a vehicle-borne IED suddenly reversed gears, and backed into Mr. Rice's Humvee. The vehicle-borne IED exploded, causing Mr. Rice to suffer catastrophic injuries.

3021. The weapon used to attack and injure Mr. Rice was an Iranian manufactured and supplied vehicle borne IED provided by Iran and/or its agents to Iranian-funded and

Iranian-trained terror operatives in Iraq.

3022. As a result of the attack, Leondrae Demorris Rice suffered total blindness, a skull fracture, loss of bones in his left hand, loss of the radius bone on his right arm, third degree burns to his head and arms, and shrapnel wounds throughout his body. He also suffered, and continues to suffer from PTSD.

3023. Leondrae Demorris Rice received extensive medical treatment for his condition. He was medically evacuated to Germany where his condition was stabilized, and then transported to Brook Army Medical Center in San Antonio, Texas where he received extensive medical care and physical therapy for the next year. He has numerous surgeries, blood transfusions, skin grafts, and was placed in a medically induced coma due to the extreme pain of these procedures. He had extensive physical therapy and had to learn to walk again. Mr. Rice continues to treat at the Columbus Clinic.

3024. As a result of the April 2, 2005 Terrorist Attack, and the injuries he suffered, Leondrae Demorris Rice has past and future noneconomic damages, including severe physical pain and suffering, permanent disfigurement, total blindness, permanent and total disability, loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 271. THE APRIL 2005 ATTACK - MOSUL

### A. PLAINTIFFS THE KYLE MATTHEW LEMIEUX FAMILY

3025. Plaintiff Kyle Matthew Lemieux is a citizen of the United States and domiciled in the State of Washington.

3026. In April 2005, Mr. Kyle Matthew Lemieux, age 20, was serving in the U.S. military in Iraq.

3027. Mr. Lemieux's unit was in a three vehicle convoy patrolling a residential area

approximately one mile from FOB Freedom. The lead vehicle spotted an IED and maneuvered around it. The convoy then spotted a suspicious vehicle when they then pursued. The convoy was able to trap the vehicle, commanding the enemy to exit the vehicle. One came out shooting, while the other exited the vehicle and threw a grenade at the front right hatch of the second vehicle in the convoy. The grenade exploded, causing shrapnel wounds to his face and left hand.

3028. The weapon used to attack and injure Mr. Kyle Matthew Lemieux was an Iranian manufactured/supplied IED and grenade provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3029. As a result of the attack, Mr. Kyle Lemieux suffered significant injuries. Mr. Lemieux was treated for shrapnel on his face, neck and left hand. Mr. Lemieux was also diagnosed with a traumatic brain injury. Mr. Lemieux suffers from PTSD, depression, anxiety, sleep impairment and chronic migraines.

3030. Mr. Kyle Matthew Lemieux received significant medical treatment for his injuries. At the time of the attack, Mr. Lemieux had shrapnel removed from his face, neck, and left hand. Mr. Lemieux has since then gone through therapy at the Tacoma Vet Center to help with the function in his left hand as well as receive treatment for his PTSD, anxiety, depression, migraines, and problems sleeping.

3031. As a result of the April 2005 Terrorist Attack, and the injuries he suffered, Mr. Kyle Matthew Lemieux has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3032. Plaintiff Elizabeth Lynn Coffin is a citizen of the United States and domiciled

in the State of Maine. She is the mother of Plaintiff, Mr. Kyle Matthew Lemieux.

3033. As a result of the April 2005 Terrorist Attack, and the injuries suffered by Mr. Kyle Matthew Lemieux, Plaintiff Elizabeth Lynn Coffin has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 272. THE MARCH 27, 2005 ATTACK – CAMP AL-TAQAADUM

### A. PLAINTIFFS THE EDGAR MALDONADO FAMILY

3034. Plaintiff Edgar Maldonado is a citizen of the United States and domiciled in the State of Pennsylvania.

3035. On March 27, 2005, Edgar Maldonado, age 35, was serving in the U.S. military in Iraq.

3036. Mr. Maldonado was the third vehicle in a convoy of approximately ten vehicles when the vehicle ahead was hit by an IED.

3037. The weapon used to attack and injure Mr. Maldonado was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3038. As a result of the attack, Mr. Maldonado sustained injuries to his cervical spine, thoracic spine, suffered a right inguinal hernia, loss of consciousness, and PTSD.

3039. Mr. Maldonado was treated at Camp Victory and was later medevac'd. to Landstuhl Regional Medical Center, Landstuhl, Germany and underwent surgery on his cervical spine. He has continued to receive medical and psychological treatment at Coatesville VA Medical Center, Coatesville, PA; Lebanon VA Medical Center, Lebanon, PA; Allentown VA Outpatient Clinic, Allentown, PA; and Berks County VA Clinic, Wyomissing,

PA, for injuries to his cervical and thoracic spine, inguinal hernia, and PTSD.

3040. As a result of the March 27, 2005 Terrorist Attack, and the injuries he suffered, Edgar Maldonado has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3041. Plaintiff Evelisa Maldonado is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the wife of Edgar Maldonado.

3042. Plaintiff J.M., a minor child, is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the daughter of Edgar Maldonado

3043. Plaintiff Ana Maldonado is a citizen of the United States and is domiciled in the state of New York. She is the mother of Edgar Maldonado.

3044. Plaintiff Jose L. Maldonado is a citizen of the United States and is domiciled in the state of New York. He is the father of Edgar Maldonado.

3045. Plaintiff Anthony Maldonado is a citizen of the United States and is domiciled in the state of Florida. He is the brother of Edgar Maldonado.

3046. Plaintiff Yanitza Maldonado is a citizen of the United States and is domiciled in the state of New York. She is the sister of Edgar Maldonado.

3047. As a result of the March 27, 2005 Terrorist Attack, and the injuries suffered by Edgar Maldonado, Plaintiffs, Evelisa Maldonado, J.M., a minor child, Ana Maldonado, Jose L. Maldonado, Anthony Maldonado and Yanitza Maldonado have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 273. THE MARCH 25, 2005 ATTACK – MAIN SUPPLY ROUTE URANIUM, CLOSE TO AL-ASAD AIR BASE

#### A. PLAINTIFF BRIAN CHAD BECKWITH

3048. Plaintiff BRIAN CHAD BECKWITH is a citizen of the United States and is domiciled in the State of COLORADO.

3049. On March 25, 2005, Brian Chad Beckwith, age 23, was serving in the U.S. Military in Iraq.

3050. Around 9:00 p.m. on March 25, 2005, Lance Corporal Beckwith was driving a Humvee in a six-vehicle convoy on Main Supply Route Uranium, around five kilometers away from Camp Hit, northwest of Hit. As they travelled south the Humvee he was driving hit two anti-tank mine IEDs that were covered up in the roadway.

3051. The weapon used to attack and injure Brian Beckwith was an IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3052. As a result of the March 25, 2005 Terrorist Attack, Brian Chad Beckwith sustained significant injuries. Mr. Beckwith endured injuries to his face, traumatic brain injury, back, neck and hip injuries, and post-traumatic stress disorder.

3053. Brian Chad Beckwith was treated at the scene of the attack for his facial injuries. He was transported to Al Asad Air Base where he spent 5 days receiving intensive treatment for his injuries. His follow-up care and removal of stitches occurred at Camp Hit's medical facility. Upon his return to the States, Mr. Beckwith began seeing a pain management specialist, and psychiatrist at Louis A. Johnson VA Medical Center in Clarksburg, West Virginia from 2006 – 2009, including an inpatient stay for PTSD treatment. His care then continued until 2013 at the VA Pittsburg Health System in Pittsburg, Pennsylvania. Upon his move to Colorado, he transferred his treatment to the VA Eastern Colorado Health System in

Denver, Colorado where he continues to receive care.

3054. As a result of the March 25, 2005 Terrorist Attack, and the injuries he suffered, Brian Chad Beckwith has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 274. THE SEPTEMBER 12, 2005 ATTACK – SAMARRA

### A. PLAINTIFFS THE DANIEL FRANCIS PEARSON FAMILY

3055. Plaintiff Daniel Francis Pearson is a citizen of the United States and domiciled in the State of Illinois.

3056. On September 12, 2005, Daniel Francis Pearson, age 20, was serving in the U.S. military in Iraq.

3057. Mr. Pearson was on patrol with his unit in Samarra, Iraq when the lead Humvee in his convoy was struck by an improvised explosive device.

3058. The weapon used to attack and injure Mr. Pearson was an Iranian manufactured/supplied improvised explosive device provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3059. As a result of the attack, Daniel Francis Pearson suffered post-traumatic stress disorder.

3060. Daniel Francis Pearson received extensive medical treatment at Troop Medical Clinic in Kuwait, James A. Lovell Federal Healthcare Center in Chicago, Illinois, Winn Army Community Hospital in Fort Stewart, Georgia, Jesse Brown VA Hospital in Chicago, Illinois, West Palm Beach VA Medical Center in West Palm Beach, Florida, and Connecticut VA Healthcare in Newington, Connecticut.

3061. As a result of the September 12, 2005, Terrorist Attacks, and the injuries he

suffered, Daniel Francis Pearson has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3062. Plaintiff Holly Pearson is a citizen of the United States and domiciled in the State of Florida. She is the mother of Daniel Francis Pearson.

3063. As a result of the September 12, 2005, Terrorist Attacks, and the injuries suffered by Daniel Francis Pearson, Plaintiff Holly Pearson has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 275. THE MARCH 17, 2005 ATTACK – RAMADI

### A. PLAINTIFFS THE DANIEL J. ERBE FAMILY

3064. Plaintiff Daniel J. Erbe is a citizen of the United States and domiciled in the State of South Carolina.

3065. On March 17, 2005, Daniel J. Erbe, age 27, was serving in the U.S. military in Iraq.

3066. While Mr. Erbe was stationed at the Intelligence Operations Center for the Al Anbar Province at Camp Blue Diamond (also known as Anbar Operations Command, Ramadi, Iraq) he was attacked by rockets.

3067. The weapon used to attack and injure Mr. Erbe was an Iranian manufactured/supplied rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3068. As a result of the attack, Daniel J. Erbe suffered concussive blast injuries, shrapnel wounds to his left and right legs, left shoulder and head.

3069. Daniel J. Erbe received extensive medical treatment Al Assad Air Base, Balad Air Force Base, Landstuhl Regional Medical Center, Walter Reed Military Medical Center, Camp Pendleton Hospital, Charleston VA Medical Center, Iowa City VA Medical Center, Medical University of South Carolina in Charleston, SC, and other medical facilities

3070. As a result of the March 17, 2005 Terrorist Attack, and the injuries he suffered, Daniel J. Erbe has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3071. Plaintiff, Earlene E. Erbe, is a citizen of the United States, and is domiciled in the state of Iowa. She is the mother of Daniel J. Erbe.

3072. Plaintiff, Brian J. Erbe, is a citizen of the United States and is domiciled in the state of Iowa. He is the father of Daniel J. Erbe.

3073. Plaintiff, Elizabeth E. Erbe, is a citizen of the United States and is domiciled in the state of Iowa. She is the sister of Daniel J. Erbe.

3074. Plaintiff, Stephanie A. Erbe, is a citizen of the United States and is domiciled in the state of Iowa. She is the sister of Daniel J. Erbe.

3075. As a result of the March 17, 2005 Terrorist Attack, and the injuries suffered by Daniel J. Erbe, Plaintiffs, Earlene E. Erbe, Brian J. Erbe, Elizabeth E. Erbe, and Stephanie A. Erbe, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 276. THE MARCH 15, 2005 ATTACK - BAGHDAD

### A. PLAINTIFF DOUGLAS HAMILTON KINARD JR.

3076. Plaintiff Douglas Hamilton Kinard Jr. is a citizen of the United States and

domiciled in the State of Georgia.

3077. On March 15, 2005, Douglas Hamilton Kinard, Jr., age 34, was serving in the U.S. military in Iraq.

3078. Mr. Kinard was on convoy with his unit in Baghdad, his vehicle had to pull off the road when approximately 30 feet away an IED detonated.

3079. The weapon used to attack and injure Mr. Kinard was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3080. As a result of the attack, Douglas Hamilton Kinard, Jr., suffered a skull fracture, broken sinus cavity, headaches, back injury, a TBI, nerve damage and PTSD.

3081. Douglas Hamilton Kinard, Jr., received extensive medical treatment immediately following the attack at Camp Victory. He continued treatment with Army Medical Centers and now treats with the VA.

3082. As a result of the March 15, 2005 Terrorist Attack, and the injuries he suffered, Douglas Hamilton Kinard, Jr., has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 277. THE MARCH 13, 2005 ATTACK – MSR MOBILE, AR-RUTBAH

#### A. PLAINTIFF BRIAN THOMAS SKRABA

3083. Plaintiff Brian Thomas Skraba is a citizen of the United States and domiciled in the State of Illinois.

3084. On the afternoon of March 13, 2005, Brian Thomas Skraba, age 19, was serving in the U.S. Military in Iraq.

3085. Brian Thomas Skraba was in his LAV 25 while heading back to Camp Korean Village on MSR Mobile when an IED hit his vehicle.

3086. The weapon used to attack and injure Brian Thomas Skraba on March 13, 2005 was an IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3087. As a result of the March 13, 2005 Terrorist Attack, Brian Thomas Skraba sustained significant injuries. Mr. Skraba was knocked unconscious in the blast. He suffered a concussion and laceration to his forehead. He has been diagnosed with a TBI, PTSD and depression as a result of the attack.

3088. Brian Thomas Skraba was treated at the scene and transported back to base while he was unconscious. Upon his return to the United States, he began receiving and still receives his medical care at Edward Hines Jr. Veterans Administration Hospital in Hines, Illinois. He also receives care from the Orland Park Veterans Center in Orland Park, Illinois.

3089. As a result of the March 13, 2005 Terrorist Attack, and the injuries he suffered, Brian Thomas Skraba has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 278. THE MARCH 9, 2005 ATTACK – FOB FALCON, BAGHDAD

### A. PLAINTIFF ERIC EUGENE RODRIQUEZ

3090. Plaintiff Eric Eugene Rodriquez is a citizen of the United States and domiciled in the State of Idaho.

3091. On March 9, 2005, Eric Eugene Rodriquez, age 22, was serving in the U.S. military in Iraq.

3092. On March 9, 2005, Mr. Rodriquez was in the turret of his Humvee located three

blocks from the Al Sadeer hotel. Around 9:00 AM, the hotel was attacked by a Vehicle-borne Improvised Explosive Device ("VBIED") and small arms fire attack that killed numerous people. During the time that Mr. Rodriquez remained on the scene to secure the area, he was attacked with small arms fire.

3093. The weapon used to attack and injury Mr. Rodriquez was an Iranian manufactured/supplied VBIED and small arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3094. This Terrorist Attack resulted in Mr. Rodriquez sustaining psychological trauma, which contributed to the development of Post-Traumatic Stress Disorder ("PTSD").

3095. Mr. Rodriquez received extensive medical treatment for his injuries at the nearby Combat Support Hospital ("CSH"), Landstuhl Regional Medical Center, Walter Reed National Military Medical Center, William Beaumont Army Medical Center, Enloe Medical Center, Madigan Medical Center, and Redding Outpatient Clinic. He continues to be treated for his injuries.

3096. As a result of the March 9, 2005 Terrorist Attack, and the injuries he suffered, Eric Eugene Rodriquez has past and future noneconomic damages, including constant and severe mental pain and suffering and loss of enjoyment of life, permanent disfigurement, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 279. THE MARCH 2005 ATTACK - MOSUL

### A. PLAINTIFFS THE KYLE MATTHEW LEMIEUX FAMILY

3097. Plaintiff Kyle Matthew Lemieux is a citizen of the United States and domiciled in the State of Washington.

3098. In March 2005, Mr. Kyle Lemieux, age 20, was serving in the U.S. military in

Iraq.

3099. Mr. Kyle Lemieux's unit was conducting a standard three vehicle convoy patrol when they noticed a car on the right side of the road that began to match the convoy's speed. As soon as the car got close to the second Stryker in the convoy, the car exploded. The blast hit Mr. Lemieux directly in the face, ripping off his protective gear. Mr. Lemieux was knocked unconscious.

3100. The weapon used to attack and injure Mr. Kyle Lemieux was an Iranian manufactured/supplied vehicle borne IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3101. As a result of the attack, Mr. Kyle Lemieux suffered significant injuries, including TBI, shrapnel wounds, compressed spine, and a concussion. Mr. Lemieux suffered scarring on the outer layer of both of his eyes as well as scarring on his nose.

3102. Mr. Kyle Lemieux received extensive medical treatment for the compressed spine, TBI, scarring on both eyes and nose.

3103. As a result of the March 2005 Terrorist Attack, and the injuries he suffered, Mr. Kyle Lemieux has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3104. Plaintiff Elizabeth Lynn Coffin is a citizen of the United States and domiciled in the State of Maine. She is the mother of Plaintiff, Mr. Kyle Lemieux.

3105. As a result of the March 2005 Terrorist Attack, and the injuries suffered by Mr. Kyle Lemieux, Plaintiff Elizabeth Lynn Coffin has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss

of consortium, and past and future economic damages, including loss of services.

### 280. THE FEBRUARY 19, 2005 ATTACK – SAMARRA

#### A. PLAINTIFFS THE PATRICK JOHN BRADY FAMILY

3106. Plaintiff Patrick John Brady is a citizen of the United States and domiciled in the State of Pennsylvania.

3107. On February 19, 2005, Patrick John Brady, age 23, was serving in the U.S. military in Iraq.

3108. Mr. Brady was driving a HMMWV in a convoy of five vehicles in Samarra. The Convoy was attacked with multiple IEDs. The first IED explosion missed the vehicles. A second IED exploded, directly hitting the vehicle driven by Patrick John Brady.

3109. The weapons used to attack and injure Mr. Brady were Iranian manufactured/supplied IEDs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3110. As a result of the February 19, 2005 Terrorist Attack, Patrick John Brady sustained significant injuries including a concussive blast injury, a fractured right arm, injuries to his neck and back, injuries to his knees, PTSD, depression, anxiety attacks, sleeplessness and chronic migraine headaches.

3111. Patrick John Brady received extensive medical treatment at Landstuhl Regional Military Center, and the Winn Army Community Hospital. He continues to be treated at the Philadelphia VA Hospital and the Philadelphia VA Medical Center.

3112. As a result of the February 19, 2005 Terrorist Attack, and the injuries he suffered, Patrick John Brady has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3113. Plaintiff Debra Brady is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the mother of Patrick John Brady.

3114. Plaintiff Edward J. Brady, III, is a citizen of the United States and is domiciled in the state of Pennsylvania. He is the brother of Patrick John Brady.

3115. Plaintiff Sarah Malone is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the sister of Patrick John Brady.

3116. As a result of the February 19, 2005 Terrorist Attack, and the injuries suffered by Patrick John Brady, Plaintiffs, Debra Brady, Edward J. Brady, III, and Sarah Malone have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 281. THE JANUARY 23, 2005 ATTACK - PATROL BASE UVANNI, SAMARRA

### A. PLAINTIFFS THE AARON SMITH FAMILY

3117. Plaintiff Aaron Smith is a citizen of the United States and domiciled in the State of Oklahoma.

3118. On January 23, 2005, Aaron Smith, age 22, was serving in the U.S. military in Patrol Base Uvanni, Samarra, Iraq.

3119. Mr. Aaron Smith was performing his duties in front of Patrol Base Uvanni when the base was hit by three mortar rounds. Mr. Smith was struck with shrapnel from the second mortar blast that detonated three feet from him.

3120. The weapon used to attack and injure Mr. Aaron Smith was an Iranian manufactured/supplied Mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3121. As a result of the attack, Aaron Smith suffered significant injuries. Mr. Smith was struck in the arm and abdomen by shrapnel. He was also diagnosed with a TBI and PTSD.

3122. Aaron Smith was medevac'd from the scene and received surgical intervention at Balad Air Base. He was transferred to Landstuhl Germany for further surgeries to repair his injuries. He was moved to University Hospital of Wurzburg for rehabilitation. Mr. Smith began receiving treatment in 2012 from the Fort Carson Warrior Recovery Center in Fort Carson, Colorado. He now receives treatment from Hartshorne Veterans Administration Clinic in Hartshorne, Oklahoma.

