UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF ROBERT P. HARTWICK, et. al. ) <br> ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> THE ISLAMIC REPUBLIC OF IRAN, et al., ) <br> ) <br> **Defendants.** ) <br> ) | Civil Action No. 1:18-CV-01612-CKK |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS
FROM THE U.S. DEPARTMENT OF DEFENSE**

Plaintiffs, by and through undersigned counsel, file this motion pursuant to Federal Rule of Civil Procedure Rule 45, seeking an order requiring the Department of Defense (the "DOD") to produce documents highly probative to Plaintiffs' claims, specifically, documentary evidence related to the attacks identified on Plaintiffs' Subpoena No. 1, some which are due to be submitted on December 1, 2022.[1] In support thereof, Plaintiffs would show:

**BACKGROUND**

This case involves civil claims brought against The Islamic Republic of Iran (and certain Iranian political subdivisions, agents, and instrumentalities) pursuant to the terrorism exception to the Foreign Sovereign Immunities Act (the "FSIA"). 28 U.S.C. § 1605A. Plaintiffs are U.S. service members and contractors who were injured or killed in terrorist attacks in Iraq between 2003 and

---

[1] Plaintiffs filed a motion for extension of time on November 10, 2022. If granted, the extension of the December 1, 2022 deadline does not impact the need for this motion to compel because DOD will not agree to producing all of the documents that Plaintiffs have subpoenaed related to the EFP and potential bellwether attacks in time to be presented in accordance with the Case Management Order (ECF No. 69), nor is there reasonable certitude to DOD's newly proposed date of February 28, 2022, for making a "narrow" production. *See* Ex. H, S. Escher Nov. 8, 2022 Email.

2011. Plaintiffs bear the burden of proving, to this Court's satisfaction, that they were injured or killed in Iranian-supported terrorist attacks. *See* 28 U.S.C. § 1608(e). As part of Plaintiffs' efforts to meet this burden, Plaintiffs properly subpoenaed specific evidence known to be in the possession of the DOD related to each of the subject attacks.[2]

Plaintiffs have diligently pursued discovery. *See* ECF No. 49 at 1, 23 (requesting the Court allow Plaintiffs to begin the discovery process); ECF No. 52 at 2–3 (requesting an order to begin third-party discovery); ECF No. 53 (outlining discovery plan in status report); ECF No. 66 at 2 (proposing a bellwether process and again requesting an order allowing Plaintiffs to conduct third-party discovery); and ECF No. 68 at Section V (detailing need for discovery in status report and proposed case management plan). On May 10, 2022, Plaintiffs filed a motion for leave to conduct third-party discovery and identified the types of discovery they would seek and the third parties they would serve with subpoenas or *Touhy* requests. ECF No. 71 at 4. The Court granted Plaintiffs' motion on May 11, 2022. *See* ECF No. 72.

Plaintiffs began the process immediately, serving five unique subpoenas on the DOD between May 25 and June 13, 2022. Each subpoena directed specific requests for production to

---

[2] For many of the attacks at issue (including 24 of the 26 EFP attacks), information about the attack from DOD-maintained Significant Activity Reports, Intelligence Reports and other attack-specific documents is available on WikiLeaks within the "War Logs" database. This includes the specific "Report Key" and "Tracking Number" used by the DOD to organize and manage attack-specific documents/data. See Decl. C. Paulos, ¶ 7. In their early FOIA discussions with CENTCOM, Plaintiffs were asked to provide the Report Keys and Tracking Numbers to assist CENTCOM in locating the requested reports. This information was included with Plaintiffs' Subpoenas. Id., ¶ 8. The War Logs data confirm the use of EFPs or facts indicative of an EFP attack or other Iranian support for the EFP attacks at issue here. Id. However, because the classification status of reports in the War Logs is not ascertainable without the DOD's confirmation, Plaintiffs' discovery specifically requests that documents be released by CENTCOM as "declassified," and, if necessary, governed by the Stipulated Protective Order. *See* Ex. A, at ECF No. 82, Stipulated Protective Order.

the relevant DOD sub-agencies known to possess or control the respective documents. *See* Exs. A-E, Subpoenas and *Touhy* Letters served on the DOD from May 25, 2022 to June 13, 2022.[3] The first subpoena ("Subpoena No. 1") prioritized documents and information related to 53 specific attacks, 26 of which are the EFP attacks, and the remaining are potential bellwether attacks.[4] *See* Ex. A.