3123. As a result of the January 23, 2005 Terrorist Attack, and the injuries he suffered, Aaron Smith has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3124. Plaintiff Donna Smith Couch is a citizen of the United States and domiciled in the State of Kentucky. She is the sister of Aaron Smith.

3125. As a result of the January 23, 2005 Terrorist Attack, and the injuries suffered by Aaron Smith, Plaintiff Donna Smith Couch has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 282. THE JANUARY 7, 2005 ATTACK – ISKANDARIYA

### A. PLAINTIFF JOHN F. KUNKEL, JR.

3126. Plaintiff John F. Kunkel, Jr. is a citizen of the United States and domiciled in the State of North Carolina.

3127. On January 7, 2005, John F. Kunkel, Jr., age 19, was serving in the U.S. military in Iraq.

3128. Mr. Kunkel was a passenger in a HMMWV in a four-vehicle convoy when it was attacked by multiple IEDs.

3129. The weapons used to attack and injure Mr. Kunkel were Iranian manufactured/supplied IEDs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3130. As a result of the attack, Mr. Kunkel suffered concussive blast injuries, TBI, shrapnel wounds, and PTSD.

3131. Mr. Kunkel received extensive medical treatment at Naval Medical Center, Camp Lejeune VA Health Care Center, and Goldsboro VA.

3132. As a result of the January 7, 2005 Terrorist Attack, and the injuries he suffered, John F. Kunkel, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 283. THE JANUARY 3, 2005 ATTACK – BAGHDAD

### A. PLAINTIFFS THE SERGE HAGOPIAN FAMILY

3133. Plaintiff Serge Hagopian is a citizen of the United States and domiciled in the State of Arizona.

3134. On January 3, 2005, Serge Hagopian, age 35, was serving in the U.S. military in Iraq.

3135. Mr. Hagopian was standing in front of his office building for the 15th Finance Battalion, located in Camp Muleskinner in Baghdad, Iraq, when a mortar hit the building, causing the roof to collapse.

3136. The weapon used to attack and injure Mr. Hagopian was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and

Iranian-trained terror operatives in Iraq.

3137. As a result of the attack, Serge Hagopian sustained significant injuries, including post-traumatic stress disorder, anxiety, depression, insomnia, panic attacks, memory loss, and visual hallucinations.

3138. Serge Hagopian received extensive medical treatment at Anthem Clinic and Phoenix VA Medical Center where he continues to be treated.

3139. As a result of the January 3, 2005 Terrorist Attack, and the injuries he suffered, Serge Hagopian has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3140. Plaintiff Anaheid Mikaelian is a citizen of the United States and domiciled in the State of Arizona. She is the mother of Serge Hagopian.

3141. Plaintiff Christine Hagopian is a citizen of the United States and domiciled in the State of Arizona. She is the sister of Serge Hagopian.

3142. Plaintiff Sevag Hagopian is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Serge Hagopian.

3143. As a result of the January 3, 2005 Terrorist Attack, and the injuries suffered by Serge Hagopian, Plaintiffs Anaheid Mikaelian, Christine Hagopian, and Sevag Hagopian have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 284. THE DECEMBER 29, 2004 ATTACK – MOSUL

### A. PLAINTIFF JARROD SCOTT HALLMAN

3144. Plaintiff Jarrod Scott Hallman is a citizen of the United States and domiciled in

the State of Texas.

3145. On December 29, 2004, Jarrod Scott Hallman, age 22, was serving in the U.S. military in Iraq.

3146. Mr. Hallman was with his unit on Route Tampa when his Stryker vehicle was hit with a daisy chain of IEDs.

3147. The weapons used to attack and injure Mr. Hallman were Iranian manufactured/supplied IEDs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3148. As a result of the attacks, Jarrod Scott Hallman suffered concussions, significant back injuries, lacerations to his face and hands and profound PTSD and depression.

3149. Jarrod Scott Hallman received extensive medical treatment for these physical and mental injuries, including surgery to repair lacerations, back surgery and continued counseling and medication for significant PTSD and depression.

3150. As a result of the December 29, 2004 Terrorist Attack, and the injuries he suffered, Jarrod Scott Hallman has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 285. THE DECEMBER 12, 2004 ATTACK - FALLUJAH

#### A. PLAINTIFFS THE MARTIN GONZALEZ FAMILY

3151. Plaintiff Martin Gonzalez is a citizen of the United States and domiciled in the State of Texas.

3152. On December 12, 2004, Martin Gonzalez, age 24, was serving in the U.S. military in Iraq.

3153. Mr. Gonzalez was on patrol with his unit in Fallujah clearing houses when his

unit came under heavy small arms and was attacked by RPG's and grenades. A grenade detonated next to Mr. Gonzalez causing him to sustain significant back injuries. In addition to the physical injuries, these events led Mr. Gonzales to suffer significant emotional injuries, including profound PTSD.

3154. The weapons used to attack and injure Mr. Gonzalez were Iranian manufactured/supplied small arms, RPGs, and grenades provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3155. As a result of the attack, Mr. Gonzalez suffered a broken back, severe depression, PTSD and anxiety.

3156. Martin Gonzalez received extensive medical treatment both on the scene of the attacks and in hospitals afterward including surgeries to repair his hand and arm, wound care for infections and significant treatment for his emotional injuries.

3157. As a result of the December 12, 2004 Terrorist Attack, and the injuries he suffered, Martin Gonzalez has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3158. Plaintiff Tomas R. Gonzalez is a citizen of the United States and domiciled in the State of Texas. He is the father of Martin Gonzalez.

3159. Plaintiff Betty Gonzalez is a citizen of the United States and domiciled in the State of Texas. She is the mother of Martin Gonzalez.

3160. As a result of the December 12, 2004 Terrorist Attack, and the injuries suffered by Martin Gonzalez, Tomas R. Gonzalez and Betty Gonzalez have past and future noneconomic damages, including sever mental anguish, extreme emotional pain and

suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

**286. THE DECEMBER 13, 2004 ATTACK - FALLUJAH**

**A. PLAINTIFFS THE MARTIN GONZALEZ FAMILY**

3161. Plaintiff Martin Gonzalez is a citizen of the United States and domiciled in the State of Texas.

3162. On December 13, 2004, Martin Gonzalez, age 24, was serving in the U.S. military in Iraq.

3163. Mr. Gonzalez was on patrol with his unit in Fallujah clearing houses when his unit came under heavy small arms fire. Mr. Gonzalez was shot in the right elbow, causing significant damage to his right arm. In addition to the physical injuries, this event led Mr. Gonzales to suffer significant emotional injuries, including profound PTSD.

3164. The weapons used to attack and injure Mr. Gonzalez were Iranian manufactured/supplied small arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3165. As a result of the attack, Mr. Gonzalez suffered significant nerve and bone damage to his right hand and arm, severe depression, PTSD and anxiety.

3166. Martin Gonzalez received extensive medical treatment both on the scene of the attacks and in hospitals afterward including surgeries to repair his hand and arm, wound care for infections and significant treatment for his emotional injuries.

3167. As a result of the December 13, 2004 Terrorist Attack, and the injuries he suffered, Martin Gonzalez has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3168. Plaintiff Tomas R. Gonzalez is a citizen of the United States and domiciled in the State of Texas. He is the father of Martin Gonzalez.

3169. Plaintiff Betty Gonzalez is a citizen of the United States and domiciled in the State of Texas. She is the mother of Martin Gonzalez.

3170. As a result of the December 13, 2004 Terrorist Attack, and the injuries suffered by Martin Gonzalez, Tomas R. Gonzalez and Betty Gonzalez have past and future noneconomic damages, including sever mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 287. THE NOVEMBER 28, 2004 ATTACK – HABBANIYAH

### A. PLAINTIFFS THE FRANCIS D. GARREN FAMILY

3171. Plaintiff Francis D. Garren is a citizen of the United States and domiciled in the State of North Carolina.

3172. On November 28, 2004, Francis D. Garren, age 31, was serving in the U.S. military in Iraq.

3173. Mr. Garren was driving a HMMWV in a two-vehicle convoy in Habbaniyah, Iraq when it was hit by a IED.

3174. The weapon used to attack and injure Mr. Garren was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3175. As a result of the attack, Francis D. Garren suffered from concussive blast injuries, shrapnel wounds, a fractured left foot, PTSD, insomnia, and anxiety

3176. Francis D, Garren received extensive medical treatment at Balad Air Base Hospital, Landstuhl Regional Medical Center, Walter Reed National Military Medical Center,

VA in Fort Carson, CO, and from Stephen E. Buie, M.D., in Ashville, North Carolina.

3177. As a result of the November 28, 2004 Terrorist Attack, and the injuries he suffered, Francis D. Garren has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3178. Plaintiff, David L. Garren, is a citizen of the United States, and is domiciled in the state of Arkansas. He is the father of Francis D. Garren.

3179. Plaintiff, Mary Kathryn Johnston, is a citizen of the United States and is domiciled in the state of Arkansas. She is the sister of Francis D. Garren.

3180. As a result of the November 28, 2004 Terrorist Attack, and the injuries suffered by Francis D. Garren, Plaintiffs, David L. Garren and Mary Kathryn Johnston have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 288. THE NOVEMBER 26, 2004 ATTACK - EASTERN SIDE OF FALLUJAH

### A. PLAINTIFFS THE ROBERT LOUIS DUNHAM FAMILY

3181. Plaintiff Robert Louis Dunham is a citizen of the United States and domiciled in the State of North Carolina.

3182. On November 26, 2004, Robert Louis Dunham, age 29, was serving in the U.S. military on the Eastern side of Fallujah, Iraq.

3183. Mr. Robert Louis Dunham was halfway to Camp Owen; Robert Louis Dunham's unit came under fire from insurgents with mortars being fired from a tube. There were so many casualties that Mr. Dunham began treating the wounded, unaware that he

himself was injured and bleeding from the head.

3184. The weapon used to attack and injure Mr. Robert Louis Dunham was an Iranian manufactured/supplied Rocket Mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3185. As a result of the attack, Robert Louis Dunham sustained significant injuries. The percussive nature of the mortar blast caused Mr. Dunham's eardrum to rupture and he struck his head, causing hearing injuries, and a traumatic brain injury (TBI). Mr. Dunham has subsequently been diagnosed with PTSD, depression and anxiety as a result of the trauma experienced.

3186. Robert Louis Dunham received extensive medical treatment beginning at Womack Army Medical Center in Fort Bragg, North Carolina in 2005 where he was diagnosed with a ruptured ear drum, tinnitus and traumatic brain injury (TBI). In January 2010, following a suicide attempt, Mr. Dunham began receiving treatment for his PTSD and depression at the Durham Veterans Administration Medical Center. He transferred his care back Womack in 2015, where he continues to receive treatment for his TBI, hearing loss, tinnitus, and mental injuries.

3187. As a result of the November 26, 2004 Terrorist Attack, and the injuries he suffered, Robert Louis Dunham has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3188. Plaintiff Michelle Dunham is a citizen of the United States and domiciled in the State of North Carolina. She is the spouse of Robert Louis Dunham.

3189. As a result of the November 26, 2004 Terrorist Attack, and the injuries suffered

by Robert Louis Dunham, Plaintiff's Michelle Dunham have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

3190. Mr. Robert Louis Dunham was also injured in the November 10, 2004 Car Bomb attack in North/Central Fallujah, Iraq.

## 289. THE NOVEMBER 23, 2004 ATTACK – ABU GHRAIB

### A. PLAINTIFFS THE JOHN PARCELL FAMILY

3191. Plaintiff John Parcell is a citizen of the United States and domiciled in the State of Pennsylvania.

3192. On November 23, 2004, John Parcell, age 42, was serving in the U.S. military in Iraq.

3193. Mr. Parcell was on a reconnaissance mission near Abu Ghraib, when an IED that was buried in the median of the road was detonated on Mr. Parcell's Humvee. The blast knocked Mr. Parcell from the gunner's turret.

3194. The weapon used to attack and injure Mr. Parcell was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3195. As a result of the attack, Mr. Parcell, sustained significant injuries including TBI, bilateral hearing loss, PTSD, anxiety, and depression. He continues to receive ongoing medical care and treatment.

3196. Mr. Parcell received extensive medical treatment at Abu Ghraib and later underwent medical and psychological treatment at: Wilkes-Barre VA Medical Center, Wilkes-Barre, PA; Alley Medical Center, Berwick, PA; and Johnstown PA VA Outpatient

clinic, Johnstown, PA.

3197. As a result of the November 23, 2004 Terrorist Attack, and the injuries he suffered, John Parcell has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3198. Plaintiff Kyla Parcell is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the daughter of John Parcell.

3199. As a result of the November 23, 2004 Terrorist Attack, and the injuries suffered by John Parcell, Plaintiff, Kyla Parcell has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 290. THE NOVEMBER 23, 2004 ATTACK - AVGHANI

#### A. PLAINTIFF RUSSELL BALDWIN

3200. Plaintiff Russell Baldwin is a citizen of the United States and domiciled in the State of California.

3201. On November 23, 2004, Russell Baldwin, age 21, was serving in the U.S. military in Iraq.

3202. Mr. Baldwin was on patrol with his unit outside of Avghani when his unit was dispatched to secure a military police station that came under attack.

3203. The weapons used to attack and injure Mr. Baldwin were Iranian manufactured/supplied RPGs and small arms, including sniper fire, all provided and trained by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3204. As a result of the attack, Russell Baldwin developed severe PTSD, anxiety and depression.

3205. Russell Baldwin has received, and continues to receive, extensive medical treatment for his significant mental and emotional damages.

3206. As a result of the November 23, 2004 Terrorist Attack, and the injuries he suffered, Russell Baldwin has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 291. THE NOVEMBER 13, 2004 ATTACK - FALLUJAH

### A. PLAINTIFFS THE JOSE VELEZ FAMILY

3207. Plaintiff Jose Velez was a citizen of the United States and domiciled in the State of Texas at the time of his death.

3208. On November 13, 2004, Jose Velez, age 23, was serving in the U.S. military in Iraq.

3209. Mr. Velez was on assignment with his unit in Fallujah, during the second battle of Fallujah, when he was shot and killed by small arms fire.

3210. The weapons used to attack and injure Mr. Velez were Iranian manufactured/supplied small arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3211. As a result of the attack, Jose Velez was killed.

3212. As a result of the November 13, 2004 Terrorist Attack, the injuries he suffered and his untimely death, the Estate of Mr. Velez has suffered damage in the form of his mental and emotional pain and suffering prior to his death and loss of future income and earnings.

3213. Plaintiff Monica Velez is a citizen of the United States and domiciled in the State of Texas. She is the sister of the deceased, Jose Velez.

3214. Plaintiff Monica Velez brings an action individually, and on behalf of the Estate

of Jose Velez, and all heirs thereof, as its legal representative.

3215. As a result of the November 13, 2004 Terrorist Attack, and the injuries suffered by and the death of Jose Velez, Plaintiff Monica Velez has severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Jose Velez's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Jose Velez.

## 292. THE NOVEMBER 13, 2004 ATTACK - FALLUJAH

### A. PLAINTIFFS THE STANLEY GOODIN, III FAMILY

3216. Plaintiff Stanley Goodin, III is a citizen of the United States and domiciled in the State of Texas.

3217. On November 13, 2004, Stanley Goodin, III, age 23, was serving in the U.S. military in Iraq.

3218. Mr. Goodin was on foot patrol with his unit in Fallujah when they were attacked with sniper fire, small arms fire, rockets and grenades.

3219. The weapons used to attack and injure Mr. Goodin were Iranian manufactured/supplied small arms weapons, sniper weapons and grenades provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3220. As a result of the attack, Stanley Goodin, III, suffered injuries that include, but are not limited to, a back injury, knee injury, shrapnel wounds to his legs, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

3221. Stanley Goodin, III, received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

3222. As a result of the November 13, 2004 Terrorist Attack, and the injuries he

suffered, Stanley Goodin, III, has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3223. Plaintiff J.G., a minor, represented by his legal guardians Stanley Goodin, III, is a citizen of the United States and domiciled in the State of Texas. He is the son of Stanley Goodin, III.

3224. As a result of the November 13, 2004 Terrorist Attack, and the injuries suffered by Stanley Goodin, III, Plaintiff J.G. has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 293. THE NOVEMBER 11, 2004 ATTACK – HAWIJUH

### A. PLAINTIFFS THE LUTHER BROWN FAMILY

3225. Plaintiff Luther Brown is a citizen of the United States and domiciled in the State of South Carolina.

3226. On November 11, 2004, Luther Brown, age 22, was serving in the U.S. military in Iraq.

3227. Mr. Brown was a passenger in a HMMWV in a three vehicle convoy. The convoy was ambushed in a complex attack involving small arms and RPGs, destroying the vehicle.

3228. The weapons used to attack and injure Mr. Brown were Iranian manufactured/supplied RPGs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3229. As a result of the attack, Mr. Brown suffers from TBI and PTSD.

3230. Luther Brown received extensive medical treatment at William Jennings Bryan

Dorn Veterans Affairs Medical Center, and the VA Florence Clinic.

3231. As a result of the November 11, 2004 Terrorist Attack, and the injuries he suffered, Luther Brown has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3232. Plaintiff Arthur Lee Brown is a citizen of the United States and is domiciled in the state of South Carolina. He is the father of Luther Brown.

3233. Plaintiff Linda Faye Brown is a citizen of the United States and is domiciled in the state of South Carolina. She is the Mother of Luther Brown.

3234. Plaintiff Akeisha Ann McFadden is a citizen of the United States and is domiciled in the state of North Carolina. She is the sister of Luther Brown.

3235. Plaintiff Matthew Laydell Brown is a citizen of the United States and is domiciled in the state of North Carolina. He is the brother of Luther Brown.

3236. Plaintiff Aundrea Brown is a citizen of the United States and is domiciled in the state of North Carolina. He is the brother of Luther Brown.

3237. As a result of the November 11, 2004 Terrorist Attack, and the injuries suffered by Luther Brown, Plaintiffs, Arthur Lee Brown, Linda Faye Brown, Akeisha Ann McFadden, Matthew Laydell Brown, and Aundrea Brown have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 294. THE NOVEMBER 10, 2004 ATTACK - FALLUJAH

### A. PLAINTIFFS THE MARTIN GONZALEZ FAMILY

3238. Plaintiff Martin Gonzalez is a citizen of the United States and domiciled in the State of Texas.

3239. November 10, 2004, Martin Gonzalez, age 24, was serving in the U.S. military in Iraq.

3240. Mr. Gonzalez was on patrol when his unit came under small arms fire and a grenade attack. Mr. Gonzales took shrapnel to his right hand that was removed so he could continue to fight. In addition to the physical injuries, this event led Mr. Gonzales to suffer significant emotional injuries, including profound PTSD.

3241. The weapons used to attack and injure Mr. Gonzalez were Iranian manufactured/supplied small arms, RPGs, and grenades provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3242. As a result of the attack, Mr. Gonzalez suffered significant nerve and bone damage to his right arm, severe depression, PTSD and anxiety.

3243. Martin Gonzalez received extensive medical treatment both on the scene of the attack and in hospitals afterward including surgeries to repair his hand, wound care for infections and significant treatment for his emotional injuries.

3244. As a result of the November 10, 2004 Terrorist Attack, and the injuries he suffered, Martin Gonzalez has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3245. Plaintiff Tomas R. Gonzalez is a citizen of the United States and domiciled in the State of Texas. He is the father of Martin Gonzalez.

3246. Plaintiff Betty Gonzalez is a citizen of the United States and domiciled in the State of Texas. She is the mother of Martin Gonzalez.

3247. As a result of the November 10, 2004 Terrorist Attack, and the injuries suffered

by Martin Gonzalez, Tomas R. Gonzalez and Betty Gonzalez have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 295. THE NOVEMBER 10, 2004 ATTACK - NORTH CENTRAL FALLUJAH

### A. PLAINTIFFS THE ROBERT LOUIS DUNHAM FAMILY

3248. Plaintiff Robert Louis Dunham is a citizen of the United States and domiciled in the State of North Carolina.

3249. On November 10, 2004, Robert Louis Dunham, age 29, was serving in the U.S. military in North Central Fallujah, IRAQ.