The DOD first engaged with Plaintiffs on June 22, 2022. Counsel for DOD, Douglas C. Dreier, informed Plaintiffs by email that he was assigned to assist the DOD in responding to the requests and that the "DoD will continue to work expeditiously to respond to these requests, but as expected will need more time." *See* Ex. F, Email from D. Dreier to D. Herman on June 22, 2022.

Counsel for Plaintiffs conferred with Mr. Dreier by telephone on June 28, 2022 to discuss the subpoenas. Decl. of C. Paulos, ¶ 17. Plaintiffs specifically informed Mr. Dreier of the December 1, 2022 deadline to submit evidence related to the EFP attacks and detailed how the subpoenas were drafted to prioritize those specific attacks. *Id*. Plaintiffs also requested the opportunity to meet directly with the DOD personnel conducting the searches to help streamline and assist the process, as well as routine meet and confers to remain apprised of the progress.[5] *Id*. The DOD denied these requests, instead offering to conduct calls every two months. *Id*.

---

[3] Prior to resorting to subpoenas, Plaintiffs sent FOIA requests to CENTCOM on June 14, 2019; NGIC on August 29, 2019; and DTRA on October 16, 2019. These agencies have not produced any documents in response to these FOIA requests. Decl. of C. Paulos, ¶ 3.
[4] The Case Management Order requires Plaintiffs to submit information and evidence for at least two bellwether attacks on April 14, 2023. ECF No. 69. DOD's conduct as detailed herein, and its present position related to the timing and methods of production now cause Plaintiffs genuine concern about meeting the April 14 deadline as well.
[5] Counsel for Plaintiffs have been granted the opportunity to conduct direct meet and confers with those handling searches for CENTCOM and those meetings have been highly effective in focusing and expediting the production of documents. Decl. of C. Paulos, ¶ 9.

On July 13, 2022, Plaintiffs sent a follow-up letter to Mr. Dreier that was "intended to share additional information about the requests and propose methods on how to streamline the five separate subpoenas served on [the DOD] and to efficiently search for and produce responsive materials." *See* Ex. G, Letter from C. Paulos to D. Dreier on July 13, 2022 at 1. In that letter, Plaintiffs further narrowed the scope of certain discovery requests and prioritized specific issues and attacks so the DOD could produce documents on a rolling basis to remain true to the Court's case management order. *Id*. at 2–3. Again, Plaintiffs emphasized the December 1 deadline, highlighted the need for the DOD to prioritize the EFP attacks, and reiterated their request to meet directly with the DOD personnel handling the document search. *Id*. at 1–2, 6–7. Plaintiffs also provided examples of how certain information, if produced for any particular attack, may meet an initial "informational threshold" sufficient to allow Plaintiffs to hold other discovery requests related to that attack in abeyance, further assisting the DOD in prioritizing and searching for materials needed for other attacks. *Id*. at 3–4. Moreover, Plaintiffs provided information about where and how the requested materials were located and stored to facilitate the process of pinpointing the relevant documents. *Id*. at 4–6. Attached to the letter were specific examples of the types of documents Plaintiffs had requested. *Id*. at Exs. A-F. Finally, "[t]o ensure compliance with the December 1 deadline, [Plaintiffs asked] that this be done for the first 26 'EFP' attacks identified in [the] Subpoenas and that the material be provided on a rolling basis…no later than ***November 4, 2022,*** in order to have sufficient time to prepare it for presentation to the Court on December 1, 2022." *Id*. at 6 (emphasis in original). Plaintiffs asked that DOD counsel contact them to discuss the letter, but the DOD did not respond.