3250. Mr. Robert Louis Dunham was stationed in the North Central area of Fallujah, off Route Tampa, and was sitting outside with his unit when approached by a car bomb that exploded. The car laden with explosives detonated, leaching chemicals into the air causing sinus injuries.

3251. The weapon used to attack and injure Mr. Robert Louis Dunham was an Iranian manufactured/supplied car bomb provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3252. As a result of the attack, Robert Louis Dunham sustained significant injuries. The release of the chemicals from the car explosion caused sinus injuries and migraine headaches. Mr. Dunham has subsequently been diagnosed with PTSD, depression and anxiety as a result of the trauma experienced.

3253. Robert Louis Dunham received extensive medical treatment care beginning at Womack Army Medical Center in Fort Bragg, North Carolina in 2005 where he was

diagnosed with a ruptured ear drum, tinnitus and traumatic brain injury (TBI). In January 2010, following a suicide attempt, Mr. Dunham began receiving treatment for his PTSD and depression at the Durham Veterans Administration Medical Center. He transferred his care back Womack in 2015 where he continues to receive his medical care.

3254. As a result of the November 10, 2004 Terrorist Attack, and the injuries he suffered, Robert Louis Dunham has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3255. Plaintiff Michelle Dunham is a citizen of the United States and domiciled in the State of NORTH CAROLINA. She is the spouse of Robert Louis Dunham.

3256. As a result of the November 10, 2004 Terrorist Attack, and the injuries suffered by Robert Louis Dunham, Plaintiff Michelle Dunham has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

3257. Mr. Robert Louis Dunham was also injured in the November 10, 2004 Rocket Mortar attack in Eastern ***Side of Fallujah, Iraq.***

**296. THE AUGUST 22, 2004 ATTACK – AL KARMA**

**A. PLAINTIFF JAMES H. SPERRY**

3258. Plaintiff James H. Sperry is a citizen of the United States and domiciled in the State of Illinois.

3259. On August 22, 2004, James H. Sperry, age 19, was serving in the U.S. military in Iraq.

3260. Mr. Sperry was in the gunner position in his Humvee on patrol with is unit when

a series of IEDs detonated around them. He was thrown from the turret and took shrapnel in his arms and legs.

3261. The weapons used to attack and injure Mr. Sperry were Iranian manufactured/supplied IEDs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3262. As a result of the attack, James H. Sperry suffered serious physical and mental injuries including arm and leg injuries, and PTSD.

3263. James H. Sperry received, and continues to receive, extensive medical treatment including surgery to remove shrapnel and ongoing significant issued related to PTSD.

3264. As a result of the August 22, 2004 Terrorist Attacks, and the injuries he suffered, James H. Sperry has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 297. THE NOVEMBER 9, 2004 ATTACK – FALLUJAH

### A. PLAINTIFF JAMES H. SPERRY

3265. Plaintiff James H. Sperry is a citizen of the United States and domiciled in the State of Illinois.

3266. On November 9, 2004, James H. Sperry, age 19, was serving in the U.S. military in Iraq.

3267. Mr. Sperry was on patrol with his unit when they began to take on small arms fire. An RPG struck the building against which he was laying, causing his Kevlar helmet to break and him to sustain serious shrapnel wounds to his head and face as well as a broken sternum, three broken ribs, serious back injuries, and a TBI.

3268. The weapons used to attack and injure Mr. Sperry were Iranian manufactured/supplied small arms fire and RPGs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3269. As a result of the attack, James H. Sperry suffered the serious physical and mental injuries including face and head injuries, broken sternum and ribs, back injuries, traumatic brain injury, and PTSD.

3270. James H. Sperry was medevac'd from the scene to Balad for his immediate injuries. He received, and continues to receive, extensive medical treatment including surgery to remove shrapnel and ongoing significant issued related to PTSD and TBI.

3271. As a result of the November 9, 2004 Terrorist Attacks, and the injuries he suffered, James H. Sperry has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 298. THE NOVEMBER 2004 ATTACK - HABBANIYAH

### A. PLAINTIFF JAMES MICHAEL HURST

3272. Plaintiff James Michael Hurst is a citizen of the United States and domiciled in the State of South Carolina.

3273. On or about November 5, 2004, Mr. James Michael Hurst, age 28, was serving in the U.S. military in Iraq.

3274. On the dates between November 5, 2004 and November 10, 2004, Mr. Hurst's unit was on a mission called "movement to contact". Their goal was to locate IED's. During this time, several IED's were set off. One particular IED explosion was about 10 feet away from Mr. Hurst while his vehicle was stopped. Mr. Hurst had opened the driver hatch to get

some air when he saw a tree explode next to him. Mr. Hurst had severe ringing in his ears. Their vehicles were taken back to ROB Ramadi for inspection and then were sent on a three-day mission

3275. The weapons used to attack and injure Mr. Hurst were IEDs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3276. As a result of the November 2004 Terrorist Attack, Mr. Hurst sustained significant injuries. Mr. Hurst was diagnosed with a TBI and tinnitus in 2005. He cannot hear from his right ear when background noise is present. Due to the TBI, Mr. Hurst suffers from headaches which he receives Botox treatments to help control as well as pain medication.

3277. Mr. James Michael Hurst continues to receive treatment at the Wm. Jennings Bryan Dorm VA Medical Center.

3278. As a result of the November 2004 Terrorist Attack, and the injuries he suffered, Mr. Hurst has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 299. THE NOVEMBER 2004 ATTACK - FALLUJAH

### A. PLAINTIFF BRIAN MICHAEL HAYDEN

3279. Plaintiff Brian Michael Hayden is a citizen of the United States and domiciled in the State of Mississippi.

3280. In November 2004, Brian Michael Hayden, age 24, was serving in the U.S. military in Iraq.

3281. Mr. Hayden's unit was concluding a sweep of a known insurgent safe house. Mr. Hayden was at the front of the building reporting to his commanding officer that he had discovered the insurgents were building IED's in the safe house. At this time, an RPG hit the

building directly behind Mr. Hayden and he was thrown into the air and back about 3-4 feet. He landed face down on the concrete. Mr. Hayden was knocked unconscious. He came to, in a state of confusion with a severe headache, when a medic was removing a piece of shrapnel that was lodged in his back.

3282. The weapon used to attack and injure Mr. Hayden was an Iranian manufactured/supplied RPG provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3283. As a result of the November 2004 Terrorist Attack, Mr. Hayden sustained significant injuries. Mr. Hayden had shrapnel wounds to his back, eye, arms and legs. He was diagnosed with a traumatic brain injury that has caused constant headaches and migraines. Mr. Hayden suffers from PTSD as well as nightmares and anxiety attacks.

3284. Mr. Hayden received treatment at the VA Medical Center Long Beach upon his return to the United States. This medical treatment included: removal of shrapnel from his back, arms, and legs, surgery to remove shrapnel from his eye, continued treatment for arm pain, treatment for migraine headaches, periodic blackouts, psychiatric treatment for PTSD and anxiety and neurological examinations for blurred vision.

3285. As a result of the November 2004 Terrorist Attack, and the injuries he suffered, Mr. Hayden has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 300. THE NOVEMBER 1, 2004 ATTACK – CAMP VICTORY, SOUTHWEST OF BAGHDAD

#### A. PLAINTIFF BRADLEY CHRISTIAN TANDE, JR.

3286. Plaintiff Bradley Christian Tande, Jr. is a citizen of the United States and

domiciled in the State of California.

3287. On November 1, 2004, Mr. Bradley Christian Tande, Jr., age 32, was serving in the U.S. military in Iraq.

3288. During November 2004, Camp Victory was the target of several 122 mm rocket attacks. On November 1, 2004 at approximately 8:00 am, one of the 122 mm rockets struck Bradley Christian Tande's trailer where he slept, blowing it up. Although Mr. Tande escaped without any serious physical injuries, the attack caused him extreme anxiety and PTSD.

3289. The weapons used to attack and injure Mr. Tande were Iranian manufactured/supplied 122 mm rockets provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3290. As a result of the attack, Bradley Christian Tande, Jr. suffered, and continues to suffer, PTSD, anxiety, insomnia and depression.

3291. Bradley Christian Tande, Jr. received medical care, medication and counseling for his injuries.

3292. As a result of the November 1, 2004 Terrorist Attack, and the injuries he suffered, Mr. Bradley Christian Tande, Jr. has past and future noneconomic damages, including severe pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 301. THE NOVEMBER 11, 2004 ATTACK - FALLUJAH

#### A. PLAINTIFF RAY LEONARD LOPEZ

3293. Plaintiff Ray Leonard Lopez is a citizen of the United States and domiciled in the State of Texas.

3294. On November 11, 2004, Ray Leonard Lopez, age 21, was serving in the U.S. military in Iraq.

3295. Mr. Lopez was with his unit clearing houses in Fallujah when they came under attack from machine gun fire. Ray Leonard Lopez was shot.

3296. The weapons used to attack and injure Mr. Lopez were Iranian manufactured/supplied machine guns provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3297. As a result of the attack, Ray Leonard Lopez suffered significant physical injuries, including shrapnel to his leg, tinnitus, gunshot wound to the chest, TBI and other serious mental and physical injuries.

3298. Ray Leonard Lopez received, and continues to receive, extensive medical treatment for his physical and emotional injuries. Mr. Lopez was treated at the scene and was hospitalized for weeks with surgeries and multiple invasive follow-up procedures due to the severity of the wounds he sustained after the attack. Mr. Lopez has also received and continues to receive significant treatment for mental emotional damages sustained in the attack, including severe depression, PSTD, and TBI.

3299. As a result of the November 11, 2004 Terrorist Attack, and the injuries he suffered, Ray Leonard Lopez has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 302. THE OCTOBER 11, 2004 ATTACK- FALLUJAH

### A. PLAINTIFF RAY LEONARD LOPEZ

3300. Plaintiff Ray Leonard Lopez is a citizen of the United States and domiciled in the State of Texas.

3301. On October 11, 2004, Ray Leonard Lopez, age 21, was serving in the U.S. military in Iraq.

3302. Mr. Lopez was in Fallujah when his unit came under attack with mortar fire

3303. The weapons used to attack and injure Mr. Lopez were Iranian manufactured/supplied mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3304. As a result of the attack, Ray Leonard Lopez suffered significant physical injuries, including shrapnel to his leg, tinnitus, TBI and other serious mental and physical injuries.

3305. Ray Leonard Lopez received, and continues to receive, extensive medical treatment for his physical and emotional injuries. Mr. Lopez was treated at the scene for and was hospitalized. Mr. Lopez has also received and continues to receive significant treatment for mental emotional damages sustained in the attack, including severe depression, PSTD, and a TBI.

3306. As a result of the October 11, 2004 Terrorist Attack, and the injuries he suffered, Ray Leonard Lopez has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 303. THE JULY 15, 2005 ATTACK – BAGHDAD

### A. PLAINTIFF JOHN WILLIAM FUHRMAN

3307. Plaintiff John William Fuhrman is a citizen of the United States and domiciled in the State of Washington.

3308. On July 15, 2005, John William Fuhrman, age 42, was serving in the U.S. military in Iraq.

3309. Mr. Fuhrman was at FOB Falcon waiting for housing assignments when the

base came under mortar attack with rounds landing 50-60 feet away knocking him over and slamming his head into the ground.

3310. The weapon used to attack and injure Mr. Fuhrman were Iranian manufactured/supplied mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3311. As a result of the July 15, 2005 Terrorist Attack, John William Fuhrman suffered a TBI and PTSD.

3312. John William Fuhrman received extensive medical treatment at VA Puget Sound Health Care System, Seattle, WA.

3313. As a result of the July 15, 2005 Terrorist Attack, and the injuries he suffered, John William Fuhrman has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 304. THE OCTOBER 11, 2004 ATTACK – FOB RAMADI, AL ANBAR

#### A. PLAINTIFF JOSEPH CHRISTOPHER FERRARO

3314. Plaintiff Joseph Christopher Ferraro is a citizen of the United States and domiciled in the State of New Jersey.

3315. On October 11, 2004, Mr. Ferraro, age 22, was serving in the U.S. military in Iraq.

3316. Mr. Ferraro was at FOB Ramadi when the base came under attack, including by rockets and mortars.

3317. The weapons used to attack and injure Mr. Ferraro were Iranian manufactured/supplied rockets and mortars provided by Iran and/or its agents to Iranian-

funded and Iranian-trained terror operatives in Iraq.

3318. As a result of the attack, Joseph Christopher Ferraro now suffers from PTSD.

3319. Joseph Christopher Ferraro received and continues to receive medical treatment for his PTSD.

3320. As a result of the October 11, 2004 Terrorist Attack, and the injuries he suffered, Joseph Christopher Ferraro has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 305. THE SEPTEMBER 30, 2004 ATTACK – BAGHDAD

#### A. PLAINTIFFS THE TYRON KIM FAMILY

3321. Plaintiff Tyron Kim is a permanent resident of the United States, and at the time of the attack was a member of the United States armed forces. As a part of his commitment to becoming a member of the United States Armed Forces, Tyron Kim was required to take an oath to defend and uphold the Constitution of the United States, and swears permanent allegiance to the United States. He is domiciled in the State of Texas.

3322. On September 30, 2004, Tyron Kim, age 22, was serving in the U.S. military in Iraq.

3323. Mr. Kim was asleep in his quarters at Camp Victory when he was attacked with an Iranian rocket.

3324. The weapon used to attack and injure Mr. Kim was an Iranian manufactured/supplied rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3325. As a result of the attack, Tyron Kim suffered concussive blast injuries and PTSD.

3326. Tyron Kim received extensive medical and psychological treatment at William Beaumont Army Medical Center, El Paso VA Medical Center, and El Paso Behavioral Health System.

3327. As a result of the September 30, 2004 Terrorist Attack, and the injuries he suffered, Tyron Kim has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3328. Plaintiff Tabitha Tvonne Hudson is a citizen of the United States and is domiciled in the state of Georgia. She is the sister of Tyron Kim.

3329. Plaintiff Anthony Antonio Hudson is a citizen of the United States and is domiciled in the state of Virginia. He is the brother of Tyron Kim.

3330. As a result of the September 30, 2004 Terrorist Attack, and the injuries suffered by Tyron Kim, Plaintiffs, Tabitha Tvonne Hudson and Anthony Antonio Hudson have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 306. THE SEPTEMBER 30, 2004 ATTACK – MOSUL

### A. PLAINTIFFS THE CHRISTOPHER ROBERT GALKA FAMILY

3331. Plaintiff Christopher Robert Galka is a citizen of the United States and domiciled in the State of Wisconsin.

3332. On September 30, 2004, Christopher Robert Galka, age 28, was serving in the U.S. military in Iraq.

3333. Mr. Galka was performing his duties as an infantry sniper while he was out on

patrol in a Stryker with a convoy in Mosul, Iraq. Mr. Galka and his fellow servicemen were at the traffic circle in Mosul, heading towards their forward operating base, which was a few miles away, when a vehicle pulled up next to them and began shooting at them. Mr. Galka was shot on the side of his helmet and was knocked down. Shortly afterwards, an improvised explosive device exploded nearby. Mr. Galka and his fellow servicemen returned fire and more explosions ensued. Mr. Galka was injured as a result of the attack and suffered shrapnel injuries to his leg.

3334. The weapon used to attack and injure Mr. Galka was an Iranian manufactured/supplied improvised explosive device provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3335. As a result of the attack, Christopher Robert Galka sustained significant injuries, including a traumatic brain injury, shrapnel in his leg, post-traumatic stress disorder, and insomnia.

3336. Christopher Robert Galka received extensive medical treatment at Madigan Army Hospital, Adam Benjamin VA Clinic, Jesse Brown VA Hospital, Methodist Hospital, St. Mary's Hospital, Porter Memorial Hospital, and Westfield Hospital where he continues to be treated.

3337. As a result of the September 30, 2004 Terrorist Attack, and the injuries he suffered, Christopher Robert Galka has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3338. Plaintiff Maria Galka is a citizen of the United States and domiciled in the State

of Indiana. She is the mother of Christopher Robert Galka.

3339. Plaintiff Mark Galka is a citizen of the United States and domiciled in the State of Indiana. He is the father of Christopher Robert Galka.

3340. Plaintiff Carrie Kietzman is a citizen of the United States and domiciled in the State of Indiana. She is the sister of Christopher Robert Galka.

3341. Plaintiff K.Z.G., a minor, represented by her legal guardian Christopher Robert Galka, is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Christopher Robert Galka.

3342. As a result of the September 30, 2004 Terrorist Attack, and the injuries suffered by Christopher Robert Galka, Plaintiffs Maria Galka, Mark Galka, Carrie Kietzman, and K.Z.G. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 307. THE SEPTEMBER 19, 2004 ATTACK – BAGHDAD

#### A. PLAINTIFF ROBERT DIXON

3343. Plaintiff Robert Dixon is a citizen of the United States and domiciled in the State of Iowa.

3344. On September 19, 2004, Robert Dixon, age 23, was serving in the U.S. military in Iraq.

3345. Mr. Dixon was on patrol in the Sheik Maroof neighborhood of Baghdad when he was attacked by terrorists with grenades.

3346. The weapons used to attack and injure Mr. Dixon were Iranian manufactured/supplied grenades provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3347. As a result of the attack, Robert Dixon suffered shrapnel wounds to his knee and PTSD.

3348. Robert Dixon received extensive medical and psychological treatment at Carl R. Darnall Army Medical Center, Ft. Hood TX; Wood Family Medicine, Wheeling, WV; Pittsburgh Healthcare System; Belmont VA Clinic; Louis Stokes Cleveland VA Medical Center; and Chalmers P. Willie VA Clinic.

3349. As a result of the September 19, 2004 Terrorist Attack, and the injuries he suffered, Robert Dixon has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 308. THE SEPTEMBER 13, 2004 ATTACK – CAMP SATHER, BAGHDAD AIRPORT

#### A. PLAINTIFF ROBERT PAUL POTTS, III

3350. Plaintiff Robert Paul Potts, III is a citizen of the United States and is domiciled in the State of Arizona.

3351. On September 13, 2004, Robert Paul Potts, III, age 23, was serving in the U.S. military in Iraq.

3352. Around 8:00 a.m. on September 13, 2004, Robert Paul Potts, III was at Camp Sather at the Baghdad International Airport when he was attacked by rockets, small arms fire and a mortar fell close to Mr. Potts, hitting one of his team. Mr. Potts held the airman as he passed away from his injuries.

3353. The weapons used to attack and injure Robert Paul Potts, III were Iranian manufactured/supplied rockets, small arms and mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3354. As a result of the September 13, 2004 Terrorist Attack, Robert Paul Potts, III sustained significant injuries. Mr. Potts has been diagnosed with PTSD.

3355. Mr. Potts began seeking treatment for his PTSD upon his return to the United States as early as December 2006 at Lackland Airforce Base in San Antonio, Texas. In April 2007, Mr. Potts required inpatient psychiatric care for his PTSD, which was carried out at Lackland as well. In 2009, he again sought PTSD treatment at the Methodist Hospital and University of Texas at San Antonio Mental Health Crisis Center, both in San Antonio, Texas. From 2009 through 2011, Mr. Potts care was transferred to two facilities: San Antonio Veterans Administration Hospital and the Frank Tejada Veterans Administration Clinic, both under the care of Dr. Rodriguez. In 2011, Mr. Potts moved to Phoenix, Arizona, and his care was moved to the Phoenix VA hospital, where he continued to seek treatment until 2016. From April 2017 through the present, Mr. Potts has been seeking treatment from Dr. Dawn Bird at Integrative Psychotherapy and Assessment Services. In this same time frame, he also is being treated by Dr. Groux at the Neighborhood Health Care facility in Phoenix, Arizona.

3356. As a result of the September 13, 2004 Terrorist Attack, and the injuries he suffered, Robert Paul Potts, III has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 309. THE SEPTEMBER 13, 2004 ATTACK – NORTHERN MOSUL

### A. PLAINTIFF JAMIE L. FRAZIER

3357. Plaintiff Jamie L Frazier is a citizen of the United States and domiciled in the State of Oregon.

3358. On September 13, 2004, Jamie L. Frazier, age 22, was serving in the U.S. military in Iraq.

3359. Mr. Frazier in a convoy with his unit in Northern Mosul near Foxtrot Fill Point when his vehicle was struck by an IED.