On September 1, 2022, Plaintiffs' counsel contacted Mr. Dreier and requested a call because "[Plaintiffs] have to submit briefing in this case in 90 days for certain attacks so time is

certainly of the essence." *See* Ex. F, Email from D. Herman to D. Dreier on September 1, 2022. Mr. Dreier responded, "I had passed along your letter to the agency, and the agency has been continuing its work. The agency did not have any questions after reviewing your letter." *See* Ex. F, Email from D. Dreier to D. Herman on September 1, 2022.

The DOD continued to engage with Plaintiffs, providing no indication that the November 4 deadline was problematic. On September 16, 2022, Plaintiffs' counsel conducted a telephonic conference with the DOD to discuss the DOD's efforts to locate and produce documents for the EFP attacks by November 4. Decl. of C. Paulos, ¶ 20. Mr. Dreier informed Plaintiffs that the DOD had reviewed Plaintiffs' letter and was aware of the Court's December 1, 2022 deadline. *Id*. Mr. Dreier assured Plaintiffs that the DOD had expressed no concerns about its ability to timely produce the documents. *Id*. He further confirmed he would notify Plaintiffs if there was ever any indication that the DOD would not be able to produce the documents by early November so that Plaintiffs could advise the Court accordingly and seek an extension of time if necessary. *Id*. Plaintiffs' counsel subsequently confirmed these details with the DOD via email. *See* Ex. F, Email from D. Herman to D. Dreier on September 21, 2022.

On September 27, DoD counsel approved Plaintiffs' proposed Protective Order (requiring a minor edit) and agreed to another telephonic conference the week of October 24 to discuss the DoD's document production efforts. *See* Ex. F, Email from D. Dreier to D. Herman on September 27, 2022. On October 24, Plaintiffs' counsel contacted Mr. Dreier to schedule the call. *See* Ex. F, Email from C. Paulos to D. Dreier on October 24, 2022. Mr. Dreier then informed Plaintiffs that the matter had been reassigned to Assistant U.S. Attorney Sam Escher, who was cc'd to that email. *See* Ex. F, Email from D. Dreier to C. Paulos on October 25, 2022. Plaintiffs' counsel emailed Mr. Escher on October 28 (having not heard from him in the days prior) and requested a time to meet

and confer, stating that "[they were] anticipating receiving documents from DOD (via you) next week and need to confirm that is still happening or if we need to update the Court of a potential delay in production." *See* Ex. F, Email from C. Paulos to S. Escher on October 28, 2022.

Plaintiffs then held a telephonic conference with Mr. Escher on November 2. Decl. of C. Paulos, ¶ 26. During this call, Mr. Escher was unable to confirm whether the DOD was planning to produce documents by November 4. *Id*. However, Mr. Escher stated that of the 26 EFP attacks, the DOD had reported that 21 were complete, 3 were in progress, and 2 had not resulted in any documents being located. *Id*. Plaintiffs asked Mr. Escher to confirm with DOD exactly what this meant in relation to the receipt of documents so the Court could be apprised of any issues. *Id*. Plaintiffs' counsel conducted another call later that day with Mr. Escher in which they provided information about the case, the claims, and the five subpoenas to assist his transition into the matter. Mr. Escher again agreed to confirm the status of the document production on November 4. *Id*.