3360. The weapon used to attack and injure Mr. Frazier was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3361. As a result of the attack, Jamie L. Frazier suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), a back injury, shrapnel wounds to the left side of his face, neck, left arm and left arm pit, Post-Traumatic Stress Disorder ("PTSD"), anxiety and depression.

3362. Jamie L. Frazier received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

3363. As a result of the September 13, 2004 Terrorist Attack, and the injuries he suffered, Jamie L. Frazier has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 310. THE SEPTEMBER 12, 2004 ATTACK – CAMP CROPPER

### A. PLAINTIFFS THE MARCO A. VILLEGAS FAMILY

3364. Plaintiff Marco A. Villegas is a citizen of the United States and domiciled in the State of Georgia.

3365. On September 12, 2004, Marco A. Villegas, age 33, was serving in the U.S. military in Iraq.

3366. Mr. Villegas was on the grounds of Camp Cropper in Baghdad when it was attacked by an anti-aircraft rocket.

3367. The weapon used to attack and injure Mr. Villegas was an Iranian manufactured/supplied anti-aircraft rocket provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3368. As a result of the attack, Marco A. Villegas suffered injuries that include, but are not limited to, left ankle fracture, permanent nerve damage, TBI, and PTSD.

3369. Marco A. Villegas received extensive medical treatment at Baghdad International Airport, Landstuhl Regional Medical Center, Darnall Army Medical Center, Birmingham VA Medical Center, Tuskegee VA Medical Center, Syracuse VA Medical Center, and Charlie Norwood VA Medical Center.

3370. As a result of the September 12, 2004 Terrorist Attack, and the injuries he suffered, Marco A. Villegas has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3371. Plaintiff, Chase Villegas is a citizen of the United States and domiciled in the State of Texas. He is the son of Marco A. Villegas.

3372. Plaintiff H.A.V., a minor, represented by her legal guardians Marco A. Villegas, is a citizen of the United States and domiciled in the State of Georgia. She is the daughter of Marco A. Villegas.

3373. Plaintiff H.S.V., a minor, represented by her legal guardians Marco A. Villegas, is a citizen of the United States and domiciled in the State of Georgia. She is the daughter of Marco A. Villegas.

3374. As a result of the September 12, 2004 Terrorist Attack, and the injuries suffered by Marco A. Villegas, Plaintiff Chase Villegas, H.S.V., and H.A.V. have past and future

noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 311. THE SEPTEMBER 5, 2004 ATTACK – TAL AFAR

#### A. PLAINTIFFS THE ERIK ERNST SANDSTROM FAMILY

3375. Plaintiff Erik Ernst Sandstrom is a citizen of the United States and domiciled in the State of Washington.

3376. On September 5, 2004, Erik Ernst Sandstrom, age 30, was serving in the U.S. military in Iraq.

3377. Mr. Sandstrom was in a vehicle headed away from his base approximately 5 miles east of Tal Afar, Iraq when his vehicle came under attack by RPGs, mortar explosions, and small arms. Shortly after, an IED exploded near him.

3378. The weapon used to attack and injure Mr. Sandstrom was an Iranian-manufactured/supplied improvised IED by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3379. As a result of the attack, Mr. Sandstrom suffered shrapnel injuries to his face, neck, right hand, left arm, left shoulder, and back. He also suffers from PTSD.

3380. Erik Ernst Sandstrom received extensive medical treatment; he has had multiple life-saving surgeries for his shrapnel injuries and has had counseling for PTSD.

3381. As a result of the September 5, 2004 Terrorist Attack, and the injuries he suffered, Erik Ernst Sandstrom has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3382. Plaintiff J.M.S., a minor, represented by his legal guardian Erik Ernst

Sandstrom, is a citizen of the United States and is domiciled in the state of Washington. He is the son of Erik Ernst Sandstrom.

3383. As a result of the September 5, 2004 Terrorist Attack, and the injuries suffered by Erik Ernst Sandstrom, Plaintiff J.M.S has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 312. THE AUGUST 17, 2004 ATTACK – BAQUBAH

#### A. PLAINTIFFS THE EDWARD PULIDO FAMILY

3384. Plaintiff Edward Pulido is a citizen of the United States and domiciled in the State of Oklahoma.

3385. On August 17, 2004, Edward Pulido, age 36, was serving in the U.S. military in Iraq.

3386. Mr. Pulido was driving a Nissan Patrol thick skin SUV and was the third vehicle in a convoy of five vehicles traveling in Baqubah, Iraq when he ran over an IED that exploded causing extensive damage to the SUV and the occupants including Mr. Pulido and his commander Colonel Kenneth Stone.

3387. The weapon used to attack and injure Edward Pulido on August 17, 2004 was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3388. As a result of the August 17, 2004 Terrorist Attack, Edward Pulido, sustained significant injuries including injuries to his lower extremities, resulting in eventual above the knee amputation of his left leg, shrapnel wounds to both legs, broken knee, burns to the left side of his body, left arm wound, concussion blast to his head, internal bleeding, blood loss, broken teeth, broken pelvis, hip injuries, wounds to the genital area, and shrapnel wounds to

both legs, TBI, PTSD, anxiety, and hypervigilance.

3389. Mr. Pulido was medevac'd to the 31st Combat Support Hospital in Baghdad where he underwent extensive treatment to save his life and his limbs. Mr. Pulido received additional medical treatment at Landstuhl Regional Medical Center in Landstuhl, Germany; Walter Reed Army Medical Center in Bethesda, Maryland; and Brooke Army Medical Center, in San Antonio, Texas. He has continued to receive ongoing medical and psychological treatment for his injuries.

3390. As a result of the August 17, 2004 Terrorist Attack, and the injuries he suffered, Edward Pulido has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3391. Plaintiff, Karen Pulido, is a citizen of the United States, and is domiciled in the state of Oklahoma. She is the wife of Edward Pulido

3392. Plaintiff, K.P., a minor child, is a citizen of the United States and is domiciled in the state of Oklahoma. She is the daughter of Edward Pulido

3393. Plaintiff, Manuel Pulido, is a citizen of the United States and is domiciled in the state of Florida. He is the father of Edward Pulido

3394. Plaintiff, Angelita Pulido Rivera, is a citizen of the United States and is domiciled in the state of Florida. She is the mother of Edward Pulido.

3395. Plaintiff, Manuel "Mannie" Pulido, is a citizen of the United States and is domiciled in the state of Florida. He is the brother of Edward Pulido

3396. Plaintiff, Yadira Holmes, is a citizen of the United States and is domiciled in the state of Florida. She is the sister of Edward Pulido.

3397. As a result of the August 17, 2004 Terrorist Attack, and the injuries suffered by Edward Pulido, Plaintiffs, Karen Pulido, K.P., a minor child, Manuel Pulido, Angelita Pulido Rivera, Manuel "Mannie" Pulido, and Yadira Holmes, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 313. THE AUGUST 1, 2004 ATTACK – BALAD

#### A. PLAINTIFFS THE ARMANDO HERNANDEZ FAMILY

3398. Plaintiff Armando Hernandez was a citizen of the United States and domiciled in the State of California at the time of his death.

3399. On August 1, 2004, Armando Hernandez, age 44, was serving in the U.S. military in Iraq.

3400. Mr. Hernandez was on patrol with his unit outside of Balad, Iraq when an IED exploded near his guard post.

3401. The weapon used to attack and kill Mr. Hernandez was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3402. As a result of the attack, Mr. Hernandez suffered mortal injuries, eventually passing away after attempts to save his life at the scene and at military medical facilities failed.

3403. Mr. Hernandez was treated at the scene and at military medical facilities but passed away within several days of the attack.

3404. As a result of the August 1, 2004 Terrorist Attack, the injuries he suffered and his ultimate death, the Estate of Mr. Hernandez has suffered damages in the form of his mental and emotional pain and suffering prior to his death and loss of future income and earnings.

3405. Plaintiff Martha Hernandez is a citizen of the United States and domiciled in the State of California. She is the mother of Armando Hernandez.

3406. Plaintiff Martha Hernandez brings an action individually, and on behalf of the Estate of Armando Hernandez, and all heirs thereof, as its legal representative.

3407. Plaintiff Delia Loera is a citizen of the United States and domiciled in the State of California. She is the sister of Armando Hernandez.

3408. Plaintiff Raquel Sandoval is a citizen of the United States and domiciled in the State of California. She is the sister of Armando Hernandez.

3409. As a result of the August 1, 2004 Terrorist Attack, and the injuries suffered by and the death of Armando Hernandez, Plaintiffs Martha Hernandez, Delia Loera, and Raquel Sandoval have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Armando Hernandez's society, services, companionship, comfort, protection, instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Armando Hernandez.

## 314. THE AUGUST 2004 ATTACK - NAJAF

### A. PLAINTIFFS THE STANLEY GOODIN, III FAMILY

3410. Plaintiff Stanley Goodin, III, is a citizen of the United States and domiciled in the State of Texas.

3411. In August 2004, Stanley Goodin, III, age 23, was serving in the U.S. military in Iraq.

3412. Mr. Goodin was route clearing with his unit in Najaf when they were attacked with RPGs, mortars, grenades and small arms fire.

3413. The weapons used to attack and injure Mr. Goodin were Iranian manufactured/supplied rocket-propelled grenades ("RPG"), mortars, grenades and small arms

weapons provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3414. As a result of the attack, Stanley Goodin, III, suffered injuries that include, but are not limited to, a back injury, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

3415. Stanley Goodin, III, received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

3416. As a result of the August 2004 Terrorist Attack, and the injuries he suffered, Stanley Goodin, III, has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3417. Plaintiff J.G., a minor, represented by his legal guardians Stanley Goodin, III, is a citizen of the United States and domiciled in the State of Texas. He is the son of Stanley Goodin, III.

3418. As a result of the August 2004 Terrorist Attack, and the injuries suffered by Stanley Goodin, III, Plaintiff's J.G. has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 315. THE JULY 24, 2004 ATTACK – MAIN SUPPLY ROUTE MICHIGAN IN RAMADI

#### A. PLAINTIFFS THE JESSE J. LONGORIA FAMILY

3419. Plaintiff Jesse J. Longoria is a citizen of the United States and domiciled in the State of Texas.

3420. On July 24, 2004, Jesse J. Longoria, age 25, was serving in the U.S. military in Iraq.

3421. Mr. Longoria was in a convoy with his unit on Main Supply Route Michigan east of Ramadi when his vehicle was struck by an IED.

3422. The weapon(s) used to attack and injure Mr. Longoria was an Iranian manufactured/supplied Improvised Explosive Device and small arms weapon provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3423. As a result of the attack, Jesse J. Longoria suffered injuries that include, but are not limited to, amputation of his right arm at the elbow and to Post-Traumatic Stress Disorder ("PTSD"), anxiety, depression, social anxiety disorder, and social and occupational impairment.

3424. Jesse J. Longoria received extensive medical treatment at the scene of the attack, in Baghdad, Iraq, Landstuhl, Germany, and at various Army, Air Force, Naval and VA Medical Centers.

3425. As a result of the July 24, 2004 Terrorist Attack, and the injuries he suffered, Jesse J. Longoria has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3426. Plaintiff Ray Longoria is a citizen of the United States and domiciled in the State of Texas. He is the father of Jesse J. Longoria.

3427. Plaintiff Dolores Longoria is a citizen of the United States and domiciled in the State of Texas. She is the mother of Jesse J. Longoria.

3428. As a result of the July 24, 2004 Terrorist Attack, and the injuries suffered by

Jesse J. Longoria, Plaintiff's mother and father, Ray Longoria and Dolores Longoria, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 316. THE JULY 21, 2004 ATTACK - SAMARRA

#### A. PLAINTIFFS THE LARRY ALBERT CARR, JR. FAMILY

3429. Plaintiff Larry Albert Carr, Jr is a citizen of the United States and domiciled in the State of North Carolina.

3430. On July 21, 2004, Larry Albert Carr, Jr, age 33, was serving in the U.S. military in Samarra, Iraq.

3431. Mr. Larry Albert Carr, Jr. was performing his duties riding as the driver-side passenger in an up armored Humvee when an IED exploded into the left side of the vehicle.

3432. The weapon used to attack and injure Mr. Larry Albert Carr, Jr was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3433. As a result of the attack, Larry Albert Carr, Jr sustained significant injuries. He sustained shrapnel wounds to his face and neck, including a piece of shrapnel that remains behind his eye. He sustained injury to his eyes, causing permanent damage to his peripheral vision, and a retinal tear. His eardrum ruptured from the concussive blast. He sustained a traumatic brain injury, and continues to endure migraines. In addition to the physical injuries, due to the traumatic nature of the events he survived, Mr. Carr has been diagnosed with PTSD, depression and anxiety.

3434. Larry Albert Carr, Jr. was medevac'd from the scene of the attack to a military hospital in Balad due to the severity of his injuries. As the Balad facility was not equipped to

provide the care that Mr. Carr needed, he was transferred to an Army hospital in Baghdad for the first of his surgeries. Once stable enough, Mr. Carr was transferred to Landstuhl, Germany to continue his medical care. In late July 2004, Mr. Carr was able to return to the United States and receive another surgery to remove the shrapnel from around his eye at the Womack Army Medical Center in Fort Bragg, North Carolina. He then transferred his care for both physical and mental injuries to the Durham North Carolina Veterans Administration System, where he currently receives medical treatment.

3435. As a result of the July 21, 2004 Terrorist Attack, and the injuries he suffered, Larry Albert Carr, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3436. Plaintiff Roxy Irene Carr is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Larry Albert Carr, Jr.

3437. Plaintiff Larry Carr, Sr. is a citizen of the United States and domiciled in the State of North Carolina. He is the father of Larry Albert Carr, Jr.

3438. Plaintiff Teresa Colleen Parrish is a citizen of the United States and domiciled in the State of North Carolina. She is the sister of Larry Albert Carr, Jr.

3439. Plaintiff Christopher Carr is a citizen of the United States and domiciled in the State of North Carolina. He is the son of Larry Albert Carr, Jr.

3440. Plaintiff Hunter Carr is a citizen of the United States and domiciled in the State of North Carolina. He is the son of Larry Albert Carr, Jr.

3441. Plaintiff Alexis Carr is a citizen of the United States and domiciled in the State of Florida. She is the daughter of Larry Albert Carr, Jr

3442. As a result of the July 21, 2004 Terrorist Attack, and the injuries suffered by Larry Albert Carr, Jr., Plaintiff's children Christopher Carr, Hunter Carr, Alexis Carr, his mother Roxy Irene Carr, his father Larry Albert Carr Sr., and his sister Teresa Colleen Parrish have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 317. THE JULY 8, 2004 ATTACK – SAMARRA

### A. PLAINTIFF DARYN SWALLOW

3443. Plaintiff Daryn Swallow is a citizen of the United States and domiciled in the State of Massachusetts.

3444. On July 8, 2004, Daryn Swallow, age 20, was serving in the U.S. military.

3445. Mr. Swallow responded to an attack on Patrol Base Razor, located at the Iraqi National Guard Headquarters in Samarra after it was attacked by a Vehicle Born Improvised Explosive Device (VBIED), mortar fire, and small arms fire. The attack collapsed the building used as sleeping quarters for the US forces, killing 5 US soldiers, wounding 18 US soldiers, killing 2 Iraqi National Guard, and wounding 4 members of the Iraqi National Guard. Mr. Swallow's unit was sent to reinforce the unit under attack. They were targeted by mortar fire, RPGs, and small arms fire. Mr. Swallow was one of the first on the scene and immediately began to dig through the rubble to recover the remains of fallen soldiers and rescue the wounded. His unit spent three days digging through the rubble and fortifying the location.

3446. The weapons used to attack and injure Mr. Swallow were Iranian-manufactured/supplied Mortars, RPGs, and small arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3447. As a result of the July 8, 2004 Terrorist Attack, Daryn Swallow, sustained

significant injuries including PTSD, anxiety, and depression.

3448. Daryn Swallow was diagnosed with PTSD by the mental health team at Ali Al Salem Air Base, Kuwait City, Kuwait. He later underwent medical and psychological treatment at: US Army Garrison Schweinfurt Aid Station, Schweinfurt, Germany: and Northampton VA Medical Center, Leeds, MA. Since the attack, he has continued to receive treatment for PTSD, anxiety, depression, and other symptoms related to PTSD.

3449. As a result of the July 8, 2004 Terrorist Attack, and the injuries he suffered, Daryn Swallow has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 318. THE JULY 7, 2004 ATTACK – TIKRIT

### A. PLAINTIFF HAROLD T. ATKINSON, JR.

3450. Plaintiff Harold T. Atkinson, Jr. is a citizen of the United States and domiciled in the State of Florida.

3451. On July 7, 2004, Harold T. Atkinson, Jr., age 20, was serving in the U.S. military in Iraq.

3452. Mr. Atkinson was a passenger in HMMWV traveling to the dining facility (DFAC) at FOB Danger, when he was attacked with multiple rockets and mortars, knocking Mr. Atkinson unconscious.

3453. The weapons used to attack and injure Harold T. Atkinson, Jr. on July 7, 2004 were Iranian-manufactured or supplied rockets and mortars, provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3454. As a result of the attack, Harold T. Atkinson, Jr. sustained a TBI, and PTSD, including severe anxiety, depression, inability to sleep, nightmares, inability to concentrate,

hyper-awareness, exaggerated responses, and recurring trauma of the event.

3455. Mr. Atkinson received extensive medical treatment at the Bay Pines VA Hospital in Bay Pines, Florida.

3456. As a result of the July 7, 2004 Terrorist Attack, and the injuries he suffered, Harold T. Atkinson, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 319. THE JULY 2, 2004 ATTACK – ROUTE CARDINAL, WEST BAGHDAD

#### A. PLAINTIFF HARRISON MANYOMA

3457. Plaintiff Harrison Manyoma is a citizen of the United States and domiciled in the State of Texas.

3458. On July 2, 2004, Harrison Manyoma, age 27, was serving in the U.S. military in Iraq.

3459. Mr. Manyoma was on patrol with his unit when his car was hit by a suicide car bomber.

3460. The weapon used to attack and injure Mr. Manyoma was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3461. As a result of the attack, Harrison Manyoma suffered third degree burns over his right hand and arm, a ruptured ear drum, blurred vision, memory loss, TBI, a lower back injury, PTSD, anxiety, depression and insomnia.

3462. Harrison Manyoma received extensive medical treatment including skin grafts, nerve reconstruction surgery, and ongoing treatment for mental and emotional damages

resulting from the attack.

3463. As a result of the July 2, 2004 Terrorist Attack, and the injuries he suffered, Harrison Manyoma has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 320. THE JUNE 26, 2004 ATTACK – BAGHDAD MUSEUM AREA, NEAR SADR CITY, BAGHDAD

#### A. PLAINTIFFS THE ROBERT LANCE CAVER FAMILY

3464. Plaintiff Robert Lance Caver is a citizen of the United States and domiciled in the State of Washington.

3465. On June 26, 2004, Robert Lance Caver, age 33, was serving in the U.S. military in Iraq.

3466. Mr. Caver was on patrol with his unit on the outskirts of Sadr City in Baghdad when his unit came under attack by small arms fire, RPGs, and hand grenades.

3467. The weapons used to attack and injure Mr. Caver were Iranian manufactured/supplied small arms, rocket propelled grenades and hand grenades, provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3468. As a result of the attack, Robert Lance Caver suffered shrapnel damage to his teeth, traumatic brain injury, scarring on his face, depression, anxiety and sleep issues. Robert Lance Caver has been diagnosed with PTSD.

3469. Robert Lance Caver has had extensive medical treatment. He was treated at the Baghdad Dental Facility in the Green Zone three weeks after the attack for dental issues. He was treated by Christopher D. Perrin, Lt. Col, DDS for ongoing dental issues on March 7, 2005. Sgt. Noel Ramey, Combat medic, treated him for ongoing issues with shrapnel damage

to his teeth. Dr. Dwayne Opp at the American Lake Facility in Tacoma Washington has treated Mr. Caver for PTSD, ordered various laboratory tests and referred him to group counseling at the facility. Dr. David J. Huff and Dr. Garcia in Seattle Washington have treated Mr. Caver for depression, sleep disorders and anxiety (counseling and medications) and have enrolled him in a study for headaches resulting from a traumatic brain injury and pituitary gland study. Mr. Caver has participated group PTSD counseling and Combat Veteran Group Therapy.