On November 4, Plaintiffs conducted another call with Mr. Escher, during which he confirmed that the DOD would now not be producing *any* documents prior to December 1, despite having previously reported that a substantial number of attacks were "complete." *Id*. at ¶ 28. At no point prior to November 2 had Mr. Dreier, Mr. Escher, or any other DOD representative expressed any qualms or uncertainty with the DOD's ability to meet the November 4 deadline. *Id*. at ¶ 27. Moreover, Mr. Escher informed Plaintiffs that the DOD could not be expected to make *any* production until February 28, 2023, despite the DOD having located at least 204 documents comprising 537 pages related to 24 of the 26 attacks. However, instead of "21 attacks" being "complete," the DOD now stated that this was "incorrect information," and that its review for all 26 EFP attacks was "ongoing." *See* Ex. H, Email from C. Paulos to S. Escher on November 7,

2022 and Email from S. Escher to C. Paulos on November 7, 2022. Despite the sudden setback and impending deadline, and despite having located hundreds of documents for 24 of the EFP attacks, Mr. Escher stated the DOD would not agree to produce documents on a rolling basis. Decl. of C. Paulos, ¶ 28.

In an effort to salvage the efforts of the preceding months, and to assist DOD in making some sort of production that would keep the December 1 deadline feasible, Plaintiffs reviewed the information available from WikiLeaks' War Logs, and identified single singular sentences and terms that prove or support the conclusion that EFPs were used in the attacks. *Id*. at ¶ 29. Plaintiffs provided a spreadsheet with the specific sentences/terms (and Report Keys/Tracking Numbers for the reports) to Mr. Escher and proposed that DOD approve the release of just those few portions of the reports before December 1. DOD rejected this proposal. *See* Ex. H, Email from S. Escher to C. Paulos on November 7, 2022.

Since being served with subpoenas nearly six months ago, the DOD has never objected to Plaintiffs' discovery requests or the November 4 production date. All the while, the DOD conducted itself as if it working towards and would produce documents on that date, aware of the December 1, 2022 deadline ordered by the Court. Instead, on the day that production was due, a date that had driven everyone's efforts since July, DOD disclosed for the first time that it *might* be able make a limited production on February 28, 2023. And inexplicably, despite having located hundreds of documents already, it refuses to release documents on a rolling basis. The DOD's failure to produce documents and its present pace and position endanger the Court's case management schedule, prejudice Plaintiffs' ability to present their claims and obtain judgments. DOD's conduct exhibits a blatant disregard of the power of federal subpoenas and the discovery process. This Court should compel the DOD to produce the documents that Plaintiffs requested,

to do so on a rolling basis, and in quantities and within timeframes sufficient to unwind the delays now caused by its apparent lack of good faith.

## ARGUMENT AND AUTHORITIES

The Department of Defense has failed to comply with Plaintiffs' subpoenas for highly probative documents in its possession. Fed. R. Civ. P. 45 "authorizes court-issued subpoenas to obtain discovery from third parties." *Buzzfeed, Inc. v. United States DOJ*, 318 F.Supp.3d 347, 356 (D.D.C. 2018) (citing *Watts v. SEC*, 482 F.3d 501, 503, 507 (D.C. Cir. 2007)). At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production. *See* Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006) (applying Rule 45 to U.S. Department of State and holding plaintiffs' Rule 45 motion to compel should not have been denied); Ex. H, Email from D. Herman to S. Escher on November 11, 2022. When deciding a motion to compel, a court must determine whether the discovery sought is relevant under Fed. R. Civ. P. 26(b)(1). *Id.* Additionally, "[t]he burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *Id.* (citing *In re Micron Tech., Inc. v. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010)).

Plaintiffs have conferred in good faith with counsel for DOD in an effort to resolve this dispute before seeking Court intervention. DOD has flatly rejected Plaintiffs proposed solutions and opposes this motion. *See* DCt.LCvR 7(m); and Decl. of C. Paulos, ¶ 30.