3470. As a result of the June 26, 2004 Terrorist Attack, and the injuries he suffered, Robert Lance Caver has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity

3471. Plaintiff Asraa Caver is an Iraqi National and is believed to be a permanent resident of the United States who has been granted asylum status and is domicile in the State of Washington. She is the wife of Robert Lance Caver.

3472. Plaintiff Tricia Ann Caver is a citizen of the United States and domiciled in the State of Washington. She is the daughter of Robert Lance Caver and Asraa Caver.

3473. Plaintiff N.R.C., a minor, represented by her legal guardians Robert Lance Caver and Asraa Caver, is a citizen of the United States and domiciled in the State of Washington. She is the daughter of Robert Lance Caver and Aasra Caver.

3474. As a result of the June 26, 2004 Terrorist Attack, and the injuries suffered by Robert Lance Caver, Plaintiffs Asraa Caver, Tricia Ann Caver and N.R.C., a minor, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 321. THE LATE JUNE, 2004 ATTACK – HIT, AL ANBAR PROVINCE

### A. PLAINTIFF MARIO A. MENA

3475. Plaintiff Mario A. Mena is a citizen of the United States and domiciled in the State of Illinois.

3476. In late June, 2004, Mario A. Mena, age 19, was serving in the U.S. military in Iraq.

3477. Mr. Mena was in a convoy with his unit on patrol outside of Hit, Iraq, in Al Anbar Province. While dismounted from their vehicles to secure an area, his unit came under mortar attack.

3478. The weapon used to attack and injure Mr. Mena was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3479. As a result of the attack, Mario A. Mena suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), hearing loss, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

3480. Mario A. Mena received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

3481. As a result of the late June, 2004, Terrorist Attack, and the injuries he suffered, Mario A. Mena has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 322. THE JUNE 17, 2004 ATTACK – AL ANBAR PROVINCE

### A. PLAINTIFF MARIO A. MENA

3482. Plaintiff Mario A. Mena is a citizen of the United States and domiciled in the State of Illinois.

3483. On June 17, 2004, Mario A. Mena, age 19, was serving in the U.S. military in Iraq.

3484. Mr. Mena was in a convoy with his unit on patrol outside of Hit, Iraq, in Al Anbar Province, when his vehicle struck an IED.

3485. The weapon used to attack and injure Mr. Mena was an Iranian manufactured/supplied Improvised Explosive Device provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3486. As a result of the attack, Mario A. Mena suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), a head laceration, a perforated ear drum, temporary hearing loss, Tinnitus, Post-Traumatic Stress Disorder ("PTSD"), anxiety and depression.

3487. Mario A. Mena received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

3488. As a result of the June 17, 2004 Terrorist Attack, and the injuries he suffered, Mario A. Mena has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 323. THE JUNE 11, 2004 ATTACK – FALLUJAH

### A. PLAINTIFF TIMOTHY BREDBERG

3489. Plaintiff Timothy Bredberg is a citizen of the United States and domiciled in the State of New York.

3490. On June 11, 2004, Timothy Bredberg, age 23, was serving in the U.S. military in Iraq.

3491. Mr. Bredberg was in a convoy of 6 vehicles, his being a Humvee, third in line. They were traveling near Fallujah when 3 IEDs exploded in succession. He got through the first blast with no negative affect, but then the second and third blasts injured Mr. Bredberg. When he recovered from his blackout, his unit was being attacked by small arms fire.

3492. The weapons used to attack and injure Mr. Bredberg were Iranian manufactured/supplied IEDs and small arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3493. As a result of the attack, Timothy Bredberg suffered an injured knee, TBI, PTSD, headaches, blurred vision, migraines, swollen optical nerves, loss of memory, and tinnitus.

3494. Timothy Bredberg received extensive medical treatment at the Medic Station at Camp Manhattan, Ramadi, Iraq; Conner Troop Medical Clinic, Fort Drum, NY; Syracuse VA Medical Center, Syracuse, NY; and Upstate Bone and Joint Center, Syracuse, NY.

3495. As a result of the June 11, 2004 Terrorist Attack, and the injuries he suffered, Timothy Bredberg has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 324. THE JUNE 7, 2004 ATTACK – MOSUL

### A. PLAINTIFFS THE MATTHEW WALKER GOWIN FAMILY

3496. Plaintiff Matthew Walker Gowin is a citizen of the United States and is domiciled in the State of Virginia.

3497. On June 7, 2004, Matthew Walker Gowin, age 21, was serving in the U.S. military in Iraq.

3498. In the afternoon on June 7, 2004, Mr. Gowin was performing his duties as a Combat Engineer and gunner. While searching for and disposing of IEDs in the surrounding area, Mr. Gowin was targeted with small arms fire and rocket mortars.

3499. The weapons used to attack and injure Mr. Gowin were Iranian-manufactured/supplied small arms and rocket mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3500. As a result of the June 7, 2004 Terrorist Attack, Mr. Gowin sustained significant injuries due to the concussive blast of the explosion including hearing loss and tinnitus. He suffers from psychological injury and continues to receive treatment for PTSD.

3501. Mr. Gowin sought treatment for his symptoms from Hunter Holmes McGuire VA in Virginia.

3502. As a result of the June 7, 2004 Terrorist Attack, Matthew Walker Gowin has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3503. Plaintiff Amanda Lynn Gowin is a citizen of the United States and is domiciled in the State of Virginia. She is the wife of Matthew Walker Gowin.

3504. As a result of the June 7, 2004 Terrorist Attack and the injuries suffered by

Matthew Walker Gowin, Plaintiff Amanda Lynn Gowin has incurred past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and economic damages, both past and future, including loss of services.

**325. THE JUNE 6, 2004 ATTACK – BAGHDAD**

**A. PLAINTIFFS THE JOHN L. LAWTON JR. FAMILY**

3505. Plaintiff John L. Lawton Jr. is a citizen of the United States and domiciled in the State of New Hampshire.

3506. On June 6, 2004, John L. Lawton Jr., age 38, was serving in the U.S. military in Iraq.

3507. Mr. Lawton was a passenger in a HMMWV on patrol as part of Operation Iron Saber when it was attacked with RPGs and small arms fire.

3508. The weapons used to attack and injure Mr. Lawton were Iranian manufactured/supplied RPGs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3509. As a result of the attack, John L. Lawton Jr. suffered concussive blast injuries, injuries to his leg and back, TBI, and PTSD,

3510. John Lawton Jr. received extensive medical and psychological treatment at Walter Reed National Medical Center, Veterans Affairs Greater Los Angeles Healthcare System, and Manchester VA Medical Center.

3511. As a result of the June 6, 2004 Terrorist Attack, and the injuries he suffered, John Lawton Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3512. Plaintiff Arlene F. Lawton is a citizen of the United States and is domiciled in the state of Massachusetts. She is the mother of John L. Lawton Jr.

3513. Plaintiff Patricia Lawton is a citizen of the United States and is domiciled in the state of Massachusetts. She is the daughter of John L. Lawton Jr.

3514. As a result of the June 6 2004 Terrorist Attack, and the injuries suffered by John L. Lawton, Jr., Plaintiffs, Arlene F. Lawton and Patricia Lawton have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 326. THE JUNE 4, 2004 ATTACK – NORTH BAGHDAD

#### A. PLAINTIFF JESSE GEER

3515. Plaintiff Jesse Geer is a citizen of the United States and domiciled in the State of Oregon.

3516. On June 4, 2004, Jesse Geer, age 43, was serving in the U.S. military in Iraq.

3517. Mr. Geer was on foot patrol in North Baghdad when he was hit with a roadside IED.

3518. The weapon used to attack and injure Mr. Geer was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3519. As a result of the attack, Mr. Geer suffered traumatic brain injury and PTSD.

3520. Mr. Geer received extensive medical treatment Mr. Geer received treatment from VA Roseburg Healthcare System – Roseburg Oregon; VA Healthcare Center – Eugene Oregon; and VA Portland Healthcare System.

3521. As a result of the June 4, 2004 Terrorist Attack, and the injuries he suffered,

Mr. Geer has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 327. THE MAY 25, 2004 ATTACK – ISKANDARIYA

### A. PLAINTIFFS THE THOMAS M. BROOKS FAMILY

3522. Plaintiff Thomas M. Brooks is a citizen of the United States and is domiciled in the State of Vermont.

3523. On May 25, 2004, Thomas M. Brooks, age 20, was serving in the U.S. military in Iraq.

3524. While Mr. Brooks was waiting in his Humvee to escort an intelligence officer, he was attack by mortars.

3525. The weapon used to attack and injure Mr. Brooks were Iranian manufactured/supplied mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3526. As a result of the attack, Thomas M. Brooks suffered injury to his left leg, a traumatic brain injury, tinnitus, scarring on the left side of his body, anxiety, depression, and PTSD.

3527. Thomas M. Brooks had several surgeries in an attempt to repair the damage to his left leg, which ultimately ended in amputation to the knee. He has also had extensive physical therapy for his prosthetic and counseling for his anxiety, depression, and PTSD.

3528. As a result of the May 25, 2004 Terrorist Attack, and the injuries he suffered, Thomas M. Brooks has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3529. Plaintiff Lynda Brooks is a citizen of the United States and domiciled in the State of Vermont. She is the mother of Thomas M. Brooks.

3530. As a result of the May 25, 2004 Terrorist Attack, and the injuries suffered by Thomas M. Brooks, Plaintiff Lynda Brooks has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 328. THE MAY 14, 2004 ATTACK – MUHMADIYA

### A. PLAINTIFF PATRICK WICKENS

3531. Plaintiff Patrick Wickens is a citizen of the United States and domiciled in the State of Florida.

3532. On May 14, 2004, Patrick Wickens, age 21, was serving in the U.S. military in Iraq.

3533. Mr. Wickens was walking across Camp Saint Michaels in Muhmadiya, Iraq when incoming mortars impacted nearby. The blast threw Mr. Wickens into the air and resulted in massive shrapnel wounds to both legs.

3534. The weapon used to attack and injure Patrick Wickens on May 14, 2004 was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3535. As a result of the attack, Patrick Wickens, sustained significant injuries including amputation of his right leg at the thigh, severe shrapnel wounds to his left leg, PTSD, TBI, anxiety, and depression.

3536. Patrick Wickens underwent medical and psychological treatment at: Landstuhl Regional Medical Center, Landstuhl, Germany; Walter Reed Army Medical Center, Washington, DC: and Orlando VA Medical, Orlando, FL. Since the attack, he has continued

to receive treatment for amputation, PTSD, TBI, anxiety, depression, and other symptoms related to PTSD.

3537. As a result of the May 14, 2004 Terrorist Attack, and the injuries he suffered, Patrick Wickens has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 329. THE MAY 6, 2004 ATTACK – 14TH OF JULY BRIDGE, BAGHDAD

#### A. PLAINTIFF STACEY DARRELL RICE

3538. Plaintiff Stacey Darrell Rice is a citizen of the United States and domiciled in the State of Texas.

3539. On May 6, 2004, Stacey Darrell Rice, age 36, was serving in the U.S. military in Iraq.

3540. Mr. Rice was posted in a guard tower overlooking a traffic circle in the "Green Zone" of Baghdad Iraq at the 14th of July Bridge. A car, driven by suicide bomber, exploded 25 yards from where Stacey Darrell Rice was stationed.

3541. The weapon, used to attack and injure Stacey Darrell Rice, was an Iranian manufactured/supplied VSIED, provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3542. As a result of the attack, Stacey Darrell Rice suffered permanent hearing loss and tinnitus. He was hit with shrapnel, wounding from the right side to the middle of his neck. He has been diagnosed with PTSD and depression.

3543. Stacey Darrell Rice received extensive medical treatment. Mr. Rice has received treatment from or at Eugene J. Towbin Healthcare Center – Little Rock, AR; Michael

A. DeBakey VA Medical Center – Houston, TX; and Katy Outpatient Clinic, VA Mental Health – Katy-TX.

3544. As a result of the May 6, 2004 Terrorist Attack, and the injuries he suffered, Stacey Darrell Rice has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 330. THE MAY 2, 2004 ATTACK – ROUTE FORCE AND IP ROAD, BAGHDAD

#### A. PLAINTIFFS THE MARTIN LYNN WAGNER JR. FAMILY

3545. Plaintiff Martin Lynn Wagner, Jr. is a citizen of the United States and domiciled in the State of Texas.

3546. On May 2, 2004, Martin Lynn Wagner, Jr., age 23, was serving in the U.S. military in Iraq.

3547. Mr. Wagner was performing his duties on the outside of Camp Victory, North Baghdad, when a rocket propelled grenade detonated into his back.

3548. The weapon used to attack and injure Mr. Wagner was an Iranian manufactured/supplied RPG provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3549. As a result of the attack, Mr. Wagner has been diagnosed with PTSD and traumatic brain injury. Mr. Wagner also suffers from severe back injuries, hearing loss and injury to right eyebrow requiring stitches.

3550. Mr. Wagner received extensive medical treatment. Mr. Wagner has received treatment from Landstuhl Regional Medical Center and Neurology Clinic in Germany.

3551. As a result of the May 2, 2004 Terrorist Attack, and the injuries he suffered,

Mr. Wagner has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3552. Plaintiff Anna Wagner is a citizen of the United States and domiciled in the State of Texas. She is the mother of Martin Lynn Wagner, Jr.

3553. Plaintiff Amanda Strickland is a citizen of the United States and domiciled in the State of Texas. She is the sister of Martin Lynn Wagner, Jr.

3554. As a result of the May 2, 2004 Terrorist Attack, and the injuries suffered by Martin Lynn Wagner, Jr., Plaintiffs Anna Wagner and Amanda Strickland have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

### 331. THE APRIL 25, 2004 ATTACK – TAJI

#### A. PLAINTIFFS THE JOIE L. WILLIAMS FAMILY

3555. Plaintiff Joie L. Williams is a citizen of the United States and domiciled in the State of North Carolina.

3556. On April 25, 2004, Joie L. Williams, age 41, was serving in the U.S. military in Iraq.

3557. Joie L. Williams was asleep in his living quarters at Camp Cooke, Taji, Iraq, when multiple 127 mm rockets were fired, striking the living quarters. Mr. Williams was knocked unconscious, dazed, and disoriented by the explosion and the damage to the living quarters.

3558. The weapons used to attack and injure Joie L. Williams were Iranian-supplied rockets provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror

operatives in Iraq.

3559. As a result of the attack, Mr. Williams sustained serious injuries including severe migraine headaches, cognitive problems, memory problems, TBI, PTSD, anger outbursts, fear of crowds, fear of public places, etc. Additionally, he developed back and left knee problems stemming from this attack.

3560. Mr. Williams received medical and psychological treatment at Durham VA Medical Center, Durham, NC; W. G. Hefner VA Medical Center, Salisbury, NC; Hampton VA Medical Center, Hampton, VA; Salem VA Medical Center, Salem, VA; and Hillandale Road Clinic II, Durham, NC. Since the attack, he has continued to receive ongoing medical treatment for his physical and psychological injuries sustained in this attack.

3561. As a result of the April 25, 2004 Terrorist Attack, and the injuries he suffered, Joie L. Williams has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3562. Plaintiff, Shenna Green, is a citizen of the United States, and is domiciled in the state of North Carolina. She is the daughter of Joie L. Williams.

3563. Plaintiff, Doris Coger, is a citizen of the United States and is domiciled in the state of North Carolina. She is the mother of Joie L. Williams.

3564. As a result of the April 25, 2004 Terrorist Attack, and the injuries suffered by Joie L. Williams, Plaintiffs, Shenna Green and Doris Coger, have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium and past and future economic damages, including loss of services.

## 332. THE APRIL 23, 2004 ATTACK – FOB COBRA/BAQUBA

### A. PLAINTIFF JUSTIN ASHLEY GAGE

3565. Plaintiff Justin Ashley Gage is a citizen of the United States and domiciled in the State of North Carolina.

3566. On April 23, 2004, Justin Ashley Gage, age 28, was serving in the U.S. military in Iraq.

3567. Mr. Gage was on patrol with his unit outside FOB Cobra, near Baquba.

3568. The weapon used to attack and injure Mr. Gage was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3569. As a result of the attack, Justin Gage suffered facial injuries, damage to his eye a severe concussion and tinnitus resulting in PTSD, anxiety and depression.

3570. Justin Gage received medical treatment the day or the attack and has continued to receive medical treatment for his PTSD, anxiety, depression and tinnitus.

3571. As a result of the April 23, 2004 Terrorist Attack, and the injuries he suffered, Justin Gage has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 333. THE APRIL 19, 2004 ATTACK – BAGHDAD

### A. PLAINTIFF JOHN COLEMAN

3572. Plaintiff John Coleman is a citizen of the United States and domiciled in the State of Arkansas.

3573. On April 19, 2004, John Coleman, age 18, was serving in the U.S. military in Iraq.

3574. Mr. Coleman was acting as a Military Policeman, transporting prisoners from Camp Cooke to Camp Victory North, in a vehicle convoy when he was attacked with an IED.

3575. The weapon used to attack and injure Mr. Coleman was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3576. As a result of the attack, John Coleman suffered concussive blast injuries, shrapnel wounds, TBI and PTSD

3577. John Coleman received extensive medical and psychological treatment at VA Hospital, North Little Rock, AR.

3578. As a result of the April 19, 2004 Terrorist Attack, and the injuries he suffered, John Coleman has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 334. THE APRIL 9, 2004 ATTACK - BAGHDAD

### A. PLAINTIFFS THE JUSTIN ROY ROJAS FAMILY

3579. Plaintiff Justin Roy Rojas is a citizen of the United States and domiciled in the State of North Carolina.

3580. On April 9, 2004, Justin Roy Rojas, age 25, was serving in the U.S. military in Iraq.

3581. Mr. Rojas was on patrol with his unit on the outskirts of Sadr City in Baghdad when they were attacked by rockets, mortars and small arms fire.

3582. The weapons used to attack and injure Mr. Rojas were Iranian manufactured/supplied rockets, small arms and mortars provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3583. As a result of the attack, Justin Rojas suffered PTSD. Due to his PTSD, Mr. Rojas currently suffers from anxiety, insomnia, severe nightmares, and other psychological problems resulting from the attack.

3584. Justin Rojas received extensive medical treatment including treatment from 2005 to present for his PTSD and related health problems.

3585. As a result of the April 9, 2004 Terrorist Attack, and the injuries he suffered, Justin Rojas has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3586. Plaintiff Amanda Rojas is a citizen of the United States and domiciled in the State of North Carolina. She is the wife of Justin Rojas.

3587. As a result of the April 9, 2004 Terrorist Attack, and the injuries suffered by Justin Rojas, Plaintiff's spouse, Amanda Rojas, has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 335. THE APRIL 8, 2004 ATTACK – FALLUJAH

### A. PLAINTIFFS THE ASHOT MALKHASSIAN FAMILY

3588. Plaintiff Ashot Malkhassian is a citizen of the United States and is domiciled in the State of California.

3589. On April 8, 2004, Mr. Malkhassian, age 22, was serving in the U.S. military in Iraq.

3590. Mr. Malkhassian was traveling in a convoy of 6 – 10 Humvees in the area referred to as "The Sunni Triangle." On route to their mission, the convoy was ambushed and began to receive fire. Mr. Malkhassian attempted to fire back. However, during the attack,

Mr. Malkhassian was shot in his left hip area. While receiving emergency treatment at the scene, Mr. Malkhassian's breathing was labored so the corpsman opened his vest. He was then hit by a round in his vest area. He was immediately taken to another Humvee and transported to base, Camp Baharia.

3591. The weapon used to attack and injure Malkhassian was Iranian manufactured/supplied munition provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3592. As a result of the attack, Mr. Malkhassian sustained significant injuries. Mr. Malkhassian's femur was shattered from the gunshot to his left hip and the bullet pierced his abdominal cavity. He also suffered a mild traumatic brain injury (TBI). Due to his injuries, Malkhassian suffers the following permanent injuries: his left leg is shorter, PTSD, mild traumatic brain injury, back pain, scares to the back of his head and stomach, and irregular bowel movements due to the wound.