### A. The information sought is highly relevant.

Plaintiffs are entitled to discovery of non-privileged matters that are relevant to any party's claim or defense. As set forth in Fed. R. Civ. P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Plaintiffs are seeking information through the subpoena process that is directly relevant to Plaintiffs' claims involving injury and death from terrorist attacks materially supported by Iran and its co-Defendants. Plaintiffs' Subpoena Nos. 1-3, which were served on May 25, 2022 requested, *inter alia,* SigAct Reports; IED Reports; IDF Reports; CREW Reports; Intelligence Information Reports; Task Force Troy Reports, EOD Reports, WIT Reports, CEXC Reports; AR-15-6 investigation reports; Casualty Reports; Serious Incident Reports; and other briefings, reports, and notes that reference, document, or discuss the specific attacks at issue in this case.[6] *See* Exs. A-C. Plaintiffs' Subpoena Nos. 4 and 5, which were served on June 13, 2022, requested Area Assessments and similar documents for specific areas and timeframes, and IED Cell Intelligence Assessments, CITP Targeting Support Packages, Interrogation Support Products and similar reports and assessments for the same specific areas and timeframes. *See* Exs. D-E.

The requested documents, particularly those sought in Subpoena Nos. 1 for EFP and potential bellwether attacks, elucidate how those attacks occurred; who committed them; how Iran's support to terror groups in Iraq is connected to the attacks; and which categories of material support from Iran came to bear upon the commission of the attacks (e.g. funding, training, personnel, weapons (like EFPs), etc.).[7] The documents will also assist Plaintiffs to provide the

---

[6] This Court is familiar with these types of reports, having admitted them as evidence and accepting expert analyses relying upon their meaning and contents in cases like *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12 (D.D.C. 2019).

[7] For the attack-related reports relevant to the EFP attacks in this case and published in the War

Court with details of the timing, location, and methods used in the attacks. At a minimum, the reports Plaintiffs seek provide a source of near-contemporaneous evidence that establishes the fact that an attack occurred.

The DOD has not raised proportionality or privilege concerns regarding Plaintiffs' subpoenas. Nonetheless, the information requested is proportional to the needs of the case.

### B. The information sought is almost entirely in the possession and control of the DOD.

Declassified version of the requested reports are entirely in the possession and control of the DOD. This fact is the driving force behind Plaintiffs' discovery efforts. In FSIA cases involving defaulting defendants such as this, there will be no opportunity for Plaintiffs to conduct discovery against the defendants to support the case. *See Burks v. Islamic Republic of Iran*, No. 16-CV-1102 (CRC), 2020 WL 13303322, at *10 (D.D.C. Aug. 21, 2020) (granting Plaintiffs' motion to compel documents from the DOD's Defense Threat Reduction Agency in part because without the documents, "[Plaintiffs] will face a potentially insurmountable battle to connect the attacks that killed [certain Plaintiffs] to Iranian-linked EFPs. Though Plaintiffs may provide evidence of liability through a variety of means—such as expert testimony, as the plaintiffs in *Karcher* did—experts are able to assess liability for individual attacks only to the extent they are able to review records describing each attack.").

The DOD and its entities have exclusive control over the documents and their declassification, and Plaintiffs will not be able to obtain the documents without the DOD's cooperation. Furthermore, to the extent that some documents have been made publicly available,

---

Logs database, over half of the reports specifically mention "EFP" and nearly all provide details of tactics, techniques, or procedures that are relevant to corroborating or supporting that an EFP was used in the attack. Decl. of C. Paulos, fn. 2.

those documents may still be deemed "classified" by the DOD and therefore prevent most of Plaintiffs' experts, who presently maintain active security clearances, from accessing those documents.

### C. The issues at stake in this litigation, and thus the discovery sought, are of utmost consequence.

Plaintiffs allege that Iran provided weapons, training, safe haven, and funding to terrorist organizations that injured and killed U.S. service members during operations in Iraq. There can be no doubt about the magnitude of the issues at stake in this litigation, and the importance of discovery regarding the terrorist attacks at issue in this case cannot be overstated.