3593. Mr. Malkhassian received emergency medical treatment at the scene of the attack. From the scene, Malkhassian was transported to Camp Baharia for further medical treatment. That same day, Malkhassian was transported to Landstuhl Germany Medical Center for surgery. Malkhassian then had to undergo two surgeries where physicians put an external fixator on his leg and repaired his abdomen. Later, Malkhassian underwent treatment at Bethesda Naval Medical where physicians attached a rod to his femur. Eventually, Malkhassian was transported to Camp Pendleton Naval Hospital for further treatment. He is still receiving treatment for his injuries at Long Beach Veteran's Administration.

3594. As a result of the April 8, 2004 Terrorist Attack, and the injuries he suffered, Malkhassian has past and future noneconomic damages, including severe physical and mental

pain and suffering, loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3595. Plaintiff Chaken Zanazanian is a citizen of the United States and is domiciled in the state of California. She is the mother of Ashot Malkhassian.

3596. As a result of the April 8, 2004 Terrorist Attack, and the injuries suffered by Ashot Malkhassian, Plaintiff's mother, Chaken Zanazanian has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 336. THE APRIL 8, 2004 ATTACK – MAHMUDIYA, AL ANBAR PROVINCE

### A. PLAINTIFF BRIAN MICHAEL YORK

3597. Plaintiff Brian Michael York is a citizen of the United States and domiciled in the State of New York.

3598. On April 8, 2004, Mr. Brian York, age 18, was serving in the U.S. military in Iraq.

3599. Mr. York was performing his duties as driver of a Humvee, and drove the vehicle over a deeply buried Improvised Explosive Device (IED) which detonated, blowing out the windshield and spraying Mr. York with glass.

3600. The weapon used to attack and injure Mr. Brian York was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3601. As a result of the April 8, 2004 attack, Mr. York sustained significant injuries due to the blast. Mr. York was sprayed with broken glass, he sustained a TBI, migraines, PTSD, anxiety, panic attacks, and depression. Brian Michael York was treated in Iraq shortly

after the attack, glass was removed from his eye and face.

3602. Brian Michael York was treated in Iraq after the attack, and has received treatment at Landstuhl Regional Medical Center in Germany and at Walter Reed National Military Medical Center. Mr. York was also treated at the Mountain Home VA Medical Clinic, before transferring to the Bay Pines VA Healthcare System. Mr. York continues to treat at the Stratton VA Medical Center

3603. As a result of the April 8, 2004 Terrorist Attack and the injuries he suffered, Brian Michael York has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 337. THE APRIL 7, 2004 ATTACK - FALLUJAH

### A. PLAINTIFF JAMES EDWARD WRIGHT

3604. Plaintiff James Edward Wright is a citizen of the United States and domiciled in the State of Indiana.

3605. On April 7, 2004, James Edward Wright, age 31, was serving in the U.S. military in Iraq.

3606. Mr. Wright was travelling in a convoy when his convoy began taking on heavy machine gun fire and RPG attacks. Mr. Wright was severely injured as a result of being struck by an RPG.

3607. The primary weapon used to attack and injure Mr. Wright was an Iranian manufactured/supplied RPG provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3608. As a result of the attack, James Edward Wright suffered bodily injury including a severed left hand and forearm, severed right hand, left leg injury with shrapnel and loss of

soft tissue and muscle, drop foot left leg, right shin injury and shrapnel, lacerations to his head and shoulders, permanent scarring, tinnitus, TBI, and PTSD. As a result of his injuries, Mr. Wright has completely lost the use of both hands and experiences daily pain and suffering.

3609. James Edward Wright received extensive medical treatment for his injuries, including multiple surgeries, amputation of both hands, skin grafts, reconstructive surgeries, and ongoing psychiatric treatment.

3610. As a result of the April 7, 2004 Terrorist Attack, and the injuries he suffered, James Edward Wright has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity

## 338. THE APRIL 7, 2004 ATTACK – RAMADI

### A. PLAINTIFF ELISHA JOSEPH ABBOTT

3611. Plaintiff Elisha Joseph Abbott is a citizen of the United States and domiciled in the State of Pennsylvania.

3612. On April 7, 2004, Elisha Joseph Abbott, age 23, was serving in the U.S. military in Iraq.

3613. Mr. Abbott was conducting a main supply route sweep on foot and looking for improvised explosive devices near the central market in the heart of Ramadi, Iraq when he came under attack by enemy fire and was struck in the face by shrapnel from a rocket-propelled grenade.

3614. The weapon used to attack and injure Mr. Abbott was an Iranian manufactured/supplied rocket-propelled grenade provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3615. As a result of the attack, Elisha Joseph Abbott sustained significant injuries,

including shrapnel to his face, anxiety attacks, depression, and post-traumatic stress disorder. Medical providers have advised Mr. Abbot against removing the shrapnel in his face because it may cause more scarring if it is removed.

3616. Elisha Joseph Abbott received medical treatment at the outpost in Ramadi on the day of the attack and at the VA Hospital in San Diego, California.

3617. As a result of the April 7, 2004 Terrorist Attack, and the injuries he suffered, Elisha Joseph Abbott has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 339. THE APRIL 7, 2004 ATTACK - LATIFIYA

### A. PLAINTIFF STEPHEN KENT FERGUSON

3618. Plaintiff Stephen Kent Ferguson is a citizen of the United States and domiciled in the State of West Virginia.

3619. On April 7, 2004, Stephen Kent Ferguson, age 23, was serving in the U.S. military in Iraq.

3620. On the afternoon of April 7, 2004, an IED was discovered in the town of Latifiya. Mr. Ferguson and his platoon were escorting the explosive ordnance disposal team and stopped to set up a security position while the IED was handled. Mr. Ferguson's unit began to receive mortar and RPG fire. Mr. Ferguson was hit with an AK-47 bullet which fragmented into his left thigh. The bullet and its fragments broke his left femur, dislocated his hip and severed his urethra.

3621. The weapons used to attack and injure Mr. Ferguson were Iranian manufactured or supplied IED's, mortar rounds, RPG's and/or AK-47's provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3622. As a result of the attack, Stephen Kent Ferguson suffered a severed urethra, broken left femur, dislocated left hip, shrapnel fragments that remain in his leg, urological dysfunction, erectile dysfunction, kidney stones, prostate problems, nerve damage to penis, damage to inside of bladder wall, scar tract from pubic bone into bladder, and internal bleeding. He also suffers from PTSD, anxiety and depression.

3623. Mr. Stephen Ferguson received extensive medical treatment. Mr. Ferguon has had approximately 10 surgeries and a urethroplasty. Mr. Ferguson was hospitalized at Landstuhl Regional Medical Center, Walter Reed National Military Medical Center, Naval Medical Center Camp Lejeune, Duke University Hospital, and University of Colorado. He also received and continues to receive orthopedic and PTSD treatment.

3624. As a result of the April 7, 2004 Terrorist Attack, and the injuries he suffered, Stephen Kent Ferguson has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 340. THE APRIL 4, 2004 ATTACK – SADR CITY, BAGHDAD

### A. PLAINTIFFS THE JOSHUA MITCHELL ROUNTREE FAMILY

3625. Plaintiff Joshua Mitchell Rountree is a citizen of the United States and domiciled in the State of Texas

3626. On April 4, 2004, Joshua Mitchell Rountree, age 23, was serving in the U.S. military in Iraq.

3627. Mr. Rountree was on patrol with his unit on the outskirts of Sadr City in Baghdad when his vehicle was struck by IEDs, VBIEDs, RPGs and fire from AK-47s and sniper fire.

3628. The weapons used to attack and injure Mr. Rountree were Iranian manufactured/supplied many different types of munitions, including IEDs, VBIEDs, RPGs, AK-and 47s provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3629. As a result of the attack, Joshua Mitchell Rountree suffered significant injuries including traumatic brain injury, back injury, arm numbness, loss of hearing, various aches and pains, anxiety and PTSD.

3630. Mr. Rountree received extensive medical treatment and was seen by the following medical providers: 28th Combat Support Hospital in Baghdad; Riva Ridge 2nd BCT Clinic – Baghdad; VA North Texas Healthcare System – Dallas, TX; Baylor Scott & White Medical Center – Garland, TX; and Bryan G. Johnson – Frisco, TX. Mr. Rountree has also received chiropractic care.

3631. As a result of the April 4, 2004 Terrorist Attack, and the injuries he suffered, Joshua Mitchell Rountree has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3632. Plaintiff Leigh Rountree is a citizen of the United States and domiciled in the State of Texas. She is the wife of Joshua Mitchell Rountree.

3633. As a result of the April 4, 2004 Terrorist Attack, and the injuries suffered by Joshua Mitchell Rountree, Plaintiff Leigh Rountree has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 341. THE APRIL 4, 2004 ATTACK – SADR CITY

### A. PLAINTIFFS THE MATTHEW N. WOOTEN JR. FAMILY

3634. Plaintiff Matthew N. Wooten Jr. is a citizen of the United States and domiciled in the State of Texas.

3635. On April 4, 2004, Matthew N. Wooten Jr., age 30, was serving in the U.S. military in Iraq.

3636. Mr. Wooten was part of a 16 vehicle convoy traveling through Sadr City, Iraq when they began receiving small arms fire. Matthew N. Wooten Jr. exited his vehicle and began returning fire. Mr. Wooten became separated from his vehicle causing him extreme anxiety. He later caught up to the vehicle and returned to base camp where he assisted with the wounded.

3637. The weapons used to attack and injure Matthew N. Wooten Jr. were Iranian-manufactured / supplied RPG's, rockets, and small arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3638. As a result of the April 4, 2004 Terrorist Attack, Matthew N. Wooten Jr., sustained significant injuries including PTSD, night terrors, anxiety attacks, and depression.

3639. Matthew N. Wooten Jr. has undergone medical care and treatment for his injuries at Ft. Hood, Department of Social Work and Central Texas Veterans' Healthcare System in Temple, Texas. He continues to receive ongoing medical care and treatment.

3640. As a result of the April 4, 2004 Terrorist Attack, and the injuries he suffered, Matthew N. Wooten Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3641. Plaintiff, Matthew N. Wooten, III, is a citizen of the United States, and is

domiciled in the state of Texas. He is the son of Matthew N. Wooten Jr.

3642. As a result of the April 4, 2004 Terrorist Attack, and the injuries suffered by Matthew N. Wooten Jr., Plaintiff Matthew N. Wooten, III, has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 342. THE MARCH 19, 2004 ATTACK – AL ANBAR PROVINCE

### A. PLAINTIFF MARIO A. MENA

3643. Plaintiff Mario A. Mena is a citizen of the United States and domiciled in the State of Illinois.

3644. On March 19, 2004 Mario A. Mena, age 19, was serving in the U.S. military in Iraq.

3645. Mr. Mena was part of a Quick Response Force Team, assisting another patrol, when they struck an anti-tank mine followed by a small arms fire attack.

3646. The weapon used to attack and injure Mr. Mena was an Iranian manufactured/supplied anti-tank mine and small arms weapon provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3647. As a result of the attack, Mario A. Mena suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), knee injury, shrapnel wounds, headaches, hearing loss, Tinnitus, Post-Traumatic Stress Disorder ("PTSD"), anxiety and depression.

3648. Mario A. Mena received extensive medical treatment, including past and ongoing care for these injuries, at various military base hospitals, Veterans Medical Centers and private hospitals.

3649. As a result of the March 19, 2004 Terrorist Attack, and the injuries he suffered, Mario A. Mena has past and future noneconomic damages, including severe physical and

mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 343. THE MARCH 13, 2004 ATTACK - KARBALA

#### A. PLAINTIFF ROBERT JAMES PEARSON

3650. Plaintiff Robert James Pearson is a citizen of the United States and domiciled in the State of North Carolina.

3651. On March 13, 2004, Robert Pearson, age 35, was serving in the U.S. military in Iraq.

3652. Mr. Pearson was on patrol with his unit in Karbala when his vehicle was struck by an IED and they took on small arms fire.

3653. The weapon used to attack and injure Mr. Pearson was an Iranian manufactured/supplied IED and small arms provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3654. As a result of the attack, Robert Pearson suffered a TBI, back injury and PTSD.

3655. Robert Pearson received extensive medical treatment once in a secure zone by the medic. He continues his treatment with VA.

3656. As a result of the March 13, 2004 Terrorist Attack, and the injuries he suffered, Robert Pearson has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

### 344. THE JANUARY 2004 ATTACK – AL ANBAR PROVINCE

#### A. PLAINTIFFS THE MICHAEL L. NEUMANN FAMILY

3657. Plaintiff Michael L. Neumann is a citizen of the United States and domiciled in the State of Colorado.

3658. In late January 2004, Michael L. Neumann, age 25, was serving in the U.S. military in Iraq.

3659. Mr. Neumann in a convoy with his unit on Highway Tiger W, near Al Asad Airbase in Al Anbar Province, when his vehicle was struck by an IED.

3660. The weapon used to attack and injure Mr. Neumann was an Iranian manufactured/supplied Improvised Explosive Device ("IED") provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3661. As a result of the attack, Michael L. Neumann suffered injuries that include, but are not limited to, a Traumatic Brain Injury ("TBI"), Tinnitus, left knee pain, lower left leg pain, back injuries, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.

3662. Michael L. Neumann received extensive medical treatment, including past and ongoing care for these injuries, at Fort Carson military base, North Chicago Veterans Medical Center, Milwaukee and Colorado Springs Veterans Hospital and other VA medical centers and private hospitals.

3663. As a result of the January 2004 Terrorist Attack, and the injuries he suffered, Michael L. Neumann has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3664. Plaintiff Jasmine Nagel is a citizen of the United States and domiciled in the State of Illinois. She is the former wife of Michael L. Neumann.

3665. Plaintiff Jorie Miller is a citizen of the United States and domiciled in the State of Colorado. She is the daughter of Michael L. Neumann.

3666. Plaintiff Caleb Neumann is a citizen of the United States and domiciled in the

State of Illinois. He is the son of Michael L. Neumann.

3667. Plaintiff Tammy Bowman is a citizen of the United States and domiciled in the State of Louisiana. She is the mother of Michael L. Neumann.

3668. Plaintiff Vicki Aversano is a citizen of the United States and domiciled in the State of Illinois. She is the sister of Michael L. Neumann.

3669. Plaintiff R.N., a minor, represented by his legal guardian Michael L. Neumann, is a citizen of the United States and domiciled in the State of Illinois. He is the son of Michael L. Neumann.

3670. As a result of the January 2004 Terrorist Attack, and the injuries suffered by Michael Neumann, Plaintiff's Jasmine Nagel, Jorie Miller, Caleb Neumann, Tammy Bowman, Vicki Aversano, and R.N. have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 345. THE DECEMBER 10, 2003 ATTACK - MOSUL

### A. PLAINTIFF AARON SCOTT ARTHUR BURKS

3671. Plaintiff Aaron Scott Arthur Burks is a citizen of the United States and domiciled in the State of Ohio.

3672. On December 10, 2003, Aaron Scott Arthur Burks, age 24, was serving in the U.S. military in Mosul, Iraq.

3673. Mr. Aaron Scott Arthur Burks was in the rear of a three-vehicle convoy with his unit headed to deliver supplies to their mortar team. As the convoy came to a stop outside of the compound, an IED which was hidden inside of a dead dog detonated approximately three feet away from Mr. Burks' unarmored Humvee. The impact of the blast caused the vehicle to lift from the ground, slam back down and catch on fire. In the chaos, Mr. Burks'

team also came under fire from insurgents with small arms fire.

3674. The weapon used to attack and injure Mr. Aaron Scott Arthur Burks was an Iranian manufactured/supplied IED and small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3675. As a result of the attack, Aaron Scott Arthur Burks sustained significant injuries. Mr. Burks was hit by shrapnel, causing injury to his left arm and left eye. The middle finger on his left hand was almost detached by the blast. He suffered a back injury in addition to mental injuries due to the traumatic nature of his experience. He has been diagnosed with PTSD, anxiety and depression.

3676. Aaron Scott Arthur Burks received extensive medical treatment at the scene of the attack due to the extreme nature of his injuries. He was evacuated from the compound via medivac to the medical compound in Iraq where he received immediate surgery on his finger and treatment for his other shrapnel wounds. He was then moved to the Landstuhl Regional Medical Center in German where he received a second surgery on his finger. He returned to the United States and his care continued with the Dwight D. Eisenhower Army Medical Center in Augusta, Georgia, for two additional surgeries on his finger around the April 2004 timeframe. Dr. Richard Lebow performed an operation to repair the damage to his back in Nashville, Tennessee. In 2011, Mr. Burks' PTSD needed intensive inpatient treatment due to suicidal thoughts, which he received from the Veterans Administration Medical Center in Murfreesboro, Tennessee. From 2014 – 2015, Mr. Burks received weekly treatment for his PTSD from the Cincinnati Veterans Administration Hospital in Ohio. He currently receives quarterly back injections at The Christ Hospital in Cincinnati, Ohio.

3677. As a result of the December 10, 2003 Terrorist Attack, and the injuries he

suffered, Aaron Scott Arthur Burks has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 346. THE NOVEMBER 25, 2003 ATTACK – ZONE 15, BAGHDAD

### A. PLAINTIFFS THE MICHAEL GAMBLE FAMILY

3678. Plaintiff Michael Gamble is a citizen of the United States and domiciled in the State of Kentucky.

3679. On November 25, 2003, Michael Gamble, age 41, was serving in the U.S. military in Baghdad, Iraq.

3680. Mr. Michael Gamble was performing his duties in the third Humvee in an eight-vehicle convoy. Mr. Gamble's unit was conducting a security patrol in Zone 15 in West Baghdad, Iraq when the vehicle directly in front of his hit an IED. Mr. Gamble's Humvee was jolted in the blast, causing Mr. Gamble to hit his head on the top of the vehicle, re-injuring his back.

3681. The weapon used to attack and injure Mr. Michael Gamble was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3682. As a result of the attack, Michael Gamble sustained a second lower back injury. In addition to his physical injuries, Mr. Gamble has also been diagnosed with PTSD.

3683. Michael Gamble received extensive medical treatment for his injuries when he returned to base at Camp Baker. Upon his return to the United States, he began receiving treatment for his physical and psychological injuries at Bayne-Jones Army Community Hospital in Fort Polk, Louisiana beginning in August of 2004. In 2009, Mr. Gamble was

treated at the Carl Darnell Army Medical Center in Fort Hood, Texas. Later that year, beginning around November, he began receiving treatment and therapy at the Ireland Army Community Hospital in Fort Knox, Kentucky. In the same time-frame, Mr. Gamble received back treatments and other services at the Louisville Veterans Administration Medical Center in Louisville, Kentucky. He is still being treated at both Ireland Army Community Hospital and Louisville Veterans Administration Medical Center, but received surgery on his right wrist in June of 2015 at the Louisville facility.

3684. As a result of the November 25, 2003 Terrorist Attack, and the injuries he suffered, Michael Gamble has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3685. Plaintiff Shirley Gamble is a citizen of the United States and domiciled in the State of Kentucky. She is the wife of Michael Gamble.

3686. As a result of the November 25, 2003 Terrorist Attack, and the injuries suffered by Michael Gamble, Plaintiff's Shirley Gamble has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

3687. Mr. Gamble was also injured in the May 28, 2003 small arms fire attack in West Baghdad

## 347. THE NOVEMBER 20, 2003 ATTACK - KIRKUK

### A. PLAINTIFFS THE MICHAEL JOSEPH JAMES FAMILY

3688. Plaintiff Michael Joseph James is a citizen of the United States and domiciled in the State of California.

3689. On November 20, 2003, Michael Joseph James, age 23, was serving in the U.S.

military in Kirkuk, Iraq.

3690. Mr. Michael Joseph James was in the area when a truck bomb laden with explosives was driven to the PUK Headquarters, detonated just outside the perimeter of the base.

3691. The weapon used to attack and injure Mr. Michael Joseph James was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3692. As a result of the attack, Michael Joseph James suffered a traumatic brain injury (TBI), as well as PTSD and migraines.

3693. Michael Joseph James received medical treatment at Livermore VA hospital, McCullen Clinic and the PALO ALTO VA.

3694. As a result of the November 20, 2003 Terrorist Attack, and the injuries he suffered, Michael Joseph James has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 348. THE NOVEMBER 12, 2003 ATTACK – NASIRIYA

### A. PLAINTIFFS THE FLOYD C. PETERS, JR. FAMILY

3695. Plaintiff Floyd C. Peters, Jr. is a citizen of the United States and domiciled in the State of Alabama.

3696. On November 12, 2003, Floyd C. Peters, Jr., age 37, was serving in the U.S. military in Iraq.

3697. Mr. Peters was in the first Humvee in a convoy of three vehicles when an RPG exploded five feet from his Humvee. The convoy continued to be attacked by VBIED’s, RPG,

mortar, and small arms fire.