Recent FSIA cases involving defaulting defendants extensively rely upon government reports to support their claims. *See, e.g., Hamen v. Islamic Republic of Iran*, 401 F. Supp. 3d 85, 91 (D.D.C. 2019) ("Plaintiffs' evidentiary presentation included testimony from eleven witnesses (including experts), and over a dozen exhibits (***including government reports***)." (emphasis added)). Given the difficulty in obtaining eye-witness evidence in FSIA cases, courts rely directly upon government reports to assess these terrorist attacks. *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 34 (D.D.C. 2019) (Kollar-Kotelly, J.)  ("Thanks to an extensive post-blast analysis by the military's Combined Explosives Exploitation Cell ('CEXC'), ***the Court finds strong evidence that this was an EFP attack.***" (emphasis added)). This Court previously concluded in *Karcher* that an attack involved an EFP by relying upon expert reports that were based on government reports even though the reports were "rather limited." *Id.* at 32. Indeed, the extensive reliance on government reports in *Karcher* further substantiates Plaintiffs' need for the requested documents. *See generally id*. (citing frequently to AR-15 reports, attack scene photographs, and expert reports and testimony that relied upon government reports).

D. **The burden or expense of the requested discovery does not outweigh its tremendous benefit.**

Plaintiffs do not contend that the subpoenas are without burden and recognize that complying with the subpoenas will require the DOD and a number of its sub-agencies to search for records created between the years 2003 and 2011. For this reason, Plaintiffs drafted their subpoenas in a way that narrowly targets the specific documents that support their case. Plaintiffs have also provided the DOD with detailed information about each attack to minimize the burden on the DOD in searching for and collecting responsive documents. Further, Plaintiffs have recommended several times that the DOD produce documents on a rolling basis to alleviate the burden of producing a mass of documents all at once, but the DOD has rejected these offers.

The DOD also has the resources necessary to produce the requested information. The DOD is an extremely sophisticated entity with vast resources, and its sub-agencies depend upon having their documents and information stored and organized in a way that is reasonably accessible. The DOD's sub-agencies (including JIDO/JIEDDO, CENTCOM, ARCENT, MARCENT, SOCOM, DIA, and the USACIDC) that possess responsive documents have their own information management systems that allow for searches to be conducted efficiently and effectively.

Again, the benefit of Plaintiffs obtaining the requested documents cannot be overstated and far outweighs the burden on the DOD of searching for and producing the responsive documents.

## **CONCLUSION**

Plaintiffs have engaged and cooperated with the DOD for nearly six months in an effort to obtain the documents necessary to carry the case forward and meet the Court's December 1, 2022 deadline. At this point, however, Plaintiffs must request judicial intervention to compel the DOD

to timely produce the documents responsive to Plaintiffs' subpoenas, particularly Subpoena No. 1, for which time is of the essence.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

1. Order the DOD to produce all documents responsive to Subpoena No. 1 related to the EFP and potential bellwether attacks no later than February 28, 2023;

2. Order the DOD to continue to produce documents responsive to Plaintiffs' Subpoenas 2-5 on a scheduled and rolling basis; specifically, 600 pages per month, which is less than 30 pages per business day;

3. Order the DOD to work cooperatively with Plaintiffs to provide routine status reports to the Court detailing: (1) the search and review process, including information on document types, (2) the corresponding subpoena and production request(s) for each production made; (3) the specific amount of documents/pages located, selected, and being processed; and (4) the specific status of the documents/pages as they move through DOD's search, review, and release process; and

4. Order the DOD to work cooperatively with Plaintiffs to design and implement a discovery plan that will ensure compliance with this Order, and the current case management plan.

Dated: November 11, 2022.                    Respectfully submitted,

                                             */s/ Christopher G. Paulos*
                                             Christopher G. Paulos
                                             DC Bar No. 1615782
                                             **LEVIN, PAPANTONIO, RAFFERTY,**
                                             **PROCTOR, BUCHANAN, O'BRIEN,**
                                             **BARR, AND MOUGEY, P.A.**

316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7067
Facsimile: (850) 436-6067
E-Mail: cpaulos@levinlaw.com

*Counsel for Plaintiffs*