3698. The weapons used to attack and injure Mr. Peters were Iranian manufactured/supplied RPGs, VBIED's, mortars, and small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3699. As a result of the November 12, 2003 Terrorist Attack, Floyd C. Peters, Jr. suffered injuries from the concussive blast forces including tinnitus, and PTSD.

3700. Mr. Peters received medical treatment at Carl R. Darnall Army Medical Center, Ft. Hood, Texas; Michael E. DeBakey VA Medical Center, Houston, Texas; the Charles Wilson VA Outpatient Clinic, Lufkin, Texas; and Pineywoods Psychological Services, Nacogdoches, Texas. Since the attack, he has continued to receive treatment for his injuries sustained in this attack.

3701. As a result of the November 12, 2003 Terrorist Attack, and the injuries he suffered, Mr. Peters has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3702. Plaintiff Christina Peters is a citizen of the United States and is domiciled in the state of Texas. She is the wife of Floyd C. Peters, Jr.

3703. Plaintiff, Katlin Peters, is a citizen of the United States and is domiciled in the state of Texas. She is the daughter of Floyd C. Peters, Jr.

3704. Plaintiff, Floyd A. Peters, is a citizen of the United States and is domiciled in the state of Texas. He is the son of Floyd C. Peters, Jr.

3705. Plaintiff, A.P., a minor child, is a citizen of the United States and is domiciled in the state of Texas. He is the son of Floyd C. Peters, Jr.

3706. Plaintiff, G.P., a minor child, is a citizen of the United States and is domiciled in the state of Texas. She is the daughter of Floyd C. Peters, Jr.

3707. Plaintiff, Santana M. Peters, is a citizen of the United States and is domiciled in the state of Texas. She is the daughter of Floyd C. Peters, Jr.

3708. Plaintiff, Linda Peters, is a citizen of the United States and is domiciled in the state of Texas. She is the mother of Floyd C. Peters, Jr.

3709. Plaintiff, Floyd C. Peters, Sr., is a citizen of the United States and is domiciled in the state of Texas. He is the father of Floyd C. Peters, Jr.

3710. Plaintiff, Disa Peters Clasen, is a citizen of the United States and is domiciled in the state of Texas. She is the sister of Floyd C. Peters, Jr.

3711. Plaintiff, Joy White, is a citizen of the United States and is domiciled in the state of Texas. She is the sister of Floyd C. Peters, Jr.

3712. Plaintiff, Lisa Peters Smethurst, is a citizen of the United States and is domiciled in the state of Texas. She is the sister of Floyd C. Peters, Jr.

3713. As a result of the November 12, 2003 Terrorist Attack, and the injuries suffered by Floyd C. Peters, Jr., Plaintiffs, Christina Peters, Katlin Peters, Floyd A. Peters, A.P., a minor child, G.P., a minor child, Santana M. Peters, Linda Peters, Floyd C. Peters, Sr., Disa Peters Clasen, Joy White, and Lisa Peters Smethurst have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 349. THE NOVEMBER 12, 2003, ATTACK - AL-NASIRIYAH, IRAQ, ITALIAN MILITARY CAMP

### A. PLAINTIFFS THE FREDDIE LEE KING, JR. FAMILY

3714. Plaintiff Freddie Lee King, Jr., is a citizen of the United States and domiciled in the

State of Texas.

3715. On November 12, 2003, Freddie Lee King, Jr, age 37, was serving in the U.S. military in al-Nasiriyah, Iraq, Italian Military Camp.

3716. Mr. Freddie Lee King, Jr., was driving a fuel truck on the Italian Carabinieri Corps' Multinational Specialized Unit in al-Nasiriyah, Iraq, when a car bomb exploded approximately 250 yards from where he was posted.

3717. The weapon used to attack and injure Mr. Freddie Lee King, Jr., was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3718. As a result of the attack, Freddie Lee King, Jr., sustained a traumatic brain injury (TBI), as well as PTSD and anxiety.

3719. Freddie Lee King, Jr. received verbal therapy for the TBI at the Army Wellness Center in Fort Lee, Virginia immediately upon his return to the United States. In 2008 through 2011, his care continued at the Womack Army Medical Center in Fort Bragg, North Carolina. Beginning in 2012 and continuing through 2014, Mr. King was finally diagnosed with PTSD and began to receive treatment for his mental injuries as well as speech therapy related to his TBI. From 2014 through the present, Mr. King continues to receive care at the Durham Veterans Administration Medical Center in Durham, North Carolina.

3720. As a result of the November 12, 2003 Terrorist Attack, and the injuries he suffered, Freddie Lee King, Jr., has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3721. Plaintiff Seda King is a citizen of the United States and domiciled in the State of

Texas. She is the wife of Freddie Lee King, Jr.

3722. As a result of the November 12, 2003 Terrorist Attack, and the injuries suffered by Freddie Lee King, Jr, Plaintiff's Seda King has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 350. THE OCTOBER 27, 2003 ATTACK – BAGHDAD

### A. PLAINTIFF ROOSEVELT ROSS, JR.

3723. Plaintiff Roosevelt Ross, Jr. is a citizen of the United States and domiciled in the State of Alabama.

3724. On October 27, 2003, Roosevelt Ross, Jr., age 33, was serving in the U.S. military in Iraq.

3725. Mr. Ross was having a conversation with one of his coworkers at the Al Bayra police station in the Al Dora neighborhood of Baghdad, Iraq when a suicide bomber drove a vehicle in front of the building and detonated. The blast threw Mr. Ross down the hallway and knocked him unconscious. The blast killed his friend instantly. Mr. Ross was hit by shrapnel in the back of the head, neck, right arm and hand, and his right ear was severed.

3726. The weapon used to attack and injure Mr. Ross was an Iranian manufactured/supplied VBIED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3727. As a result of the attack, Mr. Ross sustained significant injuries including severe lacerations, lumbar strain, tendon damage to right hand, right knee pain, PTSD, TBI, anxiety, depression, and tinnitus.

3728. Mr. Ross received medical treatment at the scene and was medevac'd to the hospital for surgery. Roosevelt Ross later underwent medical and psychological treatment at Landstuhl

Regional Medical Center, Landstuhl, Germany; Walter Reed Medical Center, Bethesda, MD; Dwight D Eisenhower Medical Center, Augusta, GA; Martin Army Community Hospital, Fort Benning, GA; Tuskegee Veterans Administration Medical Center, Tuskegee, AL; James A Haley Veterans Hospital; Tampa, FL; and 42nd Medical Group, Montgomery, AL for his back injury, PTSD, TBI, anxiety, depression, and other symptoms related to PTSD.

3729. As a result of the October 27, 2003 Terrorist Attack, and the injuries he suffered, Roosevelt Ross, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 351. THE OCTOBER 21, 2003 ATTACK – ABU GHRAIB

### A. PLAINTIFFS THE JOHN FLAMER FAMILY

3730. Plaintiff John Flamer is a citizen of the United States and domiciled in the State of Maryland.

3731. On October 21, 2003, John Flamer, age 43, was serving in the U.S. military in Iraq.

3732. Mr. Flamer was driving a 5-ton truck as part of 12-vehicle security convoy from Baghdad International Airport to Camp Fallujah when it was struck by multiple IEDs.

3733. The weapons used to attack and injure Mr. Flamer were Iranian manufactured/supplied IEDs provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3734. As a result of the attack, John Flamer suffered concussive blast injuries, a ruptured eardrum, TBI, and PTSD.

3735. John Flamer received extensive medical treatment at the Washington DC Veterans Affairs Medical Center.

3736. As a result of the October 21, 2003 Terrorist Attack, and the injuries he suffered,

John Flamer has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3737. Plaintiff Thelma Flamer is a citizen of the United States and is domiciled in the state of Maryland. She is the wife of John Flamer.

3738. Plaintiff Derrick Flamer is a citizen of the United States and is domiciled in the state of Maryland. He is the son of John Flamer.

3739. Plaintiff Kennard Williams is a citizen of the United States and is domiciled in the state of Maryland. He is the son of John Flamer.

3740. Plaintiff Cherlyn Williams is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the sister of John Flamer.

3741. Plaintiff Reginald Boyd is a citizen of the United States and is domiciled in the state of Pennsylvania. He is the half-brother of John Flamer

3742. Plaintiff Olivia Flamer is a citizen of the United States and is domiciled in the state of Pennsylvania. She is the mother of John Flamer.

3743. As a result of the October 21, 2003 Terrorist Attack, and the injuries suffered by John Flamer, Plaintiffs, Thelma Flamer, Derrick Flamer, Kennard Williams, Cherlyn Williams, Reginald Boyd and Olivia Flamer, and have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 352. THE OCTOBER 3, 2003 ATTACK – BALAD, SALAH AD DIN

### A. PLAINTIFFS THE PETER KEVIN LANDSTEINER FAMILY

3744. Plaintiff Peter Kevin Landsteiner is a citizen of the United States and domiciled in the State of Texas.

3745. On October 3, 2003, Peter Kevin Landsteiner, age 49, was serving in the U.S. military in Iraq.

3746. Mr. Landsteiner was attacked in Balad, Salah ad Din, Iraq while sitting on a bunker. The explosive impact of the mortar knocked Mr. Landsteiner head-first into the wall of the cement bunker.

3747. The weapon used to attack and injure Mr. Landsteiner was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3748. As a result of the attack, Peter Kevin Landsteiner suffered a head injury resulting in a TBI, crushed vertebrae in his neck, hearing loss in both ears, equilibrium problems, short term memory loss, verbal communication difficulties, tinnitus, and PTSD.

3749. Peter Kevin Landsteiner received extensive medical treatment for his injuries, including multiple hospital and physician visits at various medical facilities. Such medical treatment is ongoing. Among the facilities where Mr. Landsteiner was treated are FOB Anaconda, Brooke Army Medical Center, Madigan Army Medical Center, and Audie L. Murphy Memorial VA Hospital.

3750. As a result of the October 3, 2003 Terrorist Attack, and the injuries he suffered, Peter Kevin Landsteiner has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3751. Plaintiff Florence Landsteiner is a citizen of the United States and domiciled in the State of Texas. She is the wife of Peter Kevin Landsteiner.

3752. Plaintiff Jacob D. Landsteiner is a citizen of the United States and domiciled in the

State of Texas. He is the son of Peter Kevin Landsteiner.

3753. Plaintiff Jackson C. Landsteiner is a citizen of the United States and domiciled in the State of Texas. He is the son of Peter Kevin Landsteiner.

3754. As a result of the October 3, 2003 Terrorist Attack, and the injuries suffered by Peter Kevin Landsteiner, Plaintiff's, Florence Landsteiner, Jacob D. Landsteiner, and Jackson C. Landsteiner have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 353. THE SEPTEMBER 18, 2003 ATTACK – BAGHDAD

### A. PLAINTIFFS THE WILLIAM F. GUNTER FAMILY

3755. Plaintiff William F. Gunter is a citizen of the United States and domiciled in the State of Tennessee.

3756. On September 18, 2003, William F. Gunter, age 48, was serving in the U.S. military in Iraq.

3757. Mr. Gunter was working as a cook in the chow hall at Camp Logistics Base Seitz located southwest of Baghdad near to the Baghdad International Airport when a mortar struck the side of the building.

3758. The weapon used to attack and injure Mr. Gunter was an Iranian manufactured/supplied mortar provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3759. As a result of the attack, William F. Gunter suffered concussive blast injuries, shrapnel wounds, and PTSD.

3760. William F. Gunter received extensive medical treatment at Baghdad Hospital, Landstuhl Regional Medical Center, Walter Reed National Military Medical Center, Camp

Atterbury Troop Medical Clinic, William Jennings Bryan Dorn VA Medical Center, and Charles George VA Medical Center, and other medical facilities.

3761. As a result of the September 18, 2003 Terrorist Attack, and the injuries he suffered, William F. Gunter has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3762. Plaintiff, Clifford E. Gunter, is a citizen of the United States and is domiciled in the state of South Carolina. He is the son of William F. Gunter.

3763. Plaintiff, Victoria L. Gunter, is a citizen of the United States and is domiciled in the state of South Carolina. She is the daughter of William F. Gunter.

3764. Plaintiff, Sara Moon, is a citizen of the United States and is domiciled in the state of South Carolina. She is the mother of William F. Gunter.

3765. Plaintiff, Patricia S. Malpass, is a citizen of the United States and is domiciled in the state of South Carolina. She is the sister of William F. Gunter.

3766. Plaintiff, Peggy Ann Lewis, is a citizen of the United States and is domiciled in the state of South Carolina. She is the sister of William F. Gunter.

3767. As a result of the September 18, 2003 Terrorist Attack, and the injuries suffered by William F. Gunter, Plaintiffs, Clifford E. Gunter, Victoria L. Gunter, Sara Moon, Patricia S. Malpass, and Peggy Ann Lewis have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 354. THE SEPTEMBER 14, 2003 ATTACK – FALLUJAH

### A. PLAINTIFF GEORGE PEREZ

3768. Plaintiff George Perez is a citizen of the United States and domiciled in the State

of North Carolina.

3769. On September 14, 2003, George Perez, age 20, was serving in the U.S. military in Iraq.

3770. Mr. Perez was in the first vehicle in a convoy of 4 vehicles near Camp Mercury when an IED buried in the median, detonated, striking the Humvee in which Mr. Perez was located. In addition to wounding Mr. Perez, the IED explosion killed Sgt. Trevor Blumberg and wounded one other soldier who was also riding in the Humvee.

3771. The weapon used to attack and injure Mr. Perez was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3772. As a result of the attack, George Perez, suffered significant injuries including injuries to his lower extremities, resulting in eventual below the knee amputation of his left leg, shrapnel wounds to his shoulder(s), neck, back, and left hip, PTSD, and anxiety.

3773. George Perez has received extensive medical treatment for his injuries. After stabilizing blood loss at the attack site Mr. Perez was medevac'd to the 31st Combat Support Hospital in Baghdad where he underwent amputation of his toes on his left foot. He was then medevac'd to Landstuhl Regional Medical Center, Landstuhl, Germany, where he underwent surgery to amputate his left foot. Mr. Perez was then medevac'd to Brooke Army Medical Center, Ft. Sam Houston, TX, for additional surgery on his left leg, including revision of his left foot amputation to below knee amputation. He was also treated at Walter Reed National Military Medical Center, Bethesda, Maryland, and Womack Army Medical Center in Ft. Bragg, North Carolina. He continues to receive medical treatment for his physical injuries as well as psychological treatment for PTSD, and anxiety.

3774. As a result of the September 14, 2003 Terrorist Attack, and the injuries he suffered, George Perez has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 355. THE JULY 26, 2003 ATTACK - BASRAH

### A. PLAINTIFF YVENSON GALA

3775. Plaintiff Yvenson Gala is a citizen of the United States and domiciled in the State of Florida.

3776. On July 26, 2003, Yvenson Gala, age 20, was serving in the U.S. military in Iraq.

3777. Mr. Gala was in a convoy when the vehicle ahead of him detonated an IED that resulted in Mr. Gala's injuries.

3778. The weapon used to attack and injure Yvenson Gala was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3779. As a result of the attack, Yvenson Gala suffered a concussion, torn shoulder ACL, and back injuries. Mr. Gala currently suffers from back pains, headaches, PTSD, anxiety, and depression as a result of the July 26, 2003 attack in which he was injured.

3780. Yvenson Gala received extensive medical treatment including treatment for the above-described injuries. Mr. Gala is currently undergoing psychological treatment, as well.

3781. As a result of the July 26, 2003 Terrorist Attack, and the injuries he suffered, Yvenson Gala has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

## 356. THE JULY 23, 2003 ATTACK – RAMADI

### A. PLAINTIFFS THE JOSHUA T. BYERS FAMILY

3782. Plaintiff Joshua T. Byers was a citizen of the United States and domiciled in the State of Colorado at the time of his death.

3783. On July 23, 2003, Joshua T. Byers, age 29, was serving in the U.S. military in Iraq.

3784. Mr. Byers was a passenger in a HMMWV travelling in a convoy from Ramadi to Fallujah when the vehicle was attacked with an IED

3785. Joshua T. Byers was killed in the attack.

3786. The weapon used to attack and injure Mr. Byers was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3787. Plaintiff, Milam Byers, is a citizen of the United States and domiciled in the state of Arizona. He is the brother of Joshua T. Byers and brings an action individually, and on behalf of the Estate of Joshua T. Byers, and all heirs thereof, as its legal representative.

3788. Plaintiff, Mary A. Byers, is a citizen of the United States and domiciled in the state of Tennessee. She is the mother of Joshua T. Byers.

3789. Plaintiff, Lloyd C. Byers, is a citizen of the United States and domiciled in the state of Tennessee. He is the father of Joshua T. Byers.

3790. Plaintiff, Jared R. Byers, is a citizen of the United States and domiciled in the state of Tennessee. He is the brother of Joshua T. Byers.

3791. As a result of the July 23, 2003 Terrorist Attack, and the injuries suffered by and the death of Joshua T. Byers, Plaintiffs, Milam Byers, Mary A. Byers, Lloyd C. Byers, and Jared R. Byers, have severe mental anguish, extreme emotional pain and suffering, medical expenses, funeral expenses, loss of Joshua T. Byers' society, services, companionship, comfort, protection,

instruction, advice and counsel, loss of earnings, income, and net accumulation to the estate of Joshua T. Byers.

## 357. THE JULY 5, 2003 ATTACK - MSR TAMPA BETWEEN BIAP AND ABU GHRAIB

### A. PLAINTIFFS THE RICARDO ALFREDO BRIZUELA, JR., FAMILY

3792. Plaintiff Ricardo Alfredo Brizuela, Jr. is a citizen of the United States and is domiciled in the State of Georgia.

3793. On July 5, 2003, Ricardo Alfredo Brizuela, Jr., age 31, was serving in the U.S. military in MSR Tampa between BIAP and Abu Ghriab.

3794. Mr. Ricardo Alfredo Brizuela, Jr. was driving the last Humvee in a six-vehicle convoy when his unit came under attack. Mr. Brizuela's Humvee was hit with an RPG on the front, passenger side of the vehicle. His unit then began to take on small-arms fire while waiting for a Quick Response Force which never showed. Mr. Brizuela was able to extricate his team by driving the still-flaming vehicle out of the line of fire. This maneuver, while saving their lives, caused a traffic collision, further injuring Mr. Brizuela.

3795. The weapon used to attack and injure Mr. Ricardo Alfredo Brizuela, Jr. was an Iranian manufactured/supplied RPG and small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3796. As a result of the July 5, 2003 Terrorist attack, Ricardo Alfredo Brizuela, Jr. suffered injuries to his knee and his head in the explosion and subsequent small arms fire. Due to the traumatic nature of the events he witnessed, Mr. Brizuela has been diagnosed with PTSD, anxiety and depression.

3797. Ricardo Alfredo Brizuela, Jr. was assessed at the scene, and treated at the emergency room at the Combat Support Hospital at the Baghdad International Airport for his head

injury. Upon his return to the United States, beginning in August 2006, he began seeking treatment for his psychological injuries at the Veterans Administration Long Beach Healthcare System, where he continues to receive care. In 2010, Mr. Brizuela began seeking treatment for his physical injuries at the Veterans Administration Greater Los Angeles Health Care Systems, Ambulatory Care Center, where he continues to receive treatment for his injuries.

3798. As a result of the July 5, 2003 Terrorist Attack, and the injuries he suffered, Ricardo Alfredo Brizuela, Jr. has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3799. Plaintiff Alexander Anthony Brizuela is a citizen of the United States and domiciled in the State of Georgia. She is the daughter of Ricardo Alfredo Brizuela, Jr.

3800. As a result of the July 5, 2003 Terrorist Attack, and the injuries suffered by Ricardo Alfredo Brizuela, Jr., Plaintiff's daughter Alexander Anthony Brizuela has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 358. THE MAY 28, 2003 ATTACK - BAGHDAD

### A. PLAINTIFFS THE MICHAEL GAMBLE FAMILY

3801. Plaintiff Michael Gamble is a citizen of the United States and domiciled in the State of Kentucky.

3802. On May 28, 2003, Michael Gamble, age 40, was serving in the U.S. military in Baghdad, Iraq.

3803. Mr. Michael Gamble was performing his duties his unit was attacked with small arms fire. Mr. Gamble’s convoy had parked their vehicles at Zone 15 in West Baghdad, creating

a maze of vehicles at the checkpoint. Three men in a vehicle approached the checkpoint suspiciously, and when signaled by our troops to slowly proceed through, they instead rapidly accelerated toward our troops and firing small arms fire. Mr. Gamble was forced to jump over his vehicle to avoid being hit, injuring his back and left hand and wrist.

3804. The weapon used to attack and injure Mr. Michael Gamble was an Iranian manufactured/supplied small arms fire provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3805. As a result of the attack, Michael Gamble suffered a lower back injury, strained neck and dislocated left shoulder. He also fractured his thumb and middle finger of his right hand. In addition to his physical injuries, Mr. Gamble has also been diagnosed with PTSD.

3806. Michael Gamble began receiving treatment for his physical and psychological injuries at Bayne-Jones Army Community Hospital in Fort Polk, Louisiana beginning in August of 2004. In 2009, Mr. Gamble was treated at the Carl Darnell Army Medical Center in Fort Hood, Texas. Later that year, beginning around November, he began receiving treatment and therapy at the Ireland Army Community Hospital in Fort Knox, Kentucky. In the same time-frame, Mr. Gamble received back treatments and other services at the Louisville Veterans Administration Medical Center in Louisville, Kentucky. He is still being treated at both Ireland Army Community Hospital and Louisville Veterans Administration Medical Center, but received surgery on his right wrist in June of 2015 at the Louisville facility.

3807. As a result of the May 28, 2003 Terrorist Attack, and the injuries he suffered, Michael Gamble has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3808. Plaintiff Shirley Gamble is a citizen of the United States and domiciled in the State of Kentucky. She is the wife of Michael Gamble.

3809. As a result of the May 28, 2003 Terrorist Attack, and the injuries suffered by Michael Gamble, Plaintiff's Shirley Gamble has past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages, including loss of services.

## 359. THE MAY 8, 2003 ATTACK – BAGHDAD

### A. PLAINTIFFS THE ARTHUR MOYE FAMILY

3810. Plaintiff Arthur Moye is a citizen of the United States and domiciled in the State of Alabama.

3811. On May 8, 2003, Arthur Moye, age 39, was serving in the U.S. military in Iraq.

3812. Arthur Moye was in a 60 vehicle convoy approaching Camp Anaconda when his vehicle was struck by an IED that had been placed in the wreckage of a disabled vehicle. The explosion caused his Humvee to be blown over the embankment, nose first into the ditch. The explosion knocked Mr. Moye unconscious. When Mr. Moye regained consciousness he heard small arms fire around him as his unit attempted to rescue him.

3813. The weapon used to attack and injure Mr. Moye on May 8, 2003 was an Iranian manufactured/supplied IED provided by Iran and/or its agents to Iranian-funded and Iranian-trained terror operatives in Iraq.

3814. As a result of the attack, Mr. Moye, suffered significant injuries including back injuries, PTSD, anxiety, and depression. He continues to receive ongoing medical care and treatment.

3815. Following the attack, Mr. Moye was medevac'd to Baghdad International Airport for medical treatment and later underwent medical and psychological treatment at Camp Arifjan,

Kuwait; Landstuhl Regional Medical Center, Landstuhl, Germany; Malcolm Grow Medical Clinic, Joint Base Andrews, MD; Fort Winn Army Hospital, Fort Stewart, GA; Martin Army Community Hospital, Fort Benning, GA; Montgomery VA Hospital, Montgomery, AL; Montgomery Psychiatry Clinic, Montgomery, AL; Montgomery Neurology Center, Montgomery, AL; Auburn Spine Center, Auburn, AL: and Samaritan Counseling Center, Montgomery, AL. Since the attack, he has continued to receive treatment for spinal injuries, PTSD, anxiety, depression, and other symptoms related to PTSD.

3816. As a result of the May 8, 2003 Terrorist Attack, and the injuries he suffered, Arthur Moye has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

3817. Plaintiff Debra Moye is a citizen of the United States and is domiciled in the state of Alabama. She is the wife of Arthur Moye.

3818. Plaintiff Eddie Mae Moye is a citizen of the United States and is domiciled in the state of Alabama. She is the Mother of Arthur Moye.

3819. Plaintiff Shayla Finklea-Pettway is a citizen of the United States and is domiciled in the state of Alabama. She is the daughter of Arthur Moye.

3820. Plaintiff Jade Moye Berrong is a citizen of the United States and is domiciled in the state of Alabama. She is the Daughter of Arthur Moye.

3821. As a result of the May 8, 2003 Terrorist Attack, and the injuries suffered by Arthur Moye, Plaintiffs, Debra Moye, Jade Moye Berrong, Shayla Finklea-Pettway and Eddie Mae Moye have past and future noneconomic damages, including severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of consortium, and past and future economic damages,

including loss of services.

## VII. ALL OF THE TERRORIST ATTACKS WERE ACTS OF INTERNATIONAL TERRORISM

3822. At no time during the Relevant Period, nor due to actions of United States and Coalition Forces in Iraq, did the United States declare war or enact an Authorization for the use of military force against Iran, nor did the United States or Coalition Forces engage in an armed conflict with the military forces of Iran, nor did Iran's military forces or their agents engage in lawful acts of war against Coalition Forces or U.S. nationals, including Plaintiffs.

3823. At no time relevant to this Action did the United States engage in an armed conflict with the military forces of Iran, nor did Iran's military forces or their agents engage in lawful acts of war against Coalition Forces and U.S. nationals, including Plaintiffs.

3824. At no time relevant to this Action did the operatives of Hezbollah, the IRGC, the IRGC-QF, the Special Groups, Ansar al Islam and/or other Iranian-sponsored terrorists who killed and injured Plaintiffs carry fixed distinctive signs recognizable at a distance, carry arms openly, conduct their operations in accordance with the laws and customs of war, or enjoy any form of combatant immunity for their acts.

3825. The specific attacks alleged herein were all carried out by terrorists and terrorist organizations, including designated FTOs, SDGTs, SDTs, and/or SDNs (all with the substantial and material support of Defendants), and not by armed forces of recognized governments or military forces.

3826. The conduct of Iran, IRGC, IRGC-QF, Hezbollah, Al Qaida, Ansar al Islam, the Special Groups and/or other Iranian-supported terrorists, including the FTOs, SDGTs, SDTs, and/or SDNs, including those responsible for perpetrating the Terrorist Attacks which resulted in the injuries or deaths of Plaintiffs, violated the laws of armed conflict (including, e.g., AAH

operatives masquerading as members of U.S. armed forces, targeting civilians and torturing and executing defenseless hostages), and the widespread and intentional attacks upon U.S. nationals (including Plaintiffs), British, Iraqi, and other civilians and United Nations personnel, constituted a substantial, rather than an incidental, part of their objectives and conduct.

3827. The deaths and injuries Plaintiffs sustained were not the result of, nor did they occur in the course of, a declared war with Iran, or an armed conflict between the United States and Iran.

3828. The acts of the IRGC, IRGC-QF, Hezbollah, the Special Groups, Al Qaida and/or Ansar al Islam (including the FTOs, SDGTs, SDTs, and/or SDNs responsible for perpetrating the Terrorist Attacks) that injured or killed Plaintiffs were acts of international terrorism within the meaning of 18 U.S.C. § 2331, involving violent acts intended to influence the United States and the United Nations by coercion (by coercing the withdrawal of Coalition Forces from Iraq) and to intimidate and coerce the Iraqi population, and were also acts constituting terrorist activities within the meaning of 8 U.S.C. § 1182(a)(3)(B)(iii)-(iv), and/or engaging in terrorism within the meaning of 22 U.S.C. § 2656f.

3829. The acts of Iran, the IRGC, IRGC-QF, Hezbollah, Al Qaida, Ansar al Islam, Special Groups and/or other Iranian-sponsored terrorists that injured the Plaintiffs were acts of torture, hostage taking and extrajudicial killing as defined by 28 U.S.C. §§ 1605A(h)(2) and 1605A(h)(7), and acts of international terrorism as defined by of 18 U.S.C. § 2331.

3830. The Terrorist Attacks at issue here were acts of international terrorism that were enabled by Defendant's provision of massive financial and material support and resources as defined by 28 U.S.C. § 1605A(h)(3) and 18 U.S.C. § 2339A, which caused the injuries to and/or deaths of Plaintiffs. Without Iran's provision of such material support, on the scale that such support was provided, the IRGC, IRGC-QF, Hezbollah, the Special Groups, Al Qaida, Ansar al

Islam and/or other Iranian proxies would not have been unable to conduct the thousands of acts of international terrorism on the scale and with the lethality they perpetrated, including the Terrorist Attacks, which caused the deaths, maiming, or otherwise injuring of Plaintiffs and Plaintiffs' family members.

## VIII. THE ACTS OF IRAN CAUSED PLAINTIFFS' INJURIES AND DEATHS

3831. As discussed herein, Iran has a long history of materially supporting the Special Groups, Al Qaida, Ansar al Islam, and other terrorists, including the FTOs, SDGTs, SDTs, SDNs and/or other Iranian sponsored terrorist responsible for the Terrorist Attacks which killed or injured Plaintiffs. Simply put, Iran is no stranger to supporting terrorist attacks perpetrated by FTOs and other terrorist organizations against U.S. nationals with the intent to terrorize, kill or cause severe bodily and emotional harm.

3832. Here, Iran provided material support and resources to the Terrorist Groups and other individuals, including the FTOs, SDGTs, SDTs, SDNs and other terrorists who perpetrated the Terrorist Attacks which killed or injured Plaintiffs.

3833. These individuals who committed, and the Terrorist Groups who carried out, the Terrorist Attacks alleged herein were directly and materially supported by Iran and/or its Agents & Proxies. This material support included, but is not limited to, expert advice, training, intelligence, funding, munitions, weapons, raw materials, logistical support, command and control, diplomatic cover, permissive environment, operational authority, safe passage and sanctuary in areas within Iraq (and in Iran and Lebanon) controlled either by Hezbollah/IRGC-QF trained, equipped, and directed Shia Special Groups, and/or in areas within Iraq controlled by Iranian-supported Sunni elements including, but not limited to, Al Qaida and Ansar al Islam.

3834. Without Iran's support, the Terrorist Groups and other individuals and organizations, including the FTOs, SDGTs, SDTs, and/or SDNs responsible for the Terrorist

Attacks which resulted in Plaintiffs being killed or injured would not have been able to carry out such Terrorist Attacks with the scale and lethality in which they were perpetrated.

## IX. CLAIMS FOR RELIEF

3835. Plaintiffs bring the following claims against all Defendants.

## A. FIRST CLAIM FOR RELIEF

### AGAINST ALL DEFENDANTS ON BEHALF OF EACH PLAINTIFF IDENTIFIED HEREIN WHO SURVIVED AN ACT OF INTERNATIONAL TERRORISM FOR DEFENDANTS' MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING THAT RESULTED IN PERSONAL INJURY UNDER 28 U.S.C. § 1605A(c)

3836. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

3837. Iran is, and was at all times relevant, a State Sponsor of Terrorism within the meaning of § 1605A(h)(6).

3838. Plaintiffs identified in the foregoing paragraphs were grievously injured by Defendants' provision of material support (within the meaning of § 1605A(h)(3)) to Hezbollah, the IRGC, MOIS, Special Groups, AQ, AAI and the Terrorist Groups who planned, conspired and provided substantial support to extrajudicial killings, attempted extrajudicial killings, torture and hostage takings that injured the Plaintiffs.

3839. As a direct and proximate result of the willful, wrongful, and intentional acts of the Defendants and their agents, Plaintiffs identified in the foregoing paragraphs were injured and endured severe physical injuries, extreme mental anguish, pain and suffering, loss of solatium, and economic losses including medical expenses and lost income.

3840. Plaintiffs' compensatory damages include, but are not limited to, their severe physical injuries, extreme mental anguish, pain and suffering, and any economic losses determined by the trier of fact.

3841. Defendants are jointly and severally liable for the full amount of Plaintiffs' compensatory damages, including physical injuries, extreme mental anguish, pain and suffering and any pecuniary loss.

3842. Defendants' acts in providing material support for acts of extrajudicial killing, torture, and hostage-taking were intended to inflict, and would reasonably result in, severe emotional distress on the Plaintiffs.

3843. Because Defendants and their Agents routinely relied upon and controlled MOIS, IRISL, Mahan Air, KAA, and/or the Iranian National Oil Company to provide material support to FTOs and Terrorist Groups or other terrorists, including those responsible for the Terrorist Attacks that resulted in maiming or injury to Plaintiffs, to advance the terrorist aims and objectives of each other, its agents and instrumentalities, and the FTOs, Special Groups, and other terrorists, Defendants are equally and vicariously liable for the personal injuries caused by each other, and their agents, including MOIS, IRISL, Mahan Air, KAA, and the Iranian National Oil Company.

3844. The conduct of the Defendants and their Agents was criminal, outrageous, extreme, wanton, willful, malicious, a threat to international peace and security, and a threat to the public warranting an award of punitive damages against each Defendant pursuant to 28 U.S.C. § 1605A(c).

## B. SECOND CLAIM FOR RELIEF

### AGAINST ALL DEFENDANTS ON BEHALF OF THE ESTATES OF PLAINTIFFS IDENTIFIED HEREIN FOR DEFENDANTS' MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING THAT RESULTED IN WRONGFUL DEATH UNDER 28 U.S.C. § 1605A(c)

3845. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

3846. Iran is, and was at all times relevant, a State Sponsor of Terrorism within the meaning of § 1605A(h)(6).

3847. The Estates of Plaintiffs listed in the foregoing paragraphs assert claims on behalf of the decedents who were grievously injured by Defendants' provision of material support (within the meaning of § 1605A(h)(3)) to Hezbollah, the IRGC, MOIS, the Special Groups, AQ, AAI and the Terrorist Groups who planned, conspired and provided substantial support to extrajudicial killings, attempted extrajudicial killings, torture and hostage takings that caused the Decedents' deaths.

3848. As a direct and proximate result of the willful, wrongful, and intentional acts of the Defendants and their agents, the Decedents listed in the foregoing paragraphs endured physical injury, extreme mental anguish, and pain and suffering that ultimately lead to their deaths.

3849. Defendants are jointly and severally liable for the full amount of Plaintiffs' compensatory damages, including physical injuries, extreme mental anguish, pain and suffering and any pecuniary loss (or loss of income to the estates).

3850. Because Defendants and their Agents routinely relied upon and controlled MOIS, IRISL, Mahan Air, KAA, and the Iranian National Oil Company to provide material support to FTOs and Terrorist Groups or other terrorist organizations, including those FTOs, Special Groups, and other terrorist organizations responsible for the Terrorist Attacks that resulted in maiming or injury to Plaintiffs, to advance the terrorist aims and objectives of each other, its agents and instrumentalities, and the FTOs, Special Groups, and other terrorists, Defendants are equally and vicariously liable for the deaths caused by each other, and their agents, including MOIS, IRISL, Mahan Air, KAA, and the Iranian National Oil Company.

3851. The conduct of the Defendants and their Agents was criminal, outrageous, extreme,

wanton, willful, malicious, a threat to international peace and security, and a threat to the public warranting an award of punitive damages against each Defendant pursuant to 28 U.S.C. § 1605A(c).

## C. THIRD CLAIM FOR RELIEF

### AGAINST ALL DEFENDANTS ON BEHALF OF THE FAMILIES OF PLAINTIFFS IDENTIFIED HEREIN AS INJURED OR KILLED AS A RESULT OF DEFENDANTS' MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING, TORTURE AND HOSTAGE TAKING FOR LOSS OF SOLATIUM AND INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS UNDER 28 U.S.C. § 1605A(c)

3852. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

3853. Iran is, and was at all times relevant, a State Sponsor of Terrorism within the meaning of § 1605A(h)(6).

3854. Defendants' acts in providing material support for acts of extrajudicial killing, torture, and hostage-taking were intended to inflict severe emotional distress on the Plaintiffs.

3855. As a direct and proximate result of Defendants' acts, the families of individuals, identified in the foregoing paragraphs as injured or killed as a result of Defendants' acts in providing material support for acts of extrajudicial killing, torture, and hostage-taking, have suffered loss of solatium, severe emotional distress, extreme mental anguish, loss of sleep, loss of appetite, and other severe mental and physical manifestations, as well as other harms to be set forth to the trier of fact.

3856. Defendants are jointly and severally liable for the full amount of Plaintiffs' damages.

3857. Because Defendants and their Agents routinely relied upon and controlled MOIS, IRISL, Mahan Air, KAA. and the Iranian National Oil Company to provide material support to FTOs and Terrorist Groups or other terrorist organizations, including those FTOs, Special Groups,

and other terrorist organizations responsible for the Terrorist Attacks that resulted in maiming or injury to Plaintiffs, to advance the terrorist aims and objectives of each other, its agents and instrumentalities, and the FTOs, Special Groups, and other terrorists, Defendants are equally and vicariously liable for the damages caused by each other, and their agents, including MOIS, IRISL, Mahan Air, KAA, and the Iranian National Oil Company.

3858. Defendants' conduct was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. § 1605A(c).

## X. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand:

a) Judgment for all Plaintiffs against Defendants, jointly and severally, for compensatory damages, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, emotional injuries, economic losses, including medical expenses and lost income, and loss of solatium, in amounts to be determined at trial;

b) Judgment for Plaintiff Estates against Defendants, jointly and severally, for compensatory damages for the extrajudicial killing of the decedents, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, economic losses, including loss of support, financial and otherwise, and any pecuniary loss (or loss of income to the estates) in amounts to be determined at trial;

c) Judgment for all Plaintiffs against Defendants, jointly and severally, for punitive damages in an amount to be determined at trial;

i. Punitive damages are warranted in this case because:

1. The conduct of Defendants and their agents demonstrates a policy of encouraging, supporting and directing a campaign of thousands

or tens of thousands of deadly acts of terrorism directed at civilians and peacekeeping forces, and in particular against U.S. nationals, such that the monstrous character of the Terrorist Attacks is obvious. Specifically, Defendants focused its finances, infrastructure, agents and instrumentalities to support, encourage and increase the infliction of maximum pain and suffering on innocent people and their families;

2. The conduct of Defendants and their agents demonstrates that it harbors a deep-seated and malicious hatred of the United States and that Defendants intentionally committed terroristic murder and extrajudicial killings, torture and hostage taking of American civilians and peacekeeping servicemen and servicewomen;
3. The conduct of Defendants and their agents is extreme and outrageous such that it demonstrates an undeniable intent to do harm and inflict severe physical and emotional distress, even on those not present at the site of the acts;
4. The Terrorist Attacks described herein and that which the Plaintiffs experienced are among the most heinous acts of deliberate violence;
5. The Defendants, their agents, and all others, should be unquestionably deterred from committing similar acts in the future;
6. Defendants still publicly deny their role in the Terrorist Attacks and disclaim even their mere presence in Iraq during the Relevant Period;

7. Defendants took purposeful and concerted steps to deny, conceal, and mask their role in the Terrorist Attacks;
8. Defendants knowingly violated U.S. and international sanctions, laws, and treaties to effectuate their purposeful campaign of terror;
9. Defendants have built their system of terrorism such that they act through agents and instrumentalities of their state to perpetrate and perpetuate terrorism;
10. Defendants have commodified and privatized terrorism such that the core function of their agents, proxies and instrumentalities are sufficiently distinct and commercial, and not merely governmental.

d) Plaintiffs' costs and expenses;

e) Plaintiffs' attorney's fees; and

f) Such other and further relief as the Court finds just and equitable.

Dated: November 17, 2018

Respectfully Submitted,
By: */s/ Howard L. Nations*
Howard L. Nations
DC Bar No. TX143
3131 Briarpark Drive, Suite 208
Houston, Texas 77042
Telephone: 713.807.8400
Facsimile: 713.807.8423
Email: howard@howardnations.com
*Counsel for Plaintiffs*